**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| THE LUTHERAN CHURCH – MISSOURI SYNOD, a Missouri nonprofit corporation, | § § § | |
| Plaintiff, | § § | No. 1:23-cv-1042 |
| v. | § § | |
| DONALD CHRISTIAN, CHRISTOPHER BANNWOLF,  CONCORDIA UNIVERSITY TEXAS, INC., & JOHN DOES 1-12 | § § § § | |

**PLAINTIFF'S  ORIGINAL COMPLAINT**

Plaintiff, The Lutheran Church-Missouri Synod ("LCMS" or "Plaintiff"), submits this Original Complaint complaining against Donald Christian, Christopher Bannwolf, Concordia University Texas, Inc. ("CTX") and John Does 1-12 ("Does").  Plaintiff and Defendants may be referred to collectively as "Parties."

**I.**
**Parties**

1.      LCMS is a Missouri non-profit religious corporation authorized to do business in Texas, with its principal place of business in St. Louis, Missouri.  LCMS, through its board of directors, is the legal representative of the world-wide Lutheran religious entity known as the Synod, as defined below.  For purposes of this proceeding, LCMS may be served by and through its attorney, Steven Levatino, Levatino|Pace PLLC, 1101 S. Capital of Texas Hwy., K-125, Austin, Texas 78746.

2.      Donald Christian is a Texas resident. He may be served at 11400 Concordia University Dr., Austin, Texas 78762.

3.      Christopher Bannwolf is a Texas resident.  He may be served at his residence at 25 Courtside Circle, San Antonio, Texas 78216.

4.      Concordia University – Texas, Inc. (CTX) is a Texas non-profit corporation. Its principal place of business is in Austin, Texas; and it may be served by and through its registered agent, Elizabeth Atherton, at 11400 Concordia University Dr., Austin, Texas 78762.

5.      John Does 1-12 are unknown individuals who serve as regents on the CTX Board of Regents and unlawfully voted to amend the CTX charter, bylaws, and policy manual.  Through the discovery process, they will be identified, named, and served as defendants in this lawsuit.

**II.**
**Jurisdiction and Venue**

6.      This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332. Plaintiff is a Missouri citizen; Defendants are Texas citizens; and the amount in controversy exceeds $75,000.00.

7.      Venue is proper in this district and division pursuant to 28 U.S.C § 1391(b)(1) and 124(d)(1), as a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this judicial district and division. Further, CTX's principal place of business is in this district and this division.

**III.**
**Introduction**

8.      This is a dispute concerning the governance of CTX, a religiously-affiliated university and Synod agency as defined below. The resolution of the key issues has been decided internally by the Synod's Commission on Constitutional Matters ("CCM"), a commission of the Synod which exists to interpret the Synod Constitution, Bylaws and resolutions and ensure that the governing instruments of the Synod and its agencies are in accord with the Synod Constitution and

Bylaws.  The CCM has concluded that CTX—an entity established and supported by the Synod, and subject to governance requirements under the Synod Constitution and Bylaws—violated the Synod Bylaws and Constitution when the CTX Board of Regents ("CTX BOR") amended CTX's charter, bylaws, and policy manual without approval of the Synod.  Because CTX has refused to recognize or abide by CCM's final and binding decision and the Synod affirmation of that decision at its 2023 convention, LCMS brings this suit for a judicial declaration confirming as a matter of law the Synod's decision on the matter.  LCMS seeks judgment voiding the amendments, restoring the CTX charter, bylaws, and policy manual to their state immediately prior to their unlawful amendments and/or requiring specific performance of the contract between LCMS and CTX. In the alternative, LCMS seeks actual damages of at least $111,147,678.

**IV.**
**Factual Background**

**A.**    **The Synod**

9.    The Lutheran Church—Missouri Synod ("Synod") was established in 1847 as a synodical union of independent Lutheran congregations; and is currently a worldwide confessional church denomination composed of nearly 6000 congregations and nearly 2 million baptized members. The Synod, in convention, has adopted and set out its confessional beliefs and polity, and mechanism of church governance, in a Constitution (Exhibit A).  The Constitution, among other things, lays out the Synod's core religious beliefs and practices, including its confession, objectives, powers, and conditions of membership.  It details 10 objectives[1] that the Synod shall endeavor to achieve, to include two objectives that focus on training of ministers and education: 1) recruiting and training "pastors, teachers and other professional church workers and provide opportunity for their continuing growth" (*see* Constitution, Art. III (3), p. 11 (Exhibit A));

---

[1] The objectives are all subject to the confession of the Synod, the scripture and the Lutheran Confessions.

and 2) to enable congregations of the Synod to support synodical colleges, universities, and seminaries. *Id.* at Art. III(5), p. 11 (Exhibit A).  The Constitution also provides that the Synod, in convention, "may adopt bylaws" and such bylaws "are binding regulations for the Synod and its conduct and governance."[2] *See* Constitution, Art. XIV, p. 20 (Exhibit A).

10.     The Synod is defined in its Bylaws as referring "collectively to the association of self-governing Lutheran congregations and all its agencies on the national and district levels." The Synod, as defined herein, is not a "civil law entity." The Synod is led by its president (the "President"), six vice presidents, a secretary, a board of directors ("LCMS-BOD"), and other officers as allowed under the Synod Bylaws.[3] *See* Synod Bylaws, pp. 34, 136-147 (Exhibit B). The Synod is generally geographically organized into separate areas called districts.  There are currently 35 Synod districts, each of which is under the ecclesiastical supervision of a district president and the other officers of the district as detailed in the Synod Bylaws.

11.     An "agency" of the Synod is not a civil law agent in a civil law principal-agent relationship, but rather an entity authorized to be established to accomplish the Synod's objectives in society. An "agency" under the Synod polity is an instrumentality of the Synod formed to pursue the objectives, missions and ministries of the Synod. *See* Synod Bylaw 1.2.1(a), p. 21 (Exhibit B). In this case, CTX (amongst other objectives), as an agency of Synod, was created and exists to fulfill the education and training objectives of the Synod.

---

[2] However, the Synod Bylaws may not be inconsistent with the LCMS Constitution and preempt all prior versions of the bylaws and all other rules and regulations.  *See* Constitution, Art. XIV, p. 20 (Exhibit A).
[3] At all times applicable to the claims in this Complaint the operative Synod Bylaws were the 2019 Synod Bylaws, which are attached as Exhibit B.

**B.**     **LCMS**

12.     LCMS carries out the temporal affairs of the Synod, utilizing the powers granted it through convention and expressed in the Synod Constitution and Bylaws and the Amended and Restated Articles of Incorporation ("Articles") the Synod has set forth for LCMS (Exhibit C).  The objectives of LCMS are numerous and spelled out in the Articles, and include among other things, to: 1) "support the establishment and maintenance of theological seminaries, colleges, universities, and other institutions of learning to train ministers of religion-ordained, ministers of religion- commissioned, and laity for service" in the Evangelical Lutheran Church; 2) "spread the Gospel of Jesus Christ throughout the world by every means possible;" 3) "provide assistance and resources to… schools, … and agencies of the Synod for the dissemination of the Christian Gospel;" and 4) "establish and conduct all such enterprises and endeavors and to exercise such further power as may be necessary or expedient to carry out the objectives stated in the Constitution of The Lutheran Church—Missouri Synod."  *See* Articles, Art II, p. 203 (Exhibit C).

