**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **THE LUTHERAN CHURCH – MISSOURI SYNOD, a Missouri nonprofit corporation** *Plaintiff,* | § § § § | |
| | § | **Case No. 1:23-cv-1042-RP** |
| **v.** | § § | |
| **DONALD CHRISTIAN, CHRISTOPHER BANNWOLF, CONCORDIA UNIVERSITY TEXAS, INC., & JOHN DOES 1-12** *Defendants* | § § § § § § | |

## <u>DEFENDANTS' MOTION TO DISMISS</u>
### <u>FOR LACK OF SUBJECT MATTER JURISDICTION</u>
### <u>AND FAILURE TO JOIN INDISPENSABLE PARTIES</u>

Defendants Concordia University Texas ("CTX"), Donald Christian ("Christian"), and Christopher Bannwolf ("Bannwolf") submit this Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to Join Indispensable Parties asking that the Court dismiss the Complaint of the Lutheran Church – Missouri Synod nonprofit corporation ("LCMS") as follows:

## I.    <u>INTRODUCTION</u>

1.      This dispute arises out of CTX's amendment to its Articles of Incorporation and Bylaws to provide for corporate self-governance separate from the Lutheran Church – Missouri Synod. All claims in this lawsuit are based on Texas state law. Plaintiff is a Missouri non-profit corporation formed by the Lutheran Church – Missouri Synod ("Synod").[1] LCMS asserts diversity of citizenship as the basis for federal subject matter jurisdiction.

---

[1] Both the Missouri nonprofit corporation that filed this suit and the unincorporated association of Lutheran congregations are named "Lutheran Church – Missouri Synod." This motion (and Plaintiff's Complaint) distinguishes between the entities as follows: a) the Missouri nonprofit corporation is referred to as "LCMS"; and b) the unincorporated association of Lutheran congregations is referred to as "Synod."

2.      Synod is an unincorporated association with members throughout the United States, including Texas, and is therefore a citizen of Texas for diversity jurisdiction purposes. The Court should dismiss this lawsuit because: a) Synod is the real party in interest to this suit; b) LCMS is a nominal party and does not have standing to bring the claims in this lawsuit; c) Synod's Texas citizenship destroys diversity jurisdiction; and d) Synod is an indispensable party that must be joined such that, in equity and good conscience, the action should not proceed among the existing parties.

## II.    <u>EXHIBITS</u>

3.      The Complaint includes an appendix with 347 pages of exhibits. This motion is supported by nine of the exhibits from the LCMS Complaint as well as the Synod Board of Directors Policy Manual (**Ex. 5**) as follows:

a.    **Exhibit 1** – Concordia University Texas 1950 Charter – Complaint Exhibit F ("1950 Charter").

b.    **Exhibit 2** – Synod Bylaws – Complaint Exhibit B ("Synod Bylaws").

c.    **Exhibit 3** – Synod Constitution – Complaint Exhibit A ("Synod Constitution").

d.    **Exhibit 4** –Amended and Restated Articles of Incorporation of the Lutheran Church Missouri – Synod – Complaint Exhibit C ("LCMS Articles of Incorporation").

e.    **Exhibit 5** – Synod Board of Directors Policy Manual.

f.    **Exhibit 6** – CTX Amended Bylaws, November 8, 2022 – Complaint Exhibit M ("November 2022 Bylaws").

g.    **Exhibit 7** – CTX Pre-2022 Bylaws – Complaint Exhibit J ("Pre-2022 Bylaws").

h.    **Exhibit 8** – CTX Amended Charter, November 8, 2022 – Complaint Exhibit L ("Amended Charter").

i.    **Exhibit 9** – Synod Resolution 4-04, 2004 – Complaint Exhibit D ("Resolution 4-04").

j.    **Exhibit 10** – March 30, 2023 The Synod Commission on Constitutional Matters ("CCM") Minutes – Complaint Exhibit P.

### III.   <u>FACTS</u>

4.      <u>CTX is a Lutheran university in Austin, Texas</u>. CTX is one of several universities originally founded by members of churches associated with the predecessor to Synod. CTX was founded in the 1920s. **Compl**. ¶ 17. The nonprofit corporation for the university was formed in 1950. **Ex. 1** p.1. It adopted the name "Concordia University Texas" in 2007. **Compl**. ¶ 17. Donald Christian is CTX's President and Christopher Bannwolf is the Chairman of the CTX Board of Regents. **Compl**. ¶ 33.

5.      <u>The Lutheran Church Missouri Synod includes two separate entities – LCMS and Synod</u>. LCMS is a Missouri nonprofit corporation. **Compl**. ¶ 13. Synod is a synodical union of Lutheran congregations. **Compl.** ¶ 13.

6.      <u>Synod is an unincorporated association.</u> Synod is a "union of independent Lutheran congregations … composed of nearly 6000 congregations and nearly 2 million baptized members." **Compl**. ¶ 9. Synod's bylaws define it as "the association of self-governing Lutheran congregations and all its agencies on the national and district level." **Ex. 2** p.3 § 1.2.1(v); *see also* **Compl**. ¶ 10.

7.      <u>Synod has members in Texas.</u> Synod's Constitution and Bylaws define members as both congregations and individual ordained ministers. **Ex. 3** p.5, Art. V; **Ex. 2** p.3, § 1.21(m). Synod divides its member congregations into districts, including a Texas District **Ex. 3** p.7, Art. XII; & **Ex. 2** p.5, § 1.3.6; **Compl**. ¶¶ 30, 35, 49.

8.      <u>LCMS is a non-profit corporation created by Synod.</u> LCMS describes itself as a "temporal legal entity." **Compl**. ¶ 13. Synod Bylaws define LCMS, or "Corporate Synod" as "the Missouri nonprofit corporation, including its offices, boards, commissions, and departments." **Ex. 2** p.2, § 1.2.1(f). LCMS was formed by "the Synod's member congregations in convention", **Compl**. ¶ 13, and the power of LCMS is "lodged with the accredited clergy and lay delegates of the congregations in actual membership" with Synod. **Ex. 4** p.1-2, Art III.

9.      <u>Synod's Board of Directors, not LCMS, is Synod's legal representative.</u> In its Complaint, LCMS states that it is the "legal representative of the world-wide Lutheran religious entity known as Synod." **Compl**. ¶ 1. However, Synod's Constitution and Bylaws state that Synod's Board of Directors, not LCMS, is the legal representative of Synod. **Ex. 3** p.7, Art. XI, Sec. (E)(2); **Ex. 2** p.6, § 1.4.4; p.95, § 3.3.4. Synod's Board of Director Policies require Board approval for initiation of any legal proceedings on behalf of Synod. **Ex. 5** p.47, § 4.14.2.2(h)(3).

10.     <u>Synod's Board of Directors is the custodian of Synod's Property.</u> Similarly, Synod's Bylaws establish that its board of directors is "the custodian of all property of Synod." **Ex. 2** at p.6, § 1.4.4; p.95, § 3.3.4; p.98 § 3.3.4.7. Synod property includes "[a]ll assets, real or personal, tangible or intangible, whether situated in the United States or elsewhere, titled or held in the name of corporate Synod [LCMS], its nominee, or an agency of Synod." **Ex. 2** p.3, § 1.2.1(r).

11.     <u>CTX's Board of Regents voted to amend CTX's bylaws in 2022.</u> On November 8, 2022, the CTX board of regents amended its bylaws. **Compl**. ¶ 24; **Ex. 6**. Prior to November 8th, CTX's bylaws stated that "[t]he power to alter, amend or repeal these Bylaws or adopt new bylaws shall be vested in the [CTX] Board, provided that any such changes shall be approved by a simple majority." **Ex. 7** p.12, Art. Eight. LCMS has not asserted in its Complaint that the November 2022 amendments were not approved by a simple majority of CTX's board of regents.

12.     <u>CTX also amended its Charter on file with the State of Texas.</u> On November 8, 2022, the CTX board of regents also amended its Charter.  **Compl**. ¶ 25. CTX filed the amendments to its Charter with the Texas Secretary of State. **Ex. 8**. Prior to the November 2022 amendment, CTX's charter stated that "the business of this corporation shall be conducted and its affairs shall be controlled by a board of trustees to be elected in accordance with the Rules and Regulations of the Lutheran Church – Missouri Synod." **Ex. 1** p.1, Art. V.  LCMS has not asserted in its Complaint

that the CTX Board of Regents was not elected in accordance with the Rules and Regulations of the Lutheran Church – Missouri Synod.

13.  <u>The Complaint alleges that the bylaw and charter amendments harmed both LCMS and Synod.</u> **Compl.** ¶¶ 34 ("They have as a result caused harm to the LCMS and Synod…"); ¶ 38 ("…that has caused substantial harm and had a profound impact on Synod."); ¶ 50 ("…CTX has caused damage to LCMS in the form of the loss of valuable contractual rights…"); ¶ 73 ("…have caused substantial loss to the Synod and LCMS…"); ¶ 74 ("…loss to LCMS, for the CTX Amendments purportedly and wrongfully strip LCMS of all its rights…"); ¶ 76 ("…LCMS has lost…").