13.     The Synod is the "church" and an ecclesiastical entity. LCMS is the temporal – as opposed to spiritual – legal entity defined in the Synod Bylaws as the "Corporate Synod." LCMS conducts the secular business of the Synod and, as stated in the Articles, one of its corporate objectives is to exercise powers "as may be necessary or expedient to carry out the objectives stated in the Constitution of The Lutheran Church—Missouri Synod." *See* Articles, Art II.g., p. 203 (Exhibit C).  Pursuant to Constitutional Article XI (E)(2), LCMS, through its board of directors, exercises the legal authority therein detailed on behalf of the Synod.  *See* Constitution, p. 17 (Exhibit A). LCMS is not an agency of the Synod.  In recognition of this distinction, LCMS is sometimes referred to as "Corporate Synod" and the Synod is referred to as just "Synod."  LCMS, as one of the

corporate entities formed by the Synod's member congregations in convention, facilitates, performs, oversees, and coordinates, on behalf of the Synod and its member congregations, various ministries in the United States as well as in other countries. LCMS assists in coordinating resources of Synod member congregations and supports the establishment and maintenance of a number of synodical colleges, universities, and seminaries in the United States (including CTX, which was formed by LCMS in 1926 to foster the objectives, mission, and ministries of the Synod).

14.     LCMS has supported CTX through the years by deeding property in trust to CTX; through direct funding including yearly subsidies, interim financing, grants, facilitation of debt service, and guarantying loans for CTX, among other benefits; and in 2006, conditionally waiving its reversionary interest in the CTX main campus property to facilitate CTX selling that property and moving the campus to a new location based on the obligation of CTX to reestablish the reversionary interest in the new campus property.   Such reversionary interest is required, in part, to be granted by CTX to LCMS pursuant to Resolution 4-04 adopted by the delegates of the Synod at its 2004 convention. *See* Synod Resolution 4-04 (Exhibit D).  To date, CTX has failed to follow through with that obligation, instead refusing to recognize LCMS's reversionary interest in the CTX campus.

**C.     Concordia Universities**

15.     Following the objectives stated in its Constitution, LCMS has established or facilitated the establishment of numerous colleges and universities in the United States. There are currently six Synod universities in the United States, of which Defendant CTX is one.  One of the primary functions of the Synod universities is the education of "church workers," who after graduation can go to seminary to become ordained ministers or without seminary become commissioned ministers of Synod congregations (*e.g.*, music directors, youth ministers, teachers, administrators and other non-ordained ministerial functions).

6

Thus, the establishment and furtherance of a university such as CTX within Synod is a foundational objective of LCMS and core to its central beliefs in that the university develops and educates its future ministers and leaders of Synod.  Further, the university trains "laity for service in the Evangelical Lutheran Church" under the Synod's doctrinal beliefs.  *See* Synod Bylaws 3.6.6.1; 3.10.6.1; 3.10.6.6 (h-i), pp. 130, 165 and 169-170  (Exhibit B).

16.     Each university authorized to be established by the Synod is an "agency" of Synod; however, as noted previously, the use of the word "agency" does not connote a traditional legal, agency relationship. Rather, the Synod Bylaws define an "agency" of Synod as "[a]n instrumentality other than a congregation or corporate Synod, whether or not separately incorporated, which the Synod in convention or its Board of Directors has caused or authorized to be formed to further the Synod's Objectives. *See* Synod Bylaw 1.2.1, p. 21 (Exhibit B).  Agencies of the Synod include each board, commission, council, seminary, university, college, district, Concordia Plan Services, and Synod-wide corporate entity.  *Id.*  In this case CTX, as an agency of the Synod, is in existence solely because of the efforts of the Synod, its members, and the LCMS, and is subject to the Constitution and Bylaws of Synod.  The Synod universities are required to follow the Synod Constitution and Bylaws as well as the regulations of the Concordia University System (CUS), which is a synod-wide corporate entity established by the Synod and delegated certain authorities with respect to the Synod universities.  CUS in turn supports the Synod universities, including CTX, through various means including, historically, through subsidies, grants and financing.

**D.     <u>CTX</u>**

17.     In 1923, the Synod started exploring the establishment of a Synod college and co-educational parochial high school in the Austin area.  The establishment of the college fulfilled the

Synod's objectives set out in Article III of the 1924 edition of the Constitution (1924) (Exhibit G).[4] The establishment of the college would assist Texas members of the Synod by helping them to avoid traveling long distances to receive a Lutheran education; provide educational opportunities to Texas Lutherans; and draw ministers to teach the beliefs of the LCMS in Austin, Texas. The establishment of the college also served other objectives of the LCMS, including unifying the Synod in its faith, furthering the Kingdom of God, and training ministers and teachers for service to the Synod. *See* 1924 Constitution, Article III (1), (2) & (3), pp. 1-2 (Exhibit G).

18.     After establishing that Austin, Texas was the most suitable location for the new college, in 1926 LCMS picked and purchased a property near the University of Texas. LCMS also authorized and paid for the construction of buildings on the property and furniture, and assisted with funding and the purchasing of books for the library. The original name of the new college was Lutheran Concordia College of Texas. Over the years, the institution changed its name several times, until it settled on its current name of Concordia University Texas (CTX).

19.     Whatever name it operated under, the school was recognized within the Synod as a mission and ministry of the Synod (an agency) fulfilling the objectives of the Synod. Synod has supported (and continues to support) the school over the last 100 years. Members of Synod congregations send their children to CTX and pay its tuition in order that they may receive a Lutheran education consistent with the confession of the Synod. They also make donations to CTX because it is a Synod school. Further, Synod and its other agencies, councils, commissions and Synod-wide entities (*e.g.,* Concordia University System, The Lutheran Church-Missouri Synod Foundation, and the Lutheran Church Extension Fund-Missouri Synod) also have supported CTX through making their resources available to CTX for its benefit. Historically, CTX acknowledges

---

[4] Constitution, Article III (3) - "training of ministers and teachers for service in the Evangelical Lutheran Church."

and admits that CTX is a part of the Synod and openly and regularly calls on the Synod as a whole to support it.

**E.     Transferred Property and CTX Governance Documents**

20.     In 1950, in an effort to assist CTX, LCMS approved a transfer of the property comprising CTX to CTX in "trust" for the school's benefit.   *See* October 20, 1950 LCMS BOD Minutes (Exhibit E).   Certain deeds in question transferring title from LCMS to CTX contained reversionary clauses and use restrictions that identified certain circumstances under which CTX property reverted to LCMS.   At about the same time as the approval to assign the school property to CTX in trust, CTX[5] was "chartered" under the laws of the State of Texas, as a non-profit corporation.   The name of the corporate entity was Lutheran Concordia College of Texas.   Prior to the filing of the CTX Charter (the "CTX Charter"), CTX had operated as a nonincorporated college of Synod. The purpose of the incorporated entity was for the "support and maintenance" of an educational institution.   The business of this new corporation was directed to be "conducted and its affairs … controlled by a board of trustees to be elected in accordance with the Rules and Regulations of the Lutheran Church-Missouri Synod."   *See* CTX Charter (Exhibit F).

21.     During the ensuing 72 years, the CTX Charter was amended seven times.   However, until 2022, none of those amendments affected the governance of the university.   The pre-November 8, 2022, amendments included: (1) three name changes (1965, 1995, and 2017); (2) an amendment making CTX perpetual in nature (1968); (3) an amendment declaring that CTX has no members and providing guidance on dissolution (2000); and (4) an amendment changing the purpose of the corporation to align with federal law regarding a non-profit institution (May 2, 2022) (the "May

---

[5] CTX has operated under various names over that last century.  For purpose of this complaint any reference to CTX or the "school" incorporates any legal name under which the school was previously operating.