14.  <u>LCMS asserts each claim in its Complaint on behalf of itself and on behalf of Synod.</u> In a footnote to its causes of action, LCMS states in its Complaint

> [w]hile LCMS asserts each claim for relief in the complaint as the Plaintiff, it does so both on its behalf, as applicable, and on the Synod's behalf. Accordingly, if a claim for relief is asserted by LCMS, it is also asserted by and on behalf of the Synod, as appropriate, and vice versa. On occasion, out of an abundance of caution, a claim is asserted on behalf of both the Synod and LCMS.

**Compl**. fn. 10.

15.  <u>The Complaint asserts the harms to LCMS and Synod arise from a loss of rights formerly contained in the CTX governing documents.</u>  LCMS asserts the following rights have been lost because of the amendments to CTX's charter and bylaws:

    a.  the express right of the Synod, through its national convention, to elect four members of the CTX BOR;[2]

---

[2] "BOR" refers to the Board of Regents.

    b.   the express right of the Texas District of the Synod, acting in convention, to elect four members of the CTX BOR;

    c.   the express right of the Praesidium of the Synod to appoint one member of the CTX BOR;

    d.   the express right to participate in the prior approval panel for the appointment of the President of CTX;

    e.   the express right to approve any changes to CTX governance documents;

    f.   the express right to effect ecclesiastical supervision over the doctrine taught and practiced in the institution, including prior approval of theological faculty and the removal, through ecclesiastical discipline, of rostered faculty and administration from office.

**Compl**. ¶ 49 (internal citations omitted).

16.    <u>The right to elect regents, if one existed, belonged only to Synod, not LCMS.</u>[3] The Complaint identifies the right for Synod to elect members to CTX's board as arising from a clause in CTX's 1950 charter which stated: "The business of this corporation shall be conducted and its affairs shall be controlled by a board of trustees to be elected in accordance with the Rules and Regulations of the Lutheran Church—Missouri Synod." **Compl**. ¶¶ 20; 26 (quoting **Ex. 1** p.1-2, Art. V). The rules and regulations refer to the Synod's bylaws that establish the composition and number of the board of regents.  **Compl**. ¶ 30 ("…up to 10 of the 18 CTX regents were elected or appointed…pursuant to, and in accordance with, the Synod Bylaws."); *see also* **Ex. 2** p.145, §

---

[3] Defendants do not concede that any alleged right in the Complaint is in fact a "right", the loss of which can cause harm or be actionable by either Synod or LCMS. However, this motion is limited to an attack on the jurisdictional facts contained in the Complaint. *Scheur v. Rhodes*, 416 U.S. 232, 236 (1974) ("When a federal court reviews the sufficiency of a complaint….The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.") Defendants reserve the right to attack the merits of each claim in other appropriate motions or pleadings as necessary.

3.10.6.2. According to Synod Bylaws, a board of regents may have as many as eighteen members to be elected or appointed as follows:

    a.   four are elected by "the conventions of the Synod";

    b.   four are elected by the "geographical district in which the institution is located";

    c.   a minimum of four but not more than eight are appointed by members of the board of regents;

    d.   the president of the district in which the college or university is located or a district vice-president as his standing representative serve as an ex officio member; and

    e.   one member is appointed by the Praesidium of the Synod.

    **Ex. 2** p.145-46, §§ 3.10.6.2(1)-(5); *see also* **Compl**. ¶ 30.

Under the Synod Bylaws, no regents are appointed or elected by LCMS. *See Id*. The Complaint also specifically identifies the election of four members to the CTX Board of Regents as an "***express right of Synod***, through its national convention". **Compl.** ¶ 49(a). The right to elect regents, if any, belonged to Synod, not to LCMS.

17.   <u>The right to approve changes to the CTX governance documents, if one existed, belonged to Synod, not LCMS.</u> LCMS claims that the right to approve changes to CTX's governance documents arises from a provision of CTX's pre-November 2022 bylaws which stated CTX is subject to the provisions of the constitution and bylaws of the Lutheran Church – Missouri Synod. *See* **Compl.** ¶ 37. Synod Bylaws state that all agencies, such as universities, shall submit amendments to governance documents to the Commission on Constitutional Matters for review and approval. **Ex. 2** p.121, § 3.9.2.2.3(a); *see also* **Compl.** ¶ 23 ("…the CTX [board of regents], without prior notice to or permission from the [Commission on Constitutional Matters] as required under the Synod Bylaws, amended the CTX Charter…"). The Commission on Constitutional

Matters ("CCM") is "a group of persons, elected and appointed as prescribed in the Bylaws, rendering a precisely defined function *of the Synod* and responsible, as the case may be, *to the Synod in convention, the president of the Synod, or to the Board of Directors of the Synod."* **Ex. 2** p.1, § 1.2.1(c) (emphasis added). The right to approve amendments to governing documents, if any, belonged to Synod, not to LCMS.

18.    The right to participate in the prior approval panel for the appointment of a CTX president, if it existed, belonged to Synod, not LCMS. The Complaint similarly asserts that CTX's prior bylaws also gave Synod the right to supervise CTX's theology including determining "the president of CTX." **Compl. ¶** 32 (citing **Ex. 2** p.149, § 3.10.6.6). Synod's bylaws state that in the event of a vacancy for a Concordia University president, the President of the Concordia University System will convene a "prior approval panel consisting of the President of the Synod, the district president serving on the institution's board of regents and the chair of the Board of the Concordia University system." **Ex. 2** p.151-52, § 3.10.6.6.2(b)(6). The institution's board of regents select a president from a list created by this prior approval committee. *Id.* p.152-53, § 3.10.6.6.2(d). LCMS is not involved in the prior approval committee, nor does it appear to be involved anywhere else in the selection of a university president. *See Id.* p.151-53, § 3.10.6.6.2. The right to approve the CTX president, if any, belonged to Synod, not to LCMS.

19.    The right to supervise the theology taught and practiced at CTX, if it existed, belonged to Synod, not LCMS. The Complaint asserts that CTX's prior bylaws gave Synod the right to supervise "the teaching and practice of doctrine at CTX…" **Compl**. ¶ 32. This includes selection of the theological faculty. *Id*. (citing **Ex. 2** p.153, § 3.10.6.7.3). Synod bylaws require that all initial appointments of theological faculty receive approval "by a majority vote of the President of the Synod (or his designee), the chairman of the Council of Presidents (or his designee), and a member

of the Concordia University System board selected by the chair…" **Ex. 2** p.153, § 3.10.6.7.3. LCMS in not involved in approving appointments of theological faculty. *See **Id***. The right to supervise theology, if any, belonged to Synod, not to LCMS.

20.    The right to be granted a reversionary interest in CTX's property, if it existed, belonged to Synod. LCMS asserts that CTX is required to, by Resolution 4-04, adopted by the 2004 Synod convention, to grant LCMS a reversionary interest in its campus property. **Compl**. ¶ 14. Resolution 4-04 states that agencies, such as CTX must create a reversionary interest in their property to Synod, not LCMS:

> WHEREAS, ***The Synod*** owns the properties of all agencies of the Synod, including its institutions of higher education, regardless of how such properties are titled (Bylaw 3.51 i) ... That each institution of higher education of the Synod shall hold title to properties presently owned or at any time hereafter acquired by it subject to a reversionary interest or possibility of a reverter ***in favor of the Synod***…

**Ex. 9** (emphasis added).

The right to a reversionary interest, if any, belonged to Synod, not to LCMS.

21.    The Complaint also asserts LCMS and Synod have both suffered harm because of CTX's and/or its governing officials' alleged breach of fiduciary duties and promises. The Complaint asserts that it and Synod have suffered harm due to the breach of the following fiduciary duties and promises:

   a.  CTX had an "obligation to reestablish [a] reversionary interest in LCMS's favor." **Compl**. ¶ 37; *see also* **Compl**. ¶ 61 (asserting CTX, Christian, and Bannwolf each breached their fiduciary duties by failing to grant a reversionary interest in CTX's campus property to LCMS);

b.   CTX's president and vice president "assumed their positions pledging that they would govern the university subject to the LCMS's Constitution and Bylaws." **Id**.*; See also* **Id**. p.¶ 36;

c.   CTX promised "to comply with the Synod Constitution and Bylaws" which establish "the binding effect of resolutions passed by the Synod in convention." **Compl**. ¶ 57;

d.   Amending CTX's governing documents without first obtaining approval. **Compl**. ¶ 61; and

e.   Refusing to seat new regents selected by the Synod Convention. **Id**.