Amendment") (Exhibit H).[6] CTX's governance documents received scrutiny from the Synod Commission on Constitutional Matters ("CCM") for deficiencies in those documents, taken as a whole, prior to the May Amendment, of which CTX had been notified.  *See* CCM Opinion Op. 18-2894, September 14-15, 2018 (Exhibit I).  Notably, those amendments made to the CTX Charter prior to the May Amendment were distinguishable from the May Amendment and the Charter Amendment made on November 8, 2022 and discussed below in that they did not fundamentally alter the relationship between the CTX and the Synod.

22.     Thus, for nearly 100 years CTX operated pursuant to the governance set forth in the Synod Constitution and Bylaws, openly participating in Synod's polity, agencies, and church life including receiving regents elected by the Synod in convention, as well as those regents appointed or designated by Synod officers.  CTX also has sent representatives to the Synod convention, as allowed only to and required of synodical colleges and universities.  Further CTX has participated as a member in the Concordia University System, and CTX's president has participated ex-officio as a vice-president thereof and a member of its advisory council.  CTX has also held itself out as a synodical school to solicit contributions from member congregations and individuals of the Synod. In totality, CTX has benefited from this inclusive and close relationship by inducing the Synod and its agencies to support it and Synod parents to send their children and money to a Synod university. In November 2022, and without prior approval of the CCM, as required by the Synod Bylaws, that changed.

---

[6] The May 2022 amendment was not approved by the LCMS prior to CTX filing the document with the Texas Secretary of State.

**F.**     <u>**Facts Giving Rise to this Lawsuit**</u>

23.     CTX is governed and operated by the CTX BOR as a fiduciary of the Synod. *See* Bylaw 3.10.6.4(i)(1), pp. 167-168 (Exhibit B).  In May 2022, the CTX BOR, without prior notice to or permission from the CCM as required under the Synod Bylaws, amended the CTX Charter by changing the purpose of the corporation to align with federal law regarding a non-profit institution, evidencing CTX preplanning the actions taken by the CTX BOR in November 2022.  *See* May Amendment (Exhibit H). CTX also took additional actions to distance itself from the Synod, including applying for its own 501(c)(3) tax exempt status without prior notice to LCMS,  and discontinuing use of LCMS's group tax exemption and discontinuing use of services provided by Synod-wide corporate entities, including placing all financing with parties other than the Lutheran Church Extension Fund and withdrawing from the health insurance plan managed by Concordia Plan Services. These actions further demonstrate the planning undertaken by CTX BOR prior to their egregious action in November 2022.

24.     On November 8, 2022, the CTX BOR, without prior notice to or permission from the CCM, as required under the Synod Bylaws, amended various governing documents, purporting to fundamentally change its standing with the Synod.  In particular, the CTX BOR purported to amend: 1) the CTX Charter, originally filed in April 1950 with the Texas Secretary of State (Exhibit F); 2) the CTX bylaws ("CTX Bylaws," Exhibit J); and 3) the CTX Policy Manual (Exhibit K).  The CTX BOR did so through 1) a Certificate of Amendment filed with the Texas Secretary of State on November 8, 2022 ("Charter Amendment," Exhibit L); 2) Amended and Restated Bylaws of Concordia University Texas ("Bylaw Amendment," Exhibit M); and 3) a new board policy manual ("Policy Manual Amendment," Exhibit N).  The CTX Charter, CTX Bylaws, CTX Policy Manual, Synod Constitution and Synod Bylaws are collectively referred to herein as the "CTX governance

documents."  The Charter Amendment, the Bylaw Amendment and the Policy Manual Amendment

are collectively referred to herein as the "CTX Amendments."

      25.     CTX amended the CTX Charter with a new Article II (Nov. 2022).   The new Article

II states:

> *Concordia University Texas is organized exclusively for charitable, religious, educational, and scientific purposes, including, for such purposes, the making of distributions to organizations that qualify as exempt organization described under Section 501(c)(3) of the Internal Revenue Code, or corresponding section of any future federal tax code.  Within the scope of the foregoing purposes, and not by way of limitation thereof, the corporation is dedicated to the support and maintenance of an educational institution of higher learning that is **aligned with, but not subject to the authority of or governance by the Lutheran Church-Missouri Synod.**  To enable the corporation to carry out such purposes, it shall have the power to do any and all lawful acts and to engage in any and all lawful activities, directly or indirectly, alone or in conjunction with others, which may be necessary, proper, or suitable for the sustainment of any and all lawful purposes for which the University is organized under the TBOC.*

*See* Exhibit L at p.7 (bold emphasis added). This new Article II amended and deleted the previous

Article II which stated the following (Deleted Article II (May 2022)):

> *Concordia University Texas is organized exclusively for charitable, religious, educational and scientific purposes, including, for such purposes, the making of distributions to organizations that qualify as exempt organization described under Section 501(c)(3) of the Internal Revenue Code, or corresponding section of any future federal tax code.*

*See* Exhibit H at p.7.

      26.     The Charter Amendment also created a new Article V Board.  New Article V (Nov. 2022)

states:

> *[T]he Management of the affairs of the corporation is vested in its Board of Regents in accordance with the Bylaws. The number of Regents may be increased or decreased in accordance with the Bylaws; however, the number of Regents shall not be decreased to fewer than three (3).  **All determinations regarding the university's alignment with the Lutheran Church- Missouri Synod, including but not limited to, the university's subscription and adherence to the Confession of the LCMS as currently outlined in Article***

> *II of the LCMS Constitution, and qualifications of board members and the presidency, will be subject to and determined by the sole and exclusive discretion of the Board of Regents*.

*See* Exhibit L at p. 7 (bold emphasis added). This new Article V amended and deleted the previous

Article V, which stated the following (Deleted Article V (April 1950)):

> *The business of this corporation shall be conducted and its affairs shall be controlled by a board of trustees **to be elected in accordance with the Rules and Regulations of the Lutheran Church—Missouri Synod**. The first name and addresses of the trustees for the first year are as follows:…*

*See* Exhibit F at p. B-1 (bold emphasis added).

27.     CTX amended the CTX Bylaws with the following <u>new Sections 2.4 and 2.5</u>:

> *Section 2.4. <u>Alignment; Confession</u>. **The University is and shall, without being subject to the authority of or governance by the Lutheran Church – Missouri Synod, operate as an educational institution that is aligned with the Lutheran Church – Missouri Synod** and subscribes to the Confession of the LCMS as currently outlined in Article II of the LCMS Constitution….*

> *Section 2.5 <u>Board Retains Discretion</u>. **All determinations regarding the university's alignment with the Lutheran Church – Missouri Synod**, including but not limited to, the university's subscription and adherence to the Confession of the LCMS as currently outlined in Article II of the LCMS Constitution, and qualifications for board members and the presidency, will be **subject to and determined by the sole and exclusive discretion of the Board of Regents**.*

*See* Exhibit M at p.2 (bold emphasis added).  These new Sections 2.4 and 2.5 replaced provisions in

the CTX Bylaws which acknowledged the obligations of CTX fidelity to the Synod Constitution and

Bylaws (Deleted Sections 2.4 and 4.2):

> *Section 2.4. <u>Affairs of the University</u>. **The University is and shall operate as an educational institution of The Lutheran Church -Missouri Synod, a Missouri not-for-profit corporation, subject to the provisions of the constitution and bylaws of the Lutheran Church-Missouri Synod** as contained in the Handbook of the Lutheran Church-Missouri Synod, as may from time to time be amended, modified or supplemented (the "LCMS Handbook").*

> *  *  *

> *Section 4.2. __Duties of the Board of Regents__. In exercising its relationship to The Lutheran Church-Missouri Synod (the "Synod") and to the Board for University Education of the Synod, __the Board of Regents shall assume the responsibilities as defined in the LCMS Handbook__. The Board of Regents shall develop policies which delineate their responsibilities and duties as well as those of the President of the University. The Board shall elect a Chairman, Vice Chairman, and Secretary responsible for leading and conducting the efforts of the Board and for the recording of the actions of the Board.*

*See* Exhibit J at p. 2 (bold emphasis added).