22.   <u>A fiduciary duty, if owed by CTX, Christian, Bannwolf, or other regents, is owed to Synod, not LCMS.</u>[4] The Complaint alleges that "CTX is governed and operated by the CTX [Board of Regents] as a fiduciary of the Synod." **Compl**. ¶ 23; (*citing* **Ex. 2** p.147-48, § 3.10.6.4(i)(1)). This Synod bylaw states that a university board of regents "shall operate and manage the institution as the agent of the Synod", including "carefully exercising its fiduciary duties to the Synod." **Ex. 2** p.147-48, § 3.10.6.4(i)(1). The Complaint further alleges that each member of the CTX Board of Regents was "elected or appointed as a fiduciary of Synod." **Compl**. ¶¶ 30, 60 (citing **Ex. 2** p.147-48, § 3.10.6.4(i)(1) and 149, § 3.10.6.5.) This Synod Bylaw reads "recognizing its fiduciary duty as a board … under no circumstances shall a board delegate its authority…". **Ex. 2** p.149, § 3.10.6.5. The Synod Bylaws do not provide for any fiduciary duties to LCMS. *See Id*. In addition, a CCM opinion from March of 2023 found that the definitions of fiduciary duty in Black's Law Dictionary "inform the use of the term to describe the duties regents owe *to the ecclesial Synod*."

---

[4] Defendants do not concede that any fiduciary duty alleged in the Complaint is in fact a fiduciary duty the breach of which can cause harm or be actionable by either Synod or LCMS. However, this motion is limited to an attack on the jurisdictional facts contained in the Complaint. *Scheur*, 416 U.S. at 236. Defendants reserve the right to attack the merits of each claim in other appropriate motions or pleadings as necessary.

CCM Minutes, March. 30, 2023, **Ex. 10** p.12 (emphasis in original). The CCM opinion does not identify a fiduciary duty owed to LCMS. *See Id*. The alleged fiduciary duties, if any, are owed to Synod, not to LCMS.

23.     <u>A promise or duty to include a reversionary interest in CTX's property, if made or owed, was made or owed to Synod.</u> The Complaint bases its assertions that CTX has breached a promise or fiduciary duty to establish a reversionary interest in its property on Resolution 4-04 of the 2004 Synod Convention. **Compl.** ¶¶ 56. As stated above, *supra* ¶ 20, Resolution 4-04 states that agencies, such as CTX must create a reversionary interest in their property to Synod, not LCMS. **Ex. 9.**

24.     <u>A promise by CTX to comply with the Synod Constitution and Bylaws, if made, was made to Synod, not LCMS.</u> Other than the provision of CTX's pre-2022 Bylaws which stated the university was "subject to the provisions of the constitution and bylaws" of Synod, the Complaint does not identify when or how CTX made a promise to comply with Synod's Constitution or Bylaws. *See* **Compl.** ¶ 56-57. However, none of the identified "rights" that arise from such a "promise" belong to LCMS. As demonstrated above, *supra* ¶¶ 17-19, all alleged rights of governance or involvement in CTX through Synod's Constitution and Bylaws belong to Synod, not LCMS. *See* **Compl.** ¶¶ 20, 26. 30, 35; **Ex. 1**; **Ex. 2** p.146, § 3.10.6.2 and 146-47, § 3.10.6.3 (appointing regents); *see also* **Compl.** ¶¶ 32, 35; *see also* **Ex.2** p.149-50, § 3.10.6.6 and 153, § 3.10.6.7.3 (supervision of doctrine); *see also* **Compl.** ¶ 23, **Ex. 2** p.121, § 3.9.2.2.3(a) (approving governing documents); and *see also* **Ex. 2** p.151-52, § 3.10.6.6.2(b)(6) (approving university presidents). Nothing in these provisions confer any promise or rights on LCMS.

25.     <u>A fiduciary duty to only amend CTX's governing documents after obtaining Synod approval, if one exists, belongs to Synod.</u> The Complaint alleges that CTX, Christian and Bannwolf

violated a fiduciary duty to LCMS when they modified CTX's Charter and Bylaws "all without the permission (or even notice to) LCMS." **Compl**. ¶ 61. As previously discussed, the Synod bylaws require notice and approval of the CCM, a commission of Synod, not LCMS. *Supra* ¶ 18. **Compl**. ¶ 23, **Ex. 2** p.121, § 3.9.2.2.3(a)

26.     A fiduciary duty to seat new regents selected by the Synod Convention, if one exists, belongs to Synod, not LCMS. As discussed above, *supra* ¶ 16, LCMS is not involved in the selection and seating of new CTX regents. The Synod Bylaws reserve that right to the Synod in Convention, the Praesidium of the Synod, the Texas District of the Synod, and the Board of Regents itself. **Ex. 2** p.145-6, §§ 3.10.6.2(1)-(5); *see also* **Compl.** ¶ 30.

## IV.     ARGUMENT

27.     The Court should dismiss LCMS's complaint for lack of subject matter jurisdiction. Taking the allegations in the Complaint, and the documents attached thereto, as true, Synod, not LCMS, is the real party in interest and the real party to the controversy. Synod's citizenship, identified through the citizenship of its members, is controlling for the purpose of diversity jurisdiction. As Synod has Texas members and Defendants are residents of Texas, there is not complete diversity between the parties. In the alternative, Synod is an indispensable party and must be joined to this suit. Its joinder also results in a lack of complete diversity between parties. Accordingly, the Complaint should be dismissed.

### A.     AUTHORITIES

28.     A Complaint may be dismissed for lack of subject matter jurisdiction on three separate grounds. It may be dismissed on "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.

1981). If a motion to dismiss for lack of subject matter jurisdiction "is based solely on the complaint, the court must accept the Plaintiff's allegations as true." *Williamson*, 645 F.3d at 412.

29.   <u>It is the Plaintiff's burden to demonstrate federal jurisdiction</u>. *Gibbs v. Buck*, 307 U.S. 66, 72 (1939) (The burden of showing by the admitted facts that the federal court has jurisdiction rests upon the complainants.); *see also McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936) ("As he is seeking relief subject to this supervision, it follows that he must carry throughout the litigation the burden of showing that he is properly in court.")

30.   <u>Whether a complaint falls under federal jurisdiction "'ordinarily depends on the facts as they exist when the complaint is filed.'"</u> *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 569 (1992) (quoting *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826 at 830 (1989)).

      i.    <u>Diversity Jurisdiction</u>

31.   <u>A district court has original jurisdiction of civil actions between diverse citizens</u>. Diversity jurisdiction is only vested in federal district courts when the controversy is "between citizens of different states." 28 USC § 1332(a)(1). The diversity of citizenship must be complete; "a district court cannot exercise diversity jurisdiction if one of the plaintiffs shares the same state citizenship as one of the defendants." *Whalen v. Carter*, 954 F.2d 1087, 1094 (5th Cir. 1992)

32.   <u>An unincorporated church is a citizen of every state in which its members live</u>. It is well settled that "an unincorporated association is deemed a citizen of every state in which its members reside." *Hummel v. Townsend, 883* F.2d 367, 369 (5th Cir. 1989) (citing *United Steelworkers of America v. R.H. Bouligny, Inc*., 382 U.S. 145 (1965). This same principle applies to unincorporated churches. *See Id*. (finding that "[s]ince at least some [Reorganized Church of Jesus Christ of Latter Day Saints] World Church members are citizens of Texas, the RLDS World Church is deemed a citizen of Texas.") If its structure is complex, "the citizenship of unincorporated associations must

be traced through however many layers of partners or members there may be." *Hart v. Terminex Int'l*, 336 F.3d 541, 543 (7th Cir. 2003).

33.     <u>Synod is a citizen of Texas.</u> Synod's members are congregations and individual ministers of the Evangelical Lutheran Church. **Ex. 3** p.2-3, Art. V; **Ex. 2** p.3, § 1.2.1(m). Synod is divided into districts that are made up of member congregations. **Ex. 3** p.7-9, Art. XII; *see also* **Ex. 2** p.5, § 1.3.6. There is a Texas district of the Synod. *See* **Compl**. ¶¶ 30, 35, 49. Therefore, there are Synod member congregations and ministers in Texas and Synod has citizenship in Texas through its members. *Hummel, 883* F.2d p.369; *see also Hart*, 336 F.3d at 543 ("citizenship of unincorporated associations must be traced through … layers of partners or members").