28.     CTX further amended the CTX Bylaws regarding the appointment of regents in new Section 4.3, the first paragraph of which reads as follows:

> *Section 4.3. __Number, Qualifications, Elections, and Term of Office__. The Board shall have up to twenty (20) but at least ten (10) members. The number of Board members may be increased or decreased by the affirmative vote of a majority of the then-serving Board of Regents; however, at no time shall the Board have fewer than three (3) members as required by the TBOC. A Board member need not be a resident of the State of Texas. All appointments to the Board shall be for three (3) year terms. No person shall serve more than three (3) consecutive terms. After serving a total of three (3) terms, a Board member may be eligible for reconsideration as a Board member after two (2) years have passed since the conclusion of such Board member's service. __All Board members shall be approved by a majority vote of the Board.__"*

*See* Exhibit M at p.3 (bold emphasis added). This new Section 4.3 replaced provisions in the CTX Bylaws which required CTX regents to be elected or appointed in accordance with the requirements set forth in the Synod Constitution and Bylaws (Deleted Sections 4.3, 4.4 and 6.5), which stated:

> *Section 4.3. __Number, Qualifications, Election and Term of Office__. The number, qualifications, election and term of office of the Board members shall be as set forth and governed by the provisions of the LCMS Handbook.*
>
> *Section 4.4. __Removal; Filling of Vacancies__. The removal of any member of the Board and the filling of vacancies shall be as set forth and governed by the provisions of the LCMS Handbook and the Policy Manual.*
>
> \* \* \*
>
> *Section 6.5. __Term of Office: Filling of Vacancies: Removal__. Each officer of the University shall hold office until his successor is chosen and qualified in*

> *his stead or until his earlier death, resignation, retirement, disqualification*
> *or removal from office; provided however that the term of office shall be*
> *governed by and as set forth in the LCMS Handbook.*

*See* Exhibit J at  pp. 2-3, 5.

29.     The amendments to the CTX Charter and CTX Bylaws described above are an attempt by the CTX BOR to prevent LCMS and the Synod from participating in the governance of CTX.  These amendments also make it clear the CTX BOR now only recognizes its own governance authority and no authority of the LCMS, the Synod or the Synod Bylaws.  For instance, while under the pre-November 8, 2022 CTX Bylaws, CTX was "subject" to the Synod constitution and bylaws (*see* Exhibit J at § 2.4), under the Bylaw Amendment, CTX claims it is merely "aligned"[7] with the Synod.  *See* Charter Amendment Article V (Exhibit L); Bylaw Amendment § 2.5 (Exhibit M).

30.     The cumulative purported effect of all the CTX Amendments was the removal of all references to CTX being subject to the Constitution and Bylaws of the Synod.   Further, the Charter Amendment and Bylaw Amendment purport to assert that future CTX BOR members will be elected pursuant to the CTX Bylaws, as amended by the Bylaw Amendment, and not the Synod Bylaws.  In effect, this would result in no CTX BOR member being elected or appointed in the future by the Synod or Texas District of Synod, where CTX is located.  Before the Charter Amendment and Bylaw Amendment, 10 of the up to 18 CTX regents were elected or appointed as follows: four of CTX's board of regents were elected by the Synod in convention; another four of CTX's board of regents were elected by the Texas District of Synod; the president of the Texas

---

[7] "Alignment" between the Synod and a CUS university is not a relationship which is permitted, contemplated or defined under the Synod Bylaws.  Rather, the concept of CTX being "aligned " with the Synod, which is proposed by CTX, is a hollow relational statement which requires neither adherence nor fidelity to Synod doctrine and practice. CTX becomes the sole arbiter of whether such alignment with Synod adequately exists. It is antithetical to Synod's polity and impermissible under the Synod Constitution and Bylaws, as confirmed by the CCM in CCM Opinion 23-3006 (Exhibit P).

District of Synod was appointed to the CTX BOR as an ex officio member; and one regent was appointed by the Praesidium (Synod President and six Synod Vice-Presidents) of Synod, all pursuant to, and in accordance with, the Synod Bylaws. *See* Synod Bylaw 3.10.6.2, pp. 165-166 (Exhibit B). Each was elected or appointed as a fiduciary of the Synod. *See* Synod Bylaw 3.10.6.4(i)(1) and 3.10.6.5, pp. 167-169 (Exhibit B).

31. After the CTX Amendments, positions on the CTX BOR purportedly will be filled solely by the sitting CTX BOR, thereby disregarding the process for election and appointment of regents set forth in the Synod Bylaws and in the CTX governance documents. This cuts off any Synod participation in the election or appointment of the governing body of the university. Evidencing this is CTX's recent refusal to seat CTX regents elected by the Synod in convention on August 3, 2023, in accordance with the Synod Bylaws. In refusing to seat such regents, CTX stated:

> I am writing in regard to your purported election to the Concordia University Texas Board of Regents at the recent convention of the Lutheran Church-Missouri Synod. As you are likely aware, the CTX Board changed its governing documents in November 2022 to make it the sole-governing body of the institution. The current CTX Articles of Incorporation and Bylaws call for the CTX Board to select all of its Regents and, consequently, do not allow for Regents to be elected or appointed externally by someone else. Hence, persons elected or appointed elsewhere (in this case, at the LCMS convention) cannot be recognized as members of the Board.

*See* Exhibit O (August 4, 2023 letters to Synod-elected regents from Chairman Christopher Bannwolf of CTX BOR).

32. The CTX Amendments also purport to remove the mechanisms set forth by the Synod for its continued supervision of the teaching and practice of doctrine at CTX, and its continued participation in determining who will be CTX ministers. These would include the president of CTX, who is charged to be the "spiritual, academic, and administrative head" of the

institution (Synod Bylaw 3.10.6.6), and the theological faculty of CTX (Bylaw 3.10.6.7.3).  *See* Synod Bylaws, pp. 169, 173 (Exhibit B).  So in effect the CTX BOR, by only following part of its controlling governing documents, seeks to deprive the Synod of the right to enforce its ecclesiastical governance of an agency in accordance with the doctrine and practice of the Synod and thus deny its right to free exercise of religion.

33.     The above actions were primarily orchestrated by Defendants Donald Christian, the current President of CTX, and Christopher Bannwolf, the Chairman of the CTX BOR (collectively the "Individual Defendants").  The Individual Defendants have been the primary architects of the CTX improper action to unilaterally change CTX governance documents.  Through statements and actions the Individual Defendants made known their disdain for LCMS and Synod governance oversight of CTX and their wish that CTX be governed under a new relationship in which CTX, through a board of regents solely picked by the CTX BOR, was no longer subject to the Synod Constitution and Bylaws or LCMS or Synod governance oversight.  They were repeatedly reminded in person and in correspondence of their duties to the Synod as defined by the Synod Bylaws, under which they were inducted into office. Instead, the Individual Defendants have sought to unilaterally break from the Synod, so that polity is dictated by the few on the CTX BOR voting in favor of amendment (approximately 12 members in November 2022) rather than the Synod (including its nearly 6,000 member congregations, whose delegates form the highest legislative assembly of the Synod). *See* Synod Bylaw 1.4.1, p. 25 (Exhibit B).