34.     <u>Complete diversity between the parties is not possible if Synod is a Plaintiff or if Synod's citizenship otherwise controls</u>. Defendants CTX, Christian, and Bannwolf are citizens of Texas. **Compl**. ¶¶ 2-4. Synod shares citizenship with these three defendants. If Synod is joined as Plaintiff, or if Synod's citizenship otherwise controls for diversity, there is not complete diversity between the parties and the Court lacks subject matter jurisdiction. *Whalen*, 954 F.2d at 1094 (5th Cir. 1992).

   ii.     <u>Federal Rule of Civil Procedure 17 & Real Party in Interest</u>

35.     <u>Federal actions "must be prosecuted in the name of the real party in interest."</u> Fed. R. Civ. P. 17(a)(1). Under Rule 17, the following is the exclusive list of those who can sue in their own name without joining the person for whose benefit the action is brought: (A) an executor; (B) an administrator; (C) a guardian; (D) a bailee; (E) a trustee of an express trust;  (F) a party with who or in whose name a contract has been made for another's benefit; and (G) a party authorized by statute. *Id*. LCMS is not any of these. Therefore, if LCMS is authorized to bring claims for the benefit of Synod, it may not do so without joining Synod as a party.

36.  <u>The party that possesses the substantive right under state law determines who is the real</u> <u>party in interest for diversity suits</u>. "Whether a person is a real party in interest depends upon his substantive rights, which, in diversity cases … are determined by state law." *United States v. 936.71 Acres of Land*, 418 F.2d 551, 556 (5th Cir. 1969) (citing *American Fidelity & Cas. Co. v. All Amer. Bus Lines*, 179 F.2d 7 (10th Cir. 1950)); *see also Farrell Constr. Co. v. Jefferson Parish*, 896 F.2d 136, 140 (5th Cir. 1990) ("A federal court sitting in diversity must look to state law to determine which party holds the substantive right.") A party does not have standing "to assert a right if it is not his own." *936.71 Acres of Land*, 418 F.2d at 556. LCMS does not have standing to assert claims on behalf of Synod, which is the real party in interest in this lawsuit.

37.  <u>A party's capacity to sue and be sued depends on the type of party</u>. For individuals not acting in representative capacity, capacity is determined by the law of the state in which the individual is domiciled. Fed. R. Civ. P. 17(b)(1). For corporations, it is determined by the law under which it was organized. Fed. R. Civ. P. 17(b)(2). For all other parties, it is determined by the law of the state where the court is located. Fed. R. Civ. P. 17(b)(3).

38.  <u>In Texas, unincorporated associations have the capacity to sue and be sued</u>. The Texas Business Organization Code states that a "[a] nonprofit association, in its name, may institute, defend, intervene, or participate in a judicial, administrative, or other governmental proceeding or in an arbitration, mediation, or any other form of alternative dispute resolution." Tex. Bus. Org. Code § 252.007. A "nonprofit association" is defined as "an unincorporated organization, other than one created by a trust, consisting of three or more members joined by mutual consent for a common, nonprofit purpose." Tex. Bus. Org. Code § 252.001.

39.  <u>Synod is an unincorporated association that has the capacity to sue and be sued in its own</u> <u>name</u>. Synod is unincorporated and is an "association of self-governing Lutheran congregations."

**Compl**. ¶ 10; **Ex. 2** p.3, § 1.2.1(v). It has both congregational members and individual members that are ministers of religion. **Ex. 3**, p.2-3, Art. V; **Ex. 2** p.3, § 1.2.1(m). Its members have joined together for a nonprofit purpose. *See* **Ex. 3** p.1-2, Art. III; *see also* **Ex. 5** p.19-21, §§2.2-2.5. Under Texas law, Synod is a "nonprofit association" and has the capacity to sue and be sued in its own name. Tex. Bus. Org. Code §§ 252.001, 252.00; *see e.g. Episcopal Diocese of Ft. Worth v. Episcopal Church*, 602 S.W.3d 417, 420 (Tex. 2020) (describing a religious organization made up of member congregations as an unincorporated association).

40.    <u>LCMS may not bring suit for the benefit of Synod without joining Synod</u>. LCMS is a separate corporate entity from Synod. **Compl**. ¶ 13. LCMS alleges that it is the "legal representative" of Synod. **Compl**. ¶ 1. This claim is not supported by Synod's Constitution or Bylaws, which state that Synod's Board of Directors, not the corporate entity LCMS, is Synod's legal representative. **Ex. 3** p.7, Art. XI, Sec. (E)(2); **Ex. 2** p.6, § 1.4.4, p.95, §3.3.4, p.98, §3.3.4.7.[5] Additionally, even if LCMS is Synod's "legal representative", it still cannot bring a suit on behalf of Synod without joining Synod.  A "legal representative" is an executor, an administrator, a guardian, a bailee, a trustee of an express trust, a party with who or in whose name a contract has been made for another's benefit or a party authorized by statute to bring a suit on behalf of Synod. *See* Fed. R. Civ. P. 17(a)(1). Because LCMS is not one of the limited parties that can bring suit on behalf of another under Rule 17, LCMS cannot bring suit for the benefit of Synod without joining Synod as a party.

---

[5] *See also* **Ex. 5** p.47, § 4.14.2.2(h)(3) (requiring Synod's Board of Director's approval to initiate any and all lawsuits, arbitrations, or administrative proceedings on behalf of the Synod.)

41.   <u>If Synod is the real party in interest, then LCMS does not have standing to assert the claims in the Complaint</u>.[6] If under Texas law Synod exclusively holds the right to prosecute any of the claims asserted in the Complaint, then Synod is the real party in interest to that claim. *United States v. 936.71 Acres of Land*, 418 F.2d 551, 556 (5th Cir. 1969); *see also Farrell Constr. Co. v. Jefferson Parish*, 896 F.2d 136, 140 (5th Cir. 1990). Because Synod, and not LCMS, is the real party in interest to claims asserted in the complaint, LCMS does not have standing to assert that claim. *936.71 Acres of Land*, 418 F.2d at 556.

  iii.   <u>Real Party to the Controversy</u>

42.   <u>Federal courts must disregard nominal parties and base diversity jurisdiction on the citizenship of the real party to the controversy</u>. The U.S. Supreme Court has "established that the "citizens" upon whose diversity a plaintiff grounds jurisdiction must be real and substantial parties to the controversy." *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460-461 (1980) (citing *McNutt v. Bland*, 2 How. 9, 15 (1844); *Marshall v. Baltimore & Ohio R. Co.*, 16 How. 314, 328-329 (1854); *Coal Co. v. Blatchford*, 11 Wall. 172, 177 (1871)). Thus, a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy. *Id*. (citations omitted). Courts must consider "the citizenship of non-parties when a party already before the court is found to be a non-stake holder/agent suing only on behalf of another." *Bynane v. Bank of N.Y. Mellon*, 866 F.3d 351, 359 (5th Cir. 2017) (citing *Corfield v. Dall. Glen Hills LP*, 355 F.3d 853, 865 n.10 (5th Cir. 2003)).

43.   <u>*Hummel v. Townsend* illustrates the real party in controversy test</u>. In *Hummel*, the Presiding Bishop of the Reorganized Church of Jesus Christ of Latter-Day Saints (RLDS World Church)

---

[6] If the Court believes that Synod was intentionally left off the pleadings improperly or collusively to invoke the jurisdiction of the Court, it must find that it does not have jurisdiction over any claim. 28 USC § 1359.

brought suit in his capacity as trustee for the church. *Hummel*, 883 F.2d at 368. According to the complaint, Hummel acted "for and on behalf of" the church and was "formally appointed by the RLDS [] church to act as a trustee for purposes of holding all church property…and including maintaining legal action on behalf of" the church. *Id*. Hummel testified that he, along with two other bishops were "responsible for all of the business or temporal affairs of the church wherever the church is located in the world." *Id*. at 369-70. The Fifth Circuit concluded that, although a trustee's citizenship generally controls for the purposes of a diversity suit on behalf of a trust, in the case of *Hummel*, the church's citizenship, not the Bishop's, controlled for diversity purposes. *Id*. at 371-72. This is because the Bishop was not "an outside or third-party trustee for others, but [was] rather a trustee *only* by virtue of his position (Presiding Bishop) *within* and *as part* of the RLDS World Church itself," and had no status or interest independent of his position as the Presiding Bishop. *Id*. at 372 (emphasis in original). Because the citizenship of the church was not diverse, the 5th Circuit affirmed dismissal for lack of jurisdiction.

44.     If LCMS does have capacity to bring suit on behalf of Synod, Synod is the real party in controversy and Synod's citizenship controls for diversity. Like the bishop in *Hummel*, LCMS alleges that it "carries out the temporal affairs of the Synod", "conducts the secular business affairs of the Synod" and was formed by the "Synod's member congregations in convention." **Compl**. ¶¶ 12-13. Synod's member congregations are the voting members of LCMS. **Ex. 4** p.12, Art. III. Like the bishop in *Hummel*, LCMS is not an outside or third-party trustee, partner, or agent. *See Hummel*, *Id*. at 372. It is only a corporate representative by virtue of it being within and part of Synod. *Id*. Therefore, LCMS's interest, if any, in CTX, CTX's property, and/or CTX's governing documents is not independent of Synod's interest, but exists solely due to LCMS' position as the

Synod's corporate wing. Under *Hummel,* the citizenship of Synod, not LCMS, controls diversity jurisdiction. *Id.*

    iv.    <u>Federal Rule of Civil Procedure 19 & Indispensable Parties</u>

45.    <u>Federal Rules require the joinder of indispensable parties</u>. A party whose joinder will not deprive the court of subject-matter jurisdiction must be joined if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.
> Fed. R. Civ. P. 19(a)(1).