34.     Disregarding their duties, the Individual Defendants conspired to break CTX away from the governance structure set forth in the Synod Bylaws and interfered with the historic contractual relationship that existed between CTX and the LCMS and Synod for nearly 100 years. They have as a result caused harm to the LCMS and Synod for which they are financially liable up

to and including the full value of CTX, which has been stripped from the Synod through their tortious actions.  Pursuant to the most recent financial statement of CTX available to the LCMS for the period ending June 30, 2022, CTX has net assets of $111,147,678, for which residual value the Plaintiffs seek damages from the Individual Defendants.

35.     The effect of the changes purported to be made pursuant to the CTX Amendments—if legal—would allow the CTX BOR to unilaterally take itself out of any ecclesiastical supervision or governance oversight by Synod.  First, as detailed above, the Bylaw Amendment makes clear that the regents on the CTX BOR are no longer chosen as detailed in the Synod Bylaws.  This has resulted or will result in the Synod and the Texas District no longer being able to elect and appoint 10 board members on the CTX BOR.  Second, CTX's obligation to follow the Synod Constitution and Bylaws has been deleted and CTX makes clear it will only look within to see if actions are permitted or whether what is being taught is theologically correct.  As a result, after passing the CTX Amendments, CTX claims it is no longer subject to the Synod Constitution and Bylaws.  This has already manifested itself, with CTX refusing to seat Synod-appointed regents, the CTX BOR voting in new regents of CTX in violation of the Synod Bylaws, and CTX refusing to respond or provide records in response to legitimate requests, even simply for information, by the LCMS-BOD pursuant to its authority under the Synod Constitution and Bylaws.

36.     While the amended CTX Bylaws have provisions that may appear on their face to be consistent with CTX's Lutheran identity (*e.g.*, regents must be members of Synod member congregations and must subscribe to Synod teachings), these bylaws ring hollow since CTX's continued subscription to Lutheran doctrine and practice, and the determination as to whether faithful adherence to such doctrine and practice is occurring, is subject to the CTX BOR review and discretion alone, thereby removing all accountability to and ecclesiastical supervision by the Synod.

*See* Bylaw Amendment §§ 2.4 & 2.5 (Exhibit L).  The CTX BOR has thus overthrown established and practiced mechanisms of church governance to appropriate to itself the university it formerly stewarded on behalf of the Synod.

37.     Further, the Bylaw Amendment permits any future CTX BOR to amend the CTX Bylaws by a simple majority and without the approval of LCMS. *See* Bylaw Amendment, Article 8 (Exhibit K).  Whereas the CTX Bylaws, prior to the Bylaw Amendment, included a provision that they were subject to the Synod Constitution and Bylaws, the Bylaw Amendment purports that CTX is no longer subject to the Synod Constitution and Bylaws.  The bottom line is the CTX BOR could ostensibly vote tomorrow to change the direction of the school as it sees fit, including dropping its so-called "alignment" with the Synod and its Lutheran identity.  In fact, according to CTX's understanding of its ability to disregard Synod governance oversight and ecclesiastical supervision, the CTX BOR could vote tomorrow that CTX will no longer be a Christian school.  According to the CTX BOR, CTX no longer has to answer to the LCMS or the Synod, a confessional church of which it was an agency, mission and ministry for nearly 100 years.

38.     While CTX's leadership has tried to claim its actions were the creation of a new vision for it to operate with the Synod, the reality is CTX's action has created disharmony within the Synod that has caused substantial harm and had a profound impact on the Synod.  Their acts fly in the face of the Synod law such as CCM Op. 23-3006, which states:

> Constitutional and Bylaw provisions dealing with governance of the institutions—including the assignment of ecclesiastical supervision and oversight to responsible officers and the entrusting of institutional governance to the regents, jointly and severally, acting as fiduciaries of the Synod—are intended to preserve for the ministry and mission of the Synod the institutions that the member congregations, acting through the Synod, have created, sustained, and relied on (Bylaw 1.1.1 [b]).

*See* Exhibit P, p. 134.   While claiming to maintain the substance, CTX has jettisoned all ecclesiastical oversight and governance mechanisms the Synod has rightfully set forth to safeguard that substance.   CTX's actions are therefore nothing short of a slap to the face of the Synod and an attempt to create its own Synod polity without the participation of the Synod.   A historic agency of the Synod has cast aside a century of work of the LCMS and the Synod, all for the glory of the Kingdom of God, by the stroke of a pen and without any participation of the Synod.

39.     CTX is attempting to walk away with a historic property of the Synod and LCMS without any say from or compensation to the LCMS.   In doing so, it fails to look to the established relationship between the parties and the fact that, as a historic agency of the Synod (within the meaning of the Synod Bylaws), the CTX BOR operated the university for the benefit of the Synod pursuant to its fiduciary duty to the Synod.   It fails also to recognize that its governance documents historically included the Constitution and the Synod Bylaws—documents it now claims are no longer applicable.

40.     Prior to filing this lawsuit, the LCMS-BOD has taken all measures it could to get CTX to reverse course and reestablish its charter, bylaws, and policy manuals to the same that existed before November 8, 2022.   All its efforts have been to no avail.   The CTX BOR continues to defy the Synod and the will of the LCMS-BOD that CTX remain subject to the Synod Constitution and Bylaws.   CTX's improper actions have even been brought by the LCMS-BOD to the CCM, which is the authoritative commission in the Synod with respect to the interpretation of the Synod Constitution and Bylaws.   *See* Synod Bylaw 3.9.2.2, pp. 140-141 (Exhibit B); and Articles at Article V, p. 204 (Exhibit C).   The LCMS-BOD formally submitted a series of ten questions to the CCM related to actions taken by CTX, including the purported adoption of the CTX Amendments, and requested that the CCM issue an opinion with respect to such questions.   On March 30, 2023, after

requesting and receiving input from the affected parties,[8] the CCM issued its opinion that CTX's actions in changing its governing documents pursuant to the CTX Amendments were in violation of the Synod Constitution and Bylaws, without authority, and null and void. It further found that individuals on the CTX BOR who voted to change the governing documents without CCM prior approval were in violation of the fiduciary duties they owed to the Synod under the Synod Constitution and Bylaws.  *See* Exhibit P.

41.     After being advised of the CCM opinion, the CTX BOR continued in its defiance of the Synod and refused to correct its wrongful actions.  The CCM opinion was further confirmed by the delegates of the Synod acting in convention pursuant to Resolution 07-03 (Exhibit Q), pursuant to which the Synod demanded that CTX "submit to the governance of the Synod as laid out in the Constitution and Bylaws."[9]  CTX has yet to accept that demand from the Synod.  As a result, LCMS is left no other alternative than to come to the courts to seek judicial relief.

**V.**
**Causes of Action[10] & Damages**

**Count One: Declaratory Judgment (CTX)**

42.     LCMS incorporates herein by reference the allegations contained in the preceding paragraphs as if set out in full.

---

[8] CTX, though given an opportunity to provide input, failed to respond to the CCM request.

[9] References to Bylaws are the same as "Synod Bylaws."

[10] While LCMS asserts each claim for relief in the complaint as the Plaintiff, it does so both on its behalf, as applicable, and on the Synod's behalf. Accordingly, if a claim for relief is asserted by LCMS, it is also asserted by and on behalf of the Synod, as appropriate, and vice versa. On occasion, out of an abundance of caution, a claim is asserted on behalf of both the Synod and LCMS.