If a party "has not been joined as required, the court must order that the person be made a party." Fed. R. Civ. P. 19(a)(2).

46.    <u>Joint obligees to a contract are both indispensable parties in a suit against an obligor.</u> The general rule is "where two or more parties are joint obligees, they are indispensable parties in an action for the enforcement of that obligation." *Harrell & Sumner Contracting Co. v. Peabody Peterson Co.*, 546 F.2d 1227, 1228-29 (5th Cir. 1977). One of the reasons for this "is the necessity or propriety for conformity with remedies for enforcing those interests to the nature of the interests themselves." *Bry-Man's, Inc. v. Stute*, 312 F.2d 585, 587 (5th Cir. 1963) (internal citations omitted). As discussed above, the alleged contractual obligations set forth in the Complaint are owed to Synod, not to LCMS. If, as alleged by LCMS, such contractual obligations are also owed to LCMS, then Synod and LCMS are joint obligees. Therefore, Synod must be joined, which destroys diversity jurisdiction.

47.    <u>If an indispensable party cannot be joined, "the court must determine whether, in equity</u>

<u>and good conscience, the action should proceed among the existing parties or should be</u>

<u>dismissed."</u> Fed. R. Civ. P. 19(b). The court should consider:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.
> *Id.*

Adequacy of judgment "refers to the public stake in settling disputes by wholes wherever possible." *Republic of Philippines v. Pimentel*, 553 U.S. 851, 870 (2008) (internal quotations omitted). It is a "social interest in the efficient administration of justice and the avoidance of multiple litigation" that supports joinder of absent claimants. *Id.* (internal quotations omitted).

48.    <u>Because CTX's duties, if any, are owed to both Synod and LCMS, Synod is an</u>

<u>indispensable party and the Court should dismiss.</u> If Synod and LCMS are joint obligees to a contract with CTX or a promise by CTX, then Synod is an indispensable party. *Harrell & Sumner Contracting Co. v. Peabody Peterson Co.*, 546 F.2d 1227, 1228-29 (5th Cir. 1977); *Bry-Man's, Inc. v. Stute*, 312 F.2d 585, 587 (5th Cir. 1963) (internal citations omitted). Synod's joinder as a Plaintiff would impact the diversity of citizenship depriving this Court of jurisdiction. *See* 28 USC § 1332. Judgment without Synod as a party would prejudice CTX and be inadequate. Specifically, LCMS has asserted six separate causes of action based on rights, duties, and privileges that Defendants allegedly owe to LCMS, Synod, and/or both. **Compl**. ¶¶ 42-76; *see also* **Compl**. fn 10. Judgment rendered in Synod's absence would not put to rest every cause of action that either LCMS and/or Synod could claim, therefore judgment would not be adequate. *See Pimentel*, 553 U.S. at 870.

Additionally, every claim plead in the Complaint is a Texas State Law claim which can be adjudicated in Texas State Courts, therefore LMCS and Synod have an adequate remedy.

49.     <u>Each of the forgoing legal authorities applies to every claim.</u> What follows is an application of these rules to each cause of action asserted by LCMS. Discussion of Plaintiff's First Claim under the Texas Declaratory Judgment Act is the last claim discussed because it seeks declarations relating to each of the other 5 claims.

       **B.**    **<u>CLAIM 2: Breach of Contract.</u>**

50.     <u>In Texas, only parties to contracts have the right to enforce a contract's obligations</u>. It has long been recognized by Texas courts that "it is a necessity that a contract should be mutually binding upon both parties in order to sustain an action by one for its enforcement or for damages for its breach." *Tinsley v. Dowell*, 87 Tex. 23, 28 (Tex. 1894); *see also Boy Scouts of America v. Responsive Terminal Systems, Inc*., 790 S.W.2d 738, 747 (Tex. App.—Dallas 1990, writ denied) ("In order to maintain an action to recover damages flowing from the breach of a written agreement, there must ordinarily be a privity existing between the party damaged and the party sought to be held liable for the repudiation of the agreement." (internal citations omitted)); *see also Smith v. CDI Rental Equip., Ltd.,* 310 S.W.3d 559, 566 (Tex. App.—Tyler 2010, no pet.) ("The general rule is that only the parties to a contract have the right to complain of a breach thereof.")

51.     <u>There must be an explicit intent to grant a benefit to a third-party for an external party to sue for the enforcement or damages for the breach of a contract</u>. In Texas, "there is a presumption against, not in favor of, third-party beneficiary agreements." *MCI Telecomms. Corp. v. Texas Utils. Elec. Co*., 995 S.W.2d 647, 652 (Tex. 1999) (internal citation omitted). Absent clear indication that the parties intended to confer a direct benefit to a third-party, that party may not maintain an action as a third-party beneficiary. *Id*. Incidental benefits "that may flow from a contract to a third party do not confer the right to enforce the contract." *S. Tex. Water Auth. v. Lomas*, 223 S.W.3d 304, 306

(Tex. 2007) (citing *MCI Telecomms. Corp.* at 652). The parties must have intended "to secure some benefit for the third party and entered into the contract directly for the third party's benefit." *Id*.

52.    <u>The "rights of external control" LCMS asserts, if such rights exist, belong to Synod</u>. LCMS claims that CTX's governing documents are a contract between LCMS and CTX which grant LCMS the right to elect members to CTX's board of regents, participate in a prior approval panel for CTX's president, approve changes to CTX's governance documents, and permit ecclesiastical supervision of CTX's faculty. **Compl**. ¶ 49. According to the Complaint and Synod Bylaws, each of these alleged "rights" belong to Synod, not LCMS: (1) Synod, the Texas District of Synod, and the Praesidium of Synod elect or appoint members to CTX's board of regents (**Compl**. ¶ 30; *see also* **Ex. 2** p.145-46, §§ 3.10.6.2(1)-(5); (2) Synod's CCM is entitled to notice and approval for governing document amendments (**Compl**. ¶ 23; *see also* **Ex. 2** p.121, § 3.9.2.2.3(a); (3) Synod's president sits on the prior-approval panel for presidential selections (**Ex. 2** p.151-52, § 3.10.6.6.2(b)(6)); and (4) Synod may appoint theological faculty. **Ex. 2** p.153, § 3.10.6.7.3.

53.    <u>LCMS has not identified an explicit right to enforce an agreement between CTX and Synod</u>. LCMS has alternatively asserted a right to enforce the alleged contract between CTX and Synod as a "third-party beneficiary." **Compl**. ¶ 51. The "benefits" LCMS claims from the alleged contract between Synod and CTX are explicitly named as the rights of Synod in Complaint:

> In this case, ***Synod had the right*** to elect regents to the CTX [Board of Regents], approve changes to the CTX governance documents, participate in the prior approval panel for the appointment of a CTX president, supervise the theology taught and practiced as Synod agencies, and be granted a reversionary interest in CTX's property. Each of those rights has been stripped away as a result of CTX's unauthorized actions. As a result, ***CTX has caused damages to LCMS*** in an amount of at least $111,147,678.

Compl. ¶ 52. (emphasis added).

54.    <u>The Court should dismiss because LCMS is not a real party in interest and does not have</u> <u>standing to bring the claim</u>. Based on the Complaint and the attached documents, Synod, not LCMS retains the alleged "rights" under CTX's governing documents. To the extent that those rights create a binding contract, it is a contract between CTX and Synod. As LCMS is not a party to that contract, it is not entitled to enforce CTX's compliance with or seek damages for CTX's breach of the contract. *Tinsley v. Dowell*, 87 Tex. 23, 28 (1894). LCMS also does not have the right to enforce the contract or seek damages as a "third-party beneficiary" because it has not established an explicit conferral of benefits under the terms of CTX's governing documents. *MCI Telecomms. Corp.*, 995 S.W.2d at 652. Under the substantive law of Texas, LCMS is not the real party in interest to the breach of contract claim and does not have standing to assert it. *936.71 Acres of Land*, 418 F.2d at 556. The Court should therefore dismiss LCMS's breach of contract claim for lack of subject matter jurisdiction.