43.     A real and justifiable controversy exists between LCMS and CTX concerning LCMS's rights under the CTX governance documents and the CTX Amendments, and LCMS's rights with respect to CTX's property.

44.     LCMS petitions the Court pursuant to the Texas Declaratory Judgments Act, chapter 37 of the Texas Civil Practice & Remedies Code, and/or the Federal Declaratory Judgments Act, 28 U.S.C. § 2201, for a declaration confirming the CCM decision, as ratified by the Synod convention, and/or independently that the Defendants violated the CTX governance documents when CTX illegally amended the CTX Charter, the CTX Bylaws, and the CTX Policy Manual in violation of the Synod Constitution and Bylaws.

45.     LCMS further petitions the Court for a declaration that CTX has breached its contract with the LCMS by violating CTX's governance documents to the detriment of LCMS; or alternatively CTX is liable to LCMS under a theory of promissory estoppel; CTX, the Individual Defendants, and John Does 1-12 have breached their fiduciary duties to LCMS; and CTX and Donald Christian have violated the Texas Business Organizations Code.

46.     LCMS further seeks a declaration that:

a.   The CTX governance documents with amendments through December 31, 2021 are the effective governing documents of CTX and that all actions taken by CTX or its representatives in May 2022 and on November 8, 2022 to improperly amend the CTX governance documents are null and void;

b.   The May Amendment to the CTX Charter is null and void, and any actions taken by CTX or its representatives based upon such May Amendment are similarly void, including the appointment of any new CTX regents not accomplished in compliance with the Synod Constitution and Bylaws.

c.   The Charter Amendment, Bylaw Amendment and Policy Manual Amendment made on November 8, 2022 to the CTX Charter, CTX Bylaws, and CTX Policy Manual are null and void, and any actions taken by CTX or its representatives based upon such Charter Amendment, Bylaw Amendment and Policy Manual Amendment are similarly void, including the appointment of any new CTX regents not appointed in compliance with the Synod Constitution and Bylaws.

d. The Synod and LCMS retain the long-standing and permanent governance relationship with CTX and all rights associated therewith, guaranteed by CTX's governance documents, including the Synod Constitution and Bylaws;

e. CTX enact upon its property a reversionary interest in favor of the LCMS as is required by the Synod Constitution, Bylaws and Resolutions (Exhibit D);

f. CTX, CTX BOR and the Individual Defendants owe fiduciary duties to the Synod as described in the Synod Bylaws; and

g. Any future amendment to the CTX governance documents must comply with the Synod Constitution and Bylaws, including that the CCM must approve such changes before being adopted by the CTX BOR.

**Count Two:  Breach of Contract (CTX)**

47.     LCMS incorporates herein by reference the allegations contained in the preceding paragraphs as if set out in full.

48.     A corporation's governing documents are a contract between the members or shareholders themselves and between the corporation on the one hand and the individual members or shareholders on the other. Moreover, the Texas Business Organizations Code authorizes a non-profit corporation to issue an instrument evidencing membership rights, voting rights and/or ownership rights.

49.     In this instance, the CTX governance documents represent a legally binding contract between CTX and LCMS, granting LCMS various valuable rights including, but not limited to the following:

a.      the express right of the Synod, through its national convention, to elect four members of the CTX BOR;

b.      the express right of the Texas District of the Synod, acting in convention, to elect four members of the CTX BOR;

c.      the express right of the Praesidium of the Synod to appoint one member of the CTX BOR;

d.      the express right to participate in the prior approval panel for the appointment of the President of CTX (*see* Synod Bylaw 3.10.6.6.2, pp. 171-173 (Exhibit B));

e.      the express right to approve any changes to CTX governance documents;

f.      The express right to effect ecclesiastical supervision over the doctrine taught and practiced in the institution, including prior approval of theological faculty and the removal, through ecclesiastical discipline, of rostered faculty and administration from office.

By enacting the CTX Amendments on November 8, 2022, CTX—and in particular the John Does on the CTX BOR who voted for the amendments and not to undo the amendments—breached the binding contract between CTX and LCMS.

50.      Importantly, LCMS and/or the Synod performed under this contract at all relevant times, and were ready, willing and able to continue to perform. LCMS therefore requests the Court order specific performance under the breached contract, and require Defendants to perform the acts required by the contract and/or undo the actions performed in violation. Alternatively, by breaching the contract, CTX has caused damages to LCMS in the form of the loss of valuable contractual rights valued at least $111,147,678, for which LCMS sues.

51.      Alternatively, LCMS is an intended third-party beneficiary of the CTX governance documents, and the legal binding agreement between CTX and the Synod in relation to the CTX governance documents.  A third party may recover on an agreement between other parties if the parties intended to secure some benefit to that third party and if the contracting parties entered into the agreement directly for the third party's benefit.  *See Stine v. Stewart*, 80 S.W.3d 586, 589 (Tex. 2002).  To determine whether the contracting parties intended to benefit a third party directly and entered into the contract for that purpose, courts must look solely to the contract's language,

construed as a whole.  *Southland Royalty Co. v. Pan Am. Petroleum Corp*., 378 S.W.2d 50, 53 (Tex.

1964); *see also J.R. Corp. v. B&B Vending Co.*, 760 S.W.2d 4, 11 (Tex. App.—Dallas 1988, writ

denied).

52.     One qualifies as an intended third-party beneficiary if the agreement "clearly and

fully express[es] an intent to confer a direct benefit to the third party."  As an intended third-party

beneficiary of the CTX governance documents, LCMS is entitled to seek enforcement of the

agreement and the resulting damages.   In this case, Synod had the right to elect regents to the CTX

BOR, approve changes to the CTX governance documents, participate in the prior approval panel

for the appointment of a CTX president, supervise the theology taught and practiced as Synod

agencies, and be granted a reversionary interest in CTX's property. Each of those rights has been

stripped away as a result of CTX's unauthorized actions.  As a result, CTX has caused damages to

LCMS in an amount of at least $111,147,678.

**Count Three: Promissory Estoppel (Alternative Claim- CTX)**

53.     LCMS incorporates herein by reference the allegations contained in the preceding

paragraphs as if set out in full.

54.     In the alternative, if the various governing documents do not constitute a binding

contract between LCMS and CTX, then LCMS seeks relief under promissory estoppel.

55.     The elements of promissory estoppel in Texas are: (1) a promise, (2) foreseeability

by the promisor of the promisee's reliance thereon, and (3) substantial reliance by the promisee to

his detriment. Here, CTX made multiple promises to LCMS, intending and thus foreseeing that

LCMS rely upon them; and LCMS substantially relied on those promises to its detriment.

56.     CTX has on multiple occasions made promises to LCMS, upon which LCMS

reasonably, foreseeably and substantially relied.  In 1950, in an effort to assist CTX in management

of the university, LCMS deeded the university real property to CTX in "trust" for the benefit of LCMS and its members. CTX promised to maintain that property in trust, and LCMS foreseeably, substantially and detrimentally relied upon CTX's promise. Throughout CTX's existence, based on CTX promises, LCMS foreseeably, substantially and detrimentally also provided significant direct funding and other financial support. This included providing subsidies to assist CTX in remaining viable. Further in 2006, this time assisting CTX with financial matters and relocation of the CTX campus at the request of CTX, LCMS conditionally waived its reversionary interest in the university real property comprising the CTX main campus, with CTX having a corresponding obligation to reestablish the reversionary interest in LCMS's favor, as is required by Resolution 4-04 passed by the Synod in convention in 2004. *See* Exhibit D. Further, CTX regents and its president (including the Individual Defendants and John Does 1-12) assumed their positions pledging to LCMS that they would govern the university subject to the LCMS's Constitution and Bylaws.