55.    <u>In the alternative, the Court should dismiss LCMS's breach of contract claim for lack of</u> <u>subject matter jurisdiction because Synod is the real party to the controversy</u>. If the Court determines that LCMS may maintain a suit on behalf of Synod for breach of contract, Synod is the real party in interest as it is the party that has a real and substantial interest in the rights reserved in the alleged contract between it and CTX. *See e.g. Navarro Sav. Ass'n*, 446 U.S. at 460-461. LCMS has no status or interest in the alleged contract independent of its position as Synod's "temporal" form. *Compare with Hummel*, 883 F.3d at 372. Therefore, Synod's citizenship controls for diversity purposes of LCMS's alleged breach of contract claim. *Id*.

56.    <u>In the alternative, the Court should find Synod is an indispensable party without whose</u> <u>joinder this claim cannot proceed in equity and good conscience</u>. If the Court finds (1) that LCMS potentially has rights of control under CTX's governing documents, and (2) such potential rights

constitute a contract between LCMS and CTX, then LCMS and Synod are joint obligees, and Synod is an indispensable party. *Harrell & Sumner Contracting Co.*, 546 F.2d at 1228-29. Given the breadth of claims that LCMS alleges are owed to either it, Synod, or to both, and the fact that all claims can be heard and resolved in Texas Courts, the court should dismiss for failure to join a necessary party. Fed. R. Civ. P. 19(b)

### C.   CLAIM 3: Promissory Estoppel.

57.   <u>Promissory Estoppel can only be enforced by a promisee</u>. The elements of promissory estoppel are "(1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promisee to his detriment." *Henry Schein v. Stromboe,* 102 S.W.3d 675, 686 (Tex. 2002). As a cause of action, it requires a promise made between the promisor and the promisee. *See e.g. Wheeler v. White*, 398 S.W.2d 93, 97 (Tex. 1965) ("Where the promisee has failed to bind the promisor to a legally sufficient contract, but where the promisee has acted in reliance upon a promise to his detriment, the promisee is to be allowed to recover no more than reliance damages measured by the detriment sustained."); *see also Stable Energy, L.P. v. Kachina Oil & Gas, Inc.*, 52 S.W.3d 327, 336 (Tex. App.—Austin 2001, no pet.) ("To enforce a representation by promissory estoppel, the first requisite is an actual promise.")

58.   <u>LCMS has not identified a promise by CTX that it relied on to its detriment</u>. LCMS asserts that it detrimentally relied on: "CTX's promise to comply with the Synod Constitution and Bylaws set forth in the CTX governance documents, the Synod Constitution and Bylaws establishing the binding effect of resolutions passed by the Synod in convention and the obligation of the CTX [Board of Regents] to comply with the same." LCMS also alleges it relied on "the pledges and oaths of office made by CTX regents, the Individual Defendants, and John Does 1-12 that they would faithfully exercise their duties subject to the LCMS's Constitution and Bylaws." **Compl**. ¶

57. Although the Complaint contains conclusory statements that promises were made to LCMS[7], the Complaint does not identify a time, place, conversation, or piece of writing in which CTX, Christian, Bannwolf, or any regent made any promise to LCMS that LCMS, as the promisee, "acted in reliance upon." *See e.g. Wheeler,* 398 S.W.2d at 97. Instead, what LCMS has identified as "promises" are provisions in CTX's governing documents to comply with the Synod Constitution and Bylaws and alleged oaths of office taken by individuals when they assumed their positions with CTX. **Compl.** ¶ 57. At best, these are promises to Synod, not LCMS, to comply with Synod's governing documents.

59.     The Court should dismiss LCMS's promissory estoppel claim for lack of subject matter jurisdiction because LCMS is not a real party in interest and does not have standing to bring the claim. Based on the pleadings, if promises were made by CTX in its governing documents, or by Christian, Bannwolf, or regents on CTX's board, they were made to Synod and involved responsibilities to Synod. LCMS is therefore not a "" that has detrimentally relied on a promise by a Defendant. *See Wheeler v. White*, 398 S.W.2d at 97. Under the substantive law of Texas, LCMS is not the real party in interest to the promissory estoppel claim and does not have standing to assert it. *936.71 Acres of Land*, 418 F.2d at 556. The Court should therefore dismiss LCMS's breach of contract claim for lack of subject matter jurisdiction.

60.     In the alternative, the Court should dismiss LCMS's promissory estoppel claim for lack of subject matter jurisdiction because Synod is the real party to the controversy. If the Court determines that LCMS may maintain a suit on behalf of Synod for promissory estoppel, Synod is the real party in controversy as it is the party that has a real and substantial interest as the result of

---

[7] For example, in paragraph fifty-five (55), LCMS states: "CTX made multiple promises to LCMS, intending and thus foreseeing that LCMS rely upon them; and LCMS substantially relied on those promises to its detriment." **Compl.** ¶ 55. Similarly in paragraph fifty-six (56): "CTX has on multiple occasions made promises to LCMS, upon which LCMS reasonably, foreseeably and substantially relied." **Compl.** ¶ 56.

any Defendants' actions. *See e.g. Navarro Sav. Ass'n*, 446 U.S. at 460-461. LCMS has no status or interest in the litigation independent of its position as Synod's "temporal" form. *Compare with Hummel*, 883 F.3d at 372. Therefore, Synod's citizenship controls for diversity purposes of the alleged promissory estoppel claim. *Id.*

61.     <u>In the alternative, the Court should find Synod is an indispensable party without whose joinder this claim cannot proceed in equity and good conscience</u>. If the Court finds that LCMS has adequately plead (1) that any Defendant made a promise to LCMS, and (2) that LCMS relied on any such promise to its detriment, then LCMS and Synod are effectively joint obligees making Synod an indispensable party. *See Harrell & Sumner Contracting Co.*, 546 F.2d at 1228-29. Given the alleged promise, if any, was made to Synod, and the fact that all claims can be heard and resolved in Texas Courts, the court should dismiss for failure to join a necessary party.

### D.     <u>CLAIM 4: Breach of Fiduciary Duty.</u>

62.     <u>A claim for breach of fiduciary duty requires the demonstration that a fiduciary duty existed to the Plaintiff and that Defendant breached that duty.</u> In Texas, "for a party to establish a claim for breach of fiduciary duty, there must exist a fiduciary relationship between the plaintiff and the defendant, the defendant must have breached its fiduciary duty to the plaintiff…". *Punts v. Wilson*, 137 S.W.3d 889, 891 (Tex. App.—Texarkana 2004, no pet.) (citing *Burrow v. Arce*, 997 S.W.2d 229, 238-39 (Tex. 1999); *Hawthorne v. Guenther*, 917 S.W.2d 924, 934-35 (Tex. App.—Houston [1st Dist.] 1996, writ denied); *see also Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. App.—Dallas 2006, pet. denied) ("To prevail on a claim for breach of fiduciary duty, the plaintiff must show that (1) it enjoyed a fiduciary relationship with the defendant, 2) the defendant breached its fiduciary duty …").

63.     <u>The Complaint only asserts that Defendants had a fiduciary relationship with Synod.</u> LCMS alleges that "CTX is governed and operated by regents as a fiduciary of Synod." **Compl**. ¶

23 (citing **Ex. 2** p.147-79, § 3.10.6.4). LCMS also alleges that Regents are elected or appointed as a fiduciary of the Synod. **Compl**. ¶¶ 30, 60 (citing **Ex. 2** p.148, § 3.10.6.4(i)(1) and 149, § 3.10.6.5). LCMS has not identified a single CTX, LCMS or Synod document that states CTX, its president, vice-president, or board owes a fiduciary duty to the corporate entity LCMS.

64. <u>The alleged breaches were of duties allegedly owed to Synod.</u> LCMS claims that Defendants breached their fiduciary duties by (1) failing to grant a reversionary interest in the CTX's property to LCMS; (2) modifying CTX's governing documents without LCMS approval; and (3) refusing to seat regents newly elected by Synod. Each of these alleged duties are owed to Synod. Synod, its Texas District, and its Praesidium elect and appoint regents. **Ex. 2** p.145-44, §§ 3.10.6.2(1)-(5); *see also* **Compl**. ¶ 30). Synod's CCM receives notice and grants approval for governing document amendments. **Ex. 2** p.121, § 3.9.2.2.3(a); *see also* **Compl**. ¶ 23). Finally, Synod's 2004 Convention Resolution 4-04 states that any reversionary right belongs to Synod, not LCMS. **Ex. 9**.  LCMS acknowledges as much in the Complaint when it asserts that CTX board of regents' actions giving rise to this suit "were in violation of the fiduciary duties they owed to Synod." **Compl**. ¶ 40 (citing March 2023 CCM minutes pg. 12); *see also* **Compl**. ¶ 65 ("…the actions of the CTX [Board of Regents], the Individual Defendants, and John Does 1-12 breached their fiduciary duties to the Synod…"); **Compl**. ¶ 66 ("…Individual Defendants and John Does 1-12 also breached fiduciary duties to the Synod…").