57.     LCMS foreseeably, substantially and detrimentally relied upon CTX's promise to comply with the Synod Constitution and Bylaws set forth in the CTX governance documents, the Synod Constitution and Bylaws establishing the binding effect of resolutions passed by the Synod in convention and the obligation of the CTX BOR to comply with the same. *See* Synod Constitution Article VIII.C., p. 14 (Exhibit A); Synod Bylaws 1.4.4(a)(5), p. 26 (Exhibit B). LCMS also foreseeably, substantially and detrimentally relied upon the pledges and oaths of office made by CTX regents, the Individual Defendants and John Does 1-12 that they would faithfully exercise their duties subject to the LCMS's Constitution and Bylaws.

58.     CTX and the CTX BOR have now violated all of these promises and the reality of CTX's position in the Synod to the detriment of LCMS, which detrimentally relied on CTX's historic governing dynamic and statements of fidelity to the Synod, by amending the CTX

governance documents in violation of the Synod Constitution and Bylaws.  As a result, LCMS is entitled to equitable relief against CTX to enforce CTX's repeated and long-standing promises, and the CTX governance documents, and require CTX to follow the Synod Constitution and Bylaws, void the unlawful CTX Amendments and put in place the reversionary interest in the CTX property in favor of the LCMS.  In the alternative, LCMS should be awarded reliance damages for the loss of CTX, which in this case is valued at more than $111,147,678.

**Count Four**:  **Breach of Fiduciary Duty (CTX,  Individual Defendants, John Does 1-12)**

59.    LCMS incorporates herein by reference the allegations contained in the preceding paragraphs as if set out fully.

60.    CTX, the Individual Defendants, and John Does 1-12 owe a fiduciary duty to LCMS, which includes the obligation to comply with the Synod Constitution and Bylaws including maintaining the CTX governance documents in accordance with the Synod Constitution and Bylaws and complying with the resolutions passed by the Synod in convention. *See* Constitution, Article VIII.C., pg. 14 (Exhibit A); and Synod Bylaws 1.4.4(a)(5), p. 26, 3.10.6.4(i)(2), pp. 167-186 (Exhibit B).  The CTX regents act in such a special relationship to the Synod it gives rise to fiduciary duties owed under Texas law.   In fact, the Synod Bylaws specifically state the regents act as fiduciaries of the Synod.  *See* Synod Bylaws 3.10.6.4 & 3.10.6.5, pp. 167-169 (Exhibit B).

61.    CTX,  the Individual Defendants and John Does 1-12 violated this fiduciary duty by failing to grant the revisionary interest in the CTX property to LCMS in violation of Resolution 4-04 (Exhibit D) and by attempting to implement the CTX Amendments—the amendments to the CTX Charter, the CTX Bylaws and the CTX Policy Manual—all without the permission of (or even notice to) LCMS. CTX further breached this fiduciary duty when it refused to seat the four new regents elected to the CTX BOR at the Synod convention on August 3, 2023 and appointed new

27

regents to the CTX board of regents in violation of the Synod Bylaws. *See* Exhibit O (August 4, 2023, letters to LCMS-elected regents from chair of CTX BOR).

62.     As a result of these breaches of fiduciary duty, the current governing documents of CTX—as implemented by the CTX BOR—are no longer subject to the LCMS Constitution and Bylaws.  As such, CTX, the CTX BOR and the Individual Defendants have breached their duty to LCMS to protect its interests in that as it stands now, the LCMS has no governance oversight of CTX, including without limitation ensuring it is theologically sound and teaching in accordance with LCMS beliefs.  Moreover, CTX purportedly can now be changed at a whim by the CTX BOR to a non-Synod school or sold without permission of LCMS, which will cause the loss of a historic Synod university.

63.     This outcome would be an egregious result considering the LCMS was operating within its rights when it originally deeded the university, including the real property, to CTX in trust.   Such an arrangement is specifically allowed by Chapter 81 of the  Acts of the  Texas Legislature,  which  provided as follows:

> Any religious, charitable, educational or eleemosynary institution so organized  under  the  laws  of  this  State ***may  acquire,  own,  hold, mortgage, and dispose of and invest its funds in property, real and personal for the use and benefit of, under the discretion of <u>and in trust for such electing, controlling, and parent body</u>*** [...  ] ***provided further that any such board or association heretofore incorporated may accept the benefits of this Act by filing with the Secretary of State its  written acceptance  thereof…***

Tex. Rev. Civ. Stat. Ann. Art. 1409 (Vernon 1925) (emphasis added).

64.     Further, under Texas law, CTX, the Individual Defendants, and John Does 1-12 have duties of loyalty, care, and obedience.  *In re Est. of Poe*, 648 S.W.3d 277 (Tex. 2022)  (three duties of a fiduciary– obedience, loyalty, and due care); *Gearhart Indus., Inc. v. Smith Int'l, Inc.*, 741 F.2d 707, 719 (5th Cir. 1984) (The duty of obedience requires a director to avoid committing ultra

vires acts, i.e., acts beyond the scope of the powers of a corporation as defined by its charter or the laws of the state of incorporation).

65.     By the actions of the CTX BOR, the Individual Defendants, and John Does 1-12 breached their fiduciary duties to the Synod by acting beyond the CTX BOR's authority, as defined in the CTX governance documents, by purporting to amend those documents without first obtaining Synod's approval by and through the CCM, and by then knowingly directing the filing of the materially false Charter Amendment with the Texas Secretary of State, amending the CTX Charter.

66.     The Individual Defendants and John Does 1-12 also breached fiduciary duties to the Synod by purporting to divest the Synod of its enumerated rights under the CTX governance document to include the rights to:  (i) elect and remove regents; (ii) receive the grant of a reversionary interest in CTX assets and real property; (iii) supervise and ensure theologically correct teaching by CTX theology professors; (iv) participate in the prior approval panel for the appointment of, and supervision of, the CTX president as a commissioned minister and the "spiritual head" of the institution; and (v) prevent amendments to the CTX governance documents without CCM's prior approval.

67.     LCMS seeks a declaration that the CTX Amendments are null and void, and requiring CTX to follow the  CTX governance documents that existed prior to May 2022. Alternatively, in the unlikely event LCMS does not recover all declaratory relief sought herein, LCMS is entitled to damages caused by these breaches of fiduciary duties equal at least $111,147,678, which is the estimated value of the university.

**Count Five: Violations of Texas Business Organizations Code (CTX and Donald Christian)**

68.     LCMS incorporates herein by reference the allegations contained in the preceding paragraphs as if set out in full.

69.     CTX and Donald Christian have committed multiple violations of the Texas Business Organizations Code ("TBOC"), and have caused significant damage to the Synod and LCMS in the process.

70.     CTX is a nonprofit corporation organized under the laws of the State of Texas. Texas law requires nonprofit corporations to enact articles of incorporation, also known as a certificate of formation or in this case the CTX Charter.  *See* TBOC § 3.005. Any certificate of amendment to articles of incorporation (or a charter) must contain an express statement that the amendment has been approved "in the manner required by this code and the governing documents of the entity." *See* TBOC § 3.053(4). Further, under Texas law, it is a class A misdemeanor to file with the Texas Secretary of State a certificate of amendment to articles of incorporation containing "a false statement of material fact[.]" *See* TBOC §§ 4.007, 4.008. Further, Texas law prohibits CTX and Donald Christian from actions inconsistent with the limitations contained in the CTX governance documents. *See* TBOC §§2.113 (a);[11] 3.0005(B).[12] CTX and Donald Christian trampled all over the Synod's and LCMS's rights and benefits under the TBOC.