65. <u>The Court should dismiss LCMS's breach of fiduciary duty claim because LCMS is not a</u> <u>real party in interest and does not have standing to bring the claim</u>. Taking the pleadings in the light most favorable to LCMS, a fiduciary duty was allegedly owed to Synod by Defendants, and Defendants allegedly breached duties that were owed to Synod. LCMS cannot prosecute a claim for breach of fiduciary duty when no duty exists between it and the Defendant. *See Punts*, 137

S.W.3d at 891. Under the substantive law of Texas, Synod, not LCMS, is the real party in interest to the breach of fiduciary duty claim and LCMS does not have standing. *936.71 Acres of Land*, 418 F.2d at 556. The Court should dismiss LCMS's breach of fiduciary duty claim for lack of subject matter jurisdiction.

66.     <u>In the alternative, the Court should dismiss LCMS's breach of fiduciary duty claim because Synod is the real party to the controversy</u>. If the Court determines that LCMS may maintain a suit on behalf of Synod for the alleged breach of fiduciary duty, Synod is the real party in controversy as it is the party that has a real and substantial interest. *See e.g. Navarro Sav. Ass'n*, 446 U.S. at 460-461. LCMS has no status or interest in the litigation independent of its position as Synod's "temporal" form. *Compare with Hummel*, 883 F.3d at 372. For example, even if CTX were required to grant LCMS a reversionary interest in its property as LCMS claims, *see e.g.* **Compl**. ¶ 14, that property would still be Synod's property. *See* **Ex. 2** p.3 § 1.2.1(r) (defining "Synod Property" as "All assets, real or personal, tangible or intangible, whether situated in the United States or elsewhere, titled or held in the name of corporate Synod, its nominee, or an agency of the Synod.") Therefore, Synod's citizenship controls for diversity purposes of the alleged breach of fiduciary duty claim. *Hummel*, 883 F.3d at 372.

67.     <u>In the alternative, the Court should find Synod is an indispensable party without whose joinder this claim cannot proceed in equity and good conscience</u>. If the Court finds that the pleadings adequately allege LCMS is owed a fiduciary duty that has been breached then LCMS and Synod are both beneficiaries of the alleged duty, similar to joint obligees, and Synod is an indispensable party. *See Harrell & Sumner Contracting Co.*, 546 F.2d at 1228-29. Given that any alleged fiduciary duties were owed to Synod and the fact that all claims can be heard and resolved in Texas Courts, the Court should dismiss for failure to join a necessary party.

E.     **CLAIM 5: Violation of Texas Business Organization Code § 4.007.**

68.     A Plaintiff may only maintain a suit under Section 4.007 of the Texas Business Organization Code if they have incurred a loss. Section 4.008 of Texas Business Organization Code makes it an offense to "sign[] or direct[] the filing of a filing instrument that the person knows is materially false with intent that the filing instrument be delivered on behalf of an entity to the secretary of state for filing." Tex. Bus. Org. Code § 4.008. The Code authorizes a person to recover damages "if the person incurs a loss" as a result of such a violation. Tex. Bus. Org. Code § 4.008(a).

69.     The alleged "loss", if any, belongs to Synod. LCMS claims that prior to the November 2022 amendments, CTX's Charter "granted governance rights and benefits to the Synod and/or LCMS by requiring all members of the CTX [Board of Regents] to be appointed pursuant to the 'Rules and Regulations of the Lutheran Church – Missouri Synod.'" **Compl**. ¶ 71 (quoting **Ex. 1**). LCMS further alleges that CTX's bylaws required pre-approval of modifications to CTX's governing documents before they could be filed. *Id*. (citing **Ex. 2** p.121-22, § 3.9.2.2.3). The "loss" LCMS asserts it incurred were these "rights under the CTX governance documents." **Compl**. ¶ 74; *see also* **Compl**. ¶ 71 ("…CTX violated the TBOC and took away Synod and LCMS rights and benefits in doing so.") Each of these alleged losses belonged to Synod, not LCMS. Synod, its Texas District, and its Praesidium elect and appoint regents to CTX's board. **Ex. 2** 145-46, §§ 3.10.6.2(1)-(5); *see also* **Compl**. ¶ 30). Synod's CCM receives notice and grants approval for governing document amendments. **Ex. 2** p.121, § 3.9.2.2.3(a); *see also* **Compl**. ¶ 23).

70.     The Court should dismiss because LCMS is not a real party in interest and does not have standing. Taking the pleadings in the light most favorable to LCMS, the only alleged losses belong to Synod. LCMS cannot seek damages for a violation of the Texas Business Organization Code if it has not incurred a loss. *See* Tex. Bus. Org. Code § 4.008(a). Under the substantive law of Texas,

Synod, not LCMS, is the real party in interest to this claim and LCMS does not have standing. *936.71 Acres of Land*, 418 F.2d at 556.

71.    <u>In the alternative, the Court should dismiss because Synod is the real party to the controversy</u>. If the Court determines that LCMS may maintain a suit on behalf of Synod under the Texas Business Organization Code, Synod is the real party in controversy as it is the party that has a real and substantial interest in recovering any damages for any loss caused by Defendants' actions. *See e.g. Navarro Sav. Ass'n*, 446 U.S. at 460-461. LCMS has no status or interest in the litigation independent of its position as Synod's "temporal" form. *Compare with Hummel*, 883 F.3d at 372. Therefore, Synod's citizenship controls for diversity purposes of the alleged breach of contract claim. *Id.*

72.    <u>In the alternative, the Court should find Synod is an indispensable party without whose joinder this claim cannot proceed in equity and good conscience</u>. If the Court finds that LCMS has alleged a loss distinct from Synod's as a result of the Defendants' actions, the Court should find that Synod is an indispensable party to the claim because the alleged loss is that of Synod. Because the loss, if any, was suffered by Synod and the fact that all claims can be heard and resolved in Texas Courts, the Court should dismiss for failure to join a necessary party.

### F.    <u>CLAIM 6: Tortious Interference with a Contract.</u>

73.    <u>Only a party to a contract has the right to seek recovery for tortious interference with the contract</u>. Texas law is clear that only "a party to a contract has a cause of action for tortious interference against any third person (a stranger to the contract) who wrongly induces another contracting party to breach the contract." *Holloway v. Skinner*, 898 S.W.2d 793, 794-795 (Tex. 1995).

74.    <u>LCMS does not have a contract with CTX</u>. LCMS asserts its contractual relationship with CTX was "created through nearly 100 years of continual operation of CTX pursuant to the CTX

governance documents, including the Synod Constitution and Bylaws." LCMS alleges that Christian[8] interfered with that relationship by "encouraging the CTX [Board of Regents] **to breach their fiduciary duties to the Synod**" and as a result LCMS "has lost its historic ministry and governance oversight with respect to CTX." **Compl**. ¶ 76 (emphasis added). If a contract exists, it exists between CTX and Synod. Neither CTX's former governance documents nor Synod's Bylaws or Constitution grant LCMS any "control or ownership" over CTX necessary to establish a contract. Moreover, the alleged fiduciary duty owed by Christian, according to LCMS's own pleadings, belong to Synod. **Compl**. ¶ 76. Finally, the alleged rights of "ministry and governance oversight", if any, were Synod's. *See* **Compl.** ¶¶ 20, 26. 30, 35; **Ex. 1**; **Ex. 2** p.146, § 3.10.6.2 and 146-47, § 3.10.6.3 (electing/appointing regents); *see also* **Compl**. ¶¶ 32, 35; *see also* **Ex.2** p.149-50, § 3.10.6.6 and 153, § 3.10.6.7.3 (supervisions of teaching and doctrine). Accordingly, if any contract exists, it is with Synod and not LCMS.

75.     The Court should dismiss LCMS's tortious interference with a contract claim because LCMS is not a real party in interest and does not have standing. Taking the pleadings in the light most favorable to LCMS, Synod, not LCMS, allegedly had a contract with CTX that could be interfered with. LCMS cannot maintain an action for interference to a contract it is not a party to. *See Holloway*, 898 S.W.2d at 794-795. Under the substantive law of Texas, Synod, not LCMS, is the real party in interest to the claim and LCMS does not have standing. *936.71 Acres of Land*, 418 F.2d at 556.

---

[8] In Texas, a corporate agent generally cannot tortiously interfere with a corporation's contract because corporations act only through their agents. *Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 690 (Tex. 2017). The only way a corporate agent can be held liable under a theory of tortious interference is if the "agent acted so contrary to the corporation's interest that his or her actions could only have been motivated by personal interest. Furthermore, an agent cannot be held to have acted against the principle's interests unless the principle has objected." *Id*. at 694 (internal quotations omitted). CTX has not complained of Christian's actions. Therefore Christian, as CTX's president, cannot have tortiously interfered with any alleged contract between CTX and Synod or CTX and LCMS.