71.     Prior to November 8, 2022, the CTX Charter granted governance rights and benefits to the Synod and/or LCMS by requiring all members of the CTX BOR to be appointed pursuant to the "Rules and Regulations of the Lutheran Church-Missouri Synod." *See* Exhibit F at pp. B-1—B-2. Prior to November 8, 2022, the CTX Bylaws also required CTX to follow the Synod Constitution and Bylaws, including the Synod Bylaw which required pre-approval of the Synod, by and through the CCM, of any changes to CTX governance documents before filing them with the Texas Secretary

---

[11] "This subchapter does not authorize a domestic entity or a managerial official of a domestic entity to exercise a power in a manner inconsistent with a limitation on the purposes or powers of the entity *contained in its governing documents*, this code, or other law of this state" (emphasis added).

[12]  "The certificate of formation may contain other provisions not inconsistent *with law relating to the organization*, ownership, governance, business, or affairs of the filing entity" (emphasis added).

of State. *See* Synod Bylaw 3.9.2.2.3, p. 141 (Exhibit B).  By purporting to amend the CTX Charter and the other CTX governance documents in violation of the CTX governance documents, including the Synod Constitution and Bylaws, CTX violated the TBOC, and took away Synod and LCMS rights and benefits in doing so.

72.     The Charter Amendment executed by Donald Christian on behalf of CTX and filed with the Texas Secretary of State on November 8, 2022 contains the materially false statement that "[t]he amendments to the certificate of formation have been approved in the manner required by the Texas Business Organizations Code and by the governing documents of the entity." *See* Exhibit L at p. 8.  CTX and Donald Christian had knowledge that the statement was materially false because they knew that CTX had  not obtained the Synod's prior approval and authorization, by and through the CCM, to the amendment of the CTX Charter pursuant to the Charter Amendment as required by the CTX governance documents.

73.     The CTX Amendments—passed in violation of the CTX governance documents—have caused substantial loss to the Synod and LCMS as CTX is currently conducting its affairs outside the CTX governance documents as they existed prior to November 8, 2022, including the Synod Constitution and Bylaws.  Actual damages cannot adequately compensate LCMS for such loss and, therefore, LCMS has  first and foremost sought declaratory relief.

74.     However, until and unless this Court affords LCMS the declaratory relief requested herein, the unlawful CTX Amendments have caused, and will continue to cause, loss to LCMS, for the CTX Amendments purportedly and wrongfully strip LCMS of all its rights under the CTX governance documents.  Under Sections 4.007 and 4.008 of the Texas Business Organizations Code, LCMS is authorized to bring this action to recover all damages

which in this case are at least $111,147,678, plus court costs, and reasonable attorney's fees caused by the unlawful conduct of CTX and its representatives.

**Count Six: Tortious Interference with Contract (Donald Christian)**

75.     LCMS incorporates herein by reference the allegations contained in the preceding paragraphs as if set out in full.

76.     LCMS had a valid contract with CTX regarding governance of the university.  The contractual relationship was created through nearly 100 years of continual operation of CTX pursuant to the CTX governance documents, including the Synod Constitution and Bylaws.  Donald Christian entered into an intentional and continuing scheme to interfere with this contractual relationship between CTX and LCMS.  Claiming to care for the Synod in public statements, but at the same time scheming to harm Synod through his actions, Donald Christian finally was successful in carrying out a long term plan to breach the historic polity of the Synod, cause schism in the Synod, and interfere with the existing contractual relationships between CTX and LCMS.  Upon information and belief the CTX BOR would not have taken the precipitous action to unilaterally change the CTX governance documents on November 8, 2022 but for the insistence and interference of Donald Christian in encouraging the CTX BOR to breach their fiduciary duties to the Synod.  The resulting interference by Donald Christian proximately caused LCMS injury in losing valuable contractual rights.  As a result, the LCMS has lost its historic ministry and governance oversight with respect to CTX and has been damaged through the loss of CTX in the amount of at least $111,147,678.  Plaintiff seeks this amount as damages against Donald Christian and all other damages allowed by law.

## VI.
## Attorney's Fees

77.     LCMS has been required to obtain the services of the undersigned attorneys to protect its rights.  LCMS has incurred, and continues to incur, attorney's fees and costs to protect its rights by this lawsuit. LCMS is entitled to recover its reasonable and necessary attorney's fees under the Texas Declaratory Judgment Act, the Federal Declaratory Judgments Act and/or section 38.001 of the Texas Civil Practice & Remedies Code. Therefore, LCMS is entitled to recover all of its costs, expenses, and reasonable and necessary attorney's fees incurred in the prosecution of this lawsuit.

## VII.
## Jury Demand

78.     LCMS demands a jury trial upon all issues of disputed fact and has tendered the appropriate fee with this Original Complaint.

## VIII.
## Conditions Precedent

79.     All conditions precedent to LCMS's claims for relief have been performed, excused, waived, occurred, or otherwise satisfied.

## IX.
## Conclusion and Request for Relief

80.     LCMS hereby seeks to recover from CTX all declaratory relief necessary to restore the parties to their rights, obligations and status quo prior to CTX's improper conduct in amending the CTX governance documents without authority. Alternatively, LCMS requests damages, as described above.  LCMS also seeks to recover its attorney's fees and costs.

81.     LCMS therefore respectfully requests that Defendants be cited to appear and answer herein, and on final trial, that Plaintiff be awarded a judgment against Defendants, jointly and severally, for the following:

a.    Declaratory relief as described herein and as may be just and necessary to afford LCMS all relief required to restore to LCMS all its rights, title, and interest related to CTX;

b.    Alternatively, in the unlikely event LCMS is not granted declaratory relief sufficient to fully restore to LCMS all its rights, title, and interest related to CTX, LCMS seeks specific performance under its contract with CTX, or alternatively, all actual damages caused by CTX, the Individual Defendants, and John Does 1-12's unlawful and wrongful conduct, which amount is believed to be at least $111,147,678;

c.    Attorney's fees;

d.    Court costs;

e.    Post-judgment interest as allowed by law; and

All other relief, at law and in equity, general and special, to which LCMS may be justly entitled.

Dated:  September 1, 2023.

Respectfully submitted,


By:    /s/ Steven Levatino
       Steven C. Levatino
       State Bar No. 12245250
       **Levatino|Pace PLLC**
       1101 S. Capital of Texas Hwy.
       Bldg. K, Suite 125
       Austin, Texas 78746
       T: 512-637-1581
       F: 512-637-1583
       steven@lpfirm.com


By:    /s/ Andrew MacRae
       Andrew F. MacRae
       State Bar No. 00784510
       MacRae Law Firm PLLC
       3267 Bee Cave Road
       Suite 107, PMB 276
       Austin, Texas 78746
       T: 512-565-7798
       andrew@macraelaw.co


By:    /s/ Gregg Kronenberger
       Gregg R. Kronenberger
       State Bar No. 24039998
       Kronenberger Law Firm, PLLC
       1101 S. Capital of Texas Hwy.
       Bldg. K, Suite 125
       Austin, Texas 78746
       T: 512-777-4141
       F: 512-402-3313
       M: 512-923-3158
       gregg@gkronenberger.com

       *Attorneys for Plaintiff*