76.     <u>In the alternative, the Court should dismiss LCMS's tortious interference with a contract claim because Synod is the real party to the controversy</u>. If the Court determines that LCMS may maintain a suit on behalf of Synod for tortious interference with Synod's alleged contract, Synod is the real party in controversy as it is the party with a real and substantial interest. *See e.g. Navarro Sav. Ass'n*, 446 U.S. at 460-461. LCMS has no status or interest in the litigation independent of its position as Synod's "temporal" form. *Compare with Hummel*, 883 F.3d at 372. Therefore, Synod's citizenship controls for diversity purposes of the alleged tortious interference claim. *Id*.

77.     <u>In the alternative, the Court should find Synod is an indispensable party without whose joinder this claim cannot proceed in equity and good conscience</u>. If the Court finds (1) that LCMS is also a party to the alleged contract between Synod and CTX, then LCMS and Synod are joint obligees, and Synod is an indispensable party. *See Harrell & Sumner Contracting Co.*, 546 F.2d at 1228-29. Because the contract, if any existed, was with Synod, and the fact that all claims can be heard and resolved in Texas Courts, the Court should dismiss for failure to join a necessary party.

### G.     <u>CLAIM 1: Texas Declaratory Judgment Act.</u>

78.     <u>In order to bring a Texas Declaratory Judgment Act claim, a party must have affected rights or legal relations and meet the requisites of standing under Texas law</u>. LCMS has requested declaratory relief under the Texas' Declaratory Judgment Act (UDJA), which states:

> A person interested under a deed, will, written contract, or other writings constituting a contract or ***whose rights, status, or other legal relations are affected*** by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

Tex. Civ. Prac. & Rem. Code § 37.004 (emphasis added).

The Texas Supreme Court has determined that although the UDJA is often forward looking, courts must still have subject matter jurisdiction, "that is, that the parties must have standing…"

*Southwestern Elec. Power Co. v. Lynch*, 595 S.W.3d 678, 685 (Tex. 2020) (internal citations omitted). Texas standing parallels Article III standing and plaintiffs must show: (1) an "injury in fact" that is (2) "fairly traceable" to the defendant's challenged action and (3) redressable by a favorable decision. *Abbott v. Mexican Am. Legis. Caucus*, 647 S.W.3d 681, 690 (Tex. 2022) (internal citations omitted).

79.    <u>LCMS does not have rights, status, or other legal relations affected by CTX's governing documents and does not have any injuries traceable to Defendants' challenged actions</u>. LCMS asserts that "a real and justifiable controversy exists between LCMS and CTX concerning LCMS's rights under the CTX governing documents, the CTX amendments, and LCMS's rights with respect to CTX's property." **Compl.** ¶ 43. LCMS is seeking declarations under the UDJA to:

    a.   Affirm a decision by Synod's CCM, as ratified by Synod convention, that Defendants' have violated their own governing documents and duties to Synod, and/or determine that Defendants violated CTX governance documents;

    b.   CTX breached its contract with LCMS to the detriment of LCMS;

    c.   CTX has liability to LCMS under the theory of promissory estoppel;

    d.   Defendants breached fiduciary duties owed to LCMS;

    e.   Defendant Christian violated the Texas Business Organizations Code;

    f.   all actions amending the CTX governing documents in 2022 are null and void;

    g.   Both Synod and LCMS govern CTX;

    h.   CTX must enact a property reversionary interest to LCMS;

    i.   All Defendants owe fiduciary duties to Synod; and

    j.   any future amendments to CTX governing documents must be approved by the CCM.

**Compl**. ¶¶ 44-46.

The Complaint and attached documents demonstrate that the only alleged "rights, status, or legal relations" affected by changes to CTX's governing documents belong to Synod. **Compl.** ¶¶ 20, 26. 30, 35; **Ex. 1**; **Ex. 2** p.146, § 3.10.6.2 and 146-47, § 3.10.6.3 (electing/appointing regents); *see also* **Compl**. ¶¶ 32, 35; *see also* **Ex.2** p.149-50, § 3.10.6.6 and 153, § 3.10.6.7.3 (supervisions of teaching and university doctrine); *see also* **Compl**. ¶ 23, **Ex. 2** p.121, § 3.9.2.2.3(a) (review and approval of governing documents); and *see also* **Ex. 2** p.151-52, § 3.10.6.6.2(b)(6) (prior-approval panel for presidents); *see also* **Ex. 9** (reversionary interest). Moreover, each of the requested declarations corresponds with at least one of the five previous causes of action for which Defendants have already established that LCMS does not have a standing. *Supra* ¶¶ 51-77.

80.    <u>The Court should dismiss because LCMS is not a real party in interest and does not have standing.</u> Taking the pleadings in the light most favorable to LCMS, Synod, not LCMS, claims rights or legal relations with CTX that could be interfered with. LCMS has also only asserted injuries to Synod, not itself, and does not have standing under the facts pled in the Complaint. LCMS cannot maintain a declaratory judgment action without affected rights or legal relations and without standing. *Southwestern Elec. Power Co.*, 595 S.W.3d at 685; *see also* Tex. Civ. Prac. & Rem. Code § 37.004. Under the substantive law of Texas, Synod, not LCMS, is the real party in interest to the claim and LCMS does not have standing to assert it. *936.71 Acres of Land*, 418 F.2d at 556.

81.    <u>In the alternative, the Court should dismiss LCMS's UDJA claim for lack of subject matter jurisdiction because Synod is the real party to the controversy.</u> If the Court determines that LCMS may maintain a UDJA suit on behalf of Synod, then Synod is the real party in controversy as it is the party that has a real and substantial interest. *See e.g. Navarro Sav. Ass'n*, 446 U.S. at 460-461. LCMS has no status or interest in the litigation independent of its position as Synod's "temporal"

form. *Compare with Hummel*, 883 F.3d at 372. Therefore, Synod's citizenship controls for diversity purposes of the alleged breach of contract claim. *Id*.

82.     <u>In the alternative, the Court should find Synod is an indispensable party without whose joinder this claim cannot proceed in equity and good conscience</u>. Texas' UDJA requires that "all persons who have or claim any interest that would be affected by the declarations must be made parties." Tex. Civ. Prac. & Rem. Code § 37.006.[9] If the Court finds (1) that LCMS has rights affected by CTX's governing documents that are separate and distinct from Synods, then Synod must be joined as an indispensable party who also has an interest affected by the declarations sought by LCMS. All declaratory claims can be heard and resolved in Texas Courts. The Court should dismiss for failure to join a necessary party.

## V.     <u>CONCLUSION</u>

For the forgoing reasons, Defendants respectfully request the Court dismiss this case for lack of subject matter jurisdiction, alternatively dismiss for failure to join an indispensable party, and grant Defendants all such further relief to which they are justly entitled at law and in equity.

---

[9] Defendants recognize that in *Utica Llyod's v. Mitchell* the 5th Circuit determined that the Texas UDJA was procedural for the purposes of determining whether federal parties were entitled to attorney's fees in a diversity suit. *Utica Lloyd's v. Mitchell*, 138 F.3d 208, 210 (5th Cir. 1998). To the extent that holding applies to the act's joinder requirement, Defendants still argue that Synod's joinder is necessary under federal procedural law given the numerous claims for relief that LCMS claims belong to either it, Synod, and/or both entities.

Respectfully submitted,


*/s/ Daniel R. Richards*
**Daniel R. Richards**
State Bar No. 00791520
drichards@rrsfirm.com
**Clark Richards**
State Bar No. 90001613
crichards@rrsfirm.com
**Albert A. Carrion, Jr.**
State Bar No. 03883100
acarrion@rrsfirm.com
**RICHARDS RODRIGUEZ & SKEITH, LLP**
611 West 15th Street
Austin, Texas 78701
Telephone: (512) 476-0005
Facsimile: (512) 476-1513

**ATTORNEYS FOR DEFENDANTS CONCORDIA UNIVERSITY TEXAS, INC., DONALD CHRISTIAN AND CHRISTOPHER BANNWOLF**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 22nd day of January 2024, I electronically filed the above and foregoing document, which will send notification of such filing to:

Steven C. Levatino
Levatino & Pace PLLC
1101 S. Capital of Texas Hwy.
Bldg. K, Suite 125
Austin, Texas 78746
steven@lpfirm.com

Andrew F. MacRae
MacRae Law Firm PLLC
3267 Bee Cave Road
Suite 107, PMB 276
Austin, Texas 78746
andrew@macraelaw.com

Gregg R. Kronenberger
Kronenberger Law Firm, PLLC
1101 S. Capital of Texas Hwy.
Bldg. K, Suite 125
Austin, Texas 78746
gregg@gkronenberger.com

*/s/ Daniel R. Richards*
**DANIEL R. RICHARDS**