Exhibit 1 to Defendants' Motion to Dismiss
Page 1 of 5

CHARTER

APPROVED AND FILED IN THE OFFICE OF
THE SECRETARY OF STATE
THIS __28__ DAY OF _April_ 19_50_

_Robert S. Trotti_
CHIEF CHARTER DIVISION

THE STATE OF TEXAS }
COUNTY OF TRAVIS } KNOW ALL MEN BY THESE PRESENTS:

That we, Albert Schulz of Eola, Concho County, Texas,
R. Leschber of Walburg, Williamson County, Texas, F. Stelzer of
Thorndale, Milam County, Texas, Oliver Harms of Houston, Harris
County, Texas and Paul Nerger of Giddings, Lee County, Texas, do
hereby voluntarily associate ourselves for the purpose of forming
a private corporation under the general laws of this State for
the purposes and objectives hereinafter set forth, and do hereby
adopt the following articles of incorporation.

I.

The name of the corporation shall be Lutheran Concordia
College of Texas.

II.

The purpose for which this corporation is formed is for
the support and maintenance of an educational institution.

III.

The corporation shall have its principal place of business
in Austin, Travis County, Texas.

IV.

The corporation shall exist for a period of fifty (50) years.

V.

The business of this corporation shall be conducted and
its affairs shall be controlled by a board of trustees to be elected
in accordance with the Rules and Regulations of the Lutheran Church—

Exhibit 1 to Defendants' Motion to Dismiss
Page 2 of 5

Missouri Synod.  The names and addresses of the trustees for the first year are as follows:

Albert Schulz of Eola, Concho County, Texas

R. Leschber of Walburg, Williamson County, Texas

F. Stelzer of Thorndale, Milam County, Texas

Oliver Harms of Houston, Harris County, Texas

Paul Nerger of Giddings, Lee County, Texas

VI.

The corporation shall have no capital stock and is to be operated as a non-profit institution.  The value of goods, lands, chattels, rights and credits is estimated at $400,000.00.

In testimony whereof, we hereunto sign our names this _8th_ day of _April_ , A. D. 1950.

_____
Albert Schulz

_____
R. Leschber

_____
F. Stelzer

_____
Oliver Harms

_____
Paul Nerger

B -2

Exhibit 1 to Defendants' Motion to Dismiss
Page 3 of 5

THE STATE OF TEXAS }
COUNTY OF CONCHO }

    BEFORE ME, the undersigned authority, appeared Albert Schulz, known to me to be a citizen and resident of Concho County, Texas, and the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purpose and consideration therein expressed.

    Given under my hand and seal of office this the _17_ day of _April_ , A. D. 1950.

                      Notary Public in and for
                      Concho County, Texas.


THE STATE OF TEXAS }
COUNTY OF WILLIAMSON }

    BEFORE ME, the undersigned authority, appeared R. Leschber, known to me to be a citizen and resident of Williamson County, Texas, and the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purpose and consideration therein expressed.

    Given under my hand and seal of office this the _19_ day of _April_ , A. D. 1950.

                      Notary Public in and for
                      Williamson County, Texas


THE STATE OF TEXAS }
COUNTY OF MILAM }

    BEFORE ME, the undersigned authority, appeared F. Stelzer, known to me to be a citizen and resident of Milam County, Texas, and the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purpose and consideration therein expressed.

    Given under my hand and seal of office this the _21st_ day of _April_ , A. D. 1950.

                      Notary Public in and for
                      Milam County, Texas.

B-3

Exhibit 1 to Defendants' Motion to Dismiss
Page 4 of 5

THE STATE OF TEXAS }
COUNTY OF HARRIS }

     BEFORE ME, the undersigned authority, appeared Oliver Harms, known to me to be a citizen and resident of Harris County, Texas, and the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purpose and consideration therein expressed.

     Given under my hand and seal of office this the _8th_ day of _April_, A. D. 1950.

_Viola Biederstein_
Notary Public in and for
Harris County, Texas.


THE STATE OF TEXAS }
COUNTY OF LEE }

     BEFORE ME, the undersigned authority, appeared Paul Nerger, known to me to be a citizen and resident of Lee County, Texas, and the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purpose and consideration therein expressed.

     Given under my hand and seal of office this the _22nd_ day of _APril_, A. D. 1950.

_E. E. Bump_
Notary Public in and for
Lee County, Texas.


B-4

Exhibit 1 to Defendants' Motion to Dismiss
Page 5 of 5



### The State of Texas
#### Secretary of State

I, LOUIS SCOTT WILKERSON, Assistant , Secretary of State, of the State of Texas, do hereby certify that the foregoing is a true and correct copy of **the charter of**

LUTHERAN CONCORDIA COLLEGE OF TEXAS

with the endorsement thereon, as the same now appears of record in the Department.

Dated, signed, and sealed at Austin, Texas, this

28th day of April , A. D. 1950.

_____

**Assistant**    Secretary of State.

B1870-850-6m

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 6 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 1 of 182

# BYLAWS

## 1. RELATIONSHIPS WITHIN AND THROUGH THE SYNOD

### 1.1  Purpose of the Synod

1.1.1    Committed to a common confession and mission, congregations of The Lutheran Church—Missouri Synod join with one another in the Synod to support one another and to work together in carrying out their commonly adopted objectives. The Synod is organized to work in support of and on behalf of congregations to assist them in carrying out their ministries as they seek to serve our Lord Jesus Christ, the members of His body, and the world which stands in need of the Word and the impact of His redeeming love.

> (a)  The Synod functions in support of its member congregations by providing assistance as congregations conduct their ministries locally, as well as their ministries at large.

> (b)  The Synod on behalf of its member congregations administers those ministries that can be accomplished more effectively in association with other member congregations through the Synod. In this way member congregations utilize the Synod to assist them in carrying out their functions of worship, witness, teaching and nurture, service, and support.

### 1.2  Definition of Terms

1.2.1    The following definitions are for use in understanding the terms as used in the Bylaws of The Lutheran Church—Missouri Synod:

> (a)  *Agency*: An instrumentality other than a congregation or corporate Synod, whether or not separately incorporated, which the Synod in convention or its Board of Directors has caused or authorized to be formed to further the Synod's Objectives (Constitution Art. III).

> > (1)  Agencies include each board, commission, council, seminary, university, college, district, Concordia Plan Services, and each synodwide corporate entity.

> > (2)  The term "agency of the Synod" does not describe or imply the existence of principal and agency arrangements as defined under civil law.

> (b)  *Chief executive*: The top staff administrator of a separately incorporated agency of the Synod, who may be referred to as president.

> (c)  *Commission*: A group of persons, elected or appointed as prescribed in the Bylaws, rendering a precisely defined function of the Synod and responsible, as the case may be, to the Synod in convention, to the President of the Synod, or to the Board of Directors of the Synod. The commissions of the Synod are:

> > (1)  Commission on Constitutional Matters

> > (2)  Commission on Doctrinal Review

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 7 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 2 of 182

(3)  Commission on Handbook

(4)  Commission on Theology and Church Relations

(d)  ***Concordia Plan Services***: Concordia Plan Services is a controlled entity of The Lutheran Church—Missouri Synod created to manage the Concordia Plans.

(e)  ***Concordia Plans***: The Concordia Plans, while operating under the supervision of the Synod Board of Directors, are trust agencies whose assets are not the property of corporate Synod.

(f)  ***Corporate Synod***: The Lutheran Church—Missouri Synod, the Missouri nonprofit corporation, including its offices, boards, commissions, and departments.

(1)  "Corporate Synod" is not an agency of the Synod.

(2)  The Lutheran Church—Missouri Synod, in referencing the laws of the State of Missouri in these Bylaws and in the Synod's Articles of Incorporation, intends to acknowledge its responsibility to be subject to civil authority. In all such references, however, the Synod intends to retain all authority and autonomy allowed a church under the laws and Constitution of the United States and the State of Missouri.

(g)  ***Council***: An officially established group elected or appointed as an advisory body. The council of the Synod is the Council of Presidents.

(h)  ***District***: A division of the Synod as determined by a national convention of the Synod.

(i)  ***Ecclesiastical oversight***: The responsibility, primarily of the district president, to monitor; to make inquiry and receive a response thereto; to make suggestions; to bring concerns to the attention of a higher authority, namely the Synod status granting office, as relates specifically to the ecclesial relations of a recognized service organization operating within his district, and the impact and/or reflection of its work on the mission and ministry of the church.

(j)  ***Ecclesiastical supervision***: The responsibility, primarily of the President of the Synod and district presidents, to supervise on behalf of the Synod the doctrine, life, and administration of its members, officers, and agencies. Such supervision, subject to the provisions of the Synod's Constitution, Bylaws, and resolutions, includes visitation, evangelical encouragement and support, care, protection, counsel, advice, admonition, and, when necessary, appropriate disciplinary measures to assure that the Constitution, Bylaws, and resolutions of the Synod are followed and implemented. Thus, ecclesiastical supervision is also the presenting, interpreting, and applying of the collective will of the Synod's congregations. Ecclesiastical supervision does not include the responsibility to observe, monitor, control, or direct the day-to-day activities of individual members of the Synod, whether in the conduct of their work or in their private lives (cf. Bylaw 2.14.1 [a]). Further, those constitutional articles and bylaws pertaining to ecclesiastical supervision shall determine the full definition of ecclesiastical supervision.

(k)  ***Governing board***: A board that directs a separately incorporated agency of the Synod. Governing boards are such as a board of directors,

22

Exhibit 2 to Defendants' Motion to Dismiss
Page 3 of 182

a board of trustees, a board of regents, a board of managers, or a board of governors.

(l)  *May*: Permissive, expressing ability, liberty, or the possibility to act.

(m)  *Member of the Synod*: See Constitution Art. V. Members of the Synod are of two classes: corporate members (congregations that have joined the Synod) and individual members (ministers of religion–ordained and ministers of religion–commissioned on the roster of the Synod).

(n)  *Mission board*: An officially established group of persons elected and appointed as prescribed in the Bylaws, charged with developing and determining policies for a ministry function of the Synod as prescribed in the Bylaws. These policies shall establish boundaries, parameters, and principles that guide the respective mission office in determining present and future activities and programs. The mission board shall have oversight of the implementation of these policies. The President of the Synod shall be responsible for supervising the implementation of mission board policies in accordance with his responsibilities under Constitution Art. XI and Bylaws 3.3.1.1.1–3.3.1.3. The mission boards of the Synod are:

    (1)  Board for National Mission

    (2)  Board for International Mission

(o)  *Officer*: Those positions identified in Constitution Art. X A or Art. XII 3 or Bylaw sections 3.3 and 3.4 unless qualified by a modifier.

(p)  *Oversight*: For the purpose of these Bylaws, to monitor; to make inquiry and receive a response thereto; to make suggestions; to bring concerns to the attention of a higher authority.

(q)  *Praesidium*: The President and the vice-presidents of the Synod.

(r)  *Property of the Synod*: All assets, real or personal, tangible or intangible, whether situated in the United States or elsewhere, titled or held in the name of corporate Synod, its nominee, or an agency of the Synod. "Property of the Synod" does not include any assets held by member congregations, the Lutheran Church Extension Fund—Missouri Synod, or by an agency of the Synod in a fiduciary capacity (including, for purposes of example, the funds managed for the Concordia Plans by Concordia Plan Services and certain funds held by The Lutheran Church—Missouri Synod Foundation).

(s)  *Region*: A division of the Synod for the purpose of regional elections.

(t)  *Shall*: A word of command that must always be given an imperative or compulsory meaning.

(u)  *Supervision*: For the purpose of these Bylaws (other than those pertaining to ecclesiastical supervision) to have authority over, to direct actions, to control activities.

(v)  *Synod*: Refers collectively to the association of self-governing Lutheran congregations and all its agencies on the national and district levels. The Synod, as defined herein, is not a civil law entity.

(w)  *Synodwide corporate entity*: A separate corporation established by the Synod for business and legal reasons. For the purposes of these

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 9 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 4 of 182

Bylaws, the "synodwide corporate entities" of the Synod are the following corporations:

(1) Concordia Historical Institute

(2) Concordia Publishing House

(3) Lutheran Church Extension Fund—Missouri Synod

(4) Lutheran Church—Missouri Synod Foundation

(5) Concordia University System

The term "synodwide corporate entity" is not used in these Bylaws to include foreign corporations created by the Synod in order to undertake foreign missions.

(x) *Task force*: An appointed group that has an *ad hoc* assignment to accomplish a specific task and whose duties have a definite expiration date.

(y) *Voting member*: A member congregation of the Synod (see Constitution Art. V A).

## 1.3  Synod Relationships:
## Congregation, National, District, Circuit

1.3.1    Individual Christians are joined together in a worshiping and serving community, the congregation. Congregations, the basic units of the Synod, have joined together to form the Synod and relate to one another through it.

1.3.2    The Synod divides itself into districts and authorizes its districts to create circuits. The criteria for the creation of districts and circuits are determined by the Synod in convention. Districts and circuits are included among the component parts of the Synod. The Synod also divides itself into regions to accommodate elections that require regional representation.

1.3.3    The Synod, including its component parts, is regarded as an extension of the congregations to the extent and for the purposes determined by the congregations acting through conventions. The Synod and its component parts are designed to assist congregations and their members in conserving and promoting the unity of the faith and in carrying out their mission and ministry. The Synod, including its component parts, also serves as the structure through which congregations carry out certain functions that can be performed more effectively and efficiently together with other member congregations.

1.3.4    Congregations together establish the requirements of membership in the Synod (Constitution Art. VI). In joining the Synod, congregations and other members obligate themselves to fulfill such requirements and to diligently and earnestly promote the purposes of the Synod by word and deed.

1.3.4.1    Members agree to uphold the confessional position of the Synod (Constitution Art. II) and to assist in carrying out the objectives of the Synod (Constitution Art. III), which are objectives of the members themselves. While congregations of the Synod are self-governing (Constitution Art. VII), they, and also individual members, commit themselves as members of the Synod to act in accordance with the Constitution and Bylaws of the Synod under which they have agreed to live

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 10 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 5 of 182

and work together and which the congregations alone have the authority to adopt or amend through conventions.

1.3.4.2    Members of the Synod, compelled by love for one another, accept the responsibility to support financially the work of the Synod.

1.3.4.3    Congregations of the Synod, to enable the Synod to plan current and future ministry efforts and to lend accuracy and integrity to the Synod's delegate representation and voting processes, agree to provide annual membership and statistical information to the Synod.

1.3.5      Membership is held in the Synod itself. However, in accordance with the objectives of the Synod, each member enjoys certain privileges and accepts certain responsibilities also in and through the respective district and circuit.

1.3.6      Districts and circuits as component parts of the Synod are obligated to carry out resolutions of the Synod and are structures for congregations to review decisions of the Synod, to motivate one another to action, and to shape and suggest new directions.

1.3.7      The formation of any corporation by the Synod itself or any agency of the Synod involving any other church body requires the approval of the Board of Directors and the President of the Synod.

1.3.8      The Synod in convention or through the Board of Directors of the Synod may authorize holding membership in national inter-Lutheran entities. Representatives of the Synod to various national inter-Lutheran entities (a) shall be named by the President of the Synod on recommendation of the Chief Mission Officer or the Executive Director of the Commission on Theology and Church Relations; (b) shall participate in the activities of the respective inter-Lutheran entities according to the constitutions and bylaws of those entities and in keeping with the theological and constitutional principles of the Synod; and (c) shall submit formal reports to the President.

## 1.4  Synod Relationships: Conventions, Officers, Boards, Commissions, Staff

1.4.1      The delegate convention of the Synod is the legislative assembly that ultimately legislates policy, program, and financial direction to carry on the Synod's work on behalf of and in support of the member congregations. It reserves to itself the right to give direction to all officers and agencies of the Synod. Consequently, all officers and agencies, unless otherwise specified in the Bylaws, shall be accountable to the Synod for all their actions, and any concerns regarding the decisions of such officers or agencies may be brought to the attention of the Synod in convention for appropriate action. This provision does not apply to specific member appeals to the Concordia Plans, which has its own appeal process for such cases.

1.4.2      The delegate convention of each district of the Synod receives reports and counsel from the national Synod, makes recommendations thereto, assists in implementing decisions of the Synod, and adopts or authorizes programs to meet the unique needs of the district.

1.4.3      Officers of the Synod and its agencies serve in accordance with duties assigned to them or otherwise authorized by the Constitution and

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 11 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 6 of 182

appropriate bylaws. Primary responsibility is given to each officer, to the extent of his jurisdiction, for implementing specific decisions of the appropriate conventions, boards, and commissions and for supervising and coordinating the day-to-day activities of the respective staffs. Elected officers are to report their activities and recommendations to the respective convention and, as appropriate, to the respective president and board.

1.4.4     The Board of Directors serves the Synod as its legal representative and as custodian of all property of the Synod, and upon it is incumbent the general management and supervision of the business affairs of the Synod, except to the extent that management authority and duties have been delegated by the Articles of Incorporation, Constitution, Bylaws, or resolutions of a convention of the Synod to other officers and agencies of the Synod or to separate corporate or trust entities. Each other governing board also serves the Synod with respect to the property of the Synod, to the extent of its jurisdiction, as provided or authorized in these Bylaws. Upon each such governing board of the Synod is incumbent the general management and supervision of the business affairs of the Synod to the extent of its jurisdiction. Any issues relative to the applicability of the laws of the State of Missouri shall be resolved in accord with the provisions in the Constitution and Bylaws of the Synod.

(a) Each governing board shall, to the extent of its jurisdiction, between conventions and subject to the advice or direction from any other appropriate board that has been given authority by these Bylaws or by convention resolution,

(1) determine general operating policies and maintain a policy manual;

(2) approve program budgets;

(3) allocate resources for such programs;

(4) monitor program performance; and

(5) coordinate the administration of convention resolutions.

(b) Unless otherwise specified, each governing board shall also be empowered to settle disputes within that corporate entity.

(c) Each board shall report its activities and recommendations to the respective convention.

1.4.5     All agencies that serve the Synod at the national or district level in a specific area of ministry shall administer their assigned areas of responsibility as provided or authorized by the Constitution and applicable bylaws or as assigned by the respective convention.

1.4.6     Each staff develops procedures, recommends and reviews programs and ministries, manages programs, and recommends policy and program modifications. Staff implements decisions in accordance with approved policy.

(a) Staff is responsible to the Synod at the national or district level in accordance with the Constitution and Bylaws of the Synod at the national or district level, resolutions of the respective convention, and the policies of a district or any other agency to which it is responsible.

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 12 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 7 of 182

(b) Staffs ordinarily serve as the liaison between the national and district levels. Staffs at the national and district levels consult with one another in developing program proposals.

(c) Each chief executive or executive director shall report on staff activities and recommendations to the national Synod, district, agency, or officer to which that executive is responsible and, as requested, to the president of the district or of the Synod.

## 1.5  Regulations for Corporate Synod and Agencies of the Synod

*General*

1.5.1     Board and commission members of all agencies shall be members of member congregations of the Synod.

1.5.1.1   Unless otherwise specified or permitted by the Bylaws, chief executives and executive directors, faculty, staff, and all other employees on either the national or district level shall not be members of the board of the agency under which they serve, nor shall any such executives or staff be members of the board of any other agency of the Synod. For purposes of this bylaw only, *staff* shall mean:

> (a) Employees, other than faculty, rostered as ministers of religion—ordained or ministers of religion—commissioned, whether or not serving in such capacity; or

> (b) Employees of corporate Synod or an agency of Synod, other than faculty, who are responsible for the development and/or implementation of policies, goals, and programs; or

> (c) Employees of corporate Synod or an agency of the Synod who assist chief executives, executive directors and faculty in their work and are supervised by these individuals directly or through a line of supervision.

1.5.1.2   No one, either in the Synod or a district, or between the Synod and a district, shall hold more than one elective office; or hold more than two offices, although one or both be appointive; or ever hold two offices of which one is directly responsible for the work done by the other.

> (a) An office shall be regarded as elective only if it is an office filled through election by a national or a district convention, even though a vacancy in such an office may be filled by appointment.

> (b) Doubtful cases shall be decided by the President of the Synod.

1.5.1.3   Every board or commission member, officer, and all staff of corporate Synod and every agency of the Synod shall be sensitive in their activities to taking or giving offense, giving the appearance of impropriety, causing confusion in the Synod, or creating potential liability.

*Disclosure of Conflicts of Interest*

1.5.2     Every board or commission member, officer, and all staff of corporate Synod and every agency of the Synod shall avoid conflicts of interest as described in this bylaw.

> (a) Every agency shall implement the synodwide conflict-of-interest policy, and that policy shall be applicable to them and all staff operating under them. This policy shall include the following provisions:

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 13 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 8 of 182

(1) Every board or commission member shall disclose to the chairman of the agency and all staff shall disclose to the chief executive or executive director of the agency any potential conflicts of interest. Each chairman or chief executive or executive director shall disclose personal potential conflicts of interest to the appropriate board or commission.

(2) Such disclosures shall include board membership on, a substantial interest in, or employment of the individual or a relative by any organization doing business with corporate Synod or any of the agencies of the Synod.

(3) Every board or commission member, officer, and all staff of corporate Synod and every agency of the Synod who receives honoraria or payments for any sales or services rendered to corporate Synod or any of the agencies of the Synod shall disclose such information.

(4) All such disclosures shall be reported to the respective board or commission to determine by a vote of its remaining impartial members whether an inappropriate interest exists, and such vote shall be recorded in its official minutes. In the case of officers, all such disclosures shall be reported to the President of the Synod to determine whether an inappropriate interest exists.

(b) Responsibilities shall be carried out in a manner reflecting the highest degree of integrity and honesty consistent with the Scriptures, the Lutheran Confessions, the Constitution, Bylaws, and resolutions of the Synod, the policies of corporate Synod and the agencies of the Synod, and civil laws.

(1) Activities shall not be entered into which may be detrimental to the interests of the Synod. Any inappropriate activity shall cease or the position will be vacated.

(2) Information acquired in the course of carrying out duties of the Synod shall not knowingly be used in any way that would be detrimental to the welfare of the Synod.

(3) No one shall vote on any transaction in which the individual might receive a direct or indirect financial gain.

(4) The Board of Directors shall establish policy regarding the acceptance of gifts, entertainment, or favors from any individual or outside concern which does or is seeking to do business with corporate Synod or the agencies of the Synod.

(c) Individuals, prior to accepting elected, appointed, or staff positions, shall initially and annually thereafter sign statements stating that they have received, understand, and agree to abide by this bylaw and the Synod's conflict of interest policy.

### *Organization*

1.5.3    Every agency of the Synod shall meet at least quarterly unless otherwise stipulated in the Bylaws. Exceptions require the approval at least annually of the President of the Synod. All agencies shall announce their upcoming meetings. Unless otherwise specified in the Bylaws, each agency is free to select a manner of meeting, consistent with Board of Directors policy, that

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 14 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 9 of 182

best enhances its ability to accomplish its mission, taking into consideration fostering the open exchange of ideas, availability of technology to all members, stewardship of resources, perception of fairness, controversial nature of agenda items, and whether secret ballots might be used.

1.5.3.1  At the initial meeting after election or appointment, all mission boards, commissions, and governing boards shall organize themselves as to chair, vice-chair, secretary, and other committees and positions as necessary or mandated by these Bylaws and shall conduct business in accordance with accepted parliamentary rules.

1.5.3.2  All mission boards, commissions, and governing boards may make use of executive committees to act in times of emergency between plenary meetings, to act on delegated assignments, and to act as specified elsewhere in these Bylaws.

> (a)  Executive committees may not perform acts specifically required by statute or by legislation or the Constitution, Bylaws, and resolutions of the Synod to be performed by the agency, nor may they overturn actions of the agency.

> (b)  All executive committee actions shall be reported to plenary sessions of the agency.

1.5.3.3  All mission boards, commissions, and governing boards may also delegate a specific assignment for a limited time to a committee composed of its own members.

1.5.3.4  All mission boards, commissions, and governing boards may appoint standing committees of specialists to provide professional or technical assistance to the board or commission and may delegate certain responsibilities to such committees while retaining supervision. Standing committees may be made up of or include non-board or commission members. The creation of standing committees shall be reported to the President and the Board of Directors of the Synod.

1.5.3.5  All agencies of the Synod shall develop policies and procedures for making available official minutes of their meetings. All mission boards and commissions shall develop policies and procedures to make available upon request and at a reasonable price a verbatim copy of the official minutes of their meetings except for executive sessions. Any member of the Synod may request a copy of any official minutes of mission boards or commissions by submitting a written or electronic (via email) request to the Secretary of the Synod, who shall provide such minutes according to the policy of the Board of Directors.

1.5.3.6  Notwithstanding anything in the Bylaws to the contrary, the Articles of Incorporation or other governing documents of each agency shall provide:

> (a)  That all provisions of its Articles of Incorporation and Bylaws are subject to the provisions of the Constitution, the Bylaws, and the resolutions of the Synod in convention; and

> (b)  That in the event of dissolution other than by direction from the Synod in convention, the assets of such agency, subject to its liabilities, shall be transferred, consistent with applicable state and federal laws, as follows:

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 15 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 10 of 182

(1)  In the case of a synodwide corporate entity, district, university, college, or seminary, to The Lutheran Church—Missouri Synod as may be more specifically described elsewhere in these Bylaws;

(2)  In the case of a corporation formed by an agency (as defined in these Bylaws), to the agency that formed the dissolving corporation, or if such forming agency is not then in existence, to The Lutheran Church—Missouri Synod itself.

An agency may submit any concerns related to the inclusion of subsections (a) or (b) in its governing documents to the Board of Directors of the Synod, and the Board of Directors may determine to permit the removal or modification of these provisions for an affected agency.

### Full Financial Disclosure

1.5.4  The Synod and each of its agencies shall fully disclose their financial books and records to any member congregation of the Synod.

(a)  Full disclosure includes all information (including, but not limited to, information required to be made available under state law) recorded in any fashion, except the following:

(1)  Information that would violate the expected confidentiality of donors.

(2)  Personnel files or other information that would violate the expected confidentiality of employees.

(3)  Information that relates to in-process negotiations of financial matters.

(4)  Information the disclosure of which would breach a legal obligation of the Synod or its agencies or affect pending litigation or claims against the Synod or its agencies.

(5)  Information that is preliminary in nature or otherwise has not been finalized in its form and content.

(b)  Salaries of elected officers of the Synod, as identified in Constitution Art. X A, shall be published annually in an official periodical.

(c)  The accounting department of the Synod shall publish annually in an official periodical an invitation to request full, audited financial statements and summary operating budgets of the Synod or its agencies.

(d)  The Synod and its agencies shall share, upon request, the quarterly financial statements as reported to the respective governing boards.

(e)  All information produced for normal publication or distribution shall be provided free of charge.

(f)  Requests for detailed financial information or the inspection of financial records shall be made in writing to the respective corporate boards by a member congregation and shall state the records desired and the time period to be covered.

(1)  All responses to requests for information involving research or compilation shall be billed to the member on the basis of actual costs.

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 16 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 11 of 182

(2) Any inspection of financial records shall be done by (a) member(s) of the congregation or its stated authorized agent at a mutually agreeable time and place.

(3) The board may decline to provide the information requested if the board can demonstrate by clear and convincing evidence that the member congregation's request is with the specific intent to cause harm to the Synod or one of its agencies or with the sole intent of deliberately and significantly disrupting the operations and affairs of the Synod or one of its agencies.

(4) Any declination to provide information or decision to limit inspection shall be explained in writing.

(5) Challenges to any board decisions declining to provide information or to limit inspection may be reviewed under the Synod's dispute resolution process.

### Agency Operations

1.5.5    Every agency shall operate under the general human resources policies of the Synod as provided by the Board of Directors of the Synod, in accordance with Bylaw 3.3.4.3. Specific policies under these general policies may be adopted by each agency's governing board in order to accommodate the unique character of its operations.

1.5.5.1   All agencies shall develop policies regarding their relations with staffs in accordance with general human resources policies provided by the Board of Directors of the Synod.

### Agency Conflict Resolution

1.5.6    Dissent to decisions made by an agency shall ordinarily be expressed within the structure of that agency.

1.5.6.1   Administrative and programmatic conflicts between agencies of corporate Synod, between such agencies and the synodwide corporate entities, and between synodwide corporate entities shall be dealt with by the parties concerned in a Christian manner with the assistance of the President of the Synod.

### Removal of Individual Members from Board or Commission Membership

1.5.7    Individual members of the Synod's commissions and the boards of its agencies, as well as the individual members of its Board of Directors, shall discharge the duties of their offices in good faith. The following are considered cause for removal pursuant to this bylaw:

(1) Incapacity

(2) Breach of fiduciary responsibilities to the Synod or agency

(3) Neglect or refusal to perform duties of office

(4) No longer satisfying any of the qualifications for directors set forth in the articles of incorporation or bylaws of the entity as in effect at the beginning of the member's term

(5) Conviction of a felony

(6) Failure to disclose conflicts of interest to the Synod or agency

(7) Conduct evidencing a scandalous life

(8) Advocacy of false doctrine (Constitution Art. II)

31

Exhibit 2 to Defendants' Motion to Dismiss
Page 12 of 182

(9)  Failure to honor and uphold the doctrinal position of the Synod

(10)  Accumulation of three unexcused absences within any term of office

1.5.7.1   Unless otherwise specified in these Bylaws, the procedure for removal of a member of a commission, agency board, or the LCMS Board of Directors, except for those persons subject to Bylaw sections 2.15 and 2.16, shall be as follows:

(a)  Action for removal shall require written notice to each member of the relevant commission, agency board, or LCMS Board of Directors at least 30 days prior to a special meeting of the commission, agency board, or LCMS Board of Directors called for that purpose. A copy of such notice shall be sent to the President and the Secretary of the Synod and to the ecclesiastical supervisor, if applicable.

(b)  The special meeting shall be held no later than 60 days after the provision of the written notice, unless extended by the mutual agreement of the parties.

(c)  Removal shall be effected by

(1)  recommendation of such to the Synod's Board of Directors by a vote in favor of removal by at least three-fourths of all current members (excluding the person whose membership is in question) of the applicable commission, agency board, or LCMS Board of Directors; and

(2)  by a vote in favor of the recommendation of removal by at least three-fourths of all current members (excluding the person whose membership is in question) of the Board of Directors of the Synod.

(d)  Removal may be appealed by a member who has been removed from a commission, agency board, or the LCMS Board of Directors through the use of the Synod's dispute resolution process as provided in Bylaw section 1.10.

(e)  From the time that written notice is given until the commission, agency board, or the LCMS Board of Directors takes action with respect to the removal, the member(s) subject to removal may not vote on matters before the commission, agency board, or LCMS Board of Directors.

1.5.7.2   To the extent that the application of this bylaw is limited by applicable law with respect to the removal of members of a commission, agency board, or the LCMS Board of Directors, the commission, agency board, or LCMS Board of Directors on which the member serves may recommend the removal and attempt to cause the appropriate procedures under applicable law, these Bylaws, and the governing documents of the affected entity to be followed to permit the removal of such commission, agency board, or LCMS Board of Directors member.

### Removal of Officers of the Synod or District from Office

1.5.8   Officers of the Synod and a district shall discharge the duties of office in good faith. The following are considered cause for removal from office of an officer of the Synod or a district pursuant to this Bylaw, but not from membership in the Synod:

(1)  Incapacity

Exhibit 2 to Defendants' Motion to Dismiss
Page 13 of 182

        (2)  Breach of fiduciary responsibilities to the Synod or a district

        (3)  Neglect or refusal to perform duties of office

        (4)  Conviction of a felony

1.5.8.1    Unless otherwise specified in these Bylaws, the procedure for removal of an officer of the Synod or a district from office shall be as follows:

    (a)  Action for removal of an officer of a district other than a district president shall require written notice to each member of that district's board of directors at least 30 days prior to a special meeting of the board called for that purpose. A copy of such notice shall be sent to the President and the Secretary of the Synod and to the ecclesiastical supervisor, if applicable.

    (b)  Other than in the prior subsection (a), action for removal of an officer of the Synod other than the President of the Synod shall require written notice to each member of the Synod's Board of Directors at least 30 days prior to a special meeting of the Board called for that purpose. A copy of such notice shall be sent to the President and the Secretary of the Synod and to the ecclesiastical supervisor, if applicable.

    (c)  The special meeting provided for herein shall be held no later than 60 days after the provision of the written notice, unless extended by the mutual agreement of the parties.

    (d)  Removal from office of an officer of a district, other than a district president, shall be effected by a vote in favor of removal by at least three-fourths of all current members of the district board of directors (excluding the officer in question if a member of the board); and

    (e)  Removal from office of an officer of the Synod, other than the Synod President, shall be effected by a vote in favor of the recommendation of removal by at least three-fourths of all current members (excluding the officer in question if a member of the board) of the Board of Directors of the Synod.

    (f)  Removal pursuant to this Bylaw may be appealed by the officer who has been removed from office through the use of the Synod's dispute resolution process as provided in Bylaw section 1.10.

## 1.6  Confessional Position of the Synod

1.6.1    The confessional position of the Synod is set forth in Article II of its Constitution, to which all who wish to be and remain members of the Synod shall subscribe.

### Doctrinal Resolutions and Statements

1.6.2    The Synod, in seeking to clarify its witness or to settle doctrinal controversy, so that all who seek to participate in the relationships that exist within and through the Synod may benefit and may act to benefit others, shall have the right to adopt doctrinal resolutions and statements which are in harmony with Scripture and the Lutheran Confessions.

    (a)  Doctrinal resolutions may be adopted for the information, counsel, and guidance of the membership. They shall conform to the confessional position of the Synod as set forth in Article II of its Constitution and shall ordinarily cite the pertinent passages of the

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 19 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 14 of 182

Scriptures, the Lutheran Confessions, and any previously adopted official doctrinal statements and resolutions of the Synod. Such resolutions come into being in the same manner as any other resolutions of a convention of the Synod and are to be honored and upheld until such time as the Synod amends or repeals them.

(b)  Doctrinal statements set forth in greater detail the position of the Synod especially in controverted matters. A proposed statement or a proposal for the development of such a statement shall be

(1) submitted by the Commission on Theology and Church Relations or submitted to the Commission on Theology and Church Relations by a convention of the Synod (including that of a district), a faculty of the Synod, or an official district conference of ordained and/or commissioned ministers for evaluation, refinement, development, or recommendation, as the case may be;

(2) submitted by the commission, if it acts favorably, to the colleges, universities, seminaries, congregations, and other members of the Synod for study and suggestions for no more than one year (failure by the commission to submit a proposed doctrinal statement within a year may be appealed to the Synod in convention through a proper overture);

(3)  refined further by the commission on the basis of suggestions received;

(4) submitted by the commission to the Synod in convention for further consideration and possible adoption by majority vote; amendments shall require a two-thirds affirmative vote of those present and voting;

(5) resubmitted to the congregations for ratification in its final existing form;

(6)  ratified and operative if a two-thirds majority of the member congregations which respond within six months registers an affirmative vote on a ballot supplied by the Secretary of the Synod for that purpose. Failure to ratify makes the statement inoperative, and this fact shall be reported by the Secretary to the members of the Synod through an announcement in an official periodical;

(7) Such adopted and ratified doctrinal statements shall be regarded as the position of the Synod and shall be "accepted and used as helpful expositions and explanations" (FC SD Rule and Norm 10). They shall be honored and upheld ("to abide by, act, and teach in accordance with" [1971 Res. 2-21]) until such time as the Synod amends or repeals them;

(8) An overture to amend such an adopted ratified doctrinal statement shall follow the same procedure as listed in (1–6) above;

(9) An overture to repeal such an adopted and ratified doctrinal statement shall require a majority vote of the Synod in convention in answer to an overture properly submitted and be subject to the procedure of congregational approval set forth in paragraph (6) above;

(10) In the interim, those who submit overtures to amend or to repeal shall, while retaining their right to dissent, continue to honor

34

Exhibit 2 to Defendants' Motion to Dismiss
Page 15 of 182

and uphold publicly the statement as the position of the Synod, notwithstanding further study and action by the Synod in convention.

## 1.7  Agreements

1.7.1    The Constitution, Bylaws, and all other rules and regulations of the Synod apply to all congregational and individual members of the Synod.

1.7.2    The Synod expects every member congregation of the Synod to respect its resolutions and to consider them of binding force if they are in accordance with the Word of God and if they appear applicable as far as the condition of the congregation is concerned. The Synod, being an advisory body, recognizes the right of a congregation to be the judge of the applicability of the resolution to its local condition. However, in exercising such judgment, a congregation must not act arbitrarily, but in accordance with the principles of Christian love and charity.

1.7.3    The Synod expects congregations that have not been received into membership, but are served by the Synod, and whose ministers of religion, ordained and commissioned, hold membership in the Synod, to honor its rules and regulations.

## 1.8  Dissent

1.8.1    While retaining the right of brotherly dissent, members of the Synod are expected as part of the life together within the fellowship of the Synod to honor and uphold the resolutions of the Synod.

1.8.2    Dissent from the doctrinal position of the Synod as expressed in its resolutions and doctrinal statements is to be expressed first within the fellowship of peers (that is, with those who are competent to evaluate the issue critically) and then brought to the attention of the Commission on Theology and Church Relations before finding expression as an overture to the Synod in convention calling for revision or rescission. The discussion among the fellowship of peers is to be conducted privately and confidentially among those who are competent rather than in a public forum. While the conscience of the dissenter shall be respected, the consciences of others, as well as the collective will of the Synod, shall also be respected.

1.8.3    This right of brotherly dissent does not allow a member of the Synod publicly to teach or practice contrary to the established doctrinal position of the Synod. Any such public teaching shall place in jeopardy membership in the Synod.

## 1.9  Doctrinal Review

### *Definition*

1.9.1    Doctrinal review is the exercise of the Synod's responsibility to determine that every doctrinal statement made in its or any of its agencies' or auxiliaries' materials is in accord with the Scriptures and the Lutheran Confessions.

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 21 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 16 of 182

*Material Subject to Doctrinal Review*

1.9.1.1    The following materials are subject to doctrinal review:

    (a)  All official periodicals and journals of the Synod as well as any material with doctrinal content issued publicly by boards, commissions, or other subordinate groups of the Synod except as stipulated in these Bylaws shall be subject to doctrinal review.

    (b)  The right to produce study documents and exploratory material plainly designated as such and published by boards, commissions, or other subordinate groups of the Synod is recognized, and such material is not required to be submitted to the doctrinal review process. Publication of such study material that is not submitted for doctrinal review shall always include this notice on or immediately following the title page: "This material is being released for study and discussion purposes, and the author(s) is(are) solely responsible for its contents. It has not been submitted to the process for doctrinal review stipulated in the Bylaws of The Lutheran Church—Missouri Synod and does not necessarily reflect the theology of the Lutheran Confessions or the doctrinal position of The Lutheran Church—Missouri Synod."

    (c)  Each district is accountable to the Synod through its respective president and board of directors for the content of all of its published materials.

    (d)  Each of the Synod's schools is accountable to the Synod through its respective president and board of regents for the content of its professional journals and all of its published materials that are not the official publications of the Synod (Bylaw 3.4.3.7). The editorial boards of such publications shall serve as their own doctrinal reviewers.

    (e)  Auxiliary organizations recognized by the Synod shall be held directly accountable for their material. However, in accord with his office as defined in Constitution Art. XI B 1, the President of the Synod shall require doctrinal review.

    (f)  In the case of broadcasts over the Synod's radio station by other than staff members, individuals must be held responsible for their own material since it is not feasible to apply the process of doctrinal review to such broadcasts.

    (g)  Official reports of the boards, commissions, task forces, and committees of the Synod prepared in response to directives from the Synod shall not be subject to doctrinal review.

*Procedure*

1.9.2    Before materials stipulated in Bylaw 1.9.1 are published, they shall be submitted to (a) doctrinal reviewer(s). Reviewers shall make a careful evaluation of the doctrinal content of all items submitted. Materials are to be reviewed in a prompt manner and completed in no longer than four weeks. Exceptions shall be arranged by mutual agreement between the reviewer(s) and the originating entity.

    (a)  The primary responsibility for doctrinal supervision and review lies with the President of the Synod (Constitution Art. XI B 1).

        (1)  Each board, commission, and other subordinate group of the Synod shall advise the President of the Synod of the number and

Exhibit 2 to Defendants' Motion to Dismiss
Page 17 of 182

desired competency of doctrinal reviewers needed by it and may suggest a list of qualified persons. The President shall appoint reviewers for each group according to its needs. They shall be broadly representative of the ministry of the Synod.

(2)  Reviewers shall be appointed for renewable three-year terms. An appointment may be terminated prior to the completion of the appointed term if the reviewer is unable or unwilling to carry out the reviewing tasks assigned. In the event of such termination, the President of the Synod shall appoint another reviewer to complete the unexpired term.

(b)  Each agency of the Synod, synodwide corporate entity, or auxiliary shall establish procedures that will insure that its material as specified in Bylaw section 1.9 will be submitted for doctrinal review to one of the reviewers referred to in Bylaw 1.9.2 (a).

(c)  Since time requirements vary according to the type of material being reviewed, the procedure in each case shall be worked out to the mutual satisfaction of the sponsoring group and the doctrinal reviewer(s).

(d)  The identity of authors and reviewers shall not be disclosed without the approval of the President. Consultation may at times be advisable, however, where clarification is necessary.

(e)  The reviewer's primary concern is that items submitted to him be in agreement in their doctrinal content with the Scriptures and the Lutheran Confessions.

(f)  The reviewer(s) shall also be concerned that the items submitted do not contain statements that are inadequate, misleading, ambiguous, or lacking in doctrinal clarity.

(g)  The reviewer(s) shall further be concerned that resolutions of the Synod be honored and upheld and that positions deviating from the doctrinal resolutions of the Synod be clearly identified as such.

(h)  When the author is also a reviewer, his material shall be assigned to another reviewer. In order to avoid any conflict of interest, no author shall be involved in any way in the selection or assignment of reviewer(s) for his or her own work.

(i)  The reviewer may request that specific material assigned to him also be reviewed by another reviewer.

(j)  Where changes appear to be necessary, the reviewer(s) shall submit a thorough and clearly written documented critique that shall be made available to the author, the sponsoring group, and the publisher. The documentation provided by the reviewer(s) shall provide a thorough and detailed explanation, with all appropriate biblical and confessional references used to support the opinion offered.

(k)  The author shall consider the critique and make necessary revisions until there is agreement between the author and the reviewer(s).

(l)  Should any problem arise between an author, the reviewer(s), the publisher, or any other party involved with respect to the material submitted for review, the sponsoring group shall endeavor to resolve it

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 23 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 18 of 182

to the satisfaction of the reviewer(s). If it cannot do so, the problem shall be submitted to the Commission on Doctrinal Review which shall follow the appeals procedure and criteria stated in Bylaw 3.9.3.2.1.

1.9.3    After publication, any challenge to material that is subject to doctrinal review, no matter which process is used as listed in Bylaw 1.9.2, shall be handled according to the procedure and criteria specified in Bylaw 3.9.3.2.2.

## 1.10  Dispute Resolution of the Synod

*Preamble*

1.10.1    When disputes, disagreements, or offenses arise among members of the body of Christ, it is a matter of grave concern for the whole church. Conflicts that occur in the body should be resolved promptly (Matthew 5:23–24; Eph. 4:26–27). Parties to disputes are urged by the mercies of God to proceed with one another with "the same attitude that was in Christ Jesus" (Phil. 2:5). In so doing, individuals, congregations, and various agencies within the Synod are urged to reject a "win-lose" attitude that typifies secular conflict. For the sake of the Gospel, the church should spare no resource in providing assistance.

1.10.1.1    The Holy Scriptures (1 Cor. 6:1–7) urge Christians to settle their differences by laying them before the "members of the brotherhood." Therefore, the Synod in the spirit of 1 Corinthians 6 calls upon all parties to a disagreement, accusation, controversy, or disciplinary action to rely exclusively and fully on the Synod's system of reconciliation and conflict resolution. The use of the Synod's conflict resolution procedures shall be the exclusive and final remedy for those who are in dispute. Fitness for ministry and other theological matters must be determined within the church. Parties to disputes are urged, in matters of a doctrinal nature, to follow the procedures as outlined in Bylaw section 1.8.

1.10.1.2    The words of Jesus in Matthew 18:15–20 provide the basis for church discipline for the local congregation. The same passage also grants Christ's guidance to all Christians in seeking to settle other disputes, many of which fall outside the purview of church discipline involving the congregation. In either case, the steps of Matthew 18 should be applied lovingly in both formal and informal settings. Matthew 18 does not apply directly in cases of public sin, but face-to-face meetings are required nonetheless, even in the case of public sin, toward the goal of reconciliation and winning the brother or sister. The parties and others attempting to effect resolution of a dispute must always remain mindful that the church has been given the "ministry of reconciliation" (2 Cor. 5:18). Hence, conflict resolution in the church is to lead to reconciliation, restoring the erring member in a spirit of gentleness (Gal. 6:1). Its aim is to avoid the adversarial system practiced in society.

1.10.1.3    The heart and center of all Christian conflict resolution is the justification of the sinner through grace in Christ Jesus. Biblical reconciliation of persons in conflict begins with God's truth that we are all sinners who have been reconciled to God through the death and resurrection of Christ Jesus. Christ's "ministry of reconciliation" is one of the church's foremost priorities.

Exhibit 2 to Defendants' Motion to Dismiss
Page 19 of 182

1.10.1.4    Christian conflict resolution seeks to resolve disputed issues in a manner pleasing to God. Those in conflict are urged to proceed prayerfully in good faith and trust. Disputes are more likely to be resolved harmoniously if those involved in the conflict recognize one another as redeemed children of God.

1.10.1.5    Christians involved in conflict must always stand ready to ask for or extend forgiveness in accordance with Scripture. As the church endeavors to help bring about peace, truth, justice, and reconciliation, it always seeks to do so with a proper distinction between Law and Gospel, that is, in the context of God's judgment and mercy. We are ever to be mindful that it is God who judges the hearts of sinful men and grants His gracious word of forgiveness to us all.

1.10.1.6    When there is repentance and reconciliation, the body of Christ rejoices in its oneness with Christ and with one another.

### *Purpose*

1.10.2     This procedure is established to resolve, in a God-pleasing manner, disputes that involve as parties, (1) members of the Synod; (2) corporate Synod or an agency of the Synod; (3) members of congregations challenging the procedure used in their excommunications; (4) Auxiliaries and recognized service organizations that have agreed to address call-related disputes through the dispute resolution system, in regard to such disputes; or (5) members of congregations of the Synod elected or appointed to positions with the LCMS Board of Directors or an agency of the Synod. It shall be the exclusive remedy to resolve such disputes that involve theological, doctrinal, or ecclesiastical issues except those covered under Bylaw sections 2.14–2.17 and except as provided in Bylaw 1.10.3, and shall be binding on all parties. It is applicable whether the dispute involves only a difference of opinion without personal animosity or is one that involves ill will and sin that requires repentance and forgiveness. No person, congregation, or agency to whom or to which the provisions of this dispute resolution process are applicable because of their membership in the Synod may render this procedure inapplicable by terminating that membership during the course of the dispute resolution process.

### *Exceptions*

1.10.3     This chapter provides evangelical procedures to remedy disputes only and does not set forth procedures for expulsion from membership (Constitution Art. XIII and Bylaw sections 2.14–2.17) nor does it set forth procedures for boards of regents' supervision of faculty and administration as specified in Bylaws 3.10.5.7.5–3.10.5.7.9, 3.10.6.7.1, and 3.10.6.7.5–3.10.6.7.5.2. While Christians are encouraged to seek to resolve all their disputes without resorting to secular courts, this chapter does not provide an exclusive remedy for the following matters, unless such matters involve theological, doctrinal, or ecclesiastical issues, including those arising under the divine call of a member of the Synod:

(a)  Disputes concerning property rights (e.g., real estate agreements, mortgages, fraud, or embezzlement); and

(b)  Disputes arising under contractual arrangements of all kinds (e.g., contracts for goods, services, or employment benefits).

Exhibit 2 to Defendants' Motion to Dismiss
Page 20 of 182

Even in the case of disputes concerning property rights or disputes arising under contractual arrangements, this dispute resolution process may be used if both parties to a dispute sign written statements agreeing to use and honor the outcome of the process.

### Definition of Terms as Used in this Bylaw Section 1.10

1.10.4    In order to communicate effectively and avoid misunderstanding, it is critical that terms be carefully defined:

(a) *Administrator*: The secretary of a district or of the Synod or an appointee (Bylaw 1.10.6) who manages the dispute resolution process but who does not take leadership, declare judgments, advise, or become involved in the matter in dispute.

(b) *Appeal Panel*: Three district presidents selected according to these bylaws to determine whether the decision of a Dispute Resolution Panel should be reconsidered or reviewed.

(c) *Blind draw*: Selection of names according to the procedures set forth in the *Standard Operating Procedures Manual*.

(d) *Complainant*: A party and/or parties to a dispute who initiate an action to settle a conflict under the provisions of the Synod's dispute resolution process.

(e) *Dispute Resolution Panel*: Three persons who are reconcilers selected according to these bylaws and one person who is a nonvoting hearing facilitator selected according to these bylaws, who shall hear matters in dispute between parties and assist in reconciliation or provide for a resolution of the dispute by rendering a final decision.

(f) *Face-to-face*: A meeting face-to-face in person between the parties in dispute in the manner described in Matthew 18:15. Email, regular mail, fax, or telephone call (or any combination thereof) does not satisfy this requirement. (Note: Failure to conduct a face-to-face meeting within 30 days or within such extension as may be established by the involved ecclesiastical supervisors shall result in dismissal if the fault lies with the complainant or movement to the next stage if the fault lies with the respondent.)

(g) *Formal*: Efforts to resolve the dispute toward reconciliation beginning with the formal reconciliation meeting.

(h) *Hearing facilitator*: One selected according to these bylaws and trained to serve as a facilitator for hearings before panels.

(i) *Informal*: All efforts toward reconciliation prior to the formal reconciliation meeting.

(j) *Party and/or parties to a dispute or the matter (Party to the matter in dispute)*: A "party and/or parties to a dispute" is either a complainant or a respondent. A reconciler, panel member, hearing facilitator or ecclesiastical supervisor is not a "party and/or parties to a dispute."

(k) *Persons involved*: "Persons involved" includes the complainant, the respondent, the administrator of the process, the ecclesiastical supervisor, a reconciler, panel members, the hearing facilitator, a witness, an advisor, or any others involved in the dispute resolution process.

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 26 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 21 of 182

(l) *Reconciler*: As used in this chapter, a member of The Lutheran Church—Missouri Synod or of an LCMS congregation who is appointed to be available to assist parties to a dispute with a view toward reconciling them or enabling them to adjust or settle their dispute and who has completed the Synod's training program. A reconciler does not judge or take sides but rather, with the help of God, assists both parties to find their own resolution to the dispute.

(m) *Reply of respondent*: A written response issued by a party to a dispute containing factual assertions that answer a complainant's statement of the matter in dispute.

(n) *Respondent*: One who is named party to a dispute brought by a complainant.

(o) *Review Panel*: Three reconcilers selected according to these bylaws and one person who is a nonvoting hearing facilitator selected according to these bylaws who shall give a final hearing when the determination of the Appeal Panel is that a decision of the Dispute Resolution Panel should be reconsidered or reviewed.

(p) *Shall*: Retains its compulsory meaning in this bylaw section. Its use, however, in connection with time frame expectations may require exceptions at times upon good cause shown, to be allowed by the administrator of the process.

(q) *Standard Operating Procedures Manual*: A comprehensive procedures manual developed by the Commission on Constitutional Matters in consultation with the Secretary of the Synod and the Council of Presidents to ensure uniformity and consistency in the implementation of this bylaw section.

(r) *Statement of the matter in dispute*: A written concise statement containing factual assertions involving contended or conflicted issues between one or more parties. The statement may also contain a request for the type of relief to be granted.

(s) *Time frame*: Period of time allowed for carrying out a bylaw requirement, to be monitored by the administrator of the process, incidents of purposeful non-compliance to be reported to the President of the Synod.

(t) *Witness*: A person called to give testimony regarding facts to a dispute before a Dispute Resolution Panel. A reconciler appointed to assist parties in dispute resolution or a person called upon by a reconciler at the formal reconciliation meeting shall not testify as a witness before a Dispute Resolution Panel in the same dispute.

### *Informal Efforts toward Reconciliation; Consultation*

1.10.5    Before any matter is submitted to the formal reconciliation process, the parties involved in a dispute must meet together, face-to-face, in a good-faith attempt to settle their dispute in the manner described in Matthew 18:15 and may involve the informal use of a reconciler. And further, before any matter is submitted to the formal reconciliation process, the complainant must meet and consult with the appropriate ecclesiastical supervisor to seek advice and also so that it can be determined whether this is the appropriate bylaw procedure (Bylaw section 1.10) or whether the

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 27 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 22 of 182

matter falls under Bylaw sections 1.8, 2.14, 2.15, 2.16, or 2.17, or Bylaws 3.10.5.7.9, 3.10.6.7.1, and 3.10.6.7.5.2. In regard to this consultation:

(a)   From this point forward in this process, in the case of multiple complainants or multiple respondents, the district president of the respondent decides whether or not each complainant and/or respondent proceeds singly and individually, or as a group.

(b)   The district president of the complainant shall inform the district president of the respondent that a consultation is underway. He may also seek advice from the vice-presidents of his own district or from the district president of the respondent. The district president may also ask for an opinion of the Commission on Constitutional Matters (CCM) and/or the Commission on Theology and Church Relations (CTCR). The district president must follow any opinion received from either the CCM or the CTCR, which shall be rendered within 30 days or such additional time as the district president may allow.

(c)   Within 45 days of the conclusion of the consultation and receipt of any advice or opinions as described above, the district president shall advise the complainant and the district president of the respondent of the appropriate bylaw section to be followed, and shall provide evangelical supervision, counsel, and care to the party or parties.

(d)   If Bylaw section 1.10 applies, the district president shall require the complainant to meet face-to-face with the respondent in the manner described in Matthew 18:15 if the complainant has not already done so.

(e)   The reputation of all parties to a dispute is to be protected as commanded in the Eighth Commandment. The goal throughout is always one of reconciliation, of repentance and forgiveness, even if the following proceedings are carried out.

(f)   Should the otherwise appropriate ecclesiastical supervisor be the intended respondent, or be disqualified due to conflict of interest, the next qualified district officer without such a conflict shall conduct the consultation and provide the attendant evangelical supervision, counsel, and care.

### Formal Efforts toward Reconciliation

1.10.6   If any party to the dispute is of the opinion that informal reconciliation efforts have failed, such party, in consultation with the appropriate ecclesiastical supervisor, shall submit a request to the administrator of the dispute resolution process, the secretary of the Synod or district, or an appointee, as appropriate, that a reconciler be appointed to assist in seeking reconciliation. Such request shall be accompanied by:

(a)   a written statement of the matter in dispute; and

(b)   a written statement setting forth, in detail, the informal efforts that have been made to achieve reconciliation.

If the secretary of the Synod or district is a party to the matter in dispute, has a conflict of interest, or serves as a witness, then the President of the Synod or the district president, as appropriate, shall appoint an administrator of the process in the matter.

1.10.6.1   The administrator shall within 15 days select the reconciler in the manner hereinafter set forth and then notify the parties to the dispute as to the

42

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 28 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 23 of 182

name and address of the reconciler. He/she shall also forward to the chosen reconciler and the respondent the statement of the matter in dispute and the written statement of the informal reconciliation efforts.

1.10.6.2   If the reconciler determines that informal reconciliation efforts have been inadequate, the reconciler shall direct the parties to the dispute to engage in further informal reconciliation efforts. Such additional time shall not exceed 60 days.

1.10.6.3   If informal reconciliation efforts do not resolve the matter, the reconciler shall direct the respondent to submit to the reconciler and the complainant a written reply responding to the statement of the matter in dispute. The reconciler shall simultaneously arrange a formal reconciliation meeting with the parties to the dispute. Such meeting shall be scheduled by the reconciler at the earliest reasonable date possible, at a location which will minimize travel for the parties to the dispute.

1.10.6.4   At the formal reconciliation meeting, the reconciler shall listen to the facts as presented by the parties to the dispute and seek to reconcile their differences on the basis of Christian love and forgiveness. With the approval of the reconciler, each party may, in the manner described in Matthew 18:16, bring one or two persons to the meeting "so that every matter may be established by their testimony." Such meeting shall not be open to the public, nor shall any formal record be made thereof. The reconciler may draw upon persons and resources that the reconciler deems necessary to assist in the reconciliation process.

1.10.6.5   Upon conclusion of the formal reconciliation meeting or meetings, the reconciler shall prepare a written report which contains

(1) the actions of the reconciler;

(2) the issues that were resolved:

(3) the issues that remain unresolved;

(4) a statement whether reconciliation was achieved;

(5) the statement of the complainant as to informal reconciliation efforts;

(6) the statement of the matter in dispute; and

(7) any reply by the respondent.

All other communication that takes place during the reconciliation process shall be considered strictly confidential, including all oral and written communications of the parties to the dispute. The report, therefore, shall not contain any such information nor shall it contain any opinion of the reconciler regarding the dispute. The report and the attachments shall be provided only to the parties to the dispute and the secretary of the Synod or district as appropriate.

### *Procedure of a Dispute Resolution Panel*

1.10.7   If the parties to a dispute with the assistance of the reconciler have been unable to achieve reconciliation, the complainant shall notify the Secretary of the Synod within 15 days after receiving the report from the reconciler if the matter is to be presented to a Dispute Resolution Panel.

1.10.7.1   If the complainant requests the formation of a Dispute Resolution Panel, the Secretary of the Synod, or his representative, shall within 21 days select

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 29 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 24 of 182

such a panel in the prescribed manner and then forward to each panel member a copy of the report of the reconciler with its attachments.

1.10.7.2   Each Dispute Resolution Panel shall have a nonvoting hearing facilitator who will serve as chairman of the panel.

1.10.7.3   The formal hearing before the Dispute Resolution Panel shall be conducted by the hearing facilitator within 45 days after the Hearing Panel was constituted. The hearing facilitator shall, within 15 days of panel formation, confer with the parties and the Dispute Resolution Panel to select the date and location of the formal hearing. The formal hearing may be delayed for a short time beyond the 45-day period with the unanimous consent of the panel members.

1.10.7.4   The following rules for the Dispute Resolution Panel shall apply:

(a)   The hearing shall be private, attended only by the parties to the dispute and one advisor of each party's choice, should any party desire one. This advisor shall not address the panel or participate in the discussion at the hearing. Witnesses who can substantiate the facts relevant to the matter in dispute may be called before and address the panel. The administrator of the process shall not attend the hearing or serve as a witness. The panel shall establish the procedure to be followed in the hearing and the relevancy of evidence so that each party shall be given an opportunity fully to present its respective position. In performing its duty, the panel shall continue efforts to reconcile the parties to the dispute on the basis of Christian love and forgiveness.

(b)   Within 30 days after the final hearing, the panel shall issue a written decision that shall state the facts determined by the panel and the reasons for its decision.

(c)   The panel shall forward a copy of its decision to

(1)   each party to the matter in dispute;

(2)   the Secretary of the Synod;

(3)   the President of the Synod; and

(4)   the president of the respective district.

(d)   Subject to request for review or appeal (contemplated or pending), the final decision of a Dispute Resolution Panel shall

(1)   be binding upon the parties to that dispute;

(2)   have no precedential value;

(3)   be carried out by the appropriate person, group, or member of the Synod; and

(4)   be publicized as deemed appropriate under the circumstances by the district president or the President of the Synod.

### Reconsideration of a Dispute Resolution Panel Decision

1.10.8   Within 15 days after receiving the decision of the Dispute Resolution Panel, any party to the dispute or the President of the Synod, if a question of doctrine or practice is involved (Constitution Art. XI B 1–3), may appeal the decision. The President may also request that an opinion of the Commission on Constitutional Matters or the Commission on Theology and Church Relations be obtained.

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 30 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 25 of 182

1.10.8.1   Such appeal shall be mailed to the Secretary of the Synod, each member of the Dispute Resolution Panel, and the other parties to the dispute and shall be accompanied by a written memorandum stating the basis of the request.

1.10.8.2   Within 21 days after receipt, an Appeal Panel shall be selected in the prescribed manner, and the Secretary of the Synod shall send the appeal to each panel member.

(a)  Copies of the entire official record of the case, including the full report of the reconciler, the decision and all documentary evidence considered by the Dispute Resolution Panel, and the written appeal request shall be provided to the members of the panel. The panel shall make its decision on the basis of the minutes and written decision of the Dispute Resolution Panel and the documentary evidence received and reviewed.

(b)  The panel shall concern itself only with those issues originally addressed by the Dispute Resolution Panel, unless issues were identified by the Dispute Resolution Panel for which it did not make a decision.

(c)  The panel shall decide only whether to approve reconsideration of the decision of the Dispute Resolution Panel. The panel shall not approve a request for a new hearing on the basis of newly discovered evidence unless such evidence was clearly not available to the Dispute Resolution Panel and was not the fault of the party requesting the reopening of the case, and unless it is clear that the absence of such evidence resulted in a gross miscarriage of justice.

(d)  The standards of review, which define the parameters for the panel's consideration of an appeal, limit the panel's review to three basic areas.

(1)  Factual findings: The Appeal Panel shall review factual findings of the Dispute Resolution Panel only to determine if they are supported by evidence. The Appeal Panel shall not ordinarily sit in judgment of the Dispute Resolution Panel's conclusions regarding evidence, since that panel was in the best position to judge factual issues. The Appeal Panel must be convinced that a mistake has been committed, that is, that the evidence is such that reasonable minds could not disagree.

(2)  Conclusions on authority: The Appeal Panel may approve an appeal if the Dispute Resolution Panel was clearly outside its authority, e.g., a decision that the panel had no authority to make under the Constitution and Bylaws, or a decision on an issue not identified by the Dispute Resolution Panel, or a decision on a theological question that the panel had no authority to make.

(3)  Discretionary acts: The Appeal Panel may approve an appeal if there was a clear abuse of discretion impacting the decision of the Dispute Resolution Panel, resulting in a gross miscarriage of justice, or that involves an obvious and inappropriate bias or prejudice.

1.10.8.3   Within 30 days after its formation, the Appeal Panel shall issue its written decision in response to the request for reconsideration.

1.10.8.4   If an appeal is granted, the Secretary of the Synod, or his representative, shall, within 21 days, select a Review Panel in the prescribed manner

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 31 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 26 of 182

(Bylaws 1.10.15ff.). The Review Panel shall generally decide the issue by following the procedure used by a Dispute Resolution Panel (Bylaws 1.10.7ff.) but may decide the issue on the record without further formal hearing if deemed sufficient and appropriate.

1.10.8.5 The final decision of the Review Panel shall

(a) be binding upon the parties to that dispute and not be subject to further appeal;

(b) have no precedential value;

(c) be carried out by the appropriate person, group, or member of the Synod; and

(d) be publicized as deemed appropriate under the circumstances by the district president or the President of the Synod.

### Congregation's Right of Self-Government

1.10.9 The congregation's right of self-government shall be recognized. However, when a decision of a congregation is at issue, a Dispute Resolution Panel may review the decision of the congregation according to the Holy Scriptures and shall either uphold the action of the congregation or advise the congregation to review and revise its decision. If the congregation does not revise its decision, the other congregations of the Synod shall not be required to respect this decision, and the district involved shall take action with respect to the congregation as it may deem appropriate.

### District Reconcilers

1.10.10 Each district board of directors shall appoint and maintain a district roster of four reconcilers (ministers of religion—ordained, ministers of religion—commissioned, and laypersons), no more than two of whom shall be ministers of religion—ordained, from a list supplied by the circuit visitors of the district. The Synod shall provide appropriate training within six months following each national Synod convention.

1.10.10.1 The term of service of a reconciler shall be six years, renewable immediately following every even-numbered Synod convention (2010, 2016, etc.) without term limitations. Reconcilers shall be people "of good reputation, full of the Holy Spirit and wisdom" (Acts 6:3). Vacancies shall be filled by the district board of directors in the same manner as regular appointments. The district board of directors may add to the district roster of reconcilers a reconciler who has moved into the district from another district.

1.10.10.2 One of the four shall be chosen by blind draw according to the procedures set forth in the *Standard Operating Procedures Manual* (hereafter referred to as the *SOPM*) by the secretary of the district to serve as reconciler in the following situations arising in the district:

(a) Procedural questions involved in excommunication cases;

(b) Cases in which a member of the Synod shall have been removed from the position that such member holds in a congregation that is a member of the Synod;

(c) Cases in which a person, whether or not a member of the Synod, is removed from the position which the person holds in the district; and

(d) Cases involving differences between congregations within the same district or between a congregation and its district.

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 32 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 27 of 182

1.10.10.3   The members of the district roster of reconcilers of all the districts shall comprise the Synod's roster of reconcilers. One member of the Synod's roster of reconcilers shall be chosen by blind draw according to the *SOPM* by the Secretary of the Synod in all disputes except those

(a)  enumerated in Bylaw 1.10.10.2; or

(b)  cases under Article XIII of the Constitution, which shall follow the procedure for terminating membership set forth in Bylaw sections 2.14–2.17.

1.10.10.4   A reconciler may be removed for cause from a district's roster of reconcilers by that district's board of directors upon report of the administrator of the dispute resolution process after consultation with the president of the district.

*Special Considerations for Reconcilers*

1.10.11   Limitations on holding multiple offices do not apply to reconcilers.

1.10.11.1   If a reconciler moves from the district where appointed, such reconciler shall remain as a member of the Synod's roster of reconcilers until the term of service of the reconciler expires.

1.10.11.2   If all of the district reconcilers are unavailable for a particular matter, the secretary of the district shall request that a reconciler from another district be chosen in the prescribed manner by the secretary of the other district.

*Hearing Facilitators*

1.10.12   After the training of the reconcilers and in consultation with the appropriate district presidents, the Secretary of the Synod shall maintain a roster of 25 hearing facilitators selected from the roster of trained reconcilers. They may be ordained ministers, commissioned ministers, or laypersons and shall exhibit skills in the proper conduct of a fair and impartial hearing. They shall receive training for such purpose.

(a)  Their term of service, monitored by the Secretary of the Synod, shall be six years, renewable without limit. Within three months after even-numbered conventions of the Synod (2010, 2016, etc.), the Secretary of the Synod shall contact all hearing facilitators to learn of their availability and willingness to continue for an additional term. Resulting vacancies on the roster of hearing facilitators shall be filled by the Secretary of the Synod from the Synod roster of reconcilers after consultation with the appropriate district presidents in time for resulting vacancies on district rosters of reconcilers to be filled by appointment by district boards of directors.

(b)  Any vacancy in an unexpired term shall be filled in the same manner as described above.

1.10.12.1   Limitations on holding multiple offices do not apply to hearing facilitators.

1.10.12.2   If a hearing facilitator moves from the district where nominated, such hearing facilitator may remain on the Synod's roster of hearing facilitators.

1.10.12.3   A hearing facilitator shall not serve as a reconciler or as a voting member of a panel.

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 33 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 28 of 182

*Dispute Resolution Panels*

1.10.13     The Synod's roster of reconcilers shall comprise the list from which dispute resolution panel voting members will be selected.

1.10.13.1   Each Dispute Resolution Panel shall consist of three voting members, at least one of whom shall be a minister of religion—ordained and one a layperson.

> (a) Nine names shall be selected by a blind draw from the dispute resolution roster.
>
> (b) No member of a panel shall be from the district in which the dispute arose or, if it is a Synod question, from any district in which a party holds membership. No two members of a panel shall be from the same district.
>
> (c) The list shall be mailed simultaneously to each party, who shall be entitled to strike three names and return the list to the Secretary of the Synod within one week.
>
> (d) The Secretary of the Synod shall correct any problem with the panel from the remaining names by blind draw according to the *SOPM*. In the event that additional names are needed, three names will be selected in the manner set forth above and those names submitted to each party who shall have a right to strike one. In the event that there is more than one remaining, the Secretary shall determine the final member by a blind draw according to the *SOPM* from the remainder.

1.10.13.2   The hearing facilitator shall be selected as follows:

> (a) Three names shall be selected by a blind draw according to the *SOPM* from the hearing facilitator roster.
>
> (b) No hearing facilitator shall be from the district in which the dispute arose or from any district in which a party holds membership or from any of the panel members' districts.
>
> (c) The list shall be mailed simultaneously to each party, who shall be entitled to strike one name and return the list to the Secretary of the Synod within one week.
>
> (d) The Secretary of the Synod shall correct any problem with the panel from the remaining names by blind draw according to the *SOPM*. In the event that additional names are needed, three names will be selected in the manner set forth above and those names submitted to each party, who shall have the right to strike one. In the event that there is more than one remaining, the Secretary shall determine the final member by a blind draw according to the *SOPM* from that remainder.

1.10.13.3   The hearing facilitator shall conduct the hearing, shall serve as chairman of the panel, and may draw upon persons and resources that he deems necessary for conducting a hearing in a fair and equitable manner.

1.10.13.4   The Dispute Resolution Panel shall select its own secretary from its members.

*Appeal Panels*

1.10.14     The Appeal Panel shall be made up of three district presidents who shall be trained for such service.

48

(a) One district president shall be selected by the complainant, one selected by the respondent, and the third selected by the two appeal panel members so selected.

(b) If the two appeal panel members cannot agree on a third, the Secretary of the Synod shall select the third member by blind draw according to the *SOPM* from the remaining district presidents.

***Review Panels***

1.10.15 Review Panel members shall be selected from the Synod's roster of reconcilers.

1.10.15.1 Each Review Panel shall consist of three voting members, at least one of whom shall be a minister of religion—ordained, and at least one layperson.

(a) Nine names shall be selected by a blind draw according to the *SOPM* from the roster of reconcilers of the Synod.

(b) No member shall be from the district in which the dispute arose, or, if it is a Synod question, from any district in which a party holds membership. No two members of a panel shall be from the same district. No member shall have served on the previous Hearing Panel.

(c) The list shall be mailed simultaneously to each party, who shall be entitled to strike three names and return the list to the Secretary of the Synod within one week.

(d) The Secretary of the Synod shall correct any problem with the panel from the remaining names by blind draw according to the *SOPM*. In the event that additional names are needed, three names will be selected in the manner set forth above and those names submitted to each party who shall have the right to strike one. In the event that there is more than one remaining, the Secretary shall determine the final member by a blind draw according to the *SOPM* from that remainder.

1.10.15.2 The hearing facilitator shall be selected as follows:

(a) Three names shall be selected by a blind draw according to the *SOPM* from the hearing facilitator roster.

(b) No hearing facilitator shall be from the district in which the dispute arose or from any district in which a party holds membership or from any of the panel members' districts. The hearing facilitator shall not have assisted the previous Hearing Panel.

(c) The list shall be mailed simultaneously to each party, who shall be entitled to strike one name and return the list to the Secretary of the Synod within one week.

(d) The Secretary of the Synod shall correct any problem with the panel from the remaining names by blind draw according to the *SOPM*. In the event additional names are needed, three names will be selected in the manner set forth above and those names submitted to each party, who shall have the right to strike one. In the event that there is more than one remaining, the secretary shall determine the final member by a blind draw according to the *SOPM* from that remainder.

1.10.15.3 The hearing facilitator shall serve as chairman of the panel, and may draw upon persons and resources that he/she deems necessary for conducting a hearing in a fair and equitable manner.

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 35 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 30 of 182

1.10.15.4   The Review Panel shall select its own secretary from its members.

### *Disqualification*

1.10.16   The standard for disqualification of a reconciler or panel member or hearing facilitator shall be actual partiality or the appearance thereof.

1.10.16.1   Any party and/or parties to a dispute shall have the right to request disqualification of a reconciler, panel member, or hearing facilitator. If that individual does not agree to the disqualification, the decision shall be made by a separate three-member panel of reconcilers drawn for that purpose.

(a)   Nine names shall be selected by blind draw from the Synod's roster of reconcilers.

(b)   The list shall be mailed simultaneously to each party, who shall be entitled to strike up to three names. The list shall be returned to the Secretary of the Synod within one week after receipt.

(c)   The Secretary of the Synod shall correct any problem with the list. No member of the panel shall be from the district in which the dispute arose or any district of any party to the dispute. No two panel members shall be from the same district. If more names remain than are needed, the final selection shall be made by blind draw.

(d)   In the event that additional names are needed, three names will be selected in the manner set forth above, which names shall be submitted to each party, who shall have the right to strike one name before returning the list to the Secretary of the Synod within one week.

1.10.16.2   In the event that a reconciler, panel member, or hearing facilitator is disqualified, another individual shall be chosen by blind draw.

(a)   Three names shall be selected by blind draw from the Synod's roster of reconcilers or hearing facilitators as appropriate.

(b)   The list shall be mailed simultaneously to each party, which shall be entitled to strike one of the names. The list shall be returned to the Secretary of the Synod within one week after receipt.

(c)   The Secretary of the Synod shall correct any problem with the list. No member of the panel shall be from the district in which the dispute arose or any district of any party to the dispute. No two panel members shall be from the same district. If more names remain than are needed, the final selection shall be made by blind draw.

(d)   In the event that additional names are needed, three names shall again be selected in the manner set forth above, which names shall be submitted to each party with the right to strike one name before returning the list to the Secretary of the Synod within one week.

1.10.16.3   An individual who has served as a reconciler in a matter shall not be a member of the Dispute Resolution Panel in the same matter.

### *Decisions*

1.10.17   The Dispute Resolution Panel, Appeal Panel, or Review Panel shall issue a decision based on a majority vote of the panel.

(a)   A majority of the panel members shall be involved in all stages of the decision-making process.

(b)   The hearing facilitator shall serve as an advisor to the panel on the form but not the substance of the decision.

Exhibit 2 to Defendants' Motion to Dismiss
Page 31 of 182

(c)  In the event that a majority decision cannot be reached, a new panel shall be formed immediately in accordance with the Bylaws and the matter reheard.

### Rules of Procedure

1.10.18      Reconcilers, Dispute Resolution Panels, Appeal Panels, and Review Panels shall be governed in all their actions by Holy Scripture, the Lutheran Confessions, and the Constitution and Bylaws of the Synod.

1.10.18.1    The following rules of procedure shall be followed:

(a)  In the interest of promoting the reconciliation process, any member of the Synod, officer of a congregation, or officer of the Synod or an agency of the Synod shall, when called upon by a Dispute Resolution Panel, Appeal Panel, or Review Panel to do so, testify or produce records related to the dispute.

(b)  Each party and/or parties to a dispute shall assume its/their own expenses. The expenses of reconcilers, Dispute Resolution Panels, and Review Panels shall be borne by the Synod, except for those that arise under Bylaw 1.10.10.2, which shall be borne by the district.

(c)  No party and/or parties to a dispute or anyone on the party's behalf shall either directly or indirectly communicate with the reconciler, the hearing facilitator, or any member of the Dispute Resolution Panel, Appeal Panel, or Review Panel without the full knowledge of the other party to the dispute.

(d)  While the matter is still undecided or while an appeal is contemplated or pending, publicity shall not be given to the issues in the matter by any of the persons involved during any part of the procedures outlined in this bylaw. However, at his discretion and as needs dictate in order to "promote and maintain unity of doctrine and practice" (Constitution Art. XI B 3) and in order to provide counsel, care, and protection to all the members of the Synod (Constitution Art. III 8, 9), the President of the Synod or the district president in consultation with the President of the Synod, as the case may be, may properly advise or inform the involved congregation(s) and/or the district or Synod as to the status of the process.

(e)  Any party and/or parties to a dispute may seek, at its/their own personal expense, the assistance of individuals familiar with the issues involved in the dispute. They may actively participate in research and the preparation of necessary documents. At the hearing, however, each party may have an advisor present but must represent itself, with no public participation by the advisor. Any reconciler or hearing facilitator shall not serve as an advisor. If a party and/or parties to a dispute is a board or commission of the Synod or its districts, it shall be represented by its chairman or designated member.

(f)  A Dispute Resolution Panel or Review Panel shall determine the number of witnesses necessary for a full and complete understanding of the facts involved in the dispute. It shall question parties to the dispute and witnesses directly and shall also permit the parties to do so.

(g)  All Dispute Resolution Panel, Appeal Panel, or Review Panel records of disputes in which a final decision has been rendered by the Dispute

Exhibit 2 to Defendants' Motion to Dismiss
Page 32 of 182

Resolution Panel, Appeal Panel, or Review Panel shall be placed in the custody of Concordia Historical Institute. All such records shall be sealed and shall be opened only for good cause shown and only after permission has been granted by a Dispute Resolution Panel, selected by blind draw for that purpose.

(h)  If any part of the dispute involves a specific question of doctrine or doctrinal application, each party shall have the right to an opinion from the Commission on Theology and Church Relations. If it involves questions of constitution or bylaw interpretation, each party shall have the right to an interpretation from the Commission on Constitutional Matters. The request for an opinion must be made through the Dispute Resolution Panel or Review Panel, which shall determine the wording of the question(s).

(1)  The request for an opinion must be made within four weeks of the final formation of the Dispute Resolution Panel or Review Panel. If a party does not request such an opinion within the designated time, such a request may still be made to the Dispute Resolution Panel or Review Panel that shall, at its discretion, determine whether the request shall be forwarded. The Dispute Resolution Panel or Review Panel shall also have the right, at any time, to request an opinion from the Commission on Theology and Church Relations or the Commission on Constitutional Matters.

(2)  Any opinion so requested shall be rendered within 30 days or such greater time as the Dispute Resolution Panel may allow. The Commission on Constitutional Matters and the Commission on Theology and Church Relations shall have in place a procedure for responding within this 30-day time frame to such requests for opinions. When an opinion has been requested, the time limitations governing the dispute resolution process will not apply until the opinion has been received by the parties to the dispute. Any opinion received must be followed by the Dispute Resolution Panel or Review Panel.

(3)  An individual member of the panel may, through the hearing facilitator, also request resource materials and personal assistance from the executive director of the CTCR or from a theologian recommended by the executive director, this to provide an opportunity to read about, discuss with a knowledgeable person, and better comprehend doctrinal matters associated with the dispute. The dispute resolution case itself shall not be discussed.

(i) Any member participating in this bylaw procedure who intentionally and materially violates any of the requirements in this bylaw or is persistent in false accusations is subject to the disciplinary measures as set forth in the appropriate Bylaw sections 2.14–2.17. Any member of the Synod who has personal factual knowledge of the violation shall inform the appropriate district president as the ecclesiastical supervisor. Violations of the prohibition against publicity while a matter is still undecided or while an appeal is contemplated or pending (Bylaw 1.10.18.1 [d] above) by any persons involved are specifically included as a violation subject to the same disciplinary measures set forth in the Bylaws.

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 38 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 33 of 182

(j)  In consultation with the Secretary of the Synod and the Council of Presidents, the Commission on Constitutional Matters shall amend as necessary the *Standard Operating Procedures Manual* that serves as a comprehensive procedures manual for Bylaw section 1.10, Dispute Resolution of the Synod.

# 2. MEMBERSHIP

## 2.1  Overview

2.1.1    Included in the objectives of the Synod as stated in its Constitution are, under Scripture and the Lutheran Confessions, to "provide evangelical supervision, counsel, and care for pastors, teachers, and other professional church workers in the performance of their official duties" and to "provide protection for congregations, pastors, teachers, and other church workers in the performance of their official duties and the maintenance of their rights" (Constitution Art. III 8, 9). In view of this, it is clear that membership in The Lutheran Church—Missouri Synod, whether individual or congregational, is viewed as a valuable asset to be carefully monitored and managed. In order for this to occur, it is necessary for standards to be developed and maintained for the benefit of all members so that its value is not diminished or destroyed. Consequently, it is important for the Synod to establish the standards and qualifications it believes necessary for acquiring and maintaining the status of membership as well as procedures for protecting those who attain it.

2.1.2    In achieving these goals the Synod has identified certain standards which must be met before membership, whether individual or congregational, is granted and has identified those responsible for determining that such standards have been met before approving their inclusion on the official membership rosters of the Synod. Furthermore, it has identified those responsible for ecclesiastical supervision of its members, including such matters as advice and counsel as well as suspension of membership and forfeiture of it for failure to continue to meet membership requirements. In protecting the rights of members, provision has also been made for challenging those decisions by ecclesiastical supervisors that result in suspension or loss of membership and for restoration of membership when necessary conditions are met.

## 2.2  Eligibility of Congregations

2.2.1    To apply for membership in the Synod a congregation shall have an approved constitution and bylaws.

(a)  The congregation shall submit its constitution and bylaws to the appropriate district president, who shall refer such to the standing constitution committee of the district.

(1)  Every congregation is encouraged to include in its organizational structure an elected or appointed board or committee for stewardship.

Exhibit 2 to Defendants' Motion to Dismiss
Page 34 of 182

(2)  This board or committee shall be responsible for carrying on an adequate stewardship program in the manner prescribed by the congregation.

(b)  The Constitution Committee shall examine the constitution and bylaws to ascertain that they are in harmony with Holy Scripture, the Confessions, and the teachings and practices of the Synod, in order that any necessary changes may be made by the congregation before the application is acted upon.

(c)  The application for membership shall not be acted upon by the district board of directors until the congregation has made such changes as may be deemed necessary.

## 2.3  Application by Congregations

2.3.1    Each application for membership in the Synod shall be submitted to the appropriate district president and acted upon by the board of directors of that district.

(a)  It shall be the policy of the Synod to decline membership to congregations whose constitutions deny membership or other congregational privileges to any Christian because of race or ethnic origin.

(b)  If an application for membership is approved, the president and secretary of the newly admitted congregation shall, as representatives of the congregation, sign the Constitution of the Synod on behalf of the congregation.

(1)  In recognition of the importance of the event, the appropriate district president shall normally attend a special worship service in which the signing takes place.

(2)  Such service shall occur as promptly as possible following approval of the congregation's application for membership.

(c)  If an application for membership is denied by the board of directors and the congregation requests reconsideration, the district president shall submit the application and a full report concerning its denial to the next regularly scheduled convention of the district, which shall determine whether to grant the application or to affirm the denial.

2.3.2    A copy of the signed constitution shall be forwarded to the secretary of the district. Acceptance by the district board of directors shall be reported to the next regularly scheduled convention of the district. The signatures to the constitution on behalf of the congregation shall be preserved by the district secretary and the year in which the congregation is received into membership shall be noted.

## 2.4  Continued Eligibility of Congregations

2.4.1    A congregation desiring to retain membership in The Lutheran Church—Missouri Synod shall continue to have a constitution and bylaws approved by the Synod.

(a)  A member congregation which desires to revise its constitution and/or bylaws shall, as a condition of continued eligibility as a member

Exhibit 2 to Defendants' Motion to Dismiss
Page 35 of 182

of the Synod, submit a proposed revised constitution and/or revised bylaws to the district president.

(b) The district president shall refer such to the district constitution committee for review to ascertain that the provisions are in harmony with the Holy Scriptures, the Confessions, and the teachings and practices of the Synod.

(c) Upon advice of the constitution committee and recommendation by the district president, the district board of directors shall determine if the changes are acceptable to the Synod.

(d) Upon favorable action by the district board of directors, the congregation shall be notified that the changes are acceptable to the Synod, and the congregation may proceed with formal adoption of the revised constitution and/or bylaws and remain a member in good standing of the Synod.

(e) Upon formal adoption of the proposed revised constitution and/or bylaws, the congregation shall provide to the district a dated copy of the action taken, accompanied by a copy of the dated revised constitution and bylaws.

(f) Until a congregation formally adopts a revised constitution and/or bylaws using this process, the Synod shall consider the existing constitution and bylaws to be in effect for all purposes.

2.4.2    A copy of the signed constitution shall be forwarded to the secretary of the district. Acceptance by the district board of directors shall be reported to the next regularly scheduled convention of the district.

## 2.5  Calling Ministers of Religion

2.5.1    Congregations, association schools, agencies, auxiliaries, and recognized service organizations of the Synod shall seek the counsel of the appropriate district president when calling ordained or commissioned ministers.

(a) A congregation or association school shall seek the counsel of its own district president.

(b) An agency, auxiliary, or recognized service organization shall seek the counsel of the district president who would, by virtue of the call, assume supervision of the minister (Bylaw section 2.12). If the call is such that the district president to assume supervision is not known, the counsel of the president of the district within which the entity is located or with which it is associated shall be sought.

(c) If such a call involves multiple districts (such as by entity location or connection and/or position locale), the presidents of all such districts shall be consulted and mutually agree on which one of them will counsel the entity regarding the call and assume supervision of the worker called.

2.5.2    Congregations that are members of the Synod, as well as association schools, agencies, auxiliaries, and recognized service organizations shall call and be served only by (1) ordained ministers who have been admitted to their respective ministries in accordance with the rules and regulations set forth in these Bylaws and have thereby become members of the Synod; (2) candidates for the pastoral ministry who have satisfied the

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 41 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 36 of 182

qualifications and requirements for assignment of first calls by the Council of Presidents acting as the Board of Assignments; or (3) ordained ministers who are members in good standing of church bodies that have been formally recognized to be in altar and pulpit fellowship with the Synod when agreements for such calls are in place.

2.5.3    Congregations that are members of the Synod, association schools, agencies, auxiliaries, and recognized service organizations shall call only (1) commissioned ministers who have been admitted to their ministries in accordance with the rules and regulations set forth in these Bylaws and have thereby become members of the Synod; (2) candidates of LCMS colleges and universities who have satisfied the qualifications and requirements for assignment of first calls by the Council of Presidents acting as the Board of Assignments; or (3) commissioned ministers (or those holding positions comparable to commissioned ministers) who are members in good standing of church bodies that have been formally recognized to be in altar and pulpit fellowship with the Synod when agreements for such calls are in place.

2.5.4    Congregations that violate these requirements and persist in such violation shall, after due admonition, forfeit their membership in the Synod.

### Calls and multi-congregation parishes

2.5.5    The total number of congregations regularly cared for (served) by a pastor or pastors constitutes a *parish*\* as it applies to bylaws dealing with representation at circuit forums (Bylaws 3.1.2.1 [c]; 5.3.2) and district conventions (Bylaw 4.2.2; Const. Art. XII 10 A†), and in voting for the Synod President (Bylaw 3.12.2.3). However, the called service of a pastor in a designated *assisting capacity* (Bylaw 2.5.6) does not render the congregation(s) that he assists part of a parish with any other congregation(s) he serves, whether in an assisting or non-assisting capacity.

2.5.6    The call of an ordained minister to a congregation may be designated as in an *assisting capacity* if the call entails service under the supervision of another called pastor of that congregation. A pastor serving in an assisting capacity is *a* (supervised) pastor of the congregation but not "*its* [supervising] pastor" (Const. Art. XII 10 A).‡ An assisting capacity call does not, therefore, confer that congregation's pastoral vote or eligibility to serve as circuit pastoral delegate, or cause the congregation assisted to constitute a parish with other congregation(s) served by the assisting pastor. Those rendering assisting service on a regular basis shall be called, installed, and rostered as such. A pastor serving a congregation in an assisting capacity is, with regard to that congregation, an *assisting pastor*.

---

\* Should the constitutional amendment of Res. 9-05 not be adopted, insert here the words "as used in Const. Art. V A and".

† Should the constitutional amendment of Res. 9-05 not be adopted, "Const. Art. V A".

‡ Should the constitutional amendment of Res. 9-05 not be adopted, this sentence will read: "A pastor serving in an assisting capacity is not in charge of that congregation (Const. Art. V B 2, XII 10 B b) and is *a* pastor but not "*the* pastor" of that congregation (Const. Art. V A, XII 10 A)."

Case 1:23-cv-01042-RP  Document 9-1  Filed 01/23/24  Page 42 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 37 of 182

## 2.6  Individual Membership

2.6.1     "Ministers of the Gospel," designated by the Synod as "ministers of religion—ordained" (ordained ministers) or "ministers of religion—commissioned" (commissioned ministers), are eligible for membership in the Synod.

2.6.1.1*  The roster of commissioned ministers shall admit eligible teachers, directors of Christian education, directors of Christian outreach, directors of family life ministry, directors of parish music, deaconesses, parish assistants, and directors of church ministries.

2.6.2     Individuals who have been declared qualified for a first call and assigned first calls in accordance with Bylaw sections 2.7–2.9 shall, by the rites of both ordination or commissioning and installation in accordance with Bylaw section 2.10, become members of the Synod.

2.6.3     There is no inherent right to membership in the Synod, and the decision as to qualification for a first call and the assignment of first calls shall be at the sole discretion of the Synod.

2.6.4     Transfers of an individual member to or from the roster of a partner church shall be conducted according to the operating agreement established between the Synod and that partner church, and as further implemented in policies of the Council of Presidents. A former member of the Synod who, having transferred to a partner church, applies for re-rostering with the Synod shall, provided the member remained continuously in good standing on the roster of a partner church, and insofar as agreements and policies allow, be handled by transfer and shall not require reinstatement (Bylaw section 2.18).

## 2.7  Eligibility for Individual Membership

2.7.1     A graduate of an authorized educational institution of the Synod must be declared qualified for a first call and recommended by the faculty of the respective educational institution before the effective date of the first call to service in the church, as assigned by the Council of Presidents acting as the Board of Assignments as provided in Bylaw section 2.9.

2.7.2     Candidates who have satisfactorily completed an approved colloquy program of the Synod for the ordained or commissioned ministry must be declared qualified for a first call and be recommended by the appropriate colloquy committee (see Bylaws 3.10.2ff. and 3.10.3ff.) before the effective date of the first call to service in the church as assigned by the Board of Assignments as provided in Bylaw section 2.9.

2.7.3     Candidates who have satisfactorily completed an approved educational program of the Synod for the ordained or commissioned ministry involving extensive use of distance learning and/or a mentoring system must be declared qualified for a first call and recommended by the faculty of one of the seminaries, colleges, or universities of the Synod before the effective date of the first call to service in the church, as assigned by the Board of Assignments as provided in Bylaw section 2.9.

---

* The addition of Bylaw 2.6.1.1 as printed is contingent upon congregational ratification of the constitutional amendment initiated in Res. 9-05 (see *Handbook* preface).

Case 1:23-cv-01042-RP  Document 9-1  Filed 01/23/24  Page 43 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 38 of 182

2.7.4  Graduates of one of the colleges, universities, or seminaries of the Synod who desire to continue their professional studies after they have completed the prescribed undergraduate curriculum, or who for any other valid reason are not ready for first calls to service in the church, shall continue to be eligible for unqualified recommendation for first calls as long as they can be recommended by the faculty of the educational institution of the Synod from which they have graduated. The respective faculty shall annually ascertain through personal interviews with the candidate or through satisfactory testimonials that each candidate so classified is still qualified for recommendation for a first call to serve in the church.

2.7.5  A pastor emeritus from another church body, after having completed an approved colloquy program of the Synod, may be placed on the roster of the Synod without call by action of the Council of Presidents on the basis of policies adopted by the Council of Presidents.

(a)  Such placement shall be acknowledged by a rite of recognition in a worship service preferably of the congregation of the Synod where he holds membership.

(b)  Such rite is to be authorized by the district president.

## 2.8  Qualification for First Call

2.8.1  Candidates shall be declared qualified for first calls.

(a)  They are those who before the effective date of the first calls will have satisfactorily completed the prescribed courses of studies and will have received diplomas from their respective educational institutions of the Synod or have fulfilled the requisites of a colloquy or other approved education program of the Synod (Bylaws 2.7.2 and 2.7.3).

(b)  In addition, they must have indicated complete dedication to the ministry and evidenced a readiness for service in the church.

(c)  Finally, to be declared qualified and recommended by the faculties or colloquy committees for their specific types of service in the church, the appropriate faculty or colloquy committee must be satisfied that the individual will meet all personal, professional, and the theological requirements of those who hold the office of ministry to which the individual aspires.

(d)  In addition, an academic year of supervised internship (vicarage) is required of all seminary students before graduation, ordinarily in the second year before graduation.

2.8.2  It shall be the responsibility of colloquy committees or the faculties of educational institutions of the Synod to declare colloquy candidates qualified for first calls. For purposes of declaring candidates qualified for placement and recommending them for membership in the Synod, the Synod considers the "faculty" of an educational institution to be defined as follows:

(a)  Seminaries: all full-time faculty members who are in good standing on the Synod's roster of ordained ministers.

(b)  Colleges and universities: all full-time faculty members who are in good standing as individual members of the Synod or are members in

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 44 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 39 of 182

good standing of a member congregation of The Lutheran Church—Missouri Synod.

## 2.9  Assignment of First Calls

2.9.1    The Council of Presidents, acting as the Board of Assignments, shall regularly assign to qualified graduates of educational institutions of the Synod and workers available from colloquy programs as "first calls" those calls that have been duly extended to fill active member positions as identified in Bylaw 2.11.1 for ordained and commissioned ministers if positions for which candidates are qualified are available.

> (a)  The placement officers of the respective institutions shall be consulted before assignments are made.
>
> (b)  The president of the district in which a candidate is to be placed shall be consulted, and his concurrence shall be an essential part of the final recommendation to the Board of Assignments.

## 2.10  Ordination, Commissioning, and Initial Installation

2.10.1    Candidates for the office of ordained minister and candidates for the office of commissioned minister shall be ordained or commissioned and initially installed according to this bylaw.

### Prerequisites

2.10.2    Candidates for the offices of ordained or commissioned minister shall have

> (a)  been declared to be qualified as provided in Bylaw sections 2.7 and 2.8;
>
> (b)  received and accepted a call through an assignment by the Board of Assignments pursuant to Bylaw section 2.9;
>
> (c)  submitted a request for ordination or commissioning to the respective district president, who shall grant the request and schedule the ordination or commissioning when he is satisfied that all requirements for such have been fulfilled; and
>
> (d)  evidenced an intent to accept membership in the Synod promptly after the assignment of first calls and prior to ordination or commissioning by signing and filing with the president of the district in which membership will be initially held a statement to be supplied by the district president which acknowledges subscription to the Constitution of the Synod and which, upon installation and following ordination or commissioning, shall be deemed equivalent to the member having signed the Synod's Constitution.

### Rites of Ordination or Commissioning

2.10.3    The president of the district that will have supervision of the worker (see Bylaw section 2.12) shall be responsible for the rites of ordination and commissioning of candidates for the ministry called to that congregation, agency, or other calling body.

> (a)  The rite of ordination or commissioning should normally take place in the presence of the congregation, agency, or other calling body by which the candidate has been called.

Exhibit 2 to Defendants' Motion to Dismiss
Page 40 of 182

(b) In the case of missionaries called by the Synod, members of a faculty of an institution of the Synod, or non-foreign specialized ministers called by the Synod, the rite shall take place in a setting approved by the district president of the calling entity.

(c) If an unusual circumstance warrants it, as in the case of missionaries and non-foreign specialized ministers, the district president may authorize that the rite take place in the home congregation of the candidate, or another appropriate congregation, with the permission of the calling congregation or other agency or calling body.

(d) A service of celebration on the part of the candidate's home congregation is encouraged.

(e) The district president shall issue a diploma of ordination or commissioning.

### Forms and Practices

2.10.4    The rites of ordination and commissioning and the rites of installation should be in accordance with forms and practices developed by the Synod for that purpose, and in all events the minister shall be solemnly pledged to the Scriptures as the inspired and inerrant Word of God and the Symbolical Books of the Lutheran Church as a true exposition of the Scriptures.

## 2.11  Continued Eligibility of Individual Members

### Active Members

2.11.1    To remain on the roster of the Synod as an active member, an ordained or commissioned minister of religion must be a communicant member of a congregation which is a member of the Synod (except as provided in paragraph [c] below) and be regularly performing the duties of one of the following:

(a) An ordained or commissioned minister serving a congregation of the Synod.

(b) An ordained or commissioned minister serving an educational institution (an "association school") solely governed by congregations of the Synod and recognized by a district of the Synod.

(c) An ordained or commissioned minister serving a congregation that is not a member of the Synod, as approved (on the basis of policies adopted by the Council of Presidents) by the president of the district in which the congregation is located.

(d) An officer, executive, or professional staff member of the Synod, district, or other agency of the Synod.

(e) An executive or professional staff member serving a national inter-Lutheran entity referred to in Bylaw 1.3.8.

(f) A missionary serving under a call by the Synod, including a call by a district.

(g) A person serving on the faculty or professional staff of an educational institution of the Synod.

(h) A military or institutional chaplain endorsed by the Synod.

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 46 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 41 of 182

(i)  A person serving in a specialized ministry endorsed by the Synod or by one of its districts.

(j)  An executive or professional staff member called or appointed by an auxiliary (Bylaw section 6.1) or recognized service organization (Bylaw section 6.2).

### Inactive Members

2.11.2*    Inactive members may be retained as members of the Synod.

(a)  As such, they have all the rights, privileges, and responsibilities of individual membership in the Synod as defined in the Constitution and Bylaws of the Synod.

(b)  To remain on the roster of the Synod as an inactive member, an ordained or commissioned minister of religion must be a communicant member in good standing of a congregation which is a member of the Synod and must qualify and make application for one of the following categories.

(c)  A member whose active service terminates while awaiting installation to another accepted call to active service shall be retained on the roster as if holding candidate status.

(d)  A member whose active service terminates without prior acceptance of another call to active service has 30 days, if ordained, and 120 days, if commissioned, to apply for inactive status (candidate or emeritus, as appropriate). Should inactive status not be applied for within said period, membership in the Synod is forfeited.

(e)  The district president shall act on all applications within 90 days.

(f)  A member may seek to reverse a denial of emeritus or candidate status, whether initial or continuing, by application for reinstatement to the roster of the Synod (Bylaw 2.18.1).

### Emeritus

2.11.2.1  An "emeritus" member is one whose membership is held for retention on the roster upon retirement after reaching the age of 55 or for reasons of total and permanent disability. Any unusual case shall be decided by the Council of Presidents if the appropriate district president so requests.

(a)  The emeritus member or a representative identified by his district president shall, by January 31, make an annual report to the member's district president.

(b)  This report shall include current contact information and address the criteria for remaining an inactive member of the Synod.

### Candidate

2.11.2.2  A "candidate" member is one who is eligible to perform the duties of any of the offices of ministry specified in Bylaw section 2.11 but who is not currently an active member or an emeritus member.

(a)  A candidate may be continued on the roster for a period not to exceed ten years by act of the president of the district through which

---

* Amendment of Bylaw 2.11.2 to the printed form is contingent upon congregational ratification of the constitutional amendment initiated in Res. 9-05 (see *Handbook* preface). Apart from such ratification, Bylaw 2.11.2 will continue to read: "Inactive members **are advisory members** of the Synod. (a)  As such, they have all the rights, privileges, and responsibilities of **advisory** membership ... (b) ..."

61

Exhibit 2 to Defendants' Motion to Dismiss
Page 42 of 182

the person holds membership. A candidate may be further continued on the roster for a period not to exceed five additional years upon recommendation of the applicant's district president and approval of three fourths (75%) of the Council of Presidents.

(b)  The candidate shall, by January 31, make an annual report to the district president who shall determine the member's eligibility to remain on candidate status. The candidate's report shall include current contact information and address the criteria for remaining on candidate status.

(c)  The district president shall determine whether or not to grant or, upon annual review, continue candidate status based on the following criteria:

(1)  The member's health;

(2)  The member's efforts to address any unresolved issues involving fitness for ministry;

(3)  The member's current involvement in ministry; and

(4)  The member's written statement addressing any impediments to consideration and acceptance of a call to any of the offices of ministry specified in Bylaw section 2.11; and

(5)  The member's cooperation in keeping personnel documents up to date.

## 2.12  District Membership and Ecclesiastical Supervision

2.12.1    Except for those members under the ecclesiastical supervision of the President of the Synod (Const. Art. XI B 1 and Bylaw section 2.15), a member shall be under the ecclesiastical supervision of the president of the district through which membership in the Synod is held.

2.12.1.1   A member may serve multiple concurrent assignments that would, if held individually, be under the supervision of different districts. Prior to any such installation, the involved district presidents shall, by mutual agreement, assign such a member to one of the involved districts.

2.12.1.2   An individual member of the Synod who is serving a member congregation shall hold membership in the Synod through the district of which the congregation is a member, whether the congregation is domestic or foreign.

2.12.1.3   An individual member of the Synod who is serving a district shall hold membership in the Synod through that district.

2.12.1.4   An individual member serving in a foreign location or as an active-duty military chaplain shall hold membership in the Synod through the district in which membership was held prior to installation as such, or in the case of an initial call to foreign service, the Missouri District.

2.12.1.5   An individual member of the Synod serving in any other position shall hold membership through the geographical district in which the place of service is located, unless serving an agency or mission of a non-geographical district, in which case membership shall be held through that district.

2.12.1.6   A member having candidate or emeritus status shall continue to hold membership in the Synod through the district through which membership

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 48 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 43 of 182

was held at the inception of that status unless the president of the district through which membership is held approves a transfer:

> (a) requested by the member and approved by the president of the district to which membership would be transferred; or

> (b) requested by the president of a district within which the member has come to reside or is involved in his or her ministry.

2.12.1.7   A member having suspended status shall continue to hold membership through the district through which membership was held at the time of the suspension.

2.12.1.8   Service performed within the boundaries of any geographical district is *domestic*. Service performed outside the boundaries of every geographical district is *foreign*.

2.12.1.9   Amendments to Bylaw section 2.12 are to be applied to members at the time of their next installation (whether full- or part-time) or request for transfer.

## 2.13  Membership Status and Limitations

### Specific Ministry Pastor Status and Limitations

2.13.1   A "specific ministry pastor" is a minister of religion—ordained who has completed the requirements for service as a specific ministry pastor and has been examined by one of the Synod's seminaries, has received a regular call, and has been placed by the Council of Presidents into a specific Word and Sacrament ministry context. He is eligible to serve only in that specific ministry context for which he has been trained and may not be offered or accept a call for ministry for which he has not been certified as determined by his district president. He shall serve under the supervision of his district president and another pastor who is not a specific ministry pastor.

> (a) Because he is under supervision of another pastor and because a specific ministry pastor's theological education has been formed in part by and for a specific ministry context, he may not be placed or called into ecclesiastical roles that exercise pastoral oversight outside the context of his call.

> (b) A specific ministry pastor is not eligible to

> > (1) serve as a voting delegate to a national convention of the Synod—but may serve as an advisory delegate to national conventions and as a pastoral delegate to district conventions;

> > (2) hold any elected or appointed office on the district or national Synod level that is assigned by the Bylaws of the Synod to "a pastor" or "an ordained minister" (although specific ministry pastors may serve in all other capacities, especially representing the ministerial contexts in which they serve);

> > (3) supervise vicars; or

> > (4) serve as a circuit visitor.

> (c) The ministers of religion—ordained records maintained by district presidents as well as the official membership roster of the Synod shall distinguish between specific ministry pastors and other pastors.

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 49 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 44 of 182

*Restricted Status and Limitations*

2.13.2        An individual member of the Synod may be placed on restricted status by the district president who has ecclesiastical supervision of the member.

2.13.2.1      The district president may take this action if information with respect to such member provides a substantial basis to conclude that such member

(a)  has engaged in conduct which could lead to expulsion from the Synod under Article XIII of the Constitution;

(b)  is incapable of performing the duties of the office or position because of physical, mental, or emotional disability; or

(c)  neglects or refuses to perform the duties of the office or position.

2.13.2.2      An individual member of the Synod on restricted status is ineligible to

(a)  perform functions of ministry except in the position of service, if any, held at the inception of restricted status and otherwise only if approved by the district president; and

(b)  accept a call to any other position of service in the Synod.

2.13.2.3      An individual member of the Synod shall be notified in writing as to the specific reasons for having been placed on restricted status.

(a)  Such restricted status shall continue for a period of one year or a lesser period if the matter is satisfactorily resolved.

(b)  In order to extend the restricted status beyond one year, the district president shall annually thereafter notify the member in writing as to the reasons for such continuance of restricted status.

2.13.2.4      While a member is on restricted status, the district president shall minister to that member either directly or through others, concern himself with the spiritual well-being of that member, and continue efforts to resolve those matters which led to the imposition of restricted status.

(a)  The records maintained by the respective district president shall reflect the restricted status.

(b)  The district president shall notify in writing the President of the Synod and all other district presidents of such restricted status.

*Removal of Restricted Status and Limitations*

2.13.3        An individual member of the Synod who is placed on restricted status shall have the right to appeal the placement on or continuance of restricted status by filing a petition for removal of restricted status.

2.13.3.1      A party on restricted status may petition for removal therefrom no more than once in a twelve-month period.

2.13.3.2      Such petition for removal of restricted status shall be addressed solely to the Council of Presidents through the office of the President of the Synod. The Council of Presidents shall rule on such petition within six months from the date of receipt.

(a)  A hearing on the petition for removal of restricted status shall be conducted by a hearing panel consisting of three district presidents selected as follows:

(1)  One district president selected by the petitioner.

(2)  One district president selected by the district president who imposed restricted status (hereinafter referred to as the involved

64

district president). The involved district president may not choose himself.

(3) A third district president selected by the other two hearing panel members. If the two hearing panel members cannot agree on the third hearing panel member, then such third member shall be chosen by blind draw from among the remaining district presidents.

(b) Upon receipt of a petition for removal of restricted status, the chairman of the Council of Presidents shall promptly notify the petitioner and the involved district president of their respective right to choose one hearing panel member and direct that the identity of their selection be transmitted to the chairman of the Council of Presidents within one month from the date of such notice. If either party declines to make a selection within such one-month period, such selection shall then be made by the chairman of the Council of Presidents.

(c) When two hearing panel members have so been chosen, the chairman of the Council of Presidents shall promptly notify them of their selection to the hearing panel and direct that they select the third member of the hearing panel and notify the chairman of the Council of their selection.

(d) After the hearing panel is constituted, it shall select one of its members as chairman, who shall then, after conferring with the petitioner and the involved district president, select a date and location where the hearing panel will consider the petition.

(e) The hearing before the panel shall be private, attended only by the parties and the witnesses who can substantiate the facts relevant to the matter in dispute. The panel shall establish the procedure to be followed in the hearing and the relevancy of evidence so that each party shall be given an opportunity fully to present its respective position.

(f) Upon completion of the hearing, the hearing panel shall deliberate and then issue its written decision within 60 days, a copy of which shall be mailed to the petitioner, the involved district president, and the chairman of the Council of Presidents.

(g) The decision of the hearing panel shall be the decision of the Council of Presidents and shall be final with no right of appeal.

### Suspended Status and Limitations

2.13.4      When formal proceedings have been commenced against a member of the Synod (individual or congregation) under the procedures set forth in Bylaw sections 2.14–2.17 which may lead to expulsion from the Synod under Article XIII of the Constitution, the member shall have suspended status. If such member was on restricted status at the commencement of formal proceedings, the restricted status shall become suspended status.

2.13.4.1   Suspended status shall continue until the formal proceedings are completed favorably to the member or until membership is duly terminated.

2.13.4.2   While on suspended status, the member shall continue to hold all rights under the Constitution and Bylaws except that the member shall

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 51 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 46 of 182

(a)  be relieved of duties as a member of the Synod (e.g., as a delegate to a district or Synod convention or as a member of any district or Synod board or commission);

(b)  be relieved of the duties and responsibilities which the member holds with the Synod, district, or other agency of the Synod; and

(c)  be ineligible to accept a call to any other position of service in the Synod.

2.13.4.3   The member on suspended status shall continue to be eligible to perform those duties and responsibilities of any other position which such member held at the time when placed on suspended status, including a position with a member congregation.

(a)  When a member is placed on suspended status, the district president who has ecclesiastical supervision of the member shall

(1)  reflect the suspended status in the records maintained by him;

(2)  notify in writing the President of the Synod and all other district presidents of the affected member's suspended status; and

(3)  advise the congregation or other calling body being served by the individual member of the suspended status to take appropriate action so that the rights of both the member and congregation or other calling body are preserved.

(b)  While a member is on suspended status, the district president shall minister to that member either directly or through others, concern himself with the spiritual well-being of such member, and continue efforts to resolve those matters which led to imposition of the suspended status.

(c)  If the member on suspended status is a district president, the duties assigned to the district president under paragraphs (a) and (b) hereof shall be performed by the next proper successor district officer.

## 2.14  Expulsion of Congregations or Individuals from Membership in the Synod

*Preamble*

2.14.1   Termination of membership in the Synod is a serious matter involving both the doctrine and life of those to whom it has been granted. Such action should only be taken as a final step when it is clear that those who are being terminated after previous futile admonition have acted contrary to the confession laid down in Constitution Art. II or the conditions of membership laid down in Constitution Art. VI or have persisted in offensive conduct (Constitution Art. XIII 1). For this reason the Synod establishes procedures for such action including the identification of those who are responsible for ecclesiastical supervision of its members. Such supervision includes not only suspension or termination of membership but also advice, counsel, encouragement, and, when necessary, admonition regarding teaching and/or practice. Furthermore, the procedures that may lead to termination of membership also provide for the protection of members by including provisions for challenging the decisions of ecclesiastical supervisors in these matters as well as provisions for restoration of membership that has been suspended or terminated.

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 52 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 47 of 182

(a)  Although the Constitution (see Art. VI 3 and Art. XII 7–8) deals with the "life" of ordained and commissioned ministers of the Synod and provides for dealing with "ungodly life" of ordained and commissioned ministers, this does not suggest that the Synod, including any district of the Synod, has the duty or even an opportunity to observe the activities in the life of an individual member of the Synod or has the means or authority to regulate, restrict, or control those activities. The only remedy available to the Synod in response to improper activities in the life of such a member of the Synod is, as is true with respect to violations of other conditions of membership or is otherwise appropriate under the Constitution or these Bylaws, and following the procedures set forth in these Bylaws, to take such action as may lead to termination of that membership and the attendant rights and privileges.

(b)  The action to commence expulsion of a congregation or individual from membership in the Synod is the responsibility of the district president who has the responsibility for ecclesiastical supervision of such member, under the supervision of the President of the Synod (Const. Art. XI B 1–3). This Bylaw section 2.14, among others, provides the procedures to carry out Article XIII of the Constitution, "Expulsion from the Synod." However, it does not provide the procedure for the expulsion of the district presidents and the officers of the Synod (Bylaw section 2.15), the President of the Synod (Bylaw section 2.16), or individual members in cases involving sexual misconduct or criminal behavior (Bylaw section 2.17).

### Definition of Terms

2.14.2      The definitions of terms used in this bylaw are as follows:

(a)  *Accused*: The member named by the accuser as being in violation of Constitution Art. XIII and under the procedural ecclesiastical supervision of Bylaw sections 2.14–2.17.

(b)  *Accuser*: The person or congregation who accuses a member under the provisions of Constitution Art. XIII through the process of Bylaw sections 2.14–2.17.

(c)  *Appeal Panel*: Three district presidents selected according to these bylaws to determine whether the decision of a Hearing Panel should be reconsidered or reviewed.

(d)  *Conflict of interest*: Representation of two opposing interests. Carrying out the responsibility of ecclesiastical supervision does not give rise to conflict of interest.

(e)  *Ecclesiastical supervision*: See Bylaw 1.2.1 (j).

(f)  *Face-to-face*: A face-to-face meeting in person between the accuser and the accused in the manner described in Matthew 18:15. E-mail, regular mail, fax, or telephone call (or any combination thereof) does not satisfy this requirement. (Note: Failure to conduct a face-to-face meeting within 30 days or within such extension as may be established by the involved ecclesiastical supervisors shall result in dismissal if the fault lies with the accuser or movement to the next stage if the fault lies with the accused.)

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 53 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 48 of 182

(g) **Facts**: Substantiated information of an alleged accusation.

(h) **Final Hearing Panel**: Two district presidents, two lay reconcilers, and one ordained reconciler, assisted by a hearing facilitator, who, when the decision of the Hearing Panel is appealed, shall be selected according to these bylaws to give a final hearing.

(i) **Formal proceedings**: The proceedings that begin with the suspension of a member.

(j) **Hearing facilitator**: One selected by blind draw by the Secretary of the Synod as described in Bylaw 1.10.13.2, trained to serve as a facilitator for hearings before panels.

(k) **Hearing Panel**: Two district presidents, two lay reconcilers, and one ordained reconciler, assisted by a hearing facilitator, selected according to these bylaws to hear the matter and render a final decision unless appealed.

(l) **Investigation committee**: Any number of persons appointed by the ecclesiastical supervisor to investigate thoroughly to determine the facts in the matter prior to the determination whether or not to proceed.

(m) **Own personal knowledge**: A personal witness to the alleged violation—not secondhand or hearsay information.

(n) **Panel decisions**: The Hearing Panel and Final Hearing Panel shall issue decisions by majority vote of the panel. All panel members must be involved in all stages of the decision-making process, with the hearing facilitator serving as an advisor to the panel on the form but not the substance of the decision.

(o) **Party to the matter**: A "party to the matter" is the accused and the suspending ecclesiastical supervisor.

(p) **Persons involved**: "Persons involved" includes the accuser or whoever brings the matter to the attention of the ecclesiastical supervisor; also any parties to whom the matter is presented and who are required to thoroughly investigate whether the allegations can be substantiated, i.e., any ecclesiastical supervisor involved in the case, the accused, the Hearing Panel, the Final Hearing Panel, a witness or advisor, or any others involved in the matter.

(q) **Publicity**: Any information or action, whether written, oral, or visual, that brings a person, cause, or an alleged accusation to public notice, including information that results in public notice, whether or not the person or persons delivering it gave approval to the bringing of the information to public notice.

(r) **Reconciliation committee**: A small committee appointed by the ecclesiastical supervisor (prior to the determination whether or not to proceed) to assist in reconciliation efforts if the matter warrants it.

(s) **Shall**: Retains its compulsory meaning in this bylaw section. Its use, however, in connection with time frame expectations may require exceptions at times upon good cause shown, to be allowed by the administrator of the process.

(t) **Standard Operating Procedures Manual**: A comprehensive procedures manual developed by the Commission on Constitutional

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 54 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 49 of 182

Matters in consultation with the Secretary of the Synod and with the concurrence of the Council of Presidents to ensure uniformity and consistency in the implementation of this bylaw section.

(u) *Statement of the matter*: A written concise statement containing factual assertions involved in an accusation with a request for expulsion from membership.

(v) *Time frame*: Period of time allowed for carrying out a bylaw requirement, to be monitored by the administrator of the process, incidents of purposeful non-compliance to be reported to the President of the Synod.

(w) *Witness*: A person called to give testimony regarding facts to a matter before a Hearing Panel or Final Hearing Panel. A member of any reconciliation committee appointed by a district president or the President of the Synod shall not testify as a witness before a Hearing Panel or a Final Hearing Panel in the same matter or case.

### Consultation

2.14.3    When a member congregation or individual member of the Synod is aware of information which could lead to the expulsion of a member from the Synod under Article XIII of the Constitution, prior to any formal written complaint or accusation the member shall consult with his or her respective district president to seek advice and also so that it can be determined whether this is the appropriate bylaw procedure (Bylaw section 2.14) or whether the matter falls under Bylaw sections 2.15, 2.16, 2.17, or 1.8; Bylaws 3.10.5.7.9, 3.10.6.7.1, or 3.10.6.7.5.2; or dispute resolution under Bylaw section 1.10. In regard to this consultation:

(a) The district president shall inform the district president of the accused that a consultation is underway. He may also seek advice from the vice-presidents of his own district, from the district president of the accused, or from the President of the Synod. The district president may also ask an opinion of the Commission on Constitutional Matters (CCM) and/or the Commission on Theology and Church Relations (CTCR). The district president must follow any opinion received from either the CCM or the CTCR, which shall be rendered within 30 days or such additional time as the district president may allow.

(b) The district president shall require the accuser to follow the correct bylaw provision under the circumstance, if any, and shall provide evangelical supervision, counsel, and care to the persons involved.

(c) If Bylaw section 2.14 applies, the district president shall ensure that the accuser has met face-to-face with the accused in the manner described in Matthew 18:15. Even if the alleged violation of Article XIII of the Constitution is considered to be "public," this provision of Matthew 18:15 shall be followed. The reputation of all parties is to be protected as commanded in the Eighth Commandment.

(d) In consultation with the district president of the accused, the district president of the accuser may appoint a small committee to assist in reconciliation efforts. The goal throughout is always one of admonition and reconciliation, of repentance and forgiveness (even if the following proceedings result in expulsion from membership).

69

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 55 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 50 of 182

(e)  The Synod's requirement of previous admonition called for in Article XIII of the Constitution commences at this stage if applicable.

(f)  Within 45 days after all the requirements of the consultation provided in this bylaw (Bylaw 2.14.3) have been followed the accuser may bring the matter to the district president of the accused for action under the correct bylaw provision determined by the accuser's district president (paragraph [b] above).

*Commencing an Action*

2.14.4    Under this bylaw (Bylaw section 2.14) the district president of the accused shall commence the following action when he becomes aware of information or allegations that could lead to expulsion of a member from the Synod under the provisions of Article XIII of the Constitution. The district president may become aware of such information by his own personal knowledge. Such information or allegations may also be conveyed to him in a formal written complaint or accusation made by a member of the Synod who has carried out the above provision (Bylaw 2.14.3). In commencing such action, the district president of the accused:

(a)  Shall determine whether the Bylaw 2.14.3 provisions have been carried out and shall thoroughly investigate the matter (cf. Bylaw 4.4.6) to determine whether the facts learned from his investigation form a basis for expulsion of the member under Article XIII of the Constitution. He may appoint a small investigation committee.

(b)  Shall proceed in the manner described in Matthew 18:15–16 as the required admonition in Article XIII of the Constitution, if applicable, continues to be carried out.

(c)  May, apart from the investigation, also appoint a small committee to assist in reconciliation efforts (see Bylaw 2.14.3 [d] above).

2.14.4.1   The district president shall make his determination whether or not to suspend the member within 120 days after receipt of a formal written complaint or accusation, unless the district president requests, substantiates, and is granted an extension by the President of the Synod.

2.14.4.2   Before informing others of a determination not to suspend, if the matter involves doctrine or practice and a formal written accusation, the district president may seek the counsel and concurrence of the President of the Synod by conveying to him the accuser's formal written accusation, the record of his investigation, and his preliminary determination. The President of the Synod shall respond within 60 days.

(a)  Should the President of the Synod concur, the district president may include the concurrence in his determination, indicating that it precludes an appeal for action by the accuser to the President of the Synod.

(b)  Should the President of the Synod not concur, he shall consult with the district president, who may revise his determination. He may request additional time to extend his investigation, which the President of the Synod may grant.

2.14.4.3   In the event the district president is disqualified because he has a conflict of interest or is unable to act, the next qualified district officer shall function in his place. The President of the Synod, who is his ecclesiastical supervisor,

Exhibit 2 to Defendants' Motion to Dismiss
Page 51 of 182

shall determine any challenge to the eligibility of the district president to act that is not agreed to by the district president.

2.14.5   If the district president determines not to initiate formal proceedings, he shall in writing so inform the accuser, any other district president involved, and the involved member, which shall terminate the matter, subject to the following:

(a)  If a matter of doctrine or practice is involved, the accuser may, within 15 days after receipt of such notice, appeal for action by the President of the Synod (Constitution Art. XI B 1–3). The accuser shall so notify the district president, who shall within 15 days:

(1) notify the accused and any other district president involved that an appeal for action is underway; and

(2) forward the appeal for action, with the record of his investigation and determination and the accuser's formal written accusation, to the President of the Synod.

(b)  The President of the Synod shall, within 15 days of receipt of such appeal for action, consult with the district president.

(c)  The President of the Synod may consult with the accuser, the accused, and others involved. He may appoint an investigative committee and / or ask an opinion of the CCM or CTCR, which opinion shall be followed. He shall consult with the vice-presidents of the Synod.

(d)  The President of the Synod may, in a matter of doctrine and practice, and within 120 days of receipt of notice, suspend the member as provided in Bylaw 2.14.6 and then, as the "suspending ecclesiastical supervisor," carry out the formal proceedings of Bylaw 2.14.7 and following.

(e)  If the determination is made not to initiate formal proceedings, the President of the Synod shall in writing so inform the accuser, any district president involved, and the involved member.

### Commencing Formal Proceedings

2.14.6   If the district president or the President of the Synod, acting under Bylaw 2.14.5, concludes that the facts form a basis for expulsion of the member under Article XIII of the Constitution, in commencing the formal proceedings he shall

(a)  provide to the member a written notification of the member's suspended status under Bylaw 2.13.4;

(b)  provide to the member a written statement of the matter which sets forth the facts and states that he is requesting expulsion of the member from the Synod in accord with Article XIII of the Constitution; and

(c)  provide to the member a written notification that the member has 15 days from the date of receipt of the statement of the matter to advise his district president that there is a desire to have the matter heard and resolved.

2.14.6.1   Failure by the member to file such written request for hearing and resolution within the 15-day period shall be deemed to be consent to expulsion from membership in the Synod.

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 57 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 52 of 182

### *Hearing Panel*

2.14.7    If the request for hearing as granted in Bylaw 2.14.6 (c) is made, the suspending ecclesiastical supervisor shall inform the Secretary of the Synod who shall initiate the formation of a Hearing Panel, such formation to be accomplished within 30 days of the request in accordance with the provisions in this bylaw.

2.14.7.1  At the time that the request for hearing is made, the suspending ecclesiastical supervisor shall forward to the Secretary of the Synod the statement of the matter and a written memorandum describing the manner in which there was compliance with the guidelines provided in Matthew 18:15–16, "previous futile admonition" (Constitution Art. XIII 1), as well as all of the provisions of Bylaws 2.14.3–2.14.6.1.

2.14.7.2  A Hearing Panel consisting of two district presidents (excluding the involved district president[s]), two lay reconcilers, and one ordained reconciler, selected as follows, shall conduct the hearing:

(a)  One district president shall be selected by the accused.

(b)  One district president shall be selected by the suspending ecclesiastical supervisor (a district president may not choose himself).

(c)  Two lay reconcilers and one ordained reconciler shall be chosen by blind draw from the Synod's roster of reconcilers, with the blind draw administered by the Secretary of the Synod and audited by witnesses.

(d)  Each Hearing Panel shall be assisted by a nonvoting hearing facilitator selected according to Bylaw 2.14.2 (j).

(e)  No two members of the panel nor the hearing facilitator shall be from the same district.

(f)  The hearing facilitator shall chair the proceedings and may draw upon persons and resources that he/she deems necessary for conducting a hearing in a fair and equitable manner.

(g)  The hearing facilitator shall serve as an advisor to the panel on the form but not the substance of the decision.

2.14.7.3  Upon receipt of a request for hearing, the Secretary of the Synod shall promptly notify the accused and the suspending ecclesiastical supervisor of their respective right to choose one Hearing Panel member and direct that the identity of their selection be transmitted to the Secretary of the Synod within 15 days from the date of such notice. If either party declines to make a selection within 15 days, the Secretary of the Synod shall then make such selection within five days.

2.14.7.4  The Secretary of the Synod shall also promptly select two lay reconcilers and one ordained reconciler to serve as the remaining three members of the Hearing Panel and a hearing facilitator to assist the panel.

2.14.7.5  When the Hearing Panel members and hearing facilitator have so been chosen, they shall promptly be notified of their selection.

2.14.7.6  Within 15 days after the Hearing Panel is constituted, the hearing facilitator shall, after conferring with the panel, the accused, and the suspending ecclesiastical supervisor, select a date and location within 45 days after the Hearing Panel was constituted for the panel to hear and consider the matter, unless there is unanimous consent by the panel members for a short delay beyond such 45 days for reasons the panel deems appropriate.

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 58 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 53 of 182

2.14.7.7     The Secretary of the Synod shall forward to the Hearing Panel the statement of the matter together with the written memorandum describing the manner in which there was compliance with the guidelines provided in Matthew 18:15–16, "previous futile admonition" (Constitution Art. XIII), as well as all of the provisions of Bylaws 2.14.3–2.14.6.1.

2.14.7.8     The following guidelines are applicable to the Hearing Panel and all involved persons:

(a)  Holy Scripture, the Lutheran Confessions, and the Constitution and Bylaws of the Synod shall govern the panel in all its actions.

(b)  The hearing before the panel shall be private, attended only by the parties to the matter and the witnesses who can substantiate the facts relevant to the matter. The only exception is stated under paragraph (h) below.

(c)  The panel shall establish the procedure to be followed in the hearing and the relevancy of the evidence so that each party to the matter shall be given an opportunity fully to present its respective position.

(d)  Any member of the Synod, officer of a congregation, or officer of any organization owned or controlled by the Synod shall, when called upon by the panel to do so, testify or produce records related to the matter.

(e)  No party to the matter, nor the accuser, nor anyone on the party's or accuser's behalf, shall communicate either directly or indirectly with the panel or any member of the panel without the full knowledge of the other party to the matter.

(f)  While the matter is still undecided or while an appeal is contemplated or pending, publicity shall not be given to the issues in the matter by any of the persons involved during any part of the procedures outlined in this bylaw. However, at his discretion and as the needs dictate in order to "promote and maintain unity of doctrine and practice" (Constitution Art. XI B 3) and in order to provide counsel, care, and protection for all the members of the Synod (Constitution Art. III 8, 9), the President of the Synod or the district president in consultation with the President of the Synod, as the case may be, may properly advise or inform the involved congregation(s) and/or the district or the Synod.

(g)  Any party and/or parties to a matter shall have the right to request disqualification of a panel member or hearing facilitator. The standard for disqualification shall be actual partiality or the appearance thereof. If that individual does not agree to the disqualification, the decision shall be made by a separate three-member panel of district presidents not involved in the case, selected as follows.

(1)  Nine names shall be selected by blind draw by the Secretary of the Synod or his representative, to be mailed to each party with the opportunity to strike up to three of the names from the list, to be returned to the Secretary of the Synod within one week after receipt.

(2)  No member of the panel shall be from the district in which the matter arose or any district of a party to the matter.

(3)  In the event that additional names are needed, three names shall again be selected in the manner set forth above, which names

Exhibit 2 to Defendants' Motion to Dismiss
Page 54 of 182

shall be submitted to each party with the right to strike one name before returning the list to the Secretary of the Synod within one week.

(4) In the event that a panel member or hearing facilitator is disqualified, another individual shall be selected in the same manner as the disqualified member was selected.

(5) The Secretary of the Synod shall correct any problem with the list, using the blind draw process as necessary.

(h) Any party to the matter may seek, at its own personal expense, the assistance of individuals familiar with the issues involved in the matter. They may actively participate in research and the preparation of necessary documents. At the hearing, however, each party to the matter may have an advisor present but must represent itself, with no public participation by the advisor.

(i) The panel shall determine the number of witnesses necessary for a full and complete understanding of the facts involved in the matter. It shall question persons involved and witnesses directly and may also permit the parties to the matter to do so.

(j) All panel records in which the panel has rendered a final decision shall be placed in the custody of Concordia Historical Institute. All such records shall be sealed and shall be opened only for good cause shown and only after a panel of three district presidents, selected by blind draw for that purpose by the Secretary of the Synod and audited by witnesses, has granted permission.

(k) If any part of the matter involves a specific question of doctrine or doctrinal application, each party to the matter shall have the right to an opinion from the Commission on Theology and Church Relations (CTCR). If it involves questions of constitution or bylaw interpretation, each party to the matter shall have a right to an interpretation from the Commission on Constitutional Matters (CCM).

(1) The request for an opinion must be made through the panel, which shall determine the wording of the question(s).

(2) The request for an opinion must be made within 30 days of the final formation of the panel. If a party to the matter does not request such an opinion within the designated time, such a request may still be made to the panel, which shall, at its discretion, determine whether the request shall be forwarded. The panel shall also have the right, at any time, to request an opinion from the CCM or the CTCR.

(3) Any opinion so requested shall be rendered within 30 days or such greater time as the panel may allow. The CCM and the CTCR shall have in place procedures for responding within this 30-day time frame to such requests for opinions.

(4) When an opinion has been requested, the time limitations will not apply until the parties to the matter have received the opinion. The panel must follow any opinion received from either the CCM or the CTCR.

(5) An individual member of the panel may, through the hearing facilitator, also request resource materials and personal assistance

Exhibit 2 to Defendants' Motion to Dismiss
Page 55 of 182

from the executive director of the CTCR or from a theologian recommended by the executive director, this to provide an opportunity to read about, discuss with a knowledgeable person, and better comprehend doctrinal matters associated with the suspension. The suspension case itself shall not be discussed.

2.14.7.9   Upon completion of the hearing, the Hearing Panel shall deliberate and then issue its written decision within 30 days.

(a)  Copies of the decision shall be mailed to the accused, the suspending ecclesiastical supervisor, the accuser and his/her district president, the Secretary of the Synod, and the President of the Synod.

(b)  The decision of the Hearing Panel shall be subject to appeal by the accused, the suspending ecclesiastical supervisor, or the President of the Synod (as provided in Bylaw 2.14.8).

(c)  The President of the Synod may request an opinion from the Commission on Constitutional Matters (CCM) or the Commission on Theology and Church Relations (CTCR).

(1)  Any opinion so requested shall be rendered within 30 days or such greater time as the panel may allow.

(2)  When an opinion has been requested, time limitations will not apply until the parties to the matter have received the opinion.

(3)  CCM and CTCR opinions must be followed if the matter is appealed.

(d)  If not appealed, the decision of the Hearing Panel shall be regarded as final and shall

(1)  be binding upon the parties to the matter and not be subject to further appeal;

(2)  have no precedential value;

(3)  be carried out by the district president or the President of the Synod; and

(4)  be publicized as deemed appropriate under the circumstances by the district president or the President of the Synod.

### *Appeal Panel*

2.14.8   The decision of the Hearing Panel may be appealed by the accused (if an active participant in the hearing before the Hearing Panel), by the suspending ecclesiastical supervisor, or by the President of the Synod if a question of doctrine or practice is involved (Constitution Art. XI B 1–3) within 15 days after receiving the decision. Such request for an appeal shall be submitted to the Secretary of the Synod with copies provided to the district president(s) of the accuser and the accused, the hearing facilitator of the Hearing Panel, the accuser, and the President of the Synod, and shall be accompanied by a written memorandum stating the basis for the request.

(a)  Within 21 days after receipt of an appeal from the accused, the suspending ecclesiastical supervisor, or the President of the Synod, an Appeal Panel shall be selected by the Secretary of the Synod. The Appeal Panel shall be made up of three district presidents who shall be trained for such service.

Exhibit 2 to Defendants' Motion to Dismiss
Page 56 of 182

(1)   One district president shall be selected by the accused, one by the ecclesiastical supervisor of the accused, and the third by the two Appeal Panel members so selected.

(2)   If the two Appeal Panel members cannot agree on a third panel member, the Secretary of the Synod shall select the third member by blind draw from the remaining eligible district presidents.

(b)   The members of the Appeal Panel shall be provided with copies of the official record of the case, including the Hearing Panel minutes, the written decision and all documentary evidence considered by the Hearing Panel, and the written memorandum stating the basis for the appeal. The panel shall make its decision solely on the basis of the materials received.

(c)   The only decision to be made by the Appeal Panel shall be whether to approve reconsideration of the Hearing Panel decision. The panel shall not approve a request for a new hearing on the basis of newly discovered evidence unless such evidence was clearly not available to the Hearing Panel and was not the fault of the party requesting the reopening of the case, and unless it is clear that the absence of such evidence resulted in a gross miscarriage of justice.

(d)   The standards of review that shall define the Appeal Panel's considerations shall be limited to three basic areas:

(1)   Factual findings: The Appeal Panel shall review factual findings of the Hearing Panel only to determine if they are supported by evidence. The Appeal Panel shall not ordinarily sit in judgment of the Hearing Panel's conclusions regarding evidence, since the Hearing Panel was in the best position to judge factual issues. The Appeal Panel must be convinced that a mistake has been committed, that is, that the evidence is such that reasonable minds could not agree with the Hearing Panel's decision.

(2)   Conclusions on authority: The Appeal Panel may approve an appeal if the Hearing Panel was clearly outside its authority, e.g., a decision was made that the panel had no authority to make under the Constitution and Bylaws of the Synod, or a decision was made on an issue not related to the sole issue to be decided, or a decision was made on a theological question that the panel had no authority to make.

(3)   Discretionary acts: The Appeal Panel may approve an appeal if there was a clear abuse of discretion impacting the decision of the Hearing Panel, resulting in a gross miscarriage of justice, or that involves an obvious and inappropriate bias or prejudice.

(e)   Within 30 days after its formation, the Appeal Panel shall issue its written decision in response to the request for reconsideration. If the Appeal Panel denies the request for reconsideration of the decision of the Hearing Panel and upholds the suspension of the ecclesiastical supervisor, the decision of the Hearing Panel shall be regarded as final and shall

(1)   be binding upon the parties to the matter and not be subject to further appeal;

(2)   have no precedential value;

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 62 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 57 of 182

(3) be carried out by the district president or the President of the Synod; and

(4) shall be publicized as deemed appropriate under the circumstances by the district president or the President of the Synod.

(f) If the Appeal Panel grants the request for reconsideration of the decision of the Hearing Panel, a Final Hearing Panel shall be selected by the Secretary of the Synod.

### *Final Hearing Panel*

2.14.9    Within 21 days after the receipt of the decision of the Appeal Panel granting the request for reconsideration of the decision of the Hearing Panel, a Final Hearing Panel shall be selected.

(a) The panel shall be constituted in the same prescribed manner as described in Bylaws 2.14.7.2–2.14.7.6, except that the two district presidents, the three reconcilers on the panel, the hearing facilitator that provided assistance to the Hearing Panel, and the involved district presidents are omitted from consideration for the Final Hearing Panel.

(b) The procedures for the final hearing shall be the same as prescribed in Bylaws 2.14.7.6 –2.14.7.8.

(c) The hearing facilitator of the Hearing Panel shall provide the Final Hearing Panel with a written statement of the matter and the Hearing Panel's report, minutes, records, and proceedings.

2.14.9.1    Upon completion of the hearing by the Final Hearing Panel, the panel shall deliberate and then issue its written decision within 30 days, a copy of which shall be mailed to the accused, the suspending ecclesiastical supervisor, the accuser and his district president, the Secretary of the Synod, and the President of the Synod. The final decision of the Final Hearing Panel shall

(a) be binding upon the parties to the matter and not be subject to further appeal;

(b) have no precedential value;

(c) be carried out by the district president or the President of the Synod; and

(d) be publicized as deemed appropriate under the circumstances by the district president or the President of the Synod.

### *General Regulations*

2.14.10    The district president of the accused/suspended member and the district president of the accuser shall take those steps necessary to attend to the spiritual needs of all those affected and shall continue efforts to resolve those matters which led to the commencement of the formal action against the accused member.

2.14.10.1    If the matter involves individual membership, the calling or contracting body is encouraged to continue financial support, existing housing, and insurance of individual members until the final decision is rendered.

2.14.10.2    Any member participating in this bylaw procedure that violates any of the requirements or procedures in this bylaw or is persistent in false accusations is subject to the same disciplinary measures as set forth in this

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 63 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 58 of 182

bylaw. Violations of the prohibition against publicity while a matter is still undecided or while an appeal is contemplated or pending (Bylaw 2.14.7.8 [f] above) by any of the persons involved are specifically included as violations subject to the same disciplinary measures set forth in this bylaw.

2.14.10.3   In consultation with the Secretary of the Synod and with the concurrence of the Council of Presidents, the Commission on Constitutional Matters shall amend as necessary the *Standard Operating Procedures Manual* that serves as a comprehensive procedures manual for the provisions set forth in Bylaw section 2.14.

## 2.15  Expulsion of a District President or Officer from Membership in the Synod

2.15.1   The action to commence expulsion of a district president or an officer of the Synod from membership in the Synod is the sole responsibility of the President of the Synod, who has the responsibility for ecclesiastical supervision of such member (Constitution Art. XI A and B 1). This Bylaw section 2.15, among others, provides the procedures to carry out Article XIII of the Constitution, "Expulsion from the Synod." However, it does not provide the procedure for the expulsion of a congregation or individual member of the Synod (Bylaw section 2.14), the President of the Synod (Bylaw section 2.16), or individual members in cases involving sexual misconduct or criminal behavior (Bylaw section 2.17).

### Definition of Terms

2.15.2   For a definition of terms used in this bylaw, see Bylaw 2.14.2.

### Consultation

2.15.3   When a member congregation or individual member of the Synod is aware of information which could lead to the expulsion of a district president or an officer of the Synod from the Synod's membership under Article XIII of the Constitution, prior to any formal written complaint or accusation the member shall consult with the member's district president or with the President of the Synod if the member's district president is the accused to seek advice and also so that it can be determined whether this is the appropriate bylaw procedure (Bylaw section 2.15) or whether the matter falls under Bylaw sections 2.14, 2.17, or 1.8, or dispute resolution under Bylaw section 1.10. In regard to this consultation:

(a)  If and when the accuser's district president (if the district president is not the one accused or if the accused is an officer of the Synod) is the one consulted, the district president shall consult with the President of the Synod. Whether the President of the Synod is the one consulted directly by the accuser or by the district president, the President of the Synod may consult with the vice-presidents of the Synod, with the district president of the accused (if an officer of the Synod), with the chairman of the Council of Presidents, or with the Commission on Theology and Church Relations (CTCR). The President of the Synod may also ask an opinion of the Commission on Constitutional Matters (CCM). The President of the Synod must follow any opinion received from either the CCM or the CTCR, which shall be rendered within 30 days or such additional time as the President of the Synod may allow.

Exhibit 2 to Defendants' Motion to Dismiss
Page 59 of 182

(b)  The district president or the President of the Synod shall require the accuser to follow the correct bylaw provision under the circumstance, and shall provide for evangelical supervision, counsel, and care to the persons involved.

(c)  If this Bylaw section 2.15 applies, the district president or the President of the Synod shall ensure that the accuser has met face-to-face with the accused in the manner described in Matthew 18:15. Even if the alleged violation of Article XIII of the Constitution is considered to be "public," this provision of Matthew 18:15 shall be followed. The reputation of all parties to the matter is to be protected as commanded in the Eighth Commandment.

(d)  The district president of the accuser or the President of the Synod may appoint a small committee to assist in reconciliation efforts. The goal throughout is always one of admonition and reconciliation, of repentance and forgiveness (even if the following proceedings result in expulsion from membership).

(e)  The requirement of the Synod of previous admonition called for in Article XIII of the Constitution commences at this stage if applicable.

(f)  Within 45 days after all of the requirements of the consultation provided in this bylaw (Bylaw 2.15.3) have been followed the accuser may bring the matter to the President of the Synod for action under the correct bylaw provision determined by the accuser's ecclesiastical supervisor (paragraph [b] above).

### Commencing an Action

2.15.4     Under this bylaw, the President of the Synod shall commence the following action when he becomes aware of information or allegations that could lead to expulsion of a member from the Synod under the provisions of Article XIII of the Constitution. The President of the Synod may become aware of such information by his own personal knowledge. Such information or allegations may also be conveyed to him in a formal written complaint or accusation made by a member of the Synod who has carried out the above provision (Bylaw 2.15.3). In commencing such action, the President of the Synod:

(a)  Shall determine whether Bylaw 2.15.3 provisions have been carried out and shall thoroughly investigate the matter to determine whether the facts learned from his investigation form a basis for expulsion of the member under Article XIII of the Constitution. He may appoint a small investigation committee (cf. Bylaw 4.4.6). If the accused is a district president, the investigation shall include consultation with that president's district board of directors and district vice-presidents. He may also consult with the circuit visitors of the given district.

(b)  Shall proceed in the manner described in Matthew 18:15–16 as the requirement of "admonition" in Article XIII of the Constitution, if applicable, continues to be carried out.

(c)  May, apart from the investigation, also appoint a small committee to assist in reconciliation efforts (see Bylaw 2.15.3 [d] above).

2.15.4.1   The President of the Synod shall make his determination whether or not to suspend the member within 120 days after receipt of a formal written

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 65 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 60 of 182

complaint or accusation, unless the majority of the uninvolved vice-presidents of the Synod concur that there is a need for more time to conclude an active investigation.

2.15.4.2   In the event the President of the Synod is disqualified because he has a conflict of interest or is unable to act, the chairman of the Council of Presidents or the next qualified officer of the Council of Presidents shall function in his place in carrying out any of the following bylaw provisions. The majority vote of the district presidents of the Council of Presidents, excluding the involved district presidents, shall determine any challenge to the eligibility of the President of the Synod to act which is not agreed to by the President of the Synod.

2.15.5   If the President of the Synod determines not to initiate formal proceedings, he shall in writing so inform the accuser, any other district president involved, and the involved member, which shall terminate the matter.

### Commencing Formal Proceedings

2.15.6   If the President of the Synod concludes that the facts form a basis for expulsion of the member under Article XIII of the Constitution, in commencing the formal proceedings he shall

(a)   provide to the member a written notification of the member's suspended status under Bylaw 2.13.4;

(b)   provide to the member a written statement of the matter which sets forth the facts and states that he is requesting expulsion of the member from the Synod in accord with Article XIII of the Constitution; and

(c)   provide to the member a written notification that the member has 15 days from the date of receipt of the statement of the matter to advise the President of the Synod that there is a desire to have the matter heard and resolved.

2.15.6.1   Failure by the member to file such written request for hearing and resolution within the 15-day period shall be deemed to be consent to expulsion from membership in the Synod.

### Hearing Panel

2.15.7   If the request for hearing as granted in Bylaw 2.15.6 (c) is made, the suspending ecclesiastical supervisor shall inform the Secretary of the Synod who shall initiate the formation of a Hearing Panel, such formation to be accomplished within 30 days of the request in accordance with the provisions in this bylaw.

2.15.7.1   At the time that the request for hearing is made, the suspending ecclesiastical supervisor shall forward to the Secretary of the Synod the statement of the matter and a written memorandum describing the manner in which there was compliance with the guidelines provided in Matthew 18:15–16 and "previous futile admonition" (Constitution Art. XIII), as well as all of the provisions of Bylaws 2.15.3–2.15.6.1.

2.15.7.2   A Hearing Panel consisting of two district presidents (excluding the involved district president[s]), two lay reconcilers, and one ordained reconciler, selected as follows, shall conduct the hearing:

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 66 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 61 of 182

(a)  One district president shall be selected by the accused (a district president, if he is the accused, may not choose himself).

(b)  One district president shall be selected by the suspending ecclesiastical supervisor.

(c)  Two lay reconcilers and one ordained reconciler shall be chosen by blind draw from the Synod's roster of reconcilers, with the blind draw administered by the Secretary of the Synod and audited by witnesses.

(d)  Each Hearing Panel shall be assisted by a nonvoting hearing facilitator selected according to Bylaw 2.14.2 (j).

(e)  No two members of the panel nor the hearing facilitator shall be from the same district.

(f)  The hearing facilitator shall chair the proceedings and may draw upon persons and resources that he/she deems necessary for conducting a hearing in a fair and equitable manner.

(g)  The hearing facilitator shall serve as an advisor to the panel on the form but not the substance of the decision.

2.15.7.3   Upon receipt of a request for hearing, the Secretary of the Synod shall promptly notify the accused and the suspending ecclesiastical supervisor of their respective right to choose one Hearing Panel member and direct that the identity of their selection be transmitted to the Secretary of the Synod within 15 days from the date of such notice. If either party declines to make a selection within 15 days, the Secretary of the Synod shall then make such selection within 5 days.

2.15.7.4   The Secretary of the Synod shall also promptly select two lay reconcilers and one ordained reconciler to serve as the remaining three members of the Hearing Panel and a hearing facilitator to assist the panel.

2.15.7.5   When the Hearing Panel members and hearing facilitator have so been chosen, they shall be promptly notified of their selection.

2.15.7.6   Within 15 days after the Hearing Panel is constituted, the hearing facilitator shall, after conferring with the panel, the accused, and the suspending ecclesiastical supervisor, select a date and location within 45 days after the panel was constituted for the panel to hear and consider the matter, unless there is unanimous consent by the panel members for a short delay beyond such 45 days for reasons the panel deems appropriate.

2.15.7.7   The Secretary of the Synod shall forward to the Hearing Panel the statement of the matter together with the written memorandum describing the manner in which there was compliance with the guidelines provided in Matthew 18:15–16 and "previous futile admonition" (Constitution Art. XIII), as well as all of the provisions of Bylaws 2.15.3–2.15.6.1.

2.15.7.8   The Hearing Panel and all parties to the matter shall follow the guidelines as set forth in Bylaw 2.14.7.8 with the exception of paragraph (f) and instead shall follow this guideline in its place:

(f)  While the matter is still undecided or while an appeal is contemplated or pending, publicity shall not be given to the issues in the matter by any of the persons involved during any part of the procedures outlined in this bylaw with one exception. Due to the fact that this bylaw procedure deals with a district president or an officer of the Synod, which necessarily means that the case will most likely have

81

Exhibit 2 to Defendants' Motion to Dismiss
Page 62 of 182

a high public exposure, as the ecclesiastical supervisor the President of the Synod, at his discretion, may carry out his duties to properly advise the Synod as the needs dictate in order to "promote and maintain unity of doctrine and practice" (Constitution Art. XI B 3) and in order to provide counsel, care, and protection for all of the members of the Synod (Constitution Art. III 8, 9).

2.15.7.9    Upon completion of the hearing, the Hearing Panel shall deliberate and then issue its written decision within 30 days.

(a)  Copies of the decision shall be mailed to the accused, the accuser and the accuser's district president, the Secretary of the Synod, the President of the Synod, and the suspending ecclesiastical supervisor, if other than the President of the Synod.

(b)  The decision of the Hearing Panel shall be subject to appeal by the accused or the President of the Synod (as provided in Bylaw 2.15.8).

(c)  The President of the Synod may request an opinion from the Commission on Constitutional Matters (CCM) or the Commission on Theology and Church Relations (CTCR).

(1)  Any opinion so requested shall be rendered within 30 days or such greater time as the panel may allow.

(2)  When an opinion has been requested, time limitations will not apply until the parties to the matter have received the opinion.

(3)  CCM and CTCR opinions must be followed if the matter is appealed.

(d)  If not appealed, the decision of the Hearing Panel shall be regarded as final and shall

(1)  be binding upon the parties to the matter and not be subject to further appeal;

(2)  have no precedential value;

(3)  be carried out by the district president or the President of the Synod; and

(4)  be publicized as deemed appropriate under the circumstances by the district president or the President of the Synod.

### Appeal Panel

2.15.8    The decision of the Hearing Panel may be appealed by the accused (if an active participant in the hearing before the Hearing Panel), or by the President of the Synod if a question of doctrine or practice is involved (Constitution Art. XI B 1–3) within 15 days after receiving the decision. Such request for an appeal shall be submitted to the Secretary of the Synod with copies provided to the district president(s) of the accuser and the accused, the chairman of the Hearing Panel, the accuser, and the President of the Synod, and shall be accompanied by a written memorandum stating the basis for the request.

(a)  Within 21 days after receipt of an appeal from the accused or the President of the Synod, an Appeal Panel shall be selected by the Secretary of the Synod. The Appeal Panel shall be made up of three district presidents who shall be trained for such service.

Exhibit 2 to Defendants' Motion to Dismiss
Page 63 of 182

(1)  One district president shall be selected by the accused, one by the suspending ecclesiastical supervisor, and the third by the two Appeal Panel members so selected.

(2)  If the two Appeal Panel members cannot agree on a third panel member, the Secretary of the Synod shall select the third member by blind draw from the remaining eligible district presidents.

(b)  The members of the Appeal Panel shall be provided with copies of the official record of the case, including the Hearing Panel minutes, the written decision and all documentary evidence considered by the Hearing Panel, and the written memorandum stating the basis for the appeal. The panel shall make its decision solely on the basis of the materials received.

(c)  The only decision to be made by the Appeal Panel shall be whether to approve reconsideration of the Hearing Panel decision. The panel shall not approve a request for a new hearing on the basis of newly discovered evidence unless such evidence was clearly not available to the Hearing Panel and was not the fault of the party requesting the reopening of the case, and unless it is clear that the absence of such evidence resulted in a gross miscarriage of justice.

(d)  The standards of review that shall define the Appeal Panel's considerations shall be limited to three basic areas:

(1)  Factual findings: The Appeal Panel shall review factual findings of the Hearing Panel only to determine if they are supported by evidence. The Appeal Panel shall not ordinarily sit in judgment of the Hearing Panel's conclusions regarding evidence, since the Hearing Panel was in the best position to judge factual issues. The Appeal Panel must be convinced that a mistake has been committed, that is, that the evidence is such that reasonable minds could not agree with the Hearing Panel's decision.

(2)  Conclusions on authority: The Appeal Panel may approve an appeal if the Hearing Panel was clearly outside its authority, e.g., a decision was made that the panel had no authority to make under the Constitution and Bylaws of the Synod, or a decision was made on an issue not related to the sole issue to be decided, or a decision was made on a theological question that the panel had no authority to make.

(3)  Discretionary acts: The Appeal Panel may approve an appeal if there was a clear abuse of discretion impacting the decision of the Hearing Panel, resulting in a gross miscarriage of justice, or that involves an obvious and inappropriate bias or prejudice.

(e)  Within 30 days after its formation, the Appeal Panel shall issue its written decision in response to the request for reconsideration. If the Appeal Panel denies the request for reconsideration of the decision of the Hearing Panel and upholds the suspension of the ecclesiastical supervisor, the decision of the Hearing Panel shall be regarded as final and shall

(1)  be binding upon the parties to the matter and not be subject to further appeal;

(2)  have no precedential value;

83

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 69 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 64 of 182

(3)  be carried out by the district president or the President of the Synod; and

(4)  shall be publicized as deemed appropriate under the circumstances by the district president or the President of the Synod.

(f)  If the Appeal Panel grants the request for reconsideration of the decision of the Hearing Panel, a Final Hearing Panel shall be selected by the Secretary of the Synod.

### Final Hearing Panel

2.15.9  Within 21 days after the receipt of the decision of the Appeal Panel granting the request for reconsideration of the decision of the Hearing Panel, a Final Hearing Panel shall be selected.

(a)  The panel shall be constituted in the same prescribed manner as described in Bylaws 2.15.7.2–2.15.7.6, except that the two district presidents, the three reconcilers on the panel, the hearing facilitator that provided assistance to the Hearing Panel, and the involved district presidents are omitted from consideration for the Final Hearing Panel.

(b)  The procedures for the final hearing shall be the same as prescribed in Bylaws 2.15.7.6–2.15.7.8.

(c)  The hearing facilitator of the Hearing Panel shall provide the Final Hearing Panel with a written statement of the matter and the Hearing Panel's report, minutes, records, and proceedings.

2.15.9.1  Upon completion of the hearing of the Final Hearing Panel, the panel shall deliberate and then issue its written decision within 30 days, a copy of which shall be mailed to the accused, any involved district president, the accuser, the Secretary of the Synod, and the President of the Synod. The final decision of the Final Hearing Panel shall

(a)  be binding upon the parties to the matter and not be subject to further appeal;

(b)  have no precedential value;

(c)  be carried out by the President of the Synod; and

(d)  be publicized as deemed appropriate under the circumstances by the President of the Synod.

### General Regulations

2.15.10  The President of the Synod shall take those steps necessary to assure that the spiritual needs of the respective members (accuser and accused) are attended to and shall continue efforts to resolve those matters which led to the commencement of the formal action against the accused member.

2.15.10.1  Since this matter involves individual membership, the calling or contracting body is encouraged to continue financial support, existing housing, and insurance of individual members until the final decision is rendered.

2.15.10.2  Any member participating in this bylaw procedure that violates any of the requirements or procedures in this bylaw or is persistent in false accusations is subject to the same disciplinary measures as set forth in Bylaw section 2.14 or this Bylaw section 2.15. Violations of the prohibition against publicity while a matter is still undecided or while an appeal is

Exhibit 2 to Defendants' Motion to Dismiss
Page 65 of 182

contemplated or pending (Bylaw 2.15.7.8 [g] above) by any of the persons involved are specifically included as violations subject to the same disciplinary measures set forth in this bylaw section or Bylaw section 2.14.

2.15.10.3    In consultation with the Secretary of the Synod and with the concurrence of the Council of Presidents, the Commission on Constitutional Matters shall amend as necessary the *Standard Operating Procedures Manual* that serves as a comprehensive procedures manual for the provisions set forth in Bylaw section 2.15.

## 2.16  Expulsion of a President of the Synod from Membership in the Synod

2.16.1    The action to commence expulsion of a President of the Synod from membership in the Synod is the responsibility of the district presidents of the Council of Presidents, who collectively comprise the ecclesiastical supervisors of all the respective districts of the Synod. This responsibility does not make the district presidents collectively or individually the ecclesiastical supervisor(s) of the President of the Synod. The Synod in convention reserves that right to itself alone. This Bylaw section 2.16, among others, provides the procedures to carry out Article XIII of the Constitution, "Expulsion from the Synod." While the Council of Presidents commences and facilitates the process of expulsion on behalf of the congregations of the Synod, this bylaw allows only the congregations of the Synod to expel a President of the Synod. This bylaw does not provide the procedure for the expulsion of a district president or an officer of the Synod (Bylaw section 2.15), an individual member in cases involving sexual misconduct or criminal behavior (Bylaw section 2.17), or a congregation or individual member from the Synod (Bylaw section 2.14).

*Definition of Terms*

2.16.2    For a definition of terms used in this bylaw, see the "Definition of Terms" under Bylaw 2.14.2.

*Consultation*

2.16.3    When a district president of the Synod is aware of information which could lead to the expulsion of the President of the Synod from the Synod under Article XIII of the Constitution, prior to any formal written complaint or accusation, the district president shall consult with the Council of Presidents to seek advice and also so that it can be determined whether this is the appropriate bylaw procedure (Bylaw section 2.16) or whether the matter falls under Bylaw sections 2.17 or 1.8, or dispute resolution under Bylaw section 1.10. In regard to this consultation:

(a)  The Council of Presidents by 51 percent of the votes of the district presidents may ask an opinion of the Commission on Constitutional Matters (CCM) and/or the Commission on Theology and Church Relations (CTCR) and must follow any opinion received from either, which shall be rendered within 30 days or such additional time as the district president may allow.

(b)  By 51 percent of the votes of the district presidents, the Council of Presidents shall require the accuser district president to follow the correct bylaw provision under the circumstance, if any, and shall

Case 1:23-cv-01042-RP Document 9-1 Filed 01/23/24 Page 71 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 66 of 182

provide for evangelical supervision, counsel, and care to the persons involved.

(c) If the Council of Presidents by 51 percent of the votes of the district presidents determines that Bylaw section 2.16 applies, then the Council of Presidents shall ensure that the accuser has met face-to-face with the accused President of the Synod in the manner described in Matthew 18:15. Even if the alleged violation of Article XIII of the Constitution is considered to be "public," this provision of Matthew 18:15 shall be followed. The reputation of all parties to the matter is to be protected as commanded in the Eighth Commandment.

(d) The Council of Presidents may appoint a small committee to assist in reconciliation efforts. The goal throughout is always one of admonition and reconciliation, of repentance and forgiveness (even if the following proceedings result in expulsion from membership).

(e) The requirement of the Synod of previous admonition called for in Article XIII of the Constitution commences at this stage if applicable.

(f) Within 45 days after all the requirements of the consultation provided in this bylaw (Bylaw 2.16.3) have been followed the accuser district president may bring the matter to the chairman of the Council of Presidents (acting on behalf of the district presidents) for action under this bylaw provision, if so determined by the Council of Presidents (paragraph [b] above).

### Commencing an Action

2.16.4   Under this bylaw (Bylaw section 2.16), the chairman of the Council of Presidents, acting on behalf of the district presidents, shall commence the following action when he officially receives information or allegations that could lead to expulsion of the President of the Synod from the Synod under the provisions of Article XIII of the Constitution by such information or allegations being conveyed to him in a formal written complaint or accusation made by a district president of the Synod who has carried out the above provision (paragraph 2.16.3). In commencing such action, the chairman of the Council of Presidents:

(a) Shall determine whether Bylaw 2.16.3 provisions have been carried out and shall thoroughly investigate the matter to determine whether the facts learned from his investigation form a basis for expulsion of the President of the Synod under Article XIII of the Constitution. He may appoint a small investigation committee (cf. Bylaw 4.4.6).

(b) Shall proceed in the manner described in Matthew 18:15–16 as the requirement for admonition in Article XIII of the Constitution, if applicable, continues to be carried out.

(c) May, apart from the investigation, also appoint a small committee to assist in reconciliation efforts (see Bylaw 2.16.3 [d] above).

2.16.4.1   In the event the chairman of the Council of Presidents is disqualified because he is a party to the matter, has a conflict of interest, or is unable to act, the next qualified officer of the Council of Presidents shall function in his place. The majority vote of the district presidents, excluding any involved district president, shall determine any challenge to the eligibility

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 72 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 67 of 182

of the chairman of the Council of Presidents to act which is not agreed to by the chairman.

2.16.5    The chairman of the Council of Presidents shall make his recommendation whether or not to suspend the President of the Synod within 120 days of receipt of a formal written complaint or accusation, unless the majority of uninvolved district presidents concur in his desire to extend an investigation.

2.16.5.1    In the recommendation whether or not to initiate formal proceedings, the chairman of the Council of Presidents shall bring the matter to the Council of Presidents for hearing the recommendation, for discussion, and for vote.

(a)    An affirmative vote to proceed, by written ballot of at least 51 percent of the total number of district presidents (the collective ecclesiastical supervisors elected by the districts), shall be required for the determination to initiate formal proceedings. Any district president that is a party to the matter shall be excluded from voting.

(b)    If the result of the vote is not to initiate formal proceedings, the chairman shall in writing so inform the accuser and the President of the Synod, which shall terminate the matter.

(c)    If the results of the vote require the case to proceed, the chairman shall proceed as hereafter required.

### *Commencing Formal Proceedings*

2.16.6    If the district presidents according to the procedure set forth in Bylaw 2.16.5 above conclude that the facts form a basis for expulsion of the President of the Synod under Article XIII of the Constitution, the chairman of the Council of Presidents in commencing the formal proceedings shall

(a)    provide to the President of the Synod a written notification of his suspended status under Bylaw 2.13.4;

(b)    provide to the President of the Synod a written statement of the matter which sets forth the facts and states that he is requesting expulsion of the President of the Synod from membership in the Synod in accord with Article XIII of the Constitution;

(c)    prepare a written memorandum describing the manner in which there was compliance with the guidelines provided in Matthew 18:15–16 and "previous futile admonition" (Constitution Art. XIII), as well as all of the provisions of Bylaws 2.16.3–2.16.5; and

(d)    provide to the President of the Synod a written notification that he has 15 days from the date of receipt of the statement of the matter to advise the secretary of the Council of Presidents that there is a desire to have the matter heard and resolved.

2.16.6.1    Failure by the President of the Synod to file such written request for hearing and resolution within the 15-day period shall be deemed to be consent to expulsion from membership in the Synod.

### *Hearing Panel*

2.16.7    If the request for hearing as granted in Bylaw 2.16.6 (d) is made, the secretary of the Council of Presidents shall form a Hearing Panel of district presidents within 30 days of the request in accordance with the provisions in this bylaw.

Case 1:23-cv-01042-RP  Document 9-1  Filed 01/23/24  Page 73 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 68 of 182

2.16.7.1    A Hearing Panel consisting of three district presidents, excluding the chairman of the Council of Presidents and any district president that is party to the matter, shall conduct the hearing. The Panel shall be selected as follows:

  (a)  One district president selected by the President of the Synod.

  (b)  One district president selected by the vice-chairman of the Council of Presidents.

  (c)  The third district president selected by the other two Hearing Panel members. If the two Hearing Panel members cannot agree on the third Hearing Panel member, then such third member shall be chosen by blind draw from among the remaining district presidents, with the blind draw administered by the secretary of the Council of Presidents and audited by witnesses.

2.16.7.2    Upon receipt of a request for the hearing from the President of the Synod, the secretary of the Council of Presidents shall promptly notify the accused and the vice-chairman of the Council of Presidents of their respective right to choose one Hearing Panel member and direct that the identity of their selection be transmitted to the secretary of the Council of Presidents within 15 days from the date of such notice. If either party declines to make a selection within 15 days, the secretary of the Council of Presidents shall then make such selection within five days by blind draw, audited by witnesses.

2.16.7.3    When two Hearing Panel members have so been chosen, the secretary of the Council of Presidents shall promptly notify them of their selection to the Hearing Panel and direct that they select the third member of the Hearing Panel within 10 days and notify the secretary of the Council of Presidents of their selection.

2.16.7.4    Within 15 days after the Hearing Panel is constituted, it shall select one of its members as chairman, who shall then, after conferring with the accused President of the Synod, and the chairman of the Council of Presidents, select a date and location within 45 days after the panel is constituted when and where the Hearing Panel will consider the matter, unless there is unanimous consent by the panel members for a short delay beyond such 45 days for reasons the panel deems appropriate.

2.16.7.5    The chairman of the Council of Presidents shall forward to the Hearing Panel the statement of the matter together with the written memorandum describing the manner in which there was compliance with the guidelines provided in Matthew 18:15–16 and "previous futile admonition" (Constitution Art. XIII) as well as all provisions of Bylaws 2.16.3–2.16.6.1.

2.16.7.6    The Hearing Panel and all parties to the matter shall follow the guidelines as set forth in Bylaw 2.14.7.8 with the exception of paragraph (f) and instead shall follow this guideline in its place:

  (f)  While the matter is still undecided or while a request for a final hearing is contemplated or pending, publicity shall not be given to the issues in the matter by any of the persons involved during any part of the procedures outlined in this bylaw with one exception. Due to the fact that this bylaw procedure deals with the President of the Synod, which necessarily means that the case will most likely have a broad public exposure, the chairman of the Council of Presidents, at his

Exhibit 2 to Defendants' Motion to Dismiss
Page 69 of 182

discretion and in consultation and concurrence with the Council of Presidents, may carry out actions to advise the Synod as the needs dictate in order to "promote and maintain unity of doctrine and practice" (Constitution Art. XI B 3) and in order to provide counsel, care, and protection for all the members of the Synod (Constitution Art. III 8, 9).

2.16.7.7  Upon completion of the hearing, the Hearing Panel shall deliberate and then issue its recommendation to the district presidents within 30 days, a copy of which shall be mailed to the accused President of the Synod, the chairman of the Council of Presidents, and the accuser.

### Final Hearing

2.16.8  Prior to acting upon the recommendation of the Hearing Panel and if requested within 15 days by the accused President of the Synod, the district presidents shall within 45 days of the request for the final hearing grant a final hearing before the full Council of Presidents.

(a)  The guidelines for this final hearing shall be the same as prescribed in Bylaw 2.16.7.6.

(b)  The President of the Synod and/or the district presidents may also request that an opinion of the Commission on Constitutional Matters (CCM) or Commission on Theology and Church Relations (CTCR) be obtained. Any opinion so requested shall be rendered within 30 days or such greater time as the district presidents may allow. When an opinion has been requested, the time limitations will not apply until the parties to the matter have received the opinion. Any opinion received from either the CCM or the CTCR shall be followed.

(c)  In acting upon the report and/or recommendation of the Hearing Panel, if any (a report may be given without an accompanying recommendation), an affirmative vote by written ballot of at least 75 percent of the total number of district presidents of the Council of Presidents (the collective ecclesiastical supervisors elected by the districts) shall be required to submit the matter to the member congregations of the Synod for a written vote in order to terminate the membership of the President of the Synod.

(d)  If the result of the vote is not the required 75 percent of the total number of district presidents, the chairman of the Council of Presidents shall so inform the accuser and the President of the Synod, which shall terminate the matter, vacating the suspended status.

### Decision by Congregations

2.16.9  Prior to submitting the matter to the congregations of the Synod, the Council of Presidents shall provide and send full and complete information regarding the matter including such written responses as the President of the Synod may wish to make to the member congregations of the Synod. This information shall also be published in an official periodical of the Synod.

2.16.9.1  At least one-fourth of the member congregations are required to register their vote within 45 days of the date that the matter was submitted to the member congregations of the Synod and also a majority vote of those

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 75 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 70 of 182

congregations voting is required for the termination of membership of the President of the Synod.

2.16.9.2   If the decision by the member congregations is not to terminate, suspended status shall be considered removed immediately upon the vote of the congregations.

2.16.9.3   If the decision results in the expulsion of the President of the Synod from membership, the First Vice-President of the Synod shall carry out the decision, and the decision shall be publicized as deemed appropriate under the circumstances by the First Vice-President of the Synod. Article XI C 2 of the Constitution shall take effect immediately.

*General Regulations*

2.16.10    The decision of the district presidents or the member congregations shall have no precedential value and shall be final and binding and not subject to further appeal.

2.16.10.1   The President of the Synod (the previous First Vice-President of the Synod) shall take those steps necessary to assure that the spiritual needs of the terminated President of the Synod are attended to and shall continue efforts to resolve those matters which led to the commencement of the formal action against him.

2.16.10.2   The Synod is encouraged to continue financial support, existing housing, and insurance of the accused President of the Synod at least until the final decision is rendered.

2.16.10.3   Any district president participating in this bylaw procedure who violates any of the requirements or procedures in this bylaw or is persistent in false accusations is subject to the same disciplinary measures as set forth in Bylaw sections 2.14 or 2.15. Violations of the prohibition against publicity while a matter is still undecided or while an appeal is contemplated or pending (Bylaw 2.16.7.6 [g] above) by any of the parties to the matter involved are specifically included as violations subject to the same disciplinary measures set forth in Bylaw sections 2.14 or 2.15.

2.16.10.4   In consultation with the Secretary of the Synod and with the concurrence of the Council of Presidents, the Commission on Constitutional Matters shall amend as necessary the *Standard Operating Procedures Manual* that serves as a comprehensive procedures manual for the bylaw provisions set forth in Bylaw section 2.16.

## 2.17   Expulsion of Individuals from Membership in the Synod as a Result of Sexual Misconduct or Criminal Behavior

2.17.1     The action to commence expulsion of an individual from membership in the Synod is the sole responsibility of the district president or the President of the Synod who is responsible for the ecclesiastical supervision of such member. This bylaw provides the procedure to carry out Article XIII of the Constitution, "Expulsion from the Synod," as regards "offensive conduct" of individual members of the Synod involving sexual misconduct or criminal behavior.

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 76 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 71 of 182

### Definition of Terms

2.17.2    For a definition of terms used in this bylaw, see the "Definition of Terms" under Bylaw 2.14.2.

### Consultation

2.17.3    Prior to any formal written complaint or accusation, when any person is aware of information or facts that could lead to the expulsion of an individual member from the Synod, including a district president, an officer of the Synod, or the President of the Synod under Article XIII of the Constitution for alleged sexual misconduct or criminal behavior, the person shall consult with the appropriate ecclesiastical supervisor, which would be a district president of the Synod or the President of the Synod, to seek advice, direction, and spiritual ministry as the needs and circumstances dictate. If the accused is the President of the Synod, the person shall consult with the chairman of the Council of Presidents. In regard to this consultation:

(a)  The appropriate ecclesiastical supervisor may consult with any others as considered appropriate under the circumstances.

(b)  If the accuser is a member of the LCMS or a member of an LCMS congregation, the ecclesiastical supervisor shall discuss with the accuser whether this bylaw provision or Bylaw section 1.10 or Bylaw sections 2.14, 2.15, or 2.16 are appropriate under the circumstances.

(c)  The ecclesiastical supervisor shall provide evangelical supervision, counsel, and care.

(d)  The ecclesiastical supervisor shall advise the accuser that it is understood that he/she shall not be put under risk by requiring the accuser to meet face-to-face with the accused in the manner described in Matthew 18:15. However, the reputation of all parties to the matter, the accuser and the accused, is to be protected as commanded in the Eighth Commandment.

### Commencing an Action

2.17.4    Under this bylaw (Bylaw section 2.17), the ecclesiastical supervisor of the accused shall commence the following action when he becomes aware of information or facts that could lead to expulsion of the member from the Synod under the provisions of Article XIII of the Constitution. The district president, the President of the Synod, or the chairman of the Council of Presidents may become aware of such information or facts by his own personal knowledge. Such information or facts may also be conveyed to him in a formal written complaint or accusation made by any person. In commencing such action, the ecclesiastical supervisor of the accused:

(a)  Shall determine whether the provisions in Bylaw 2.17.3 have been followed and shall thoroughly investigate whether the allegations of the accuser can be substantiated. He may appoint a small investigation committee (cf. Bylaw 4.4.6);

(b)  Shall inform the accused of the accusation at the earliest appropriate time (cf. Matthew 18:15).

Exhibit 2 to Defendants' Motion to Dismiss
Page 72 of 182

2.17.4.1    The ecclesiastical supervisor shall make his determination whether or not to suspend the member within 120 days after receipt of a formal written complaint or accusation, unless:

    (a)  in the event that the accused is a district president or officer of the Synod, the President of the Synod extends his investigation with concurrence of the majority of the uninvolved vice-presidents of the Synod;

    (b)  in the event that the accused is the President of the Synod, the chairman of the Council of Presidents extends his investigation with concurrence of the majority of the uninvolved district presidents of the Synod.

    (c)  otherwise, the district president requests, substantiates, and is granted an extension by the President of the Synod.

2.17.4.2    Before informing others of a determination not to suspend, if the matter involves doctrine or practice and a formal written accusation, a district president may seek the counsel and concurrence of the President of the Synod by conveying to him the accuser's formal written accusation, the record of his investigation, and his preliminary determination. The President of the Synod shall respond within 60 days.

    (a)  Should the President of the Synod concur, the district president may include the concurrence in his determination, indicating that it precludes an appeal for action by the accuser to the President of the Synod.

    (b)  Should the President of the Synod not concur, he shall consult with the district president, who may revise his determination. He may request additional time to extend his investigation, which the President of the Synod may grant.

2.17.4.3    In the event the district president has a conflict of interest or is unable to act, the next qualified officer of the district shall function in his place. The President of the Synod, who is the ecclesiastical supervisor of the district president, shall determine any challenge to the eligibility of the district president to act that is not agreed to by the district president.

    (a)  In the event that the accused is a district president or officer of the Synod, the President of the Synod shall function in such instance;

    (b)  In the event that the accused is the President of the Synod, the chairman of the Council of Presidents shall function in such instance, and the matter shall thereafter proceed as set forth in Bylaws 2.16.4–2.16.10.4.

2.17.5    If the determination is not to initiate formal proceedings, the district president shall in writing so inform the accuser, any other district president involved, and the involved member, which shall terminate the matter, subject to the following:

    (a)  If a matter of doctrine or practice is involved, the accuser may, within 15 days after receipt of such notice, appeal for action by the President of the Synod (Constitution Art. XI B 1–3). The accuser shall so notify the district president, who shall within 15 days:

        (1)  notify the accused and any other district president involved that an appeal for action is underway; and

Exhibit 2 to Defendants' Motion to Dismiss
Page 73 of 182

(2) forward the appeal for action, with the record of his investigation and determination and the accuser's formal written accusation, to the President of the Synod.

(b) The President of the Synod shall, within 15 days of receipt of such appeal for action, consult with the district president.

(c) The President of the Synod may consult with the accuser, the accused, and others involved. He may appoint an investigative committee and / or ask an opinion of the CCM or CTCR, which opinion shall be followed. He shall consult with the vice-presidents of the Synod.

(d) The President of the Synod may, in a matter of doctrine and practice, and within 120 days of receipt of notice, suspend the member as provided in Bylaw 2.17.6 and then, as the "suspending ecclesiastical supervisor," carry out the formal proceedings of Bylaw 2.17.7 and following.

(e) If the determination is made not to initiate formal proceedings, the President of the Synod shall in writing so inform the accuser, any district president involved, and the involved member.

### Commencing Formal Proceedings

2.17.6    If the district president or the President of the Synod or the chairman of the Council of Presidents, which ever the case may be, concludes that the facts form a basis for expulsion of the member under Article XIII of the Constitution, the appropriate ecclesiastical supervisor in commencing the formal proceedings shall

(a) provide to the member a written notification of the member's suspended status under Bylaw 2.13.4;

(b) provide to the member a written statement of the matter which sets forth the facts and states that he is requesting expulsion of the member from the Synod in accord with Article XIII of the Constitution; and

(c) provide to the member a written notification that the member has 15 days from the date of receipt of the statement of the matter to advise his ecclesiastical supervisor that there is a desire to have the matter heard and resolved.

2.17.6.1    Failure by the member to file such written request for hearing and resolution within the 15-day period shall be deemed to be consent to expulsion from membership in the Synod.

### Hearing Panel

2.17.7    If the request for hearing as granted in Bylaw 2.17.6 (c) is made, the ecclesiastical supervisor shall inform the Secretary of the Synod, who shall initiate the formation of a Hearing Panel, such formation to be accomplished within 30 days of the request in accordance with the provisions in this bylaw.

2.17.7.1    At the time that the request for hearing is made, the ecclesiastical supervisor shall forward to the Secretary of the Synod the statement of the matter and a written memorandum describing the manner in which there was compliance with the provisions of Bylaws 2.17.3–2.17.7.

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 79 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 74 of 182

2.17.7.2    A Hearing Panel consisting of two district presidents (excluding the involved district president[s]), two lay reconcilers, and one ordained reconciler, selected as follows, shall conduct the hearing:

    (a)  One district president shall be selected by the accused.

    (b)  One district president shall be selected by the ecclesiastical supervisor who imposed the suspended status (a district president may not choose himself).

    (c)  Two lay reconcilers and one ordained reconciler shall be chosen by blind draw from the Synod's roster of reconcilers with the blind draw administered by the Secretary of the Synod and audited by witnesses.

    (d)  Each Hearing Panel shall be assisted by a nonvoting hearing facilitator selected according to Bylaw 2.14.2 (j).

    (e)  No two members of the panel nor the hearing facilitator shall be from the same district.

    (f)  The hearing facilitator shall chair the proceedings and may draw upon persons and resources that he deems necessary for conducting a hearing in a fair and equitable manner.

    (g)  The hearing facilitator shall serve as an advisor to the panel on the form but not the substance of the decision.

2.17.7.3    Upon receipt of a request for hearing, the Secretary of the Synod shall promptly notify the accused and the involved ecclesiastical supervisor of their respective right to choose one Hearing Panel member and direct that the identity of their selection be transmitted to the Secretary of the Synod within 15 days from the date of such notice. If either party declines to make a selection within such 15-day period, the Secretary of the Synod shall then make such selection within five days.

2.17.7.4    The Secretary of the Synod shall also promptly select two lay reconcilers and one ordained reconciler to serve as the remaining three members of the Hearing Panel and a hearing facilitator to assist the panel.

2.17.7.5    When the Hearing Panel members and hearing facilitator have so been chosen, they shall promptly be notified of their selection to the Hearing Panel.

2.17.7.6    Within 15 days after the Hearing Panel is constituted, the hearing facilitator shall, after conferring with the panel, the accused and the involved ecclesiastical supervisor, select a location and a date within 45 days after the Hearing Panel was constituted for the panel to hear and consider the matter, unless there is unanimous consent by the panel members for a short delay beyond such 45 days for reasons the panel deems appropriate.

2.17.7.7    The Secretary of the Synod shall forward to the Hearing Panel the statement of the matter together with the written memorandum describing the manner in which there was compliance with the provisions of Bylaws 2.17.3–2.17.7.

2.17.7.8    The Hearing Panel and all parties to the matter shall follow the guidelines as set forth in Bylaw 2.14.7.8 (a)–(k).

2.17.7.9    Upon completion of the hearing, the Hearing Panel shall deliberate and then issue its written decision within 30 days.

Exhibit 2 to Defendants' Motion to Dismiss
Page 75 of 182

(a) Copies of the decision shall be mailed to the accused, the suspending ecclesiastical supervisor, the accuser and his/her district president, the Secretary of the Synod, and the President of the Synod.

(b) The decision of the Hearing Panel shall be subject to appeal by the accused, the suspending ecclesiastical supervisor, or the President of the Synod (as provided in Bylaw 2.17.8).

(c) The President of the Synod may request an opinion from the Commission on Constitutional Matters (CCM) or the Commission on Theology and church Relations (CTCR).

(1) Any opinion so requested shall be rendered within 30 days or such greater time as the panel may allow.

(2) When an opinion has been requested, time limitations will not apply until the parties to the matter have received the opinion.

(3) CCM and CTCR opinions must be followed if the matter is appealed.

(d) If not appealed, the decision of the Hearing Panel shall be regarded as final and shall

(1) be binding upon the parties to the matter and not be subject to further appeal;

(2) have no precedential value;

(3) be carried out by the district president or the President of the Synod; and

(4) be publicized as deemed appropriate under the circumstances by the district president or the President of the Synod.

### *Appeal Panel*

2.17.8    The decision of the Hearing Panel may be appealed by the accused (if an active participant in the hearing before the Hearing Panel), by the suspending ecclesiastical supervisor, or by the President of the Synod if a question of doctrine or practice is involved (Constitution Art. XI B 1–3) within 15 days after receiving the decision. Such request for an appeal shall be submitted to the Secretary of the Synod with copies provided to the district president(s) of the accuser and the accused, the chairman of the Hearing Panel, the accuser, and the President of the Synod, and shall be accompanied by a written memorandum stating the basis for the request.

(a) Within 21 days after receipt of an appeal from the accused, the suspending ecclesiastical supervisor, or the President of the Synod, an Appeal Panel shall be selected by the Secretary of the Synod. The Appeal Panel shall be made up of three district presidents who shall be trained for such service.

(1) One district president shall be selected by the accused, one by the ecclesiastical supervisor of the accused, and the third by the two Appeal Panel members so selected.

(2) If the two Appeal Panel members cannot agree on a third panel member, the Secretary of the Synod shall select the third member by blind draw from the remaining eligible district presidents.

(b) The members of the Appeal Panel shall be provided with copies of the official record of the case, including the Hearing Panel minutes, the

Exhibit 2 to Defendants' Motion to Dismiss
Page 76 of 182

written decision and all documentary evidence considered by the Hearing Panel, and the written memorandum stating the basis for the appeal. The panel shall make its decision solely on the basis of the materials received.

(c)  The only decision to be made by the Appeal Panel shall be whether to approve reconsideration of the Hearing Panel decision. The panel shall not approve a request for a new hearing on the basis of newly discovered evidence unless such evidence was clearly not available to the Hearing Panel and was not the fault of the party requesting the reopening of the case, and unless it is clear that the absence of such evidence resulted in a gross miscarriage of justice.

(d)  The standards of review that shall define the Appeal Panel's considerations shall be limited to three basic areas:

(1)  Factual findings: The Appeal Panel shall review factual findings of the Hearing Panel only to determine if they are supported by evidence. The Appeal Panel shall not ordinarily sit in judgment of the Hearing Panel's conclusions regarding evidence, since the Hearing Panel was in the best position to judge factual issues. The Appeal Panel must be convinced that a mistake has been committed, that is, that the evidence is such that reasonable minds could not agree with the Hearing Panel's decision.

(2)  Conclusions on authority: The Appeal Panel may approve an appeal if the Hearing Panel was clearly outside its authority, e.g., a decision was made that the panel had no authority to make under the Constitution and Bylaws of the Synod, or a decision was made on an issue not related to the sole issue to be decided, or a decision was made on a theological question that the panel had no authority to make.

(3)  Discretionary acts: The Appeal Panel may approve an appeal if there was a clear abuse of discretion impacting the decision of the Hearing Panel, resulting in a gross miscarriage of justice, or that involves an obvious and inappropriate bias or prejudice.

(e)  Within 30 days after its formation, the Appeal Panel shall issue its written decision in response to the request for reconsideration. If the Appeal Panel denies the request for reconsideration of the decision of the Hearing Panel and upholds the suspension of the ecclesiastical supervisor, the decision of the Hearing Panel shall be regarded as final and shall

(1)  be binding upon the parties to the matter and not be subject to further appeal;

(2)  have no precedential value;

(3)  be carried out by the district president or the President of the Synod; and

(4)  be publicized as deemed appropriate under the circumstances by the district president or the President of the Synod.

(f)  If the Appeal Panel grants the request for reconsideration of the decision of the Hearing Panel, a Final Hearing Panel shall be selected by the Secretary of the Synod.

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 82 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 77 of 182

*Final Hearing Panel*

2.17.9    Within 21 days after the receipt of the decision of the Appeal Panel granting the request for reconsideration of the decision of the Hearing Panel, a Final Hearing Panel shall be selected.

(a)  The panel shall be constituted in the same prescribed manner as described in Bylaws 2.17.7.2–2.17.7.6, except that the two district presidents, the three reconcilers on the panel, the hearing facilitator that provided assistance to the Hearing Panel, and the involved district presidents are omitted from consideration for the Final Hearing Panel.

(b)  The procedures for the final hearing shall be the same as prescribed in Bylaws 2.17.7.6–2.17.7.8.

(c)  The hearing facilitator of the Hearing Panel shall provide the Final Hearing Panel with a written statement of the matter and the Hearing Panel's report, minutes, records, and proceedings.

2.17.9.1  Upon completion of the hearing by the Final Hearing Panel, the panel shall deliberate and then issue its written decision within 30 days, a copy of which shall be mailed to the accused, the involved district president, the accuser, the ecclesiastical supervisor who initially served as consultant to the accuser, the Secretary of the Synod, and the President of the Synod. The decision of the Final Hearing Panel shall

(a)  be binding upon the parties to the matter and not be subject to further appeal;

(b)  have no precedential value;

(c)  be carried out by the district president or the President of the Synod; and

(d)  be publicized as deemed appropriate under the circumstances by the district president or the President of the Synod.

*General Regulations*

2.17.10   The ecclesiastical supervisor of the accused and suspended member shall take those steps necessary to attend to the spiritual needs of all those affected.

2.17.10.1  Since the matter involves individual membership, the calling or contracting body is encouraged to continue financial support, existing housing, and insurance of individual members until the final decision is rendered.

2.17.10.2  Any member participating in this bylaw procedure that violates any of the requirements or procedures in this bylaw or is persistent in false accusations is subject to the disciplinary measures as set forth in Bylaw section 2.14 or Bylaw section 2.15. Violations of the prohibition against publicity while a matter is still undecided or while an appeal is contemplated or pending (Bylaw 2.17.7.8 above) by any of the persons involved are specifically included as a violation subject to the same disciplinary measures set forth in Bylaw sections 2.14 or 2.15.

2.17.10.3  In consultation with the Secretary of the Synod and with the concurrence of the Council of Presidents, the Commission on Constitutional Matters shall amend as necessary the *Standard Operating Procedures Manual* that serves as a comprehensive procedures manual for the bylaw provisions set forth in Bylaw section 2.17.

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 83 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 78 of 182

2.17.10.4    Any pending criminal or civil court proceedings permit exceptions to any of the time limits specified in this Bylaw section 2.17 at the discretion of the ecclesiastical supervisor.

## 2.18  Reinstatement of Individuals into Membership

2.18.1    Any person who at any time has held membership in the Synod but has resigned that membership, or whose membership in the Synod has been terminated, is eligible to seek reinstatement into membership. However, there is no inherent right to membership in the Synod, and the decision as to whether to accept or deny a request for reinstatement shall be at the sole discretion of the Council of Presidents.

*Applications*

2.18.2    Procedures for investigating and processing requests for reinstatement shall be the responsibility of the Council of Presidents.

(a)  All applications by individuals for reinstatement into membership in the Synod shall be addressed to the president of the district in which the applicant last held membership.

(b)  The president of the district shall review the matter and shall ordinarily make a recommendation to the Council of Presidents but may be excused by the Council from making such a recommendation where circumstances warrant.

(c)  A decision to reinstate shall require an affirmative vote of at least 75 percent of the Council of Presidents present and voting, and shall be by written ballot.

(d)  If the applicant is reinstated, the district president shall publish this fact in an official periodical of the Synod.

(e)  A decision not to reinstate shall be unappealable, but the individual may reapply for reinstatement three or more years after his or her last preceding application has been denied.

## 3. NATIONAL ORGANIZATION AND RESPONSIBILITIES

### 3.1  National Conventions

3.1.1    The national convention of the Synod shall afford an opportunity for worship, nurture, inspiration, fellowship, and the communication of vital information. It is the principal legislative assembly, which amends the Constitution and Bylaws, considers and takes action on reports and overtures, and handles appropriate appeals. It establishes general positions and policies of the Synod, provides overall program direction and priorities, and evaluates all such positions, programs, policies, directions, and priorities in order to provide responsible service for and on behalf of its members. Only a national convention of the Synod shall authorize affiliation or association and the discontinuance of such affiliation or association of the Synod with other church bodies, synods, or federations.

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 84 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 79 of 182

*Voting Delegates*

3.1.2      Electoral circuits shall meet as required by the Bylaws of the Synod to elect circuit voting delegates to the Synod's national conventions.

     (a) An electoral circuit shall consist either of one or two adjacent visitation circuits, as shall be determined by the district board of directors on the basis of the following requirements: each pair of delegates shall represent from 7 to 20 member congregations, involving an aggregate confirmed membership ranging from 1,500 to 10,000.

     (b) Exceptions to these requirements may be made only by the President of the Synod upon request of a district board of directors.

     (c) Voting delegates shall consist of one pastor and one layperson from each electoral circuit. These pastoral and lay delegates and their alternates shall be elected according to the regulations of the Synod (Bylaw 3.1.2.1).

     (d) The lay delegate shall serve throughout the triennium following the convention as an advisory member of the circuit forum.

3.1.2.1      Elections of voting delegates shall take place in accordance with established policy and procedure.

     (a) Each electoral circuit shall meet at the call of the circuit visitor(s) to elect its delegates not later than nine months prior to the opening day of the convention. When in-person meetings are burdensome (e.g., geographically large circuits), a circuit may select another manner of meeting (e.g., e-meeting technologies) that is suitable and made available to all participants, taking into consideration the need to provide for an open and fair exchange of ideas and secure, private, and confidential voting.

     (b) Each electoral circuit may adopt procedures and methods that will insure efficiency and accuracy, including the use of mechanical, electronic, or other methods of casting, recording, or tabulating votes.

     (c) The privilege of voting shall be exercised by one pastor and one layperson from each member congregation or multi-congregation parish of the circuit, both of whom shall have been elected in the manner prescribed by the congregation or parish. Congregations of a multi-congregation parish not contributing a lay voter may send an advisory representative, with voice but no vote. A pastor serving a congregation in an assisting capacity (Bylaw 2.5.6) is not eligible to cast that congregation's pastoral vote.

     (d) Each pastor who is called and installed to a congregation of the circuit in a non-assisting capacity and\* not a specific ministry pastor shall be eligible for election.

         (1) Each voter may write in the names of two such pastors on the initial ballot. The three pastors (or more, in case of a tie vote) who receive the highest number of votes in this preliminary ballot shall be placed on the next ballot.

---

\* Amendment of Bylaw 3.1.2.1 (d) to read as printed is contingent upon congregational ratification of the constitutional amendment initiated in Res. 9-05 (see *Handbook* preface). Failing such ratification, Bylaw 3.1.2.1 (d) would read: "**Each pastor who is called and installed to a congregation of the circuit in a non-assisting capacity, not an advisory member under Article V B of the Constitution, and** …"

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 85 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 80 of 182

(2)  Each voter shall now vote for only one candidate. Balloting shall continue with the lowest candidate being removed from each succeeding ballot until one pastor shall have received a simple majority of all votes cast, whereupon he shall be declared the pastoral delegate.

(3)  The congregation or congregations served (in other than an assisting capacity) by the elected pastoral delegate shall be removed from consideration for supplying any other voting delegate or alternate for that particular convention.

(e)  Prior to the meeting of the electoral circuit, each congregation may nominate one layperson (i.e., not a commissioned or ordained minister)*, either from its congregation or from the circuit. These names must be submitted to the circuit visitor prior to the day of the circuit meeting and shall constitute the slate of candidates. All congregational nominees, except those who have been eliminated through the election of the pastoral delegate, shall be eligible for election.

(1)  Each voter may write in the name of two of the remaining lay nominees on the initial ballot. The three laypersons (or more, in case of a tie vote) who received the highest number of votes in this preliminary ballot shall be placed on the next ballot.

(2)  Each voter shall now vote for only one candidate. Balloting shall continue with the lowest candidate being removed from each succeeding ballot until one layperson shall have received a simple majority of all votes cast, whereupon he/she shall be declared the lay delegate.

(3)  The congregation from which the lay delegate has been elected shall then be removed from consideration for supplying any alternates to that particular convention.

(f)  All other pastors who received votes in the initial write-in ballot, except those who were eliminated through the election of the lay delegate, shall be eligible for election as the alternate.

(1)  Each voter shall now vote for only one candidate.

(2)  Balloting shall continue with the lowest candidate being removed from each succeeding ballot until one pastor shall have received a simple majority of all votes cast, whereupon he shall be declared the alternate pastoral delegate.

(3)  The congregation or congregations served by him shall be removed from consideration for supplying the remaining lay alternate.

(g)  All lay nominees except those who have been disqualified through the procedures listed above shall be eligible for election as the alternate lay delegate. The election of the alternate shall follow the same procedure as in paragraph (f) above.

---

* Amendment of Bylaw 3.1.2.1 (e) to include the noted parenthetical is contingent upon congregational ratification of the constitutional amendment initiated in Res. 9-05 (see *Handbook* preface).

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 86 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 81 of 182

    (h) All four persons elected shall come from four different member congregations. (No lay delegate or alternate shall come from a congregation served by the pastoral delegate or alternate.)

    (i) The visitor(s) shall report the results of the election to the secretary of the district in writing immediately after said election.

    (j) If neither the delegate nor the alternate (pastoral or lay) can serve, the vacancy shall be filled by the district president in consultation with the respective circuit visitor(s).

3.1.2.2    Voting delegates shall serve a three-year term beginning with the convention, shall function as advisory members of the circuit forum, shall serve as resource persons in the circuit, and shall assist in the dissemination and implementation of resolutions of the Synod in the circuit.

    (a) Delegates are responsible to the circuits they represent and shall attempt to discover the sentiment of the members thereof.

    (b) Congregations shall not require their delegates to vote in accordance with specific instructions, but every delegate shall be permitted to vote according to his or her own conviction.

    (c) Delegates are expected to be faithful in attendance at all sessions of the convention. All duly elected voting delegates shall attend all sessions regularly until the close of the convention. Delegates who arrive late or leave early or who do not attend at all shall present a written excuse.

    (d) Delegates shall report the actions of the Synod to their circuits after each convention, preferably appearing before each of the congregations they represent.

### Nonvoting Advisory Delegates

3.1.3    The advisory delegates of a district convention shall consist, unless they present a valid excuse, of all individual members of the Synod within the district, except those pastors representing member congregations as voting delegates. In a convention of the Synod, all commissioned ministers and those ordained ministers not eligible for election as a voting delegate under Bylaw 3.1.2.1 (d) shall be represented as follows:*

3.1.3.1    Each district shall select one advisory delegate for every 60 advisory ordained ministers and specific ministry pastors, and one advisory delegate for every 60 commissioned ministers on the roster of the Synod. Fractional groupings shall be disregarded except that each district shall be entitled to at least one advisory delegate in each category.

    (a) Selection of district advisory delegates to conventions of the Synod shall be made by the respective groups meeting at the call of the district secretary either during the district convention or at official district conferences of ordained and/or commissioned ministers or via electronic means according to Board of Directors policy (Bylaw 1.5.3).

---

* Amendment of Bylaw 3.1.3 to read as printed is contingent upon congregational ratification of the constitutional amendment initiated in Res. 9-05 (see *Handbook* preface). Failing such ratification, Bylaw 3.1.3 will read: "**Advisory members of the Synod shall, unless they present a valid excuse, attend district conventions, but they shall not be elected by any congregation or by any group of congregations as lay delegates to a national convention of the Synod.**"

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 87 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 82 of 182

(b) Such selections must be completed at least nine months prior to the opening day of the convention.

(c) Individuals who are eligible for selection in any category under Bylaw 3.1.4 shall not be counted in determining the number of advisory delegates from each district, shall not be eligible to be selected as delegates from the groups defined in this bylaw, and shall not participate in the election process.

3.1.3.2   All district voting and nonvoting advisory delegates and representatives and their alternates shall be certified before attending a convention of the Synod.

(a) The names and addresses of all voting and nonvoting advisory delegates and representatives and their alternates shall be forwarded by the district secretary before the announced registration deadline to the Secretary of the Synod on registration forms provided by the latter.

(b) This procedure shall constitute certification.

***Other Advisory Representatives***

3.1.4   Officers of the Synod, district presidents, and representatives of the Synod's boards, commissions, educational institutions, mission areas, chaplains and district boards of directors shall also serve as advisory representatives to the convention of the Synod.

3.1.4.1   Each board and commission of the Synod shall be represented at conventions of the Synod.

(a) Each board or commission shall be represented by its chairman or another board or commission member and by its principal staff person. The boards for National and International Mission shall also be represented by the executive directors of the Offices of National and International Mission, respectively.

(b) Standing exceptions shall be the Board of Directors, the Commission on Constitutional Matters, the Commission on Handbook, and the Commission on Theology and Church Relations, who may be represented by as many of their membership as they deem necessary.

(c) Other exceptions must have the approval of the Board of Directors of the Synod prior to each convention.

3.1.4.2   Each educational institution of the Synod shall be represented at conventions of the Synod.

(a) Educational institutions of the Synod shall be represented by one board member in addition to the district president, by their presidents, and by one faculty member for every 30 full-time faculty members who are members of the Synod.

(b) Fractional groupings shall be disregarded except that each institution having any full-time faculty members on the roster of the Synod shall be entitled to at least one faculty representative.

3.1.4.3   Each foreign mission area, as defined and established from time to time by the Board for International Mission, shall be represented at conventions of the Synod.

(a) Foreign mission areas shall not exceed 10 in number and may be represented by an advisory representative from within the mission area

102

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 88 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 83 of 182

who is on home leave at the time of the convention and will return to the mission area represented.

(b) These representatives shall be elected by the Board for International Mission in consultation with the field authority for each field and shared with the missionaries at least nine months in advance of a convention of the Synod, provided, however, that each said mission area shall be entitled to a representative, even though there may be no other than terminating missionaries on home leave at convention time.

3.1.4.4   Chaplains in each branch of the Armed Forces of the United States may be represented at conventions of the Synod.

(a) Chaplains may be represented by active-duty chaplains stationed stateside.

(b) Representatives shall be approved by the Board for International Mission at least nine months before the convention of the Synod.

3.1.4.5   Each district board of directors shall be represented at conventions of the Synod.

(a) Each district board of directors is entitled to send one representative from the district board of directors and one from the district executive staff other than the district president.

(b) If the district has no executive staff, it may select two members of its board of directors.

3.1.4.6   Each district may be represented by two youth representatives at conventions of the Synod.

(a) Youth representatives may be selected as a district may specify.

(b) They may speak at the request of a floor committee and with the permission of the chair.

### Responsibilities of Advisory Delegates and Representatives

3.1.5   Advisory delegates and representatives shall have voice but no vote and shall be entitled to the floor to express their opinion the same as voting members.

3.1.5.1   Advisory delegates and representatives shall be eligible for membership on committees and for offices of the convention unless otherwise specified.

3.1.5.2   All duly elected advisory delegates and representatives shall attend all sessions regularly until the close of the convention. Delegates who arrive late or leave early or who do not attend at all shall present a written excuse.

### Reports and Overtures

3.1.6   The principal business of a convention of the Synod shall be the consideration of reports and overtures. Reports and overtures shall be submitted to the President of the Synod not later than 20 weeks prior to the opening date of the convention.

(a) No report or overture received subsequent to that date shall be accepted for convention consideration unless a committee consisting of the President, the First Vice-President, and the Secretary adjudge it to be a matter of overriding importance and urgency which is not adequately covered by documents already before the convention.

tags
Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 89 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 84 of 182

(b) Overtures and recommendations involving capital outlay or current expenditures shall be accompanied, to the extent feasible, by cost projections and the basis thereof.

*Reports*

3.1.6.1 Reports to a convention of the Synod may be submitted only by the President, a vice-president, the Secretary, the Chief Financial Officer, the Board of Directors of the Synod, a board or commission of the Synod as listed in Bylaws 3.2.2, 3.2.2.1, 3.2.3, and 3.2.3.1, and other individuals or duly constituted groups who may be required or permitted to do so by the Bylaws, by action of a prior convention of the Synod, or by the President.

(a) Reports are statements of work performed or contemplated by those who are charged with conducting the business of the Synod between conventions, communications to a convention with respect to studies that may have been made for the Synod in order to further its work, or other types of communications to the Synod.

(b) A report shall not include an overture unless the report is submitted by someone authorized to submit overtures.

*Overtures*

3.1.6.2 Overtures to a convention of the Synod may be submitted only by a member congregation of the Synod, a convention or board of directors of a district, an official district conference of ordained and/or commissioned ministers, the faculty of an educational institution of the Synod, the Board of Directors of the Synod, a board or commission of the Synod listed in Bylaws 3.2.2, 3.2.2.1, 3.2.3, and 3.2.3.1, a committee established by a prior convention, or a forum of a circuit.

(a) Overtures are recommendations in the form of proposed resolutions requesting action on the part of the convention.

(b) Overtures with reference to a case in which a member has been suspended and which is at present under formal proceedings (Bylaw 2.14.2 [i]), as well as overtures which, upon advice of legal counsel, may subject the Synod or the corporate officers of the Synod to civil action for libel or slander or which contain libel and slander, shall not be accepted for convention consideration.

(c) The President of the Synod shall determine if any overture contains information which is materially in error or contains any apparent misrepresentation of truth or of character. He shall not approve inclusion of any such overture in the *Convention Workbook* and shall refer any such overture to the district president who has ecclesiastical supervision over the entity submitting the overture for action. If any published overture or resolution is found to be materially in error or contains a misrepresentation of truth or of character, it shall be withdrawn from convention consideration and referred by the President of the Synod to the appropriate district president for action.

### Convention Committees

3.1.7 All reports and overtures accepted by the President in accordance with the foregoing paragraphs shall be referred by him to convention floor committees. Such floor committees shall be appointed by the President in consultation with the Council of Presidents and the Praesidium.

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 90 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 85 of 182

(a) Appointments will be made from among the voting delegates (Bylaw 3.1.2ff), advisory delegates (Bylaw 3.1.3ff), and advisory representatives (Bylaw 3.1.4ff).

(b) Ordained ministers, commissioned ministers, and laypersons shall be represented on all committees.

(c) The President shall notify floor committee members of their appointment and of the time and place of their first meeting no later than 16 weeks before the start of the convention.

(d) The committee rosters shall be published in an official periodical at least 10 weeks before the convention.

(e) If the President deems it advisable, he may convene floor committees prior to the opening of the convention.

(f) After due consideration of the matters referred to it, each floor committee will report its findings and recommendations to the convention.

(g) Each proposed resolution involving expenditures, prior to its consideration on the floor of the convention, shall be presented to the floor committee on financial matters, which in consultation with the accounting department shall attach to the recommended resolution accompanying information on estimated cost on an annual or project basis.

### Pre-Convention Publications

3.1.8 A *Convention Workbook* containing a convention manual, reports and overtures, the names and congregations of all voting delegates, and other information shall be published under the editorship of the Secretary subject to approval of the President.

(a) The President shall also decide which of the matters accepted for presentation to and consideration by the convention shall be published in the *Convention Workbook*.

(b) The content of the *Convention Workbook* shall be posted on the Synod's Website not later than 12 weeks prior to the opening date of the convention, with printed copies mailed to each delegate and alternate, all officers of the Synod, and members of boards, commissions, and councils.

(c) Any member of the Synod (congregation, ordained minister, commissioned minister) and any lay delegate to the convention wishing to express comments on reports and overtures in the *Convention Workbook* may submit them at least nine weeks prior to the convention to the Secretary of the Synod, who shall transmit them to the appropriate convention floor committee for consideration.

3.1.8.1 The content of the first issue of *Today's Business* containing the proposed resolutions of the convention floor committees and other convention business shall be posted on the Synod's Website, with printed copies mailed to all registered delegates of the convention and all officers of the Synod and members of boards, commissions, and councils.

(a) Responses to the proposed resolutions contained in the first issue of *Today's Business* shall be submitted to the chairman of the appropriate floor committee at least one week prior to the convention.

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 91 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 86 of 182

(b)  All floor committees shall meet at the convention site prior to the opening of the convention to review such responses and reconsider their proposed resolutions accordingly.

### Convention Order

3.1.9   The President shall be responsible for the overall organization and operations of the conventions of the Synod.

(a)  The Chief Administrative Officer or the Chief Administrative Officer's designee shall serve as the convention manager. He shall be responsible to the President for making arrangements for and directing the externals of the convention and other major assemblies of the Synod and may assist with planning and arranging for district conventions.

(1)  The convention manager shall arrange for lodging and may also provide for joint meals while the convention is in session.

(2)  Rates for lodging and joint meals shall be established and published.

(b)  When necessary, the President in consultation with the convention manager may appoint a local convention chairman and a local convention committee to assist the convention manager.

(c)  The President of the Synod shall indicate which convention committees must meet before the convention opens and shall notify the convention manager, who shall provide pre-convention housing and meeting facilities for them. All direct expenses incurred by these pre-convention meetings shall be borne by the Synod.

(d)  The primary sources of income which are to offset the operating costs of the conventions of the Synod are the district levy, registration fees, exhibit space rentals, and other miscellaneous receipts.

(1)  The amount of the district levy per confirmed member and the registration fees will be based on the convention budget submitted by the convention manager to the Board of Directors of The Lutheran Church—Missouri Synod for approval, who shall notify the district treasurers of the amount of their assessments by September 1 of the year preceding the convention of the Synod.

(2)  The district treasurer shall remit the amount of the district levy to the accounting department of the Synod not later than the month of March before the convention.

(3)  The accounting department of the Synod shall prescribe, install, and supervise convention accounting procedures, financial controls, and budgetary classifications for operating income and costs of the convention.

(e)  All travel and convention expenses of the Synod's Praesidium, Secretary, Chief Administrative Officer, Chief Financial Officer, Chief Mission Officer, Board of Directors, district presidents, Commission on Constitutional Matters, Commission on Handbook, Commission on Theology and Church Relations, and legal counsel are included in the operating cost of the convention and as such are included in the district levy.

(f)  All travel and convention expenses of the delegates and representatives shall be paid by the districts, the boards, or the commissions that are represented by the respective delegates or representatives.

(g)  Convention preachers, worship leaders, and essayists shall be appointed by the President prior to the convention.

(h)  The President shall arrange for suitable orientation and guidance for delegates. A convention manual shall be provided for this purpose in the *Convention Workbook*.

(i)  The convention shall organize at its first session on the basis of its registration and the report of the committee on credentials.

(1)  The President shall then make his presidential address and submit his official report.

(2)  The President shall, at the first session and during the course of succeeding sessions of the convention, announce the order of business for the day and following days.

(3)  The President shall conduct the sessions according to accepted parliamentary rules and make every effort to arrange the schedule of business so that the sessions do not exceed one week in duration.

(4)  Daily minutes shall be prepared by the Secretary's office for inclusion in *Today's Business*.

(j)  The date and site of Synod conventions shall be established in the following manner.

(1)  The President, in consultation with the convention manager, shall decide upon the dates of Synod conventions.

(2)  The Board of Directors of the Synod, in consultation with the convention manager, shall establish the sites of Synod conventions, giving preference to St. Louis when logistically and economically feasible.

(3)  A district may submit an invitation to host the convention. In such case, a host group shall determine the minimum requirements from the convention manager, agree to provide any needed local support, and submit a proposal to the Board of Directors of the Synod for evaluation and consideration.

(4)  The President may also propose a site to the Board of Directors of the Synod. Prior to submission, the district president for the area in which the site is located shall be made aware of the proposal and agree to provide any needed local support.

### Convention Communications

3.1.10    The Synod's communications department shall be responsible for telling the story of the conventions of the Synod to the public.

3.1.10.1    The official *Convention Proceedings* of each convention shall be sent by Concordia Publishing House to every congregation in the Synod.

(a)  All delegates (voting and advisory) and all members of boards and commissions of the Synod shall also be sent a copy.

(b)  The cost shall be paid by the Synod.

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 93 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 88 of 182

*Special Sessions*

3.1.11  The business of any special session of the Synod (Constitution Art. VIII B) is limited to the specific stated purpose(s) for the calling of the special session.

3.1.11.1  The President of the Synod, in consultation with the Council of Presidents and the Board of Directors of the Synod, shall establish the specific provisions for any special session of the Synod such as "Reports and Overtures," "Convention Committees," "Pre-convention Publications," Convention Order," and "Convention Communications," including any required implementation timeframes.

## 3.2  Elected or Appointed Officers, Boards, and Commissions

*Officers Elected by the Convention*

3.2.1  The elected officers of the Synod shall be the President, the First Vice-President, five regional vice-presidents, and the Secretary. The Board of Directors of The Lutheran Church—Missouri Synod is also an officer of the Synod, with some members elected by the Synod.

*Officers Appointed by the President and Board of Directors*

3.2.1.1  The appointed officers of the Synod shall be the Chief Financial Officer and the Chief Administrative Officer, appointed by the Board of Directors of the Synod, and the Chief Mission Officer, appointed by the President of the Synod.

*Boards*

3.2.2  The governing boards of the Synod whose members are elected and appointed as otherwise prescribed in these Bylaws shall be:

  1. Board of Directors of Concordia Publishing House

  2. Board of Directors of Concordia University System

  3. Board of Directors of Lutheran Church Extension Fund—Missouri Synod (Board for Church Extension)

  4. Board of Trustees—Concordia Plans (Board of Directors for Concordia Plan Services)

  5. Board of Trustees for the Lutheran Church—Missouri Synod Foundation

  6. A board of regents for each college, university, and seminary of the Synod

  7. Board of Governors of Concordia Historical Institute

3.2.2.1  The mission boards of the Synod whose members are elected as otherwise prescribed in these Bylaws shall be:

  1. Board for National Mission

  2. Board for International Mission

*Commissions*

3.2.3  The commissions of the Synod elected or appointed by the President shall be:

  1. Commission on Constitutional Matters

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 94 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 89 of 182

        2. Commission on Doctrinal Review

        3. Commission on Handbook

3.2.3.1    The commission of the Synod constituted in part by election and in part by appointment as provided in the Bylaws is the Commission on Theology and Church Relations

### Terms of Office

3.2.4    The term of office of all elected officers of the Synod (Bylaw 3.2.1) shall be three years; of the elected members of the Board of Directors and all other boards and commissions of the Synod six years; of all members of college and university boards of regents three years; and of all appointed members of boards, commissions, and standing committees three years, unless these Bylaws specifically provide otherwise.

(a) The President, First Vice-President, regional vice-presidents, Secretary, and members of all boards and commissions of the Synod who are elected by the Synod convention shall assume office on September 1 following the convention and shall be inducted into office on a date subsequent to September 1 following the convention. Members of college and university boards of regents elected by district conventions shall assume office upon the close of the convention at which they are elected.

(b) In the interim, the newly elected President shall meet with the reelected and newly elected vice-presidents to assess the state of the Synod, to plan for the communication and carrying out of the resolutions adopted at the convention, to assign areas of responsibility to the vice-presidents, and to gather names and obtain information helpful for making wise appointments; he shall meet with the chairman and the staff supporting the boards and commissions to discuss their convention reports, to assess with them the financial support they will need; and he shall meet with the financial and administrative officers to assess the financial status of the Synod and the estimate of the financial resources available for the coming year.

(c) All newly appointed members of all boards and commissions shall begin their service on September 1 following each regular meeting of the Synod in convention, or immediately upon their appointment thereafter.

(d) The newly elected members of the boards of directors and of other boards and commissions shall attend whatever meetings are held in the interim, without vote, to become acquainted with their new responsibilities and functions.

(e) The initial meeting of boards and commissions shall ordinarily be held in association with the induction and shall begin with a combined orientation program conducted under the direction of the President.

(f) Incumbents shall serve until their successors assume office. The existing boards of directors and other elected boards and commissions shall continue to function until the newly elected and reelected members of these boards and commissions assume office. They shall continue to carry out programs initiated prior to the electing convention.

Exhibit 2 to Defendants' Motion to Dismiss
Page 90 of 182

(g)  No appointments to boards or commissions of the Synod shall be made and no new programs shall be initiated by the outgoing President or the boards of directors or other boards or commissions during the interim.

(h)  Emergency action that demands immediate attention may be taken in consultation with and with the consent of the newly elected President.

3.2.4.1   The offices of President, the first Vice-President, regional vice-presidents, and Secretary shall be without limitation as to reelection.

(a)  If the President, First Vice-President, or Secretary are not reelected or do not stand for re-election, they shall continue to receive full salary for a period of six (6) months while rendering transitional service.

(b)  Such service and salary will cease at the time such person accepts another full-time position.

(c)  Before his successor assumes office, the outgoing President shall use the intervening time to settle the affairs of his administration and assist the newly elected President as requested to become acquainted with the responsibilities of the office.

3.2.4.2   All members of all boards and commissions of the Synod shall be ineligible for re-election or re-appointment to the same board or commission after serving a total of two successive six-year elected terms or three successive appointed or elected three-year terms, unless otherwise provided in the Bylaws.

(a)  Such persons may become eligible again for election or appointment to the same office, board, or commission after an interval of three or more years.

(b)  More than one-half of a term shall be regarded as a full term under limited tenure rules.

(c)  Any member of a board or commission who is ineligible for re-election or reappointment may be elected or appointed to another position.

### Vacancies

3.2.5   Unless otherwise specified in these Bylaws, vacancies that occur in elected positions on boards or commissions of the Synod shall be filled by the Board of Directors of the Synod.

(a)  The Secretary of the Synod shall be responsible for gathering a list of nominees from the board or commission where the vacancy occurs, the President of the Synod, the district boards of directors, and the slate of candidates from the previous convention of the Synod within 90 days of notification of the vacancy.

(b)  A list of at least three but no more than five candidates shall be submitted as soon as possible to the appropriate appointing body.

(c)  This list shall be determined by the Standing Committee on Nominations (Bylaw 3.12.3.5 [b]). The Synod's Director of Human Resources shall be consulted in developing the candidate list.

(d)  The appointing board may amend the list of candidates identified in (b) using the list of nominees identified in (a).

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 96 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 91 of 182

3.2.5.1    Vacancies in any appointed positions on boards or commissions of the Synod shall be filled by the appointing authority unless otherwise specified in these Bylaws. The board or commission may submit suggestions to the appointing authority.

## 3.3  Elected Officers of the Synod

*President*

3.3.1    The President of the Synod shall be a full-time executive and shall serve as a voting member of the Board of Directors of the Synod.

(a) He shall not be in charge of a congregation or hold a chair at any educational institution but may be called to a congregation in an assisting capacity, provided such services do not interfere with his official duties as President.

(b) He shall, with the approval of the Board of Directors of the Synod, be empowered to engage sufficient staff to carry out the duties of his office.

*Powers and Duties – Ecclesiastical*

3.3.1.1    As the chief ecclesiastical officer of the Synod, the President shall supervise the doctrine taught and practiced in the Synod, including all synodwide corporate entities.

3.3.1.1.1    The President of the Synod has ecclesiastical supervision of all officers of the Synod and its agencies, the individual districts of the Synod, and all district presidents.

(a) He shall see to it that the resolutions of the Synod are carried out. After the national convention has determined triennial emphases for the Synod, he shall, in consultation with the Council of Presidents, identify specific goals for the national office that will support and encourage ministry at the congregational level.

(b) In the districts of the Synod, he shall carry out his ecclesiastical duties through the district's president.

(c) He shall at regular intervals officially visit or cause to be visited all the educational institutions of the Synod to exercise supervision over the doctrine taught and practiced in those institutions.

(d) He shall meet regularly with the Council of Presidents and, as deemed necessary, with individual district presidents or small groups of district presidents to see to it that they are in accordance with Article II of the Constitution, adopted doctrinal statements of the Synod, and doctrinal resolutions of the Synod. He shall receive regular reports on this subject from the district presidents. In cases of doctrinal dissent, Bylaw section 1.8 shall be followed.

3.3.1.1.2    The President shall be the chief ecumenical officer of the Synod.

(a) He shall represent the Synod, in consultation with the appropriate board or commission, in official contacts with all partner churches by aiding, counseling, and advising them and by strengthening the relations with and among them.

(b) He shall develop protocol documents between the Synod and partner church bodies according to which the Synod and its agencies

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 97 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 92 of 182

will work together with its partner churches in foreign mission fields, which documents are also to be respected by agencies, auxiliaries, and recognized service organizations.

(c)  He or his representative shall represent the Synod in official contacts with other church bodies.

*Powers and Duties – Administrative*

3.3.1.2    The President shall oversee the activities of all officers, executives, and agencies of the Synod to see to it that they are acting in accordance with the Constitution, Bylaws, and resolutions of the Synod.

(a)  He shall at regular intervals officially visit or cause to be visited all the educational institutions of the Synod and thereby exercise oversight over their administration as it relates to adherence to the Constitution, Bylaws, and resolutions of the Synod.

(b)  He shall meet regularly with the Council of Presidents and, as deemed necessary, with individual district presidents or small groups of district presidents, to see to it that their administration is in accordance with the Constitution, Bylaws, and resolutions of the Synod. He shall receive regular reports on this subject from the district presidents.

(c)  He shall call up for review any action by an individual officer, executive, or agency that, in his view, may be in violation of the Constitution, Bylaws, and resolutions of the Synod.

(1)  If he deems appropriate, he shall request that such action be altered or reversed.

(2)  If the matter cannot be resolved, he shall refer it to the Synod's Board of Directors, the Commission on Constitutional Matters, and/or the Synod in convention as he deems appropriate to the issues and party/parties to the matter involved.

(3)  This provision in no way alters the President's constitutional duty to report to the Synod those who do not act in accordance with the Constitution and do not heed his admonition, as prescribed in Constitution Art. XI B 2.

(d)  He shall serve as leader of the Administrative Team (see Bylaw section 3.5) and shall report to the Board of Directors on the activities of the team.

*Powers and Duties – Ecclesiastical and Administrative*

3.3.1.3    The President shall have responsibilities and duties that are both ecclesiastical and administrative.

(a)  He shall report in person or through a vice-president or other officer of the Synod to all district conventions and to that end formulate the report that is to be made.

(b)  He shall make provisions for new district presidents and members of boards and commissions of the Synod to be acquainted with their duties and responsibilities.

(c)  He shall carry out his constitutional responsibility (Constitution Art. XI B 1–4) for the supervision of the doctrine and administration of all officers, executives, and agencies of the national office.

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 98 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 93 of 182

(d)  He shall personally or by way of a representative have the option to attend all meetings of all commissions (except the Commission on Constitutional Matters), the boards of all synodwide corporate entities, and the Board of Trustees—Concordia Plans (Board of Directors—Concordia Plan Services), including executive sessions (the President or his representative already serves as a voting member of the mission boards and serves as a voting member of the Board of Directors of the Synod and the Board of Directors of Concordia Publishing House).

  (1)  The President's representative shall normally be a member of the Administrative Team.

  (2)  The President shall, in reasonable time, receive notice of such meetings, the proposed agenda, and minutes thereof.

(e)  Prior to his appointment of an executive director of a mission office, he shall engage in consultation with the appropriate mission board to reach concurrence on a slate of candidates for the position.

(f)  He shall engage in consultation with the governing board of each synodwide corporate entity to reach mutual concurrence on a slate of candidates for appointment to the position of chief executive.

(g)  As ecclesiastical supervisor, he shall provide leadership to all officers, agencies, and national office staff of the Synod. Through the Chief Mission officer, he shall supervise the duties listed in Bylaws 3.4.3–3.4.3.8.

(h)  He shall consult with the vice-presidents, as elected advisors, whenever important and difficult Synod, inter-Lutheran, and partner church questions arise.

(i)  He shall establish the duties and responsibilities of the First Vice-President in consultation with the First Vice-President.

(j)  He shall make an official report at each meeting of the Synod in convention.

(k)  He shall approve the draft of the *Convention Proceedings* before it is published by the Secretary of the Synod.

(l)  He shall have the right to authorize the vice-presidents to perform the duties of his office and hold them responsible for their performance. Accountability, however, shall always remain with the President.

(m)  He shall exercise executive power when the affairs of the Synod demand it and when he has been expressly invested with such power by the Synod in convention.

(n)  He shall be authorized, in the event that the affairs of the Synod require the exercise of executive power for a purpose for which there is no specific directive of the Synod, to exercise such power after consultation with the vice-presidents, the Board of Directors of the Synod, or the Council of Presidents, whichever in his judgment is most appropriate. Any member of the Synod shall have the right to appeal such action to the Commission on Constitutional Matters and/or the Synod in convention, whichever is appropriate. The Lutheran Church Extension Fund—Missouri Synod is exempt from this bylaw.

(o)  He shall in the interval between meetings of the Synod in convention appoint special boards or committees whenever the

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 99 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 94 of 182

purpose for which the Synod has been organized requires or when conditions arising in the course of time demand such action.

*Inability to Serve*

3.3.1.4    When the President is unable to serve, the duties and responsibilities of the Office of President shall be assumed by the First Vice-President.

(a)  The Board of Directors of the Synod shall determine when the President is unable to serve in that capacity because of prolonged illness or disability.

(b)  The First Vice-President shall remain as the acting president until that board determines that such illness or disability has been removed.

### Vice-Presidents

3.3.2    The vice-presidents shall be elected advisors of the President and, upon the President's request or as provided by the Synod, shall assist him in discharging his responsibilities or represent him.

3.3.2.1    The vice-presidents shall, in the order in which they have been ranked, assume the presidency if the office is vacated or perform the duties of the President if he becomes incapacitated.

3.3.2.2    The First Vice-President shall be a full-time executive and a nonvoting member of the Board of Directors.

(a)  He shall be responsible to the President at all times for the performance of his duties.

(b)  He shall serve as the chairman of the Colloquy Committee for the Pastoral Ministry.

(c)  He shall serve as the chairman of the Colloquy Committee for Commissioned Ministry.

3.3.2.3    Five regional vice-presidents shall also be elected in the manner prescribed in these Bylaws. They shall serve the Synod in a part-time capacity and shall be responsible to the President for the performance of their duties.

3.3.2.4    A vacancy in the office of First Vice-President shall be filled by advancing the lower-ranking vice-presidents. The resulting vacancy or any vacancy in a regional vice-presidency shall be filled by appointment of the President in consultation with the district presidents within that region.

### Secretary

3.3.3    The Secretary shall perform all the customary duties of a corporate secretary and shall serve as a voting member and the secretary of the Board of Directors of the Synod.

3.3.3.1    The Secretary shall carry out all required responsibilities relating to conventions of the Synod.

(a)  He shall carry out responsibilities with reference to the nomination and election of the President and vice-presidents as detailed in Bylaw section 3.12.

(b)  He shall serve as consultant to the local convention committee.

(c)  He shall publish the names of the members of the Committee for Convention Nominations in an official periodical of the Synod as soon as possible after they have been elected.

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 100 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 95 of 182

(d) He shall carry out responsibilities with reference to the Committee for Convention Nominations as determined in the Bylaws.

(e) He shall provide the Committee on Elections with copies of a manual of suggested election procedures.

(f) He shall record the proceedings when the Synod meets in convention.

(g) He shall announce daily the time and the place of committee meetings at conventions.

(h) He shall officially notify individuals elected to office of their election.

(i) He shall edit the proceedings of the Synod in convention and arrange for its distribution in harmony with the provisions of the Bylaws.

3.3.3.2    The Secretary shall perform such other work as pertains to his office or such other work as the Synod in convention, the President, or the Board of Directors of the Synod may assign to him.

(a) He shall serve as a voting member and secretary of the Commission on Constitutional Matters.

(b) He shall administer the Synod's dispute resolution and expulsion processes.

(c) He shall serve as a voting member of the Board of Governors of Concordia Historical Institute.

(d) He shall supervise the maintenance of the official roster of member congregations and ordained and commissioned ministers on the basis of information supplied by the district presidents.

(e) He shall supervise the process for obtaining annual statistical information from all member congregations of the Synod.

(f) He shall serve as editor of *The Lutheran Annual*.

(g) He shall keep a file of all governing instruments of all agencies of the Synod.

3.3.3.3    In the event of the death, resignation, or permanent incapacity of the Secretary, the Board of Directors of the Synod shall appoint a successor for the unexpired term.

### Board of Directors

3.3.4    The Board of Directors of the Synod is the legal representative of the Synod and the custodian of all the property of the Synod. It shall be accountable to the Synod in convention for the discharge of its duties.

3.3.4.1    The Board of Directors shall consist of no more than 16 members, 15 of them voting, as follows:

1. One layperson elected from each of the five designated geographical regions

2. Two ministers of religion—ordained elected at-large by the Synod in convention

3. One minister of religion—commissioned elected at-large by the Synod in convention

4. Two laypersons elected at-large by the Synod in convention

115

Exhibit 2 to Defendants' Motion to Dismiss
Page 96 of 182

5. Up to three at-large laypersons appointed by the elected members of the Board of Directors to obtain needed additional skill sets (legal, finance, investment, administration, etc.)

6. The President and the Secretary of the Synod

With the exception of the President and the Secretary of the Synod, no more than one voting member from each category (ordained, commissioned, and lay) and no more than two voting members total may be elected from any one district. The First Vice-President of the Synod shall be the nonvoting member.

3.3.4.2　The Board of Directors shall have the powers and duties that have been accorded to it by the Articles of Incorporation, Constitution, Bylaws, and resolutions of the Synod, and the laws of the State of Missouri.

3.3.4.3　The Board of Directors shall provide for the review and coordination of the policies and directives of the Synod authorized by the Constitution, Bylaws, and resolutions of the Synod, evaluating plans and policies and communicating to the appropriate boards and commissions suggestions for improvement, and, in the case of mission boards and commissions, require changes for compliance with Board of Directors' policies within the sphere of its responsibility.

3.3.4.4　The Board of Directors shall be responsible for the general management of the business and legal affairs of the Synod. It shall receive copies of all legal opinions or written counsel received by mission boards, commissions, and councils of the Synod. It shall be authorized to take on behalf of the Synod any action related to such business and legal affairs which has not been expressly delegated by the Constitution, Bylaws, and resolutions of the Synod to other officers or agencies of the Synod, and as to those shall have general oversight responsibility.

(a) The board shall elect its own chair and vice-chair and such operating officers as may be necessary.

(b) The board shall name those officers who have authority to sign official documents on behalf of the Synod.

(c) Members of the Administrative Team shall assist the Board of Directors in carrying out its responsibilities by completing assignments made to them by the board.

(d) The board may also designate a member of the Administrative Team other than the President or First Vice-President to function as its staff person to carry out duties and responsibilities not assigned to other team members.

(e) A person salaried by the Synod or an agency of the Synod (other than one serving by virtue of his office) may not be a voting member of the board.

3.3.4.5　The Board of Directors shall allocate available funds to the boards, commissions, councils, offices, and departments of corporate Synod and hold them responsible therefor.

(a) To the extent of its responsibilities relative to the general management and supervision of the business and legal affairs of the Synod:

Exhibit 2 to Defendants' Motion to Dismiss
Page 97 of 182

(1)  It shall receive such reports as it requests on the operations and policies of the mission boards, commissions, offices, and councils.

(2)  It shall have the right to request review of any action or policy of a mission board, commission, office, or council which primarily relates to business, property, and/or legal matters and, after consultation with the agency involved and when deemed necessary, require modification or revocation thereof, except opinions of the Commission on Constitutional Matters.

(b)  Corporate Synod's budgeting process and the budget itself shall be designed to support the worldwide mission and ministry of the Synod.

(1)  The board shall establish policies and guidelines relating to the preparation of the annual budget.

(2)  The board shall adopt the annual budget.

(c)  The Board of Directors shall be responsible for providing operating and capital funds to carry out the work of the Synod.

(d)  Regarding the Synod's seminaries, the board shall, together with national fundraising operations, establish policy guidelines for the distribution of grants of the Synod (restricted and unrestricted) and efforts for securing additional financial support from other sources.

(e)  Regarding the Synod's colleges, universities, and seminaries, the board shall approve capital projects in relation to campus property management agreements and institutional master plans, and shall establish and monitor criteria for determining institutional viability, fiscal and otherwise.

3.3.4.6    The Board of Directors shall exercise general oversight over the operations and activities of the synodwide corporate entities, the Concordia Plans, and Concordia Plan Services as required of it in the Constitution of the Synod and specified in these Bylaws.

(a)  It shall assure itself that their accounting, budgeting, and financial policies comply with generally accepted accounting standards.

(b)  It shall assure itself that audits are performed by internal auditors or independent certified public accountants for the Synod's

(1)  synodwide corporate entities;

(2)  colleges, universities, and seminaries;

(3)  districts;

(4)  Concordia Plan Services; and

(5)  the Concordia Plans.

(c)  It shall be furnished with copies of these and any interim financial reports it requests.

(d)  The board shall have the right to designate a representative (by default, the Chief Financial Officer) to attend, as a non-voting member, all meetings of the boards of The Lutheran Church—Missouri Synod Foundation, The Lutheran Church Extension Fund, Concordia Publishing House, and the Board of Trustees—Concordia Plans (Board of Directors—Concordia Plan Services), including executive sessions. The board's representative shall serve on the investment committee of the Concordia Plans and Concordia Plan Services. The board and its

Exhibit 2 to Defendants' Motion to Dismiss
Page 98 of 182

representative shall, in reasonable time, receive notice of such meetings, the proposed agenda, and minutes thereof.

(e) The board shall have the right to appoint up to two persons as nonvoting advisory members of the Concordia University System board of directors.

3.3.4.7   The Board of Directors shall serve as the custodian of all the property of the Synod as defined in Bylaw 1.2.1 (r). Except as otherwise provided in these Bylaws, it shall have the authority and responsibility with respect to the property of the Synod as is generally vested in and imposed upon a board of directors of a corporation.

(a) It shall, however, delegate to district boards of directors the authority to buy, sell, and encumber real and personal property in the ordinary course of performing the functions which the district carries on for the Synod in accord with general policies (which shall be applicable to all districts) established from time to time by itself or the Synod in convention.

(b) It may, however, delegate to any agency of the Synod powers and duties with respect to property of the Synod for which such agency of the Synod has direct supervisory responsibility.

(c) Such delegation shall be in writing and shall be subject to change at any time by the Synod's Board of Directors provided that reasonable deliberations, as determined by the Board of Directors, take place with such agency prior to the change.

3.3.4.8   The Board of Directors shall be empowered to authorize the Chief Financial Officer of the Synod to borrow capital funds after the board has determined the amounts and the conditions under which these capital funds shall be borrowed, for capital-fund outlay, for site acquisition, or for construction projects that are authorized by conventions of the Synod.

(a) It and the responsible officers of the Synod are empowered to do all things necessary to effect such capital-fund borrowings if and when required, including the pledging of real and other property belonging to the Synod in order to secure loans to obtain the necessary funds.

(b) The borrowed capital funds shall not be used for any operating expenditures and shall be subject to provision for amortization.

3.3.4.9   To carry out the business and legal affairs of the Synod, the Board of Directors may appoint other officers subject to the approval of the President. The Board of Directors may also appoint staff as required.

3.3.4.10  To carry out its obligations under Article XI E of the Constitution and these Bylaws, the Board of Directors may obtain from any agency of the Synod all records and other information (a) relating to property of the Synod, and (b) pertaining to matters for which the Board of Directors has oversight responsibility under the Constitution and other provisions of these Bylaws, including financial records, records of operations, and information regarding legal affairs of such agency of the Synod. Notwithstanding the foregoing, an agency of the Synod shall not be required to deliver: (i) records or information that an agency of the Synod is legally prohibited from disclosing under applicable federal or state law; and (ii) personally identifiable information pertaining to employees, donors, students, beneficiaries, investors, borrowers, and participating employers and plan

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 104 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 99 of 182

members of Concordia Plan Services. If any of the records or information requested by the Board of Directors are subject to a confidentiality agreement, the Board of Directors shall maintain such confidentiality. The goal of this bylaw is to permit delivery of records and information to the Board of Directors to the greatest extent possible, subject to clauses (i) and (ii) above. All agencies of the Synod shall cooperate fully with the Board of Directors when responding to requests to provide records and information.

## 3.4  Appointed Officers of the Synod

### *Chief Financial Officer*

3.4.1    The Chief Financial Officer shall administer the financial affairs of the Synod, excluding the synodwide corporate entities, the districts, the Concordia Plans, and Concordia Plan Services.

3.4.1.1    The Chief Financial Officer shall be an officer of the Synod and a layperson appointed by the Board of Directors of the Synod in consultation with and with the concurrence of the President of the Synod.

3.4.1.2    The Chief Financial Officer shall serve a three-year renewable term of office during which he/she shall serve at the direction of the Board of Directors.

(a)  He/she may serve an unlimited number of terms.

(b)  Each reappointment by the Board of Directors shall be after consultation with and with the concurrence of the President of the Synod.

3.4.1.3    The Chief Financial Officer also serves as the Treasurer of the corporation and shall

(a)  carry out the duties of the office in accordance with the rules and regulations adopted by the Synod and as directed by the Board of Directors of the Synod;

(b)  receive and disburse the moneys of corporate Synod and keep accurate account of them under the instruction of the Board of Directors of the Synod;

(c)  act as the depositary for all funds at the hands of corporate Synod's boards (excluding the Concordia Plans and Concordia Plan Services), commissions, officers, and employees who by virtue of their office act as custodians or trustees of such funds;

(d)  keep informed about financial affairs of the synodwide corporate entities;

(e)  serve, if the board's representation is not otherwise designated, as a nonvoting member of the governing boards of The Lutheran Church—Missouri Synod Foundation, The Lutheran Church Extension Fund—Missouri Synod, the Concordia Plans, Concordia Plan Services, and Concordia Publishing House, and on the investment committee of the Concordia Plans and Concordia Plan Services;

(f)  keep on file a correct list of all devises and bequests that directly or indirectly have been given to corporate Synod. Legacies and bequests made to other agencies of the Synod shall be reported annually to the Chief Financial Officer as part of the audit process;

Exhibit 2 to Defendants' Motion to Dismiss
Page 100 of 182

(g)  report regularly to the Synod through an official periodical and at every meeting of the Synod in convention on the performance of his/her office;

(h)  be authorized to borrow in the name of the Synod, provided its Board of Directors has first determined the amounts and conditions under which such moneys shall be borrowed;

(1) instruments relative to such borrowing shall require two signatures:

(2) one shall be the Chief Financial Officer and the other shall be another officer of the Synod designated by the Board of Directors of the Synod;

(i)  at any time submit to an audit of official books and accounts when so ordered by the Synod or its Board of Directors; and

(j)  perform such other work as the Synod in convention, the President, or the Board of Directors of the Synod may assign.

3.4.1.4    The Chief Financial Officer shall work together closely with the Chief Administrative Officer and the Chief Mission Officer in carrying out the programmatic, administrative, and financial functions of the national Synod.

### Chief Administrative Officer

3.4.2    The Chief Administrative Officer shall assist the Board of Directors of the Synod in carrying out the responsibilities given to it by the Constitution, Bylaws, and resolutions of the Synod.

3.4.2.1    The Chief Administrative Officer shall be an officer of the Synod and shall be appointed by the Board of Directors of the Synod in consultation and mutual concurrence with the President of the Synod.

3.4.2.2    The Chief Administrative Officer shall serve a three-year renewable term of office during which he/she shall serve at the direction of the Board of Directors.

(a)  He/she may serve an unlimited number of terms.

(b)  Each reappointment shall be with the mutual concurrence of the President and the Board of Directors of the Synod.

3.4.2.3    The Chief Administrative Officer shall work together closely with the Chief Financial Officer and the Chief Mission Officer in carrying out the programmatic, administrative, and financial functions of the national Synod.

### Chief Mission Officer

3.4.3    The Chief Mission Officer shall be responsible to the President of the Synod for the mission, ministry, and any programmatic and coordinative functions which are implemented according to the policies adopted by the Board for National Mission and the Board for International Mission.

3.4.3.1    The Chief Mission Officer shall provide staff and other resource(s) to the Board for National Mission and the Board for International Mission.

3.4.3.2    The Chief Mission Officer shall be an officer of the Synod and shall be appointed and subsequently reappointed by the President of the Synod following the President's consultation with the Board for National Mission and the Board for International Mission and with the mutual concurrence

120

Exhibit 2 to Defendants' Motion to Dismiss
Page 101 of 182

of the Board of Directors. The Chief Mission Officer may serve an unlimited number of terms.

3.4.3.3    The Chief Mission Officer shall be a minister of religion—ordained and shall serve a three-year renewable term of office and shall serve at the direction of the President of the Synod.

3.4.3.4    The Chief Mission Officer shall meet regularly with the executive directors of the commissions (if any) and the chief executives of synodwide corporate entities as the liaison for and at the direction of the President of the Synod. He shall work together closely with the Chief Financial Officer and the Chief Administrative Officer in carrying out the programmatic, administrative, and financial functions of the national Synod.

3.4.3.5    The Chief Mission Officer shall, at the direction of the President, supervise the work of the Office of National Mission and the Office of International Mission.

3.4.3.6    The Chief Mission Officer shall, on behalf of the President, supervise fundraising activity of the national office according to policies established by the Board of Directors of the Synod.

3.4.3.7    The Chief Mission Officer shall, on behalf of the President, supervise the content of communications, public relations, and news and information provided by the Synod, including the official periodicals of the Synod, *The Lutheran Witness* and *Reporter*.

3.4.3.8    The Chief Mission Officer shall, on behalf of the President, provide leadership, coordination, and oversight for pre-seminary education programs, seminary education, and post-seminary continuing education, and by providing advocacy for pastoral education and health within the Synod. He shall serve as the chairman of the Pastoral Formation Committee.

## 3.5  National Office Teams

### Administrative Team

3.5.1    The Administrative Team shall assist the President and the Board of Directors of the Synod in carrying out their respective responsibilities for oversight, supervision, management, and coordination as set forth in the Constitution, Bylaws, and resolutions of the Synod and according to the triennial emphases adopted by conventions of the Synod.

3.5.1.1    The Administrative Team shall consist of the President, the First Vice-President, the Secretary, the Chief Financial Officer, the Chief Mission Officer, and the Chief Administrative Officer and shall be under the leadership of the President.

### Operations Team

3.5.2    The Operations Team shall assist the President and the Board of Directors of the Synod in carrying out their respective responsibilities for oversight, supervision, management, and coordination of the operations of the national office and according to the triennial emphases adopted by conventions of the Synod.

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 107 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 102 of 182

3.5.2.1    The Operations Team shall consist of the Chief Mission Officer, the Chief Administrative Officer, and the Chief Financial Officer and shall be convened by the Chief Administrative Officer.

## 3.6  Synodwide Corporate Entities

### *General Principles*

3.6.1    The Synod in convention has authorized the creation of corporate and legal entities that are to be servants of and to the Synod and its members. Their purpose, function, and assigned areas of responsibility are set forth in these Bylaws. They are referred to in the Bylaws as "synodwide corporate entities" and are as follows:

1. Concordia Historical Institute
2. Concordia Publishing House
3. The Lutheran Church Extension Fund—Missouri Synod
4. The Lutheran Church—Missouri Synod Foundation
5. Concordia University System

3.6.1.1    Formation of a synodwide corporate entity shall require the approval of the Synod in convention or the Board of Directors of the Synod.

(a)  At least six months prior to such approval an announcement thereof shall be given in an official publication of the Synod together with a detailed explanation of the problems or factors which make the formation of the proposed synodwide corporate entity advisable or necessary.

(b)  The announcement shall include an invitation for members of the Synod to submit comments thereon to the Board of Directors of the Synod.

3.6.1.2    The members, if any, of a synodwide corporate entity shall be as set forth in these Bylaws.

3.6.1.3    Each synodwide corporate entity shall have a governing board.

(a)  A minimum of one-third of the voting members of every governing board shall be elected by the Synod in convention as described in these Bylaws.

(b)  The names of the individual members of each of these governing boards shall be reported annually in an official periodical of the Synod.

3.6.1.4    Each governing board of a synodwide corporate entity shall elect its own chair, vice-chair, and secretary and such operating officers as may be necessary.

3.6.1.5    Synodwide corporate entities may create chief executive positions (who may be designated as an officer of the corporation) pursuant to Bylaw 1.2.1, and fill them in accordance with the Bylaws of the Synod and the human resources policies adopted pursuant to Bylaw 1.5.5.

(a)  The chief executive shall serve at the pleasure of the governing board.

(1)  The slate of candidates for the initial appointment of the chief executive shall be selected by the governing board in consultation with and with the mutual concurrence of the President of the Synod.

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 108 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 103 of 182

(2)  In the event of a vacancy, the appropriate governing board and the President of the Synod shall act expeditiously to fill the vacancy. This governing board shall present its list of candidates to the President.

(3)  The governing board shall conduct an annual review of its chief executive and, before the expiration of five years, conduct a comprehensive review.

(4)  At the conclusion of each five-year period, the appointment shall terminate unless the governing board takes specific action to continue the person in the office, each subsequent term not to exceed five years.

(b)  Any interim appointment of a chief executive shall follow a process similar to the initial appointment of a chief executive.

(1)  Such interim appointees must be approved by the President of the Synod, and may not serve more than 18 months without the concurrence of the President of the Synod.

(2)  Such interim appointees shall be ineligible to serve on a permanent basis without the concurrence of the President of the Synod.

(c)  The chief executives shall normally attend all meetings of their board except when their own positions are being considered.

3.6.1.6    Each governing board of a synodwide corporate entity shall have such powers and duties as have been assigned to it by the Constitution and Bylaws of the Synod, the resolutions of the Synod in convention, and the governing instruments of the synodwide corporate entity. Within such limitations it shall operate in accord with federal and state laws.

(a)  It is vested with the supervision of the business, financial, property, personnel, and legal affairs of the Synod assigned to that synodwide corporate entity.

(b)  It shall develop policies governing its operations.

(c)  It shall have an independent audit.

(d)  It shall provide for insurance and fidelity bonding.

(e)  It shall use common policies with other synodwide corporate entities whenever possible.

(f)  It shall establish and monitor long- and short-range plans and operating and capital budgets to carry out such plans in accord with the objectives of the Synod and its convention resolutions.

(g)  It shall reply to inquiries and suggestions from the Synod's Board of Directors relative to its operations and activities. If the governing board and the Synod's Board of Directors do not reach an accord on such suggestions, the matter may be brought by the Synod's Board of Directors to the Synod in convention for a decision.

(h)  It shall be accountable to the Synod in convention for the discharge of its assigned duties and shall submit a report relative thereto for inclusion in the *Convention Workbook*.

(i)  It shall be accountable to the President of the Synod for doctrinal faithfulness.

123

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 109 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 104 of 182

(j)  It shall respond to any questions asked by the President of the Synod as he carries out his constitutional duties.

3.6.1.7  The governing instruments of a synodwide corporate entity shall be in conformity with the Synod's Constitution, Bylaws, and applicable resolutions of the Synod in convention.

(a)  Before becoming effective, such governing instruments, and any amendments thereto, shall be reviewed and approved by the Board of Directors of the Synod and the Commission on Constitutional Matters.

(b)  A negative decision by either of these two bodies may be appealed to the Synod in convention, which retains the right on its own initiative to require amendments to such governing instruments.

(c)  A copy of the current governing instruments of each synodwide corporate entity shall be filed with the Secretary of the Synod.

(d)  A copy of its current governing instrument shall be made available by a synodwide corporate entity to any member of the Synod upon request.

3.6.1.8  Each synodwide corporate entity shall provide in its governing instruments

(a)  a provision that every member of the governing board shall be a member of a congregation that is a member of the Synod;

(b)  a provision that it is a component part of the Synod, is subject to the Constitution, Bylaws, and resolutions of the Synod, and its governing instruments are subordinate to the Constitution and Bylaws of the Synod;

(c)  a provision that any amendments to a provision of its governing instruments which relate to its objects and purposes, the designating of its members, or the procedure for amending its governing instruments shall require a two-thirds affirmative vote of its members, if any, who are appointed by the Board of Directors of the Synod; and

(d)  a provision that upon dissolution of a synodwide corporate entity, its remaining assets shall be transferred to the Synod. Any amendment to this provision shall require the affirmative vote of the Synod in convention.

3.6.1.9  Dissolution of a synodwide corporate entity shall require the approval of the Synod in convention or the Board of Directors of the Synod.

### Concordia Historical Institute

3.6.2  Concordia Historical Institute, a corporation, shall be the official Department of Archives and History of the Synod.

3.6.2.1  Membership in the Concordia Historical Institute is defined in the articles of incorporation and bylaws of the institute.

3.6.2.1.1  The Board of Governors of Concordia Historical Institute shall have nine members:

1.  The Secretary of the Synod

2.  Five members who shall be chosen by the membership of the institute

3.  Three members who are elected by the Synod in convention, two of whom shall be ordained ministers

124

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 110 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 105 of 182

3.6.2.1.2   Members of the Board of Governors of Concordia Historical Institute may not serve more than two successive six-year terms, except the Secretary of the Synod who may serve unlimited terms.

3.6.2.2   Concordia Historical Institute shall promote interest in the history of Lutheranism in America, particularly of The Lutheran Church—Missouri Synod.

3.6.2.2.1   Concordia Historical Institute shall serve as an advisory and correlating agency for historical interests within the Synod and shall collect and preserve articles of historical value.

(a)   Congregations permanently disbanding (not merging) are urged to transfer all of their records, such as registers of official acts, minutes, and other historical materials, to the institute.

(b)   All records created by officers of the Synod, boards, commissions, committees, task forces, and other agencies owned or controlled by the Synod are the property of the Synod and may be disposed of only under procedures and guidelines established by the Department of Archives and History and supervised by it.

(c)   The President, vice-presidents, Secretary, and Chief Financial Officer; the Board of Directors of The Lutheran Church—Missouri Synod and its officers and staff; the Council of Presidents; and all other boards, commissions, committees, and other agencies of the Synod shall transfer correspondence, records, minutes, reports, and other files from their respective offices to the archives when they are no longer of current operational value.

(d)   The records of retiring officers (President, First Vice-President, and Secretary) not needed by their successors shall be transferred to the Department of Archives and History within six months after they leave office. Such transfer shall be done under the auspices of the Department of Archives and History's staff and in consultation with the successor in the office.

(e)   Such minutes, files, records, and reports shall ordinarily be transferred to the archives at the expiration of not more than 15 years after their creation unless such records are still currently being used by the officer or board. If the latter is the case, this shall be reported to the archives.

(f)   Temporary committees, task forces, and other entities or agencies serving the Synod shall immediately on their dissolution transfer to the archives all of their files containing the correspondence, records, minutes, and reports relating to their work.

(g)   Institutions, organizations, and agencies related to the Synod or to any of its structure or work that are disbanding permanently are urged to transfer their files, correspondence, records, reports, and other historical materials to the archives.

(h)   All auxiliary agencies and interchurch councils and structures related to the Synod or in which the Synod holds membership shall file copies of all official documents, including articles of incorporation, constitutions, bylaws, convention proceedings, official publications, minutes, and other materials, with the archives on a regular basis.

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 111 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 106 of 182

3.6.2.2.2   Concordia Historical Institute shall stimulate historical research, publish its results, and may, at its discretion, serve as the official depository for such other groups as designate the institute as their depository.

3.6.2.2.3   Concordia Historical Institute shall provide guidelines for the establishment of an archive-historical unit by each district, seminary, college, and university and other agencies of the Synod.

> (a)  Copies of official documents of the districts such as articles of incorporation, constitutions, bylaws, convention proceedings, and other official publications shall be filed in the archives of the Synod. Each district shall also establish the office of "Archivist-Historian" and pattern the responsibilities of the office after those of the archives of the Synod and encourage this officer to work in close relationship with the archives of the Synod.

> (b)  Colleges, universities, and seminaries of the Synod shall establish departments of archives and history for the preservation of their records and shall transfer bylaws, handbooks, minutes, and official publications to the archives of the Synod. The job description of the college or seminary archivist shall be patterned after that of the archivist of the Synod. Such archivist shall also be directed to work in close cooperation with the archives of the Synod.

### *Concordia Publishing House*

3.6.3   The purpose of Concordia Publishing House is to proclaim the Gospel of our Lord Jesus Christ. It shall serve the Synod and its agencies by developing, producing, marketing, and distributing products for use by members of the Synod, other Christians, and the public in general.

> (a)  It shall supply publishing and distribution services for the agencies of the Synod as required, unless this is deemed detrimental to the agency involved.

> (b)  It shall consult with representatives of other boards when materials are produced in concert with them.

> (c)  Unless otherwise instructed by the Synod, the Board of Directors of Concordia Publishing House shall determine what is to be published by the corporation.

> (d)  All materials of a religious or theological nature shall be approved through the Synod's prescribed procedure for doctrinal review before publication.

> (e)  Surplus funds, when not needed in the operation of the publishing house and as determined by the Concordia Publishing House Board of Directors, may be ordered paid to The Lutheran Church—Missouri Synod by the Concordia Publishing House Board of Directors at any regular or special meeting.

3.6.3.1   Concordia Publishing House shall be maintained and controlled by the Synod as a corporate entity organized under the laws of the State of Missouri and shall be operated by a board of directors consisting of:

> 1.  One ordained minister elected by the Synod in convention

> 2.  One commissioned minister elected by the Synod in convention

> 3.  Seven laypersons elected by the Synod in convention

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 112 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 107 of 182

    4. The President of the Synod or his representative from the clergy roster, who will serve as a voting member of the board

    5. The representative designated by the Board of Directors of the Synod, who will be a nonvoting member

3.6.3.2    Board composition needs to reflect commitment to the mission of the church. Directors should have training and experience in diverse disciplines necessary for the operation of a publishing house, including product development and business management.

### *The Lutheran Church Extension Fund—Missouri Synod*

3.6.4    The Lutheran Church Extension Fund—Missouri Synod, as established on June 15, 1978, as a corporate entity under the laws of the State of Missouri, is operated by its members and Board of Directors, in accordance with its Articles of Incorporation and corporate Bylaws, to further the objectives and duties of the church extension fund within the Synod. It is formed to provide financial resources and related services for ministry, witness, and outreach of The Lutheran Church—Missouri Synod.

    (a)  Any amendment to the Articles of Incorporation and the corporate Bylaws of the Lutheran Church Extension Fund—Missouri Synod as heretofore adopted shall be made by a two-thirds vote of the members of the Lutheran Church Extension Fund—Missouri Synod as set forth in its Articles of Incorporation and Bylaws.

    (b)  Amendments shall be reported to the next convention of the Synod.

3.6.4.1    The assets and liabilities of the Lutheran Church Extension Fund—Missouri Synod are separate and distinct from those of the Synod and its assets cannot be used to satisfy the liabilities and obligations of the Synod.

3.6.4.1.1    In the event the Lutheran Church Extension Fund—Missouri Synod is ever dissolved, its net assets shall be distributed to The Lutheran Church—Missouri Synod or its successor.

3.6.4.2    As established by its bylaws, the members of the Lutheran Church Extension Fund—Missouri Synod are divided into two classes.

3.6.4.2.1    One class of members consists of the President of the Synod or his representative, the Chief Financial Officer of the Synod, and such additional members appointed by the Board of Directors of The Lutheran Church—Missouri Synod as shall equal one for each ten members of the other class of members.

3.6.4.2.2    The second class of members consists of representatives of participating districts, the number determined according to the following formula, with any fraction rounded to the nearest whole number:

$$\frac{\text{Baptized Members}}{50,000} + \frac{\text{Investments}}{\$10,000,000} + \frac{\text{Investments}}{\text{Baptized Members}} \times 0.15 +$$

$$+ \frac{\text{Fund Balance}}{\$100,000} \times 0.10 = \text{Number of Members per District}$$

3.6.4.3    The board of directors for the Lutheran Church Extension Fund—Missouri Synod shall consist of such number of directors as are specified in the bylaws of The Lutheran Church Extension Fund—Missouri Synod. All

Exhibit 2 to Defendants' Motion to Dismiss
Page 108 of 182

voting members of the board of directors of the Lutheran Church Extension Fund—Missouri Synod shall serve a maximum of four three-year terms.

> 1. Three directors shall be elected by the Synod in convention and shall include one ordained or commissioned minister and two laypersons.
>
> 2. The remaining voting directors shall be chosen by the members.
>
> 3. The Chief Financial Officer of the Synod shall also be a nonvoting member of the board.

3.6.4.3.1 Directors elected by the members of the Lutheran Church Extension Fund—Missouri Synod may be removed by a two-thirds (2/3) majority vote of the Board of Directors of the Lutheran Church Extension Fund—Missouri Synod at any time, for cause. A vacancy occurring in the position of a director elected by the members of the Lutheran Church Extension Fund—Missouri Synod shall be filled by the members of the Lutheran Church Extension Fund—Missouri Synod at any regular or special meeting, in accordance with its bylaws.

3.6.4.3.2 All directors shall have an understanding of the church extension program and/or demonstrate an expertise in fields or areas closely related to church extension activities, such as knowledge of real estate, management, and financial planning.

3.6.4.4 The Lutheran Church Extension Fund—Missouri Synod shall raise funds primarily through the issuance of corporate notes and other debt instruments.

3.6.4.4.1 The assets of the Lutheran Church Extension Fund—Missouri Synod shall be used exclusively to provide financing and services for the acquisition of sites, for the construction of facilities, for the purchase of buildings and equipment, for operating expenses, for professional church worker education, for the residential housing needs of professional church workers, for promoting strategic ministry planning and assisting in capital campaigns; and for other purposes approved by its governing board consistent with the ministry and mission of the Synod under policies approved by the Board of Directors of the Synod.

3.6.4.4.2 The assets of the Lutheran Church Extension Fund—Missouri Synod shall also be used exclusively to provide financing for its own operations and for distribution of operating results to its member districts, congregations, and corporate Synod, as determined by its governing board.

### *The Lutheran Church—Missouri Synod Foundation*

3.6.5 The Lutheran Church—Missouri Synod Foundation shall provide investment management services for legacies, bequests, devises, endowments, annuity gifts, and other trust funds of the Synod and its agencies as established by the Foundation Bylaws.

3.6.5.1 The Lutheran Church—Missouri Synod Foundation shall also provide such services to congregations, auxiliaries, recognized service organizations, and others under policies approved by its board of trustees.

3.6.5.1.1 The Lutheran Church—Missouri Synod Foundation shall be maintained and controlled by the Synod as a corporate entity organized under the laws of the State of Missouri and shall be operated by a board of trustees responsible to the Synod, in accordance with the provisions of its Articles of Incorporation and corporate Bylaws. Any amendments to the Articles of

Exhibit 2 to Defendants' Motion to Dismiss
Page 109 of 182

Incorporation shall be subject to approval by the members of the Foundation.

3.6.5.1.2   Since the Lutheran Church—Missouri Synod Foundation serves the entire Synod, no new foundations shall be established by its agencies without prior approval of the Board of Directors of The Lutheran Church—Missouri Synod.

3.6.5.2   The voting members of the Lutheran Church—Missouri Synod Foundation shall consist of two groups, one consisting of individuals appointed by the Board of Directors of The Lutheran Church—Missouri Synod and the other consisting of that number of individuals representing agencies or auxiliaries of The Lutheran Church—Missouri Synod as established by the Foundation Bylaws.

3.6.5.2.1   The Board of Trustees of the Lutheran Church—Missouri Synod Foundation shall consist of:

1. Two members elected by the Synod in convention (one ordained minister and one layperson)

2. The chairman of the Board for National Mission or his representative from that board

3. At least seven members appointed by the members, as provided in the Bylaws of the Foundation

4. The President of the Synod or his representative

5. The representative designated by the Board of Directors of the Synod as a nonvoting member

The members of the Board of Trustees of the Lutheran Church—Missouri Synod Foundation appointed by the voting members of the Lutheran Church—Missouri Synod Foundation shall serve a maximum of four successive three-year terms.

3.6.5.2.2   Trustees elected by the members of the Lutheran Church—Missouri Synod Foundation may be removed by a two-thirds majority vote of the Board of Trustees of the Lutheran Church—Missouri Synod Foundation at any time, for cause. Trustees elected by The Lutheran Church—Missouri Synod in convention may be removed by the Board of Directors of The Lutheran Church—Missouri Synod in accordance with the Bylaws of the Synod. A vacancy occurring in the position of a trustee elected by the members of the Lutheran Church—Missouri Synod Foundation shall be filled by the Members of the Lutheran Church—Missouri Synod Foundation at any regular or special meeting, in accordance with its bylaws. A vacancy occurring in the position of a trustee elected by The Lutheran Church—Missouri Synod in convention shall be filled by the Board of Directors of The Lutheran Church—Missouri Synod, in accordance with the Bylaws of the Synod.

3.6.5.2.3   The Foundation Board of Trustees shall elect a president/chief executive.

(a)   The board shall assemble the slate of candidates for this position in consultation and mutual concurrence with the President of the Synod.

(b)   The chief executive of the Foundation shall give regular reports to the Board of Directors of the Synod.

3.6.5.3   The Foundation shall devise synodwide programs of deferred giving, including legacies, bequests, devises, endowments, foundations, and other

129

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 115 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 110 of 182

trusts for the advancement, promotion, endowment, and maintenance of the Synod and its districts, colleges, seminaries, and other agencies, and such other causes as may be designated by its board of trustees and the Board of Directors of The Lutheran Church—Missouri Synod.

(a) It shall provide estate-planning services, materials, and training events in accordance with applicable policies established by its board of trustees to assist estate-planning counselors throughout the Synod in consummating gifts.

(b) It shall maintain on a prioritized basis a current catalog of North American and worldwide missions and social ministry, higher education, and other projects that could be funded by gifts from individuals, congregations, and auxiliaries, and shall develop prospectuses for use by counselors in making all calls.

(c) It shall provide materials and conduct training events to assist both volunteer and salaried counselors throughout the Synod.

3.6.5.3.1     The Foundation shall distribute designated funds in accordance with the contractual instructions of the donor. The distribution of undesignated funds shall be determined by its board of trustees in consultation with the Board of Directors of The Lutheran Church—Missouri Synod.

3.6.5.3.2     The Foundation shall be audited annually by independent certified public accountants selected by its board of trustees.

(a) The audit report shall be made available upon request.

(b) The auditors shall also provide an annual letter commenting on the administrative and financial controls.

### Concordia University System

3.6.6     Concordia University System, as a corporation under the laws of the State of Missouri, is operated by its members and board of directors in accordance with its Articles of Incorporation and corporate Bylaws to further the objectives of higher education within the Synod. Any amendments to these Articles of Incorporation shall be subject to approval by the members.

3.6.6.1     The Board of Directors of the Concordia University System has authority with respect to the Synod's colleges and universities. It shall have the overall responsibility to provide for the education of pre-seminary students, ministers of religion–commissioned, other professional church workers of the Synod, and others desiring a Christian liberal arts education by facilitating prior approval as set forth in Bylaw 3.10.6.7.3 for theology appointments to college/university faculties and by coordinating the activities of the Synod's colleges and universities as a unified system of the Synod through their respective boards of regents.

3.6.6.2     The members of Concordia University System shall consist of the Synod and the colleges and universities of the Synod. The Board of Directors of the Synod and the Council of Presidents of the Synod each shall appoint delegates representing the Synod. The boards of regents of the colleges and universities of the Synod shall appoint delegates representing the colleges and universities. The numbers of delegates appointed by the Board of Directors of the Synod, the Council of Presidents, and the boards of regents

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 116 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 111 of 182

shall be established by the Articles of Incorporation and Bylaws of Concordia University System.

3.6.6.3    The Board of Directors of Concordia University System shall be composed of nine voting members and five nonvoting members (no more than two members elected by the Synod shall be from the same district, and no executive, faculty member, or staff member from a Lutheran institution of higher education may serve on the Board of Directors of Concordia University System as a voting member):

*Voting Members:*

1.  Two ministers of religion–ordained elected by the Synod

2.  One minister of religion–commissioned elected by the Synod

3.  Two laypersons elected by the Synod

4.  Three laypersons appointed by the delegates of the members of Concordia University System

5.  The President of the Synod or his representative

*Nonvoting Advisory Members:*

1.  A district president appointed by the Council of Presidents

2.  Up to two persons appointed by the Board of Directors of the Synod

3.  The Chief Mission Officer or his representative

4.  One university president appointed by the Concordia University System Advisory Council

Persons elected or appointed to the Concordia University System Board of Directors should have demonstrated familiarity and support of the institutions, and shall support the doctrinal positions of the Synod, and shall possess two or more of the following qualifications: theological acumen, an advanced degree, experience in higher education administration, administration of complex organizations, finance, law, investments, technology, human resources, facilities management, or fund development. The Chief Administrative Officer of the Synod (or a designee) and the Secretary of the Synod (or a designee) shall review and verify that nominees are qualified to serve as stated above.

3.6.6.4    In keeping with the objectives and the Constitution, Bylaws, and resolutions of the Synod, the Board of Directors of Concordia University System shall

(a) adopt, in consultation with the Concordia University System Advisory Council, coordinating policies, the system-wide strategic plan, and procedures for cooperative roles and responsibilities of the colleges and universities;

(b) together with boards of regents and the Board of Directors of the Synod, coordinate institutional planning and approve capital projects in relation to campus property-management agreements and changes to institutional master plans of the colleges and universities, upon recommendations of the boards of regents;

(c) review and approve new programs and manage peer review of programs in the interest of the institution(s) and the Synod;

(d) adopt criteria and standards for determining institutional viability of the colleges and universities, subject to approval by the Board of

131

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 117 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 112 of 182

Directors of the Synod, and monitor compliance with these standards and criteria;

(e)  adopt standards for ensuring curricular fidelity to the doctrine and practice of the Synod, and monitor compliance with these standards and criteria;

(f)  together with districts, congregations, local boards of regents, and national efforts, assist congregations and districts in student recruitment for both professional church work and lay higher education;

(g)  serve as a resource for the development of lists of potential teaching and administrative personnel;

(h)  assist the President of the Synod in monitoring and promoting the ongoing faithfulness of Concordia University System colleges and universities to Article II of the Constitution of the Synod; and

(i)  have authority, after receiving the consent of the Board of Directors of the Synod by its two-thirds vote and also the consent of one of: the appropriate board of regents by its two-thirds vote, the Council of Presidents by its two-thirds vote or the Concordia University System Board of Directors by its two-thirds vote, to consolidate, relocate, separate, or divest a college or university.

3.6.6.5    The presidents and interim presidents of the Synod's educational institutions shall comprise the Concordia University System Advisory Council, which shall:

(a)  in consultation with the Concordia University System Board of Directors ("the board"), be responsible for developing, executing, and assessing the long-term strategic direction and plan for Concordia University System, which focuses the mission of the institutions within the broad assignment of the Synod

(b)  assist the board in defining standards of viability, integrity, and theological fidelity of the curricula (Bylaw 3.6.6.4 [d–e]) and in the development of policies and procedures as described in Bylaws 3.6.6.4 (a) and 3.6.6.6;

(c)  coordinate collaborative development, by their respective institutions, of policies required by Bylaw 3.6.6.7;

(d)  serve as a pool of experts to assist, upon the board's request, in evaluating institutional viability, and regarding the consolidation, relocation, separation, divestiture, or closure of a college or university;

(e)  propose standards for ensuring curricular fidelity to the doctrine and practice of the Synod;

(f)  contribute to the board's development of search criteria in the selection process for a president of Concordia University System;

(g)  upon the board's request, contribute to campus transition reviews and recommendation of search criteria in the selection for a college/university president;

(h)  together with districts, congregations, local boards of regents, and national efforts, assist congregations and districts in student recruitment for both professional church work and lay higher education; and

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 118 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 113 of 182

(i) serve as a resource for the development of lists of potential teachers and administrative personnel.

3.6.6.6     The Board of Directors of Concordia University System shall, in consultation with the Concordia University System Advisory Council, adopt policies to assist and ensure that the boards of regents and campus administrators are:

(a) actively working to preserve their Lutheran identity by supporting the objectives of The Lutheran Church—Missouri Synod (Constitution Art. III) and complying with an emphasis on mission-focused leadership in service to church and community;

(b) delivering academic and student programs designed to give students Christ-centered values and tools that equip them for vocations within the church and world;

(c) preparing graduates for service as ministers of religion—commissioned and for continued study for service as ministers of religion—ordained for the Synod;

(d) implementing accepted higher education standards, including policies that ensure fiscal and institutional viability, by:

- achieving positive annual financial results
- acquiring quality administrators, faculty, and staff
- meeting fiscal and academic benchmarks
- building endowments and managing investment assets for the long-term benefit of the institutions
- acquiring and managing long-term debt carefully and responsibly

(e) sustaining a Concordia experience that reflects strong institutional quality, provides opportunities to be of greater service to the church and society, and mobilizes individuals in a way that aids the campuses in achieving their collective vision with respect to their identity, quality, and viability; and

(f) maintaining accountability of its institutions to the system-wide board.

3.6.6.7     The Concordia University System Board of Directors shall maintain in its policies a list of subject matters that each educational institution must address in its own policies and procedures, to include faculty appointments, employment contracts, contract renewal, contract termination, faculty organization, modified service, sabbaticals, and dispute resolution. Notwithstanding the provisions of any such policy, any person connected with an institution who is a member of the Synod shall also remain under the ecclesiastical supervision of the Synod, and nothing in any such Concordia University System institution policy shall be construed to limit or constrain any action that may be taken or the rights or responsibilities of any party, pursuant to the Synod *Handbook* with respect to a member of Synod.

3.6.6.8     The Concordia University System shall maintain a *Model Operating Procedures Manual*, in consultation with the Commission on Constitutional Matters, regarding the handling of faculty complaints and dispute resolution by college/university boards of regents.

Exhibit 2 to Defendants' Motion to Dismiss
Page 114 of 182

## 3.7  Synodwide Trust Entities

3.7.1    The synodwide trust entities of The Lutheran Church—Missouri Synod are collectively known as the Concordia Plans.

### The Concordia Plans

3.7.1.1    Concordia Plan Services is responsible for managing the benefit plans/trusts of The Lutheran Church—Missouri Synod, including the Concordia Retirement Plan, Concordia Disability and Survivor Plan, Concordia Health Plan, and Concordia Retirement Savings Plan, each of which is a separate trust operated under trust laws but collectively known as the Concordia Plans.

(a)  The "Concordia Retirement Plan for Ministers of Religion and Lay Workers of The Lutheran Church—Missouri Synod, Its Member Congregations, Controlled Organizations, and Affiliated Agencies" is the retirement plan adopted by the Board of Directors of The Lutheran Church—Missouri Synod pursuant to Res. 10-02 of the 45th convention of the Synod, as such plan has been heretofore or may hereafter be amended. The text of the plan, as amended from time to time, shall be published under the supervision of the Board of Trustees—Concordia Plans.

(b)  The "Concordia Health Plan for Ministers of Religion and Lay Workers of The Lutheran Church—Missouri Synod, Its Member Congregations, Controlled Organizations, and Affiliated Agencies" is the health plan adopted by the Board of Directors of The Lutheran Church—Missouri Synod pursuant to Res. 10-02 of the 45th convention of the Synod, as such plan has been heretofore or may hereafter be amended. The text of the plan, as amended from time to time, shall be published under the supervision of the Board of Trustees—Concordia Plans.

(c)  The "Concordia Disability and Survivor Plan for Ministers of Religion and Lay Workers of The Lutheran Church—Missouri Synod, Its Member Congregations, Controlled Organizations, and Affiliated Agencies" is the plan adopted by the Board of Directors of The Lutheran Church—Missouri Synod in accord with directives adopted at a prior convention of the Synod (Res. 10-02 of the 45th convention) to provide for surviving widows and children those benefits previously provided under the Concordia Retirement Plan. This Plan also provides for disability benefits for such workers. The text of the plan, as amended from time to time, shall be published under the supervision of the Board of Trustees—Concordia Plans.

(d)  The "Concordia Retirement Savings Plan" is the tax-sheltered annuity retirement savings plan adopted by the Board of Directors in August 2003, effective October 1, 2005, as such plan has been heretofore or may hereafter be amended. The text of the plan, as amended from time to time, shall be published under the supervision of the Board of Trustees—Concordia Plans.

(e)  The lists of ordained and commissioned ministers appearing on the official roster of the Synod shall be official lists for the purpose of the Board of Trustees—Concordia Plans.

Exhibit 2 to Defendants' Motion to Dismiss
Page 115 of 182

(f)  National inter-Lutheran entities will be eligible to be "employers" under the Concordia Plans of the Synod unless the policies of such a plan preclude such organization as an eligible employer.

3.7.1.2    Concordia Plan Services is also responsible for managing other ancillary programs, including various supplemental insurance and administration services programs and the Support Program.

(a)  The Support Program of the Synod is not a trust but rather a program of financial assistance to those eligible ordained ministers, commissioned ministers, and other professional church workers and their eligible dependents who are in financial need. This aid is in the form of a gift from the budgeted funds of the Synod. Eligibility standards shall be determined by the Board of Directors—Concordia Plan Services.

(b)  There exists and may be added in the future various ancillary supplemental insurance and administration services that will be made available to member organizations and their employees. These programs are not trusts and will be under the supervision of the Board of Directors—Concordia Plan Services.

3.7.1.3    The Board of Trustees of Concordia Plans and the Board of Directors of Concordia Plan Services shall consist of 16 members. The 15 voting members shall be appointed by the Board of Directors of the Synod. All newly appointed members shall begin service on the September 1 following appointment, except with an appointment to fill a vacancy, when service shall begin on the first day of the month in which the next regular meeting of members occurs after appointment. The representative designated by the Board of Directors of the Synod shall be the nonvoting member. Voting members shall be appointed to three-year terms, which shall not exceed four terms in a successive period. The 15 voting members shall include:

1.  Two ministers of religion—ordained

2.  One minister of religion—commissioned

3.  Twelve laypersons, at least five of whom shall be experienced in the design of employee benefit plans, at least five of whom shall be experienced in the management of benefit plan investments, and at least one of whom shall have significant financial/audit experience.

3.7.1.4    The Board of Trustees—Concordia Plans and the Board of Directors—Concordia Plan Services shall have all general and incidental powers and duties appropriate for the performance of their functions. In addition, the Board of Trustees—Concordia Plans will have the powers and duties set forth in the respective plans, as amended from time to time. It may create or amend any plan within limits established by the Board of Directors of the Synod so long as such changes are reported to the Synod's Board of Directors, since such power is finally vested in the Synod's Board of Directors.

(a)  When the Board of Trustees—Concordia Plans is carrying out its functions with respect to any such separate plan, it may be designated as the board of trustees of such separate plan.

(b)  When the board is carrying out its functions generally, it may be designated as the "Board of Trustees—Concordia Plans of The Lutheran Church—Missouri Synod."

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 121 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 116 of 182

(c)  The board may, at its own discretion, make investment decisions or select and utilize investment counsel and select agents and actuaries.

(d)  It shall design for the Board of Directors of The Lutheran Church—Missouri Synod's approval benefit plans which compare favorably with other similar plans while meeting unique needs of the full-time church workers in the Synod.

(e)  It shall provide copies of all audit reports to the Board of Directors of The Lutheran Church—Missouri Synod for information, advice, and counsel.

(f)  It shall settle disputes which arise in enrollment in the plans and the payment of claims and benefits.

3.7.1.5    The position of chief executive shall be filled according to the process outlined in Bylaw 3.6.1.5.

## 3.8  Mission Boards and Offices

*Mission Boards*

3.8.1    The mission boards of The Lutheran Church—Missouri Synod are the following:
1. Board for National Mission
2. Board for International Mission

*Board for National Mission*

3.8.2    The Board for National Mission is charged with developing and determining policies for the coordination of and in support of district ministries which support congregations and schools (Bylaw 1.2.1 [n]). These policies shall embrace and apply the mission and ministry emphases adopted by the national convention. Under the leadership of the President of the Synod, pursuant to Bylaw 3.3.1.1.1, the board shall assist in identifying the specific goals for the Office of National Mission. Policies determined by the board (implemented by staff) may include but not be limited to:

• strong national mission leadership
• Lutheran school ministries and accreditation
• human care and domestic mercy efforts
• stewardship
• evangelism
• church planting and revitalization
• youth ministry

Upon recommendation of the Office of National Mission, the Board for National Mission shall serve as a calling agency for institutional and agency chaplains and other non-foreign specialized ministers (e.g., Veterans Administration chaplains, Bureau of Prison chaplains, hospital chaplains, pastoral counselors, and teachers of chaplaincy and pastoral counseling) after consultation with the appropriate district presidents(s) (cf. Bylaw 2.12.1.4).

3.8.2.1    The Board for National Mission shall have oversight of the implementation of policies adopted by the board and implemented by the Office of National

136

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 122 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 117 of 182

Mission for the coordination of and in support of district ministries which support congregations and schools. The board shall be under the ecclesiastical supervision of the President of the Synod regarding doctrine and administration consistent with the President's responsibility under Constitution Art. XI B 1–4 (also Constitution Art. XI B 7; Bylaws 3.3.1.1–3.3.1.3) between conventions of the Synod and ultimately shall be responsible to the Synod in convention (Constitution Art. XI A 1–2).

3.8.2.2   The Board for National Mission shall, during the course of each triennium between national conventions of the Synod, work with the Board for International Mission to gather pertinent and sufficient information from the Synod's members that will facilitate the boards' assessment and evaluation of the effectiveness of the Synod's triennial mission and ministry emphases, and shall develop accordingly a joint overture to the national convention for beneficial amendments thereto. The boards shall also provide a joint report in advance of the Synod's district conventions, offering ideas and guidance for proposing triennial mission and ministry emphases to the national convention.

3.8.2.3   The Board for National Mission shall be comprised of eleven members:

1. Five laypersons and five individual members of the Synod (one of each from each region of the Synod) elected in the same manner as are regional members of the Board of Directors of the Synod (Bylaws 3.12.1 and 3.12.2.8)

2. The President of the Synod or his representative

### Office of National Mission

3.8.2.3   The Office of National Mission implements the policies of the Board for National Mission under the supervision of the Chief Mission Officer and shall be responsible for domestic ministries that especially serve congregations and schools through the districts of the Synod. Such district ministries may include but not be limited to:

- Lutheran school ministries and accreditation
- human care and domestic mercy efforts
- stewardship
- evangelism
- church planting and revitalization
- youth ministry

3.8.2.4   In carrying out its mission responsibilities, the Office of National Mission shall receive its primary focus from the mission and ministry emphases developed triennially by the national Synod in convention and from the policies developed and determined by the Board for National Mission. Through the Chief Mission Officer, it shall also receive direction from the President of the Synod on all aspects of its responsibilities.

3.8.2.5   The President's supervisory responsibilities under Constitution Art. XI B and Bylaws 3.3.1.1–3.3.1.3 will assure that the Office of National Mission incorporates the doctrine, mission, and vision of the Synod in its service to the Synod. All staff shall be responsible and accountable for their activities to the President of the Synod (Constitution Art. XI B 1–4) between

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 123 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 118 of 182

conventions of the Synod and ultimately to the Synod in convention (Constitution Art. XI A 1–2).

3.8.2.6    The staff of the Office of National Mission shall assume a coordinative role for ministry areas in response to directives from the Synod in convention or upon the request of two-thirds of the members of the Council of Presidents on behalf of the districts.

3.8.2.7    The Office of National Mission shall be responsible for granting recognized service organization status to organizations providing services primarily within the United States that are independent of the Synod, engage in program activity that is in harmony with the programs of the Synod, and warrant recognition by the Synod according to section 6.2 of these Bylaws.

**Board for International Mission**

3.8.3      The Board for International Mission is charged with developing and determining policies in support of mission and ministry in foreign countries for the Office of International Mission (Bylaw 1.2.1 [n]). These policies shall embrace and apply the mission and ministry emphases adopted by the national convention. Under the leadership of the President of the Synod, pursuant to Bylaw 3.3.1.1.1, the board shall assist in identifying the specific goals for the Office of International Mission. Policies determined by the board (implemented by staff) may include but not be limited to:

- strong mission leadership
- training of missionaries
- ministry for all of the Synod's military personnel
- safeguarding the rights of partner churches
- ministry for all civilians and their dependents overseas
- international human care
- liaison with the colleges, universities, and seminaries of the Synod
- liaison with the chief ecumenical officer of the Synod
- international schools

Upon the recommendation of the Office of International Mission, the board shall serve as the only sending agency through which workers and funds are sent to the foreign mission areas of the Synod, including the calling, appointing, assigning, withdrawing, and releasing of missionaries (ministers of religion–ordained and ministers of religion–commissioned) and other workers for the ministries in foreign areas.

3.8.3.1    The Board for International Mission shall have oversight of the implementation of policies adopted by the board and implemented by the Office of International Mission for the coordination of and in support of ministries of the Synod in foreign countries. The board shall be under the ecclesiastical supervision of the President of the Synod regarding doctrine and administration consistent with the President's responsibility under Constitution Art. XI B 1–4 (Constitution Art. XI B 7; Bylaws 3.3.1.1–3.3.1.3) between conventions of the Synod and ultimately shall be responsible to the Synod in convention (Constitution Art. XI A 1–2).

138

Exhibit 2 to Defendants' Motion to Dismiss
Page 119 of 182

3.8.3.2    The Board for International Mission shall, during the course of each triennium between national conventions of the Synod, work with the Board for National Mission to gather pertinent and sufficient information from the Synod's members that will facilitate the boards' assessment and evaluation of the effectiveness of the Synod's triennial mission and ministry emphases, and shall develop accordingly a joint overture to the national convention for beneficial amendments thereto. The boards shall also provide a joint report in advance of the Synod's district conventions, offering ideas and guidance for proposing triennial mission and ministry emphases to the national convention.

3.8.3.3    The Board for International Mission shall be comprised of eleven members:

1. Five laypersons and five individual members of the Synod (one of each from each region of the Synod) elected in the same manner as are regional members of the Board of Directors of the Synod (see Bylaws 3.12.1 and 3.12.2.8)

2. The President of the Synod or his representative

### *Office of International Mission*

3.8.3.3    The Office of International Mission implements the policies of the Board for International Mission under the supervision of the Chief Mission Officer and shall be responsible for the work of the Synod in foreign countries. Such responsibilities may include but not be limited to:

- placement and support of foreign missionaries
- establishment and maintenance of international schools
- coordination of international relief efforts
- policy recommendations to the Board for International Mission
- support and encouragement of international partner churches in conjunction with the office of the President

3.8.3.4    In carrying out its mission responsibilities, the Office of International Mission shall receive its primary focus from the mission and ministry emphases developed triennially by the national Synod in convention and from the policies developed and determined by the Board for International Mission. Through the Chief Mission Officer, it shall also receive direction from the President of the Synod on all aspects of its responsibilities.

3.8.3.5    The President's supervisory responsibilities under Constitution Art. XI B and Bylaws 3.3.1.1–3.3.1.3 will assure that the Office of International Mission incorporates the doctrine, mission, and vision of the Synod in its service to the Synod. All staff shall be responsible and accountable for their activities to the President of the Synod (Constitution Art. XI B 1–4) between conventions of the Synod and ultimately to the Synod in convention (Constitution Art. XI A 1–2).

3.8.3.6    The Office of International Mission shall be responsible for granting recognized service organization status to organizations that provide services primarily outside of the United States, are independent of the Synod, engage in program activity that is in harmony with the programs of the Synod, and warrant recognition by the Synod according to section 6.2 of these Bylaws.

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 125 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 120 of 182

## 3.9  Commissions

3.9.1    The commissions of The Lutheran Church—Missouri Synod are the following:

    1.  Commission on Constitutional Matters

    2.  Commission on Doctrinal Review

    3.  Commission on Handbook

    4.  Commission on Theology and Church Relations

***Commission on Constitutional Matters***

3.9.2    The Commission on Constitutional Matters exists to interpret the Constitution, Bylaws, and resolutions of the Synod and ensure that the governing instruments of the Synod and its agencies are in accord with the Constitution and Bylaws of the Synod.

3.9.2.1    The Commission on Constitutional Matters shall consist of six members, all voting:

    1.  Three ministers of religion—ordained, whose terms shall be for six years renewable once

    2.  Two attorneys, whose terms shall be for six years renewable once

    3.  The Secretary of the Synod, who shall serve as the secretary of the commission

3.9.2.1.1    The Commission on Constitutional Matters shall be appointed in the following manner:

Other than the Secretary of the Synod, candidates shall be nominated only by the district boards of directors and shall be presented to the Council of Presidents through the Office of the Secretary.

    (a)  The Council of Presidents shall select five candidates for each vacant appointed position and present them through the office of the Secretary of the Synod to the President of the Synod.

    (b)  The President of the Synod, in consultation with the vice-presidents of the Synod, shall appoint the members of the commission from the list presented by the Council of Presidents.

    (c)  Thereafter, the appointments shall become effective upon ratification by a majority vote of the members of the Council of Presidents.

    (d)  Vacancies in appointed positions shall be filled by following the procedure set forth above.

3.9.2.2    The Commission on Constitutional Matters shall interpret the Synod's Constitution, Bylaws, and resolutions upon the written request of a member (congregation, ordained or commissioned minister), official, board, commission, or agency of the Synod.

    (a)  A request for an opinion may be accompanied by a request for an appearance before the commission.

    (b)  The commission shall notify an officer or agency of the Synod if a request for an opinion involves an activity of that officer or agency and shall allow that officer or agency to submit in writing information regarding the matter(s) at issue.

Exhibit 2 to Defendants' Motion to Dismiss
Page 121 of 182

(c)  An opinion rendered by the commission shall be binding on the question decided unless and until it is overruled by a convention of the Synod. Overtures to a convention that seek to overrule an opinion of the commission shall support the proposed action with substantive rationale from the Constitution, Bylaws, and resolutions of the Synod. All such overtures shall be considered by the floor committee to which they have been assigned and shall be included in a specific report to the convention with recommendations for appropriate action.

When an opinion pertains to business, legal, or property matters and the Board of Directors of the Synod concludes that such opinion of the commission is contrary to the laws of the State of Missouri, the board and the commission, or their respective representatives, shall meet jointly to discuss the issue(s) and seek resolution thereof. If agreement cannot be reached on whether the matter is governed by the laws of the state of Missouri, that question shall be presented to a five-member panel consisting of three hearing facilitators (Bylaw 1.10.12) chosen by blind draw by the Executive Director of Internal Audit of the Synod from the pool of hearing facilitators; one person appointed by the Commission on Constitutional Matters; and one person appointed by the Board of Directors. At least one of the hearing facilitators shall be an attorney, and the appointees of the commission and board shall not be members of the groups that appointed them. The decision of the panel in support of the Commission on Constitutional Matters or the Board of Directors shall be binding on the issue(s) unless and until it is overruled by a convention of the Synod.

3.9.2.2.1   The Commission on Constitutional Matters shall examine all reports, overtures, and resolutions to the Synod asking for amendments to the Constitution and Bylaws of the Synod or which in any manner affect the Constitution and Bylaws, to determine their agreement in content and language with the Constitution and Bylaws of the Synod.

3.9.2.2.2   The Commission on Constitutional Matters shall be represented at the meetings of national convention floor committees considering constitution and bylaw matters to ensure that they are in accord with the Constitution, Bylaws, and resolutions of the Synod.

3.9.2.2.3   The Commission on Constitutional Matters shall examine the articles of incorporation, bylaws, and policy manuals of every agency of the Synod to ascertain whether they are in harmony with the Constitution, Bylaws, and resolutions of the Synod.

(a)  Agencies intending to make amendments to articles of incorporation or bylaws shall make such intentions known and receive approval from the commission in advance.

(b)  A district in convention may vote to amend its articles or bylaws provided the resolution is contingent on approval of the Commission on Constitutional Matters. The amended articles or bylaws become effective immediately upon, and only upon, approval of the Commission on Constitutional Matters. Should the Commission on Constitutional Matters not approve the adopted changes, the district Board of Directors may modify the amendments to comply with the Commission on Constitutional Matters requirements upon their two-thirds vote.

Exhibit 2 to Defendants' Motion to Dismiss
Page 122 of 182

(c)  The commission shall maintain a file of the articles of incorporation, bylaws, and policy manuals of all agencies of the Synod.

*Commission on Doctrinal Review*

3.9.3    The Commission on Doctrinal Review exists to assist the President of the Synod in the exercise of his responsibility that all doctrinal content in its or any of its agencies' materials be in accord with the Scripture and the Lutheran Confessions.

3.9.3.1    The Commission on Doctrinal Review shall consist of five members appointed by the President of the Synod from the total number of doctrinal reviewers.

(a)  The commission shall elect its own officers.

(b)  The commission shall effect its own organization.

3.9.3.2    The Commission on Doctrinal Review functions in accordance with Bylaw section 1.9 and shall meet as often as necessary to provide guidelines for the work of doctrinal reviewers and to concern itself with problem areas in the procedures of doctrinal review and appeals.

*Appeals Prior to Publication*

3.9.3.2.1    Appeals regarding materials not yet published may be initiated by an author, the sponsoring group, or an executive staff member of that group and submitted to the chairman of the Commission on Doctrinal Review.

(a)  Within seven business days after receipt of an appeal, the chairman of the Commission on Doctrinal Review shall inform all concerned and shall appoint three members of the commission to serve as a review panel and shall designate one as its chairman. A panel member shall disqualify himself on the basis of any kind of personal involvement in the issue.

(b)  The review panel shall provide a copy of the appeal to the author and the sponsoring group and invite them to provide a response to the appeal. All parties to the appeal shall be given 14 days to provide their response.

(c)  To aid objectivity, the identity of author and review panel shall ordinarily not be disclosed. However, consultation may at times be necessary for clarification.

(d)  In making its recommendation, the panel shall decide within 30 days whether the item in question

(1)  is suitable for publication; or

(2)  may be published after alteration; or

(3)  may be published as a study document; or

(4)  shall be denied publication.

(e)  The decision of the panel shall be determined by a majority vote and shall be final so far as the Commission on Doctrinal Review is concerned. A report together with the panel's minutes shall be submitted to the chairman of the Commission on Doctrinal Review.

(f)  The chairman of the commission shall report the decision within seven business days to the author, the original reviewer(s), the sponsoring group, and the President of the Synod.

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 128 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 123 of 182

*Appeals Following Publication*

3.9.3.2.2     A challenge to the doctrinal review certification of a published item may be initiated by any member of the Synod and shall be submitted in writing via mail or personal delivery to the chairman of the Commission on Doctrinal Review.

(a)  In order for the Commission on Doctrinal Review to consider a challenge, the challenger is obliged to provide specific references demonstrating how the published item is not in agreement with Scripture and the Lutheran Confessions.

(b)  After receipt of the challenge, the chairman of the commission shall within seven business days inform the President of the Synod, the sponsoring group, and, if applicable, Concordia Publishing House, shall appoint three members of the commission to serve as a review panel, and shall designate one as its chairman.

(c)  The chairman of the Commission on Doctrinal Review shall provide a copy of the appeal to the President of the Synod, the sponsoring group, and, if applicable, Concordia Publishing House, and offer them the opportunity to respond to the appeal within 14 days from the date of notification.

(d)  To aid in maintaining objectivity, the identity of the challenger and the identity of the panel will ordinarily not be disclosed. There shall be no publicity given to the appeal, nor an effort made to circularize the Synod on a pending appeal.

(e)  The panel shall after reviewing the published material declare, within 45 days following the expiry of the 14-day response period provided in Bylaw 3.9.3.2.2 (c), whether the doctrinal review certification is affirmed or revoked based on whether the published material is in agreement with the Scriptures and the Lutheran Confessions.

(f)  If the panel revokes the doctrinal review certification, it must identify the part(s) of the item in need of clarification, amplification, and/or deletion in order to bring into agreement with Scripture and the Lutheran Confessions, and withdraw the publication until such agreement is reached.

(g)  The panel will appoint one of its members to be the doctrinal reviewer for the recycling of the revised material to assure the item's agreement with Scripture and the Lutheran Confessions if republished.

### Commission on Handbook

3.9.4     The Commission on Handbook provides for the ongoing maintenance and management of the *Handbook*, that is, the Constitution, Bylaws, and Articles of Incorporation of the Synod. The commission shall meet as it deems necessary but at least two times per year to carry out its assigned responsibilities.

3.9.4.1     The Commission on Handbook shall consist of eight members, five voting and three nonvoting:

1.  Of the five voting members, three shall be individual members of the Synod and two shall be attorneys. Terms of voting members shall be for six years, renewable once.

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 129 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 124 of 182

2. The Chief Administrative Officer of the Synod, the Secretary of the Synod, and an additional member of the Commission on Constitutional Matters shall serve as advisory members.

3.9.4.1.1 The five voting members of the Commission on Handbook shall be appointed in the following manner:

(a) Candidates shall be nominated only by district boards of directors and presented to the Council of Presidents through the office of the Secretary of the Synod.

(b) The Council of Presidents shall select five candidates for each vacant position and present them through the office of the Secretary of the Synod to the President of the Synod.

(c) The President of the Synod, in consultation with the vice-presidents of the Synod, shall appoint the members of the commission from the list presented by the Council of Presidents.

(d) Thereafter the appointments shall become effective upon ratification by a majority vote of the members of the Council of Presidents.

(e) Vacancies shall be filled by following the same procedure set forth above.

3.9.4.2 The Commission on Handbook shall maintain the *Handbook* of the Synod.

(a) It shall assist convention floor committees when developing bylaw proposals asking for amendments to the Constitution, Bylaws, and Articles of Incorporation of the Synod or which in any manner affect the Constitution, Bylaws, and Articles of Incorporation to determine their agreement in language (terminology) with the current *Handbook*, thereby to maintain *Handbook* integrity and good order.

(b) In consultation with the Commission on Constitutional Matters, it shall revise the *Handbook* of the Synod immediately after each convention to bring it into harmony with the resolutions and changes adopted by the convention.

(c) It shall maintain a complete file of succeeding handbooks so that comparison can be made between current provisions and those preceding.

(d) It shall carry out assignments by conventions of the Synod relating to the *Handbook*.

(e) It shall respond to requests from agencies of the Synod to propose new provisions to address specific *Handbook*-related issues that surface between conventions. When responding to such requests, the role of the commission will be to assist requesting agencies in formulating bylaw changes and not to develop and/or advocate specific substantive solutions or modifications to existing *Handbook* provisions.

### Commission on Theology and Church Relations

3.9.5 The Commission on Theology and Church Relations exists to assist congregations in achieving the objectives of Article III 1 and 6 of the Constitution of the Synod and to assist the President of the Synod in matters of church relationships.

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 130 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 125 of 182

3.9.5.1    The Commission on Theology and Church Relations shall consist of 16 voting and 4 advisory members:

*Voting Members:*

1. Two ordained ministers who are parish pastors

2. One commissioned minister who is a parish teacher

3. Two laypersons

4. Two additional ordained ministers (one of whom shall be a district president)

5. Two additional laypersons

6. Four seminary faculty members

7. Two additional members

8. A member from the faculties of the colleges and universities of the Synod

*Nonvoting Advisory Members:*

9. The President and the First Vice-President of the Synod

10. The presidents of the St. Louis and Fort Wayne seminaries

3.9.5.1.1  The members of the Commission on Theology and Church Relations shall be selected as follows:

(a) The two parish pastors, the parish teacher, and two laypersons shall be elected by a convention of the Synod.

(b) The two additional ordained ministers and the two additional laypersons shall be elected by ballot by the Council of Presidents (as in #4 and #5 above).

(c) The St. Louis and Fort Wayne seminary theological faculties shall each appoint or elect two members of their faculties (as in #6 above).

(d) The two additional members (as in #7 above) shall be appointed by the President of the Synod, in consultation with the vice-presidents.

(e) The member from the faculties of the colleges and universities of the Synod shall be appointed by the President of the Synod.

(f) Vacancies in the positions that were filled by appointment shall be filled by the same appointing body.

(g) In the case of vacancies that occur in positions that were filled by election of a national convention of the Synod, the appointing body shall be the Board of Directors of The Lutheran Church—Missouri Synod, which shall follow the nominating procedures for filling vacancies in board and commission positions elected by the Synod as outlined in the Bylaws of the Synod.

3.9.5.2    The Commission on Theology and Church Relations shall assist the President of the Synod at his request in discharging his constitutional responsibilities for maintaining doctrinal unity within the Synod.

3.9.5.2.1  The Commission on Theology and Church Relations shall provide guidance to the Synod in matters of theology and church relations.

(a) It shall bring matters of theology and church relations through special studies and documents to the membership of the Synod and to conferences.

145

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 131 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 126 of 182

(b) It shall refer theological issues and questions to the proper individuals or groups of individuals for additional study.

(c) It shall suggest and provide studies of contemporary issues, including also current social issues, as they affect the church and as the church may affect such social issues.

(d) It shall foster and provide for ongoing theological education through institutes, seminars, and other means.

(e) It shall obtain and study theological treatises, conference papers, and similar documents and studies.

3.9.5.2.2　The Commission on Theology and Church Relations shall assist the President of the Synod at his request in discharging his constitutional responsibilities for maintaining doctrinal integrity as he relates to other church bodies.

(a) It shall address itself to and evaluate existing fellowship relations for the purpose of mutual admonition and encouragement.

(b) When a church body applies for formal recognition of altar and pulpit fellowship with the Synod, such recognition shall be proposed at a convention of the Synod only after the approval of the commission.

(c) When a small, formative, emerging confessional Lutheran church body (identified as such by the President of the Synod as chief ecumenical officer) requests recognition of altar and pulpit fellowship with the Synod, after consultation with the Praesidium and approval by the commission, such recognition may be declared by the President of the Synod subject to the endorsement of the subsequent Synod convention.

(d) When a mission of the Synod applies for formal recognition as a self-governing partner church, such recognition shall be proposed at convention of the Synod by the Board for International Mission with the approval of the commission.

(e) When an entity (e.g., a district, mission, group of congregations, etc.) of a self-governing partner church is established as an independent church body in altar and pulpit fellowship with that partner church body, and subsequently requests recognition of altar and pulpit fellowship with Synod, such recognition may be declared by the President of Synod, after consultation with the Praesidium and approval by the commission, subject to the endorsement of the subsequent Synod convention.

3.9.5.2.3　The executive committee of the commission shall, within 30 days, provide opinions on theological matters in response to questions presented by ecclesiastical supervisors or panels as described in the dispute resolution and suspension/expulsion processes of the Synod (Bylaw sections 1.10 and 2.14–2.17). Because these opinions are in response to a specific question, they shall carry no precedential authority beyond that particular matter.

3.9.5.3　The Commission on Theology and Church Relations shall operate under the human resources policies of the Synod as provided by the Board of Directors of the Synod, in accordance with Bylaw 3.3.4.3.

146

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 132 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 127 of 182

3.9.5.3.1    The commission may create an executive director position and fill it in accordance with the Bylaws of the Synod and the human resources policies of corporate Synod.

(a) The executive director shall serve at the pleasure of the commission.

(1) The slate of candidates for the initial appointment of the executive director shall be selected by the commission in consultation with and with the mutual concurrence of the President of the Synod.

(2) In the event of a vacancy, the commission and the President of the Synod shall act expeditiously to fill the vacancy. This commission shall present its list of candidates to the President.

(3) The commission shall conduct an annual review of its executive director and, before the expiration of five years, conduct a comprehensive review.

(4) At the conclusion of each five-year period, the appointment shall terminate unless the commission takes specific action to continue the person in the office, each subsequent term not to exceed five years.

(b) Any interim executive director appointment by the commission shall follow a process similar to the initial appointment of the executive director.

(1) Such interim appointee must be approved by the President of the Synod, and may not serve more than 18 months without the concurrence of the President of the Synod.

(2) Such interim appointee shall be ineligible to serve on a permanent basis without the concurrence of the President of the Synod.

(c) The executive director of the commission shall normally attend all meetings of the commission except when his own position is being considered.

(d) The commission may create and fill other staff positions in accordance with the human resources policies of corporate Synod adopted pursuant to Bylaw 1.5.5. Such staff may attend meetings of the commission upon request of the commission.

*Fraternal and Other Organizations*

3.9.5.4    The Commission on Theology and Church Relations shall assist congregations and ordained and commissioned ministers of religion in fulfilling their commitment to witness publicly and privately to the one and only Gospel set forth in the Holy Scriptures specifically as they carry out their responsibilities relating to membership in societies, lodges, cults, or any organizations of an unchristian or anti-Christian character to which the Synod has declared itself firmly opposed.

(a) It shall provide information and counsel concerning organizations, philosophies, and world-views about which ordained or commissioned ministers and congregations may make inquiry relative to objectives, tenets, programs, practices, or ceremonies.

147

Exhibit 2 to Defendants' Motion to Dismiss
Page 128 of 182

(b)  It shall seek to explain the Synod's concerns to any organizations that are involved in religion and have unchristian or anti-Christian features, with the goal of persuading them to abandon such features.

(c)  It shall prepare and disseminate periodic reports concerning new organizations, philosophies, and worldviews, changes within existing agencies, and developments relative to the world religious scene in general.

(d)  It shall serve as the resource center for the Synod with reference to information on religious agencies and worldviews, publish study materials, and assist pastors and congregations in providing counsel.

3.9.5.4.1    The Commission on Theology and Church Relations shall assist the pastors and congregations of the Synod in carrying out the policy of the Synod regarding fraternal organizations as set forth in the following guidelines.

(a)  Pastors and congregations alike must avoid membership or participation in any organization that in its objectives, ceremonies, or practices is inimical to the Gospel of Jesus Christ or the faith and life of the Christian church. It is the solemn, sacred, and God-given duty of every pastor properly to instruct his people concerning the sinfulness of all organizations that

(1)  explicitly or implicitly deny the Holy Trinity, the deity of Christ, or the vicarious atonement;

(2)  promise spiritual light apart from that revealed in the Holy Scripture;

(3)  attach spiritual or eternal rewards to the works or virtues of men; and/or

(4)  embrace ideologies or principles that clearly violate an express teaching of the Holy Scriptures concerning the relationships of men to one another.

(b)  The responsibility of diligent and conscientious pastoral care requires that pastors of the Synod do not administer Holy Communion to nor admit to communicant membership members of such organizations who, after thorough instruction, refuse to sever their affiliation with such organizations, since Holy Communion expresses an exclusive spiritual relationship of the communicant to his Lord and to his brethren (Matthew 10:32; 1 Cor. 10:6–7; 1 Cor. 11:25). Earnest, continuous efforts should be put forth to bring individuals to a clear-cut decision regarding their contradictory confessions, in order that they may become or remain communicant members of the congregation, as the case may be.

(c)  The responsibility of conscientious pastoral care recognizes that a pastor will occasionally encounter an exceptional case in which he is called on to administer Holy Communion to a person who is outwardly connected with such organization. Such exceptional cases ordinarily involve an individual who

(1)  has accepted the pastoral care of the congregation and is being instructed by its pastor in an effort to lead that person to see the inconsistency of contradictory confession and witness; and

Exhibit 2 to Defendants' Motion to Dismiss
Page 129 of 182

(2) has renounced to the pastor and/or church council the unchristian or anti-Christian character of the organization in which membership is held.

(d) In such exceptional cases the pastor should consult with his brethren in the ministry or with officials of the Synod, as the case may require. He should, furthermore, beware of procrastination and the giving of offense to members of either the congregation or sister congregations.

(e) The Synod instructs its officials to exercise vigilant care and urges all pastors and congregations to carry out these provisions and faithfully eradicate all compromise or negation of the Gospel through members' identification with objectionable organizations. It shall be the duty of every member, pastor, and especially officials of the Synod to admonish those pastors and congregations that fail to offer counter testimony and take decisive action in matters pertaining to this subject. Refusal to heed brotherly admonition shall lead to suspension and eventual expulsion from the Synod.

## 3.10  Other Councils, Committees, and Boards

### A. Council of Presidents

3.10.1      The President, the First Vice-President, the regional vice-presidents, and the district presidents shall comprise the Council of Presidents.

3.10.1.1    The council shall meet three times each year and in addition at the call of the President or at the request of one-third of the Council of Presidents.

3.10.1.2    The Council of Presidents shall provide opportunity for the President of the Synod to advise and counsel his representatives in the regions and districts and for the regional vice-presidents and district presidents in turn to give counsel to the President. The Council of Presidents also exists to provide opportunity for the presidents of the districts and the Praesidium of the Synod to counsel with one another on matters regarding the doctrine and administration of the Synod, its regions, and its districts, and to edify and support one another in the work they share.

3.10.1.3    The Council of Presidents shall serve as the Board of Assignments of the Synod. It shall assign first calls to candidates for the offices of ordained and commissioned ministers and handle or assist with placement of other professional church workers. The Council of Presidents may in its policies delegate authority for interim placement (between its regular meetings) to a committee of its own members or the chairman of that committee.

3.10.1.4    The Council of Presidents shall carry out such assignments as the Synod in convention may give to the council from time to time.

### B. Colloquy Committee for the Pastoral Ministry

3.10.2      The Colloquy Committee for the Pastoral Ministry shall be responsible for the reception and processing of applications for individual membership in the Synod through colloquy.

3.10.2.1    The Colloquy Committee for the Pastoral Ministry shall consist of the First Vice-President of the Synod as chairman, a district president appointed by

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 135 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 130 of 182

the Council of Presidents, and the presidents of the seminaries or their representatives.

3.10.2.2    The Colloquy Committee for the Pastoral Ministry shall establish and monitor academic, theological, and personal standards for admission to the office of the pastoral ministry by colloquy after consultation with the faculties of the seminaries.

(a)  In consultation with the President of the Synod, it shall develop all necessary policies to govern eligibility and the process to be followed to determine qualifications and suitability for pastoral service in the Synod.

(b)  Decisions to declare applicants qualified for the pastoral ministry and to certify for placement shall be at the sole discretion of the committee.

(c)  Every applicant whom the committee declares qualified shall be assigned his first call by the Council of Presidents acting as the Board of Assignments.

3.10.2.3    Applicants for the ordained ministry recommended by the respective district president who are eligible for colloquy under the Colloquy Committee's published policies may make application to the committee. Other applicants for the ordained ministry, such as Ministers of Religion— Commissioned, laymen of a special ethnic or linguistic group, and laymen who have fulfilled at least ten years of significant service in a congregation, may make application to a seminary for the Residential Alternate Route or any other appropriate program.

3.10.2.4    The LCMS laymen and commissioned ministers who receive a Master of Divinity or equivalent degree from a non-LCMS seminary may seek certification for call and placement in the Synod by participating in the Residential Alternate Route program of one of the seminaries of the Synod, if otherwise eligible for admission to the seminary.

3.10.2.5    All men desiring the ordained ministry who do not meet the eligibility requirements of the foregoing bylaws shall be directed to the seminaries for consideration in other programs.

### C. Colloquy Committee for Commissioned Ministry

3.10.3    Commissioned ministry colloquy programs prepare men and women who are currently serving in ministry roles for membership in the Synod.

(a)  Colloquy programs ensure that those who seek to join the Synod have been educated in theology, have become oriented to service to the Synod, and have demonstrated the spiritual and professional attributes that the Synod expects of its members.

(b)  Qualified applicants are those who are competent workers in the field for which they seek colloquy.

(c)  Every applicant declared qualified shall be assigned his/her first call by the Council of Presidents acting as the Board of Assignments.

3.10.3.1    The Colloquy Committee for Commissioned Ministry shall consist of the First Vice-President of the Synod as chairman, a representative of Concordia University System, and two college/university presidents appointed by the President of the Synod, two Concordia University System

Exhibit 2 to Defendants' Motion to Dismiss
Page 131 of 182

faculty involved in colloquy appointed by the president of Concordia University System, and one representative from CUEnet.

3.10.3.2    The committee shall direct the Synod's activity in matters of colloquies for commissioned ministers.

(a)  The committee shall oversee for each category of commissioned ministry at each college and university of the Synod the prerequisites for colloquy application, required courses of study, and internship expectations.

(b)  The committee shall also establish and monitor academic and theological standards for each of the colloquy programs. The committee shall consult the directors of the programs at the Synod's colleges and universities when establishing or reviewing the standards.

(c)  The committee shall render a report on the commissioned ministry colloquy activities to each convention of the Synod.

### D. Pastoral Formation Committee

3.10.4     The Pastoral Formation Committee shall be responsible for ensuring that the Synod's objective of training pastors is fulfilled consistently (Constitution Art. III 3).

3.10.4.1   The committee shall recommend any new routes leading to ordination for approval by resolution of the Synod. Such a recommendation shall follow consultation with the two seminary boards of regents in their annual joint meeting.

3.10.4.2   Seminaries will implement new routes to ordination only upon approval by resolution of the Synod.

3.10.4.3   The committee shall review, assess, coordinate, support and make suggestions for improvement of all existing noncolloquy routes leading to ordination in the Synod, including seminary and pre-seminary education programs.

3.10.4.4   The committee shall monitor and receive reports from all directors and committees charged with oversight of all routes to ordination (e.g., Specific Ministry Pastor Committee) and shall foster coordination and collaboration among them.

3.10.4.5   The committee shall consider the long term strategic direction of pastoral formation within the Synod and facilitate discussion of the same with the two seminary boards of regents in their annual joint meeting.

3.10.4.6   The Pastoral Formation Committee shall be comprised of the following members:

*Voting Members:*

1. The Chief Mission Officer of the Synod, chairman

2. The presidents of the seminaries

*Nonvoting Advisory Member:*

The Executive Director of the Office of Pastoral Education

3.10.4.7   The Pastoral Formation Committee shall meet at least once per year, and shall report on its work at the annual joint meeting of the two seminary boards of regents. Additional meetings shall be determined by the chairman in consultation with the committee members.

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 137 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 132 of 182

### E. Seminary Boards of Regents

3.10.5    Each seminary of the Synod, with its president and faculty, shall be governed by a board of regents, subject to general policies set by the Synod.

3.10.5.1    The board of regents of each theological seminary shall consider as one of its primary duties the defining and fulfilling of the mission of the seminary within the broad assignment of the Synod.

3.10.5.2    The board of regents of each theological seminary shall consist of no more than thirteen members, all voting:

1. Three ordained ministers, one commissioned minister, and three laypersons shall be elected by the convention of the Synod. Not more than two of the elected members shall be members of the same congregation.

2. A vice-president of the Synod shall be designated by the President of the Synod.

3. A district president other than the geographical district president shall be appointed by the Council of Presidents.

4. Four members may be appointed as members by the board of regents. In order to achieve continuity, a plan of staggered terms for the appointed board members will be adopted by each board of regents.

Elected and appointed seminary boards of regents members may serve a maximum of two consecutive six-year terms and must hold membership in a member congregation of the Synod.

Appointed members may not vote on the appointment of other members of the board.

3.10.5.3    Once annually, the two seminary boards of regents shall meet jointly on a seminary campus. Some of the meeting sessions shall be conducted jointly.

3.10.5.4    Vacancies that occur on a seminary board of regents shall be filled in the following manner.

(a)  If the vacancy occurs in a position that was previously filled by the board of regents, the board of regents shall be the appointing body.

(b)  If the vacancy occurs in a position that had been filled by a national convention of the Synod, the Board of Directors of the Synod shall be the appointing body and shall follow the nomination procedure provided for filling vacancies in elected positions on boards and commissions of the Synod as outlined in Bylaw 3.2.5.

3.10.5.5    The board of regents of each theological seminary shall become familiar with and develop an understanding of pertinent policies, standards, and guidelines of the Synod.

(a)  It shall develop details of policies and procedures for governance of the seminary.

(b)  It shall participate in and coordinate institutional planning for the seminary.

(c)  It shall review and approve new academic programs recommended by the administration and faculty after assessment of system policies in accordance with accreditation standards and guidelines and institutional interests and capacities.

(d)  It shall review and approve the institutional budget.

Exhibit 2 to Defendants' Motion to Dismiss
Page 133 of 182

(e) It shall approve institutional fiscal arrangements, develop the financial resources necessary to operate the seminary, and participate in its support program.

(1) Only the board of regents is authorized to establish a line of credit or to borrow for operating needs, subject to the policies of the Board of Directors of the Synod.

(2) All surplus institutional funds above an adequate working balance shall be deemed to be surplus and shall be deposited with the Chief Financial Officer of the Synod for investment. Earnings from such investments shall be credited to the depositing seminary.

(f) It shall establish appropriate policies for institutional student aid.

(g) It shall participate fully in the procedures for the selection and regular review of the president of the seminary and of the major administrators; approve of the appointment of faculty members who meet the qualifications of their positions; approve sabbatical and study leaves; and encourage faculty development and research.

(h) It shall take the leadership in assuring the preservation and improvement of the assets of the seminary and see to the acquisition, management, use, and disposal of the properties and equipment of the seminary within the guidelines set by the Board of Directors of The Lutheran Church—Missouri Synod.

(i) It shall operate and manage the seminary as the agent of the Synod, in which ownership is primarily vested and which exercises its ownership through the Board of Directors as custodian of the Synod's property and the respective board of regents as the local governing body. Included in the operation and management are such responsibilities as these:

(1) Carrying out efficient business management through a business manager appointed on recommendation of the president of the seminary and responsible to him.

(2) Receiving of all gifts by deed, will, or otherwise made to the institution and managing the same, in accordance with the terms of the instrument creating such gift and in accordance with the policies of the board of regents.

(3) Demonstrating concern for the general welfare of the institutional staff members and other employees, adoption of regulations governing off campus activities, development of policies regarding salary and wage scales, tenure, promotion, vacations, health examinations, dismissal, retirement, pension, and other employee welfare benefit provisions.

(4) Determining that the Charter, Articles of Incorporation, Constitution, and Bylaws of the seminary conform to and are consistent with those of the Synod.

(5) Serving as the governing body corporate of the seminary vested with all powers which its members may exercise in law either as directors, trustees, or members of the body corporate, unless in conflict with the laws of the domicile of the seminary or its Articles of Incorporation. In such event the board of regents shall have

Exhibit 2 to Defendants' Motion to Dismiss
Page 134 of 182

power to perform such acts as may be required by law to effect the corporate existence of the seminary;

(6)  Establishing and placing a priority on the capital needs of the seminary and determining the plans for the maintenance and renovation of the buildings and property and purchase of needed equipment, but having no power by itself to close the seminary or to sell all or any part of the property which constitutes the main campus.

(7)  Recognizing that the authority of the board of regents resides in the board as a whole and delegating the application of its policies and execution of its resolutions to the president of the seminary as its executive officer.

(8)  Reviewing and approving the major policies of the seminary regarding student life and activities as developed by the faculty and recommended by the administration.

(9)  Promoting the public relations of the seminary and developing the understanding and cooperation of its constituency.

(10)  Requiring regular reports from the president of the seminary as the executive officer of the board and through him from other officers and staff members in order to make certain that the work of the seminary is carried out effectively.

*Seminary Presidents*

3.10.5.6   The president of a theological seminary shall be the executive officer of the board of regents. He shall serve as the spiritual, academic, and administrative head of the seminary.

(a)  He shall represent the seminary in its relations to the Synod and its officers and boards.

(b)  He shall supervise, direct, and administer the affairs of the seminary and all its departments, pursuant to the rules and regulations of the Synod and its boards and agencies, and the policies of the board of regents.

(c)  He shall bring to the attention of the board of regents matters that require consideration or decision and make pertinent recommendations.

(d)  He shall be the academic head of the faculty, preside at its meetings, and be an *ex officio* member of all standing committees of the faculty and its departments.

(e)  He shall periodically visit or cause to be visited the classes of professors and instructors, and in general secure conformity in teaching efficiency and subject matter to the standards and policies prescribed by the board of regents and by accrediting agencies.

(f)  He shall advise and admonish in a fraternal spirit any member of the faculty found dilatory, neglectful, or exhibiting problems in his teaching. Should this action prove ineffective, he shall request selected members of the faculty privately to engage their colleague in further fraternal discussion. If this results in failure to correct or improve the situation, the president shall report the matter to the board of regents with his recommendation for action.

Exhibit 2 to Defendants' Motion to Dismiss
Page 135 of 182

(g)  He shall delegate or reassign one or more of his functions to a member of the faculty or staff, although standing administrative assignments shall be made by the board of regents upon his recommendation.

(h)  He shall be responsible for the provision of spiritual care and nurture for every student.

(i)  He shall carefully watch over the spiritual welfare, personal life, conduct, educational progress, and physical condition of the students and in general exercise such Christian discipline, instruction, and supervision as may be expected at a Christian seminary.

(j)  He shall be responsible for the employment, direction, and supervision of all employees of the seminary.

(k)  He shall be responsible for the business management of the school and for the proper operation and maintenance of grounds, buildings, and equipment.

(l)  He shall make periodic and special financial reports to the board of regents.

3.10.5.6.1   The president of each theological seminary shall serve a five-year renewable term of office under the terms set forth herewith under Bylaw 3.10.5.6.1 (c), beginning with the date of his assumption of his responsibilities as president.

(a)  Each president shall relinquish academic tenure upon assumption of the presidency, and shall not be granted academic tenure during the time of presidential service.

(b)  The president and board of regents shall develop mutually agreed upon institutional goals and priorities that give direction to the individual as he carries out the duties of the office of the presidency. The board of regents will annually evaluate presidential effectiveness based on these goals and priorities.

(c)  Nine months prior to the end of each five-year term, the board of regents will conduct a formal review of the president's effectiveness in the current term of office. The president shall then be eligible for another five-year term by majority action of the board of regents, voting with a ballot containing only the current president's name.

(1)  In addition to considering the evaluation report, the board of regents shall consult with the President of the Synod.

(2)  The regents may consult with other boards, commissions, and councils of the Synod as they deem wise.

(d)  In the event that a president's term is not renewed, the office of the president shall be considered vacant as of the end of the term of the incumbent. A president whose term is not renewed shall continue to receive full salary and benefits for six months excepting those benefits specifically associated with the office of the president.

(e)  When a president retires, the board of regents may continue the president's full salary and benefits for six months excepting those benefits specifically associated with the office of the president.

3.10.5.6.2   As soon as an impending vacancy in the office of president is known, the board of regents, with prior consent of the President of the Synod, shall

Exhibit 2 to Defendants' Motion to Dismiss
Page 136 of 182

issue in an official periodical of the Synod a call for the nomination of candidates for the presidency of the seminary. The call for nominations shall describe the office and qualifications desired to fill it.

(a)  Candidates may be nominated by congregations of the Synod, the board of regents, and the faculty of the seminary.

(b)  All nominations must be filed with the designee of the board of regents within 60 days of the date of its published request unless the request sets a later date.

(1)  Persons nominated may decline to be candidates, and their names will be removed from the list of nominees.

(2)  Nominees who allow themselves to be listed as candidates will be asked to pledge, if called, to render a decision within 15 days of receipt of the call, unless granted an extension by the board of regents.

(3)  The designee of the board of regents shall publish in an official periodical of the Synod the names of the nominees who have permitted themselves to be candidates and the date on which the election is to be held, which shall not be less than 30 days after the date of the publication of the names of the candidates.

(c)  All recommendations, statements of qualifications of any nominees, or objections to any nominee with reasons therefor, must be filed with the board of regents before the time fixed for the election. If a charge of false doctrine or offensive life is registered, the board of regents shall investigate and reach a decision on such charge before proceeding with the election.

(d)  A search committee, in its first phase of activity, shall be composed of three full-time faculty members (elected by the faculty with one alternate), and three board of regents members (elected by the board with one alternate). The alternate members shall participate in all meetings but shall not vote while serving as alternates.

(1)  The search committee shall make a written report of the needs of the seminary, the requirements of the Synod, and the required and desired qualifications of the nominees.

(2)  This written report shall be shared with the electors.

(e)  The search committee, in its second phase of activity, shall be composed of the original search committee, with the addition of three full-time faculty members (elected by the faculty).

(1)  The search committee shall prepare reports on the credentials of the nominees. The board of regents shall make available to the search committee all information it receives regarding the candidates.

(2)  The search committee shall submit to the electors a report of evaluations and recommendations regarding the candidates.

(f) Open forums shall be conducted with administrative staff, students, and other constituents as deemed essential by the search committee to gather extensive input to the process.

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 142 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 137 of 182

(g)  The search committee shall prepare a list of at least five candidates that it recommends to the electors as the list from which the election slate is prepared.

(h)  At a special meeting of the board of regents held to elect a president, there shall be present and voting as electors the members of the board of regents as a group with one vote (the district president on the board not voting with the board); the district president elected to the board or his official representative with a distinct vote; the chair of the Board of Directors of the Synod with one vote; and the President of the Synod or his official representative with one vote.

(i)  At least two weeks before the election, the electors shall finalize the slate of nominees to be interviewed in the election meeting.

(1)  The slate is fixed by a majority of the electors, with the members of the board of regents now voting as individuals.

(2)  They may add names to the search committee's list only from the officially published list of nominees, after consultation with the search committee.

(3)  The entire board of regents (voting as individuals) shall participate, and the addition or deletion of names shall require a simple majority of all electors and board-of-regents members present. The search committee shall be available to answer questions regarding potential interviewees.

(4)  If there are persons placed on the slate who were not on the search committee's recommendation list, they shall complete all interviews and questionnaires prior to the election.

(j)  The election shall be held on the day designated in the notice published in the official periodical of the Synod or as soon thereafter as feasible. The electors shall give due consideration to the recommendations and statements of qualifications and objections submitted on behalf of all nominees.

(k)  The initial election of a president shall require three of four elector votes. If the electors are unable to finalize the slate or complete the election, they shall postpone the election and, if desirable, request the board of regents to issue a new call for nominations.

(l)  The board of regents shall extend the formal call promptly after the election and submit its action to an official periodical of the Synod for publication.

(m)  Whenever a call is declined, the chairman of the board of regents shall give notice in an official periodical of the Synod and shall promptly call another meeting of the electors, at which meeting the call may be reissued or another person may be elected from among the remaining candidates, or the board of regents may be requested by the electors to issue a new call for candidates.

*Seminary Faculties*

3.10.5.7   The faculty of each theological seminary of the Synod shall consist of the president, the full-time faculty, and the part-time faculty.

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 143 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 138 of 182

(a)  Part-time or temporary faculty members are distinguished by an appropriate prefix or suffix ("visiting, guest, adjunct, emeritus") or the term "graduate assistant."

(b)  Part-time or temporary faculty members shall hold nonvoting membership on the faculty.

3.10.5.7.1  At each theological seminary the president shall propose creation, modification, or abolition of administrative positions to the board of regents for its approval.

(a)  The board of regents at each school shall maintain clear policies for filling and vacating administrative positions.

(b)  Administrative appointments shall be made by the board of regents on recommendation by the president of the seminary.

(c)  Each board of regents shall maintain a clear plan of succession of administration to assure that the seminary continues to function effectively in the case of incapacity or lengthy absence of the president.

3.10.5.7.2  Each theological seminary shall have established policies and procedures related to appointments. There shall be two levels of faculty appointments: (1) Initial level, where the appointment can be terminated with no formal requirement for a show of cause; (2) continuing level, where termination requires a formal show of cause.

(a)  Seminaries are free to decide for themselves what names to apply to these two levels of appointment.

(b)  Each seminary normally shall have at least thirty-five percent of its full-time faculty serving at the continuing appointment level.

(c)  Each seminary shall require specific action by the board of regents for promotion from an initial-level appointment to a continuing-level appointment.

(d)  Standards or qualifications for moving a faculty member from initial-level appointment to continuing-level appointment shall be the following:

(1)  The faculty member shall ordinarily have completed four to six years of creditable service (periods of leave are not included) as a member of the faculty of one or more educational institutions of the Synod, at least the last two years of which shall have been in the seminary currently served.

(2)  The faculty members shall, as determined by their academic discipline, regularly continue to demonstrate scholarly achievement that may be institutionally funded as determined by the board of regents.

(3)  The faculty member's reputation, character, concern for students, and ability to honor leaders shall present a good reflection on the seminary and the church.

(4)  The faculty member's aptness to teach has been demonstrated by effective communication in the classroom.

(e)  Steps in moving a faculty member from an initial-level appointment to a continuing-level appointment shall be the following:

(1)  If the board of regents, on recommendation of the president of the seminary, determines that a faculty member meets the above

158

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 144 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 139 of 182

requirements and is still at the initial-level appointment, it shall either carry forward the procedure for promotion to a continuing-level appointment or inform the faculty member of its decision not to do so, in which case the individual either may continue at the initial-level appointment or be terminated. Any continuation of employment at the initial-level appointment shall be on a year-to-year basis. Faculty employment during the initial-level appointment period may be terminated without disclosure of cause. In cases in which the decision is made to terminate the individual's contract, the contract shall be extended for at least six months beyond the time at which notice is given. If the board of regents does not take up the question of promotion to a continuing-level appointment at least nine months prior to the end of the sixth year of service, the faculty member may petition the board of regents to do so.

(2) After final review the board of regents may promote to a continuing-level appointment status.

(f)  Promotion to continuing-level appointment status shall in no case be construed as requiring or indicating advancement in rank or increase in salary.

(g)  Other types of faculty appointments may be established by seminaries as the need arises.

3.10.5.7.3  The board of regents on recommendation of the president of the seminary shall appoint all full-time members of the faculty.

(a)  All initial appointments to seminary faculties shall require prior approval by a majority vote of the President of the Synod (or his designee), the chairman of the Council of Presidents (or his designee), and the chairman of the Board for National Mission (or his designee), and shall include a thorough theological review. The three voters shall be ordained. The process shall be facilitated by the Executive Director of Pastoral Education.

(b)  The terms and conditions of every appointment shall be stated in writing and be in the possession of both the seminary and the prospective faculty member before the appointment is consummated. Limitations of academic freedom because of the religious and confessional nature and aims of the seminary shall be stated in writing at the time of the appointment and conveyed to the person being appointed.

(c)  Ordinarily candidates for full-time teaching positions shall be rostered members of the Synod. When laypersons are employed in full-time teaching positions, they shall pledge to perform their duties in harmony with the Holy Scriptures as the inspired Word of God, the Lutheran Confessions, the Synod's doctrinal statements, and the policies of the Synod.

(d)  The board of regents may decline to renew an initial-level appointment of a faculty member at its discretion and without formal statement of cause. If reappointment to the teaching staff is not contemplated, the board of regents shall so notify the faculty member in writing through the president of the seminary at least six months

Exhibit 2 to Defendants' Motion to Dismiss
Page 140 of 182

prior to the expiration of the current appointment. Notice of non-reappointment shall be made at least 6 months before the expiration of an initial-level appointment of a faculty member.

(e) The board of regents shall maintain standards of good practice that provide uniform procedures for renewing faculty employment contracts.

(f) Each seminary shall state policies regarding faculty appointments, employment contracts, contract renewal, and contract termination for all employees.

3.10.5.7.4   A formal procedure shall be in place to carry out performance reviews for all faculty on a regular basis to help faculty identify their strengths as well as areas in which improvement is needed (formative) and to provide the information needed to make a decision about future employment status (summative).

(a) Performance reviews shall be based on a set of clearly articulated criteria that are shared with faculty prior to their employment and current assignment.

(b) All faculty on initial-level appointments shall be reviewed at least triennially.

(c) All faculty on continuing-level appointments shall be reviewed at least every five years.

(d) The president of a seminary may call for a formal review of any faculty member at any time.

(e) The review shall involve input from peers.

(f) A written summary of the results of the review shall be prepared.

(g) The summary shall be shared with the faculty member involved and he/she shall be given an opportunity to respond.

(h) A final decision about any action to be taken as a result of the review shall be made by the board of regents of the seminary upon recommendation of the president of the seminary.

(i) An appeal process shall be in place for use by faculty members of a continuing-level appointment (those who already have been granted continuing-level appointment status) who wish to challenge a termination decision. The appeal may be about the substance of the decision or the procedures followed in reaching the decision.

(j) Faculty members with an initial-level appointment (who have no expectation of continued employment) shall not be entitled to an appeal process following (or prior to) a decision of non-retention. The only exception is that a faculty member with an initial-level appointment may ask the board of regents to assure that appropriate procedures were followed in reaching the decision.

3.10.5.7.5   The only causes for which members of a faculty may be removed from office, other than honorable retirement, are (1) professional incompetency including, but not limited to, the failure to meet the criteria identified in Bylaw 3.10.5.7.2 (d); (2) incapacity for the performance of duty; (3) insubordination; (4) neglect of or refusal to perform duties of office; (5) conduct unbecoming a Christian; and (6) advocacy of false doctrine

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 146 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 141 of 182

(Constitution Art. II) or failure to honor and uphold the doctrinal position of the Synod as defined further in Bylaw 1.6.2 (b).

3.10.5.7.6   The board of regents may decline to renew the appointment of a faculty member during an initial-level appointment period without a formal statement of cause.

3.10.5.7.6.1   No member of the faculty on a continuing-level appointment or on an initial-level appointment except at the expiration of the term of appointment shall be removed from the faculty either by ecclesiastical authority or by the board of regents except for cause.

3.10.5.7.7   Positions of initial-level appointment as well as continuing-level appointment faculty may be terminated by the board of regents under certain institutional conditions that do not reflect on the competency or faithfulness of the individual faculty member whose position is terminated. These conditions are the following: (1) Discontinuance of an entire program; (2) discontinuance of an entire division or department of a seminary; (3) reduction of the size of staff in order to maintain financial viability in compliance with policies concerning fiscal viability; and (4) discontinuance, merger, or consolidation of an entire seminary operation.

(a) In the event of termination of a faculty position by the board of regents, a minimum of six months advance notice to initial-level appointment faculty and 12 months advance notice to continuing-level appointment faculty must be provided the terminated faculty member in writing.

(b) The opportunity to serve the seminary in another capacity for which the terminated faculty member has credentials and qualifications shall be offered the terminated faculty member if such a vacancy exists at the time of termination or becomes available within two academic years.

(c) In identifying which specific faculty positions are to be discontinued or terminated, the board of regents shall follow the guidelines and procedures of that seminary's reduction in force policy.

(d) A terminated position may not be filled subsequently by another person during the next two academic years without first offering the last previous incumbent who held the position with continuing-level appointment status the position at his or her last previous salary plus average annual salary increases provided to that faculty during the interim.

3.10.5.7.8   A faculty member who is on a roster of the Synod is under the ecclesiastical supervision of the Synod. In the event a member is removed from membership in the Synod pursuant to procedure established in these bylaws, then that member is also considered removed from the position held and shall be terminated forthwith by the board of regents.

3.10.5.7.9   The board of regents shall have authority to investigate, hear, and act on any complaint regarding the conduct of office of seminary faculty and administration, including those arising out of Bylaw 3.10.5.7.5.

(a) If the board of regents receives a complaint against a member of that seminary's faculty or administration concerning any matter, including those specified under Bylaw 3.10.5.7.5, except in a matter of sexual misconduct or criminal behavior, it shall direct the complainant

161

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 147 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 142 of 182

first to meet face-to-face with the respondent in an attempt to resolve the issue (in the manner described in Matthew 18:15).

(1)  The president of the seminary shall assist in this attempt.

(2)  If the president himself is the respondent, the chairman of the board shall act in his stead.

(b)  Should allegations involve information that could lead to the expulsion of the member from the Synod under Article XIII of the Constitution, the member's ecclesiastical supervisor is to be informed immediately of the accusation (Bylaws 2.14.3 and 2.17.3).

(c)  If the complainant is of the opinion that such informal reconciliation efforts have failed and there is a wish to pursue the matter, the complainant shall prepare a written statement of the matter in dispute and a written statement setting forth, in detail, the efforts that have been made to achieve informal reconciliation and forward such statements to the board of regents and to the respondent.

(d)  Within 21 days after receipt of the written statement of the matter in dispute, the respondent shall submit a written reply to the board of regents and the complainant. If the respondent fails to reply, the allegations of the statement of the matter in dispute shall be deemed accepted.

(e)  Upon receipt of a reply from the respondent, or if no reply is received and the board of regents determines that all informal reconciliation efforts have failed, the board of regents shall form a review committee of five persons (Matthew 18:16), which shall be chosen as follows:

(1)  Each party shall select one faculty member and one regent.

(2)  The Secretary of the Synod shall select the fifth member by blind draw from the Synod's roster of hearing facilitators, who shall serve as chairman.

(3)  The selection shall be completed within one month of the date on which the board decides to form the review committee.

(f)  If the board decides that the matter is of such a nature that the interests of the seminary will best be served, it may limit the activities of the respondent. It may do so by relieving the respondent of teaching and/or administrative duties pending final resolution of the conflict. However, contractual obligations of the seminary shall continue until the matter is resolved.

(g)  The review committee shall proceed as follows:

(1)  The committee shall hold its first hearing no later than 60 days after the last committee member has been appointed.

(2)  The chairman of the committee shall notify the complainant and the respondent, at least 28 days in advance, of the date, time, and place of the said hearing.

(3)  If any part of the dispute involves a specific question of doctrine or doctrinal application, each party shall have the right to an opinion from the Commission on Theology and Church Relations. If it involves questions of Constitution or Bylaw interpretation, each party shall have a right to an interpretation from the Commission on

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 148 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 143 of 182

Constitutional Matters. The request for an opinion must be made through the review committee, which shall determine the wording of the question(s). The request for an opinion must be made within 30 days of the final formation of the review committee. If a party does not request such an opinion within the designated time, such a request may still be made to the review committee, which shall, at its discretion, determine whether the request shall be forwarded. The review committee shall also have the right, at any time, to request an opinion from the Commission on Theology and Church Relations or the Commission on Constitutional Matters. When an opinion has been requested, the time limitations will not apply until the opinion has been received by the parties to the matter. Any opinion received must be followed by the review committee.

(4)  All hearings shall be private, attended only by the parties to the matter and the witnesses who can substantiate the facts relevant to the matter in dispute. The review committee shall follow the procedures set forth in the *Standard Operating Procedures Manual* for this bylaw to be followed in the hearing and shall establish the relevancy of evidence so that each party shall be given an opportunity to present fully its respective position. In performing its duty, the review committee shall continue efforts to reconcile the parties to the matter on the basis of Christian love and forgiveness. If a party is a board or commission of the Synod or its districts, it shall be represented by its chairman or a designated member.

(5)  Within 60 days after completion of the final hearing, the review committee shall issue a written decision which shall state the facts determined by the committee and the reasons for its decision and forward them to the parties to the matter and the board of regents. The board of regents shall then take appropriate action, which shall be final.

(h)  If the committee decides there is a valid complaint

(1)  regarding matters under Bylaw 3.10.5.7.5 (1)–(4), it may take whatever action it deems appropriate, including recommendation for termination of the employment contract;

(2)  Regarding matters under Bylaw 3.10.5.7.5 (5)–(6), if the member of the seminary's faculty or administration is a member of the Synod, it must also refer the complaint to the district president, who shall follow the procedure set forth in Bylaw sections 2.14 or 2.17.

(i)  At every stage of the above-described procedure, all parties to the matter must be furnished copies of all documents filed.

(j)  Any decision made pursuant to Bylaw 3.10.5.7.9 shall be final and binding on the parties involved with no right of further appeal.

(k)  In consultation with the Commission on Constitutional Matters, the boards of regents of the seminaries shall maintain and amend, as necessary, a *Standard Operating Procedures Manual* which shall serve as a comprehensive procedures manual for this bylaw.

3.10.5.7.10  Each seminary shall have established policies and procedures related to salary, faculty organization, faculty involvement in establishing education

policies, dispute resolution, modified service, sabbaticals and leaves. It shall also have policies and procedures related to student discipline.

(a)  The salary schedules of all institutional employees shall be fixed by the board of regents on recommendation of the president of the seminary.

(b)  The board of regents, on recommendation of the president of the seminary, shall establish an effective faculty organizational structure.

(1)  The president or his designee shall preside at regular and special meetings.

(2)  The faculty shall elect a secretary and provide for the election of committees, consisting of faculty members or of faculty members and other persons, who shall study, evaluate, and report to the faculty on policy matters affecting the academic activity of the seminary, the activity and welfare of the members of the faculty, and the life and welfare of the students.

(c)  Each faculty shall recommend policy to the board of regents through the president for the admission, transfer, dismissal, or withdrawal of students, set the standards of scholarship to be maintained by students, determine criteria for graduation or failure, act on recommendations in the matter of granting certificates, diplomas, and such academic or honorary degrees as may lawfully be conferred by the seminary.

(d)  Each faculty shall develop and construct curricula implementing the recognized and established purposes of the seminary and designed to attain the objectives of preparation for professional church workers and other Christian leaders approved by the Synod.

(e)  Each faculty shall pursue the improvement of teaching and learning and the evaluation of their effectiveness in every segment of the seminary and its curriculum.

(f)  Each faculty shall recommend policy to the board of regents through the president regarding out-of-class life and activity of its students so that the co-curricular and off- campus activities of the students contribute to the attainment of the educational objectives of the seminary. The faculty shall recommend such policies as will be conducive to the cultivation of a Christian deportment on the part of all students, will stimulate the creation of a cultured and academically challenging atmosphere on and about the whole campus, and will make a spiritually wholesome community life possible.

(g)  Each faculty shall recommend policy to the board of regents through the president regarding the maintenance of wholesome conditions of faculty service and welfare.

(h)  The faculty of each seminary, because it prepares professional workers directly for service in the Synod, shall conform its placement policies to the provisions for the distribution of candidates and workers through the Board of Assignments of the Synod.

(1)  An academic year of supervised internship (vicarage) is required of all seminary students before graduation.

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 150 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 145 of 182

(2)  Every vicar shall be assigned by the Council of Presidents, acting as the Board of Assignments.

(i)  Controversies and disagreements among faculty members or other employees (other than those involving matters described in Bylaw 3.10.5.7.5) shall be submitted to the president of the seminary for mediation.

(1)  If this proves unsuccessful, he shall report the matter to the board of regents for arbitration.

(2)  After hearing the parties to the matter, the board will render its decision, which shall be final, without the right of appeal under the provisions of the dispute resolution process of the Synod.

(3)  A record of the proceedings shall be filed with the President of the synod.

(j)  Faculty members may request early retirement under the applicable provisions of the Concordia Retirement Plan.

(1)  Upon retirement, faculty members who are ordained or commissioned ministers of religion are retained on the emeritus roster of the Synod on the basis of Bylaw 2.11.2.1 and may, by action of the board of regents, be retained on the roster of their faculty as "emeriti" (Bylaw 3.10.5.7).

(2)  Service loads and the conditions of service after retirement shall be determined by the board of regents.

(k)  Each seminary shall state policies regarding sabbaticals for faculty and leave-of-absence procedures for all employees within guidelines provided by the board of regents.

(l)  Each board of regents, on recommendation of the president, shall adopt a comprehensive policy statement committing the school to the principles of Christian discipline, evangelical dealing, and good order governing the students individually and collectively.

(1)  Each student shall be informed regarding the disciplinary policy and procedure and under what conditions and to whom an appeal from a disciplinary decision may be made.

(2)  There shall be no right of appeal under the provisions of the dispute resolution process of the Synod.

### F. Concordia University System Boards of Regents

3.10.6       Each college and university of the Synod, with its president and faculty, shall be governed by a board of regents, subject to general policies set by the Synod, including those established by the Concordia University System.

3.10.6.1   In exercising its relationship to the Synod and to the Concordia University System as set forth elsewhere under Bylaw 3.6.6 and following, the board of regents of each institution shall consider as one of its primary duties the defining and fulfilling of the mission of the institution within the broad assignment of the Synod.

3.10.6.2   The board of regents of each college and university shall consist of no more than 18 members, all voting.

1. One ordained minister, one commissioned minister, and two laypersons shall be elected by the conventions of the Synod.

Case 1:23-cv-01042-RP    Document 9-1    Filed 01/23/24    Page 151 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 146 of 182

2. One ordained minister, one commissioned minister, and two laypersons shall be elected by the geographical district in which the institution is located. If any board is required by its governing documents to include one or more persons holding residence or church membership in a specific locality, the institution is responsible for ensuring (including by appointment, if necessary) that individual(s) meeting such requirements are included among those persons serving on such board, and no such geographic restriction shall apply to Synod-elected regents.

3. No fewer than four and no more than eight members shall be appointed as members by the board of regents according to a process determined by the individual institution.

4. The president of the district in which the college or university is located or a district vice-president as his standing representative shall serve as an *ex officio* member.

5. One member, who may be an ordained minister, a commissioned minister, or a layperson, shall be appointed by the Praesidium of the Synod after consultation with the President of the respective institution and the Board of Directors of the Synod.

6. College and university board of regents members may be elected or appointed to serve a maximum of three consecutive three-year terms and must hold membership in a member congregation of the Synod.

7. Not more than two of the elected members shall be members of the same congregation.

8. Persons elected or appointed to a board of regents should be knowledgeable regarding the region in which the institution is located and shall demonstrate familiarity and support for the doctrinal positions of the Synod and possess two or more of the following qualifications: theological acumen, an advanced academic degree, experience in higher education administration, administration of complex organizations, finance, law, investments, technology, human resources, facilities management, or fund development. Demonstrated familiarity and support of the institution is a desired quality in the candidate. When regents are elected at the national convention of the Synod or appointed by the board of regents, qualifications shall be reviewed and verified by the Secretary of Synod (or designee) and the President of the CUS (or designee). When regents are elected at district conventions, qualifications of all nominees, including floor nominees, shall be reviewed and verified by the chair and secretary of the district board of directors or their designees.

3.10.6.3    Vacancies that occur on a board of regents shall be filled in the following manner:

(a)  If the vacancy occurs in a position that was previously filled by the board of regents, the board of regents shall be the appointing body.

(b)  If the vacancy occurs in a position that was previously filled at a district convention, the district board of directors shall be the appointing body.

(c)  If the vacancy occurs in a position that had been filled by a national convention of the Synod, the Board of Directors of Concordia University

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 152 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 147 of 182

System shall be the appointing body and shall follow the nomination procedure provided for filling vacancies in elected positions on boards and commissions of the Synod as outlined in Bylaw 3.2.5.

3.10.6.4    The board of regents of each institution shall become familiar with and develop an understanding of pertinent policies, standards, and guidelines of the Synod and the Board of Directors of Concordia University System.

(a)  It shall develop detailed policies and procedures for governance of the institution, including but not limited to

(1)  attention to specific ways that the institution is confessing Jesus Christ in full accord with the doctrinal position of the LCMS (Constitution Art. II) and fulfilling His mission in our world;

(2)  ensuring that all faculty receive appropriate formal, ongoing training in the doctrines of Holy Scripture as rightly taught in the Lutheran Confessions as they relate to their academic disciplines, consistent with the CUS Lutheran Identity Statement, to enable faculty to engage in responsible exercise of their academic freedom under the CUS Academic Freedom Policy in effect from time to time;

(3)  annual certification of the institution's financial viability;

(4)  creation, modification, and abolition of administrative positions;

(5)  processes for filling and vacating administrative positions;

(6)  a clear plan for succession of administration to ensure that the institution continues to function effectively in the case of incapacity or lengthy absence of the president and other executive officers;

(7)  handling faculty complaints and dispute resolution under an operating procedures manual approved by the Concordia University System Board; and

(8)  all subject matters for which Concordia University System requires policies to be developed (Bylaw 3.6.6.7).

(b)  It shall coordinate institutional planning with other Concordia University System schools and approve master plans for its college or university.

(c)  It shall review and approve academic programs recommended by the administration and faculty after assessment of system policies in accordance with Concordia University System standards and guidelines and institutional interests and capacities.

(d)  It shall review and approve the institutional budget.

(e)  It shall approve institutional fiscal arrangements, develop the financial resources necessary to operate the institution, and participate in its financial support.

(1)  Only the board of regents is authorized to establish a line of credit or to borrow for operating needs, subject to the policies of the Board of Directors of Concordia University System and the Board of Directors of the Synod.

(2)  All surplus institutional funds above an adequate working balance shall be deposited with the Concordia University System for investment. Earnings from such investments shall be credited to the depositing institution.

Exhibit 2 to Defendants' Motion to Dismiss
Page 148 of 182

(f)  It shall establish appropriate policies for institutional student aid.

(g)  It shall participate fully in the procedures for the selection and regular review of the president of the institution and of the major administrators; approve of the appointment of faculty members who meet the qualifications of their positions; approve sabbatical and study leaves; and encourage faculty development and research.

(h)  It shall take the leadership in assuring the preservation and improvement of the assets of the institution and see to the acquisition, management, use, and disposal of the properties and equipment of the institution within the guidelines set by the Board of Directors of The Lutheran Church—Missouri Synod.

(i)  It shall operate and manage the institution as the agent of the Synod, in which ownership is primarily vested and which exercises its ownership through the Board of Directors as custodian of the Synod's property, the Board of Directors of Concordia University System, and the respective board of regents as the local governing body. Included in the operation and management are such responsibilities as these:

(1)  Carefully exercising its fiduciary duties to the Synod.

(2)  Determining that the charter, articles of incorporation, constitution, and bylaws of the institution conform to and are consistent with those of the Synod.

(3)  Carrying out efficient business management through a financial officer appointed on recommendation of the president of the institution and responsible to him.

(4)  Receiving of all gifts by deed, will, or otherwise made to the institution and managing the same, in accordance with the terms of the instrument creating such gift and in accordance with the policies of the board of regents.

(5)  Demonstrating concern for the general welfare of the institutional staff members and other employees, adoption of regulations governing off campus activities, development of policies regarding salary and wage scales, tenure, promotion, vacations, health examinations, dismissal, retirement, pension, and other employee welfare benefit provisions.

(6)  Serving as the governing body corporate of the institution vested with all powers which its members may exercise in law either as directors, trustees, or members of the body corporate, unless in conflict with the laws of the domicile of the institution or its Articles of Incorporation. In such event the board of regents shall have power to perform such acts as may be required by law to effect the corporate existence of the institution.

(7)  Establishing and placing a priority on the capital needs of the institution and determining the plans for the maintenance and renovation of the buildings and property and purchase of needed equipment, but having no power, without the prior consent of the Board of Directors of the Concordia University System and the Board of Directors of the Synod, to close the institution or to sell all or any part of the property which constitutes the main campus, except that the Board of Regents may close the institution in the event of legal

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 154 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 149 of 182

insolvency necessitating immediate closure after consultation with the Board of Directors of the Synod and the Board of Directors of the Concordia University System.

(8)  Recognizing that the authority of the board of regents resides in the board as a whole and delegating the application of its policies and execution of its resolutions to the president of the institution as its executive officer.

(9)  Establishing a comprehensive policy statement regarding student life and behavior that is consistent with the doctrine and practice of the Synod and that commits the institution to the principles of Christian discipline, an evangelical manner, and good order.

(10)  Promoting the public relations of the institution and developing the understanding and cooperation of its constituency.

(11)  Requiring regular reports from the president of the institution as the executive officer of the board and through him from other officers and staff members in order to make certain that the work of the institution is carried out effectively.

3.10.6.5   Recognizing its fiduciary duty as a board, as well as the requirements of accrediting bodies that an institution's governing board be clearly defined and have ultimate authority and independence in the operation of the institution subject to appropriate pre-established policies and rules (e.g., Synod Bylaws), under no circumstances shall a board delegate its authority to, nor commingle its authority with, any other body that includes non-board members. Boards of regents may meet as a "committee of the whole" with advisory groups (e.g., a foundation board; the CUS board) to seek input, but no votes shall be taken at such meetings.

*Concordia University System Presidents*

3.10.6.6   The president of the institution shall be the executive officer of the board of regents. He shall serve as the spiritual, academic, and administrative head of the institution.

(a)  He shall represent the institution in its relations to the Synod and its officers and boards.

(b)  He shall supervise, direct, and administer the affairs of the institution and all its departments, pursuant to the rules and regulations of the Synod and its boards and agencies and the policies of the board of regents.

(c)  He shall bring to the attention of the board of regents matters that require consideration or decision and make pertinent recommendations.

(d)  He shall be the academic head of the faculty, preside at its meetings, and be an *ex officio* member of all standing committees of the faculty and its departments with the exception of the standing hearings committee or of another standing committee to which the functions of such a committee have been assigned.

(e)  He shall periodically visit or cause to be visited the classes of professors and instructors, and in general secure conformity in teaching efficiency and subject matter to the standards and policies

169

Exhibit 2 to Defendants' Motion to Dismiss
Page 150 of 182

prescribed by the board of regents and by the Synod through the Board of Directors of Concordia University System.

(f)  He shall advise and admonish in a fraternal spirit any member of the faculty found dilatory, neglectful, or exhibiting problems in his teaching. Should this action prove ineffective, he shall request selected members of the faculty privately to engage their colleague in further fraternal discussion. If this results in failure to correct or improve the situation, the president shall report the matter to the board of regents with his recommendation for action.

(g)  He shall delegate or reassign one or more of his functions to a member of the faculty or staff, although standing administrative assignments shall be made by the board of regents upon his recommendation.

(h)  He shall be responsible for the provision of spiritual care and nurture for every student.

(i)  He shall carefully watch over the spiritual welfare, personal life, conduct, educational progress, and physical condition of the students and in general exercise such Christian discipline, instruction, and supervision as may be expected at a Christian educational institution.

(j)  He shall be responsible for the employment, direction, and supervision of all employees of the institution.

(k)  He shall be responsible for the business management of the school and for the proper operation and maintenance of grounds, buildings, and equipment.

(l)  He shall make periodic and special financial reports to the board of regents.

(m)  He shall represent the institution on the Concordia University System Advisory Council.

3.10.6.6.1  The president of each college or university shall serve a five-year renewable term of office under the terms set forth herewith under Bylaw 3.10.6.6.1 (c), beginning with the date of his assumption of his responsibilities as president.

(a)  Each president shall relinquish academic tenure upon assumption of the presidency, and shall not be granted academic tenure during the time of presidential service.

(b)  The president and board of regents shall develop mutually agreed upon institutional goals and priorities that give direction to the individual as he carries out the duties of the office of the presidency. The board of regents will annually evaluate presidential effectiveness based on these goals and priorities.

(c)  Nine months prior to the end of each five-year term, the board of regents will conduct a formal review of the president's effectiveness in the current term of office. The president shall then be eligible for another five-year term by majority action of the board of regents, voting with a ballot containing only the current president's name.

(1)  In addition to considering the evaluation report, the board of regents shall consult with the President of the Synod and the chairman of the Board of Directors of Concordia University System.

Case 1:23-cv-01042-RP Document 9-1 Filed 01/23/24 Page 156 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 151 of 182

(2) The regents may consult with other boards, commissions, and councils of the Synod as they deem wise.

(d) In the event that a president's term is not renewed, the office of the president shall be considered vacant as of the end of the term of the incumbent.

3.10.6.6.2 The following process shall govern the selection of a college/university president.

(a) When a vacancy or an impending vacancy in the office of president is known, the board of regents shall inform the campus constituencies, the Board of Directors of Concordia University System, the President of the Synod, an official periodical of the Synod, and other parties as appropriate. If a vacancy in a presidency occurs, the board of regents shall appoint an interim president, who shall meet the qualifications established for the office of president. He shall bear the title "interim president" and may not serve more than eighteen (18) months without the concurrence of the President of the Synod. Such interim appointee shall be ineligible to serve on a permanent basis without the concurrence of the President of the Synod.

(1) The board of regents shall request that the Board of Directors of Concordia University System authorize the institution to publish a request for nominations for the position of president.

(2) The board of regents shall request that the Board of Directors of Concordia University System schedule a transition review of the campus. The review is to provide a report on the state of the campus for use by the search committee, the board of regents, and the candidates.

(b) The board of regents shall oversee the process of defining the institution's needs, describing the desired characteristics of the new president, and issuing a request for nominations.

(1) A search committee shall be formed that represents the board of regents, the faculty, and the staff. Faculty members and staff members on the committee shall be members of LCMS congregations.

(2) The search committee shall prepare a description of the needs of the institution based on listening forums, the findings of the transition review, and other relevant information. Before publishing a call for nominations, the President of Concordia University System shall convene an in-person conference involving the board of regents, the search committee, and the prior approval panel to discuss the qualifications that will be sought and the search criteria.

(3) The search committee shall develop written criteria that will be utilized by the committee to screen the candidates and will be utilized by the board of regents to guide the presidential election.

(4) A person designated by the board of regents shall act as its agent to issue a request for the nomination of candidates for the presidency of the institution. The request for nominations shall be submitted to the parties who are authorized to nominate. Candidates may be nominated by congregations of the Synod, the Board of Directors of Concordia University System, the board of

171

Exhibit 2 to Defendants' Motion to Dismiss
Page 152 of 182

regents, and the faculty of the institution. The request for nominations shall state when the nominating period closes.

(5) After the nomination period has closed, the agent of the board of regents shall contact each nominee to notify him of his nomination and to determine whether such nominee will allow his name to stand for election. Nominees who wish to be considered must furnish written consent, along with such documentation as the board of regents has requested from candidates in its call for nominations, to the agent by a date set by the board of regents, which date shall be not less than fifteen days after the last nominee is notified.

(6) After the due date set by the board of regents for nominee responses, the agent of the board of regents shall forward the list of nominees who have agreed to let their names stand, together with all materials received from such candidates, to the President of Concordia University System to enable him to convene a prior approval panel consisting of the President of the Synod, the district president serving on the institution's board of regents, and the chair of the Board of Concordia University System. The names of the nominees shall not otherwise be disclosed outside the board of regents.

(7) The prior approval panel shall meet to consider the nominees. The panel may choose to remove names from the list by its two-thirds majority vote. The panel shall complete its work within sixty (60) days after receipt of the list of nominees.

(8) After the prior approval panel has completed its work, the President of Concordia University System shall transmit the finalized list back to the agent of the board of regents within 15 days and shall cause such list to be published in an official periodical of the Synod. The board of regents shall then announce the list of names of nominees who have received approval but shall not publicize the names of those not receiving approval. The announcement shall contain contact information to submit correspondence regarding the nominees and provide a reasonable deadline for receiving correspondence. The board of regents shall establish a procedure for processing correspondence regarding nominees.

(c) The board of regents shall utilize the work of the search committee to continue its search process.

(1) The search committee shall provide a report to the board of regents regarding the qualifications of the candidates with its observations and recommendations.

(2) The board of regents shall provide the candidates with a report containing full disclosure of the condition of the institution.

(d) The board of regents may suspend, terminate, or restart its search at any time, but it may only elect a president of the college or university from a slate it submitted that received prior approval as described above. The President of Concordia University System (or a designee) shall attend the board of regents meeting at which an election occurs as

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 158 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 153 of 182

a guest and advisor. The board of regents may require the president-elect to accept or decline within fifteen days.

(e) If the president-elect declines the position, the board of regents is responsible for resuming the effort to fill the vacancy. Candidates from the approved slate shall remain eligible to be elected until a president has been elected and accepted the position.

*Concordia University System Faculties*

3.10.6.7    The faculty of each college or university of the Synod shall consist of the president, the full-time faculty and the part-time faculty.

(a) Part-time or temporary faculty members are distinguished by an appropriate title.

(b) Part-time or temporary faculty members shall hold nonvoting membership on the faculty.

3.10.6.7.1    The Concordia University System Board of Directors shall maintain in its policies a list of subject matters that each educational institution must address in its own policies and procedures, to include faculty appointments, employment contracts, contract renewal, contract termination, faculty organization, modified service, sabbaticals, and dispute resolution.

3.10.6.7.2    Except as otherwise provided in these bylaws, the board of regents on recommendation of the president of the institution shall appoint all full-time members of the faculty. The terms and conditions of every appointment shall be stated in writing and be in the possession of both the institution and the prospective faculty member before the appointment is consummated. Limitations of academic freedom because of the religious and confessional nature and aims of the institution shall be stated in writing at the time of the appointment and conveyed to the person being appointed. Faculty members, full- and part-time, shall pledge to perform their duties in harmony with the Holy Scriptures as the inspired Word of God, the Lutheran Confessions, and the Synod's doctrinal statements.

3.10.6.7.3    All initial appointments to persons serving on theology faculties, or teaching classes in or cross-listed with the theology department, shall require prior approval by a majority vote of the President of the Synod (or his designee), the chairman of the Council of Presidents (or his designee), and a member of the Concordia University System board selected by the chair, and shall include a thorough theological review. The three voters shall be ordained. The process shall be facilitated by the president of Concordia University System. Initial appointment refers to the initial engagement of any person to teach one or more theology courses, regardless of assigned academic department, other than faculty who teach theology courses no more than one academic year in any three-year period.

3.10.6.7.4    A formal procedure shall be in place to carry out performance reviews for all faculty on a regular basis.

3.10.6.7.5    Other than honorable retirement, termination of faculty employment may only be the result of the following:

(a)  professional incompetency;

(b)  incapacity for the performance of duty;

(c)  insubordination;

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 159 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 154 of 182

(d)  neglect of or refusal to perform duties of office;

(e)  conduct unbecoming a Christian;

(f)  advocacy of false doctrine (Constitution Art. II) or failure to honor and uphold the doctrinal position of the Synod as defined further in Bylaw 1.6.2 (b);

(g)  discontinuance of an entire program (e.g., social work, business);

(h)  discontinuance of an entire division or department (e.g., modern foreign language) of a college or university;

(i)  reduction of the size of staff in order to maintain financial viability in compliance with policies concerning fiscal viability;

(j)  discontinuance, merger, or consolidation of an entire college or university operation;

(k)  expiration of the term of a contract of employment; and

(l)  for those whose position requires membership in a Synod congregation, if the person ceases to be a member of a Synod congregation.

3.10.6.7.5.1  A faculty member who is on a roster of the Synod is under the ecclesiastical supervision of the Synod. In the event a member is removed from membership in the Synod pursuant to procedure established in these bylaws, then that member is also considered removed from the position held and shall be terminated forthwith by the board of regents.

3.10.6.7.5.2  An appeal process consistent with the *Model Operating Procedure Manual for Faculty and Administration Complaints and Appeal of Termination: Colleges and Universities* (developed by the Commission on Constitutional Matters in consultation with the Concordia University System) shall be in place for use by faculty members who wish to challenge a termination decision. Notwithstanding the provisions of any such policy, any person connected with an institution who is a member of Synod shall also remain under the ecclesiastical supervision of the Synod, and nothing in any such CUS institution policy shall be construed to limit or constrain any action that may be taken, or the rights or responsibilities of any party, pursuant to the Synod's *Handbook* with respect to a member of Synod.

### G. Board for Church Extension

3.10.7  Until such time that all districts of the Synod conduct their church extension activities through the Lutheran Church Extension Fund—Missouri Synod, there shall also be a Board for Church Extension of The Lutheran Church—Missouri Synod. Members of the board of directors of the Lutheran Church Extension Fund—Missouri Synod shall also serve as members of the Board for Church Extension of the Synod.

(a)  The board shall aid districts in motivating individuals, congregations, and organizations in acquiring investments for church extension in a systematic manner.

(b)  The board shall strive to coordinate and obtain uniformity in the church extension programs of the districts.

(c)  The board shall provide leadership in advance site acquisition for further expansion.

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 160 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 155 of 182

(d)  The board shall establish policies within which districts are to operate with respect to the making of loans and the type of security required, taking into consideration the financial status of the organization to which the loan is being made and circumstances of the loan.

(e)  The board shall establish policies and programs for maintaining, supervising, and enlarging the district church extension funds on a sound financial basis by

(1)  periodically reviewing financial statements of all district church extension funds;

(2)  conferring with districts in cooperatively promoting church extension funds and seeking greater uniformity in the policies and programs of the districts;

(3)  including a complete financial statement of district funds in its report to the Synod, including money borrowed and received, the total amounts of loans outstanding, and the amounts delinquent in each district; and

(4)  providing architectural advice and site selection counsel, when requested, to congregations, Synod and district boards and commissions, and agencies of the Synod and district.

3.10.7.1    District church extension boards or committees shall administer the district's church extension programs in conformity with policies established by the Synod's Board for Church Extension and in accordance with district regulations.

### 3.11  Staff

3.11.1    Unless otherwise specified by the board of directors of the respective agency, all employees shall serve at the pleasure of the appointing authorities.

(a)  Members of the Synod who are appointed to positions requiring an ordained minister or a commissioned minister shall receive a solemn call.

(b)  Other ordained or commissioned ministers appointed to positions in the Synod shall be affirmed by the respective board or commission through a solemn call.

(c)  All positions requiring called ministers shall be filled in consultation with the President of the Synod subject to all appropriate provisions of the Constitution and Bylaws as well as the respective board of directors' policy manual.

### 3.12  Nominations and Elections

*Regional Elections*

3.12.1    For all elections requiring regional representation, the Board of Directors of the Synod and the Council of Presidents acting jointly shall designate five geographic regions.

Exhibit 2 to Defendants' Motion to Dismiss
Page 156 of 182

(a)  Regions shall be designated 24 months prior to conventions of the Synod and shall take into consideration geographical and number of congregations information in the interest of fair representation.

(b)  For purposes of regional elections, individuals will be considered a part of the geographical region in which they reside. Canadian congregations will be placed as a whole into the region which the Board of Directors and the Council of Presidents deem appropriate.

(c)  This information shall be shared immediately with all districts of the Synod.

### Nominations of President and First Vice-President

3.12.2    Nominations for the offices of President and First Vice-President shall be made by the member congregations of the Synod.

(a)  Each member congregation shall be entitled to nominate from the clergy roster of the Synod two ordained ministers as candidates for president, and two ordained ministers as candidates for First Vice-President.

(b)  The Secretary of the Synod shall provide a secure and verifiable method that will offer opportunity to every congregation of the Synod to submit nominations. He shall, with the approval of the Board of Directors of the Synod, obtain the assistance necessary to accomplish this task.

(c)  The nominating process shall be completed not later than five months prior to the opening date of the convention. There shall be no opportunity provided for additional nominations.

(d)  The Secretary of the Synod may engage, with the approval of the Board of Directors, an external auditing firm to tabulate the nominations and shall report in the *Convention Workbook* the names and tallies of all ordained ministers who have received nominating votes.

### Elections of President and First Vice-President

3.12.2.1    The candidates for the office of President shall be the five ordained ministers who received the highest number of votes in the nominating process and who consent to serve if elected. The candidates for the office of First Vice-President shall be the 20 ordained ministers receiving the highest number of votes in the nominating process. No opportunity shall be provided for additional nominations.

(a)  The Secretary of the Synod shall notify each candidate and shall secure his approval in writing within ten days after receiving the results of the ballots for the inclusion of his name on the ballot.

(b)  In the event of the death, declination, or unavailability of any candidate, the nominee having the next highest number of votes shall become a candidate. In the event of a tie for the final candidate position, all names involved in the tie shall be included as candidates.

3.12.2.2    The Secretary of the Synod shall publish in the *Convention Workbook* and post on the Synod Website brief biographies of the five candidates for President and the 20 candidates for First Vice-President. This report shall contain such pertinent information as age, residence, number of years in

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 162 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 157 of 182

the Synod, present position, offices previously held in a district or the Synod, year of ordination, former pastorates, involvement in community, government, or interchurch affairs, and any other specific experience and qualification for the office. Opportunity to provide a personal statement shall be offered to each candidate for publication in an official periodical, this statement also to be posted on the Synod's Website.

3.12.2.3    The Secretary of the Synod shall compile and maintain the voters list for the election of the President of the Synod. This list and any of its parts shall not be disseminated.

    (a)  This voters list shall include:

        (1)  the pastor of each member congregation or multi-congregation parish (assisting pastors are not eligible)

        (2)  a lay person from the congregation or parish

    (b)  The congregation shall present to the Secretary of Synod 90 days prior to the election a proper credentials form provided by the Secretary, signed by two of the congregation's officers. If a congregation or parish has more than one pastor eligible to vote, the congregation shall designate on the credentials form which pastor will cast a vote on behalf of the congregation.

    (c)  If one or both delegates are unavailable, congregations shall be provided opportunity to select substitute voters up to a deadline designated by the Secretary.

    (d)  The registration status of congregations shall be made available to respective district presidents for the sole purpose of their encouraging registration for greater congregational participation. The registration status of congregations shall not be further disseminated.

3.12.2.4    Six weeks prior to the national convention, the Secretary of the Synod shall provide, via a secure and verifiable method, opportunity for two voting delegates from each congregation, as determined according to Bylaw 3.12.2.3, to vote for one of the candidates for President. The Secretary shall, with the approval of the Board of Directors of the Synod, obtain the assistance necessary to accomplish this task. If no candidate receives a majority of the votes cast, a second or succeeding ballots are required for a majority; the candidate receiving the fewest votes and all candidates receiving less than 15 percent of the votes cast shall be dropped from the ballot, unless only one candidate receives 15 percent or more of the votes cast, in which case the three highest candidates shall constitute the ballot, and another vote shall be taken in the same manner.

3.12.2.5    Following the completion of the election and at least two weeks prior to the convention, the Secretary shall notify the candidates of the results of the ballot(s). He shall thereafter also make the results known to the public. The candidate receiving a majority of the votes cast shall be declared elected.

3.12.2.6    Prior to all other elections, the convention shall elect the First Vice-President.

    (a)  The President-elect shall select from the list of 20 nominees for the Office of First Vice-President five nominees who have consented to serve if elected, at least two of whom shall be taken from the top five nominees.

Exhibit 2 to Defendants' Motion to Dismiss
Page 158 of 182

(b)  Balloting will proceed with the candidate receiving the smallest number of votes eliminated from consideration until one candidate receives a majority of the votes cast, who shall be declared elected.

### Nominations and Elections of Regional Vice-Presidents

3.12.2.7    After the results of the first-vice-presidential election have been announced, the convention shall elect five regional vice-presidents according to the following nominations and elections process.

(a)  Each member congregation of a region (including any non-geographic-district congregations in that region) shall have been given opportunity to nominate two ministers of religion–ordained from the clergy roster of the Synod with residence in its designated region as candidates for regional vice-president.

(b)  The Secretary of the Synod shall receive such nominations (signed by the president and secretary of the nominating congregation).

(c)  The names of the five ministers of religion–ordained residing within the boundaries of each geographic region who receive the most nominating votes shall form the slate from which the Synod convention shall select by majority vote each regional vice-president.

(d)  No opportunity shall be provided for additional nominations from the floor of the convention.

(e)  Voting delegates to the national convention shall be entitled to vote for one of the candidates from each region. If no candidate receives a majority of the votes cast, the three candidates receiving the highest number of votes shall be retained on the ballot.

(f)  Balloting shall continue with the candidate receiving the least number of votes eliminated until one candidate from each region has received a majority of the votes cast.

(g)  Upon the election of the regional vice-presidents, a final election will take place ranking the vice-presidents by separate ballots with a simple majority of voting delegates determining the second, third, fourth, fifth, and sixth vice-presidents in line of succession.

### Nominations and Elections of Regional Positions—Board of Directors and Mission Boards

3.12.2.8    The convention shall elect the regional positions for the Synod's Board of Directors and Mission Boards according to the following nominations and elections process.

(a)  Approximately 24 months before a regular meeting of the Synod in convention, the Secretary of the Synod shall solicit from those agencies with positions to be filled descriptions of criteria for qualified candidates to serve in those positions.

(b)  With such criteria in view, the Secretary shall issue the first call for nominations through a publication of the Synod and on the Synod website 18 months before the convention, soliciting names from the agencies and officers of the Synod and the congregational and individual members of the Synod, along with lay persons of the congregations of the Synod. Nominations may be received from persons or parties outside the region.

178

Case 1:23-cv-01042-RP    Document 9-1    Filed 01/23/24    Page 164 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 159 of 182

(c)  All nominees for a particular regional position must reside within the boundaries of the region for which they are nominated.

(d)  All incumbents eligible for reelection shall be considered to be nominees.

(e)  The qualifications of each nominee shall be submitted together with the names on forms made available on the Synod's website.

(f)  All suggested names and information for consideration by the Committee for Convention Nominations shall be submitted to the Secretary of the Synod no later than nine months prior to the convention of the Synod.

(g)  All nominations received shall be forwarded to the Committee for Convention Nominations, who shall select candidates according to the process outlined in Bylaw 3.12.3.6.

(h)  Amendments to the slate of candidates developed by the Committee for Convention Nominations shall follow the process outlined in Bylaw 3.12.3.7.

(i)  Voting delegates to the national convention shall elect the members of all elective regional positions following the process outlined in Bylaw 3.12.4.2.

### Committee for Convention Nominations

3.12.3    The Committee for Convention Nominations is to be regarded as an *ad hoc* convention committee, to which limitations on holding multiple offices do not apply.

3.12.3.1    In preparation for a convention of the Synod, one-half of the districts shall elect through their regular election procedures at the district convention one member to the Committee for Convention Nominations and an alternate:

| | |
|---|---|
| Atlantic | Nebraska |
| California-Nevada-Hawaii | North Wisconsin |
| | Northern Illinois |
| Central Illinois | Northwest |
| Florida-Georgia | Oklahoma |
| Indiana | SELC |
| Iowa West | South Dakota |
| Minnesota South | Southern |
| Missouri | Wyoming |

3.12.3.2    In preparation for the following convention, the remaining districts shall elect in the same manner:

| | |
|---|---|
| Eastern | New Jersey |
| English | North Dakota |
| Iowa East | Ohio |
| Kansas | Rocky Mountain |
| Michigan | South Wisconsin |
| Mid-South | Southeastern |
| Minnesota North | Pacific Southwest |
| Montana | Southern Illinois |
| New England | Texas |

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 165 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 160 of 182

3.12.3.3 One-half of the electing districts shall be designated by the Secretary of the Synod to elect a professional church worker and the other half a layperson, with roles reversed every six years.

3.12.3.4 The Secretary of the Synod shall handle the preliminary work for the Committee for Convention Nominations.

(a)  He shall begin to solicit names of nominees from the agencies and officers of the Synod at least 24 months prior to the convention.

(b)  Approximately 24 months before a regular meeting of the Synod in convention, he shall solicit from those agencies with positions to be filled descriptions of criteria for qualified candidates to serve in those positions.

(c)  With such criteria in view, the Secretary shall issue the first call for nominations through a publication of the Synod and on the Synod Website 18 months before the convention, soliciting names from the agencies and officers of the Synod and the congregational and individual members of the Synod, along with lay persons of the congregations of the Synod.

(d)  All incumbents eligible for reelection shall be considered to be nominees.

(e)  The qualifications of each nominee shall be submitted together with the names on forms made available on the Synod's Website.

(f)  All suggested names and information for consideration by the Committee for Convention Nominations shall be submitted to the Secretary of the Synod no later than nine months prior to the convention of the Synod.

(g)  The Secretary shall present the names and information gathered to the Committee for Convention Nominations at its first meeting.

3.12.3.5 The first meeting of the Committee for Convention Nominations shall be at the call of the Secretary of the Synod at least six months prior to the convention of the Synod.

(a)  The Secretary shall not serve as a member of the committee, but he shall convene the initial meeting of the committee and be available, upon call, for consultation.

(b)  The committee shall elect its own chairman, vice-chairman, and secretary and shall organize its work in whatever way it deems necessary. It shall designate two of its members to serve with the chairman on the Standing Committee on Nominations.

(c)  The committee shall inform itself as to the duties and requirements of each position to be filled and thereby be guided in its selection of candidates from the list of nominees gathered by the nominations process.

(d)  In the case of boards of directors of synodwide corporate entities, the committee shall consult with the governing boards of each synodwide corporate entity, through their chief executive, to receive input for the committee's consideration.

(e)  In the case of the boards of regents of educational institutions of the Synod, the committee shall consult with the President of the Synod or the Board of Directors of Concordia University System and receive their

Exhibit 2 to Defendants' Motion to Dismiss
Page 161 of 182

input for the committee's consideration. The President of Concordia University System (or a designee) and the Secretary of the Synod (or a designee) shall review and verify that nominees are qualified as stated in Bylaw 3.10.6.2 (8).

(f) The Committee for Convention Nominations shall establish and maintain a procedure to generate and publish in advance of the convention a list of names from all who have been nominated for Synod boards and commissions who meet the qualifications (Bylaws 3.10.6.2 [8] and 3.6.6.3) to serve on a Concordia University System board of regents or the Concordia University System Board of Directors.

3.12.3.6   The Committee for Convention Nominations shall select candidates for all elective offices, boards, and commissions except President, First Vice-President, and vice-president positions requiring regional nominations (Bylaws 3.12.2.7–8; 3.3.4.1; 3.8.2.3; 3.8.3.3).

(a) At least two candidates and at least one alternate shall be selected for each position.

(b) The committee shall determine its complete list of candidates and alternates, obtain the consent of the persons it proposes to select as candidates, and transmit its final report at least five months prior to the convention to the Secretary of the Synod, who shall post the list on the Synod's Website and provide for its publication in a pre-convention issue of an official periodical of the Synod and in the *Convention Workbook.*

(c) The committee's report shall list the qualifications of various positions used in the solicitation of nominees and contain pertinent information concerning each candidate, such as occupation or profession, district affiliation, residence, specific experience, number of years as a member of an LCMS congregation, present position, offices previously held in a congregation, district or the Synod, and qualifications for the office in question, and, if the candidate so desires, also a brief personal statement.

(d) The committee shall prepare a reserve list of nominees for use by the chairman at the convention, should the need arise.

(e) The committee shall, whenever possible, prepare and hold in readiness a slate of candidates for any new board or commission likely to be established at a convention of the Synod, and of these the committee should, whenever possible, be informed in advance.

(f) Any changes to the complete list of candidates and alternates necessitated by unavailability, declination, or ineligibility of candidates occurring after the last meeting of the Committee on Convention Nominations may be effected by the Standing Committee on Nominations. As much as possible, this shall be accomplished by advancing available alternates and by making use of the reserve list of nominees approved by the plenary committee.

3.12.3.7   The chairman of the Committee for Convention Nominations shall submit the committee's report in person to the convention at one of its earliest sessions and shall facilitate the amendment of the slate from the floor.

(a) The convention may amend the slate by nominations from the floor.

Exhibit 2 to Defendants' Motion to Dismiss
Page 162 of 182

(b) Floor nominations shall be brought individually before the convention for approval before being added to the ballot and shall be voted on immediately without discussion. No floor nominations shall be accepted which would preclude, by virtue of election limitations of such office, election of any pending nominee already on the slate of candidates received from the Committee for Convention Nominations without disclosing such potential effect immediately to the convention.

(c) Such floor nominations may only be made from the list of names which have previously been offered to the Committee for Convention Nominations prior to the final deadline for the submission of nominations, unless the convention shall otherwise order by a simple majority vote. The President of Concordia University System (or a designee) and the Secretary of the Synod (or a designee) shall verify that all floor nominees to serve as a member of a Concordia University System board of regents possess qualifications as stated in Bylaw 3.10.6.2 (8). The Chief Administrative Officer of the Synod (or a designee) and the Secretary of the Synod (or a designee) shall review and verify that all floor nominees to serve as a member of the Concordia University System Board of Directors possess qualifications as stated in Bylaw 3.6.6.3.

(d) If the convention approves the receipt of such additional nominations, any delegate making such a nomination shall have secured prior written consent of the candidate being nominated and shall immediately submit it to the chairman of the Committee for Convention Nominations along with required pertinent information concerning the nominee as detailed in Bylaw 3.12.3.6 (c).

3.12.3.8   The Committee for Convention Nominations, in consultation with officials of the Synod, shall maintain a description of the desirable expertise required for each elected position and shall transmit this information together with suggestions for improvement of procedures to the next committee through the Secretary of the Synod.

### Committee on Elections

3.12.4   Prior to the convention of the Synod, the President shall appoint a Committee on Elections, which shall make the necessary arrangements for the elections, shall be responsible for the preparation and distribution of ballots, and shall supervise the elections and the tabulation of the votes.

(a) The President shall designate a chairman for the committee.

(b) The Secretary of the Synod shall provide the chairman with a current manual of suggested election procedures.

(c) The committee shall be empowered to adopt procedures and methods that will insure efficiency and accuracy, including the use of mechanical, electronic, or other methods of casting, recording, or tabulating votes.

(d) All ballots in each election shall be preserved by the chairman of the committee until the close of the convention and shall then be destroyed.

3.12.4.1   The names and district affiliation of the candidates in all elections—at least two for each position—shall be placed on the election ballot in alphabetical

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 168 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 163 of 182

order. All names shall be listed without any distinctive mark, except where regional representation is a preference or requirement of the Synod.

3.12.4.2   The President shall determine and announce a period of time during the convention for the election of the members of all elective boards and commissions.

(a) After the election of the First Vice-President and the other vice-presidents in that order, the election by ballot of the Secretary shall next be conducted.

(b) The election by ballot of the members of the Board of Directors shall next follow. Each category (ordained, commissioned, and lay) shall be elected separately, the order of the elections to be rotated to allow each category to be the first elected at every third convention, as monitored by the Secretary of the Synod.

(c) The election by ballot of the members of all elective boards and commissions shall next follow.

(d) A majority of all votes cast shall be required for election to all elective offices and elective board positions. Candidates receiving a majority on the first ballot shall be declared elected.

(e) Except in the elections of the First Vice-President and regional vice-presidents, when a second or succeeding ballot is required for a majority, the candidate receiving the fewest votes and all candidates receiving less than 15 percent of the votes cast shall be dropped from the ballot, unless fewer than two candidates receive 15 percent or more of the votes cast, in which case the three highest candidates shall constitute the ballot.

(f) The tally of the votes cast for each candidate shall be announced after each ballot in all elections.

(g) A person elected to an office requiring a background check shall not assume office until an appropriate background check has been completed. If a person is elected and subsequently fails to pass a required background check, the office will be deemed vacant and will be filled according to Bylaw 3.2.5.

3.12.4.3   The Committee on Elections shall report the official results of each election to the convention and shall file a written report of the tabulation of votes of each election, certified by the chairman and at least one other member of the committee, with the convention chairman and the Secretary of the Synod.

# 4. DISTRICT ORGANIZATION

## 4.1 Governing Principles

4.1.1   The Synod is not merely an advisory body in relation to a district, but establishes districts in order more effectively to achieve its objectives and carry on its activities.

4.1.1.1   A district is the Synod itself performing the functions of the Synod. Resolutions of the Synod are binding upon the districts.

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 169 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 164 of 182

4.1.1.2      The Constitution of the Synod is also the constitution of each district. The Bylaws of the Synod shall be primarily the bylaws of the district.

> (a) A district may adopt additional bylaws, regulations, and resolutions necessary or proper for its own administration or for effectively carrying on the work of the Synod. These shall not conflict with the Constitution and Bylaws of the Synod.
>
> (b) The bylaws and regulations of the district and any subsequent change therein shall be submitted to the Commission on Constitutional Matters of the Synod for review and approval.

4.1.1.3      The Synod decides when and whether a district shall be formed, divided, realigned, or merged with another or other districts, or dissolved; determines the boundaries of a district; and approves the name of a district.

> (a) A proposal calling for the formation, division, realignment, merger, or dissolution of a district or districts may be initiated by a national convention of the Synod or the Board of Directors of the Synod.
>
> (b) Such proposals shall
>
>> (1) be submitted to the President at least six months prior to a convention of the Synod;
>>
>> (2) be produced in consultation with the Department of Rosters, Statistics, and Research Services;
>>
>> (3) include a substantiated description of the nonviable aspects of the current district(s) on the basis of general principles of viability adopted from time to time by conventions of the Synod, and shall specify the problems or factors which make the adoption of the proposal advisable or necessary;
>>
>> (4) provide evidence that the proposed change is the best of the options available;
>>
>> (5) provide a specific and realistic development plan for the proposed district(s), including detailed proposals for staff personnel and financial operations; and
>>
>> (6) be the object of an evaluation prepared by the Board of Directors of the Synod and submitted to the convention.

4.1.1.4      Transfer of congregations between districts is completed upon approval of the respective district boards of directors at the request of the congregation.

4.1.1.5      Transfer of congregations between partner churches requires the additional approval of the governing boards of the church bodies.

4.1.2      The membership of a district consists of all those members of The Lutheran Church—Missouri Synod (congregations, ordained and commissioned ministers) who have been received into the district at the time of joining the Synod, who have been transferred from another district, or who have been assigned to the district by the Synod.

4.1.2.1      Termination of membership in the Synod terminates membership in a district.

4.1.3      A district may incorporate or adopt such other convenient form of association as may be permitted by the civil laws under which the district carries on its activities. The form of incorporation or association and any subsequent proposed change thereof shall be submitted to the Commission on Constitutional Matters of the Synod for review and approval before

Exhibit 2 to Defendants' Motion to Dismiss
Page 165 of 182

adoption by the district and before presentation to the proper civil authorities.

4.1.4      Upon dissolution of a district, all property and assets to which the district holds title or over which it has control shall be transferred immediately to the Synod or its nominee.

4.1.4.1      Upon dissolution of a corporation controlled by a district (through its board of directors or its member congregations), the assets of such corporation shall be distributed to the district, or, if the district is not in existence, to The Lutheran Church—Missouri Synod.

4.1.5      Jurisdiction with respect to everything that is administered by or for the entire Synod resides in the national Synod itself. Jurisdiction includes but is not limited to general supervision of doctrine and practice; foreign missions; institutions of the Synod; qualification for ordination, commissioning, and installation of ordained and commissioned ministers and requirements for individual as well as congregational membership in the Synod; publication of official religious periodicals; conduct of negotiations and affiliations with other church bodies; and the like.

4.1.6      The relationship of a congregation to the district is the same as the relationship of a congregation to the Synod as defined in Article VII of the Constitution of the Synod and Bylaw sections 1.3, 1.6, 1.7, and 1.8.

4.1.6.1      Relationships on the district level are those as defined in Bylaw section 1.4.

4.1.6.2      Congregations interested in expanding their Gospel outreach into an area that crosses district lines are encouraged first to discuss their intent with their own district officials, followed by discussion with the appropriate district officials and the local congregations impacted by such work.

     (a) Any such expansion of Gospel outreach into an area that crosses district lines shall require the concurrence of both the president of the receiving geographical district and the board or committee responsible for missions in that district.

     (b) The ecclesiastical supervision of a new church start, satellite worship site, or any ministry established by a congregation in another district shall be decided by the affected district presidents.

4.1.7      Officers of the district shall have primary responsibility for district implementation of decisions of the Synod at the national level as they apply at the district level and within the boundaries of the respective district and for implementation of decisions of the district convention and district agencies.

4.1.7.1      Communications between national and district levels shall be maintained in order to carry out the most effective and coordinated programs possible.

## 4.2  District Conventions

4.2.1      Conventions of the districts shall afford opportunities for worship, nurture, inspiration, fellowship, and the communication of vital information. They are the principal legislative assemblies, which amend the district's Articles of Incorporation and Bylaws, consider and take action on reports and overtures, and handle appropriate appeals.

Exhibit 2 to Defendants' Motion to Dismiss
Page 166 of 182

(a)  The conventions of the districts shall be governed by the bylaws adopted by the Synod for its conventions, insofar as these may be applicable.

(b)  The district convention is the instrument to receive overtures (Bylaw 3.1.6.2), including overtures and recommendations for synodwide mission and ministry emphases submitted by member congregations and adopted by a circuit forum.

(c)  Following in-depth study and discussion, the district convention shall act on the overtures and may, as determined by the convention, submit overtures to the national convention.

(d)  The district convention shall, through delegate vote, forward to the national convention a list of two or three triennial mission and ministry emphases for consideration by the national convention.

(e)  Each district may adopt other regulations, provided these are not contrary to the Constitution and Bylaws of the Synod.

(f)  The president of the district shall conduct the sessions according to accepted parliamentary rules and shall so arrange the schedule of business that the sessions do not extend beyond six business days.

(g)  Districts may, at their own discretion, provide their convention workbooks and proceedings to each district congregation, delegate and alternate, officer, board, commission, and council member by a means of electronic communication, provided that any designated recipient shall be provided a printed copy of the workbook and proceedings upon request.

4.2.2    The delegates of a voting congregation or multi-congregation parish to a district convention shall be accredited.

(a)  To be entitled to vote, delegates shall return the proper credentials provided by the district secretary and signed by two of the congregation's officers, either by mailing them to the district office at a date determined by the district or by presenting them to the district secretary at the opening of the convention.

(b)  All duly elected voting delegates shall attend all sessions of the convention regularly until the close of the convention.

4.2.3    All nonvoting ordained and commissioned ministers who are members of the Synod within the district shall, unless they present a valid excuse, serve as advisory delegates.

(a)  They are entitled to voice and vote on a floor committee, if appointed, and to voice in the convention.

(b)  All advisory delegates* are expected to attend all sessions of the convention.

(c)  Those advisory delegates* whose office in the Synod, district, or other agency imposes professional or service requirements on which full and regular convention attendance makes undue demands, shall nevertheless, in consultation with their supervisory boards, arrange for

---

* Failing the congregational ratification of the constitutional amendment of Res. 9-05 (see *Handbook* preface), Bylaw 4.2.3 (b–c) will continue to read "advisory **members**" rather than "advisory delegates."

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 172 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 167 of 182

their own partial or occasional attendance and participation in accordance with policies established by their supervisory boards.

4.2.4   The President of the Synod or his representative shall report on the condition and affairs of the Synod. He shall also deliver the sermon at the opening or convention service.

## 4.3   District Officers

4.3.1   A president shall be elected from the clergy roster of the Synod by each district. Two or more vice-presidents, a secretary, and a circuit visitor for each circuit established by the district shall be elected from the clergy roster of the district. In the case of regional selections, nominees shall be from the clergy roster of the district with membership in a congregation in the designated region. (This shall also be the case for all other regional selections.)

4.3.2   Each district shall have a treasurer who shall be a layperson and shall be elected or appointed as the bylaws of the district may provide.

4.3.3   All officers and members of boards shall be members of member congregations of the district and, when appropriate, be members of congregations of designated regions during the course of their tenure.

## 4.4   District President

4.4.1   The district president is the chief executive of the district.

(a)   Upon him is incumbent the responsibility that the resolutions of the district are implemented.

(b)   He shall report to the district convention.

4.4.2   The district president shall represent the Synod in his district.

(a)   He shall cause the resolutions of the Synod to be implemented in the district, encouraging the congregations and schools to embrace the mission and ministry emphases adopted by the national convention for the triennium.

(b)   He shall regularly report to the President of the Synod.

(c)   He shall serve the congregations of the district as liaison between the congregations, district, and the Synod.

4.4.3   The Synod shall be represented, in connection with all ordinations, commissionings, and installations, by the president of the district that will have supervision of the worker being ordained, commissioned, or installed (see Bylaw section 2.12).

(a)   An ordained or commissioned minister shall be installed into each called position, whether for full- or part-time service.

(b)   Each installation shall be authorized by the appropriate district president and conducted, in accordance with forms and practices developed by the Synod for that purpose, by the district president or by an ordained minister designated by the district president.

(c)   The requirements of Bylaw 2.10.2 (a) shall be satisfied before a worker is ordained or commissioned and initially installed in a first call.

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 173 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 168 of 182

(d) Authorization for the ordination or commissioning and/or installation of an ordained or commissioned minister for foreign service, other than to a foreign member congregation, shall be provided by the appropriate district president upon the request of the Board for International Mission.

(e) Authorization for the ordination or commissioning and/or installation of a Synod-called non-foreign specialized minister shall be provided by the appropriate district president upon the request of the Board for National Mission.

4.4.4    The district president shall, in accordance with the Constitution of the Synod, in his ministry of ecclesiastical supervision visit the congregations of the district.

(a)  He shall arrange in advance for an official visit to each congregation of his district at least once every three years and otherwise as he deems it necessary. He may call upon the circuit visitors and vice-presidents to assist him with the triennial visitation of congregations.

(b)  In his official visits he shall seek to bring about to the greatest possible degree the achievement of the Synod's objectives as expressed in Article III of its Constitution.

(c)  He shall conduct his official visits in an evangelical manner.

(d)  He shall come to the pastor and the congregation as a brotherly advisor, reminding them of the joy of serving in the mission and ministry of the church.

(e)  In his visits he shall include fraternal discussion in regard to worship and communion attendance; participation by the congregation in missions and the work of the church at large; the congregation's evangelism and education endeavors; its cultivation of sound stewardship principles; all aspects of compensation for professional church workers; the need for maintenance of purity of doctrine; the strengthening of the bond of Christian fellowship; and the provision of resources, opportunities, and assistance so God's people can grow in their faith, hope, and love.

(f)  The jurisdiction of the district president shall include non-member congregations whose pastors are members of the Synod. However, for the purpose of official visits in such a congregation the consent of the congregation shall first be secured. The district president may appoint the circuit visitor in whose circuit such a congregation is located to be his official representative.

4.4.5    Each district president, in accordance with the Constitution of the Synod, shall supervise the doctrine, the life, and the official administration on the part of the ordained or commissioned ministers who are members through his district or are subject to his ecclesiastical supervision, and shall inquire into the prevailing spiritual conditions of the congregations of his district.

(a)  As often as possible he shall attend the conferences of ordained and commissioned ministers held in his district, advise the congregations of his district as to the calling of ordained and commissioned ministers, give counsel, and respond to requests and inquiries.

(b)  He may call upon circuit visitors to assist him.

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 174 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 169 of 182

4.4.6    The district president, even without formal request therefor, may through the proper channels arrange for an official visit or investigation when a controversy arises in a congregation or between two or more congregations of the district or when there is evidence of a continuing unresolved problem in doctrine or practice.

   (a)  He shall ask for a full report on the case in order that he may have a clear understanding of the situation.

   (b)  If he authorizes anyone to represent him in such matters, his representative shall be accorded the same rights as the district president.

4.4.7    The district president shall be responsible for maintaining the official rosters of his district.

   (a)  He shall add the names of those ordained or commissioned ministers initially placed in the district and those accepting a call to or otherwise transferring to the district.

   (b)  He shall remove the names of those who have died or have resigned their membership or have had their membership in the Synod duly terminated.

   (c)  An ordained or commissioned minister accepting a call shall immediately report such decision to his district president and shall request his district membership be evaluated (Bylaw 2.12.1.1). The district president shall forward any requisite transfer to the president of the receiving district.

   (d)  Upon receipt of the transfer and of a request for installation from the minister of religion, the district president of the receiving district shall install or authorize installation of such minister.

   (e)  He shall regularly forward roster reports to the Secretary of the Synod for publication in *The Lutheran Annual*.

4.4.8    The district president shall, with the assistance of his district's circuit visitors, promote and pursue unanimous participation by congregations in the submission of annual statistical reports as an expectation of membership in the Synod.

## 4.5  District Boards of Directors

4.5.1    Each district shall elect a board of directors, the size and composition of which shall be determined by the Bylaws of the district. The district board of directors shall also have the authority to choose to appoint to the board up to three voting lay members from the district's congregations to obtain additional skill sets (legal, finance, investment, administration, etc.). It shall have such powers and duties as are accorded to it by the Constitution, Bylaws, Articles of Incorporation, resolutions, and policies of the Synod, as well as those of the district.

   (a)  Subject to such limitations, it shall operate within the applicable federal and state laws.

   (b)  It shall be vested with the general management and supervision of the district's business and legal affairs and shall adopt policies and require procedures which assure that said management and supervision is effected.

Exhibit 2 to Defendants' Motion to Dismiss
Page 170 of 182

(c)  In fulfilling its functions and in coordinating its work with the Synod, the board shall be guided generally by the functions of the Board of Directors of the Synod as defined in Bylaws 3.3.4ff. as these apply to districts.

(d)  Between conventions it shall provide for implementation within the district of the decisions of the national and district conventions and allocate necessary funds for the support of the national and district budgets.

## 4.6  District Stewardship Promotion

4.6.1    Each district shall elect or appoint a committee, board, or individual responsible for stewardship.

(a)  This committee, board, or individual shall cooperate with the Synod's elected or appointed person/persons responsible for stewardship and shall assist and advise local congregations in the development and promotion of an adequate stewardship program.

(b)  Districts are advised to provide for the systematic supervision and qualified guidance and promotion of stewardship education.

(c)  Each district may invite a representative of the Synod to meet for mutual assistance in budget planning for mission and ministry.

(d)  Each district shall arrange for adequate time at its convention for a report on the mission and ministry program of the Synod, made by a representative of the Synod assigned by the President of the Synod.

## 4.7  District Nominations, Elections, and Appointments

4.7.1    Each district may adopt regulations for the nomination and election of its president; the nomination, selection, election, ranking, and succession in case of vacancies of its vice-presidents; and the nomination or selection of any regional officers or regional board of directors members, as long as these provisions do not conflict with the Bylaws of the Synod.

4.7.2    A nominating committee of each district shall be elected by the district convention. Nominating committees may not be employed in the election of the president and vice-presidents.

4.7.3    A majority of all votes cast by a district convention shall be required in every election to all elective offices and elective board positions. Except in the election of the president and the vice-presidents, the following regulations shall apply:

(a)  Candidates receiving a majority on the first ballot shall be declared elected.

(b)  When a second or succeeding ballot is required for a majority, the candidate receiving the fewest votes and all candidates receiving less than 15 percent of the votes cast shall be dropped from the ballot, unless fewer than two candidates receive 15 percent or more of the votes cast, in which case the three highest candidates shall constitute the ballot.

(c)  In every election balloting shall continue until every position has been filled by majority vote.

4.7.4    Terms of office shall be as follows:

190

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 176 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 171 of 182

(1) Elected officers, appointed board and commission members—three years.

(2) Elected board and commission members—three years. However, districts may adopt bylaws setting such terms at six years instead of three years.

4.7.5   Limitation of tenure, if any, may be determined by a district.

## 4.8  Official District Conferences

4.8.1   Official conferences shall be conducted for the spiritual and professional growth of their members.

(a)  Conferences, whether official or unofficial, provide a means for ordained and commissioned ministers to relate together on a regular basis.

(b) Matters pertaining to Christian doctrine and practice, to professional problems, to the proper conduct in office, to private study, to the welfare of the respective congregations and schools, to the work of the Synod, including the district, or to any other professional matter should at all times receive due and sympathetic attention.

(c)  The minutes and essays or a reasonably comprehensive summary of the essays accepted by the ordained and commissioned minister conferences in plenary and sectional meetings shall be mailed to the office of the district president for review and for the district's record within one month following such conference.

(d)  Professional conferences have no administrative functions in the Synod.

4.8.2   Official conferences for all ordained and commissioned ministers on the respective rosters of the Synod shall meet, if possible, in plenary sessions at least once each year.

(a)  The members of official conferences are to aim to cultivate positive relationships, to be mutually helpful in every way possible, and to encourage, instruct, and admonish one another in a spirit of sincerity and Christian love.

(b)  Such conferences may meet more frequently in major sections (not more than five sections) whose geographical boundaries shall be established by the district in convention.

(c)  Such major sectional meetings shall be regarded as sessions of the official conference.

(d)  All ordained and commissioned ministers on the district rosters are expected to attend meetings of their official conference or present a valid excuse.

(1)  Attendance at the official conferences shall be obligatory for ordained and commissioned ministers serving in congregations and parishes.

(2)  Those whose offices in the Synod, district, or other agency impose professional or service requirements on which full and regular conference attendance makes undue demands shall, nevertheless, in consultation with their supervisory boards, arrange

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 177 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 172 of 182

for their own partial or occasional attendance and participation in their own official conferences in accordance with policies established by their supervisory boards.

4.8.3    The plenary and any sectional conferences may adopt and submit overtures to conventions of the Synod, including those of districts.

## 4.9  Other District Meetings

4.9.1    Other meetings also may exist to consider matters of doctrine, exegesis, and practical theology, and may be used for promotion of the basic activities of the church. Such meetings, including circuit conferences, shall not be regarded as official conferences.

(a) Pastors, teachers, directors of Christian education, directors of Christian outreach, directors of family life ministry, directors of parish music, deaconesses, certified lay ministers, and parish assistants are encouraged to meet also jointly for the purpose of discussing doctrinal, professional, and practical matters.

(b) Ordained and commissioned ministers are also encouraged to organize smaller meetings in addition to their official conferences.

(c) Intersynodical conferences for the study of theology are desirable and are encouraged on a regular basis. They also are not official conferences.

## 5. CIRCUITS

## 5.1  Visitation Circuits

5.1.1    A visitation circuit is a network of congregations that "walks together" for mutual care, support, advice, study, ecclesiastical encouragement, service, coordination, resources, and counsel—all for the sake of greater congregational participation in God's mission.

5.1.2    Districts shall establish visitation circuits according to geographical criteria.

## 5.2  Circuit Visitors

5.2.1    The circuit visitor is the principal officer of the circuit and serves in accordance with the duties assigned to this position in the Constitution and Bylaws of the Synod and the Bylaws of the districts.

(a)  The circuit may select such other officers as it deems necessary.

(b)  The circuit may create such other offices as may be desirable and also appoint committees for specific assignments.

(c)  The circuit visitor may appoint from member congregations of the circuit, with the approval of the district president, pastors, teachers, or laypersons to assist him in fulfilling his responsibilities.

5.2.2    The circuit visitor shall hold his position by virtue of his selection by the circuit forum and ratification by the district convention.

Exhibit 2 to Defendants' Motion to Dismiss
Page 173 of 182

(a)  Circuit forums shall meet at the call of their circuit visitors to select their circuit visitors no later than the time established by the district. When in-person meetings are burdensome (e.g., geographically large circuits), a circuit may select another manner of meeting (e.g., e-meeting technologies) that is suitable and made available to all participants, taking into consideration the need to provide for an open and fair exchange of ideas and secure, private, and confidential voting.

(b)  Prior to the day of the circuit forum, nominations for candidates for the office of circuit visitor may be submitted by a voting congregation of the circuit and suggested by the district president, in consultation with the praesidium of the district.

(c)  Each circuit may adopt procedures and methods that will insure efficiency and accuracy, including the use of mechanical, electronic, or other methods of casting, recording, or tabulating votes. The privilege of voting shall be exercised by the representatives from each member congregation of the circuit, who shall have been selected in the manner prescribed by the congregation (Bylaw 5.3.2).

(d)  All nominated pastors serving congregations and emeriti pastors whose names were nominated prior to the day of the circuit forum shall be eligible for election in accordance with section 4.3 of these Bylaws.

   (1) Following presentations of pertinent information regarding each pastor as listed in Bylaw 3.12.3.6 (c) and circuit visitor responsibilities as provided hereafter in this bylaw, each voter shall submit the names of two pastors on the initial ballot.

   (2)  The three pastors (or more in case of a tie vote) who receive the highest number of votes in this preliminary ballot shall be placed on the next ballot. Each voter shall vote for only one candidate.

   (3) Balloting shall continue with the lowest candidate being removed from each succeeding ballot until one pastor shall have received a simple majority of all votes cast, who shall be declared the nominee.

(e)  Immediately following the circuit forum, the circuit visitor shall report in writing the results of the selection process to the secretary of the district in preparation for ratification by the district convention.

(f)  In the event that a circuit visitor has not been selected by a circuit forum or has been selected but is no longer available to serve, thus resulting in no circuit visitor selection being included on the convention slate of circuit visitors for a circuit, the district president shall make the selection, which selection shall then be included on the convention slate of circuit visitors.

(g)  The convention shall have the right to alter the slate by amendment.

(h)  The convention shall then ratify the slate of circuit visitors, which ratification shall constitute election.

5.2.2.1   Vacancies that occur in the office of circuit visitor between conventions shall be filled by appointment by the district president.

5.2.3      Each circuit visitor shall assist the district president within the circuit.

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 179 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 174 of 182

(a)  He shall serve under the direction of and be accountable to the district president and shall serve as his spokesman when so authorized and directed and shall assist him in doctrinal and spiritual supervision.

(b)  He shall serve in a servant role.

(c)  He shall seek to remind and encourage members of the circuit of their responsibilities as God's people and the privilege they have in being about His mission.

(d)  He and any other officers of the circuit shall have the primary responsibility for maintaining liaison between the circuit and the Synod at the national and district levels.

(e)  He shall be conversant with and supportive of Synod-wide and district resolutions and programs.

(f)  He shall seek to strengthen the spirit of cooperation among pastors, commissioned ministers, and congregations.

(g)  He shall assist in the development and attainment of Synod-wide mission and ministry emphases.

(h)  He shall assist the district president, as requested, in promoting and obtaining unanimous participation by congregations in the submission of annual statistical reports.

(i)  He may, when requested to do so by the district president, serve as a mediator to effect reconciliation of disputes within the circuit not under dispute resolution of the Synod as outlined in section 1.10 of these Bylaws.

(j)  He shall regularly convene the pastors of his circuit for circuit conferences.

(k)  He shall regularly report on his activities to the district president.

(l)  The district president shall meet with the circuit visitors of the district at least once per year to discuss their work, to encourage them, and to conduct ongoing training for congregational and pastoral visits.

(m)  The circuit visitor is authorized to draw on the district treasury for his expenses.

5.2.3.1    The circuit visitor shall, when requested to do so by the district president, serve as his representative in the triennial visitation of the congregations of the circuit.

(a)  In doing so, he should keep in mind the glory and responsibility of the universal priesthood of all believers as it applies to the congregations. He shall remind them that they are "a chosen generation, a royal priesthood, a holy nation, a peculiar people to show forth the praises of Him who has called them out of darkness into His marvelous light" (1 Peter 2:9).

(b)  He shall endeavor to strengthen the spirit of unity among circuit congregations to effect mission and ministry and shall seek to strengthen and support the spirit of fellowship.

(c)  When he is requested to make an official visit to a congregation by the district president, he shall arrange for such visits in advance with the respective pastor and congregation, except under extraordinary circumstances.

194

Exhibit 2 to Defendants' Motion to Dismiss
Page 175 of 182

5.2.3.2    The circuit visitor shall serve the pastors of the circuit as a collegial and brotherly advisor, reminding them of the joy of the ministry and of its great responsibilities.

> (a) He shall encourage the pastors of the circuit in their preaching and teaching; in the exercise of church discipline in an evangelical manner; and in the proper supervision of Christian education and training in the parish.

> (b) He shall encourage, in a brotherly manner, the pastors of the circuit in their spiritual and family life.

> (c) He shall encourage the pastors of the circuit to continue both formal and informal continuing professional education.

5.2.3.3    The circuit visitor shall assist the district president, as assigned, in the ecclesiastical supervision of the other members of the Synod in the circuit.

### 5.3 Circuit Forums

5.3.1    The circuit forum is the group which aids the process of keeping congregations, particularly the lay leaders, commissioned ministers, and pastors, supportive of one another in their common confession and mutually active in developing programs for the good of member congregations, in considering and recommending new work, and in suggesting improvements for services and programming at the national and district levels and is encouraged to meet at least twice a year.

> (a) The circuit visitor shall endeavor to provide resources, opportunities, and assistance so God's people can grow in their faith.

> (b) Among the functions which the circuit forum may perform are the following:

> > (1) To study the Scriptures and the Confessions in order to promote an evangelical spirit in our walking together.

> > (2) To develop and adopt within existing policies of the respective district complementary and sometimes joint plans for mission outreach in the circuit area.

> > (3) To devise and develop programs and services relevant to the needs of circuit congregations, lay leaders, teachers, and pastors.

> > (4) To receive and respond as appropriate to advice, guidance, resolutions, and programs in other sections of the Synod as such may be addressed to it from other circuits, the respective district, and the general Synod.

> > (5) To serve as a setting to review and evaluate programs, plans, and long-range directions of the district and the Synod and thus participate in the triennial process of suggesting, developing, and attaining the Synod's priorities and goals.

5.3.2    The circuit forum consists of one pastor and one layperson from each member congregation or multi-congregation parish designated by the congregation or parish. Congregations of a multi-congregation parish not contributing a lay voter may send an advisory representative, with voice but no vote.

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 181 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 176 of 182

(a)  Depending on each circuit's adopted objectives, the circuit may provide for additional representation from each congregation. Such additional representatives have no vote in matters assigned to the circuit forum by the Bylaws of the Synod.

(b)  The circuit visitor and any other officers shall have the primary responsibility of preparing the agenda for the circuit forum.

(c)  The circuit visitor shall ordinarily serve as chairman of the circuit forum.

5.3.3    The circuit forum shall meet at least once triennially to select a circuit visitor (Bylaw 5.2.2).

5.3.4    The circuit forum may also participate in the triennial process of suggesting, developing, and attaining the Synod's priorities and goals.

5.3.5    The circuit forum shall be qualified to submit overtures to national and district conventions.

## 5.4  Circuit Convocations

5.4.1    The circuit convocation is a larger gathering of members from circuit congregations during a year in which there is no national or district convention.

5.4.2    The purpose of a circuit convocation is to provide a setting in which congregational members may know of and celebrate the ministry pursued by each congregation, may review and discuss the work of the circuit forum, may discuss and evaluate mission potential within the circuit, and may receive information on various phases of the work pursued through districts and the Synod.

(a)  Its emphasis should be on inspiration, education, and motivation, and mission and theological discourse both within and beyond the circuit. The convocation should also be a place for in-depth discussion among all circuit congregation members of the theological and missiological issues before the Synod.

(b)  The circuit visitor shall serve as chairman of the circuit convocation and other circuit gatherings.

(c)  The circuit visitor and any other officers shall have the primary responsibility of preparing the agenda for the circuit convocation.

## 6. AUXILIARY AND RECOGNIZED SERVICE ORGANIZATIONS

## 6.1  Auxiliaries

6.1.1    An auxiliary exists as an arm of the Synod and has as its primary function aiding the Synod, specifically in programs that extend the ministry and mission of the Synod. Auxiliary status is presently limited to the International Lutheran Laymen's League and the Lutheran Women's Missionary League.

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 182 of 365
Exhibit 2 to Defendants' Motion to Dismiss
Page 177 of 182

6.1.2      An organization desiring to be recognized as an auxiliary of the Synod shall apply for that status to a convention of the Synod through the Board of Directors of The Lutheran Church—Missouri Synod.

6.1.2.1    An organization desiring to be recognized as an auxiliary of the Synod shall satisfy the following requirements:

    (a) Be national in scope and voluntary in membership and participation.

    (b) Identify itself with the Synod but not be a part of the Synod's constitutional structure.

    (c) Operate with freedom and self-determination as a ministry and be independent of the Synod in its organization and administration, in the establishment and evaluation of its own objectives, activities, and programs, and in financial matters, while complying with the responsibilities outlined in this bylaw.

    (d) Coordinate plans and programs with those of the Synod through regular sharing and contact with representatives of those boards to which the Synod has assigned specific responsibilities (boards of the Synod will share with the auxiliaries in a similar manner).

    (e) Be classified by the Internal Revenue Service as a 501(c)(3) corporation.

    (f) Have membership made up of persons who are baptized members of congregations that are members of The Lutheran Church—Missouri Synod and all partner churches.

6.1.2.2    Auxiliaries shall continue to meet the above requirements for continued recognition.

6.1.3      An auxiliary assumes the following responsibilities:

    (a) It reports annually, through its chief elected officer, to the President of the Synod and, upon his request, to conventions of the Synod.

    (b) It provides the Synod, through its chief elected officer, with an annual program report for sharing with the appropriate boards.

    (c) It keeps the Synod advised of any new program under consideration.

    (d) It submits all material of a biblical or theological nature to the Synod for doctrinal review.

    (e) It is responsible for its own debts and liabilities and so indicates in all of its agreements of a financial nature, statements of ownership, financial offers, and other legal documents, agreements, and promotional materials, and all other communications of a financial nature in accordance with criteria determined by the Board of Directors of the Synod, so that it is clear that being an auxiliary is not regarded as an endorsement by the Synod of its organization and administration, or as a guarantee on the part of the Synod for the fiscal solvency of, or any financial responsibility for, the organization or for services expressly offered or implied.

    (f) It honors and upholds the doctrine and practice of The Lutheran Church—Missouri Synod as set forth in the Scriptures and the Lutheran Confessions.

Exhibit 2 to Defendants' Motion to Dismiss
Page 178 of 182

(g) It operates with freedom and self-determination in its mission, independent of control by the Synod in its organization and administration, while at the same time it respects protocol documents that may exist between The Lutheran Church—Missouri Synod and her partner churches that have been made available to the auxiliary.

6.1.4    Being a recognized auxiliary of the Synod offers the following privileges:

(a) Eligibility of ordained and commissioned ministers of the Synod serving such organizations to remain on the membership rosters of the Synod as "active members," if otherwise eligible.

(b) Auxiliaries  that have agreed to address call-related disputes through Synod's dispute resolution process, and their called workers, have access to the process (Bylaw section 1.10) in regard to such disputes.

(c) Eligibility for obtaining church extension loans from the Lutheran Church Extension Fund—Missouri Synod (LCEF), unless the policies of LCEF preclude such organization as an eligible borrower.

(d) Eligibility to be an "employer" under the Concordia Plans of the Synod unless the policies of such a plan preclude such organization as an eligible employer.

(e) Recognition of the auxiliary in the *Handbook* of the Synod and listing of the organization in *The Lutheran Annual* as an auxiliary of the Synod, provided that such listing shall be prefaced by a statement that recognition is not a guarantee on the part of the Synod for the fiscal solvency of the auxiliary, or any financial responsibility for such organization or for services expressly or impliedly offered.

(f) The opportunity to report to conventions of the Synod.

(g) The opportunity to raise funds within the Synod to support the auxiliary's programs.

## 6.2  Recognized Service Organizations

6.2.1    The granting of recognized service organization status by the Synod signifies that a service organization, while independent of the Synod, fosters the mission and ministry of the church, engages in program activity that extends the mission and ministry of the Synod, is in harmony with the programs of the boards of the Synod, and respects and does not act contrary to the doctrine and practice of the Synod.

(a) Under the governance and policies of its own board, a recognized service organization operates with freedom and self-determination, structurally independent of the Synod and its agencies, in the establishment and evaluation of its own objectives, activities, and programs, in organization and administration, and in financial matters.

(b) A recognized service organization respects the rights and obligations of Synod's members, individual and congregational. Respecting proper evangelical supervision, counsel, and care of church workers and congregations, a recognized service organization accepts and agrees to facilitate the respective district president's ecclesiastical supervision of its rostered workers and his role in the recognized service organization's call process. A recognized service organization

Exhibit 2 to Defendants' Motion to Dismiss
Page 179 of 182

recognizes a congregation's right and duty to regularly call its own pastor and agrees not to extend pastoral ministry to a congregation without the specific consent of the congregation and the congregation's district president.

(c) A recognized service organization respects the authority of Synod's districts. A recognized service organization working within a geographical district, or with a congregation of a non-geographical district, accepts and agrees to facilitate the ecclesiastical oversight of the respective district's president over the organization's activities within his district. The overseeing district president shall report unresolved doctrinal and practical concerns to the Synod mission office granting status.

(d) A recognized service organization operating domestically respects the role of all districts impacted by its mission planning. A recognized service organization shall pursue church planting or establishment of preaching stations/missions only after consulting with and obtaining the concurrence of the same districts' president and boards or committees responsible for missions.

(e) A recognized service organization operating internationally agrees to inform, seek the counsel of, and cooperate with the Office of International Mission in its international work and respects protocol documents that may exist between The Lutheran Church—Missouri Synod and her partner churches that have been made available to the recognized service organization.

(f) Each recognized service organization shall be required to give its assurance in its governing documents that recognition as a service organization is not an endorsement by the Synod or a guarantee of financial responsibility for the debts and obligations of the organization or for services provided or offered.

6.2.2   Policies shall distinguish the three classes of recognized service organization, with criteria, procedures, and benefits appropriate to each, further distinctions being drawn within the categories as needed:

(a) A *witness service organization*, under the Scriptures and Lutheran Confessions, engages in Word or Word-and-Sacrament ministry (including chaplaincy), religious media/programming, mission society activity, support of specific missions, mission-and-ministry training, church worker professional development, church worker care, or other work directly related to the church's proclamation. A witness service organization is governed solely by Synod (or partner church) congregations or a board comprised solely of members of member congregations of the Synod (or its partner churches).

(b) An *educational service organization*, under the Scriptures and Lutheran Confessions, operates a Christian school (other than one governed solely by a Synod congregation or congregations), camp (with Christian programming), or the like. (Schools governed solely by Synod congregations, by virtue of their recognition as such by their districts, do not need recognized service organization status and have the rights and responsibilities of parish schools without obtaining recognized service organization status.)

Exhibit 2 to Defendants' Motion to Dismiss
Page 180 of 182

(c)  A *mercy service organization* facilitates the church's extension of the divine mercy without compromising the church's scriptural and confessional standards. It does so in areas in which cooperation in externals is possible, in demonstrated coordination and connection with member congregations of the Synod or its partners and, wherever possible, in close proximity to the Word-and-Sacrament ministry of the Synod and/or its partners.

6.2.2.1   Policies of the Board of Directors and the mission boards and offices of the Synod may distinguish, within the educational and mercy service classes (educational service organization and mercy service organization), tiers of status recognizing different degrees of churchly governance and support and commensurate expectations for performance of activities and realization of mutual benefits.

6.2.2.2   The right to extend a Synod-recognized, regular call to a rostered worker is afforded to the board of directors of a recognized service organization, provided that:

(a)  the board's composition contains at least the proportion of members of Synod member congregations required by recognized service organization program policies; and

(b)  the appropriate district president is properly consulted in the call process; and

(c)  the call document is approved by the district president who would assume ecclesiastical supervision of the member as clearly stating that the organization:

(1)  expects that the worker will, without compromise or constraint, carry out the ministry for which ordained or commissioned, and to which called, according to the doctrine and practice of the Synod.

(2)  agrees to accommodate and encourage the ecclesiastical supervision of the worker by the appropriate district president.

(3)  submits, as an exclusive remedy, to the dispute resolution process of the Synod for the resolution of any issues arising under the divine call.

(d)  the organization demonstrates to the district president its ability to provide for the reasonable needs of the called worker for the duration of the period of the call.

6.2.3   Program administration shall be carried out by the Offices of National and International Mission according to these bylaws, and according to policies and criteria developed by the Synod Board of Directors, mission boards, and mission offices.

(a)  The Board of Directors of The Lutheran Church—Missouri Synod shall adopt common policies and criteria for granting of recognized service organization status by Synod's mission offices, such polices relating to expectations for the corporate structure and governance of the organizations, statements regarding their legal and corporate independence from the Synod, and the necessary relation of their work to the mission and ministry of the Synod as generally expressed in its Constitution and Bylaws. The Board of Directors shall approve the standard form of agreement to be entered into by the Synod and each recognized service organization.

Exhibit 2 to Defendants' Motion to Dismiss
Page 181 of 182

(b)  Each mission board of the Synod in consultation with the Council of Presidents shall adopt further policies and criteria, related to its area of responsibility for granting of recognized service organization status by its respective mission office, such policies relating to the organizations' alignment with and augmentation of the mission and ministry of the Synod, as the Constitution and Bylaws relate to the board's area of responsibility and as further expressed in the Synod's triennial emphases and the board's specific goals and activities.

(c)  Each mission office shall, subject to 6.2.3 (a) and (b) above, adopt further policies and criteria, for granting, renewal, and withdrawal of recognized service organization status, and shall develop such instruments as are necessary for coordination with districts.

6.2.4   Subject to policies adopted by the Synod's Board of Directors and the respective mission board, recognized service organization status may be granted by the Office of National Mission or the Office of International Mission to a service organization (other than an auxiliary) that extends the mission and ministry of the Synod but is not part of the Synod as defined by its Constitution and Bylaws.

(a)  Applications for recognized service organization status shall be made to the Office of the Secretary of the Synod, which will facilitate the application as follows:

(1)  Educational service organization status is evaluated by the geographical district in which the school or camp is located, unless all voting members of its Board of Directors are members of a non-geographic district, on the basis of an instrument jointly developed by the Office of National Mission and the Council of Presidents. The instrument, completed by the organization and district, is reviewed and approved by the Office of National Mission. The status of schools is managed on a per-site basis.

(2)  Witness or mercy service organization status, if the organization's activity is entirely within a single geographical district, may, if the policies of the Board for National Mission permit, be evaluated by the relevant district on the basis of an instrument developed by the Office of National Mission. The instrument, completed by the organization and district, is reviewed, further investigated, if needed, and finally approved by the Office of National Mission. Until and unless such policies and instrument are developed, applications for witness service organization or mercy service organization status shall be handled under (3) below.

(3)  Status of all other organizations, and the application therefor, is administered directly by the Office of National or International Mission, as appropriate, with district presidents exercising ecclesiastical oversight of the operations of recognized service organizations within their boundaries.

(b)  Within the area of its responsibility and in accordance with policies and criteria developed by the Synod Board of Directors, the respective mission board and office, each mission office shall determine to which organizations recognized service organization status will be granted.

Exhibit 2 to Defendants' Motion to Dismiss
Page 182 of 182

(c) Granting offices may be authorized to set and charge application, renewal, and maintenance fees to recoup the cost of administration, subject to policies set by the Board of Directors of the Synod.

## 7. AMENDMENTS TO BYLAWS

7.1     Amendments to the Bylaws may be made using one of two procedures, provided they are not contrary to the Constitution of the Synod.

7.1.1   Amendments may be made by conventions of the Synod.

(a)  They shall be presented in writing to a convention of the Synod.

(b)  They shall be specified as bylaw amendments and considered by a convention floor committee.

(c)  They shall be examined by the Commission on Constitutional Matters prior to presentation to the convention to determine that they are not in conflict as to content with the Constitution and Bylaws of the Synod.

(d)  They shall be examined by the Commission on Handbook prior to presentation to the convention to determine that they are in agreement in language (terminology) with the current *Handbook*.

(e)  They shall be adopted by the affirmative vote of a majority of the delegates present and voting.

7.1.2   In exceptional circumstances and upon the express direction of a convention of the Synod, amendments may be made by a two-thirds majority of the Board of Directors.

(a)  Such amendments to the Bylaws shall be necessary to implement resolutions adopted by a convention of the Synod.

(b)  Such amendments shall be drafted by the Secretary of the Synod and shall be reviewed by the Commission on Constitutional Matters and the Commission on Handbook.

Case 1:23-cv-01042-RP    Document 9-1    Filed 01/23/24    Page 188 of 365
Exhibit 3 to Defendants' Motion to Dismiss
Page 1 of 10

# CONSTITUTION OF
# THE LUTHERAN CHURCH—MISSOURI SYNOD

### Preamble
### Reason for the Forming of a Synodical Union

1. The example of the apostolic church. Acts 15:1–31.
2. Our Lord's will that the diversities of gifts should be for the common profit. 1 Cor. 12:4–31.

## Article I  Name

The name of the synod organized under this constitution shall be: The Lutheran Church—Missouri Synod.

## Article II  Confession

The Synod, and every member of the Synod, accepts without reservation:

1. The Scriptures of the Old and the New Testament as the written Word of God and the only rule and norm of faith and of practice;
2. All the Symbolical Books of the Evangelical Lutheran Church as a true and unadulterated statement and exposition of the Word of God, to wit: the three Ecumenical Creeds (the Apostles' Creed, the Nicene Creed, the Athanasian Creed), the Unaltered Augsburg Confession, the Apology of the Augsburg Confession, the Smalcald Articles, the Large Catechism of Luther, the Small Catechism of Luther, and the Formula of Concord.

## Article III  Objectives

The Synod, under Scripture and the Lutheran Confessions, shall—

1. Conserve and promote the unity of the true faith (Eph. 4:3–6; 1 Cor. 1:10), work through its official structure toward fellowship with other Christian church bodies, and provide a united defense against schism, sectarianism (Rom. 16:17), and heresy;
2. Strengthen congregations and their members in giving bold witness by word and deed to the love and work of God, the Father, Son, and Holy Spirit, and extend that Gospel witness into all the world;
3. Recruit and train pastors, teachers, and other professional church workers and provide opportunity for their continuing growth;
4. Provide opportunities through which its members may express their Christian concern, love, and compassion in meeting human needs;
5. Aid congregations to develop processes of thorough Christian education and nurture and to establish agencies of Christian education such as elementary and secondary schools and to support synodical colleges, universities, and seminaries;
6. Aid congregations by providing a variety of resources and opportunities for recognizing, promoting, expressing, conserving, and defending their confessional unity in the true faith;

Exhibit 3 to Defendants' Motion to Dismiss
Page 2 of 10

7.  Encourage congregations to strive for uniformity in church practice, but also to develop an appreciation of a variety of responsible practices and customs which are in harmony with our common profession of faith;

8.  Provide evangelical supervision, counsel, and care for pastors, teachers, and other professional church workers of the Synod in the performance of their official duties;

9.  Provide protection for congregations, pastors, teachers, and other church workers in the performance of their official duties and the maintenance of their rights;

10. Aid in providing for the welfare of pastors, teachers, and other church workers, and their families in the event of illness, disability, retirement, special need, or death.

## Article IV  Powers

The Synod in convention is empowered to and has formed corporate entities which shall have legal powers:

1.  To purchase, hold, administer, and sell property of every description in the interest of the Synod;

2.  To accept, hold, administer, and, if deemed advisable, dispose of legacies, donations, commercial papers, and legal documents of every description in the interest of its work.

## Article V  Membership*

Membership in the Synod is held and may be acquired by congregations and individuals, ministers of religion—ordained and ministers of religion—

---

\* Should the congregations of the Synod decline to ratify the constitutional amendment of Res. 9-05 (see *Handbook* preface), Const. Art. V will continue to read:

### Article V Membership

Membership in the Synod is held and may be acquired by congregations, ministers of religion—ordained and ministers of religion—commissioned, such as teachers, directors of Christian education, directors of Christian outreach, directors of family life ministry, directors of parish music, deaconesses, parish assistants, and certified lay ministers of the Evangelical Lutheran Church who confess and accept the confessional basis of Article II.

**A. Voting Members**

All organized congregations that have joined the Synod hold voting membership. At the meetings of the districts of the Synod every congregation or parish is entitled to two votes, one of which is to be cast by the pastor and the other by the lay delegate. At the meetings of the Synod a number of congregations shall form a group which shall be represented by two voting delegates, one a pastor and one a lay delegate.

**B. Advisory Members**

Advisory members only are the following:
1.  Pastors whose congregations do not hold membership in the Synod
2.  Ministers not in charge of congregations
3.  Professors at the Synod's educational institutions
4.  Teachers of the Evangelical Lutheran Church
5.  Directors of Christian education
6.  Directors of Christian outreach
7.  Directors of family life ministry
8.  Directors of parish music
9.  Deaconesses
10. Parish assistants
11. Certified lay ministers
12. Candidates for the office of the ministry, for that of a teacher of the Evangelical Lutheran Church, for director of Christian education, for director of Christian outreach, for director of family life ministry, for director of parish music, for deaconess, for certified lay minister, or for parish assistant

12

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 190 of 365
Exhibit 3 to Defendants' Motion to Dismiss
Page 3 of 10

commissioned, of the Evangelical Lutheran Church who confess and accept the confessional basis of Article II.

## A. Voting Members

All organized congregations that have joined the Synod hold voting membership.

## B. Individual Members

Individual members of the Synod, who are non-voting except for those pastors exercising the vote of a member congregation or congregations, are the following:

1. Pastors, ordained ministers, called and installed to a member congregation
2. Pastors, ordained ministers, whose congregations do not hold membership in the Synod
3. Ordained ministers, not called and installed to a congregation, serving in a capacity recognized in the Bylaws of the Synod
4. Commissioned ministers equipped for service in an auxiliary office of ministry designated in, and serving in a capacity recognized by, the Bylaws of the Synod
5. Candidates for the office of the ministry, ordained ministers, or for an auxiliary office, commissioned ministers, having formerly been installed to a first call within the Synod
6. Emeriti of the office of the ministry, ordained ministers, or of an auxiliary office, commissioned ministers.

## Article VI  Conditions of Membership

Conditions for acquiring and holding membership in the Synod are the following:

1. Acceptance of the confessional basis of Article II.
2. Renunciation of unionism and syncretism of every description, such as:
   a. Serving congregations of mixed confession, as such, by ministers of the church;
   b. Taking part in the services and sacramental rites of heterodox congregations or of congregations of mixed confession;
   c. Participating in heterodox tract and missionary activities.
3. Regular call of pastors and any commissioned ministers and regular election of lay delegates by the congregations, as also the blamelessness of the life of such.*
4. Exclusive use of doctrinally pure agenda, hymnbooks, and catechisms in church and school.
5. A congregation shall be received into membership only after the Synod has convinced itself that the constitution of the congregation, which must be

---

* Should the congregations of the Synod decline to ratify the constitutional amendment of Res. 9-05 (see *Handbook* preface), Const. Art. VI 3 will continue to read:

   3. Regular call of pastors, teachers, directors of Christian education, directors of Christian outreach, directors of family life ministry, directors of parish music, deaconesses, certified lay ministers, and parish assistants and regular election of lay delegates by the congregations, as also the blamelessness of the life of such.

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 191 of 365
Exhibit 3 to Defendants' Motion to Dismiss
Page 4 of 10

      submitted for examination, contains nothing contrary to the Scriptures or the Confessions.

6. Ordained and commissioned ministers or candidates for these offices not coming from recognized orthodox church bodies must submit to a colloquium before being received.*

7. Congregations and individuals shall be received into membership at such time and manner, and according to such procedures, as shall be set forth in the bylaws to this Constitution.

## Article VII   Relation of the Synod to Its Members

1. In its relation to its members the Synod is not an ecclesiastical government exercising legislative or coercive powers, and with respect to the individual congregation's right of self-government it is but an advisory body. Accordingly, no resolution of the Synod imposing anything upon the individual congregation is of binding force if it is not in accordance with the Word of God or if it appears to be inexpedient as far as the condition of a congregation is concerned.

2. Membership of a congregation in the Synod gives the Synod no equity in the property of the congregation.

## Article VIII   Synodical Meetings

### A. Time and Legality of Meetings

1. The Synod convenes every three years for its regular meeting.

2. For a legal convention a constitutional convocation of the meeting and the presence of at least one-fourth of the constitutionally elected voting representatives are necessary.

### B. Special Sessions of the Synod

1. The Synod may under circumstances call a special session if two-thirds of the voting representatives present so decide.

2. In cases of urgent necessity a special session may be called by the President with the consent of two-thirds of the district presidents or by three-fourths of the district presidents without the consent of the President; however, all congregations and other members of the Synod must be notified 30 days in advance and told for what purpose this extra meeting is being convened.

### C. Resolutions at Synodical Meetings

_____

* Should the congregations of the Synod decline to ratify the constitutional amendment of Res. 9-05 (see *Handbook* preface), Const. Art. VI 6 will continue to read:

    6. Pastors, teachers, directors of Christian education, directors of Christian outreach, directors of family life ministry, directors of parish music, deaconesses, certified lay ministers, or candidates for these offices not coming from recognized orthodox church bodies must submit to a colloquium before being received.

Exhibit 3 to Defendants' Motion to Dismiss
Page 5 of 10

All matters of doctrine and of conscience shall be decided only by the Word of God. All other matters shall be decided by a majority vote. In case of a tie vote the President may cast the deciding vote.

## Article IX  Representation*

The synodical meetings are composed of regularly elected and delegated representatives and of certain individual persons, as specified in the Bylaws, to wit:

1.  Representatives of congregations, entitled to vote. A number of congregations shall form a group which shall be represented by two voting delegates, one pastor and one a lay delegate.

2.  Advisory representatives of such individual members as are ineligible to represent congregations as voting delegates and ineligible to represent other entities or offices in the Synod as advisory representatives.

3.  Advisory representatives of boards, commissions, and educational institutions and such as by virtue of their office are required to attend the Synod.

## Article X  Officers



—A—

The officers of the Synod are:

1.  A President
2.  Vice-presidents, in line of succession, as prescribed by the Bylaws
3.  A Secretary
4.  A Board of Directors
5.  Other officers, as specified in the Bylaws

—B—

1.  The President, the vice-presidents, and the Secretary must be ministers of religion–ordained of The Lutheran Church—Missouri Synod and, like other officers and the members of the Board of Directors, members of voting congregations.

2.  The time of service of all officers, boards, and commissions shall be fixed by the Bylaws of the Constitution of the Synod.

3.  Any officer or any member of any board or commission ceases to be an officer of the Synod or a member of any board or commission as soon as he ceases to be a member of a congregation affiliated with the Synod.

---

\* Should the congregations of the Synod decline to ratify the constitutional amendment of Res. 9-05 (see *Handbook* preface), Const. Art. IX will continue to read:

The synodical meetings are composed of regularly elected and delegated representatives and of certain individual persons, as specified in the Bylaws, to wit:

1.  Representatives of congregations, entitled to vote
2.  Advisory representatives of the advisory members of the Synod
3.  Advisory representatives of boards, commissions, and educational institutions and such as by virtue of their office are required to attend the Synod

Case 1:23-cv-01042-RP  Document 9-1  Filed 01/23/24  Page 193 of 365
Exhibit 3 to Defendants' Motion to Dismiss
Page 6 of 10

## Article XI  Rights and Duties of Officers

### A. In General

1. The officers of the Synod must assume only such rights as have been expressly conferred upon them by the Synod, and in everything pertaining to their rights and the performance of their duties they are responsible to the Synod.

2. The Synod at all times has the right to call its officers to account and, if circumstances require it, to remove them from office in accordance with Christian procedure.

3. The Synod reserves the right to abolish any office it has established.

4. Conventions of the Synod and of the districts have the right, in extraordinary cases, to elect a chairman other than the regular presiding officer.

### B. Duties of the President

1. The President has the supervision regarding the doctrine and the administration of
   a. All officers of the Synod;
   b. All such as are employed by the Synod;
   c. The individual districts of the Synod;
   d. All district presidents.

2. It is the President's duty to see to it that all the aforementioned act in accordance with the Synod's Constitution, to admonish all who in any way depart from it, and, if such admonition is not heeded, to report such cases to the Synod.

3. The President has and always shall have the power to advise, admonish, and reprove. He shall conscientiously use all means at his command to promote and maintain unity of doctrine and practice in all the districts of the Synod.

4. The President shall see to it that the resolutions of the Synod are carried out.

5. When the Synod meets in convention the President shall give a report of his administration. He shall conduct the sessions of the convention so that all things are done in a Christian manner and in accord with the Constitution and Bylaws of the Synod.

6. It is the duty of the President, or an officer of the Synod appointed by the President, to be present at the meetings of the districts, to advise them, and to report at the next session of the Synod.

7. The President shall perform all additional duties assigned to him by the Bylaws or by special resolution of the Synod in convention.

8. When matters arise between meetings of the Synod in convention which are of such a nature that action thereon cannot be delayed until the next convention, the President is authorized to submit them to a written vote of the member congregations of the Synod only after full and complete information regarding the matter has been sent to member congregations by presidential letter and has been published in an official periodical of the Synod. If such matters are related to the business affairs of the Synod, such a vote shall be conducted only after the President has consulted with the synodical Board of Directors. In all cases at least one-fourth of the member congregations must register their vote.

Exhibit 3 to Defendants' Motion to Dismiss
Page 7 of 10

### C. Duties of the Vice-Presidents

1. The vice-presidents shall upon request of the President represent him in all his functions.
2. In case of the disability, the deposition from office, or the death of the President, the vice-presidents, in the order of their rank of office, advance to the President's place, with full power, until the expiration of his term of office.

### D. Duties of the Secretary

The Secretary shall

1. Record the proceedings when the Synod meets in convention;
2. Perform such other work as the Synod may assign to him through the Bylaws or special resolutions of the Synod.

### E. Composition and Duties of the Board of Directors

1. The Board of Directors shall consist of not fewer than seven voting members, to wit: the President, the Secretary, one pastor, and four laymen. The First Vice-President shall be a nonvoting member.
2. The Board of Directors is the legal representative and custodian of all the property of The Lutheran Church—Missouri Synod, directly or by its delegation of such authority to an agency of the Synod. It shall exercise supervision over all property and business affairs of The Lutheran Church—Missouri Synod except in those areas where it has delegated such authority to an agency of the Synod or where the voting members of the Synod through the adoption of bylaws or by other convention action have assigned specific areas of responsibility to separate corporate or trust entities, and as to those the Board of Directors shall have general oversight responsibility as set forth in the Bylaws. For the purposes of this article, The Lutheran Church—Missouri Synod includes both the Synod formed by this Constitution and the Missouri corporation formed by the Synod.

## Article XII  Districts of the Synod and Their Regulation

1. The Synod is divided into districts, the geographical boundaries of which are determined by the Synod and are altered by it according to circumstances.
2. This Constitution is also the constitution of each district of the Synod; however, each district is at liberty to adopt such bylaws and pass such resolutions as it deems expedient for its conditions, provided that such bylaws and resolutions do not conflict with the Constitution and the Bylaws of the Synod.
3. The officers of the districts are:
   a. A district president
   b. District vice-presidents as the Bylaws prescribe
   c. As many circuit visitors as each district may determine upon
   d. A district secretary
   e. A district treasurer, who may be elected by the district convention or appointed in such manner as the district may prescribe

Exhibit 3 to Defendants' Motion to Dismiss
Page 8 of 10

4. Additional officers, boards, and commissions are elected by the districts as they are required for the execution of the business of the districts.

5. The election and time of service of the district officers shall be determined by the Bylaws of the Constitution of the Synod.

6. All officers of the districts have the same rights and duties as those outlined in this Constitution for the officers of the Synod but only insofar as these apply to the district and only within the boundaries of their districts.

7. The district presidents shall, moreover, especially exercise supervision over the doctrine, life, and administration of office of the ordained and commissioned ministers of their district and acquaint themselves with the religious conditions of the congregations of their district. To this end they shall visit and, according as they deem it necessary, hold investigations in the congregations. Their assistants in this work are the circuit visitors, who therefore shall regularly make their reports to the district president.

8. District presidents are empowered to suspend from membership ordained and commissioned ministers for persistently adhering to false doctrine or for having given offense by an ungodly life, in accordance with such procedure as shall be set forth in the Bylaws of the Synod.

9. Furthermore, the district presidents shall

   a. See to it that all resolutions of the Synod which concern the districts are made known to the districts and are carried out by them;

   b. Submit an annual report of their administration to the President of the Synod and, in general, permit him to obtain all necessary insight into their official activities as district presidents;

   c. Perform, either in person or by proxy, the ecclesiastical ordination of the candidates for the ministry assigned to their districts, the commissioning of the candidates for the auxiliary offices assigned to their districts, and the installation of all ministers, ordained or commissioned, called to serve within their districts;*

   d. Sign all examination papers and certificates of ordination and, in general, all official papers and documents of their district.

10. The meetings of the districts of the Synod are composed of the following:

    **a. Voting Delegates**

    Every member congregation or multi-congregation parish is entitled to two votes, one of which is to be cast by its pastor and the other by the lay delegate elected and deputed by the congregation or parish.

    **b. Advisory Delegates**

    Advisory delegates are all commissioned ministers, and those ordained ministers not presently serving as voting representatives of congregations, who are members of the Synod within the district. In

---

* Should the congregations of the Synod decline to ratify the constitutional amendment of Res. 9-05 (see *Handbook* preface), Const. Art. XII 9 c will continue to read:

   c. Perform, either in person or by proxy, the ecclesiastical ordination of the candidates for the ministry assigned to their districts and the installation of such, as well as the installation of the candidates for the office of schoolteacher and of all ministers and teachers called by the congregations in their districts;

Exhibit 3 to Defendants' Motion to Dismiss
Page 9 of 10

addition, a congregation that is part of a multi-congregation parish, other than the congregation supplying the voting lay delegate, may elect and depute an advisory lay delegate.*

11. The districts, when legally incorporated, are represented before the State by a board of directors composed of the president, the secretary, and the treasurer of the district, which board, however, may be constituted otherwise.

12. The districts are independent in the administration of affairs which concern their district only, it being understood, however, that such administration shall always serve the interests of the Synod.

13. The regular sessions of the districts are held in the year immediately preceding the general convention of the Synod. Only the Synod has the right to make an exception to this rule.

14. For the legal holding of the sessions of the districts a constitutional convocation of such sessions and the presence of at least one-third of the voting members represented by at least one of their respective representatives (pastor or lay delegate) are required.

15. In cases of urgent necessity the district president is empowered to convene special sessions of his district; he must, however, previously have obtained consent of at least a majority of the voting members of the district after having informed them and the President of the Synod of the purpose of the intended special session.

## Article XIII   Expulsion from the Synod

1. Members who act contrary to the confession laid down in Article II and to the conditions of membership laid down in Article VI or persist in an

---

\* Should the congregations of the Synod decline to ratify the constitutional amendment of Res. 9-05 (see *Handbook* preface), Const. Art. XII 10 will continue to read:

   10.   The meetings of the districts of the Synod are composed of the following:

**A. Voting Representatives**

   The pastors of such congregations as hold voting membership in the Synod and the lay delegates elected and deputed by these congregations shall be voting representatives.

**B. Advisory Members**

   Advisory members are:
   a.   Pastors whose congregations do not hold membership in the Synod
   b.   Ministers not in charge of congregations
   c.   Professors at the Synod's educational institutions
   d.   Teachers of the Evangelical Lutheran Church
   e.   Directors of Christian education
   f.   Directors of Christian outreach
   g.   Directors of family life ministry
   h.   Directors of parish music
   i.   Deaconesses
   j.   Parish assistants
   k.   Certified lay ministers
   l.   Candidates for the office of the ministry, for that of a teacher of the Evangelical Lutheran Church, for director of Christian education, for director of Christian outreach, for director of family life ministry, for director of parish music, for deaconess, for certified lay minister, or for parish assistant.

Exhibit 3 to Defendants' Motion to Dismiss
Page 10 of 10

offensive conduct, shall, after previous futile admonition, be expelled from the Synod.

2. Expulsion shall be executed only after following such procedure as shall be set forth in the Bylaws of the Synod.

3. If the member expelled is an ordained or commissioned minister serving* a congregation of the Synod, such congregation, unless it has already done so, is held to depose him from office and to deal with him in accordance with the Word of God, notwithstanding an appeal. If it persistently refuses to do so, the respective district is to deal with it. If all negotiations and admonitions fail of their purpose, such congregation forfeits its membership in the Synod.

4. Because of their expulsion those so expelled forfeit their membership and all share in the property of the Synod. The latter holds good also with respect to those who for any reason themselves sever their connection with the Synod.

## Article XIV   Bylaws

The Synod in convention may adopt bylaws that are consistent with and do not contradict the Constitution of the Synod, which controls and supersedes such bylaws and all other rules and regulations of the Synod. Bylaws, which may be adopted, revised, or eliminated by a simple majority vote of a national convention, are binding regulations for the Synod and its conduct and governance.

## Article XV   Changes in, and Amendments to, the Constitution

1. Changes in the Constitution and amendments thereto may be made provided they do not conflict with the provisions laid down in Article II and in Article VI.

2. All proposed changes and amendments must be submitted in writing to the Synod assembled in convention, and each proposed change shall be voted on separately. A two-thirds majority of all votes cast shall be necessary for adoption.

3. After adoption by the convention such amendments shall be submitted to the congregations of the Synod by means of three announcements in the official periodical within three months after the close of the convention.

4. Amendments to the Constitution of the Synod shall be submitted directly to each voting congregation of the Synod on an official ballot, and the congregations shall by official action express their affirmative or negative vote and indicate the same to the Secretary of the Synod on this official ballot. The proposed amendment shall become effective at the expiration of six months from the date on which the amendment is submitted for vote, provided a two-thirds majority of the votes cast within that period shall have favored the amendment. At the end of the six-month period the Secretary of the Synod shall announce the outcome of the voting by districts in the official periodical of the Synod.

---

* Should the congregations of the Synod decline to ratify the constitutional amendment of Res. 9-05 (see *Handbook* preface), Const. Art. XIII will continue to read: "**If the member expelled is a pastor or teacher in...**"

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 198 of 365
Exhibit 4 to Defendants' Motion to Dismiss
Page 1 of 3

# AMENDED AND RESTATED
# ARTICLES OF INCORPORATION OF
# THE LUTHERAN CHURCH—MISSOURI SYNOD

### Article I  Name, Duration, Registered Office, and Agent

a. The name of this corporation shall be "The Lutheran Church—Missouri Synod."

b. The period of duration of this corporation is perpetual.

c. The address of the registered office of this corporation is 1333 S. Kirkwood Road, St. Louis, Missouri 63122.

d. The name of the registered agent of this corporation is CT Corporation System.

### Article II  Objectives

The objectives and purposes of this corporation are:

a. To unite in a corporate body Evangelical Lutheran congregations that acknowledge and remain true to the *Book of Concord* of the year of our Lord 1580 as a true exhibition of sound Christian doctrine.

b. To assist in the establishment of Evangelical Lutheran congregations and preaching stations.

c. To assist, advise, and protect member congregations and ministers of religion–ordained and ministers of religion–commissioned of The Lutheran Church—Missouri Synod, to provide for their ecclesiastical supervision in matters of doctrine and practice and their administration of official duties, and to acknowledge and assert the protections granted by the First Amendment to the Constitution of the United States.

d. To support the establishment and maintenance of theological seminaries, colleges, universities, and other institutions of learning to train ministers of religion–ordained, ministers of religion–commissioned, and laity for service in the Evangelical Lutheran Church.

e. To spread the Gospel of Jesus Christ throughout the world by every means possible.

f. To provide assistance and resources to the congregations, schools, Sunday schools, preaching stations, and agencies of the Synod for the dissemination of the Christian Gospel.

g. To establish and conduct all such enterprises and endeavors and to exercise such further power as may be necessary or expedient to carry out the objectives stated in the Constitution of The Lutheran Church—Missouri Synod.

### Article III  Membership

Membership in this corporation is held and may be acquired by congregations, ministers of religion—ordained and ministers of religion—commissioned, as defined by the Constitution and Bylaws of this corporation, who confess and accept the

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 199 of 365
Exhibit 4 to Defendants' Motion to Dismiss
Page 2 of 3

confessional basis of Article II of the Constitution of The Lutheran Church—Missouri Synod. The member congregations of The Lutheran Church—Missouri Synod shall be the voting members of this corporation. Congregations shall exercise their voting power through clergy and lay delegates representing the member congregations in such number as may be determined from time to time in accord with the Constitution and Bylaws of The Lutheran Church—Missouri Synod.

### Article IV  Meetings

This corporation shall have general meetings, called conventions, at least once every three years, or as often as may be determined by resolution of the Synod in convention. Special meetings may be called in such manner as may be provided by the Constitution or Bylaws of The Lutheran Church—Missouri Synod. All officers and agencies of the Synod, defined in such Constitution or Bylaws, shall be responsible to the Synod convention, which is the ultimate authority of this corporation.

### Article V  Officers

This corporation shall have a board of directors of such number and qualifications and who shall be elected in such manner and for such terms of office as shall be set forth in the Constitution or Bylaws of The Lutheran Church—Missouri Synod. In addition, this corporation shall have other officers having such qualifications and who shall be elected or appointed in such manner and for such terms of office as provided for in the Constitution or Bylaws of The Lutheran Church—Missouri Synod.

The management authority and duties of the Board of Directors of this corporation shall be limited to the extent such authority and duties are delegated by the Constitution and Bylaws of The Lutheran Church—Missouri Synod to other officers and agencies of the Synod. The management authority and duties of the Board of Directors and such other officers and agencies shall be defined in the Constitution and Bylaws, and each of them shall be responsible to The Lutheran Church—Missouri Synod for the proper and prudent fulfillment of the authority and duties so designated to them. In the case of any conflict or uncertainty in determining the authority and duties of the officers and agencies, the opinions of the Commission on Constitutional Matters of The Lutheran Church—Missouri Synod interpreting the Constitution and Bylaws of The Lutheran Church—Missouri Synod shall be binding, unless and until overruled by a convention of the Synod. In case of any conflict or uncertainty relative to the applicability of the laws of the State of Missouri, such issues shall be resolved in accord with the provisions in the Constitution and Bylaws of The Lutheran Church—Missouri Synod.

### Article VI  Property

This corporation shall have power to acquire by gift, grant, demise, devise, bequest, purchase, or otherwise, property of every kind and description, real, personal, or mixed; to hold and use such property and deal with, or dispose of, any or all such property by sale, exchange, or gift, when necessary or expedient to carry out the objects and purposes of this corporation; to receive, maintain, and administer endowments, legacies, pension funds, retirement funds, and such other general or trust funds as may be necessary for the operation of said corporation or for the accomplishment of its purposes; provided that all such property shall be acquired, dealt with, or disposed of

Exhibit 4 to Defendants' Motion to Dismiss
Page 3 of 3

in a manner not in conflict with the laws of the State of Missouri or of the laws of any state in which said property is located.

### Article VII  Bylaws

This corporation shall have such constitution and bylaws as may be necessary to accomplish its purposes and shall have power to create such corporations, boards, offices, and other subordinate bodies as may be necessary to accomplish its general and special objectives and in such bylaws assign responsibilities to those bodies.

### Article VIII  Amendments *

Amendments to these Articles of Incorporation may be made at any time at a general or special meeting of this corporation by the affirmative vote of a two-thirds majority of the delegates present and voting or by a simple majority of all delegates, whichever is less, provided such amendments are not inconsistent with the Constitution or Bylaws of The Lutheran Church—Missouri Synod or the Constitution and laws of the United States or the State of Missouri.

---

* The Articles of Incorporation of the Synod were approved July 3, 1894. They were amended in their entirety by the synodical convention of 1956. Article IV was amended by the 1962 synodical convention and Article V, paragraph 2, by the 1965 convention. Both of the amendments were approved by the Circuit Court of the City of St. Louis.

The Synod at its 1967 convention, on advice of counsel, resolved to accept the provisions of the Missouri "General Not-for-Profit Corporation Act" enacted in 1959. This act simplifies corporate procedure and makes it unnecessary to apply to the Circuit Court of the City of St. Louis for approval of amendments. Only two changes were needed. In Article I, sections b, c, and d were added, and the clause in Article VIII for court approval of amendments was deleted.

In 1981, Article IV was amended to reflect adoption of a triennial convention schedule and Article V, to reflect changes to the voting and non-voting membership of the Board of Directors.

In 1998 changes were made in Articles I and V deleting references to specific officers, incorporating the objectives of the Synod by reference in Article II, and clarifying Articles III and IV regarding congregations as the voting members of the Synod and the conventions of the Synod as its general meetings. The Constitution and Bylaws were referenced in Articles VII and VIII.

In 2004 a change was made to Article III by deleting references to specific categories of ministers of religion—commissioned and referring to definitions provided in the Constitution and Bylaws. A second change, adding a second paragraph to Article V, clarifies that limitations are placed upon the Board of Directors and other officers and agencies of the Synod by its Constitution and Bylaws.

In 2007, Article V was amended by adding a final sentence that directs all disputes regarding the applicability of the laws of the State of Missouri to provisions for resolution of such disputes in the Constitution and Bylaws.

In 2010, numerous changes were made, especially to Article II Objectives, as the entire document was amended and restated to accurately reflect the operations of the Synod.

The Lutheran Church—Missouri Synod

# Board of Directors

# Policy Manual



Edition of 5/19/2023

# Table of Contents

Table of Contents ............................................................................................................. i

**§ 0    Preface** ................................................................................................................. 1

**0.2    Definitions of "terms of art" used consistently herein** ............................. 2

0.2.1    Directly Relevant Bylaw 1.2.1 Definitions ...................................... 2
0.2.2    Other Definitions ............................................................................ 3

**§ 1    Board Responsibility and Accountability** ...................................................... 4

**1.1    Responsibility and Accountability to the Synod Convention** .................. 4

**1.2    Specific Responsibilities** ........................................................................... 4

**1.3    Legal Representation and Custodianship** ................................................ 5

**1.4    Provision and Allocation of Funds and Budgeting** ................................. 5

**1.5    Borrowing of Capital Funds** ..................................................................... 5

**1.6    Supervision of Property and Business Affairs Not Delegated** .............. 6

1.6.2    Supervision of Property and Business Affairs of Corporate Synod ... 6

**1.7    Oversight of Property and Business Affairs Delegated to Agencies** ...... 6

1.7.2    Synodwide Corporate (Trust) Entities in General ......................... 7
1.7.3    Concordia Historical Institute (CHI) .............................................. 7
1.7.4    Concordia Publishing House (CPH) ................................................ 8
1.7.5    The Lutheran Church Extension Fund—Missouri Synod (LCEF) ...... 8
1.7.6    The Lutheran Church—Missouri Synod Foundation (LFND) .......... 8
1.7.7    Concordia University System (CUS) ............................................... 8
1.7.8    Synodwide Trust Entity: The Concordia Plans / Concordia Plan Services (CP/CPS) ............... 9
1.7.9    Districts of the Synod .................................................................... 9
1.7.10   Colleges, Universities, and Seminaries ......................................... 9
1.7.11   Other Agencies of the Synod ....................................................... 10

**1.8    Review and Coordination of Policies and Directives** ............................. 10

**1.9    Personnel** ................................................................................................ 10

**1.10   Removal from Office of Officers and Board Members** .......................... 11

**1.11   Designation of Regions of the Synod** ..................................................... 11

**1.12   Monitoring** .............................................................................................. 11

**§ 2    Board Objectives ("Ends")** ............................................................................ 12

**2.1    Role of the Board in Pursuing the Objectives of the Synod** .................. 12

**2.2    Objectives of the Synod** .......................................................................... 12

**2.3    Constitution Article III: Objectives** ........................................................ 12

**2.4    Articles of Incorporation, Article II: Objectives** .................................... 13

**2.5    Bylaw section 1.1: Purpose of the Synod** ............................................... 13

**2.6    Triennial Mission and Ministry Emphasis and Mission Priorities** ......... 14

2.6.1    Mission and Ministry Emphasis (2019 Res. 4-03A) ...................... 14

**2.6.2**   Mission Priorities (2019 Res. 4-03A) ................................................................ 14

**2.7**   Church Body Mission Statement (1998 Res. 1-01A) ................................................ 15

**2.8**   Monitoring ........................................................................................................ 15

**§ 3**   **Board Self-Governance / Governance Process ("Board Means") .............................. 16**

**3.1**   Scope and Regulation of Board Activities ............................................................ 16

**3.2**   Group Action ..................................................................................................... 16

**3.3**   Director Responsibilities .................................................................................... 16

**3.4**   Regular Meetings ............................................................................................... 17

**3.5**   Special Meetings ............................................................................................... 17

**3.6**   Electronic Means of Meeting .............................................................................. 17

**3.7**   Quorum ............................................................................................................ 18

**3.8**   Actions Using Electronic Ballot .......................................................................... 18

**3.9**   Agenda and Docket ........................................................................................... 18

**3.9.2**   Requests for Action ............................................................................................ 19
**3.9.3**   Requests for Appearance ..................................................................................... 19
**3.9.4**   Consent Agenda ................................................................................................. 19

**3.10**   Confidentiality ................................................................................................ 20

**3.11**   Executive Session ............................................................................................ 20

**3.12**   Officers of the Board of Directors ..................................................................... 21

**3.12.2**   Election of Officers ........................................................................................... 21
**3.12.3**   Chairman .......................................................................................................... 21
**3.12.4**   Vice-Chairman ................................................................................................... 22
**3.12.5**   Secretary .......................................................................................................... 22

**3.13**   Committees of the Board of Directors ................................................................ 23

**3.13.2**   Executive Committee .......................................................................................... 23
**3.13.3**   Finance and Audit Committee ............................................................................... 24
**3.13.4**   Governance Committee ....................................................................................... 24
**3.13.5**   Personnel Committee .......................................................................................... 25

**3.14**   Correspondence .............................................................................................. 25

**3.15**   Records ........................................................................................................... 25

**3.16**   Reporting To and Representation At the Synod Convention ................................... 25

**3.17**   Monitoring ...................................................................................................... 26

**3.17.1**   Policy and Action Review ..................................................................................... 26
**3.17.2**   Policy Review Calendar ....................................................................................... 26
**3.17.3**   Board Self-Review .............................................................................................. 26

**§ 4**   **Board Governance Relationships (Boards, Commissions, and Officers) ...................... 27**

**4.1**   Manner of Meeting of Synod Agencies ................................................................ 27

**4.1.2**   Electronic Meetings ............................................................................................ 27
**4.1.3**   Actions Using Electronic Ballot ............................................................................. 27

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 204 of 365
Exhibit 5 to Defendants' Motion to Dismiss
Page 4 of 122
**The Lutheran Church—Missouri Synod**                    **Board of Directors Policy Manual**

| | | |
|---|---|---|
| **4.2** | Mission Boards of the Synod | 27 |
| **4.3** | Commissions of the Synod | 28 |
| **4.3.2** | Commission on Constitutional Matters | 28 |
| **4.3.3** | Commission on Theology and Church Relations | 28 |
| **4.3.4** | Commission on Handbook | 28 |
| **4.3.5** | Commission on Doctrinal Review | 28 |
| **4.4** | Council of Presidents | 28 |
| **4.5** | Making Appointments and Filling Mid-term Vacancies | 28 |
| **4.5.1** | Appointments to Board to Obtain Necessary Skill Sets | 28 |
| **4.5.2** | Regular Appointments to Boards, Commissions and Standing Committees | 29 |
| **4.5.3** | Mid-Term Vacancy Appointments to Convention-Elected Board and Commission Positions | 32 |
| **4.5.4** | Appointment of Chief Financial Officer | 32 |
| **4.5.5** | Appointment of Chief Administrative Officer | 33 |
| **4.5.6** | Appointment of Chief Mission Officer | 33 |
| **4.6** | Elected Officers of the Synod | 33 |
| **4.6.2** | President | 33 |
| **4.6.3** | Secretary | 33 |
| **4.7** | Appointed Officers of the Synod | 34 |
| **4.7.2** | Chief Administrative Officer | 34 |
| **4.7.3** | Chief Financial Officer | 34 |
| **4.7.4** | Chief Mission Officer | 35 |
| **4.8** | Designation of Interim Persons | 35 |
| **4.9** | Administrative Team | 35 |
| **4.10** | Operations Team | 36 |
| **4.11** | Additional Officers and Staff | 36 |
| **4.12** | Designating the Board's Representation on Synodwide Corporate and Trust Entities | 37 |
| **4.12.2** | Alternate Representation | 37 |
| **4.12.3** | Designation by Chief Financial Officer | 37 |
| **4.12.4** | Reporting by Representatives and Board Monitoring | 37 |
| **4.12.5** | Service of the Chief Financial Officer on Other Boards | 38 |
| **4.13** | Requests for Minutes of the Board of Directors, Mission Boards, or Commissions of the Synod | 38 |
| **4.14** | Delegation and Retention of Board Duties | 38 |
| **4.14.2** | Matters Requiring Board Action | 39 |
| **4.15** | Operating and Capital Budgets | 41 |
| **4.15.1** | Authority | 41 |
| **4.15.2** | Ends | 41 |
| **4.15.3** | Board means | 42 |
| **4.15.4** | Executive means and limitations | 43 |
| **4.15.5** | Mission Advancement Support Rate | 43 |
| **4.15.6** | Operating Budget Strategy Templates | 44 |
| **4.15.7** | Monitoring and convention communication | 44 |

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 205 of 365
Exhibit 5 to Defendants' Motion to Dismiss
Page 5 of 122

The Lutheran Church—Missouri Synod | Board of Directors Policy Manual

**4.16** Convention Budget and Location ................................................................................ 44

**4.17** Audit ................................................................................................................................ 45

    **4.17.1** Board of Directors Audit Committee Charter .................................................. 45
    **4.17.2** Synod's Internal Audit Department Charter .................................................... 50
    **4.17.3** Regulations for Synod's Internal Audit Department ....................................... 53

**4.18** Legal Policies for Corporate Synod and Subordinate Agencies ........................... 53

    **4.18.2** Engagement of Legal Counsel ............................................................................ 54
    **4.18.3** Initiating Litigation ............................................................................................... 54
    **4.18.4** Responding to Litigation ...................................................................................... 55
    **4.18.5** Participation by the Synod as Amicus Curiae or in Support of a Member Congregation .................. 56
    **4.18.6** Powers of Attorney for the Synod ..................................................................... 57

**4.19** Committee for Human Resources .......................................................................... 57

    **4.19.2** Maintenance of Common Human Resources Policies and Procedures .......... 58
    **4.19.3** Review of General Human Resources Policies of the Synod .......................... 58
    **4.19.4** Relation of Committee to Participating Entities, Executives, and Staff ........ 58
    **4.19.5** Role of Chief Administrative Officer ................................................................. 59

**4.20** Working Together ..................................................................................................... 59

**4.21** Monitoring ............................................................................................................... 59

    **4.21.1** Management Reports ........................................................................................... 59
    **4.21.2** Direct Monitoring ................................................................................................ 59
    **4.21.3** Chief Administrative Officer and Chief Financial Officer Performance Reviews .......... 60
    **4.21.4** Notice of Violation of Board Policy ................................................................... 61

**§ 5** **Management Policies for Corporate Synod and Agencies of Corporate Synod** ......................... 62

**5.1** Budget Policies (Corporate Synod) ............................................................................ 62

**5.2** Accounting Policies (Corporate Synod) .................................................................... 62

**5.3** Financial Transactions (Corporate Synod) .............................................................. 63

    **5.3.2** Signature Authority (Corporate Synod) .............................................................. 63
    **5.3.3** Authorization Categories ....................................................................................... 63
    **5.3.4** Authorization Limits (Corporate Synod) ............................................................. 64
    **5.3.5** Property Transactions and Reporting of Real Property ..................................... 65
    **5.3.6** Foreign Bank Accounts and Currency Transactions .......................................... 65
    **5.3.7** Authorization to Deal in Securities ..................................................................... 65
    **5.3.8** Expense Accounts ................................................................................................... 66
    **5.3.9** Reimbursement; Compensation of Board, Commission, and Committee Members .......... 66

**5.4** Sharing of Financial Information ............................................................................... 66

**5.5** Insurance (Corporate Synod and Synod's Insurance Program) ............................ 66

**5.6** Fund Raising (Corporate Synod and Subordinate Agencies) ................................. 67

    **5.6.2** Corporate Synod Fundraising Policy Manual ..................................................... 68

**5.7** Legal and Governmental Matters ............................................................................. 68

**5.8** Human Resources Policies (Corporate Synod) ........................................................ 69

    **5.8.1** LCMS Department of Human Resources ........................................................... 69

**5.9** Balances on Deposit with the Synod or with Synod's Designee .......................... 70

**5.10**   Record and Archive Management Policy ................................................................ 70

**5.11**   Monitoring ............................................................................................................. 70

**§ 6**   **Management Policies for Synod and All Agencies** ..................................................71

**6.1**   Board Authority to Set and Monitor Management Policies ................................ 71

**6.2**   Financial Misconduct ........................................................................................... 71

**6.3**   Property Policies .................................................................................................. 72

    **6.3.1**   Property Transactions ................................................................................. 72
    **6.3.2**   Property of Synod Held by Its Districts ....................................................... 73
    **6.3.3**   Property of Synod held by Colleges, Universities, and Seminaries as defined in Bylaw 1.2.1(r) ........ 73
    **6.3.4**   Property of Synod Held by Synodwide Corporate Entities .......................... 75
    **6.3.5**   Titles and Deeds ......................................................................................... 75
    **6.3.6**   Appraisals ................................................................................................... 75
    **6.3.7**   Non-Synod Tenants .................................................................................... 75
    **6.3.8**   Guarantees of Indebtedness ....................................................................... 76
    **6.3.9**   Use of LCEF Assets ..................................................................................... 76

**6.4**   General Human Resource Policies of the Synod ................................................. 76

    **6.4.2**   Compliance with Human Resources Requirements ...................................... 76
    **6.4.3**   Salary Administration .................................................................................. 77
    **6.4.4**   Board/Commission and Executive Relationship .......................................... 77
    **6.4.5**   Calling, Appointing and Employing Staff .................................................... 78
    **6.4.6**   Housing and Moving Assistance by Synodwide Agencies ........................... 80
    **6.4.7**   The Acceptance of Gifts, Entertainment, or Favors ..................................... 80
    **6.4.8**   Accommodation Employment ..................................................................... 81

**6.5**   Ownership and Management of Lists ................................................................... 81

    **6.5.2**   Gathering of Lists ....................................................................................... 82
    **6.5.3**   Management of Lists ................................................................................... 82

**6.6**   Contacts with the News Media ........................................................................... 83

**6.7**   Use of Synod Logo ............................................................................................... 83

**6.8**   The LCMS Website and Internet Presence .......................................................... 83

**6.9**   Special Emphasis Observances ........................................................................... 85

**6.10**   Contacts with Government Offices (Synod and All Agencies) ............................ 85

    **6.10.1**   Contacts with Government Units (Other than the Internal Revenue Service) by the Synod and its Agencies  85
    **6.10.2**   Contacts with the Internal Revenue Service by the Synod and Its Agencies ...................... 85

**6.11**   Contacts with the Internal Revenue Service, Congregations and Agencies of the Synod ......... 86

**6.12**   Approval of New Corporations as Agencies of the Synod ................................... 86

**6.13**   Approval of Foreign Corporations for Mission Purposes .................................... 88

**6.14**   International Center Facilities and Services .......................................................... 89

**6.15**   Monitoring ............................................................................................................. 90

**§ 7**   **Management Policies for Agencies Outside of Corporate Synod** ...........................91

**7.1**   Accounting Policies (Agencies Outside of Corporate Synod) .............................. 91

7.1.1    Compliance with Generally Accepted Accounting Principles .................................. 91
7.1.2    Compliance with Internal Revenue Service requirements .................................... 91

7.2    Financial Transaction Policies (Agencies Outside of Corporate Synod) ..................... 91
7.2.1    Sharing of Financial Information ................................................................. 91
7.2.2    Contributions for Foreign Work ................................................................. 91
7.2.3    Foreign Bank Accounts and Currency Transactions ....................................... 92
7.2.4    Grants by Agencies ................................................................................. 92
7.2.5    Income Management – Fund Raising ........................................................... 92
7.2.6    Authorization to Deal in Securities ............................................................ 92
7.2.7    Expense Accounts .................................................................................. 92
7.2.8    Reimbursement; Compensation of Board, Commission, and Committee members ....... 92
7.2.9    Expansion of Operations, Synodwide Corporate Entities and Concordia Plan Services ...... 92

7.3    Audit Policies (Agencies Outside of Corporate Synod) ......................................... 93
7.3.1    Audits Required ..................................................................................... 93
7.3.2    Selection of Auditors .............................................................................. 93
7.3.3    Sharing of Audited Financial Statements .................................................... 93
7.3.4    Audit Committee .................................................................................... 93
7.3.5    Reporting of Legacies and Bequests ........................................................... 93

7.4    Insurance Policies (Agencies Outside of Corporate Synod) ................................... 93
7.4.1    Insurance Coverage ................................................................................ 93
7.4.2    Administration of the Synod's Insurance Program ......................................... 95

7.5    Legal Policies (Agencies Outside of Corporate Synod) ......................................... 95
7.5.2    Engagement of Legal Counsel by Agencies of the Synod ................................. 96
7.5.3    Initiating Litigation ................................................................................ 97
7.5.4    Responding to Litigation .......................................................................... 98
7.5.5    Participation by the Synod and/or Its Agencies in Judicial Proceedings as Amicus Curiae or in
Support of a Member Congregation ........................................................................ 99

7.6    Monitoring ........................................................................................... 99

§ 8    Auxiliaries and Recognized Service Organizations .......................................... 100

8.1    Auxiliary Organizations ........................................................................... 100

8.2    Granting of Recognized Service Organization (RSO) Status by Synod Mission Offices........... 100
8.2.1    Ends of RSO Program .............................................................................. 100
8.2.2    Bylaw-Mandated Requirements for Recognition of Service Organizations ............... 101
8.2.3    Board of Directors Approval of Standard Form of Agreement ............................ 102
8.2.4    Board of Directors Policies and Criteria for RSO Program Administration ............... 102
8.2.5    RSO Program Public Information ................................................................ 107

8.3    Recognized Service Organization Standard Form of Agreement ............................... 108

8.4    Monitoring ........................................................................................... 113

§ 9    Appendix .............................................................................................. 114

9.1    Board of Directors Triennial Calendar of Activities ........................................... 114

The Lutheran Church—Missouri Synod                     **Board of Directors Policy Manual**

| § 0 | Preface |
|-----|---------|

0.1.1.1    The Board of Directors, in accordance with Const. Art. XI E 2, Bylaw 3.3.4, and Art. of Inc. V, supervises and oversees property and business affairs and performs other duties as assigned to advance the objectives of The Lutheran Church—Missouri Synod as stated in Const. Art. III, Bylaw 1.1.1, and Art. of Inc. II, so that Christ's name may be glorified among all people throughout the world by our serving one another in Christ's name, reaching our communities with Christ's love, and claiming the world for Christ's kingdom.

0.1.1.2    The Board has adopted these policies to assist the Board in carrying out its obligations and objectives by delegation of authority and implementation of procedures for the Board's supervision and oversight of Corporate Synod and agencies of the Synod.

0.1.1.3    These policies can be changed only by the Board. All agencies of the Synod and all officers and employees of the Synod must comply with these policies.

0.1.1.4    At a minimum, the Board shall maintain the following categories of written policies applicable to:

- **§1: Board Responsibility and Accountability:** The relationship of the Board to the member congregations of the Synod and the Board's specific charge under the Constitution, Bylaws, and Articles of Incorporation.

- **§2: Objectives:** The Board's understanding of the Synod's objectives as pertain especially to the Board's role in coordinating and providing for the pursuit of them by Synod and its agencies for and on behalf of the member congregations of the Synod.

- **§3: Board Self-Governance:** The Board's self-organization in order to accomplish its specific charge.

- **§4: Board Governance Relationships:** Relation of the Board's authority to that of other governing bodies and officers in the Synod, including the delegation relationship between the Board and its Chief Administrative and Financial Officers. This section includes policies related to governance of Synod agencies, inside and outside Corporate Synod.

- **§5: Management Policies for Corporate Synod and Its Agencies:** Policies regulating management activities with regard to which the Board has supervision and coordinating those with regard to which it has oversight, within Corporate Synod and its Agencies. These policies do not apply to "outside agencies."

- **§6: Management Policies for Synod and All Agencies:** Policies regulating management activities with regard to which the Board has supervision and coordinating those with regard to which it has oversight, as applicable to Synod and all Synod agencies.

- **§7: Management Policies for Agencies Outside Corporate Synod:** Policies regulating management activities with regard to which the Board has supervision and coordinating those with regard to which it has oversight, as only to agencies outside Corporate Synod.

- The above division is intended to simplify use of the manual by various groups:

    - Management of Corporate Synod and its agencies needs to refer only to **§§ 5–6**.

    - Management of agencies outside Corporate Synod needs to refer only to **§§ 6–7**.

    - Governance bodies need to refer to relevant portion of **§ 4** and to the above sections as appropriate.

- **§8: Auxiliaries and Recognized Service Organizations:** Policies to carry out the Board's role in Synod's relation to these independently governed organizations.

- **§9: Appendix:** Additional information that the Board deems helpful to carry out its responsibilities.

| 0.2 | Definitions of "terms of art" used consistently herein |
|---|---|

| 0.2.1 | Directly Relevant Bylaw 1.2.1 Definitions |
|---|---|

(a) *Agency*: An instrumentality other than a congregation or Corporate Synod, whether or not separately incorporated, which the Synod in convention or its Board of Directors has caused or authorized to be formed to further the Synod's Objectives (Constitution Art. III).

    (1) Agencies include each board, commission, council, seminary, university, college, district, Concordia Plan Services, and each synodwide corporate entity.

    (2) The term "agency of the Synod" does not describe or imply the existence of principal and agency arrangements as defined under civil law.

(b) *Corporate Synod*: The Lutheran Church—Missouri Synod, the Missouri nonprofit corporation, including its offices, boards, commissions, and departments.

    (1) "Corporate Synod" is not an agency of the Synod.

    (2) The Lutheran Church—Missouri Synod, in referencing the laws of the State of Missouri in these Bylaws and in the Synod's Articles of Incorporation, intends to acknowledge its responsibility to be subject to civil authority. In all such references, however, the Synod intends to retain all authority and autonomy allowed a church under the laws and Constitution of the United States and the State of Missouri.

(c) *May*: Permissive, expressing ability, liberty, or the possibility to act.

(d) *Officer*: Those positions identified in Constitution Art. X A or Art. XII 3 or Bylaw sections 3.3 and 3.4 unless qualified by a modifier.

(e) *Oversight*: For the purpose of these Bylaws, to monitor; to make inquiry and receive a response thereto; to make suggestions; to bring concerns to the attention of a higher authority.

(f) *Property of the Synod*: All assets, real or personal, tangible or intangible, whether situated in the United States or elsewhere, titled or held in the name of

Exhibit 5 to Defendants' Motion to Dismiss
Page 10 of 122
The Lutheran Church—Missouri Synod                                    **Board of Directors Policy Manual**

Corporate Synod, its nominee, or an agency of the Synod. "Property of the Synod" does not include any assets held by member congregations, the Lutheran Church Extension Fund—Missouri Synod, or by an agency of the Synod in a fiduciary capacity (including, for purposes of example, the funds managed for the Concordia Plans by Concordia Plan Services and certain funds held by The Lutheran Church—Missouri Synod Foundation).

(g) ***Shall***: A word of command that must always be given an imperative or compulsory meaning.

(h) ***Supervision***: For the purpose of these Bylaws (other than those pertaining to ecclesiastical supervision) to have authority over, to direct actions, to control activities.

(i) ***Synod***: Refers collectively to the association of self-governing Lutheran congregations and all its agencies on the national and district levels. The Synod, as defined herein, is not a civil law entity.

| 0.2.2 | Other Definitions |

(a) (reserved for future use)

| Section Revision History |
| --- |
| 2022.11.18          § 0 – Comprehensive Revision |

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 211 of 365
Exhibit 5 to Defendants' Motion to Dismiss
Page 11 of 122

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

## § 1          Board Responsibility and Accountability

### 1.1          Responsibility and Accountability to the Synod Convention

1.1.1.1      The Board is responsible and accountable to the congregations of the Synod, which have formed and support the Synod in pursuit of their objectives, as determined and revised in Conventions (Const. Art. XI E 1; Bylaw 3.3.4), and which obligate themselves to support financially the work of the Synod (Bylaw 1.3.4.2).

1.1.1.2      The member congregations speak with one voice through the convention (Bylaw 3.1.1), reserving the right to give direction to all officers, including the Board of Directors, and agencies of the Synod (Bylaw 1.4.1; Art. of Inc. III–IV).

1.1.1.3      In keeping with the above and with the Board's oversight responsibility to "bring concerns to the attention of a higher authority" (Const. Art. XI E 2; Bylaw 1.2.1 [o]), the Board provides the member congregations of the Synod with reporting, analysis, and reasoned proposals on business, property, and legal matters. The Board's convention *Workbook* report, convention overtures it submits, its minutes, and its communications through other official channels are designed to facilitate the member congregations' monitoring of the Board's work and their governance of the Synod in convention.

1.1.1.4      The Board has only such rights as have been expressly conferred by the Synod, and in everything pertaining to its rights and the performance of its duties, it is responsible to the Synod (Const. Art. XI A 1; Art. of Inc. IV).

### 1.2          Specific Responsibilities

1.2.1.1      The responsibility of the Board of Directors is to the Lutheran Church—Missouri Synod formed by the Constitution ("Synod") and to the Missouri corporation under Missouri law ("Corporate Synod").

1.2.1.2      The Board serves as the legal representative and custodian of all property of the Synod (here meaning both Synod and Corporate Synod), as limited by the Constitution and Bylaws of the Synod. (Const. Art. XI E 2; Bylaw 1.4.4)

1.2.1.3      The Board shall exercise supervision over all property and business affairs of the Synod (here meaning both Synod and Corporate Synod) except in those areas where it has delegated such authority to an agency of the Synod or where the voting members of the Synod through the adoption of Bylaws or by other convention action have assigned specific areas of responsibility to separate corporate or trust entities, and as to those, the Board of Directors has general oversight responsibility as set forth in the Bylaws. (Const. Art. XI E 2)

1.2.1.4      The Board shall have the powers and duties that have been accorded to it by the Articles of Incorporation, Constitution, Bylaws, and resolutions of the Synod, and the laws of the State of Missouri. (Bylaw 3.3.4.2) (Art. of Inc. V).

1.2.1.5      As the Board carries out its particular responsibilities as a part of the Synod for and on behalf of the Congregations (Bylaw 1.3.3), it recognizes the extent and limitations of the responsibilities assigned to the Board, both of supervision (as defined in Bylaw 1.2.1[t]; that is, control on behalf of the congregations) and of oversight (as defined in Bylaw

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

1.2.1[o], the higher authority being the congregations of the Synod, which govern the Synod when they meet in convention).

(a) **Supervision**: For the purpose of these Bylaws (other than those pertaining to ecclesiastical supervision) to have authority over, to direct actions, to control activities.

(b) **Oversight**: For the purpose of these Bylaws, to monitor; to make inquiry and receive a response thereto; to make suggestions; to bring concerns to the attention of a higher authority.

## 1.3            Legal Representation and Custodianship

1.3.1.1        The Board is the legal representative of the Synod (Const. Art. XI E 2).

1.3.1.2        The Board is the custodian of all the property of the Synod (Const. Art. XI E 2), having, except as provided otherwise in the Bylaws of the Synod, the authority and responsibility vested in and imposed on a board of directors of a corporation (Bylaw 3.3.4.7).

1.3.1.3        The Board may delegate its representation and custodianship to an agency of the Synod (Const. Art. XI E 2).

## 1.4            Provision and Allocation of Funds and Budgeting

1.4.1.1        The Board of Directors shall be responsible for providing operating and capital funds to carry out the work of the Synod. (Bylaw 3.3.4.5 [c]).

1.4.1.2        The Board of Directors "shall allocate funds to the boards, commissions, councils, officers, and departments of Corporate Synod and holds them responsible therefor" (Bylaw 3.3.4.5, [a–c]). In this respect, among others, it supervises the business and legal aspects of Corporate Synod's work.

1.4.1.3        Corporate Synod's budgeting process and the budget itself shall be designed to support the worldwide mission and ministry of the Synod (Bylaw 3.3.4.5).

1.4.1.4        The Board shall establish policies and guidelines relating to the preparation of the annual budget (Bylaw 3.3.4.5 [1]).

1.4.1.5        The Board shall adopt the annual budget. (Bylaw 3.3.4.5 [2]).

## 1.5            Borrowing of Capital Funds

1.5.1.1        The Board of Directors shall be empowered to authorize the Chief Financial Officer of the Synod to borrow capital funds after the Board has determined the amounts and the conditions under which these capital funds shall be borrowed, for capital-fund outlay, for site acquisition, or for construction projects that are authorized by conventions of the Synod. (Bylaw 3.3.4.8)

(a) It and the responsible officers of the Synod are empowered to do all things necessary to effect such capital-fund borrowings if and when required, including the pledging of real and other property belonging to the Synod in order to secure loans to obtain the necessary funds.

(b) The borrowed capital funds shall not be used for any operating expenditures and shall be subject to provision for amortization.

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 213 of 365
Exhibit 5 to Defendants' Motion to Dismiss
Page 13 of 122

The Lutheran Church—Missouri Synod                    **Board of Directors Policy Manual**

| 1.6 | **Supervision of Property and Business Affairs Not Delegated** |
|---|---|

1.6.1.1    The Board exercises supervision over all property and business affairs of the Synod except where it, or the convention by adoption of bylaws or other action, has assigned specific areas of responsibility to separate corporate or trust entities (Const. Art. XI E 2).

1.6.1.2    The management authority and duties of the Board as Board of Directors of Corporate Synod are limited to the extent such authority and duties are delegated by the Constitution and Bylaws of The Lutheran Church—Missouri Synod to other officers and agencies of the Synod, subject to the procedure provided in case of a conflict regarding authority and duties either among the officers and agencies or regarding the applicability of the laws of the State of Missouri (Art. of Inc. V; Bylaw 3.9.2.2).

| 1.6.2 | **Supervision of Property and Business Affairs of Corporate Synod** |
|---|---|

1.6.2.1    The Board of Directors shall hold the boards, commissions, councils, offices, and departments of Corporate Synod responsible for funds entrusted to them and/or expended by them (Bylaw 3.3.4.5).

1.6.2.2    To the extent of its responsibilities relative to the general management and supervision of the business and legal affairs of the Synod (Bylaw 3.3.4.5 [a]):

   (a) It shall receive such reports as it requests on the operations and policies of the mission boards, commissions, offices, and councils.

   (b) It shall have the right to request review of any action or policy of a mission board, commission, office, or council which primarily relates to business, property, and/or legal matters and, after consultation with the agency involved and when deemed necessary, require modification or revocation thereof, except opinions of the Commission on Constitutional Matters.

| 1.7 | **Oversight of Property and Business Affairs Delegated to Agencies** |
|---|---|

1.7.1.1    Where the Board or convention, by adoption of bylaws or other action, has assigned specific areas of responsibility for property and business affairs of the Synod to separate corporate or trust entities, the Board retains general oversight responsibility (Const. Art. IV; XI E 2; Art. of Inc. VIII).

1.7.1.2    To carry out its obligations under Article XI E of the Constitution and Bylaws of the Synod, the Board of Directors may obtain from any agency of the Synod all records and other information (a) relating to property of the Synod, and (b) pertaining to matters for which the Board of Directors has oversight responsibility under the Constitution and other provisions of these Bylaws, including financial records, records of operations, and information regarding legal affairs of such agency of the Synod. Notwithstanding the foregoing, an agency of the Synod shall not be required to deliver: (i) records or information that an agency of the Synod is legally prohibited from disclosing under applicable federal or state law; and (ii) personally identifiable information pertaining to employees, donors, students, beneficiaries, investors, borrowers, and participating employers and plan members of Concordia Plan Services. If any of the records or information requested by the Board of Directors are subject to a confidentiality agreement, the Board of Directors shall maintain such confidentiality. The goal of this bylaw is to permit delivery of records and information to the Board of Directors to the

greatest extent possible, subject to clauses (i) and (ii) above. All agencies of the Synod shall cooperate fully with the Board of Directors when responding to requests to provide records and information. (Bylaw 3.3.4.10)

1.7.1.3    The Board may delegate to any agency of the Synod powers and duties with respect to property of the Synod for which such agency of the Synod has direct supervisory responsibility. Such delegation shall be in writing and shall be subject to change at any time by the Synod's Board of Directors provided that reasonable deliberations, as determined by the Board of Directors, take place with such agency prior to the change. (Bylaw 3.3.4.7 [b–c]) Such delegation is recorded in Policy section 6.3.

### 1.7.2    Synodwide Corporate (Trust) Entities in General

The Board acknowledges its responsibility and authority to:

(a)  exercise general oversight over property and business affairs of synodwide corporate and trust entities (Const. Art. XI E 2; Bylaw 3.3.4.6)

   (1)  It shall assure itself that their accounting, budgeting, and financial policies comply with generally accepted accounting standards.

   (2)  It shall assure itself that audits are performed by internal auditors or independent certified public accountants

   (3)  It shall be furnished with copies of these and any interim financial reports it requests.

   (4)  It shall have a right to non-voting representation as indicated in Bylaw 3.3.4.6 (d).

(b)  inquire of, expect a response from, and make suggestions to a synodwide corporate or trust entity's board relative to its operations and activities (Bylaws 3.6.1.6 [g]; 1.2.1 [p])

(c)  in its discretion, bring to the Synod in convention unresolved disagreements with and among synodwide corporate entities or involving the scope of authority or operations of an entity or entities (Bylaws 3.6.1.6 [g]; 1.2.1 [p])

(d)  oversee the establishment and monitoring, by synodwide corporate and trust entity boards, of long- and short- range plans and operating and capital budgets to carry out such plans as in accord with the objectives of the Synod and its convention resolutions (Bylaw 3.6.1.6 [f])

(e)  approve of any proposed changes to synodwide corporate entity governing instruments (Bylaws 3.6.1.7, 3.6.1.8 [c])

(f)  approve formation (Bylaw 3.6.1.1) or dissolution (Bylaw 3.6.1.9) of a synodwide corporate entity

### 1.7.3    Concordia Historical Institute (CHI)

The Board has general responsibility and authority with respect to CHI as an agency and synodwide corporate entity.

Exhibit 5 to Defendants' Motion to Dismiss
Page 15 of 122
Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 215 of 365

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

| 1.7.4 | **Concordia Publishing House (CPH)** |

In addition to its general responsibility and authority with respect to CPH as an agency and synodwide corporate entity, the Board shall designate a representative as a nonvoting member of the CPH Board of Directors (Bylaws 3.3.4.6 [d]; 3.6.3.1).

| 1.7.5 | **The Lutheran Church Extension Fund—Missouri Synod (LCEF)** |

In addition to its general responsibility and authority with respect to LCEF as an agency and synodwide corporate entity, the Board:

(a) appoints first-class voting members to the LCEF membership, one per each ten members of the second-class (participating districts). (Bylaw 3.6.4.2.1)

(b) designates a representative as a nonvoting member of the LCEF Board of Directors. (Bylaws 3.3.4.6 [d]; 3.6.4.3)

(c) approves policies for use of LCEF funds for purposes other than those listed explicitly in Bylaw 3.6.4.4.1–2, which shall be consistent with the ministry and mission of the Synod.

| 1.7.6 | **The Lutheran Church—Missouri Synod Foundation (LFND)** |

In addition to its general responsibility and authority with respect to LFND as an agency and synodwide corporate entity, the Board:

(a) appoints first-class voting members to the LFND membership.

(b) designates a representative as a nonvoting member of the LFND Board of Trustees (Bylaws 3.3.4.6 [d]; 3.6.5.2.1)

(c) exercises prior approval of any other new foundation to be established by any agency of the Synod.

(d) receives regular reports from the LFND chief executive.

(e) with the LFND Board of Trustees, designates causes for deferred giving programs beyond causes listed in Bylaw 3.6.5.3.

(f) consults with the LFND Board of Trustees regarding the distribution of undesignated funds (Bylaw 3.6.5.3.1).

| 1.7.7 | **Concordia University System (CUS)** |

In addition to its general responsibility and authority with respect to CUS as an agency and synodwide corporate entity, the Board:

(a) appoints CUS member delegates as established by the CUS Articles of Incorporation and Bylaws (Bylaw 3.6.6.2).

(b) appoints up to two nonvoting advisory members to the CUS Board of Directors satisfying various criteria (Bylaw 3.6.6.3).

(c) consents by its two-thirds vote to actions of the CUS Board of Directors to consolidate, relocate, separate, or divest a college or university of the Synod (Bylaw 3.6.6.4 [i]).

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 216 of 365
Exhibit 5 to Defendants' Motion to Dismiss
Page 16 of 122

The Lutheran Church—Missouri Synod                          Board of Directors Policy Manual

(d)  participates in institutional planning and approves capital projects in relation to campus property-management arrangements and changes to institutional master plans of the colleges and universities, upon recommendations of boards of regents (Bylaw 3.6.6.4 [b]).

(e)  approves criteria and standards for determining institutional viability of the colleges and universities of the Synod (Bylaw 3.6.6.4 [d]).

**1.7.8     Synodwide Trust Entity: The Concordia Plans / Concordia Plan Services (CP/CPS)**

In addition to its general responsibility and authority with respect to CP/CPS as an agency and synodwide trust entity (manager):

(a)  appoints the voting members of the CP Board of Trustees / CPS Board of Directors (Bylaw 3.7.1.3).

(b)  designates a representative as a nonvoting member of the CP Board of Trustees / CPS Board of Directors (Bylaws 3.3.4.6 [d]; 3.7.1.3).

(c)  holds CPS accountable for managing the benefit plans/trusts of the Synod (Bylaw 3.7.1.1) and ancillary programs, including supplemental insurance and administration services programs, and the Support Program (Bylaw 3.7.1.2).

(d)  establishes limits on the amendment of plans by the CP Board of Trustees and receives reports on changes made within those limits, such power to change the plans being "finally vested in the Synod's Board of Directors" (Bylaw 3.7.1.4).

(e)  approves benefit plans that "compare favorably with other similar plans while meeting unique needs of the full-time church workers in the Synod" (Bylaw 3.7.1.4 [d]).

(f)  receives copies of all CP/CPS audit reports for information, advice, and counsel (Bylaw 3.7.1.4 [e]).

**1.7.9     Districts of the Synod**

1.7.9.1  The Board delegates to district boards of directors the authority to buy, sell, and encumber real and personal property in the ordinary course of performing the functions which the district carries on for the Synod in accord with general policies (which shall be applicable to all districts) established from time to time by itself or the Synod in convention (Bylaw 3.3.4.7 [a]). Such delegation shall be recorded in Policy section 6.3.2.

1.7.9.2  The Board shall assure itself that audits of Synod districts are performed by internal auditors or independent certified public accountants and shall be furnished with copies of these and any interim financial reports it requests (Bylaw 3.3.4.6 [b–c]).

**1.7.10    Colleges, Universities, and Seminaries**

1.7.10.1  The Board may delegate to any agency of the Synod powers and duties with respect to property of the Synod for which such agency of the Synod has direct supervisory responsibility. Such delegation shall be in writing and shall be subject to change at any time by the Synod's Board of Directors provided that reasonable deliberations, as determined by the Board of Directors, take place with such agency prior to the change (Bylaw 3.3.4.7 [b–c]). Such delegation shall be recorded in Policy section 6.3.3.

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 217 of 365
Exhibit 5 to Defendants' Motion to Dismiss
Page 17 of 122

The Lutheran Church—Missouri Synod                    **Board of Directors Policy Manual**

| | |
|---|---|
| 1.7.10.2 | The Board shall approve capital projects in relation to campus property management agreements and institutional master plans; shall establish and monitor criteria for determining institutional viability, fiscal and otherwise (Bylaws 3.3.4.5 [e]); and shall establish guidelines and policies as authorized by 3.10.5.5 (h–i) and 3.10.6.4 (h–i). |
| 1.7.10.3 | The Board shall assure itself that audits of Synod colleges, universities, and seminaries are performed by internal auditors or independent certified public accountants and shall be furnished with copies of these and any interim financial reports it requests. (Bylaw 3.3.4.6 [b–c]) |
| 1.7.10.4 | With regard to the seminaries, the Board shall, together with national fundraising operations, establish policy guidelines for the distribution of grants of the Synod (restricted and unrestricted) and efforts for securing additional financial support from other sources (Bylaw 3.3.4.5 [d]). |
| 1.7.10.5 | The Board establishes polices governing the establishment of lines of credit or operational borrowing of Synod's seminaries (Bylaw 3.10.5.5 [e][1]) and, with Concordia University System, of its colleges and universities (Bylaw 3.10.6.4 [e][1]). |
| 1.7.10.6 | The Chairman of the Board serves as elector in the election of a seminary president (Bylaw 3.10.5.6.2 [h]). |

| | |
|---|---|
| **1.7.11** | **Other Agencies of the Synod** |

| | |
|---|---|
| 1.7.11.1 | The Board may delegate to any agency of the Synod powers and duties with respect to property of the Synod for which such agency of the Synod has direct supervisory responsibility. Such delegation shall be in writing and shall be subject to change at any time by the Synod's Board of Directors provided that reasonable deliberations, as determined by the Board of Directors, take place with such agency prior to the change. (Bylaw 3.3.4.7 [b–c]) |

| | |
|---|---|
| **1.8** | **Review and Coordination of Policies and Directives** |

| | |
|---|---|
| 1.8.1.1 | The Board of Directors shall provide for the review and coordination of the policies and directives of the Synod authorized by the Constitution, Bylaws, and resolutions of the Synod, evaluating plans and policies and communicating to the appropriate boards and commissions suggestions for improvement, and, in the case of mission boards and commissions, require changes for compliance with Board of Directors' policies within the sphere of its responsibility (Bylaw 3.3.4.3). |

| | |
|---|---|
| **1.9** | **Personnel** |

| | |
|---|---|
| 1.9.1.1 | The Board appoints and subsequently re-appoints, in consultation with and with the concurrence of the President, the Chief Financial Officer (Bylaw 3.4.1.1) and Chief Administrative Officer (Bylaw 3.4.2.1). |
| 1.9.1.2 | The Board consults with the President and concurs in his appointment and subsequent re-appointment of the Chief Mission Officer (Bylaw 3.4.3.2). |
| 1.9.1.3 | The Board may appoint, subject to the approval of the President, other officers to carry out the business and legal affairs of the Synod (Bylaw 3.3.4.9). |
| 1.9.1.4 | The Board may appoint staff as required (Bylaw 3.3.4.9). |

Exhibit 5 to Defendants' Motion to Dismiss
Page 18 of 122

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 218 of 365

The Lutheran Church—Missouri Synod                    **Board of Directors Policy Manual**

| 1.10 | **Removal from Office of Officers and Board Members** |
|---|---|

The Board effects, as specified in Bylaws 1.5.7–1.5.8.1, the removal from office, for cause, of members of the Synod's boards and commissions (including boards of its agencies) and of Synod officers (other than the President).

| 1.11 | **Designation of Regions of the Synod** |
|---|---|

For all elections requiring regional representation, the Board of Directors of the Synod and the Council of Presidents acting jointly, 24 months prior to conventions of the Synod, shall designate five geographic regions as specified in Bylaw 3.12.1.

| 1.12 | **Monitoring** |
|---|---|

In review of this section, the Board shall consider how policies and their implementation maintain the priority, in the Board's work and reporting, of its responsibility and accountability to the member congregations of the Synod and to the objectives they have established in convention.

---

Section Revision History
2022.11.18          § 1 – Comprehensive Revision

---

Case 1:23-cv-01042-RP    Document 9-1    Filed 01/23/24    Page 219 of 365
Exhibit 5 to Defendants' Motion to Dismiss
Page 19 of 122

The Lutheran Church—Missouri Synod                                    Board of Directors Policy Manual

## § 2          Board Objectives ("Ends")

### 2.1          Role of the Board in Pursuing the Objectives of the Synod

The scope of the Board's supervision and oversight is limited. Others (President, mission boards, etc.) have significant constitutional and bylaw roles in directing the activities and agencies of the Synod toward its objectives. The statement of objectives or "ends" in this section is intended to comprehend the ends of the total Synod program of work, as effected by Synod in general, its agencies, and Corporate Synod in particular. The focus of this statement, however, is directed primarily toward guiding the Board and those under its supervision and/or oversight in regard to the specific property, legal, and business sphere that is the Board's responsibility. (Const. Art. XI E 2; Const. Art. IV; Bylaw 3.3.4)

### 2.2          Objectives of the Synod

The objectives of the member congregations, in pursuit of which they formed and maintain the Synod (including Corporate Synod and all Synod's Agencies) are:

- broadly defined in Const. Preamble (Reasons for the Forming of a Synodical Union) and Art. III (Objectives)

- refined in adoption of Bylaws and resolutions, especially in refining priorities (Bylaw 3.1.1, cf. Bylaw 1.3.6, 4.2.1 [b-d], 5.3.4) "in order to provide responsible service for and on behalf of its members." (Cf. Bylaws 1.1.1, 1.3.1, 1.3.3)

### 2.3          Constitution Article III: Objectives

The Synod, under Scripture and the Lutheran Confessions, shall—

1. Conserve and promote the unity of the true faith (Eph. 4:3–6; 1 Cor. 1:10), work through its official structure toward fellowship with other Christian church bodies, and provide a united defense against schism, sectarianism (Rom. 16:17), and heresy;

2. Strengthen congregations and their members in giving bold witness by word and deed to the love and work of God, the Father, Son, and Holy Spirit, and extend that Gospel witness into all the world;

3. Recruit and train pastors, teachers, and other professional church workers and provide opportunity for their continuing growth;

4. Provide opportunities through which its members may express their Christian concern, love, and compassion in meeting human needs;

5. Aid congregations to develop processes of thorough Christian education and nurture and to establish agencies of Christian education such as elementary and secondary schools and to support synodical colleges, universities, and seminaries;

6. Aid congregations by providing a variety of resources and opportunities for recognizing, promoting, expressing, conserving, and defending their confessional unity in the true faith;

7. Encourage congregations to strive for uniformity in church practice, but also to develop an appreciation of a variety of responsible practices and customs which are in harmony with our common profession of faith;

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 220 of 365
Exhibit 5 to Defendants' Motion to Dismiss
Page 20 of 122

The Lutheran Church—Missouri Synod                     Board of Directors Policy Manual

8. Provide evangelical supervision, counsel, and care for pastors, teachers, and other professional church workers of the Synod in the performance of their official duties;

9. Provide protection for congregations, pastors, teachers, and other church workers in the performance of their official duties and the maintenance of their rights;

10. Aid in providing for the welfare of pastors, teachers, and other church workers, and their families in the event of illness, disability, retirement, special need, or death.

| 2.4 | Articles of Incorporation, Article II: Objectives |
|---|---|

The objectives and purposes of this corporation are:

a. To unite in a corporate body Evangelical Lutheran congregations that acknowledge and remain true to the *Book of Concord* of the year of our Lord 1580 as a true exhibition of sound Christian doctrine.

b. To assist in the establishment of Evangelical Lutheran congregations and preaching stations.

c. To assist, advise, and protect member congregations and ministers of religion–ordained and ministers of religion–commissioned of The Lutheran Church—Missouri Synod, to provide for their ecclesiastical supervision in matters of doctrine and practice and their administration of official duties, and to acknowledge and assert the protections granted by the First Amendment to the Constitution of the United States.

d. To support the establishment and maintenance of theological seminaries, colleges, universities, and other institutions of learning to train ministers of religion–ordained, ministers of religion–commissioned, and laity for service in the Evangelical Lutheran Church.

e. To spread the Gospel of Jesus Christ throughout the world by every means possible.

f. To provide assistance and resources to the congregations, schools, Sunday schools, preaching stations, and agencies of the Synod for the dissemination of the Christian Gospel.

g. To establish and conduct all such enterprises and endeavors and to exercise such further power as may be necessary or expedient to carry out the objectives stated in the Constitution of The Lutheran Church—Missouri Synod.

| 2.5 | Bylaw section 1.1: Purpose of the Synod |
|---|---|

1.1.1   Committed to a common confession and mission, congregations of The Lutheran Church—Missouri Synod join with one another in the Synod to support one another and to work together in carrying out their commonly adopted objectives. The Synod is organized to work in support of and on behalf of congregations to assist them in carrying out their ministries as they seek to serve our Lord Jesus Christ, the members of His body, and the world which stands in need of the Word and the impact of His redeeming love.

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

(a) The Synod functions in support of its member congregations by providing assistance as congregations conduct their ministries locally, as well as their ministries at large.

(b) The Synod on behalf of its member congregations administers those ministries that can be accomplished more effectively in association with other member congregations through the Synod. In this way member congregations utilize the Synod to assist them in carrying out their functions of worship, witness, teaching and nurture, service, and support.

| 2.6 | Triennial Mission and Ministry Emphasis and Mission Priorities |
|---|---|

| 2.6.1 | Mission and Ministry Emphasis (2019 Res. 4-03A) |
|---|---|

*Resolved*, That Synod in convention establish *Making Disciples for Life* as its mission and ministry emphasis for the 2019–2022 triennium and directs the Office of National Mission and Office of International Mission under ends policies established by the BNM and BIM to resource congregations, schools, circuits and districts to do the following:

- evangelize and disciple the lost;

- retain the faithful;

- strengthen congregations and schools;

- plant new congregations and schools wherever possible, especially in urban and multi-cultural communities; and

- engage in international mission in partnership with the Office of International Mission;

| 2.6.2 | Mission Priorities (2019 Res. 4-03A) |
|---|---|

Whereas, The seven mission priorities previously affirmed at the 2016 Synod convention will appropriately continue to guide the ministry of the Synod through the policymaking work of the Boards for National Mission (BNM) and International Mission (BIM) in the coming 2019–2022 triennium:

- plant, sustain, and revitalize Lutheran churches;

- support and expand theological education;

- perform human care in close proximity to Word and Sacrament ministries;

- collaborate with the Synod's members and partners to enhance mission effectiveness;

- promote and nurture the spiritual, emotional, financial, and physical well-being of pastors and professional church workers;

- enhance early childhood education, elementary and secondary education, and youth ministry; and

- strengthen and support the Lutheran family in living out God's design;

The Lutheran Church—Missouri Synod                    **Board of Directors Policy Manual**

| **2.7** | **Church Body Mission Statement (1998 Res. 1-01A)** |

In grateful response to God's grace and empowered by the Holy Spirit through Word and Sacraments, the mission of The Lutheran Church—Missouri Synod is to vigorously make known the love of Christ by Word and deed within our churches, communities, and the world.

| **2.8** | **Monitoring** |

2.8.1.1    In its second regular meeting following each convention of the Synod, the Board shall review the statement of objectives in its policies for alignment with the directives of the Synod in convention and shall make the necessary modifications. The Secretary shall assist the Governance Committee in preparing the Board for this revision.

| Section Revision History | |
|---|---|
| 2022.11.18 | § 2 – Comprehensive Revision |

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 223 of 365
Exhibit 5 to Defendants' Motion to Dismiss
Page 23 of 122

The Lutheran Church—Missouri Synod                    **Board of Directors Policy Manual**

| § 3 | **Board Self-Governance / Governance Process ("Board Means")** |
|---|---|

| **3.1** | **Scope and Regulation of Board Activities** |
|---|---|

3.1.1.1    All activities of the Board, its officers, committees, and individual members shall be in accordance with (1) the Constitution, Bylaws, and convention resolutions of The Lutheran Church—Missouri Synod and (2) applicable Federal and State laws (Bylaw 3.3.4.2; Bylaw 1.2.1 [f][2]).

3.1.1.2    The Board adopts as its parliamentary authority, subject to the above and to such special rules of order as the Board may from time to time adopt, the current edition of *Robert's Rules of Order, Newly Revised*, as may hereafter be revised from time to time.

| **3.2** | **Group Action** |
|---|---|

The Board shall exercise its governing authority as a whole. No individual member of the Board may exercise such authority except as authorized in Board policy or otherwise instructed by the Board.

| **3.3** | **Director Responsibilities** |
|---|---|

3.3.1.1    Members of the Board have a responsibility to:

- Regularly attend Board meetings and, when unable to attend, notify the Board chairman.

- Prepare for and participate in meetings, retreats, and other events of the Board.

- Expect complete and accurate information be provided to the Board relevant to the business of the Board. Through the Chief Administrative Officer, request information to be provided to the Board that may help the Board as a whole in exercising its responsibility (Policy 4.21.2.2).

- Bring to the Board issues for discussion and action which may be of concern, interest or importance.

- Forthrightly offer alternative points of view during Board discussion, but then follow decisions made by the Board.

- Serve on committees of the Board.

- Exercise diligence to ensure that all actions of the Board comply with the Constitution, Bylaws, resolutions, and Articles of Incorporation of the Synod.

- Bring to the attention of the Board actions and conditions that run counter to Board Policy.

- Through the Chairman, bring to the Chief Administrative Officer's immediate attention any condition or action believed to be contrary to governing documents or Board Policy.

- Disclose potential conflicts of interest and carry out responsibilities "in a manner reflecting the highest degree of integrity and honesty consistent with

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 224 of 365
Exhibit 5 to Defendants' Motion to Dismiss
Page 24 of 122

The Lutheran Church—Missouri Synod                    **Board of Directors Policy Manual**

the Scriptures, Lutheran Confessions, the Constitution, Bylaws, and resolutions of the Synod," relevant policies, "and civil laws," in accord with the more specifically defined requirements of Bylaw 1.5.2.

- Demonstrate Christian love, joy, peace, kindness, goodness, faithfulness, gentleness, and self-control toward and for other members of the Board at all times;

- Maintain confidentiality;

- Contribute to peace and goodwill in the Board of Directors, the Synod, and among its congregations and members;

- Be sensitive in Board and Board member activities to taking or giving offense, giving the appearance of impropriety, causing confusion in the Synod, or creating potential liability (Bylaw 1.5.1.3);

- Support the above principles in all aspects of Synod; and

- Exercise special care when discussing Board business and other Synod issues outside of the Board meetings in order to help avoid misunderstandings or confusion.

| 3.4 | Regular Meetings |
|-----|------------------|

3.4.1.1    The Board of Directors shall typically have four regular meetings each year, and such additional meetings that the Board deems necessary. All meetings will be held at a place and time determined by the Board.

3.4.1.2    The Chairman may authorize a member of the Board to participate in a regular, "in-person" meeting using an electronic technology in accordance with Policy 3.6.1.1.

| 3.5 | Special Meetings |
|-----|------------------|

3.5.1.1    As provided by Missouri nonprofit corporation law, the Chairman or twenty percent of the directors in office may call and give notice of a special meeting of the Board.

3.5.1.2    The Chairman shall ordinarily consult with the Chief Administrative Officer or President before calling a special meeting.

3.5.1.3    Special meetings must be preceded by at least two days' notice to each director of the date, time, place, and purpose of the meeting. A director may at any time waive the required notice in writing, such waiver to be filed with the minutes; a director's attendance and participation in the meeting waives required notice, unless the director upon arriving or prior to the vote on a matter not noticed as required, objects to lack of notice and does not vote for or assent to the objected-to action. (This paragraph does not apply to special meetings called under Bylaw 1.5.7.1 to remove a member of the Board, which have a distinct notice requirement.)

| 3.6 | Electronic Means of Meeting |
|-----|------------------------------|

3.6.1.1    The Board may conduct its meetings electronically using audio, video, or internet-based conferencing technologies.

    (a)  In such cases, the technology must allow for each Board member to fully participate (hear, speak, have or been given access to documents and other materials as appropriate), including the opportunity to vote.

    (b)  Members must be given a reasonable opportunity to access the electronic meeting. If a Board member does not have access to the technology to be used, arrangements will be made for the member to participate in person by coming to the LCMS international Center or other mutually agreed upon location (prior arrangement necessary).

3.6.1.2    As with any regular or special meeting of the Board, minutes shall be kept that record a summary of the major points of discussion and any action(s) taken.

3.6.1.3    Any Board member listening or watching shall acknowledge his or her presence to the meeting. Their names along with the physically attending Board members shall be recorded in the minutes of the meeting.

## 3.7    Quorum

A majority of voting members of the Board in office immediately before a meeting begins shall constitute a quorum at any meeting.

## 3.8    Actions Using Electronic Ballot

3.8.1.1    In situations where Board members are not able to meet as described in Policy sections 3.4–3.6 above, the Board may take action by use of electronic ballot (i.e., e-mail, internet-based voting, etc.) in accordance with the Missouri Nonprofit Corporation Act, provided all voting members of the Board cast a vote and the result of the voting is unanimous.

3.8.1.2    Such shall be evidenced by one or more written consents describing the action taken, signed by each director, and included in the minutes filed with the corporate records reflecting the action taken.

3.8.1.3    An action so approved is effected when the last director signs the consent, unless the consent specifies a different effective date.

3.8.1.4    Such a signed consent has the effect of a meeting vote and may be described as such in any document.

## 3.9    Agenda and Docket

3.9.1.1    The Chairman is to establish the agenda for meetings of the Board in compliance with the policy calendar established by the Board and in consultation with the Chief Administrative Officer.

3.9.1.2    The Chief Administrative Officer is ordinarily to distribute the docket to members of the Board no less than two weeks prior to the meeting date.

3.9.1.3    The docket shall consist of four major sections and two regular supplements, as appropriate:

    (a)  Management Reports from the officers and principal units of Corporate Synod, relating performance and issues identified to approved plans and strategies

    (b)  Reports of standing and ad hoc Board committees, consultants, and auditors

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 226 of 365
Exhibit 5 to Defendants' Motion to Dismiss
Page 26 of 122

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

(c) Proposed Board Actions recommended by Board committees or Corporate Synod management or parties identified in Policy 3.9.2.1

(d) Monitoring of agencies outside Corporate Synod via submitted reports and minutes (posted in the "Agency Report" docket supplement and/or "Resources" area of BoardEffect)

(e) Information on nominees for any Board appointments to be made (posted in the "Appointment" docket supplement)

(f) Informational Items (research, reports, presentation materials, etc.).

3.9.1.4   No one shall make public the agenda or docket materials for Board of Directors or Board committee meetings before the end of the respective meeting.

3.9.1.5   The Chairman shall conduct an executive session review at the end of the meeting focusing on the efficiency of the meeting; the adequacy of the information provided; any guidance to the Chief Administrative Officer, Chief Financial Officer, committees, or the Chairman regarding improvements or changes for future meetings; and any other matters identified by the Board. This executive session will typically be attended by only the voting members and the nonvoting member of the Board. The Chairman shall, as necessary, communicate guidance to the CAO or CFO.

## 3.9.2   Requests for Action

3.9.2.1   The Board shall act as required by the Constitution and Bylaws of the Synod and these Policies and shall consider requests from:

- officers, agencies of the Synod, auxiliaries, and recognized service organizations of the Synod,
- individual members of the Board,
- members of the Synod, so long as the request is not more appropriately the responsibility of the Board's Chief Administrative Officer or other Synod officers, a Synod-wide Corporate Entity, or an Agency of the Synod.

3.9.2.2   Requests for action should ordinarily be submitted for consideration to the Chief Administrative Officer at least 30 days prior to the meeting.

## 3.9.3   Requests for Appearance

3.9.3.1   Individuals who desire to address the Board must make a request to the Chief Administrative Officer at least seven days prior to the meeting for approval by the Chairman.

## 3.9.4   Consent Agenda

3.9.4.1   The Board makes use of a consent agenda to expedite the conduct of routine business during Board meetings in order to allocate meeting time to education and discussion of substantive issues.

3.9.4.2   The consent agenda should consist of routine matters that require Board action. Typically, these items include the approval of minutes, acceptance of officer and other written reports (excluding the quarterly financial/budget report), and adoption of routine or non-controversial action items.

Case 1:23-cv-01042-RP    Document 9-1    Filed 01/23/24    Page 227 of 365
Exhibit 5 to Defendants' Motion to Dismiss
Page 27 of 122

The Lutheran Church—Missouri Synod                          **Board of Directors Policy Manual**

3.9.4.3     The Chairman shall be responsible to approve the proposed consent agenda for each meeting upon recommendation of the Chief Administrative Officer. The consent agenda shall be distributed with the meeting docket.

3.9.4.4     The consent agenda will be presented to the Board for adoption as soon as practicable after the opening devotion on the first day of the meeting.

3.9.4.5     Any item which appears on the consent agenda may be removed from the consent agenda upon request by a member of the Board. Items removed from the consent agenda will be considered at another time during the meeting as determined by the Chairman. The remaining items will be voted on by a single motion to approve the consent agenda.

3.9.4.6     The approved motion will be recorded in the minutes, including a listing of all items appearing on the consent agenda.

## 3.10     Confidentiality

The following materials are to be held confidential:

(a)  Executive Session discussions and minutes

(b)  The legal section and attorney–client privileged sections of the docket

(c)  personnel-related matters

(d)  Discussions of pending CCM rulings where BOD input is sought

(e)  Ongoing business transactions and negotiations where confidentiality is in the interest of the Synod

(f)  Other sections, materials, or information the Board, its Chairman, the Chief Administrative Officer, or the Secretary designates as confidential

(g)  All docket materials until the conclusion of the respective meeting

## 3.11     Executive Session

3.11.1.1    An executive session of the Board is a closed portion of a meeting in which the proceedings are conducted in private.

3.11.1.2    As a standard practice, everyone is excused from the meeting except for voting members of the Board, the non-voting member of the Board, and others designated by the Chairman. In certain circumstances, the Board may elect to meet in executive session with only the voting and non-voting members of the Board.

3.11.1.3    All persons, including Board members and officers, shall maintain confidential all executive session discussions to which they are privy.

3.11.1.4    Minutes of these sessions are maintained by the Secretary but are not publicly released. The minutes published of the regular or special meeting during which the executive session was held generally identify the topic discussed in executive session but not the details of the session. The following items shall be regarded as taking place in executive session:

(a)  all legal reports and discussion

(b)  all attorney-client privileged material

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 228 of 365
Exhibit 5 to Defendants' Motion to Dismiss
Page 28 of 122

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

(c) all personnel-related reports and discussion

(d) all requests for response from the Commission on Constitutional Matters

(e) ongoing business transactions and negotiations where confidentiality is in the interest of the Synod

(f) other matters identified by the Board, its Chairman, the Chief Administrative Officer, or the Secretary.

3.11.1.5    Executive session minutes shall be distributed to the Board for review and approval in executive session at the next meeting. Following approval, all copies shall be returned to the Secretary who has sole responsibility for maintaining the record of executive sessions.

3.11.1.6    Balancing the importance of transparency with the Board's need to address sensitive legal, property, and personnel issues, Board members and advisories shall immediately raise any concern about the appropriateness of open session for a business item, and the Chairman shall entertain a motion (which is debatable) to enter executive session.

## 3.12    Officers of the Board of Directors

3.12.1.1    Officers of the Board shall include:

- A Chairman and Vice-Chairman elected by the Board (Bylaw 3.3.4.4 [a]).

- A Secretary, the Secretary of the Synod serving by virtue of his office (Bylaw 3.3.3).

3.12.1.2    The officers of the Board shall not assume any part of or exercise the Board's governing authority except as the Board may explicitly delegate to them in its policies or by resolution.

### 3.12.2    Election of Officers

3.12.2.1    The Chairman and Vice-Chairman shall be elected in the first meeting after the Synod convention as the first order of business after the orientation activities (Bylaws 3.3.4.4 [a]; 1.5.3.1). The elections shall require a simple majority. The Chairman shall be elected first, followed by the Vice-Chairman. Each first ballot shall list all Board members except those requesting to be removed.

3.12.2.2    Immediately following the election of the Vice-Chairman, the at-large member of the Executive Committee shall be elected in the same manner.

3.12.2.3    Prior to election of officers, the meeting shall be chaired by the Chief Administrative Officer and issues of orientation shall be addressed. In addition to the orientation noted herein, a separate orientation of new Board members may take place prior to the first meeting of the triennium.

### 3.12.3    Chairman

The Chairman shall:

(a) Establish the agenda for meetings of the Board consistent with Policy 3.9.

(b) Set the time, place, and agenda for Executive Committee (Policy section 3.13.2) meetings.

(c) Preside at all meetings of the Board and its Executive Committee.

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 229 of 365
Exhibit 5 to Defendants' Motion to Dismiss
Page 29 of 122

The Lutheran Church—Missouri Synod                              Board of Directors Policy Manual

(d) Consistent with Policy 3.5, call special meetings of the Board.

(e) At the first meeting of each triennium, solicit interest from members for service on the Board's three standing committees, make appointments to those committees, and appoint their chairpersons (Policy sections 3.13.3–3.13.5).

(f) Arrange with the President for an annual review of the responsibilities, performance, and priorities of the Chief Administrative Officer and the Chief Financial Officer in accordance with Board policies, consistent with Policy 4.21.3, involving all the other Board members in the process and informing the Board of the results.

(g) Discuss with individual Board members any violations of their responsibilities and possible corrective action (Policy 3.3). When a resolution cannot be obtained with an individual Board member, the Chairman will lead a full review by the Board of the violation of the policy and discussion of corrective actions to be taken.

(h) Notify members of the Board if a limitation of Board Policy is believed to have been violated and initiate appropriate action.

### 3.12.4    Vice-Chairman

The Vice-Chairman shall:

(a) preside at meetings of the Board in the absence of the Chairman

(b) carry out responsibilities as may be assigned by the Chairman or by the Board

(c) discuss with the Chairman any violation of the policy on the part of the Chairman and possible corrective action.

### 3.12.5    Secretary

The Secretary of the Synod, in accordance with the Bylaws of the Synod, is the Secretary of the Board (Bylaw 3.3.3). In serving the Board, he shall:

(a) Record the official minutes of the Board's meetings and direct their distribution to the members of the Board, the Synod vice-presidents, and the Chief Administrative Officer.

(b) Provide minutes of Board meetings, including pending minutes and excluding executive sessions, to any member of the Synod who requests them, primarily directing them to the Board's web page. He is to see that pending minutes, excluding executive sessions, are posted to the Synod website in a timely fashion by the Office of the Chief Administrative Officer.

(c) Provide the Synod archives with approved minutes.

(d) Preserve regular and special reports made to the Board and, at its direction, make summaries or copies of them available to its members.

(e) Record Executive Committee minutes and distribute them within two weeks to the Board members.

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 230 of 365
Exhibit 5 to Defendants' Motion to Dismiss
Page 30 of 122

The Lutheran Church—Missouri Synod                    **Board of Directors Policy Manual**

(f)   Issue a call for nominations for Board appointments, obtain and provide background information on all nominees and assist the Board in the screening process through the Personnel Committee.

(g)   Notify persons elected or appointed by the Board of such election or appointment and convey the thanks of the Board to those persons who were nominated but not selected.

(h)   Assist the Chief Administrative Officer in communicating Board actions.

| 3.13 | Committees of the Board of Directors |
|------|--------------------------------------|

3.13.1.1   An Executive Committee and three standing committees (Finance and Audit, Governance, and Personnel) shall be constituted from the membership of the Board.

3.13.1.2   At the first meeting of each triennium, the Chairman shall solicit interest from members for service on the Board's three committees and make appointments to those committees. He shall also appoint their chairpersons. (Policy sections 3.13.3–3.15.5)

3.13.1.3   The Board may "delegate a specific assignment for a limited time to a committee composed of its own members" (Bylaw 1.5.3.3)

3.13.1.4   The Board or the Chairman "may appoint standing committees of specialists to provide professional or technical assistance to the Board … and may delegate certain responsibilities to such committees while retaining supervision. Standing committees may be made up of or include non-Board … members." (Bylaw 1.5.3.4)

3.13.1.5   Responsibilities of the committees of the Board shall be limited to those specifically established by the Board. Committees of the Board shall not take independent action but shall report or make recommendations to the entire Board.

3.13.1.6   Committees may use the Chief Administrative Officer or other staff persons designated above to carry out their responsibilities.

3.13.1.7   Each committee member will be independent (i.e., free of any relationship that could influence his/her judgment as a committee member).

| 3.13.2 | Executive Committee |
|--------|---------------------|

3.13.2.1   The Chairman, Vice-Chairman, and one member-at-large, together with the President of the Synod or in his absence the First Vice-President (Const. Art. XI C 1) and the Secretary of the Synod, shall constitute the Executive Committee of the Board.

3.13.2.2   The Chief Administrative Officer, the Chief Mission Officer, and the Chief Financial Officer shall be advisory members of the Committee.

3.13.2.3   The member-at-large shall be elected by the Board as indicated in Policy 3.12.2.

3.13.2.4   The Executive Committee, in accordance with Bylaw 1.5.3, may act on behalf of the Board in times of emergency between Board meetings and in all matters delegated to it by a specific action or by the policy of the Board, including response to legal action.

3.13.2.5   Minutes of the Executive Committee shall be sent to the Board within two weeks of the Committee action.

**The Lutheran Church—Missouri Synod**                      **Board of Directors Policy Manual**

3.13.2.6        Executive Committee Meetings may be called by

- the Chairman of the Board,

- the President, in consultation with the Chairman, or

- a majority of the Executive Committee,

with the Chairman of the Board ordinarily setting the time, place, and agenda for the meetings.

3.13.2.7        The Executive Committee shall ordinarily be chaired by the Chairman of the Board.

3.13.2.8        Three voting members shall constitute a quorum of the Executive Committee.

**3.13.3          Finance and Audit Committee**

3.13.3.1        The Finance and Audit Committee shall consist of at least three voting members of the Board. The Committee shall:

(a)  review and provide recommendations to the Board and/or management on financial matters

(b)  review and provide recommendations to the Board on investment policies, upon recommendation of the Chief Financial Officer, and oversee management implementation of the Board's investment policies

(c)  operate under the Audit Committee Charter (Policy section 4.17.1)

(d)  perform other oversight functions of a financial nature as assigned by the Board.

3.13.3.2        The committee shall include members with basic expertise in financial management; the committee may consult with an independent financial expert on special topics.

3.13.3.3        The Chief Financial Officer and Chief Administrative Officers shall serve as advisory members of and staff for the committee. The Executive Director of Internal Audit shall also serve as staff to, and shall meet at least semi-annually with, the committee.

**3.13.4          Governance Committee**

3.13.4.1        The Governance Committee shall consist of at least three voting members of the Board. It shall meet at least semi-annually. The Committee shall:

(a)  Review, make recommendations and publish the Board's Policy Manual.

(1)  Specific recommendations for new or amended policies must be submitted to the Governance Committee for review before consideration by the Board.

(2)  The Committee will report to each Board meeting as necessary and recommend Board action on policy changes, ensuring a regular review of policies through the Policy Review Calendar (Policy section 3.17.2).

(b)  Provide input to Chairman and Chief Administrative Officer regarding the Board meeting calendar to ensure alignment with the budget and strategic planning calendar.

(c)  Plan a triennial retreat for the Board of Directors, in coordination with the Chairman and the Chief Administrative Officer.

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 232 of 365
Exhibit 5 to Defendants' Motion to Dismiss
Page 32 of 122

The Lutheran Church—Missouri Synod                    **Board of Directors Policy Manual**

    (d) Review the composition of the Board at the beginning of each Triennium and, as necessary, make recommendations to the Board regarding any skill sets needed to effectively govern for the coming Triennium (Policy section 4.5.1).

    (e) Oversee the appointment process for new directors as identified in Bylaw 3.3.4.1 (6) and Policy section 4.5.1.

    (f) Oversee the directors' performance and Board evaluation processes.

3.13.4.2   The Chief Administrative Officer and Secretary shall serve as advisory members of and staff for the committee.

### 3.13.5    Personnel Committee

3.13.5.1   The Personnel Committee shall consist of at least three voting members of the Board. The Committee shall:

    (a) Monitor the compensation system of Corporate Synod and the synodwide corporate and trust entities

    (b) Monitor the Human Resources Policies and recommend Board action on those human resources matters requiring Board approval (Policy section 4.14.2)

    (c) Serve as a screening and, when appropriate, a nominating committee of the Board for appointments to Synod boards and commissions (Policy section 4.5).

3.13.5.2   The Chief Administrative Officer shall be an advisory member of and staff for the Personnel Committee. The Executive Director of Human Resources shall be staff for the Personnel Committee and shall attend the committee's meetings at least annually.

## 3.14    Correspondence

3.14.1.1   The Chairman or his designee, ordinarily the Chief Administrative Officer, shall respond to correspondence addressed to the Board of Directors.

3.14.1.2   A copy of all Board correspondence shall be retained and a copy of relevant correspondence should be provided to the members of the Board.

## 3.15    Records

3.15.1.1   The Secretary and Chief Administrative Officer shall be responsible to maintain and dispose of Board records under applicable policy, transferring correspondence, records, minutes, reports, and other files to the archives when no longer of current operational value under procedures and guidelines established by the Department of Archives (Concordia Historical Institute) and supervised by it (Bylaw 3.6.2.2.1 [b–e]).

## 3.16    Reporting To and Representation At the Synod Convention

3.16.1.1   The Board reports triennially to the convention of the Synod in its *Workbook* report (Bylaw 3.1.6.1) and submits such overtures as it may deem prudent (Bylaw 3.1.6.2; Policy section 1.1).

3.16.1.2   The Board is represented by as many of its members as it deems necessary at each convention of the Synod (Bylaw 3.1.4.1 [b]).

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 233 of 365
Exhibit 5 to Defendants' Motion to Dismiss
Page 33 of 122

The Lutheran Church—Missouri Synod                    **Board of Directors Policy Manual**

| 3.17 | **Monitoring** |
|---|---|

| 3.17.1 | **Policy and Action Review** |
|---|---|

3.17.1.1    Any member of the Board or the Chief Administrative Officer may, to the extent of the Board's responsibilities relative to the general management and supervision of the business and legal affairs of the Synod, ask the Board of Directors to review any action or policy of a mission board, commission, or council which primarily relates to business, property, and/or legal matters and, after consultation with the agency involved and when deemed necessary, require modification or revocation thereof, except opinions of the Commission on Constitutional Matters (Bylaw 3.3.4.5[a][2]).

3.17.1.2    The Board of Directors shall provide for the review and coordination of the policies and directives of the Synod authorized by the Constitution, Bylaws, and resolutions of the Synod, evaluating plans and policies and communicating to the appropriate boards and commissions suggestions for improvement, and, in the case of mission boards and commissions, require changes for compliance with Board of Directors' policies within the sphere of its responsibility (Bylaw 3.3.4.3).

| 3.17.2 | **Policy Review Calendar** |
|---|---|

3.17.2.1    Board policies shall be reviewed, refined and updated as necessary. Every Board member has the responsibility to review its policies and make suggestions for improvements as necessary. In order to meet the Board's intent to regularly review its policies, the Governance Committee shall, assisted by the Chief Administrative Officer, review all policies at least once each triennium, recommending appropriate revisions for adoption by the Board.

3.17.2.2    The regular schedule for review of policies is included in the Appendix to this Policy Manual.

| 3.17.3 | **Board Self-Review** |
|---|---|

At least once each triennium, the Board shall formally evaluate its effectiveness and efficiency, including the following:

(a)  The Board's ability and effectiveness in carrying out its constitutional responsibilities

(b)  The Board's ability and effectiveness in developing, adhering to, refining, and monitoring Board Policy

(c)  The Board's effectiveness in carrying out its leadership role

| Section Revision History | |
|---|---|
| 2022.11.18 | § 3 – Comprehensive Revision |

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

| § 4 | **Board Governance Relationships (Boards, Commissions, and Officers)** |
|---|---|

The following policies establish relationships between the Board and other governing authorities in the Synod and establish policies related to aspects of their governance with regard to which the Board has authority to do so.

| **4.1** | **Manner of Meeting of Synod Agencies** |
|---|---|

4.1.1.1       Unless otherwise specified in the Bylaws, each agency of the Synod is free to select a manner of meeting, consistent with Policy 4.14.1, that best enhances its ability to accomplish its mission, taking into consideration fostering the open exchange of ideas, availability of technology to all members, stewardship of resources, perception of fairness, controversial nature of agenda items, and whether secret ballots might be used (Bylaw 1.5.3).

| **4.1.2** | **Electronic Meetings** |
|---|---|

4.1.2.1       An agency may conduct its board meetings electronically using audio, video, or internet-based conferencing technologies in accordance with applicable state law.

4.1.2.2       In such cases, the technology must allow for each board member to fully participate (hear, speak, have, or been given access to documents and other materials as appropriate), including the opportunity to vote.

4.1.2.3       Members must be given a reasonable opportunity to access the electronic meeting. If a board member does not have access to the technology to be used, arrangements must be made for the member to participate in person by coming to a mutually agreed upon location (prior arrangement may be required).

4.1.2.4       Minutes shall be kept in accordance with agency/corporate policy.

4.1.2.5       All persons listening or watching shall acknowledge their presence to the meeting and their presence shall be recorded in the minutes of the meeting.

| **4.1.3** | **Actions Using Electronic Ballot** |
|---|---|

4.1.3.1       In situations where agency board members are not able to meet and where permitted by agency governing documents, the agency board may take action by use of electronic ballot (i.e., e-mail, internet-based voting, etc.) in accordance with the Missouri Nonprofit Corporation Act and other applicable statutes, provided all voting members of the board cast a vote and the result of the voting is unanimous.

| **4.2** | **Mission Boards of the Synod** |
|---|---|

4.2.1.1       The Boards for National and International Mission (Bylaws 3.8.2–3.8.2.3 and 3.8.3–3.8.3.3, respectively, develop and determine policies for their respective ministry functions of the Synod (Bylaw 1.2.1 [n]), which policies establish boundaries, parameters, and principles that guide the respective mission offices in determining present and future activities and programs. As to the implementation of these by the mission offices, the mission boards have oversight and the President has supervision.

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 235 of 365
**Exhibit 5 to Defendants' Motion to Dismiss**
Page 35 of 122

The Lutheran Church—Missouri Synod                    **Board of Directors Policy Manual**

| 4.2.1.2 | The Board shall provide for review and coordination of the policies and directives of the mission boards and may require changes for compliance with Board of Directors policies within the sphere of its responsibility. (Bylaw 3.3.4.3) |
| 4.2.1.3 | The Board shall receive copies of all legal opinions or written counsel received by mission boards of the Synod. (Bylaw 3.3.4.4) |

## 4.3          Commissions of the Synod

| 4.3.1.1 | The Board of Directors shall provide for review and coordination of the policies and directives of the commissions and may require changes for compliance with Board of Directors policies within the sphere of its responsibility. (Bylaw 3.3.4.3) |
| 4.3.1.2 | The Board shall receive copies of all legal opinions or written counsel received by commissions of the Synod. (Bylaw 3.3.4.4) |

### 4.3.2          Commission on Constitutional Matters

| 4.3.2.1 | The Board and the Commission on Constitutional Matters shall coordinate requests for review of agency governing documents involving any concerns related to the inclusion of the language of Bylaw 1.5.3.6 (a) or (b) through the Secretary, and shall communicate any permission the Board grants to remove or modify the provisions to the Commission. |
| 4.3.2.2 | When an opinion of the Commission pertains to business, legal, or property matters and the Board of Directors of the Synod concludes that such opinion of the commission is contrary to the laws of the State of Missouri, the Board and the commission, or their respective representatives, shall meet jointly to discuss the issue(s) and seek resolution thereof and shall proceed as directed in Bylaw 3.9.2.2 (c). |

### 4.3.3          Commission on Theology and Church Relations

(reserved for future use)

### 4.3.4          Commission on Handbook

(reserved for future use)

### 4.3.5          Commission on Doctrinal Review

(reserved for future use)

## 4.4          Council of Presidents

| 4.4.1.1 | The Board shall receive copies of all legal opinions or written counsel received by councils of the Synod. (Bylaw 3.3.4.4) |

## 4.5          Making Appointments and Filling Mid-term Vacancies

### 4.5.1          Appointments to Board to Obtain Necessary Skill Sets

| 4.5.1.1 | The Governance Committee shall oversee the appointment process for new directors as described in Bylaw 3.3.4.1 (6), identifying any skill sets potentially calling for identification and appointment of additional directors. |
| 4.5.1.2 | At the beginning of each Triennium, the Governance Committee shall review the composition of the Board at the beginning of each Triennium and, as necessary, make |

recommendations to the Board regarding any skill sets needed to effectively govern for the coming Triennium (Policy section 4.5.1). The Governance Committee shall:

(a) Begin the process for the Board to decide whether to appoint additional Board members each triennium after the synodical Convention and before the September Board meeting. Consider the qualifications, experience, and expertise of all Board members collectively and determine whether additional qualifications, experience, and expertise would be helpful for the Board to conduct its business.

(b) Make a recommendation to the Board for the Board to consider at its September meeting as to whether the Board should appoint additional Board members, and if so, the number of additional Board members, and the qualifications, experience, and expertise that those additional Board members should possess.

(c) If the Board decides at the September meeting to appoint additional members, the process to be followed will be:

(1) The Board will identify the number of additional Board members and the qualifications, experience, and expertise that the Board believes should be possessed by any additional Board members appointed;

(2) Nominations will be solicited from Board members and from any other source that the Board determines can submit nominations, with a deadline not less than two (2) days before the Personnel Committee's next meeting before the Board's February meeting for nominations specifically stated;

(3) All nominations will be considered by the Personnel Committee;

(4) The Personnel Committee will recommend to the Board those candidates that the Personnel Committee believes are most qualified to satisfy the needs as determined by the Board, while all candidates nominated will be eligible for appointment by the Board.

(d) Any additional Board members so appointed shall commence service with the subsequent February Board meeting.

4.5.1.3    This process does not preclude the Board from appointing additional Board members at any other time during the triennium and does not preclude the Board from appointing other individuals to assist the Board in an advisory or consulting fashion without serving as a member of the Board.

## 4.5.2    Regular Appointments to Boards, Commissions and Standing Committees

4.5.2.1    The Bylaws of the Synod and the governing documents of certain LCMS Agencies designate the Board of Directors of the Synod as the entity responsible for making certain appointments. The Board of Directors is responsible to make appointments as shown below:

| Appointment | How Many/Type | Authorization | Notes |
|---|---|---|---|
| **First Meeting Following National Conventions (September, First year of triennium)** | | | |

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 237 of 365
Exhibit 5 to Defendants' Motion to Dismiss
Page 37 of 122
The Lutheran Church—Missouri Synod

Board of Directors Policy Manual

| The Lutheran Church—Missouri Synod Foundation | 5 at-large members 1 alternate | Bylaw 3.6.5.2.13 | |
| Concordia University System - Council of Members | 3 lay members | Bylaw 3.6.6.2 | |
| Concordia University System - Board of Directors | 2 nonvoting advisory members (lay, ordained, or commissioned) | Bylaw 3.6.6.3 | Persons elected or appointed to the Concordia University System Board of Directors should have demonstrated familiarity and support of the institutions, and shall support the doctrinal positions of the Synod, and shall possess two or more of the following qualifications: theological acumen, an advanced degree, experience in higher education administration, administration of complex organizations, finance, law, investments, technology, human resources, facilities management, or fund development. The Chief Administrative Officer of the Synod (or a designee) and the Secretary of the Synod (or a designee) shall review and verify that nominees are qualified to serve as stated above. |
| **Annually at the May Meeting of the Board** | | | |
| Lutheran Church Extension Fund—Missouri Synod | N members-at-large | Bylaw 3.6.4.2.1 | Number to be elected based on formula identified in Bylaw |
| Concordia Plan Services | Each May meeting, four lay members are appointed, plus: • In the first and second May meetings following the Synod convention (and in 2021 and 2022), one ordained minister each • In the third May meeting following the Synod convention one commissioned minister | Bylaw 3.7.1.3 | * Of the laypersons: • at least five shall be experienced in the design of employee benefit plans, • at least five shall be experienced in the management of benefit plan investments • at least one of whom shall have significant financial/audit experience. |
| **As Necessary** | | | |
| Lutheran Center for Religious Liberty (LCRL) | BOD appoints up to two directors | LCRL Bylaw: Section 3 | • Directors selected shall be from a slate of nominees developed by the LCRL BOD or a nominating committee selected by the LCRL BOD • If the LCRL BOD consists of three or four directors, one director shall be appointed by the Board of Directors of LCMS, with the prior concurrence of the LCRL Board of Directors. • If the LCRL BOD consists of five directors, two directors shall be appointed by the Board of Directors of the LCMS, with the prior concurrence of the LCRL Board of Directors. • Such appointment shall take place in advance of the meeting of the LCRL BOD at which the term of the director(s) so appointed shall commence. • The LCMS BOD, the LCMS President and the LCRL BOD are entitled to submit nominations. |

4.5.2.2    Unless otherwise specified (as in the case of the Lutheran Center for Religious Liberty), at least three months prior to the LCMS Board of Directors meeting at which appointments are to be made the Secretary of the Synod shall issue a request for nominations. This request will be forwarded to the following:

- Members of the Board of Directors, including any members-elect

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 238 of 365
Exhibit 5 to Defendants' Motion to Dismiss
Page 38 of 122

The Lutheran Church—Missouri Synod                    **Board of Directors Policy Manual**

- President of Synod

- District presidents, to be shared with district boards of directors

- The respective board and its executive officer

- The Executive Director of Human Resources, who shall maintain a file on available talent

4.5.2.3    Nominations shall be submitted on a standard form similar to that used for elected positions. All incumbents eligible for re-appointment shall be considered to have been nominated.

4.5.2.4    The Secretary of the Synod shall, immediately upon the close of the nomination period, provide notification to the Executive Director of Human Resources and Chairman of the Personnel Committee of the list of names in nomination, so that the numerical adequacy of nominations received can be assessed and corrective action taken (see below), if necessary.

4.5.2.5    The Secretary of the Synod, assisted as necessary by LCMS Human Resources, shall obtain biographical material and consent to serve if appointed from the nominees, as well as evaluations from suggested evaluators, and shall perform any required vetting of (as in the case of Concordia University System director appointments) or verify concurrence in (as in the case of Lutheran Center for Religious Liberty directors) nominations received.

4.5.2.6    Prior to the Board meeting, the Board's Personnel Committee shall review the nominations, biographical materials, and evaluations received.

4.5.2.7    The Personnel Committee may, if provided with insufficient suitable candidates to present to the Board, present its own nominations, gathering similar biographical and evaluative information on its nominees, following the usual pattern. It may draw on the "file of available talent" (see above).

4.5.2.8    The Personnel Committee shall submit to the Board a list of at least two candidates, if possible, from the list of nominees for each appointment to be made and may in addition make more specific recommendations. The Committee shall also provide the Board the entire list of nominees along with all background information. Any Board member may add names to the list of candidates from the list of nominees.

4.5.2.9    After the Board has affirmed the slate of candidates, the Board may, by majority vote:

(a)   using an electronic or other suitable ballot and from the slate as potentially amended, elect its appointee(s);

(b)   by resolution make one or more appointments without separate election; or

(c)   direct the process to be reinitiated at any prior stage.

4.5.2.10    Mid-term vacancies in these positions will be filled according to the process outlined above. The respective board or commission may submit suggestions (Bylaw 3.2.5.1).

4.5.2.11    The Secretary of the Synod shall maintain, in consultation with the Personnel Committee and LCMS Human Resources, position descriptions for the positions subject to Board appointment, which may include specific qualifications or qualities that the Board desires of nominees.

The Lutheran Church—Missouri Synod                                    Board of Directors Policy Manual

4.5.2.12        Former executives of a board or commission shall not be eligible for appointment to that
                board for a period of six (6) years after termination of employment.

**4.5.3          Mid-Term Vacancy Appointments to Convention-Elected Board and Commission
                Positions**

4.5.3.1         Mid-term Vacancies in board or commission board or commission positions elected by
                the Synod in convention, except for college and university board of regents positions
                (filled by the Concordia University System Board of Directors [Bylaw 3.10.6.3 (c)]), shall
                be filled by the Board of Directors of the Synod.

4.5.3.2         Midterm vacancies in such positions initially filled by election at the Synod convention
                shall without exception follow the process outlined in Bylaw 3.2.5, as follows:

4.5.3.3         The Secretary of the Synod, within 90 days of notification of the vacancy, gathers
                nominations from the respective board or commission, the President of the Synod, the
                district boards of directors, and the slate of candidates from the previous convention.

4.5.3.4         The Secretary of the Synod, assisted as necessary by LCMS Human Resources, obtains
                biographical material and consent to serve if appointed from the nominees, as well as
                evaluations from suggested evaluators, and performs any required vetting of nominations
                received (as in the case of Concordia University System directors).

4.5.3.5         The Secretary of the Synod submits the slate of nominees to the Standing Committee on
                Nominations ("Bylaw 3.2.5 Committee"), which produces a slate of at least three but no
                more than five candidates.

4.5.3.6         Prior to the Board meeting at which the appointment is to be made, the Personnel
                Committee is provided with the nomination, biographical, and evaluative information on
                all nominees, and with the slate selected by the Standing Committee on Nominations. The
                Personnel Committee may make specific recommendations, including the addition of
                previously submitted nominees to the slate of candidates.

4.5.3.7         The slate of candidates provided shall be provided to the Board in its entirety. The Board
                may (Bylaw 3.2.5 [d]) add previously submitted nominees to the slate of candidates.

4.5.3.8         Should the Board be presented with fewer than three consenting nominees, the Board
                may declare the process defective and direct the Secretary to repeat the call for
                nominations, adding names newly obtained to those already submitted.

4.5.3.9         Otherwise, the Board shall from the presented slate elect by majority vote, using an
                electronic or other suitable ballot, its appointee(s).

4.5.3.10        Former executives of a board or commission shall not be eligible for appointment to that
                board for a period of six (6) years after termination of employment.

**4.5.4          Appointment of Chief Financial Officer**

                The Chief Financial Officer shall be a layperson appointed (or reappointed) to a three-year
                renewable term of office by the Board in consultation with and with the concurrence of
                the President of the Synod. (Bylaws 3.4.1.1–2)

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 240 of 365
Exhibit 5 to Defendants' Motion to Dismiss
Page 40 of 122

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

| 4.5.5 | **Appointment of Chief Administrative Officer** |
|---|---|

The Chief Administrative Officer shall be appointed (or reappointed) to a three-year renewable term of office by the Board in consultation with and with the concurrence of the President of the Synod. (Bylaws 3.4.2.1–2)

| 4.5.6 | **Appointment of Chief Mission Officer** |
|---|---|

The Chief Mission Officer is appointed (or reappointed) to a three-year renewable term of office by the President of the Synod in consultation with and with the concurrence of the Board. (Bylaws 3.4.3.1–2)

## 4.6        Elected Officers of the Synod

4.6.1.1    The full-time Synod officers serving on the Board as voting members are the President and Secretary and as a non-voting member, the First Vice-President. The Chief Administrative Officer, the Chief Financial Officer, and Chief Mission Officer shall be advisory to the Board.

4.6.1.2    Except as provided for in the Constitution and Bylaws, no elected Synod Officer shall assume any part of the management responsibilities of the Board or those responsibilities delegated to its Chief Administrative Officer who, under Bylaws 3.4.2 and 3.3.4.4 (c), will serve as its Chief Operating Officer.

4.6.1.3    The Board pursuant to Bylaw 3.3.4.4 (c), may assign to the elected Synod officers as members of the Administrative Team (Bylaw 3.5.1), specific tasks for which they will be responsible to the Board.

| 4.6.2 | **President** |
|---|---|

4.6.2.1    The President is empowered, subject to the approval of the Board, to engage sufficient staff to carry out the duties of his office (Bylaw 3.3.1 [b]).

4.6.2.2    The Board makes itself available for consultation with the President when ecumenical matters or his contemplation of an exercise of executive power for which there is no specific directive concern the Synod's property, business, or legal matters (Bylaws 3.3.1.1.2 [a]; 3.3.1.3 [o]).

4.6.2.3    The Board reviews actions of officers, executives, or agencies that in the President's view may be in violation of the Constitution, Bylaws, and Resolutions of the Synod and that are referred by him to the Board (Bylaw 3.3.1.2 [c][2]).

4.6.2.4    The Board shall determine when the President is unable to serve in that capacity because of prolonged illness or disability, with the First Vice-President serving as acting president until the Board determines that such illness or disability has been removed (Bylaw 3.3.1.4).

| 4.6.3 | **Secretary** |
|---|---|

4.6.3.1    The Board may assign work to the Secretary in addition to that pertaining to his office (Bylaw 3.3.3.2).

4.6.3.2    The Board shall approve of the Secretary's obtaining assistance necessary to facilitate the nomination and election of the President and Vice-Presidents of the Synod (Bylaws 3.12.2; 3.12.2.4).

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 241 of 365
Exhibit 5 to Defendants' Motion to Dismiss
Page 41 of 122

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

| | |
|---|---|
| 4.6.3.3 | The Board shall determine when the Secretary is unable to serve in that capacity because of prolonged illness or disability, with the Board designating an acting secretary until the Board determines that such illness or disability has been removed. |
| 4.6.3.4 | In the event of the death, resignation, or permanent incapacity of the Secretary, the Board of Directors of the Synod shall appoint a successor for the unexpired term (Bylaw 3.3.3.3). |

## 4.7     Appointed Officers of the Synod

| | |
|---|---|
| 4.7.1.1 | Board Policy places limitations on the Chief Administrative Officer (CAO)'s and the Chief Financial Officer (CFO)'s efforts to achieve the Board's desired outcomes (Policy § 2). |
| 4.7.1.2 | In carrying out the responsibilities of their respective positions the CAO and CFO shall act both: |

> (a) in a Christian manner that is ethical, prudent, and consistent with these policies, the Constitution and Bylaws of The Lutheran Church—Missouri Synod, and within such limitations, the applicable federal and state laws.

> (b) in a sound and prudent fiscal manner that is in the best interest of and will not jeopardize the financial strength of Corporate Synod or The Lutheran Church—Missouri Synod.

| | |
|---|---|
| 4.7.1.3 | The CAO and CFO may use appropriate discretion in handling matters delegated by the Board so long as they comply with the Constitution, Bylaws, and convention actions of the Synod, applicable laws, and Board Policy. |
| 4.7.1.4 | Except as provided for in the Constitution and Bylaws, no appointed Synod Officer shall assume any part of the management responsibilities of the Board or those responsibilities delegated to its CAO who, under Bylaws 3.4.2 and 3.3.4.4 (c), will serve as its Chief Operating Officer. |
| 4.7.1.5 | The Board pursuant to Bylaw 3.3.4.4 (c), may assign to the appointed Synod officers as members of the Administrative Team (Bylaw 3.5.1), specific tasks for which they will be responsible to the Board. |

### 4.7.2     Chief Administrative Officer

| | |
|---|---|
| 4.7.2.1 | The Chief Administrative Officer (CAO), who serves under the direction and supervision of the Board as a whole, shall comply with Board policies. (Bylaws 3.4.2–3.4.2.2) |
| 4.7.2.2 | The CAO is empowered to take appropriate action on behalf of the Board as delegated by the Board under these Policies, the position description established by the Board, and resolutions of the Board (Policy 4.14.2), and shall be accountable to the Board therefor. |
| 4.7.2.3 | The Board shall monitor the performance of the CAO (e.g., Policy 4.21.3). |

### 4.7.3     Chief Financial Officer

| | |
|---|---|
| 4.7.3.1 | The Chief Financial Officer (CFO), who serves under the direction and supervision of the Board as a whole, shall comply with Board policies. (Bylaws 3.4.1–3.4.1.2) |
| 4.7.3.2 | The CFO shall administer the financial affairs of the Synod, excluding the synodwide corporate entities, the districts, the Concordia Plans, and Concordia Plan Services (Bylaw 3.4.1). |

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 242 of 365
Exhibit 5 to Defendants' Motion to Dismiss
Page 42 of 122

**The Lutheran Church—Missouri Synod**                    **Board of Directors Policy Manual**

4.7.3.3    The CFO shall serve as Treasurer of Corporate Synod (Bylaw 3.4.1.3).

4.7.3.4    The CFO shall carry out duties as specified in Bylaw 3.4.1.3.

4.7.3.5    The CFO shall, unless the Board designates otherwise (Policy section 4.12), represent the Board on the governing boards of agencies specified in and as otherwise designated by the Bylaws of the Synod (Bylaw 3.4.1.3 [e]).

4.7.3.6    The CFO shall be authorized to open bank accounts in the name of the Synod. Such accounts shall be reported to the Finance and Audit Committee of the Board.

4.7.3.7    The CFO is empowered to take appropriate action on behalf of the Board as delegated by the Board under these Policies, the position description established by the Board, and resolutions of the Board (Policy 4.14.2), and shall be accountable to the Board therefor.

4.7.3.8    The CFO shall be accountable to the Board.

4.7.3.9    The Board shall monitor the performance of the CFO (e.g., Policy 4.21.3).

| 4.7.4 | **Chief Mission Officer** |
|---|---|

4.7.4.1    The Chief Mission Officer (CMO) shall, on behalf of the President, supervise fundraising activity of the national office according to policies established by the Board of Directors of the Synod. (Bylaw 3.4.3.6; Policy 5.6)

| **4.8** | **Designation of Interim Persons** |
|---|---|

4.8.1.1    The Board shall update, in its September meeting following each convention of the Synod and as required, its Designation of Interim Persons, which shall specify who shall temporarily perform the duties of each of following upon the resignation, temporary or permanent disability, disposition, or death of the officeholder:

- Secretary
- Chief Administrative Officer
- Chief Financial Officer
- Chief Mission Officer

4.8.1.2    Designations shall have in view the necessary skills required to reasonably assure that the primary functions will continue during a short-term vacancy.

4.8.1.3    Designation of Interim Persons constitutes a short-term contingency arrangement until the officer is able to return, or, if necessary, until a permanent appointment is made.

4.8.1.4    The Board may redesignate the Interim Person for an office at any time, including when the Interim Person has been activated.

4.8.1.5    If the office requires membership in a Synod congregation and/or Synod roster status, the individual identified to serve during the interim shall satisfy said requirement.

| **4.9** | **Administrative Team** |
|---|---|

4.9.1.1    The President has certain ecclesial and administrative responsibilities for the Synod. The Board of Directors has responsibility for the property, business, and legal affairs of the Synod.

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 243 of 365
Exhibit 5 to Defendants' Motion to Dismiss
Page 43 of 122

The Lutheran Church—Missouri Synod                    **Board of Directors Policy Manual**

4.9.1.2    The Administrative Team, under the leadership of the President and including the First Vice-President, the Secretary, the Chief Financial Officer, the Chief Administrative Officer, and the Chief Mission Officer assists the President and the Board of Directors in carrying out their respective responsibilities for oversight, supervision, management, and coordination of the operations of the national office and according to the triennial emphases adopted by conventions of the Synod. (Bylaw 3.5.2)

4.9.1.3    Members of the Administrative Team shall assist the Board of Directors in carrying out its responsibilities by completing assignments made to them by the Board (Bylaw 3.3.4.4 [c]).

4.9.1.4    The Board's coordination and oversight of financial matters concerning the corporate and trust entities comprising the Synod will be through the Chief Financial Officer.

4.9.1.5    The Board's coordination of program and service matters will be through the Chief Administrative Officer. In carrying out these responsibilities, the Chief Administrative Officer shall:

    (a)  Carry out the decisions of the Board of Directors as it may direct.

    (b)  Assist the President, as he directs, in carrying out his responsibilities.

    (c)  Meet regularly with the leadership of the mission offices, commissions, and synodwide corporate entities as the liaison with the Board of Directors.

    (d)  Provide leadership to assure that the mission and ministry activities of the church are being carried out in a coordinated, cooperative, and efficient manner.

4.9.1.6    The Board expects the Administrative Team to meet regularly for its members to coordinate their respective management responsibilities.

4.9.1.7    The President shall report to the Board on the activities of the Administrative Team (Bylaw 3.3.1.2 [d]).

## 4.10     Operations Team

4.10.1.1   The Operations Team, consisting of the Chief Mission Officer, the Chief Administrative Officer, and the Chief Financial Officer and convened by the Chief Administrative Officer, assists the President and Board in carrying out their respective responsibilities for oversight, supervision, management, and coordination of the operations of the national office and according to the triennial emphases adopted by conventions of the Synod. (Bylaws 3.5.2–3.5.2.1)

4.10.1.2   The Chief Administrative Officer shall report to the Board on the activities of the Operations Team.

## 4.11     Additional Officers and Staff

4.11.1.1   To carry out the business and legal affairs of the Synod, the Board of Directors may appoint other officers subject to the approval of the President. (Bylaw 3.3.4.9)

4.11.1.2   The Board of Directors may also appoint staff as required. (Bylaw 3.3.4.9)

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 244 of 365
Exhibit 5 to Defendants' Motion to Dismiss
Page 44 of 122

The Lutheran Church—Missouri Synod | Board of Directors Policy Manual

| 4.12 | Designating the Board's Representation on Synodwide Corporate and Trust Entities |
|---|---|

4.12.1.1   The Chief Financial Officer serves as the Board's designee if the Board's representation is not otherwise identified, as a nonvoting member of the governing boards of the following. As to these, the Board may designate its representation at any time (Bylaws 3.3.4.6 and 3.4.1.3 [e]):

- The Lutheran Church—Missouri Synod Foundation (Bylaw 3.6.5.2.1)
- The Lutheran Church Extension Fund—Missouri Synod (Bylaw 3.6.4.3)
- Concordia Plans / Concordia Plan Services (and its investment committee) (Bylaw 3.7.1.3)
- Concordia Publishing House (Bylaw 3.6.3.1)

**4.12.2   Alternate Representation**

4.12.2.1   As opposed to an appointment, which refers to a formal process placing an individual into a definite (triennial) term, a designation does not connote a fixed term of service. The Board's designation of representation can, therefore, be adjusted at any time, by the Board itself or, in the case of urgent necessity, by its executive committee.

4.12.2.2   The Board may at any time resolve to change its representation, which change shall be acknowledged by the respective entity upon receipt of notice of the Board's action.

4.12.2.3   The Board's representative shall be a member of a member congregation of The Lutheran Church—Missouri Synod and shall exhibit an ability to comprehend and evaluate the activities of the board and entity to which assigned, for reporting to the Board, and to communicate on behalf of the Board with the aim of strategically coordinating the activities of Synod and its synodwide corporate entities.

**4.12.3   Designation by Chief Financial Officer**

4.12.3.1   The Board delegates to the Chief Financial Officer the authority to act on the Board's behalf, under the authority granted the board in Bylaw 3.3.4.6 [d], to designate representatives where prudent (CCM Op. 20-2925).

4.12.3.2   The Board shall be informed of such designation.

**4.12.4   Reporting by Representatives and Board Monitoring**

4.12.4.1   The Board's representatives shall report to the Board as needed or requested by the Board or its Chairman. They shall especially report to each September meeting the respective entity's major strengths and weaknesses, opportunities, and threats, along with an evaluation of the governance of the entity and its alignment with the broader mission, ministry, and long-term welfare of the Synod (corporate and congregational).

4.12.4.2   Following a national convention of the Synod, the Board's representative(s) are to report specially to the Board's September meeting regarding the representative's service to that point, issues encountered in that service, and suggestions for the Board as it reviews its designations. At the September meeting, the Board, having reviewed the reports and consulted with the Chief Financial Officer, may request its Personnel Committee to review the assignment of the Board's representation or develop lists of candidates for Board

representation in any or all of the above, in preparation for appointments to be made at the Board's November meeting.

### 4.12.5    Service of the Chief Financial Officer on Other Boards

4.12.5.1    The Chief Financial Officer (CFO) also serves on a number of other boards, beyond those specified in the Bylaws of the Synod. As to these, the CFO has the option of sending a designee (2019 Res. 9-09).

## 4.13    Requests for Minutes of the Board of Directors, Mission Boards, or Commissions of the Synod

4.13.1.1    The Office of the Secretary is responsible for furnishing, upon request, copies of the minutes of boards and commissions according to a policy established by the Board of Directors. (Bylaw 1.5.3.5)

4.13.1.2    The secretary of each board or commission of Corporate Synod, or other designated person, shall forward to the Secretary of the Synod within four weeks of the meeting an electronic version of the pending minutes of every regular or special meeting of the board or commission, excluding executive sessions. This version should be clearly marked as "pending" or "unapproved."

4.13.1.3    Within one week of approval of the pending minutes at the next meeting of the board or commission, a final approved version, excluding executive sessions, is to be submitted electronically to the Office of the Secretary by the designated person.

4.13.1.4    The Secretary's office will distribute minutes as requested in the most expedient manner.

4.13.1.5    Requests for minutes of meetings prior to July 2007 shall be referred to the individual commission or the Office of the Secretary of the Synod.

## 4.14    Delegation and Retention of Board Duties

4.14.1.1    The Board retains all its authority under the Synod's Constitution, Bylaws, and Articles of Incorporation (Const. Art. XI E 2; Bylaw 3.3.4; Art. of Inc. V) but delegates to its Chief Administrative Officer the exercise of its authority as stated in its Policies.

(a)    The Board shall not assign or delegate to the Chief Administrative Officer responsibilities or duties specifically reserved in the Constitution or Bylaws of the Synod or Policy section 4.14.2 to the Board or assigned to committees, consultants, other Synod boards or commissions, and Synod or Board officers.

(b)    The Chief Administrative Officer may delegate to Synod departments responsibility to carry out tasks in accordance with Board policies.

(c)    Any other party operating under the authority of the Board shall generally receive that authority from the Chief Administrative Officer or a person designated by him.

(d)    The Director of Internal Audit and Director of Human Resources, however, shall have direct access to the Board and its Audit Committee and Personnel Committee respectively.

Exhibit 5 to Defendants' Motion to Dismiss Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 246 of 365
Page 46 of 122

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

| 4.14.2 | **Matters Requiring Board Action** |
|---|---|

4.14.2.1   Where specific Board actions are required, the Chief Administrative Officer shall ordinarily bring recommendations to the Board for action.

4.14.2.2   The following matters require Board action:

(a) Budgets

(1) Approval of the Annual Mission and Ministry Operating Budget and the unit level Strategic Plans of the Synod, including its allocation to boards, offices, commissions, and departments within the context of a triennial common vision.

(2) Approval of the annual capital budget for the Synod.

(3) Approval of spending deviations from the budgets as stipulated in Policy 5.1.

(4) Approval of budgets for Synod conventions, convocations, gatherings, and celebrations.

(b) Accounting

(1) Designation of unrestricted net assets

(2) Release of board-designated assets outside of standing release conditions established by the Board (Policy 5.2)

(3) Responses to requests for inspection of financial records which the Chief Administrative Officer or Chief Financial Officer deem as not needing to be provided pursuant to Bylaw 1.5.4.

(c) Financial Transactions

(1) Approval of lines of credit for borrowing by Corporate Synod if:

(i) greater than 15% of the operating budget;

(ii) a balance remains on the line of credit more than 12 consecutive months;

(iii) established with an institution other than Lutheran Church Extension Fund; or

(iv) obtained without the joint signature of the Chief Financial Officer and Chief Administrative Officer.

Establishment, renewal, and draws on lines of credit shall be reported to the Finance and Audit Committee.

(2) Approval of any other indebtedness by Corporate Synod.

(3) Approval of guarantees of indebtedness of Agencies of the Synod.

(4) Approval of authorizations to sign contracts and to deal in securities.

(d) Audit (each of the following, upon Finance and Audit Committee recommendation)

(1) Selection of outside audit firm.

Case 1:23-cv-01042-RP Document 9-1 Filed 01/23/24 Page 247 of 365
Exhibit 5 to Defendants' Motion to Dismiss
Page 47 of 122

The Lutheran Church—Missouri Synod                Board of Directors Policy Manual

(2) Official receipt of audited financial statements upon recommendation of the Board's Audit Committee.

(3) Appointment of the Executive Director of Internal Audit.

(4) Changes in the Audit Committee Charter.

(5) Changes in the Internal Audit Charter.

(e) Human Resources (each of the following, upon Personnel Committee recommendation)

(1) Setting or changing the salary classifications and ranges for Corporate Synod.

(2) Setting or changing the salaries of elected and appointed Officers of the Synod.

(f) International Center Facilities

(1) Changes in the International Center Ownership Agreement, including the composition of the International Center Facilities Committee (Policy 6.14).

(2) Approval of additional land, new buildings, or space expansions on the International Center properties or off-site leased facilities.

(g) Administrative Policies

(1) In consultation with the President, changes in the position description of the Chief Administrative Officer or the Chief Financial Officer.

(2) Submission of Board overtures to the Synod convention.

(3) Selection of the location for LCMS Regular Conventions upon recommendation of the Convention Manager [Bylaw 3.1.9 (j)(2)] and the Chief Administrative Officer.

(4) Changes in the Designation of Interim Persons (Policy 4.8) if the Chief Administrative Officer, Chief Financial Officer, Chief Mission Officer, or Secretary is unable to carry out responsibilities.

(h) Legal and Governmental

(1) Selection of general counsel for the Synod for a three-year renewable period. Such selection to take place at the first Board meeting of the calendar year after each regular LCMS Convention with the engagement or renewal to begin at the beginning of the subsequent fiscal year (July).

(2) Selection of special counsel for legal matters of synod-wide significance.

(3) Approval to initiate any and all lawsuits, arbitrations, or administrative proceedings on behalf of the Synod or Corporate Synod. In cases of emergency, the Executive Committee of the Board may make such decisions. In an instance of emergency where time is of the essence, the executive committee shall make a decision which shall be subject to ratification by the BOD.

(4) Approval of responses to litigation which may have broad Synod impact.

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

(5) Approval of individual legal claim settlements in excess of $100,000.

(6) Approval of new corporations (Bylaw 3.6.1.1 and Policy 6.12).

(7) Review and adoption of administrative-legal policies for Corporate Synod and agencies of the Synod

4.14.2.3    The above list is not exhaustive. Omission from the list above of an item indicated elsewhere in these Policies, in resolutions of the Board, or in the Constitution, Bylaws, or Resolutions of the Synod, to require action of the Board shall not be construed as negating said requirement.

## 4.15        Operating and Capital Budgets

### 4.15.1        Authority

4.15.1.1    The board serves the Synod (organization of congregations) as its legal representative and as custodian of all property, and "upon it is incumbent the general management and supervision of the business affairs of the Synod," etc. This includes, without limitation, determining general operating budgets, approving program budgets, allocating resources, monitoring performance, coordinating administration of convention resolutions, and maintaining policies. (Bylaw 1.4.4)

4.15.1.2    The Board of Directors "shall allocate funds to the boards, commissions, councils, officers, and departments of Corporate Synod and holds them responsible therefor" (Bylaw 3.3.4.5 [a–c]). In this respect it supervises the business and legal aspects of Corporate Synod's work, and in this respect it shall approve:

(a) the annual Mission and Ministry Operating Budget for Corporate Synod, which shall:

(1) indicate planned revenue and expenditure as allocated to the boards, offices, commissions, and departments of the Synod

(2) specify maximum approved headcount for each board, commission, council, office, and department of Corporate Synod

(3) reflect a common triennial vision within the Constitutional and bylaw objectives of the Synod

(4) relate to three years prior performance and three years projected revenue and expenditure in relation to unit-level strategic plans.

(b) the annual capital budget for Corporate Synod, which shall:

(1) relate to a rolling, thirty-year analysis, fifteen years past and fifteen years projected, of facility needs, utilization, and liabilities

(c) budgets for Synod conventions, convocations, gatherings, and celebrations

(d) deviations from adopted budgets as stipulated in Policy 5.1.

### 4.15.2        Ends

4.15.2.1    The operating and capital budgets shall prudently apply the means available to the specific tasks assigned the Synod by the Constitution, Bylaws, and resolutions of the Synod, including triennial emphases (priorities). (cf. Bylaw 3.3.4.5 [b, c])

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 249 of 365
Exhibit 5 to Defendants' Motion to Dismiss
Page 49 of 122

4.15.2.2    The budgets and budget monitoring mechanisms shall support accountability to the congregations of the Synod for all revenues received.

### 4.15.3    Board means

4.15.3.1    The Board shall establish policies and guidelines for budget preparation (Bylaw 3.3.4.5 [b][1]).

4.15.3.2    The budget and budget monitoring shall:

(a)  distinguish management and general (M&G) expense from ecclesial service and program expense, demonstrating the appropriateness of the level of M&G spending and its relation to ecclesial services and programs.

(b)  distinguish principal restricted and unrestricted sources of revenue and related trends.

(c)  distinguish principal areas of expenditure:

(1)  relating them to convention directives initiating the activity

(2)  relating them to restricted and unrestricted sources of revenue applied

(d)  indicate proposed maximum headcounts for each board, commission, council, office, and department of Corporate Synod.

(e)  indicate the appropriation of unrestricted revenues to particular convention-directed activities or to management and general expense that is in excess of budget by more than $50,000 on a unit level (monitoring) in a given fiscal year

(f)  indicate the accumulated appropriation of excess unrestricted revenues in excess of budget to particular activities or to M&G expense.

(g)  include provisions for:

(1)  Honoraria or other appropriate means to recognize the service of the elected Synod vice-presidents 2–6, such amount to be recommended by the Board of Directors Personnel Committee.

(2)  An allowance for the President of the Synod for entertainment and vehicle expenses, such amounts to be recommended by the Board of Directors Personnel Committee.

4.15.3.3    The following functions or activities established by the Synod national convention will be fully funded through the Synod budget process using unrestricted income or assessments. These activities will not have the need to raise funds or accept restricted funds except as approved by the Board of Directors or by the action of the Synod national convention:

(a)  Commission on Constitutional Matters

(b)  Commission on Theology and Church Relations;

(c)  ecclesiastical supervision activities;

(d)  doctrinal review;

(e)  meetings and events of the Synod Praesidium, Council of Presidents, or Board of Directors;

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 250 of 365
Exhibit 5 to Defendants' Motion to Dismiss
Page 50 of 122

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

(f)   conflict resolution activities;

(g)   Synod national convention;

(h)   employment costs (salary/benefits/etc.) of elected officers and support staff.

4.15.3.4    The Board shall adopt the annual budget (Bylaws 3.3.4.5[b][2]).

4.15.3.5    Synodwide corporate entities shall consult with the Synod's Board of Directors prior to making any grants to or for the mission offices or commissions of Corporate Synod.

4.15.3.6    The Synod's Board of Directors shall approve the usage of any undesignated surplus funds released to the Synod by synodwide corporate entities.  The proposed usage will normally be made in the budgeting process.

### 4.15.4    Executive means and limitations

4.15.4.1    The Chief Financial Officer, in consultation with the Synod's officers, the President of the Foundation, the International Center Facilities Committee, the Committee for Human Resources and the executive directors of the mission offices, commissions, and departments, is responsible for presenting to the Synod's Board of Directors for approval at its May meeting the annual operating and capital budgets for Corporate Synod and for necessary adjustments in the course of the year. (See Policy section 5.1)

4.15.4.2    At the February Board meeting following each convention of the Synod, the Administrative Team shall evaluate and propose revisions to a three-year strategic plan developed in response to the constitutional and bylaw objectives of the Synod and the mission emphasis and priorities adopted by the convention.

4.15.4.3    Annual budget proposals and budget performance reporting shall be related consistently to the three-year strategic plan.

4.15.4.4    Management shall not provide the "Program Budget" outside the Board and necessary staff or provide summary budget information for publication in the official periodicals of the Synod without first providing it to the Board.

### 4.15.5    Mission Advancement Support Rate

4.15.5.1    The Chief Financial Officer shall:

(a)   In connection with the annual program budget, set an effective and equitable support rate (percentage) applicable to all charitable gifts (except as otherwise specified in [b] below), grants, and bequests, including district pledge receipts.

(1)   Such rate shall be at or below the limit of 'prudent' as defined by donor advocacy groups such as the Better Business Bureau's Wise Giving Alliance, Charity Navigator, and GuideStar, but which is sufficient to fund the Mission Advancement unit as they provide fund-raising and donor care services.

(2)   In determining the annual support rate, the Chief Financial Officer shall take into account planned Mission Advancement expenditures and historical performance and prudent projections of sources of revenue subject to the support rate.

(b)   Set, as needed, an effective and equitable "specific natural disaster response" support rate (percentage) applicable to gifts resulting from appeals issued in

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 251 of 365
Exhibit 5 to Defendants' Motion to Dismiss
Page 51 of 122

The Lutheran Church—Missouri Synod                                    Board of Directors Policy Manual

response to a specific natural disaster (such as are not accounted for in the anticipated revenue and spending plan). Such rate is not to exceed the general support rate as defined in [a] above.

### 4.15.6          Operating Budget Strategy Templates

4.15.6.1    Executive Directors and Program Managers of Corporate Synod, to include the Office of the President (OTP), the Offices of the Chief Mission Officer (CMO), Chief Financial Officer (CFO), and Chief Administrative Officer (CAO), shall submit a detailed strategic plan from which their budget will be built.

4.15.6.2    The plan shall outline the strategy and tactics that will be implemented and supported by the budget request for the upcoming fiscal year.

4.15.6.3    Such plans shall be delivered to the CAO, as staff for the Board of Directors, prior to the same Board of Director meeting at which the Chief Financial Officer submits the annual budget for approval.

4.15.6.4    The Governance Committee of the Board of Directors shall establish and review, on at least a triennial basis, the content to be included in the strategic plans.

### 4.15.7          Monitoring and convention communication

4.15.7.1    The Board shall regularly give account of its supervision and oversight to the congregations of the Synod through publication of its minutes, through reports in Synod periodicals and on its webpage, so that congregations can be informed as to the stewardship exercised on their behalf by Synod's governing boards, of the effectiveness of management, and of the broad financial situation of the Synod and its agencies.

4.15.7.2    The Board shall report with the adoption of each budget (after May meetings) on the budget's attempt to further the work assigned to the Synod by the convention, the level of management and general expense, the revenue expectations built into the budget, including designated and undesignated sources, and the strategic budget outlook. The report should guide congregations and districts in their planning to support work together through the Synod.

4.15.7.3    The Board shall report at the conclusion of each fiscal year (after November meetings) on the performance of the Board and operations and administrative teams in managing to budget and to revenue. (Bylaw 1.4.4[c])

4.15.7.4    The Board and management shall supervise management's compliance with Bylaw 1.5.4, regarding full financial disclosure, with 2010 Res. 4-03's requirement of an annual November statement, in layman's terms, of the financial position of the Synod.

4.15.7.5    The Board shall annually review the Chief Financial Officer's November report on the financial position of the Synod and provide timely recommendations for the next year's report (2010 Res. 4-03).

### 4.16          Convention Budget and Location

4.16.1.1    The Board approves the convention budget presented by the convention manager (Chief Administrative Officer) and approves the district levy per confirmed member (Bylaw 3.1.9 [d][1]).

The Lutheran Church—Missouri Synod                    **Board of Directors Policy Manual**

4.16.1.2     The Board, in consultation with the convention manager, establishes the sites of Synod conventions, giving preference to St. Louis when logistically and economically feasible (Bylaw 3.1.9 [j][2]).

## 4.17          Audit

### 4.17.1          Board of Directors Audit Committee Charter

#### *Purpose*

4.17.1.1     The primary function of the Audit Committee is to assist the Board of Directors in fulfilling its supervision and oversight responsibilities for the financial reporting process, the system of internal control that management and the Board of Directors have established, and all audit processes of The Lutheran Church—Missouri Synod and related corporate entities.

#### *Authority*

4.17.1.2     The Audit Committee has the authority to conduct or authorize investigations into any matters within its scope of responsibility. It is empowered to:

(a)  Make recommendations to the full Board regarding the appointment and compensation of any public accounting firm engaged by Corporate Synod.

(b)  Supervise the work of and pre-approve all auditing and non-audit services provided by public accounting firms engaged by Corporate Synod.

(c)  Retain independent counsel, accountants, or others to advise the committee or assist in the conduct of an investigation.

(d)  Seek any information it requires from employees or external parties.

(e)  Meet with Synod officers, management, the external auditors, the internal auditors, or outside counsel, as necessary.

#### *Composition*

4.17.1.3     The Audit Committee function has been assigned to the Finance and Audit Committee of the Board. Members, in regard to their function as the Audit Committee, shall be independent (i.e., free of any relationship that could influence his/her judgment as a committee member).

4.17.1.4     The committee may consult with an independent financial expert on special topics.

#### *Meetings*

4.17.1.5     The Audit Committee will meet at least semi-annually, with authority to convene additional meetings, as circumstances require. All committee members are expected to attend each meeting, in person, or via telephone or video conference.

4.17.1.6     The committee will invite members of management, internal auditors, external auditors, or others to attend meetings and provide pertinent information, as necessary.

4.17.1.7     It will conduct executive sessions with external auditors, the Executive Director of Internal Audit, and management, as necessary.

4.17.1.8    Meeting agendas will be prepared and provided in advance to members, along with appropriate briefing materials.

4.17.1.9    Minutes will be prepared and presented to the Board of Directors.

### Responsibilities – Corporate Synod

4.17.1.10   The Audit Committee will carry out the following responsibilities on behalf of the Board in performance of its supervisory responsibilities:

(a) External Audit

(1) Make recommendations to the Board regarding the engagement of external auditors for the Synod.

(2) Review the external auditors' proposed audit scope and approach, including coordination of audit effort with Internal Audit, and pre-approve any non-audit services provided by the external auditors, including tax services, before the services are rendered.

(3) Review and confirm the independence of the external auditors by obtaining statements from the auditors on relationships between the auditors and the company, including non-audit services, and discussing the relationships with the auditors.

(4) On a regular basis, meet separately with the external auditors to discuss any matters that the committee or auditors believe should be discussed privately.

(5) Review with management and the external auditors, upon completion of their financial statement audit, the audit results. In the event the opinion to be rendered on the financial statements is other than unmodified, this review must be completed prior to the public release of the financial statements. This review should include:

(i) The Synod's annual financial statements and related notes to ensure they are complete and consistent with information known to committee members.

(ii) The external auditors' audit of the financial statements and their report thereon.

(iii) Significant accounting and reporting issues, including complex or unusual transactions and highly judgmental areas, and recent professional and regulatory pronouncements, and understand their impact on the financial statements.

(iv) The auditor's qualitative judgments about the appropriateness, not just the acceptability, of accounting principles and financial disclosures and how aggressive (or conservative) the accounting principles and underlying estimates are.

(v) The scope of the external auditors' review of internal control over financial reporting; the adequacy and effectiveness of those internal

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 254 of 365
Exhibit 5 to Defendants' Motion to Dismiss
Page 54 of 122

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

controls, including computerized information system controls and
security.

(vi) Significant adjustments proposed by the external auditors.

(vii) Unadjusted audit differences identified by the auditors that were
determined by management to be immaterial, both individually and in
the aggregate, to the financial statements taken as a whole.

(viii)          Any significant changes required in the auditors' audit plan.

(ix) Any serious difficulties or disputes with management encountered
during the course of the audit.

(x) Any significant findings and recommendations made by the external
auditor, together with management's responses to them.

(xi) Anything else about the audit procedures or findings that generally
accepted auditing standards require the auditors to discuss with the
committee.

(xii) Ensure the opportunity for the external auditors to meet with the entire
Board of Directors, as needed, is not restricted in any way.

(6) Review the performance of the external auditors. Solicit comments from
management regarding the responsiveness of the external auditors to the
Synod's needs and annually recommend to the Board of Directors the
retention or replacement of Corporate Synod's external auditors, providing
a written summary of the basis for the recommendation.

(b) Internal Audit

(1) Review and recommend to the Board of Directors the appointment,
replacement, or dismissal of the Executive Director of Internal Audit.

(2) Annually review the Synod's Internal Audit Department Charter (Section
5.3.3) and propose changes to the Board of Directors as necessary.

(3) Review and approve the annual audit plan and all major changes to the
plan. Ensure the internal and external auditors coordinate their audit efforts
to assure the completeness of coverage, reduction of redundant efforts, and
the effective use of audit resources.

(4) Review with the Executive Director of Internal Audit the following:

(i) The activities, staffing requirements, organizational structure, and the
related budget request of the Internal Audit Department.

(ii) Significant findings on internal audits performed during the year and
management's responses to them.

(iii) Any difficulties encountered while conducting the internal audits.
Ensure there are no unjustified restrictions or limitations on the scope
of their work or access to required information.

(iv) A progress report on the Department's annual audit plan, with
appropriate explanations for deviations from the approved plan.

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 255 of 365
Exhibit 5 to Defendants' Motion to Dismiss
Page 55 of 122

The Lutheran Church—Missouri Synod                     Board of Directors Policy Manual

(5) Annually review the performance of the Executive Director of Internal Audit in accordance with Synod policy

(6) On a regular basis, meet separately with the Executive Director of Internal Audit to discuss any matters that the committee or internal audit believes should be discussed privately.

(c) Reporting Responsibilities:

(1) Regularly report committee activities and significant issues discussed at each meeting to the full Board of Directors and make appropriate recommendations.

(2) Provide an open avenue of communication between internal audit, the external auditors, and the Board of Directors.

### *Responsibilities – Synodwide Corporate and Trust Entities*

4.17.1.11    The Audit Committee will carry out the following responsibilities on behalf of the Board in performance of its oversight responsibilities:

(d) Confirm that synodwide corporate and trust boards are exercising their fiduciary responsibilities to donors, investors, beneficiaries, and constituents through their respective audit committees or the board as a whole, functioning as the audit committee.

(e) Confirm that synodwide corporate and trust boards or their audit committees are meeting with external auditors at least annually.

(f) Review with management of synodwide corporate and trust entities and/or the Executive Director of Internal Audit any instances when the external auditors render an opinion on the financial statements that is other than unmodified.

(g) Review with the management of the respective entities and/or the Executive Director of Internal Audit all instances of significant deficiencies or material weaknesses in internal controls identified and communicated to the respective boards by the external auditors. Evaluate the adequacy of management's response and any corrective actions taken or planned.

(h) Inquire of management as to any instances of repeat findings contained in the external auditors' letter to management and the board. Ascertain why corrective action has not been taken by management.

### *Responsibilities – Districts*

4.17.1.12    The Audit Committee will carry out the following responsibilities on behalf of the Board in performance of its oversight responsibilities:

(a) Confirm that Synod districts are exercising their fiduciary responsibilities to donors, investors, and constituents through their respective audit committees or the board as a whole, functioning as the audit committee.

(b) Review with the Executive Director of Internal Audit any instances where the district auditors (internal or external) render an opinion on the financial statements that is other than unmodified.

(c) Review with the Executive Director of Internal Audit any instances where the district auditors (internal or external) reported significant deficiencies or material weaknesses in internal controls.

***Responsibilities – Seminaries and Universities***

4.17.1.13 The Audit Committee will carry out the following responsibilities on behalf of the Board in performance of its oversight responsibilities:

(a) Confirm that the LCMS Office of Pastoral Education (OPE) and the Concordia University System (CUS) audit committee is reviewing the annual audit reports, communications received from external auditors, and the related responses of the seminaries and universities.

(b) Review with the management of the OPE and CUS any instances when the external auditors render an opinion on financial statements of the educational institutions that is other than unmodified.

(c) Review with the management of OPE and CUS all instances of significant deficiencies or material weaknesses in internal controls identified and communicated to the schools by their external auditors. Evaluate the adequacy of management's response and any corrective actions taken or planned.

***Responsibilities – Other***

4.17.1.14 The Audit Committee will carry out the following responsibilities on behalf of the Board in performance of its supervisory and oversight responsibilities:

(a) Review and assess the adequacy of the committee's charter annually, requesting Board approval for proposed changes. Consider changes that are necessary as a result of new laws or regulations.

(b) Confirm annually that all responsibilities outlined in this charter have been carried out.

(c) Institute and oversee special investigations in accordance with the "LCMS Policy on Suspected Financial and Organizational Misconduct".

(d) Inquire of management, the Executive Director of Internal Audit, and the external auditors about significant risks and exposures facing Corporate Synod; assess the steps management has taken or proposes to take to minimize such risks to the organization. Periodically review compliance with such steps.

(e) Review policies and procedures covering officer and key employee expense accounts and perquisites, including excess benefit transactions and their use of corporate assets. Consider the results of any review of these areas by the internal or external auditors.

(f) Perform other activities as assigned by the Synod's Bylaws or the Board of Directors.

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 257 of 365
Exhibit 5 to Defendants' Motion to Dismiss
Page 57 of 122
The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

| 4.17.2 | **Synod's Internal Audit Department Charter** |
|---|---|

*Internal Audit Department Role*

4.17.2.1    The Synod's Internal Audit Department was established to assure the Board of Directors that the required annual financial statement audits are being performed for all agencies of the Synod. Through the Internal Audit Department, the Board shall receive copies or summaries of all audit reports.

4.17.2.2    In addition, the department provides Corporate Synod and its agencies with independent, objective assurance and consulting services, designed to add value and improve key business systems, processes, and internal controls.

*Audit Planning*

4.17.2.3    The Executive Director of Internal Audit is responsible for properly managing the department so that (1) audit work fulfills the purposes and responsibilities established herein, and (2) resources are efficiently and effectively employed. Annually, the Executive Director shall prepare and submit to the Audit Committee for its approval the audit plan/objectives for the upcoming fiscal year, including the agencies it will audit. This audit plan is to be developed using a risk-based approach. The objectives, once approved by the committee, will be used as a basis for the development of the Internal Audit Department's annual budget, determining staffing requirements, and scheduling of specific audit engagements. At each meeting of the committee, the Executive Director will provide a status report on the progress achieved in meeting those objectives. Any deviations to the approved plan/objectives will be reported to the committee in the status reports.

*Organization*

4.17.2.4    To promote independence and enable auditors to maintain objectivity to render unbiased judgments, the Internal Audit Department shall be accountable to the Board of Directors through the Audit Committee. The Executive Director shall have the opportunity to meet with the committee at each of its regularly scheduled meetings or at specially scheduled meetings to discuss the results of audits or matters determined to be of interest to the committee. The Executive Director shall have the opportunity at each of the committee's meetings to meet with the committee as a whole without the presence of management personnel, should the need arise. Administratively, to afford the Internal Audit Department appropriate support to accomplish its day-to-day activities, the Executive Director reports to the Chief Financial Officer of the Synod.

*Scope of Audit Activities*

4.17.2.5    The scope of internal audit activities includes both assurance and consulting services. As a result, audit coverage will encompass financial statement audits and independent reviews and evaluations of management operations and activities to appraise:

(a)   Measures are taken to safeguard assets, including tests of existence and ownership and evaluation of internal controls as appropriate;

(b)   The reliability, consistency, and integrity of financial and operating information;

(c)   Compliance with policies, plans, standards, laws, regulations, and contracts;

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 258 of 365
Exhibit 5 to Defendants' Motion to Dismiss
Page 58 of 122

The Lutheran Church—Missouri Synod                  Board of Directors Policy Manual

       (d)  Economy and efficiency in the use of resources;

       (e)  Effectiveness in the accomplishment of the mission, objectives, and goals established for the Synod's operations and projects.

4.17.2.6      Audit activities will be coordinated to the extent possible with the external auditors to avoid duplication of effort, enhance audit efficiency, and maximize audit coverage.

4.17.2.7      In addition, the department will assist, as appropriate in the investigation of suspected fraudulent activities in accordance with the LCMS Policy on Suspected Financial and Organizational Misconduct.

### Authority

4.17.2.8      To accomplish its activities, Internal Audit staff members are authorized to have full, free, and unrestricted access to any and all financial and administrative records, data files, computer programs, property, and personnel determined relevant to the performance of assigned engagements. All employees are requested to assist Internal Audit in fulfilling its roles and responsibilities. Internal Audit will have free and unrestricted access to the Chairman of the Board of Directors and the Audit Committee of the Board.

4.17.2.9      Internal Audit staff members will exercise discretion in the review of records to ensure the confidentiality of all matters that come to their attention. Documents and information given to Internal Audit during a review/audit will be handled in the same prudent and confidential manner as by those employees normally accountable for them.

### Reporting

4.17.2.10     A written report will be prepared and issued by Internal Audit at the conclusion of each audit engagement and will be distributed as appropriate. The audit results will also be communicated to the respective board/audit committee of the auditee. Management of the respective auditee is responsible for either planning or taking corrective action on recommendations made or deficient conditions reported by the auditor. Management's response should include a timetable for anticipated completion of action to be taken and an explanation for any recommendations not addressed. Internal Audit shall be responsible for appropriate follow-up on audit findings and recommendations. All significant findings will remain in an open issues file until cleared by the Executive Director of Internal Audit.

### Independence

4.17.2.11     The internal audit activity shall remain free from interference by any element in the organization, including matters of audit selection, scope, procedures, frequency, timing, or report content to permit maintenance of an independent and objective mental attitude necessary in rendering reports. Any unwarranted restrictions on internal audit scope, communications, access, and resources shall be reported by the Executive Director to the Audit Committee.

4.17.2.12     In performing their functions, the Internal Audit staff members shall have no direct operational responsibility or authority over any of the activities reviewed. Accordingly, internal auditors will not develop or install systems or procedures, prepare records, make management decisions, or engage in any other activity that could be reasonably construed to compromise their independence. However, in connection with the complementary objectives of this audit function, Internal Audit will recommend

The Lutheran Church—Missouri Synod                      Board of Directors Policy Manual

accounting and information system policies and procedures for approval and
implementation by appropriate management. Therefore, internal audit review and
appraisal do not in any way substitute for other activities or relieve other persons in the
Synod and its agencies of the responsibilities assigned to them.

### *Professional Standards*

4.17.2.13    The rules of professional conduct and code of ethics of the Internal Audit Department
shall be consistent with the professional standards promulgated by the American Institute
of Certified Public Accountants and the Institute of Internal Auditors. Specifically,
members of the Internal Audit Department will:

(a) Conduct all audit work leading to the expression of an opinion on financial
statements in accordance with auditing standards generally accepted in the
United States.

(b) Conduct all other types of audits not leading to the expression of an opinion on
financial statements in accordance with professional standards.

(c) Exercise honesty, diligence, and responsibility in the performance of their work.

(d) Exhibit corporate loyalty in all matters pertaining to the business of the Synod
and its agencies and not knowingly be a party to illegal activity or engage in acts
that are discreditable to the profession or to the Synod and its agencies.

(e) Refrain from participating in any activity or relationship or accepting anything
that may impair or be presumed to impair their unbiased professional
judgment. This participation includes those activities and relationships that may
be in conflict with the interest of the Synod and its agencies.

(f) Be prudent in the use and protection of information acquired in the course of
carrying out the duties of the department and not use information obtained for
any personal gain or in any manner that would be contrary to the law or
detrimental to the welfare of the Synod or any of its components. Any requests
of the department for financial or operational information other than that
provided to units of the Synod during the normal course of operations of the
department will be referred to the appropriate officials of the Synod and its
agencies for determination and resolution.

(g) Use reasonable care to obtain sufficient factual evidence to support conclusions
drawn and, in reporting, disclose all material facts known which, if not disclosed,
could distort the reporting activities under review or conceal an act which is
unlawful or contrary to existing policies.

(h) Engage only in those services for which they have the necessary knowledge,
skills, and experience, and continually improve their proficiency and the
effectiveness and quality of the department's services.

### *Periodic Assessment*

4.17.2.14    The Executive Director of Internal Audit should periodically assess whether the purpose,
authority, and responsibility of the Internal Audit Department, as defined in this charter,
continue to be adequate to enable the internal auditing activity to accomplish its
objectives. The result of this periodic assessment should be communicated to the Audit

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 260 of 365
Exhibit 5 to Defendants' Motion to Dismiss
Page 60 of 122

**The Lutheran Church—Missouri Synod**                    **Board of Directors Policy Manual**

Committee. Proposed changes to this charter shall be submitted to the Governance Committee for approval by the Board of Directors.

### 4.17.3        Regulations for Synod's Internal Audit Department

4.17.3.1    The Executive Director of Internal Audit is accountable to the Board through its Audit Committee and to other corporate and trust boards for services rendered to them.

4.17.3.2    Administratively, however, the Executive Director of Internal Audit reports to the Chief Financial Officer. In carrying out these responsibilities, the Chief Financial Officer shall:

(a)   Not engage outside auditors, appoint the Executive Director of Internal Audit, change the Internal Audit Charter, or approve the Internal Audit's Annual Plan without prior approval of the Board.

(b)   Not keep from the Board's Audit Committee the audit reports, management letters, and management's response to management letters of other corporate and trust entities of the Synod including summaries of audits of districts and educational institutions.

(c)   Not restrict direct access to the Board or its Audit Committee by the outside auditors or the Executive Director of Internal Audit.

4.17.3.3    The Executive Director of Internal Audit establishes audit policies and procedures which comply with generally accepted accounting and auditing principles and procedures as determined by the Financial Accounting Standards Board, the American Institute of Certified Public Accountants, and the Institute of Internal Auditors.

4.17.3.4    It shall be the duty of the Executive Director of Internal Audit to make reports directly to the Audit Committee when deemed appropriate.

## 4.18        Legal Policies for Corporate Synod and Subordinate Agencies

For corresponding policies applicable to separately incorporated agencies of the Synod, see Policy section 7.5.

### *Scope*

4.18.1.1    The Board of Directors, administrators, employees of Corporate Synod, other Synod members, and interested parties

### *Definitions*

4.18.1.2    **Agency**: An instrumentality other than a congregation or Corporate Synod, whether or not separately incorporated, which the Synod in convention or its Board of Directors has caused or authorized to be formed to further the Synod's objectives.

(a)   Agencies include each board, commission, council, seminary, university, college, district, Concordia Plan Services, and each synodwide corporate entity.

(b)   The term "agency of the Synod" does not describe or imply the existence of principal and agency arrangements as defined under civil law. (Bylaw 1.2.1[a])

4.18.1.3    **Corporate Synod**: See Bylaw 1.2.1 (d).

Exhibit 5 to Defendants' Motion to Dismiss    Case 1:23-cv-01042-RP    Document 9-1    Filed 01/23/24    Page 261 of 365
Page 61 of 122

The Lutheran Church—Missouri Synod                                    Board of Directors Policy Manual

4.18.1.4        **Synod**: See Bylaw 1.1.1 (v).

4.18.1.5        **Litigation**: Every proceeding before in a court, of record or involving any administrative agency, regulatory agency, or quasi-judicial agency, or other secular or governmental body, whether such court or agency be local, state, federal, or foreign, and including any arbitration proceeding.

4.18.1.6        **Claim**: A demand for relief and every circumstance where litigation is anticipated or reasonably likely to ensue, and includes investigations by law enforcement agencies, administrative agencies or any other investigation where litigation could result.

4.18.1.7        **Litigation brought against the Synod:** Shall include litigation in which Corporate Synod is named as a party or interested person, or in which a board, commission, committee, officer, volunteer, missionary, or employee of Corporate Synod is named as a party or interested person and is alleged to have been acting in their capacity as such or on behalf or for the benefit of Corporate Synod.

### 4.18.2        Engagement of Legal Counsel

#### *Purpose*

4.18.2.1        To identify the parties responsible for appointing legal counsel for The Lutheran Church— Missouri Synod

#### *Policy*

4.18.2.2        The Board has the power and duty under the LCMS Bylaws to engage legal counsel for the guidance of the Board and advice to the officers and agencies of the Synod.

4.18.2.3        The Board selects general counsel for the Synod for a three-year renewable period. Such selection generally takes place at the first Board meeting of the calendar year after each regular LCMS Convention with the engagement or renewal to begin at the beginning of the subsequent fiscal year (July). The Board may change this selection process if in the best interest of Synod.

4.18.2.4        Except for the Boards' reservation of the right to select special counsel for legal matters of synod-wide significance (BOD Policy 4.14.2), the Board otherwise delegates to the Chief Administrative Officer the authority to engage special counsel (BOD Policy 4.18).

4.18.2.5        If it is deemed appropriate in the judgment of the Executive Committee of the Board that a second opinion be obtained or that independent counsel represents the Synod in any case, the Executive Committee is authorized to engage such special counsel for that case.

4.18.2.6        All officers and executives shall work through the Chief Administrative Officer concerning the use of the Synod's general counsel or other legal counsel.

#### *Procedure*

4.18.2.7        The selection or renewal of general counsel shall follow a procedure developed by the Board of Directors.

### 4.18.3        Initiating Litigation

#### *Purpose*

4.18.3.1        The initiation of litigation, lawsuit, arbitration, or administrative proceeding must be approved by the LCMS Board of Directors.

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

---

*Policy*

4.18.3.2        The Lutheran Church—Missouri Synod Board of Directors recognizes that any participation in litigation by the Synod, including by an agency of the Synod, may have an adverse effect on the Synod as a church organization, and that litigation must, therefore, be entered into only when it has been determined that such is likely to serve the best interests of the Synod and, when applicable, all of the Synod's avenues for conflict resolution have been exhausted.

4.18.3.3        No litigation proceeding shall be commenced by the Synod or any of its officers, executives, or staff without the prior approval of the Board of Directors, or in cases of emergency in which time does not permit obtaining a decision from the full Board, by the Executive Committee of the Board.

*Procedure*

4.18.3.4        Notification of litigation should be made to:

The Lutheran Church—Missouri Synod
Chief Administrative Officer
1333 S. Kirkwood Road
St. Louis, MO 63122

or

via email to BOD@LCMS.org

4.18.3.5        Inquiries regarding the availability and use of Synod's legal counsel should be directed to the LCMS Chief Administrative Officer at 314-996-1350.

**4.18.4          Responding to Litigation**

*Purpose*

4.18.4.1        To identify parties having authority and responsibility for responding to and monitoring litigation brought against the Synod and Corporate Synod.

*Policy*

4.18.4.2        The LCMS Board of Directors recognizes that any response to litigation brought against the Synod or Corporate Synod may impact the Synod, its agencies, and members. Cooperation in such responses is therefore a necessity.

4.18.4.3        The Chief Administrative Officer shall report to the Board any litigation brought against the Synod.

4.18.4.4        The Chief Administrative Officer, in consultation with the Synod's general counsel and when necessary the Executive Committee of the Board, shall select legal counsel to represent the Synod in each case of litigation brought against the Synod or an agency of Corporate Synod. General counsel shall supervise all responses to litigation brought against the Synod, including without limitation all filings, discovery, and negotiating settlements. However, in the event the case is covered by insurance and the insurance carrier has the right and duty to select counsel, such right and duty shall be honored. In such cases, the Synod's general counsel will monitor all litigation and settlements provided by the insurance carrier's counsel.

---

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 263 of 365
Exhibit 5 to Defendants' Motion to Dismiss
Page 63 of 122

The Lutheran Church—Missouri Synod                    **Board of Directors Policy Manual**

4.18.4.5    General counsel shall provide in the Board's docket a written report of all pending cases including decisions by the Chief Administrative Officer or the Executive Committee of the Board on responses to litigation brought against the Synod. General counsel shall also provide to the Board on a confidential basis the terms of any settlements.

*Procedure*

4.18.4.6    Notification of litigation should be made to:

The Lutheran Church—Missouri Synod
Chief Administrative Officer
1333 S. Kirkwood Road
St. Louis, MO 63122

or

via email to BOD@LCMS.org

4.18.4.7    Inquiries regarding the availability and use of Synod's legal counsel should be directed to the LCMS Chief Administrative Officer at 314-996-1350.

## 4.18.5    Participation by the Synod as Amicus Curiae or in Support of a Member Congregation

4.18.5.1    It is suggested from time to time to the officers and various agencies of the Synod that the Synod, or an agency of the Synod, participate as an *amicus curiae* (or friend of the court) in judicial proceedings in which legal questions are presented involving issues in which the Synod has an interest. Other situations present the opportunity for the Synod to become involved through or on behalf of a member congregation(s) in addressing such issues before the courts.

4.18.5.2    A position of the Synod should in proper circumstances be developed or made known in judicial proceedings where legal principles are being formulated which will have a bearing upon the position of the Synod and/or its congregations in matters of public interest. The time available for a decision concerning whether or not to participate in judicial proceedings does not ordinarily permit an independent consideration by the entire Board of Directors of each situation.

4.18.5.3    The following policy applies to all agencies of the Synod:

(a)    Participation in judicial proceedings as *amicus curiae* or in support of a member congregation shall only be by the Synod and shall not be by any agency of the Synod.

(b)    The President, in consultation with available St. Louis based officers, i.e. First Vice-President, Secretary, Chief Financial Officer, Chief Administrative Officer, and Chief Mission Officer, is authorized to direct the participation of the Synod as amicus curiae, or in such other capacity as they might determine, in judicial proceedings when, in their judgment, such participation is justified on the basis of the following considerations:

(1)    The position of the Synod on the ultimate policy issues involved is sufficiently established to be formally and officially presented;

**The Lutheran Church—Missouri Synod**                    **Board of Directors Policy Manual**

(2)  The legal issues are such as to permit an exposition of the position of the Synod on the ultimate policy issues as well as the legal issues; and

(3)  The importance and general applicability of the public issues involved warrant the expenditure of funds for the legal and other costs to be incurred.

(c)  The Synod shall be represented in such actions by general counsel for the Synod, or by special counsel selected in accordance with Policy "Engagement of Legal Counsel for the Synod".

(d)  The Chief Administrative Officer and/or General Counsel shall report to the Board each decision to participate in legal proceedings as amicus curiae, or in support of any member congregation.

| 4.18.6 | **Powers of Attorney for the Synod** |
|---|---|

4.18.6.1      The Synod shall not grant general powers of attorney.

4.18.6.2      Issuance of limited powers of attorney (POA) for the Synod, including its boards and commissions, is the responsibility of the Board of Directors.

4.18.6.3      The Board authorizes the President, First Vice-President, Secretary, Chief Financial Officer, and Chief Administrative Officer by majority vote to grant limited powers of attorney.

4.18.6.4      A limited power of attorney shall be restricted by its terms to the specific task to be accomplished by the specified persons to whom it is granted for the period of time required to accomplish the task, but not to exceed four years.

4.18.6.5      If a limited power of attorney is required for an action in a foreign country, the Chief Administrative Officer in consultation with the Chief Mission Officer shall request its issuance. The Chief Administrative Officer shall notify the Chief Mission Officer when the power of attorney is granted.

4.18.6.6      A limited power of attorney shall be granted to no less than two persons, acting jointly and not separately, unless the Chief Administrative Officer, after consultation with the Synod's legal counsel, authorizes it to be issued to one person due to special circumstances, such as limitations or requirements in the laws of a foreign country in which the power of attorney is to be used.

4.18.6.7      The designated attorneys-in-fact represent The Lutheran Church—Missouri Synod, Inc. and are directly responsible to the Board of Directors in the fulfillment of their responsibilities.

4.18.6.8      The written document evidencing the granting of a power of attorney shall be reviewed and approved by the Synod's general counsel.

4.18.6.9      The Chief Administrative Officer shall report to the Board the granting of any limited power of attorney.

| 4.19 | **Committee for Human Resources** |
|---|---|

4.19.1.1      The Committee for Human Resources has been established as an ad hoc committee of the Synod Board of Directors.

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 265 of 365
Exhibit 5 to Defendants' Motion to Dismiss
Page 65 of 122

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

4.19.1.2    The Committee for Human Resources shall consist of the Chief Executives of the Concordia Plan Services, The Lutheran Church Extension Fund—Missouri Synod, The Lutheran Church—Missouri Synod Foundation, the Synod's Chief Mission Officer, the Chief Financial Officer, and the Chief Administrative Officer as voting members. The Synod Chief Administrative Officer chairs the Committee. Staff services shall be provided by the Executive Director of Human Resources.

4.19.1.3    The Committee for Human Resources shall meet at least semi-annually.

4.19.1.4    Human resources policies and procedures approved or recommended by the Committee shall conform to federal and state law and regulations and the provisions of the Constitution and Bylaws of the Synod.

### 4.19.2    Maintenance of Common Human Resources Policies and Procedures

4.19.2.1    The Committee for Human Resources shall discuss and adopt on behalf of the governing boards of Corporate Synod, The Lutheran Church Extension Fund-Missouri Synod, Concordia Plan Services, and The Lutheran Church—Missouri Synod Foundation common Human Resources policies and procedures for these agencies that are not reserved by the LCMS Board of Directors for its approval, as stated elsewhere in Board Policy.

4.19.2.2    All common policies and procedures adopted by the Committee for Human Resources shall be shared with the respective governing boards. Such policies shall clearly indicate their scope of application; namely, to Corporate Synod and its agencies and to the synodwide corporate/trust entities which comprise the Committee for Human Resources as set forth in Policy 4.19.1.2.

### 4.19.3    Review of General Human Resources Policies of the Synod

4.19.3.1    The Committee for Human Resources shall also regularly review and may from time to time recommend "General Human Resource Policies of the Synod" (Policy section 6.4) to the Synod Board of Directors to approve as required in Bylaw 1.5.5 which states:

"Every agency shall operate under the general human resources policies of the Synod as provided by the Board of Directors of the Synod, in accordance with Bylaw 3.3.4.3. Specific policies under these general policies may be adopted by each agency's governing board in order to accommodate the unique character of its operations."

4.19.3.2    An "agency," as defined in Bylaw 1.2.1 (a), includes entities beyond agencies of Corporate Synod and the synodwide corporate entities served by LCMS Human Resources. The policies adopted by the Synod Board of Directors shall clearly define the scope of application, stating plainly whether the policies are to be generally applicable to all agencies as defined in Bylaw 1.2.1 (a) or applicable only to Corporate Synod and its agencies and/or other synod wide corporate entities.

4.19.3.3    Where proposed policies would apply beyond the entities represented on the Committee for Human Resources as set forth in Policy 4.19.1.2, the Committee shall request and review comments on the proposed policies, and any amendment thereto, from the other entities to which proposed policies would apply.

### 4.19.4    Relation of Committee to Participating Entities, Executives, and Staff

4.19.4.1    The respective governing boards shall be responsible for approving changes in the salary classifications of their employees and for changes in the salaries of their respective

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 266 of 365
Exhibit 5 to Defendants' Motion to Dismiss
Page 66 of 122

The Lutheran Church—Missouri Synod                          **Board of Directors Policy Manual**

officers. Each governing board reserves for itself, after consultation with the other governing boards, the responsibility for approving the salary ranges and changes in employee benefits. The Synod's Board of Directors approves the salaries of the Synod officers.

4.19.4.2    The Chief Administrative Officer of the Synod or the Executive Officer of a member agency shall be responsible for its respective Human Resources Department.

**4.19.5**    **Role of Chief Administrative Officer**

4.19.5.1    The Chief Administrative Officer is the Board's representative on the Committee. In carrying out these responsibilities, the Chief Administrative Officer shall:

(a) Not establish or change human resource policies and procedures in those areas reserved to the Board (Policy 4.14.2) without prior Board approval.

(b) Not allow Committee for Human Resources or management policies that conflict with applicable law and the provisions of the Constitution, Bylaws, or resolutions of the Synod.

## 4.20    Working Together

4.20.1.1    The Synod and its agencies are most effective as their board members, officers, and staffs work together as prescribed in Col. 3:12–14 (ESV) which reads as follows: "Put on then, as God's chosen ones, holy and beloved, compassionate hearts, kindness, humility, meekness, and patience, bearing with one another and, if one has a complaint against another, forgiving each other; as the Lord has forgiven you, so you also must forgive. And above all these put on love, which binds everything together in perfect harmony."

4.20.1.2    The Board encourages Christ's people serving as board members, officers and staffs who differ with their brothers and sisters to pursue the course of harmony, peace, and unity in keeping with the mind of Christ, not publicizing these differences, but using the scriptural and fraternal principles of loving Christian counsel or admonition.

## 4.21    Monitoring

The Board shall employ the following avenues of monitoring:

**4.21.1**    **Management Reports**

4.21.1.1    Receive and review management reports, periodic reports that provide information and counsel to the Board on programs, trends, and developments that may affect its work and which report on Chief Administrative Officer compliance with Board policies.

**4.21.2**    **Direct Monitoring**

4.21.2.1    The Board of Directors shall review for compliance with Board and management policies and possible change or suggestion:

(a) annually, the outcomes of the Synod in relationship to the triennial common vision and quarterly the financial condition of the Synod.

(b) changes in spending levels throughout the year as authorized by the Chief Financial Officer.

(c)  annually, or upon change, the current accounting policies as approved by the Chief Financial Officer.

(d)  quarterly reports on material financial transactions specifically delegated by resolution to the Chief Administrative Officer and Chief Financial Officer.

(e)  through the Audit Committee, the audit reports of the Agencies of the Synod.

(f)  quarterly reports on property transactions delegated to the Chief Administrative Officer and Chief Financial Officer.

(g)  annually the report on insurance levels established by the Chief Administrative Officer, in coordination with the Chief Financial Officer of the Synod.

(h)  annually, or upon change, the current Employee Handbook .

(i)  annually, or upon change, the current management policies, and procedures as approved by the Chief Administrative Officer.

(j)  legal matters as provided in the Board policies.

(k)  minutes of synodwide corporate entities, mission boards, and commissions.

4.21.2.2  Through the Chief Administrative Officer, individual members of the Board may request additional information that would be reported to the Board and that may help the Board as a whole in exercising its monitoring responsibility.

**4.21.3      Chief Administrative Officer and Chief Financial Officer Performance Reviews**

4.21.3.1  The Board shall review the performance of the Chief Administrative Officer and Chief Financial Officer employing the following process:

(a)  The Board shall conduct an annual performance review of the Chief Administrative Officer (CAO) and the Chief Financial Officer (CFO).

(b)  The annual review shall normally be done in conjunction with the performance review process in place for all International Center staff.

(c)  The Board Chairman, with assistance from the Personnel Committee of the Board, shall solicit input from all voting members of the Board regarding the performance of the CAO and the CFO and recommended goals for the upcoming year.

(d)  The Board Chairman shall solicit input from the CAO and CFO regarding challenging yet reasonable goals and objectives for the upcoming year.

(e)  The Board Chairman shall prepare a composite of the feedback received using the International Center's performance review form.

(f)  The Board Chairman shall present the composite review to the Board for consensus and agreement on the overall performance review and rating, along with the goals and objectives identified for the upcoming year/ triennium.

(g)  The Board shall determine if recognition in the form of a bonus is to be awarded.

(h)  The Board Chairman and the Chairman of the Personnel Committee shall normally sign the performance reviews and, on behalf of the Board, conduct the

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 268 of 365
Exhibit 5 to Defendants' Motion to Dismiss
Page 68 of 122

The Lutheran Church—Missouri Synod                     **Board of Directors Policy Manual**

review, share the established goals and objectives, and, when approved by the Board, authorize a bonus for the CAO and/or the CFO.

(i) The signed performance review shall then be forwarded to the Department of Human Resources and kept as an official document in the personnel file.

(j) The performance review conducted each third year shall be a comprehensive review whereby the Board Chairman and the Chairman of the Personnel Committee, using the services of the executive director of human resources, shall solicit input from the members of the Board as well as other Synod leaders including a number of district presidents, LCMS unit executives, and chief executive officers of the synodwide corporate entities.

| 4.21.4 | **Notice of Violation of Board Policy** |

### Notice by Chief Administrative Officer

4.21.4.1    The Chief Administrative Officer shall give immediate notice to the Board once a Board Policy has been recognized to have been violated.

(a) If the violation is immediately correctable, the Chief Administrative Officer shall take immediate action within policies and report the results to the Board.

(b) If the violation is not immediately correctable, the Chief Administrative Officer shall share with the Board his plan for corrective action.

4.21.4.2    Depending on the nature of any violation, the Chairman may request the Chief Administrative Officer to bring the matter to the Board for evaluation of the policy and appropriate action.

### Notice by a Board Member

4.21.4.3    Board members shall bring to the Chairman's attention any condition or action believed to violate Board Policy.

4.21.4.4    Depending on the nature of any violation, the Chairman may request the Chief Administrative Officer to take action or develop a plan for corrective action or may bring the matter to the Board for evaluation of the policy and appropriate action.

### Notice and Authorization of Exception

4.21.4.5    Only the Board may authorize an exception to its Policy. Prior to undertaking any exception, the Chief Administrative Officer shall seek authorization from the Executive Committee through the Chairman of the Board.

### Unacceptable Violations

4.21.4.6    After a major infraction, a number of recurrences of violation, or inappropriate conduct, the Chairman shall arrange with the President a special review of the performance of the Chief Administrative Officer or the Chief Financial Officer and with the approval of the Executive Committee take necessary and appropriate action.

| Section Revision History | |
|---|---|
| 2022.08.26 | 4.19 Human Resources – Revised |
| 2022.11.18 | § 4 – Comprehensive Revision |

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 269 of 365
Exhibit 5 to Defendants' Motion to Dismiss
Page 69 of 122

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

## § 5          Management Policies for Corporate Synod and Agencies of Corporate Synod

The following policies, *in addition to those included in Policy section § 6*, apply to Corporate Synod and its included and subordinate agencies ("Corporate Synod and Its Agencies"). These policies do not apply to agencies of the Synod not included in or subordinate to Corporate Synod.

## 5.1          Budget Policies (Corporate Synod)

The Chief Financial Officer, in consultation with the Synod's officers and the executive directors of the mission offices, commissions, and departments, is responsible for presenting to the Board the annual operating and capital budgets for Corporate Synod and for necessary adjustments in the course of the year. In implementing the operating and capital budgets, the Chief Financial Officer shall:

(a) Not carry out actions that will maintain a negative balance in unrestricted net assets.

(b) Not establish or change management policies for budgets and revenue without first reporting them to the Board.

(c) Not permit board-approved maximum headcounts to be exceeded.

(d) Not accept unbudgeted gifts that are restricted to programs not already established without reporting them to the Board.

(e) Not allow negative deviations from the budget by any unit in excess of an aggregate of 5 percent without proposing a corrective plan to the Board.

(f) Not allow Corporate Synod debt or debt that has been guaranteed to go unpaid (both principal and interest).

(g) Not allow debt or debt that has been guaranteed to be incurred without evidence that the debt can be serviced (Business Plan).

(h) Not allow new debt or debt that has been guaranteed that will not be fully amortized over a term longer than the shorter of the economic life of the asset or 25 years.

## 5.2          Accounting Policies (Corporate Synod)

The Chief Financial Officer is responsible for establishing accounting policies and procedures for the Synod which comply with "Generally Accepted Accounting Principles" for not-for-profit organizations as determined by the Financial Accounting Standards Board and the American Institute of Certified Public Accountants. In carrying out these responsibilities, the Chief Financial Officer shall:

(a) implement accounting policies and procedures which provide for:

(1) the "controllership" responsibilities of the Chief Financial Officer.

(2) accounting systems with internal controls designated to prevent and detect fraud.

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 270 of 365
Exhibit 5 to Defendants' Motion to Dismiss
Page 70 of 122

The Lutheran Church—Missouri Synod                    **Board of Directors Policy Manual**

(3)   approval of all expense vouchers prior to payment by someone other than the traveler from a list of authorized signatures as determined by the Chief Administrative Officer.

(4)   levels of approval of purchase orders and disbursements.

(5)   compliance with provisions of the Internal Revenue Code and related regulations.

(b)   not designate unrestricted net assets without prior Board approval.

(c)   not allow release of board-designated funds outside release conditions established by the Board.

(d)   not provide the Audited Financial Statements of the Synod beyond the Board and necessary staff or provide summaries thereof for publication in the official periodicals of the Synod without first providing them to the Board.

(e)   not allow management policies for accounting that conflict with "Generally Accepted Accounting Principles" for not-for-profit organizations and which do not provide proper internal controls and reports.

## 5.3          Financial Transactions (Corporate Synod)

5.3.1.1        The Chief Financial Officer and the Chief Administrative Officer are responsible for establishing and maintaining policies and procedures for handling financial transactions.

5.3.1.2        In carrying out these responsibilities, they shall maintain policies that address:

(a)   using LCMS Foundation or LCEF where appropriate

(b)   use, investment, and loaning of restricted funds

(c)   depositing surplus funds with Synod

### 5.3.2        Signature Authority (Corporate Synod)

5.3.2.1        The Chief Administrative Officer shall be authorized to sign any legal or business document on behalf of the Synod in every instance where the President or a Vice-President of the Synod, acting alone, is authorized to sign such documents on behalf of the Synod.

5.3.2.2        The Chief Administrative Officer shall serve as the Assistant Secretary of the Synod for signature purposes.

5.3.2.3        In every case where any two officers of the Synod are authorized, acting together, to sign and attest to legal or business documents on behalf of the Synod, the Chief Administrative Officer shall be authorized to sign or attest to such documents on behalf of the Synod as one of the two officers.

5.3.2.4        In the event that the Chief Administrative Officer serves as the acting Chief Financial Officer or vice versa, then the duties and responsibilities as set forth below of the vacant position shall be assumed by the Corporate Secretary.

### 5.3.3        Authorization Categories

5.3.3.1        Contracts, purchasing, and financial documents requiring a corporate officer's signature or approval should normally be signed by the Chief Administrative Officer or the Chief

Financial Officer. If both officers are unavailable, another corporate officer may sign the document(s) and provide notice and a copy of the document(s) to the Chief Administrative Officer of such signature.

5.3.3.2    Expense reimbursement, travel expense, and purchasing card authorizations for corporate officers shall be forwarded to the officer's supervisor or the Chief Administrative Officer for review and authorization, or in the case of expenses and authorizations for the Chief Administrative Officer, to the Chief Financial Officer.

5.3.3.3    Notes issued by Corporate Synod, securities transferred by Corporate Synod and probate documents shall be signed by or at the direction of the Synod Chief Financial Officer. In the case of a vacancy in the position of Chief Financial Officer, the Chief Administrative Officer or the Board designee shall serve as the Chief Financial Officer and sign notes issued by Corporate Synod, securities transferred by Corporate Synod, securities transferred by Corporate Synod and probate documents. In accordance with Bylaw 3.4.1.3 (h), borrowing in the name of the Synod requires Board of Directors approval and instruments relating to such borrowing require two signatures—that of the Chief Financial Officer and either the President or Chief Administrative Officer.

5.3.3.4    Contracts involving the day-to-day activities of those agencies and departments operating as part of Corporate Synod shall be executed by the principal staff person charged with the responsibility of administering the program and activities of the respective agency or department or by such other person as approved by the Chief Administrative Officer subject to limitations outlined in Policy 5.3.2.

5.3.3.5    Other contracts and legal documents for Corporate Synod shall be signed by the Chief Administrative Officer or the Chief Financial Officer. If neither is available, the President, First Vice-President, or the Secretary may sign. If attestation is necessary, the Secretary or an Assistant Secretary should be consulted.

## 5.3.4    Authorization Limits (Corporate Synod)

5.3.4.1    The Chief Administrative Officer, in coordination with the Chief Financial Officer, is responsible for establishing administrative policies and procedures for all expenses, purchasing, contracts, and property transactions for Corporate Synod consonant with the following authorization limits. (Transactions involving real property [any property that is attached directly to land, as well as the land itself] must be authorized by the Board of Directors and contracts can only be signed by a board-designated signatory.)

5.3.4.2    The Chief Administrative Officer and Chief Financial Officer shall be the designated signatories as described below unless otherwise specified by resolution of the Board.

| Required Signature | Authorization Limit | Monitored by |
|---|---|---|
| LCMS Board of Directors | > $1,000,000 | – |
| Two BOD Designated Signatories (ordinarily the CAO and CFO) | $500,000 – $999,999 | Board of Directors |
| One BOD Designated Signatory (ordinarily the CAO or CFO) | Up to $500,000 | Board of Directors |
| Officer (Supervisor of Unit) | Up to $150,000 | CAO & CFO |
| Unit Executives | Up to $25,000 | CAO & CFO |

Exhibit 5 to Defendants' Motion to Dismiss
Page 72 of 122
Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 272 of 365

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

| Unit Staff | Up to $10,000 only with direct authorization of the Unit Executive and Executive Director of Accounting | Executive Director of Accounting Executive Director of Operations |

5.3.4.3    Authority for establishing signature authority limits below the limits set by the Board (unit staff level, shall be granted and documented by the Chief Administrative Officer.

5.3.4.4    The Chief Financial Officer shall maintain procedures for approving purchase orders and for expense accounts for Corporate Synod.

**5.3.5      Property Transactions and Reporting of Real Property**

5.3.5.1    The Chief Administrative Officer and Chief Financial Officer shall undertake property transactions and report on the real property of Corporate Synod and agencies of Corporate Synod in accordance with the following policies:

5.3.5.2    Property transactions of Corporate Synod or of its agencies shall be approved by the Board in the budgeting process or in accordance with Policy 5.3.2.

5.3.5.3    Loans to Corporate Synod for use by the agencies of Corporate Synod shall be approved in accordance with Policy 5.3.2.

5.3.5.4    The agency of Corporate Synod requesting the loan shall be ultimately responsible for its repayment through its annual budgets.

5.3.5.5    Property transactions of Corporate Synod or of its agencies shall also be in accordance with Policy section 6.3.

5.3.5.6    The Synod's Chief Financial Officer serves as the Board's representative on property matters involving other synodwide corporate and trust entities.

5.3.5.7    The Chief Administrative Officer, in coordination with the Chief Financial Officer, is responsible for establishing administrative policies and procedures for handling property transactions.  Such policies and procedures shall provide for proper evaluation of property transactions prior to their approval.

5.3.5.8    An updated listing of all real property held by or on behalf of Corporate Synod or agencies of Corporate Synod shall be presented for review by the Board annually at the Board's November meeting.

**5.3.6      Foreign Bank Accounts and Currency Transactions**

5.3.6.1    Each agency of Corporate Synod shall obtain the approval of the Synod Chief Financial Officer for opening any foreign bank accounts.

5.3.6.2    Each agency of Corporate Synod shall make any transfers, purchases, or sales of foreign currency through the Synod Chief Financial Officer, who must approve such transactions.

**5.3.7      Authorization to Deal in Securities**

5.3.7.1    Securities received in bequests, legacies, and gifts by an agency of the Synod, unless otherwise instructed by the donor, shall be sold at the earliest feasible time and at the highest price possible.

5.3.7.2    Securities transactions for Corporate Synod shall be executed by the Chief Financial Officer or his designee.

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

5.3.7.3    The Chief Financial Officer is authorized to open accounts with The Lutheran Church—Missouri Synod Foundation (LCMS Foundation) for purchasing and selling securities.

(a) The LCMS Foundation is authorized to act upon any orders and instructions with respect to such accounts received from the Synod Chief Financial Officer or his designee.

(b) The Chief Financial Officer shall use the LCMS Foundation for all securities transactions as stated in Bylaw 3.6.5 (legacies, bequests, devises, endowments, annuity gifts, and other trust funds) and other long-term investments.

5.3.7.4    The Chief Financial Officer may open other accounts for the purpose of trading in securities with the specific authorization of the Board and subject to regular reporting on the holdings therein to the Finance and Audit Committee of the Board.

**5.3.8       Expense Accounts**

All requests for reimbursement (travel expense reports, check requests, etc.) shall be approved by someone other than the payee. Reimbursement requests must be signed, prior to being paid, by the person responsible for the budgeted expense or his/her superior.

**5.3.9       Reimbursement; Compensation of Board, Commission, and Committee Members**

Corporate Synod and its agencies shall not compensate board, commission, and committee members but will reimburse them for reasonable travel, lodging, meals, and other incidental expenses with such service. Exceptions for pulpit or classroom or similar substitute workers must be approved by the governing board to which the board, commission, or committee is accountable.

## 5.4       Sharing of Financial Information

5.4.1.1    Each office of Corporate Synod shall promptly respond, within its area of responsibility, to requests for financial information in accordance with Bylaw 1.5.4 ("Full Financial Disclosure") and all other applicable bylaws.

5.4.1.2    In accordance with Bylaw 1.5.4 (b) and 1989 Res. 4-07A, there shall be published annually in an official periodical of the Synod:

(a) the salaries of elected officers of the Synod, as identified in Constitution Art. X A; and

(b) a notice indicating the availability, upon written request by a member of the Synod, the salary grid scale of all Synod and district officials, staff, and faculty members.

## 5.5       Insurance (Corporate Synod and Synod's Insurance Program)

5.5.1.1    The Chief Administrative Officer, in coordination with the Chief Financial Officer of the Synod, is responsible for establishing administrative policies and procedures for handling insurance matters.

5.5.1.2    In carrying out these responsibilities, the Chief Administrative Officer and Chief Financial Officer shall:

**The Lutheran Church—Missouri Synod**                    **Board of Directors Policy Manual**

    (a) Report to the Board all proposed changes to the type of insurance policies or minimum policy limits and maximum deductibles.

    (b) Maintain administrative policies and procedures for Corporate Synod regarding insurance matters. The policies shall include:

        (1) Reporting Litigation and Claims to Insurance Carriers. Definitions:

            (i) *Litigation*: Every proceeding in a court, administrative agency, regulatory agency, quasi-judicial agency, or other secular or governmental body, whether such court or agency be local, state, federal, or foreign, and including any arbitration proceeding.

            (ii) *Claim*: A demand for relief and every circumstance where litigation is anticipated or reasonably likely to ensue, and includes investigations by law enforcement agencies, administrative agencies or any other investigation where litigation could result.

        (2) Reporting circumstances that may lead to Litigation or Claims to insurance carriers and others.

    (c) Indemnification, including

        (1) Insured Claims — Indemnification of Deductible Amount

        (2) Uninsured Claims — Indemnification of District Presidents

        (3) Provisions and Conditions Applicable to Indemnification Provisions and Conditions Applicable to Indemnification

    (d) Maintain administrative policies and procedures for agencies of the Synod regarding insurance matters.

        (1) Reporting Litigation and Claims to Insurance Carriers

        (2) Reporting circumstances that may lead to Litigation or Claims to insurance carriers and others.

        (3) Indemnification

        (4) Insured Claims — Indemnification of Deductible Amount

        (5) Uninsured Claims — Indemnification of District Presidents

        (6) Provisions and Conditions Applicable to Indemnification Provisions and Conditions Applicable to Indemnification

| 5.6 | **Fund Raising (Corporate Synod and Subordinate Agencies)** |
|-----|---|

5.6.1.1    The Board believes that it is in the best interest of Corporate Synod and the agencies of Corporate Synod to work together to develop and administer fund-raising plans.

5.6.1.2    The Chief Mission Officer will supervise the fund-raising activity of the national office (Bylaw 3.4.3.6) according to the policies set forth herein, specifying processes and procedures as necessary for proper coordination and facilitation of desired fund-raising outcomes for all Corporate Synod mission and ministry functions.

The Lutheran Church—Missouri Synod                          Board of Directors Policy Manual

5.6.1.3      Each department and unit of Corporate Synod shall submit to the LCMS Chief Mission Officer, for his review and approval, all plans that include fund-raising activities or otherwise involve revenue from charitable contributions (gifts, grants, bequests).

5.6.1.4      There shall be no fundraising by departments, units, or employees of Corporate Synod unless first authorized by the Chief Mission Officer.

5.6.1.5      Donor and non-donor constituent records are the intellectual property of Corporate Synod and must not be sold, exchanged, used, or transferred to other agencies, entities, corporations, or individuals unless authorized by the Board of Directors.

5.6.1.6      Regular performance reports for Corporate Synod fundraising shall be provided by the Chief Mission Officer to the Synod Board of Directors.

5.6.1.7      Agencies seeking to use Corporate Synod fund-raising support services (and accompanying fund-raising communications services) must first obtain written agreement from the Chief Mission Officer.

## 5.6.2      Corporate Synod Fundraising Policy Manual

The Board has delegated to its Chief Administrative Officer the responsibility for assuring that appropriate fundraising practices are in place. In carrying out these responsibilities, the Chief Administrative Officer shall ensure that the Mission Advancement unit has a current and periodically reviewed fundraising policy manual that guides the fund-raising activities of Corporate Synod, its employees, contractors, and volunteers. Such policy manual shall be reviewed annually by the Chief Administrative Officer. Such manual shall include statements regarding:

(a)  Gift acceptance

(b)  Fundraising authority

(c)  Confidentiality of donor information

(d)  Honoring donor intent for restricted gifts

(e)  Compliance with generally accepted ethical fund-raising principles and practices

(f)  Internal performance reporting of gift activity

(g)  Conflict resolution

## 5.7      Legal and Governmental Matters

The Board has reserved for itself the approval of all legal policies but has delegated to its Chief Administrative Officer the responsibility for maintaining liaison with Synod's general counsel and for making certain legal decisions. In carrying out these responsibilities, the Chief Administrative Officer shall:

(a)  report to the Board any engagement of special counsel.

(b)  report to the Board the commencement of any litigation against the Synod.

(c)  report any litigation to the insurance carrier(s).

(d)  have the authority to approve individual legal claim settlements up to $100,000. Such settlement shall be done in consultation with the Chief Financial Officer.

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 276 of 365
Exhibit 5 to Defendants' Motion to Dismiss
Page 76 of 122

The Lutheran Church—Missouri Synod                    **Board of Directors Policy Manual**

    (e)  not respond to litigation in those areas reserved to the Executive Committee.

    (f)  report to the Board decisions to participate in legal proceedings as Amicus Curiae or in support of any member congregation.

    (g)  report to the Board the granting of any powers of attorney.

    (h)  implement administrative procedures for Corporate Synod regarding legal matters consonant with Board Policy concerning:

        (1)  Engagement of general and special legal counsel for the Synod

        (2)  Initiation of litigation by the Synod

        (3)  Responding to litigation brought against the Synod, including

        (4)  Reporting litigation to insurance carriers

        (5)  Reporting non-legal claims to insurance carriers

        (6)  Reporting claims that may lead to litigation

        (7)  Participation as amicus curiae

        (8)  Approval of limited powers of attorney for the Synod

        (9)  Approval of foreign corporations for mission purposes

    (i)  implement administrative procedures for agencies of the Synod regarding legal matters consonant with Board Policy concerning:

        (1)  Reporting of engagement of counsel for agencies of the Synod

        (2)  Initiating litigation by agencies of the Synod

        (3)  Responding to litigation brought against an agency of the Synod

        (4)  Reporting claims that may lead to litigation

    (j)  implement administrative procedures for Corporate Synod and agencies of the Synod consonant with Board Policy concerning:

        (1)  Contacts with Government Units

        (2)  Contacts with the Internal Revenue Service by Agencies of the Synod

        (3)  Approval of New Corporations as Agencies of the Synod

## 5.8     Human Resources Policies (Corporate Synod)

### 5.8.1     LCMS Department of Human Resources

5.8.1.1    The Chief Administrative Officer shall be responsible for the LCMS Department of Human Resources

5.8.1.2    The Executive Director of Human Resources shall be appointed by the Chief Administrative Officer, with input from the Human Resources Committee, and be directly responsible to the Chief Administrative Officer.

5.8.1.3    The Executive Director, on behalf of the Committee, may provide quarterly activity reports to the respective governing boards.

The Lutheran Church—Missouri Synod                              Board of Directors Policy Manual

*Corporate Synod Human Resources Policies*

5.8.1.4    Under the supervision of the Chief Administrative Officer and subject to the General Human Resources Policies of the Synod (Policy section 6.4) and Common Human Resource Policies (Policy section 4.19.2) the Department shall maintain detailed Human Resources Policies for Corporate Synod and its included and subordinate Agencies.

*Hiring Authority for Corporate Synod*

5.8.1.5    The LCMS Department of Human Resources is responsible for coordinating the hiring and termination of all employees of Corporate Synod in compliance with applicable Bylaws and Board Policy. All oral or written offers of employment, including called positions, shall be approved and normally conveyed by the LCMS Department of Human Resources.

## 5.9    Balances on Deposit with the Synod or with Synod's Designee

5.9.1.1    Assets of agencies of the Synod that are on deposit with Synod or its designee shall be administered as assets of its agencies by the Chief Financial Officer and/or Synod's designees.

5.9.1.2    Interest earned on donor-restricted gifts on temporary deposit with the Synod will not be restricted unless approved by the Board of Directors.

## 5.10    Record and Archive Management Policy

5.10.1.1    The Operations Team shall, in consultation with the Secretary, maintain the Record and Archive Management Policy for Corporate Synod, which shall establish guidelines, procedures and requirements for: (i) the retention and maintenance of Records; (ii) destruction of Records that do not need to be or no longer need to be retained; and (iii) ensuring that LCMS Employees understand their responsibilities concerning Record retention and destruction.

5.10.1.2    Such Policy shall be developed under procedures and guidelines established by the Department of Archives (Concordia Historical Institute) and supervised by it (Bylaw 3.6.2.2.1 [b–e]).

## 5.11    Monitoring

See Policy section 4.21.

| Section Revision History | |
|---|---|
| 2022.11.18 | § 5 – Comprehensive Revision |

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

---

## § 6          Management Policies for Synod and All Agencies

Unless otherwise specified, the following policies apply to:

(a)  Corporate Synod

(b)  Agencies of the Synod that are within or subordinate to Corporate Synod ("Agencies of Corporate Synod")

(c)  Agencies of the Synod that are outside of Corporate Synod ("Agencies outside Corporate Synod")

---

## 6.1          Board Authority to Set and Monitor Management Policies

6.1.1.1      The Board of Directors is the legal representative of the Synod. It is the custodian of all the property of the Synod, directly or by its delegation of such authority to an agency of the Synod. It exercises supervision over all the business affairs of the Synod except in those areas where the voting members of the Synod through the adoption of Bylaws or by other convention action have assigned specific areas of responsibility to separate corporate or trust entities, and as to those the Board of Directors has general oversight responsibility as set forth in the Bylaws. (Constitution Article XI, Bylaws 1.4.4–5, 3.3.4) In carrying out these responsibilities, and pursuant to Bylaw 3.3.4 the Board adopts common policies which apply to:

- Synod officers and staff
- Agencies of the Synod [Bylaw 1.2.1 (a)]
- Boards, offices, and commissions as defined in Bylaws 1.2.1
- Synodwide corporate entities as defined in Bylaw 1.2.1 (d)
- Concordia Plan Services
- Districts of the Synod
- Colleges, universities, and seminaries of the Synod

6.1.1.2      Bylaw 1.2.1 (a) provides that *agencies of the Synod* are those instrumentalities other than congregations and other than Corporate Synod itself, "whether or not separately incorporated, which the Synod in convention or its Board of Directors has caused or authorized to be formed to further the Synod's Objectives (Constitution Art. III)." Property held by agencies of the Synod, other than specifically allowed in Bylaw 1.2.1[r]), is property of the Synod. The Board has rights and responsibilities in regard to the legal and business matters of the agencies of the Synod, as well as the coordination of agency activities in furtherance of Synod's objectives. Agencies therefore have responsibilities under the Synod's Constitution and Bylaws and the Board's policies and directives, and to assist the Board in meaningfully fulfilling its responsibility of coordinating their activities.

---

## 6.2          Financial Misconduct

6.2.1.1      The Synod is committed to preventing, detecting and reporting fraud, and in cooperating with other organizations to reduce opportunities for fraud. The Synod and its agencies will manage the fraud risk by:

---

    (a) Defining, setting and maintaining cost-effective control procedures to identify and deter fraud;

    (b) Investigating all incidences of actual, attempted or suspected fraud, and all instances of major control breakdown;

    (c) Encouraging staff to be vigilant and raising fraud-awareness at all levels;

    (d) Ensuring key controls are complied with;

    (e) Providing staff with effective confidential reporting mechanisms and encouraging their use;

    (f) Taking action against individuals and organizations perpetrating fraud against the group and seeking restitution of any asset fraudulently obtained and the recovery of costs; and

    (g) Cooperating with the appropriate authorities in the investigation and prosecution of those suspected of fraud.

6.2.1.2    Each corporate agency of the Synod will develop a policy and procedure, including an annual employee acknowledgment, addressing financial misconduct. This policy must address the provisions identified in this Policy section 6.2.

## 6.3      Property Policies

### 6.3.1      Property Transactions

6.3.1.1    The Board "is the custodian of all of the property of the Synod, directly or by its delegation of such authority to an agency of the Synod. It shall exercise supervision over all the property and business affairs of the Synod except in those areas where it has delegated such authority to an agency of the Synod or where the voting members of the Synod through the adoption of bylaws or by other convention action have assigned specific areas of responsibility to separate corporate or trust entities, and as to those the Board of Directors shall have general oversight responsibility as set forth in the Bylaws" (Const. Art. XI E 2; see also Bylaws 1.4.4 and 3.3.4.7). Bylaw 1.1.1 (r) states: "Property of the Synod" includes all assets, real or personal, tangible or intangible, whether situated in the United States or elsewhere, titled or held in the name of the Synod, its nominee, or an agency of the Synod. Provided, however, "property of the Synod" does not include any assets held by an agency of the Synod in a fiduciary capacity (including, for purposes of example, the funds administered by Concordia Plan Services, the Lutheran Church Extension Fund—Missouri Synod and certain funds held by The Lutheran Church—Missouri Synod Foundation). Bylaw 3.3.4.7 provides that the Board:

    (a) Shall "delegate to District boards of directors the authority to buy, sell, and encumber real and personal property in the ordinary course of performing the functions which the District carries on for the Synod in accord with general policies (which shall be applicable to all Districts) established from time to time by itself or the Synod in convention"; and

    (b) "May…delegate to any agency of the Synod powers and duties with respect to the property of the Synod for which such agency of the Synod has direct supervisory responsibility": and

6.3.1.2   "Such delegation shall be in writing and shall be subject to change at any time by the Synod's Board of Directors provided that reasonable deliberations, as determined by the Board of Directors, take place with such agency prior to the change."

### 6.3.2   Property of Synod Held by Its Districts

6.3.2.1   Each District, being incorporated, shall hold title to property in its corporate name, except that securities may be registered in the name of a nominee.

6.3.2.2   The Board of Directors of each District shall be responsible for the supervision, management, and protection of District properties including insuring them in accordance with Policy 7.4.

6.3.2.3   A District may hold title to properties used by congregations or other entities. The District board of directors shall authorize any conveyance of such properties to the entities.

### 6.3.3   Property of Synod held by Colleges, Universities, and Seminaries as defined in Bylaw 1.2.1(r)

6.3.3.1   The Synod has delegated certain responsibilities, powers, and duties with respect to college and university properties to the Concordia University System (CUS) (Bylaw 3.6.6.5). Additionally, the Synod in Bylaws 3.10.5.5(i) and 3.10.6.4(i) has delegated other responsibilities for property to the respective boards of regents of the colleges, universities, and seminaries.

6.3.3.2   Property of the Synod held by its colleges, universities or seminaries shall be titled in the name of the respective institution, except that securities may be registered in the name of a nominee.

6.3.3.3   Each institution of higher education of the Synod shall hold title to properties presently owned or at any time hereafter acquired by it subject to a reversionary interest or possibility of reverter in favor of the Synod in such form and stating such conditions as shall be established by the Board of Directors of the Synod. (2004 Res. 4-04)

6.3.3.4   The board of regents and officers of each institution of higher education of the Synod shall, and are hereby directed to, take all actions and execute all deeds, resolutions, statements, and legal documents necessary to carry out the terms of 2004 Res. 4-04 where and to the extent permitted by law.

6.3.3.5   Each college, university, or seminary holds the property it owns as the legal and record titleholder of the property, in trust for the Synod. All property of the Synod titled in the name of the college, university, or seminary shall contain a reversionary clause or possibility of reverter conveying the property to the Synod upon closing, consolidation, or dissolution of the college, university, or seminary.

6.3.3.6   A college, university, or seminary may not encumber any property of the Synod titled in the name of the college, university, or seminary, whether by lien, easement, mortgage, restrictive covenant, or otherwise, without the prior, written consent of the Board of Directors of the Synod. When the Board of Directors of the Synod has authorized such encumbrance, the Chief Administrative Officer is hereby authorized, with the assistance of legal counsel, to execute such documents as are necessary to subordinate the Synod's reversionary interest or possibility of reverter to the interest of the party obtaining the encumbrance.

Exhibit 5 to Defendants' Motion to Dismiss  Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 281 of 365
Page 81 of 122

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

6.3.3.7     The board of regents of each college, university, and seminary shall be responsible for the supervision, management, and protection of the institution's properties, including insuring them to the degree that is adequate and commercially reasonable and at least equivalent to Synod's insurance program (Policy 7.4).

### Colleges and Universities of the Concordia University System

6.3.3.8     The Board, under a formal agreement with the Concordia University System (CUS) and through the approval of the bylaws of CUS, has delegated other property responsibilities to CUS.

6.3.3.9     The Board has retained certain oversight responsibilities of college and university properties as detailed in the formal agreement. The Board in the formal agreement has reserved for itself the following:

(a)  Approval, upon recommendation of the CUS, of changes to the master plan and facilities plan of the institution and the sale or disposal of any campus or part thereof beyond that specified in the Board's Policy Manual. After approval by the Board, the CUS is authorized to give final approval to the purchase, sale or demolition of land or facilities and shall report the same to the Board of Directors.

(b)  Annual summary capital budgets of the institutions, including the method of funding, prior to final action by the CUS. After such approval by the Board, the CUS is authorized to give final approval for the construction and remodeling of facilities.

(c)  Approval of any line of credit extended to CUS.

(d)  Approval of operational borrowing needs of the institutions if the amount exceeds 10 percent of the aggregate revenues or 15 percent of the revenues of any one institution.

### Synod Seminaries

6.3.3.10    Regarding the Seminaries, the Synod Board of Directors reserves for itself the following:

(a)  Approval, upon recommendation of the seminary board of regents, of changes to the master plan and facilities plan of the institution and the sale or disposal of any campus or part thereof beyond that specified in the Board's Policy Manual.

(b)  Approval of annual summary capital budgets of the institutions, including the method of funding, before final action by the seminary's board of regents. After such approval by the Synod Board of Directors, the seminary is authorized to begin construction and remodeling of facilities.

(c)  Approval of new lines of credit to the Seminaries, with the Chief Financial Officer authorized to renew lines of credit annually, reporting such to the Board and subject to the following reservation:

(d)  Approval of operational borrowing needs of the seminary, if the total operational borrowing of the seminary would exceed 15 percent of the revenues of the seminary.

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 282 of 365
Exhibit 5 to Defendants' Motion to Dismiss
Page 82 of 122

The Lutheran Church—Missouri Synod                        **Board of Directors Policy Manual**

| **6.3.4** | **Property of Synod Held by Synodwide Corporate Entities** |
|---|---|

6.3.4.1    Property of the Synod held by synodwide corporate entities shall be titled in the name of the respective entity.

6.3.4.2    The governing board of each entity shall be responsible for the supervision, management, and protection of the entity's properties including insuring them under the Synod's insurance program (Policy 7.4).

6.3.4.3    The Board under a formal agreement with each entity has delegated other property responsibilities to the board of that entity while retaining certain oversight responsibilities.

6.3.4.4    The Board in the formal agreement has reserved for itself the final approval of the purchase, sale, or financing of real property. (NOTE: formal agreements need to be developed with CPH, CHI, and the Foundation.)

6.3.4.5    Synodwide corporate entities shall consult with the Synod's Board of Directors prior to making any grants to or for the mission offices or commissions of Corporate Synod.

| **6.3.5** | **Titles and Deeds** |
|---|---|

6.3.5.1    Contracts for the purchase of property shall be conditioned upon the agency being able to obtain a title insurance policy from a satisfactory title insurance company. If the agency is a component of Corporate Synod, then Corporate Synod must be able to obtain a title insurance policy from a satisfactory title insurance company.

6.3.5.2    Before closing the purchase, a title report or binder for title insurance shall have been obtained.

6.3.5.3    The title report shall show that fee simple title to the property will be vested in the agency or, in the case of a Corporate Synod agency, with Corporate Synod upon delivery and recording of the deed and that such title will be free and clear of liens, encumbrances and restrictions except for taxes, easements and other restrictions acceptable to the officers of the agency or the Synod Chief Financial Officer, as appropriate.

6.3.5.4    Property shall be conveyed to the agency or, in the case of a Corporate Synod agency, to Corporate Synod by warranty deed if possible. Otherwise, deeds appropriate to the circumstance may be used.

| **6.3.6** | **Appraisals** |
|---|---|

6.3.6.1    Agencies shall obtain appraisals from recognized appraisers, MAI, or equivalent, on the purchase and sale of all real estate.

6.3.6.2    A copy of the appraisal shall be provided to the Chief Financial Officer on all transactions requiring Synod Board of Directors' approval.

| **6.3.7** | **Non-Synod Tenants** |
|---|---|

6.3.7.1    Agencies of the Synod may lease, rent or otherwise grant a right of use of real property to non-synod tenants as long as the activities of such tenants can be clearly distinguished from those of the agency.

6.3.7.2    The use of property by a non-Synod tenant shall be evidenced by a written agreement which shall include the intended use, evidence of liability insurance, and provision to

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 283 of 365
Exhibit 5 to Defendants' Motion to Dismiss
Page 83 of 122

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

indemnify and hold harmless the agency and the Synod at the non-Synod tenant's expense (including all related costs and attorney fees) from any damages, actions, claims or proceedings arising out of or resulting from the permitted use.

### 6.3.8    Guarantees of Indebtedness

6.3.8.1    Agencies of the Synod shall not guarantee the indebtedness of others without prior approval of the Synod's Board of Directors.

6.3.8.2    Contingent liabilities resulting from delinquencies in the repayment of guaranteed indebtedness shall be reported on a timely basis to the agency's governing board and the Synod's Chief Financial Officer.

6.3.8.3    Corporate Synod shall not guarantee any debt other than debt for Corporate Synod. Agencies that get into financial hardship due to excessive debt shall first be directed to LCEF for debt and business plan restructuring. If LCEF determines that a restructuring plan is not feasible, the Synod Board of Directors will ordinarily require the agency to liquidate the assets used to secure the debt.

6.3.8.4    This policy shall not apply to guarantees of the indebtedness of others made by The Lutheran Church Extension Fund (LCEF) in the normal course of LCEF business.

### 6.3.9    Use of LCEF Assets

6.3.9.1    Pursuant to Bylaw 3.6.4.4.1 and Article Fourth of The Lutheran Church Extension Fund—Missouri Synod Articles of Incorporation, The Lutheran Church Extension Fund—Missouri Synod may use The Lutheran Church Extension Fund—Missouri Synod assets for purposes in addition to those specifically listed in the Synod Bylaws and The Lutheran Church Extension Fund—Missouri Synod Articles provided that such use is consistent with the ministry and mission of the Synod and the Board of Directors of The Lutheran Church Extension Fund—Missouri Synod and The Lutheran Church—Missouri Synod Board of Directors have approved such use.

## 6.4    General Human Resource Policies of the Synod

6.4.1.1    The Board sets forth the following general human resource policies as provided for under Bylaws 1.5.5 and 3.3.4.3.

### 6.4.2    Compliance with Human Resources Requirements

6.4.2.1    Agencies of the Synod shall maintain a human resources policy manual including at least:

(a) Statements of compliance with all applicable local, state, and federal requirements

(b) Policies and procedures regarding employment, transfer, and termination, rights and responsibilities of employees, consideration of grievances, disclosure of conflicts of interest (Bylaw 1.5.2), working conditions, salary administration, and benefits provided, to be summarized as appropriate in an employee handbook.

(c) Provisions for current position descriptions for each employee.

6.4.2.2    Agencies' human resources manuals shall not violate federal or state laws, the Constitution or Bylaws of the Synod, policies of the Synod Board of Directors, or policies of the Committee for Human Resources applicable to other agencies of the Synod.

The Lutheran Church—Missouri Synod                                    Board of Directors Policy Manual

### 6.4.3        Salary Administration

6.4.3.1        Each incorporated agency of the Synod shall maintain salary administration policies which attract competent employees, retain qualified and seasoned employees, assure equitable and uniform treatment of all comparable positions, provide suitable incentive for performance and personal development and at the same time practice the highest degree of stewardship with the financial and the human resources available for the work.

6.4.3.2        Salary categories shall be established which reflect levels of experience, relevant education, responsibilities, and complexity.

6.4.3.3        Salary ranges shall be established which shall afford the opportunity for the recognition of the quality of work and level of performance and which take into account the wage and salary practices in local public and private employment, the congregations, districts, and related agencies of the Synod, and similar operations of other church bodies.

### 6.4.4        Board/Commission and Executive Relationship

6.4.4.1        The board or commission of each agency of the Synod retains all its authority under the Synod's Constitution and Bylaws. For those agencies which have an executive director/officer, the board or commission of that agency may delegate to its executive the exercise of aspects of its authority. Each board or commission of an agency of the Synod having an executive will establish written policies which enumerate the specific authority delegated to the executive and the limitations placed on that authority.

6.4.4.2        For those agencies which have an executive director or executive officer.

(a)  Each agency shall maintain a policy manual.

(b)  A position description and policies defining the responsibilities of its executive officer and the relationship of the executive officer to the board or commission of the agency must be contained in the policy manual. Such policies shall also provide for the monitoring of management.

(c)  The board or commission shall not assign or delegate to its executive officer responsibilities reserved in the Synod's Constitution or Bylaws to the Board or assigned to committees, other Synod agencies, or officers.

6.4.4.3        The board or commission shall exercise its governing authority as a whole. No individual member may exercise such authority except as instructed by the board or commission.

6.4.4.4        The board or commission shall normally access employees of the agency only through its chief executive or executive director.

6.4.4.5        While the chief executive (as defined in Bylaw 1.2.1(b) or executive director is primarily accountable to the agency by virtue of the position, the chief executive or executive director makes regular reports to the President of the Synod who under Constitution Article XI B has supervision regarding the doctrine and the administration of "all such as are employed by the Synod" and under Bylaw 3.3.1.1 shall "oversee the activities of all officers, executives, and agencies of the Synod to see to it that they are in accordance with the Constitution, Bylaws, and resolutions of the Synod."

6.4.4.6        The Synod's Board of Directors, in fulfilling its oversight responsibilities, may request reports from and/or appearances before the board of any agency through the chairman and/or the chief executive of the agency of the Synod.

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

6.4.4.7    The Synod's Board of Directors' policies regarding its responsibilities, relationships with its executive officer (Chief Administrative Officer) and executive limitations appearing in Sections 2, 3 and 4 of Board Policy may be used as a guide by the boards and commissions of other agencies in setting their policies.

**6.4.5**    **Calling, Appointing and Employing Staff**

*Appointing the Chief Executive of a Synodwide Corporate / Trust Entity or an Executive Director of a Corporate Synod Agency*

6.4.5.1    The chief executive or unit executive for each board, commission, or synodwide corporate entity shall be a member of a member congregation of the Synod and shall be appointed in accordance with appropriate Bylaw:

- Chief Executive Officer, Synodwide Corporate / Trust Entity: Bylaws 3.6.1.5, 3.7.1.5; 3.3.1.3 (f)

- Executive Director, Mission Office of the Synod:  Bylaw 3.3.1.3 (e)

- Executive Director, Commission on Theology and Church Relations: Bylaw 3.9.5.3.1

- Generally, Bylaws 1.5.5–1.5.5.1; 3.3.1.3 (c–g); 3.11.1

In meeting the bylaw requirements, the procedure below shall be followed:

6.4.5.2    The board, commission, or entity shall review and, if necessary, update the position description for the chief executive or unit executive; it shall then be forwarded to the President for his review and input prior to being sent to the respective agency's Executive Director of Human Resources for legal review and salary administration.

6.4.5.3    A list of candidates for the position shall be gathered by the respective agency's Department of Human Resources as determined by the board, commission, or synodwide corporate entity.

6.4.5.4    The board, commission, or synodwide corporate entity shall review the complete list, in consultation with the President of the Synod, and notify its Executive Director of Human Resources of the candidates proposed to be interviewed.

6.4.5.5    The list of candidates shall then be forwarded to the President of the Synod for his concurrence. The President and board or commission shall engage in dialogue as necessary, acting expeditiously and responsibly, within their respective duties and in the interest of the Synod (Bylaw 1.5.2 [b]), to jointly construct a mutually agreeable slate of candidates (CCM Op. 21-2970) from which the appointment is to be made. In this process they shall be aided by the respective Department of Human Resources.

6.4.5.6    The President or the President's designated representative, normally a full-time elected officer, may participate in any candidate interviews, which shall include at least two designated members of the calling board or commission, and make appropriate recommendations to the calling body.

6.4.5.7    In the case of a Synodwide Corporate/Trust Entity or Commission, the board or commission appoints from the selected slate; in the case of a Mission Office of the Synod, the President appoints from the selected slate of candidates.

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 286 of 365
Exhibit 5 to Defendants' Motion to Dismiss
Page 86 of 122

**The Lutheran Church—Missouri Synod**                    **Board of Directors Policy Manual**

6.4.5.8     The details of the appointment, including salary, benefits, and all other employment details must be reviewed and approved by the Executive Director for Human Resources of the applicable agency for compliance with the agency's personnel policies and practices prior to the extension of any offer of employment or any call to an appointee.

6.4.5.9     If the board, commission, or President is not led to appoint, the board or commission may, in consultation with the President, take measures to review the original list of candidates to identify additional candidates for interviews or request that additional candidates be gathered from the field through the Department of Human Resources of the calling agency. In either case, the appropriate provisions of this policy must be applied.

6.4.5.10     Members of the Synod appointed to a position requiring an ordained minister or a commissioned minister shall receive a solemn call. Other ordained or commissioned ministers appointed to positions in the Synod shall be affirmed by the respective board or commission through a solemn call.

6.4.5.11     The chairman of the board or commission and (in the case of boards or commissions of Corporate Synod, the Secretary of the Synod) shall sign appointment and any call documents on behalf of that board, commission, or synodwide corporate entity after following established Synod and corporate policies in the selection of the person to be called or appointed. All such documents, including attachments and salary, shall be approved by the Executive Director of Human Resources prior to being sent.

6.4.5.12     Confidential information provided about nominees shall not be made available to the nominees.

### *Synodwide Corporate Entities Calling and Appointing Staff to Positions Requiring an Ordained or Commissioned Minister of Religion*

6.4.5.13     In accordance with Bylaw 3.11.1, all positions requiring called ministers shall be filled in consultation with the President of the Synod subject to all appropriate provisions of the Constitution and Bylaws and other policies that apply. Unless otherwise specified by the board of the respective corporate entity, all employees serve at the pleasure of the appointing authorities.

### *Calling and Appointing Senior Staff of Mission Offices and Commissions*

6.4.5.14     Each person in senior staff positions of mission offices and commissions (executive directors and directors) shall be a member of a congregation of the Synod and shall be appointed in consultation with the President of the Synod according to corporate synod human resources policy. (See Bylaw section 3.11)

6.4.5.15     The following procedures shall be followed:

6.4.5.16     A position description shall be forwarded to the President for his consultation prior to being sent to the Executive Director of Human Resources for legal review and salary administration.

6.4.5.17     At a time determined by the leadership of the office or commission, a list of candidates for the position shall be gathered by the Department of Human Resources according to standard HR procedures.

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

6.4.5.18      The leadership of the office or commission shall review the complete list and notify the executive director of human resources of the candidates to be interviewed.

6.4.5.19      The list of candidates shall then be forwarded by human resources to the President of the Synod for consultation.

6.4.5.20      The President or the President's designated representative, normally a full-time elected officer, may participate in the interview.

6.4.5.21      If the office or commission is led to extend an appointment or a call, it shall make its selection from the candidates interviewed and extend the appointment or call. The details of the appointment or call, including salary, benefits, and all other employment details must be reviewed and approved by the Executive Director of Human Resources for compliance with International Center personnel policies and practices prior to the extension of the appointment or call.

6.4.5.22      If the office or commission is not led to extend an appointment or call, it may ask the screening committee to review the original slate of candidates to identify additional candidates for interviews or request additional candidates be gathered from the field through the Department of Human Resources. In either case, the appropriate provisions of this policy shall be applied.

6.4.5.23      Members of the Synod appointed to a position requiring an ordained minister or a commissioned minister shall receive a solemn call. Other ordained or commissioned ministers appointed to positions in the Synod shall be affirmed by the respective board or commission through a solemn call.

6.4.5.24      The principal staff person of a commission shall sign call and appointment documents on behalf of that commission after following established Synod policies in the selection of the person to be called or appointed. All such documents, including attachments and salary, shall be approved by the executive director of Human Resources prior to being sent.

6.4.5.25      Confidential information provided about nominees shall not be made available to the nominees.

**6.4.6**          **Housing and Moving Assistance by Synodwide Agencies**

Each synodwide board or commission may provide new employees or transferred employees in the exempt classifications relocation assistance under the policies of the Human Resources Committee.

**6.4.7**          **The Acceptance of Gifts, Entertainment, or Favors**

6.4.7.1       The acceptance of gifts, entertainment, or favors from any individual or outside concern which does or is seeking to do business with the Synod or the agencies of the Synod.

*Acceptance of Gifts*

6.4.7.2       Each agency of the Synod and Corporate Synod shall maintain a policy regarding the acceptance of gifts, entertainment, or favors from any individual or outside concern which does or is seeking to do business with the Synod or the agency which at a minimum complies with the following:

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 288 of 365
Exhibit 5 to Defendants' Motion to Dismiss
Page 88 of 122

The Lutheran Church—Missouri Synod                     Board of Directors Policy Manual

6.4.7.3    Employees who are offered gifts, entertainment, or favors because of their positions should not feel any entitlement to accept and keep such business courtesies. Although the individual may not use his/her position to obtain business courtesies, and must never ask for them, he/she may accept unsolicited business courtesies that promote successful working relationships and goodwill with the firms that Synod or the Synod agency maintain or may establish a business relationship with.

6.4.7.4    Employees who award contracts or who can influence the allocation of business, who create specifications that result in the placement of business or who participate in the negotiation of contracts must be particularly careful to avoid actions that create the appearance of favoritism or that may adversely affect the Synod's and/or the Synod agency's reputation for impartiality and fair dealing. The prudent course is to refuse a courtesy from a supplier when involved in choosing or reconfirming a supplier or under circumstances that would create an impression that offering courtesies are the way to obtain the business.

### Meals, Refreshments, and Entertainment

6.4.7.5    Employees may accept occasional meals, refreshments, entertainment, and similar business courtesies that are shared with the person who has offered to pay for the meal or entertainment provided that:

(a)  They are not inappropriately lavish, unethical, or excessive.

(b)  The courtesies are not frequent (more than three per year) and do not reflect a pattern of frequent acceptance of courtesies from the same person or entity.

(c)  The courtesy does not create the appearance of an attempt to influence business decisions, such as accepting courtesies or entertainment from a supplier whose contract is expiring in the near future.

(d)  The employee accepting the business courtesy would not feel uncomfortable discussing the courtesy with his or her manager or co-worker or having the courtesies known by the public.

### 6.4.8    Accommodation Employment

6.4.8.1    An agency of the Synod shall not extend or maintain "status calls" or otherwise engage in arrangements of "accommodation employment."

6.4.8.2    A "status call" or "accommodation employment" is defined as a call and/or arrangement by which an individual is engaged (other than through written arrangements declaring the person to be an independent contractor) under conditions by which the individual is not directly or regularly accountable to the governing board or commission or executive officer of the agency or a full-time person who is so directly responsible.

6.4.8.3    This policy shall not include those who are directly accountable to the federal, state, or local municipal government to the extent that ecclesiastical endorsement is necessary as to a person holding such position with the government.

## 6.5    Ownership and Management of Lists

6.5.1.1    The two-fold goal of keeping lists is to enhance overall Synod communication and meet regulatory requirements while protecting individual privacy as requested.

Exhibit 5 to Defendants' Motion to Dismiss
Page 89 of 122

The Lutheran Church—Missouri Synod                    **Board of Directors Policy Manual**

| 6.5.2 | Gathering of Lists |
|---|---|

6.5.2.1    Lists are the property of the Synod. This includes all lists created by the Synod or any one of its agencies (Const. Art. IV and XI E 2). All lists are to be used for the benefit of the Synod and its agencies.

6.5.2.2    The Synod Board of Directors is custodian (Bylaw 3.3.4.7) of all lists and delegates the management of lists according to these policies while maintaining ultimate authority over and responsibility for lists.

6.5.2.3    Lists created independently by synodwide corporate entities, while still the property of the Synod, will be supervised and managed by those entities.

| 6.5.3 | Management of Lists |
|---|---|

6.5.3.1    Lists of the membership of the Synod, convention delegates, elected and appointed leaders, and other volunteers of Synod agencies are the responsibility of the Secretary of the Synod.

6.5.3.2    The Rosters and Statistics Unit of Corporate Synod shall gather and maintain the mailing list of all Synod members, both voting and individual, on behalf of the Secretary.

6.5.3.3    As the list of members of the Synod is a public record, the Secretary of the Synod may allow the use of this list for outside entities as long as the Synod is fully reimbursed for its costs and effort and such use is in the Synod's interest.

6.5.3.4    Lists of subscribers for periodicals and electronic news networks are the responsibility of the LCMS Communications Department.

6.5.3.5    The Office of Rosters and Statistics Unit shall also gather a list of other professional workers in the Synod and lay leaders in the congregations including the chairman of the congregation, the chairman of the Elders, and the chairpersons of the ministry areas. This list shall be gathered with the understanding that it is for the use of the Synod and will not be limited to the mailing of Reporter.

6.5.3.6    The *Lutheran Witness* list may require additional privacy considerations and will be governed by the LCMS Communications Department policies regarding management of the *Lutheran Witness* list.

6.5.3.7    Lists of donors to Corporate Synod or its agencies (the "national office") are the responsibility of Mission Advancement (Policy 5.6).

6.5.3.8    Such lists are the intellectual property of Corporate Synod and shall be handled in accordance with Policy 5.6.1.5.

6.5.3.9    Agencies shall not fail to report the use of LCMS donor lists by non-Synod entities to the LCMS Board of Directors.

6.5.3.10   Other lists – Synod employees, vendors, youth, etc., will be governed by the board of the agency maintaining or responsible for the list, with the understanding that lists should be shared whenever possible within the Synod to facilitate communication. As custodian of the lists, the LCMS Board of Directors, through the Chief Administrative Officer, will settle disputes regarding lists between agencies.

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

| 6.6 | Contacts with the News Media |
|---|---|

6.6.1.1    Bylaw 3.4.3.7 provides for the President through the Chief Mission Officer to "supervise the content of communications, public relations, and news and information provided by the Synod". Agencies are encouraged to contact the LCMS Communications Department on topics or events where media coverage is desired.

6.6.1.2    The Executive Director the LCMS Communications Department, or his designated representative, shall normally be the initial and primary contact with the public news media.

6.6.1.3    The executive officer of each agency, or designated representative, shall be the chief spokesperson regarding the work of the agency or one of its departments. In communicating synodwide policies and positions, the Synod President, or his designated representative, shall be the chief spokesperson. The executive officers and Synod President will normally work with the staff of the LCMS Communications Department when addressing the public news media.

6.6.1.4    Each agency shall advise the LCMS Communications Department staff of situations, both positive and negative, that could bring questions from the media. Communication Services will assist, as requested, in addressing the situation.

| 6.7 | Use of Synod Logo |
|---|---|

6.7.1.1    The Synod's tri-partite cross logo is a legal, trademarked symbol of The Lutheran Church—Missouri Synod. It may be used only by authorized organizations in a manner consistent with the terms and conditions in the Synod's Graphic Standards Manual published by the LCMS Communications Department and available at lcms.org/logos.

6.7.1.2    Changes to the terms and conditions documents governing the use of the Synod's registered mark(s) shall be approved by the CAO in consultation with legal counsel.

6.7.1.3    All decisions as to other use of the logo and the interpretation of this policy shall be made by the Chief Administrative Officer in consultation with the Executive Director of the LCMS Communications Department and Synod's legal counsel, as necessary.

6.7.1.4    The Chief Administrative Officer in consultation with the Executive Director of the LCMS Communications Department and Synod's legal counsel, as necessary, shall actively object to any unauthorized use of the logo and, where appropriate, take action to prevent any continued unauthorized use.

| 6.8 | The LCMS Website and Internet Presence |
|---|---|

6.8.1.1    The Lutheran Church—Missouri Synod website shall serve as an instrument for carrying out the Synod's objectives as stated in Article III of its Constitution. The following websites may be linked to the LCMS website in accordance with LCMS Internet policies.

6.8.1.2    Each mission office and commission shall maintain a web section (sub-domain) that is an integral component of the lcms.org website. The Internet presence of all mission offices and commissions shall be part (sub-domains) of lcms.org. (In rare instances, specific, unique target audience and business circumstances may require an exception.)

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

6.8.1.3       All other agencies of the Synod shall have a website that shall be linked to the Synod's website.

6.8.1.4       Each agency's web page should indicate that the agency is an agency of the Synod, display a copyright symbol, and show the date the agency created the current version.

6.8.1.5       Each member congregation of the Synod is encouraged to have a home page and link it to the Synod's website.

6.8.1.6       Auxiliaries and Recognized Service Organizations of the Synod and other organizations linked to the agencies of the Synod through programs or financial support may, by mutual consent, be linked to the Synod's website.

6.8.1.7       Church bodies that are part of the International Lutheran Conference or who are in altar and pulpit fellowship with The Lutheran Church—Missouri Synod may, by mutual consent, be linked to the Synod's website

6.8.1.8       Individuals and non-affiliated commercial organizations shall not be linked to the Synod's website.

6.8.1.9       Synod may remove the links to and from its website for any organization which takes positions contrary to the doctrine and practice of The Lutheran Church—Missouri Synod. Links to external websites are to be jointly monitored by the LCMS Communications Department and the department, mission office, or commission of Synod on which the link appears. Special requests for removal shall come through an officer or district of the Synod and shall be directed to the LCMS Communications Department.

6.8.1.10      Each agency of the Synod shall conform to the following requirements regarding the display and dissemination of information it publishes on the Internet.

6.8.1.11      Each document shall be displayed in its entirety or state which part(s) of the publication is/are being displayed.

6.8.1.12      Each display shall include copyright and/or trademark symbol if applicable and describe any restrictions on the use of the displayed information. Any agency using copyrighted material not created in the agency shall obtain approval for its display in accordance with the Copyright Act of 1976. Questions should be directed to the Executive Director of Communications or to the Synod's Chief Administrative Officer.

6.8.1.13      The display of official information published by the Synod shall provide a proper bibliographic citation which includes the issuing agency, the agency's location, the official date of the publication of the document, and where authorized paper copies if they exist, may be obtained.

6.8.1.14      Forums, blogs, chat rooms, and other Internet discussions, whether mediated or non-mediated, shall include a disclaimer in the introductory material stating that opinions expressed are personal opinions and do not necessarily represent the official opinion of the Synod.

6.8.1.15      The LCMS Communications Department shall be responsible for maintaining the Synod's web presence. The LCMS Information Technology Department shall provide technical services and support to the LCMS Communications Department according to Corporate Synod technology policies. The Chief Administrative Officer shall be responsible for interpreting and administering this policy.

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

| 6.9 | Special Emphasis Observances |
|---|---|

6.9.1.1    Special emphasis days, weeks, months, or Sundays to be observed by more than one district of the Synod shall be authorized by the Administrative Team of the Synod upon recommendation of the interested board, commission, or agency of the Synod. These observance requests include departments within Corporate Synod and agencies of the Synod. Recognized Service Organizations and auxiliaries who seek to have their observances recognized by the Synod must notify the LCMS Communications Department according to the dates and process outlined below.

6.9.1.2    Requests for special observances shall be submitted to LCMS's executive director of Communications no later than January 15 of each year. Such requests should include those observances desired during the upcoming July 1 through June 30 time period. The Communications Department will consolidate the requests into a calendar for recommendation to The Administrative Team. Such recommendations shall be directed to the Chief Administrative Officer for presentation to the Administrative Team. In accordance with the requests of prior conventions, special emphasis observations should be held to a minimum and, where possible, be in harmony with the liturgical church year. Requests for special observance should include the number of years for which the observance is desired, up to three years. There is no limit to the number of times an observance can be recognized as long as a new request is presented for consideration.

6.9.1.3    Worship materials for special observances shall be approved by LCMS Worship Department and the Commission on Doctrinal Review (Bylaw 1.9.1.1) prior to printing.

6.9.1.4    A listing of special observances for the year shall be maintained and publicized by the Synod's Communication Department.

| 6.10 | Contacts with Government Offices (Synod and All Agencies) |
|---|---|

| 6.10.1 | Contacts with Government Units (Other than the Internal Revenue Service) by the Synod and its Agencies |
|---|---|

6.10.1.1    The Commission on Theology and Church Relations' report on "A Lutheran View of Church and State" provides guidance in relating to the Government. The following policy for contacts with Governmental units applies to all agencies of Synod:

    (a) Officers and agencies of Synod, except the President of Synod or his designee, shall not communicate official positions of the Synod to governmental units (except the IRS as outlined below).

    (b) All official statements shall be reported to the LCMS Board of Directors.

    (c) Individuals, members of Synod, membership organizations that Synod belongs to or supports shall not use or associate, in any way the name of The Lutheran Church—Missouri Synod with any policy statement or position.

    (d) Members of Synod and membership organizations to which the Synod belongs shall not act contrary to the doctrine and position statements of the Synod.

| 6.10.2 | Contacts with the Internal Revenue Service by the Synod and Its Agencies |
|---|---|

6.10.2.1    The Board believes it is in the best interest of The Lutheran Church—Missouri Synod and all agencies of the Synod that there be uniformity and careful planning in connection with

Exhibit 5 to Defendants' Motion to Dismiss
Page 93 of 122
Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 293 of 365

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

any contact with the Internal Revenue Service, both at the district and national levels of the Internal Revenue Service. The following policy applies to all agencies of the Synod:

(a) There shall be no contact with any office of the Internal Revenue Service on behalf of the Synod or any agency of the Synod, on any matter whatsoever, without authorization from Synod's general legal counsel, except for Synod's Accounting Department, which will control contacts with the Internal Revenue Service for tax and other matters as agreed upon with the Synod's general legal counsel.

(b) Each approval granted by Synod's general counsel and all important developments shall be reported in the general counsel's quarterly report to the Board. The Executive Director of Accounting will report all important contacts and other developments under the supervision of the Accounting Department in the Accounting Department's Quarterly Report to the Board.

## 6.11    Contacts with the Internal Revenue Service, Congregations and Agencies of the Synod

Services of the Synod's Executive Director of Accounting and staff of the Accounting Department shall be available to congregations and agencies of the Synod when they are contacting or being contacted by the Internal Revenue Service.

## 6.12    Approval of New Corporations as Agencies of the Synod

6.12.1.1    To provide safeguards for the whole Synod while at the same time considering the rights of the districts, seminaries, colleges, and other corporations constituting a part of the Synod (Agencies of the Synod), the Synod in Convention has adopted resolutions which provide directives regarding the creation of new corporations (primarily 1981 Res. 5-07, 2016 Res. 9-02A).

6.12.1.2    Districts, seminaries, colleges and universities and all other corporations constituting a part of the Synod and seeking to establish or utilize another or added corporations for the purpose of carrying on their prescribed activities and responsibilities shall first obtain authorization from the Synod in convention or from the Synod's Board of Directors.

6.12.1.3    Requests for authorization, other than an authorization for the incorporation of a church extension fund of a district, shall be considered when the district, seminary, college, university, or other corporation constituting a part of the Synod follows the procedures outlined, namely:

(a) The petitioning agency shall submit to the Synod's Board of Directors a copy of the proposed Articles of Incorporation and Bylaws of the proposed new corporation together with the date when such new corporation will begin to function. The petitioning agency shall describe the way in which this new corporation will aid in carrying out the petitioning agency's responsibilities. All assumptions pertaining to legal matters shall be accompanied by legal opinion.

(b) The district, seminary, college, university, or other corporation of the Synod or the Board of Directors of any such agency shall be the sole member(s) of the new corporation.

(c)  Notwithstanding anything in the Bylaws to the contrary, the Articles of Incorporation or other governing documents of each agency shall provide:

(1)  That all provisions of its Articles of Incorporation and Bylaws are subject to the provisions of the Constitution, the Bylaws, and the resolutions of the Synod in convention; and

(2)  That in the event of dissolution other than by direction from the Synod in convention, the assets of such agency, subject to its liabilities, shall be transferred, consistent with applicable state and federal laws, as follows:

(i)  In the case of synodwide corporate entity, district, university, college, or seminary, to The Lutheran Church—Missouri Synod as may be more specifically described elsewhere in the Bylaws;

(ii)  In the case of a corporation formed by an agency (as defined in these [Synod] Bylaws), to the agency that formed the dissolving corporation, or if such forming agency is not then in existence, to The Lutheran Church—Missouri Synod itself.

An agency may submit any concerns related to the inclusion of the above language in its governing documents to the Board of Directors of Synod, and the Board of Directors may determine to permit the removal or modification of these provisions for an affected agency.

(d)  The Articles of Incorporation and Bylaws of the new corporation shall provide that the Board, officers, and all employees and agents of the corporation, as well as the activities of the corporation, are subject to the Bylaws and resolutions adopted by the Synod in convention, and that all of their provisions as to the supervision or coordination of personal or activities will be applicable to the new corporation to the same extent as if they were directly those of the new corporation.

(e)  The Bylaws of the new corporation shall provide that its assets are "property of the Synod" as that term is defined in, and to the extent and for the purposes established in, the Bylaws of The Lutheran Church—Missouri, as the same may be changed from time to time.

(f)  The Bylaws of the corporation shall provide that minutes of its Board of Directors or other governing board, and regular independently audited financial statements, shall be promptly furnished to the Board of Directors of the appropriate district, seminary, college, university, or other corporation of the Synod. The Bylaws of the district, seminary, college, university, or other corporation of the Synod shall require its Board of Directors to review and to appropriately respond to the content of those minutes and financial statements.

6.12.1.4    Request for authorization of the incorporation of a church extension fund (CEF) of a district shall be considered when the district complies the following:

(a)  The district shall submit to the Synod's Board of Directors a copy of the proposed Articles of Incorporation and Bylaws of the CEF corporation, together with the date when such new corporation shall begin to function.

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

(b) The district shall maintain membership control over the proposed CEF corporation by one of the following means.

(1) The district shall be named as the sole member of the CEF corporation;

(2) The District Board of Directors and/or elected officers of the district shall be the sole members of the CEF corporation; or

(3) The member congregations of the district shall be the sole members of the CEF corporation.

(c) Notwithstanding anything in the Bylaws to the contrary, the Articles of Incorporation or other governments of each CEF shall provide:

(1) That all provisions of its Articles of Incorporation and Bylaws are subject to the provisions of the Constitution, the Bylaws, and the resolutions of the Synod in convention; and

(2) That in the event of dissolution other than by direction from the Synod in convention, the assets of the CEF, subject to its liabilities, shall be transferred, consistent with applicable state and federal laws, to the district that formed the dissolving CEF, or if such forming district is not then in existence, to The Lutheran Church—Missouri Synod itself.

(d) An agency may submit any concerns related to the inclusion of the above language in its governing documents to the Board of Directors of the Synod, and the Board of Directors may determine to permit the removal or modification of these provisions for an affected agency.

(e) The Articles of Incorporation of the proposed CEF corporation shall provide that the corporation shall be operated in accordance with the Constitution and Bylaws of The Lutheran Church—Missouri Synod.

(f) The Bylaws of the proposed CEF corporation shall provide that the corporation is finally accountable to the district, that periodic financial reports, including independently audited financial statements, shall be promptly delivered to the Board of Directors of the district.

6.12.1.5    Failure to comply with the above procedures and to receive permission from the Synod in convention or from the Board of Directors to establish or utilize new corporations shall be treated as not a part of the Synod for legal and tax purposes.

## 6.13        Approval of Foreign Corporations for Mission Purposes

6.13.1.1    The Synod has found it necessary, for the purpose of gaining entrance to and operating in certain foreign countries, to establish legal entities, usually corporations, under the laws of the countries in which it seeks to conduct mission activities. The establishment of such corporations is not only necessary but also often appropriate to the mission operations of the Synod in foreign countries. If the Synod were to operate without the benefit of a corporation in a foreign country, it could be exposed to a legal liability resulting from its activities. In addition, it is often necessary for the ownership of property in a foreign country that a legal entity in that country be established.

Exhibit 5 to Defendants' Motion to Dismiss
Page 96 of 122

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

6.13.1.2    The Board, on the recommendation of the Chief Administrative Officer, in coordination with the Chief Mission Officer shall authorize and approve the creation of legal entities in foreign countries, as it deems necessary or appropriate, for the purpose of establishing, facilitating, and/or operating foreign missions.

6.13.1.3    Prior to the establishment of each foreign corporation, the Chief Administrative Officer shall provide the Board with appropriate assurances of the following:

(a)    That each such corporation, when established, shall be a properly authorized, valid and operating legal entity within the country in which it is established and that its establishment and operation by the Synod will not violate the laws of that country, as evidenced by an opinion of local or special counsel engaged for the purpose of forming the foreign corporation, such opinion to be in form and content approved by Synod's general counsel.

(b)    That the corporate charter, or other governing instrument, of each legal entity authorized by the Board shall be reviewed and approved by Synod's general counsel, to verify that the Synod retains majority control over the appointment or election of the members and/or directors who are responsible for the management of the corporation and that its stated purposes are in fulfillment of the Synod's foreign mission policies and purposes.

(c)    Governing documents of the agency to be formed have been reviewed and approved by the Commission on Constitutional Matters.

6.13.1.4    The budget, financial operations, and programs and activities of each such foreign corporation shall be periodically reviewed by LCMS Accounting and Internal Audit, as appropriate, with the assistance of the Office of International Mission.

## 6.14      International Center Facilities and Services

6.14.1.1    The Board, as well as other owners of the International Center, has delegated to the Facilities Management Committee the responsibility for the operation of the LCMS International Center properties, the buildings, and any off-site leased facilities. The Facilities Management Committee establishes policies and procedures for operating the building and providing office services.

6.14.1.2    The Chief Financial Officer is the Board's representative on the Facilities Management Committee which also includes the executive officers (or their designees) of The Lutheran Church—Missouri Synod Foundation and Concordia Plan Services as voting members and the Synod's Chief Administrative Officer as an advisory member and chairman.

6.14.1.3    In carrying out his responsibilities with regard to the Facilities Management Committee, the Chief Financial Officer shall:

(a)    Ensure changes to the International Center Protocol Agreement or authorization of new buildings or space additions on the International Center properties or off-site leases receive prior Board approval.

(b)    Ensure that the Facilities Management Committee or management policies do not conflict with the applicable law and provide for the equitable sharing of costs of operating the International Center properties between the entities located therein.

Exhibit 5 to Defendants' Motion to Dismiss
Page 97 of 122

**The Lutheran Church—Missouri Synod**                                    **Board of Directors Policy Manual**

| 6.15 | Monitoring |
|------|------------|

See Policy section 4.21.

Section Revision History
2022.08.26       6.4 General Human Resources Policies of the Synod – Revised
2022.11.18       § 6 – Comprehensive Revision
2023.05.19       6.3.3 Property of Synod held by Colleges, Universities and
Seminaries – Revised

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 298 of 365
Exhibit 5 to Defendants' Motion to Dismiss
Page 98 of 122

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

| § 7 | Management Policies for Agencies Outside of Corporate Synod |
|---|---|

The following policies, *in addition to those included in Policy section § 6*, apply to Agencies of the Synod that are outside of Corporate Synod ("Agencies outside Corporate Synod")

| 7.1 | Accounting Policies (Agencies Outside of Corporate Synod) |
|---|---|

| 7.1.1 | Compliance with Generally Accepted Accounting Principles |
|---|---|

Agencies of Synod shall not violate principles or practices of "Generally Accepted Accounting Principles" for not-for-profit organizations as determined by the Financial Accounting Standards Board and the American Institute of Certified Public Accountants.

| 7.1.2 | Compliance with Internal Revenue Service requirements |
|---|---|

Agencies of the Synod shall not violate IRS requirements.

| 7.2 | Financial Transaction Policies (Agencies Outside of Corporate Synod) |
|---|---|

| 7.2.1 | Sharing of Financial Information |
|---|---|

7.2.1.1     Each agency of the Synod shall, within 15 calendar days following their preparation, provide the Synod Chief Financial Officer and Executive Director of Accounting its quarterly interim financial statements, and shall also, within 30 days of receiving its annual audited financial statements, provide the Synod Chief Financial Officer and Executive Director of Accounting its annual audited financial statements. These filings may be in electronic form in a format acceptable to Chief Financial Officer of the Synod.

7.2.1.2     Each agency of the Synod shall promptly respond to requests for financial information in accordance with Bylaw 1.5.4 ("Full Financial Disclosure") and all other applicable bylaws.

| 7.2.2 | Contributions for Foreign Work |
|---|---|

7.2.2.1     Under Section 170 of the Internal Revenue Code, individuals cannot take a tax deduction for contributions made directly to or earmarked for individuals or foreign corporations not under the control of the Synod. To be deductible, the contribution must be made to a U.S. tax-exempt corporation, namely, the Synod or one of its agencies. Contributions to the Synod, with the request that the Synod use those funds in connection with its own operations and activities in a particular foreign country, are deductible for tax purposes.

7.2.2.2     No agency of the Synod shall accept gifts for transmittal to an individual or a foreign corporation not a part of the Synod. When such gifts are offered, contact should be made with the staff of the Synod's Department for Mission Advancement to try to structure a legitimate way to honor the intent of the potential donor.

7.2.2.3     Each agency of the Synod shall channel all contributions for foreign workers through the Synod's Office of International Mission (Bylaw 3.8.3), which, under that same Bylaw, "serves as the only sending agency through which workers and funds are sent to the mission areas of the Synod"

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 299 of 365
Exhibit 5 to Defendants' Motion to Dismiss
Page 99 of 122

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

| 7.2.3 | Foreign Bank Accounts and Currency Transactions |
|---|---|

Agencies not of Corporate Synod shall consult with the Synod Chief Financial Officer prior to making foreign currency transactions.

| 7.2.4 | Grants by Agencies |
|---|---|

7.2.4.1  Synodwide corporate entities shall consult with the Synod's Board of Directors prior to making any grants to or for the mission offices or commissions of Corporate Synod.

7.2.4.2  The Synod's Board of Directors shall approve the usage of any undesignated surplus funds released to the Synod by synodwide corporate entities. The proposed usage will normally be made in the budgeting process.

| 7.2.5 | Income Management – Fund Raising |
|---|---|

Agencies seeking to use Corporate Synod fund-raising support services (and accompanying fund-raising communications services) must first obtain written agreement from the Chief Mission Officer.

| 7.2.6 | Authorization to Deal in Securities |
|---|---|

7.2.6.1  Securities received in bequests, legacies, and gifts by an agency of the Synod, unless otherwise instructed by the donor, shall be sold at the earliest feasible time and at the highest price possible.

7.2.6.2  The governing board of each corporate agency of the Synod shall designate a person(s) to execute securities transactions.

| 7.2.7 | Expense Accounts |
|---|---|

All requests for reimbursement (travel expense reports, check requests, etc.) shall be approved by someone other than the payee. Reimbursement requests must be signed, prior to being paid, by the person responsible for the budgeted expense or his/her superior.

| 7.2.8 | Reimbursement; Compensation of Board, Commission, and Committee members |
|---|---|

7.2.8.1  Agencies of the Synod shall not compensate board, commission, and committee members but will reimburse them for reasonable travel, lodging, meals, and other incidental expenses with such service. Exceptions for pulpit or classroom or similar substitute workers must be approved by the governing board to which the board, commission, or committee is accountable.

| 7.2.9 | Expansion of Operations, Synodwide Corporate Entities and Concordia Plan Services |
|---|---|

7.2.9.1  Any synodwide corporate entity or Concordia Plan Services (CPS) that contemplates expanding its operations to encompass purposes or to offer services, resources, or products that may not, in the final determination of the Synod Board of Directors (Synod BOD), be consistent with the powers and duties specifically set forth for the entity in the Bylaws of the Synod (Bylaw 3.6.1.6), when such expansion of operations involves annual gross expenses of $100,000 or more (regardless of offsetting income potential), shall immediately notify the Synod BOD of the contemplated plan and present any final plan

Exhibit 5 to Defendants' Motion to Dismiss
Page 100 of 122

**The Lutheran Church—Missouri Synod**                    **Board of Directors Policy Manual**

to the Synod BOD for review and approval, consistent with Bylaws 3.3.4.3, 6 and 3.6.1.6 [g] and, in the case of LCEF, Bylaw 3.6.4.4.1, before implementing said plan.

7.2.9.2     No synodwide corporate entity or CPS shall acquire, create, or enter into any corporate entity, partnership, or joint venture without the express written approval of the Synod BOD.

| 7.3 | Audit Policies (Agencies Outside of Corporate Synod) |
|---|---|

| 7.3.1 | Audits Required |
|---|---|

7.3.1.1     Each agency of the Synod shall have an annual financial statement audit (Bylaw 3.3.4.6[b])

| 7.3.2 | Selection of Auditors |
|---|---|

7.3.2.1     The governing board for each agency shall engage its auditors. The auditor may be a firm of Certified Public Accountants, a Certified Public Accountant, or, if not prohibited by applicable state or federal law, the Synod's Internal Audit Department.

7.3.2.2     For maximum audit efficiencies and economies, the synodwide corporate and trust entities are encouraged to appoint the same audit firm utilized by the Synod.

| 7.3.3 | Sharing of Audited Financial Statements |
|---|---|

7.3.3.1     Synodwide Corporate Entities, the Synod's colleges, universities, seminaries, and Concordia Plans and Concordia Plan Services shall, upon receipt, provide their audited financial statements to the Board of Directors through the Synod's Chief Financial Officer in accordance with Bylaw 3.3.4.6[c]).

7.3.3.2     Other agencies of the Synod shall upon request of the Board or the Chief Financial Officer provide the same.

| 7.3.4 | Audit Committee |
|---|---|

7.3.4.1     The governing board of each corporate agency shall appoint an audit committee. The board itself may serve as the committee. Each audit committee shall meet at least annually with the agency's auditors.

| 7.3.5 | Reporting of Legacies and Bequests |
|---|---|

7.3.5.1     Legacies and bequests made to agencies of the Synod shall be reported annually to the Chief Financial Officer as part of the audit process (Bylaw 3.4.1.3 [f]).

| 7.4 | Insurance Policies (Agencies Outside of Corporate Synod) |
|---|---|

| 7.4.1 | Insurance Coverage |
|---|---|

7.4.1.1     Each corporate agency of the Synod shall maintain property and liability insurance coverage under the Synod's insurance program or through other carriers with types and amounts of coverages which are consistent with those in the Synod's program.

7.4.1.2     Note: Since separate insurance programs are primarily maintained by the Synod's district offices, their programs are on a smaller scale and the districts are not able to sustain (or afford) deductible/retention amounts consistent with the Synod's.

7.4.1.3     Insurance coverage shall be in the following areas:

Exhibit 5 to Defendants' Motion to Dismiss
Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 301 of 365
Page 101 of 122
The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

(a)  Mandatory lines of coverage that may be separately procured by the entity or through the Synod's master insurance program:

(1)  General Liability

(2)  Workers Compensation

(3)  Automobile Liability (owned and/or hired, non-owned)

(4)  Umbrella

(5)  Sexual Misconduct

(6)  Pastoral Counseling

(7)  Directors and Officers Liability

(8)  Employment Practices Liability

(9)  Crime

(10) Special Crime

(11) Fiduciary Liability

(12) Cybersecurity

(13) Data Breach

(14) First Party Property Coverage, including:

(i)   Comprehensive all-risk first party coverage on all real and personal property

(ii)  Boiler and Machinery

(iii) Inland Marine

(iv)  Fine Arts

(v)   Electronic Data Processing

(vi)  Stained glass coverage

(vii) Primary Flood and Earthquake

(viii) Business Interruption/Extra Expense

(b)  Additional lines of coverage that require formal coverage and exposure analysis to determine if coverage is advisable:

(1)  Educators Legal Liability (mandatory for school exposures)

(2)  Bankers Professional Liability (mandatory for CEF and Foundation exposures)

(3)  Foreign (property and liability) package

(4)  Non-owned Aircraft Liability

(5)  Difference in Conditions (a.k.a. excess flood & earthquake)

(6)  Environmental Storage Tank Liability

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 302 of 365
Exhibit 5 to Defendants' Motion to Dismiss
Page 102 of 122

**The Lutheran Church—Missouri Synod**                    **Board of Directors Policy Manual**

(7)    Special Crime (a.k.a. kidnap and ransom)

(8)    Fidelity Blanket Bond – for Church Extension Fund (CEF) exposures

(9)    Mortgagee and Foreclosure Liability – for CEF exposures

(10)  Fiduciary Liability – if the agency does not participate in the Concordia Plans

(11)  Limited Professional Liability

(12)  Other areas as determined by Chief Financial Officer of the Synod

7.4.1.4    Minimum policy limits and maximum deductibles in all lines of insurance coverage purchased by the Synod for its insurance program shall be approved by the Synod's Board of Directors upon recommendation of the Chief Financial Officer of the Synod.

7.4.1.5    The Chief Financial Officer serves as the Board's representative on insurance matters involving other corporate and trust entities.

7.4.1.6    The Chief Financial Officer of the Synod shall maintain an insurance reserve to cover the differences between the claims of agencies in the Synod insurance program and the deductibles in the respective policies.

7.4.1.7    Due to the need for appropriate coverages and the economies of scale that result from combined purchases of insurance coverage, it is preferable that all agencies of the Synod participate in the Synod's insurance program. If however, an agency's governing board, after consultation with the office of the Chief Financial Officer of the Synod, elects to purchase separate insurance, it shall provide complete copies of all its insurance policies including all endorsements to the Chief Financial Officer of the Synod.

**7.4.2       Administration of the Synod's Insurance Program**

7.4.2.1    The Synod's insurance program shall be administered by the Chief Financial Officer of the Synod.

7.4.2.2    Agencies of the Synod covered under the Synod's insurance policies will be billed for their proportional and allocated premium amounts based upon their individual exposures.

7.4.2.3    Each agency will be provided with annual copies of the Final and Bound Insurance Summary containing a Risk Management Procedures Manual for administering the Synod's insurance program, including the reporting of claims, ordering certificates of insurance and reporting changes to property and automobile exposures.

7.4.2.4    Each agency will be provided various financial reports such as the Insurance Deductible Pool Status Report and the Loss/Claim Summary on a periodic basis throughout the policy year in order for each agency to monitor and/or prepare for budget effects.

**7.5           Legal Policies (Agencies Outside of Corporate Synod)**

For corresponding policies applicable to Corporate Synod and its included agencies, see Policy section 4.18.

*Scope*

7.5.1.1    Agencies of the Synod outside of Corporate Synod, including Synod-wide corporate and trust entities

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 303 of 365
Exhibit 5 to Defendants' Motion to Dismiss
Page 103 of 122

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

### Definitions

7.5.1.2    **Agency**: An instrumentality other than a congregation or Corporate Synod, whether or not separately incorporated, which the Synod in convention or its Board of Directors has caused or authorized to be formed to further the Synod's objectives.

(a)  Agencies include each board, commission, council, seminary, university, college, district, Concordia Plan Services, and each synodwide corporate entity.

(b)  The term "agency of the Synod" does not describe or imply the existence of principal and agency arrangements as defined under civil law. (Bylaw 1.2.1[a])

**NOTE**: While included in the Bylaw definition of "Agency" (see definitions, above), this policy does not apply to the following agencies of the Synod which are structurally part of Corporate Synod and thereby subject to the policies for Corporate Synod: the Commission on Theology and Church Relations, the Board for National Mission, the Board for International Mission, the Commission on Constitutional Matters, the Commission on Handbook, the Commission on Doctrinal Review, the Board for Church Extension, and others as may be created from time to time.

7.5.1.3    **Corporate Synod**: See Bylaw 1.2.1 (d).

7.5.1.4    **Synod**: See Bylaw 1.1.1 (v).

7.5.1.5    **Property of the Synod**: See Bylaw 1.2.1 (r).

7.5.1.6    **Litigation**: Every proceeding before in a court, of record or involving any administrative agency, regulatory agency, or quasi-judicial agency, or other secular or governmental body, whether such court or agency be local, state, federal, or foreign, and including any arbitration proceeding.

7.5.1.7    **Claim**: A demand for relief and every circumstance where litigation is anticipated or reasonably likely to ensue, and includes investigations by law enforcement agencies, administrative agencies or any other investigation where litigation could result.

7.5.1.8    **Litigation brought against an agency of the Synod:** Shall include litigation in which an agency of the Synod is named as a party or interested person, or in which a board, commission, committee, officer, volunteer, missionary, or employee of an agency of the Synod is named as a party or interested person and is alleged to have been acting in their capacity as such or on behalf or for the benefit of an agency of the Synod.

### 7.5.2    Engagement of Legal Counsel by Agencies of the Synod

### Purpose

7.5.2.1    To identify the parties responsible for appointing legal counsel for agencies of The Lutheran Church—Missouri Synod and subsequent notification to the Synod Board of Directors.

7.5.2.2    To outline the availability and use of LCMS legal counsel to assist agencies of the Synod

### Policy

7.5.2.3    The Lutheran Church—Missouri Synod Board of Directors has the powers and duties under the Synod Bylaws to engage legal counsel for the guidance of the Synod Board and to provide advice and counsel to the officers and agencies of the Synod.

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 304 of 365
Exhibit 5 to Defendants' Motion to Dismiss
Page 104 of 122

**The Lutheran Church—Missouri Synod**                    **Board of Directors Policy Manual**

7.5.2.4      The governing board of each agency of the synod and each synodwide corporate or trust entity shall select legal counsel for its organization.

7.5.2.5      The Synod's general counsel may provide legal counsel for these entities, except to the extent the provision of legal services creates a conflict of interest, in which case the Synod's general counsel must advise the Board of Directors of the Synod and the interested agency or synodwide corporate or trust entity of the conflict to determine whether a waiver of the conflict is possible and appropriate.

7.5.2.6      Upon approval of the Chief Administrative Officer or the Board of Directors, the Synod's general counsel may be made available to assist other agencies of the Synod in their selection of legal counsel; to the extent, such agencies have the authority to select legal counsel.

7.5.2.7      All agencies of the Synod shall promptly inform the LCMS Chief Administrative Officer of the names of all legal counsel engaged by those agencies.

7.5.2.8      In certain circumstances and upon approval of the LCMS Chief Administrative Officer, the Synod's general counsel may be made available to legal counsel of agencies of the Synod in order best to coordinate the legal affairs handled by the Synod and those handled by the agencies of the Synod and to ensure that the highest quality of legal services are provided efficiently.

7.5.2.9      All officers, executives, and agencies of the Synod shall work through the LCMS Chief Administrative Officer concerning the use of the Synod's general counsel or other legal counsel.

### *Procedure*

7.5.2.10     The selection or renewal of general counsel for agencies shall follow the process developed by each governing board for their respective agency.

7.5.2.11     Notification of litigation should be made to:

The Lutheran Church—Missouri Synod
Chief Administrative Officer
1333 S. Kirkwood Road
St. Louis, MO 63122

or via email to BOD@LCMS.org

7.5.2.12     Inquiries regarding the availability and use of Synod's legal counsel should be directed to the LCMS Chief Administrative Officer at 314-996-1350.

### 7.5.3        Initiating Litigation

### *Purpose*

7.5.3.1      To identify parties having authority and responsibility for initiating litigation on behalf of agencies of the Synod.

### *Policy*

7.5.3.2      The Synod Board of Directors recognizes that any participation in litigation by an agency of the Synod may have an adverse effect on the Synod as a church organization and that litigation must, therefore, be entered into only when it has been responsibly determined

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 305 of 365
Exhibit 5 to Defendants' Motion to Dismiss
Page 105 of 122

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

that such is likely to serve the best interests of the Synod and, when applicable, all of the Synod's avenues for conflict resolution have been exhausted.

7.5.3.3    Separate synodwide corporate and trust entities and the districts may, pursuant to their corporate duties and responsibilities, initiate litigation on behalf of themselves, but they may not initiate any lawsuit, arbitration, or administrative proceeding in the name of The Lutheran Church—Missouri Synod or which may have a legal or adverse impact upon the Synod or any other agency of the Synod without the prior approval of the Board of Directors of the Synod or, in cases of emergency, the Executive Committee of the Board of Directors.

7.5.3.4    Within the confines of the previous paragraph, an agency of the Synod shall initiate such litigation only with prior approval by the Synod Board of Directors or its Executive Committee if the nature of any issue involved in such litigation may involve financial or other interests or property of the Synod not exclusively limited to the agency.

7.5.3.5    The executive officer of each agency of the Synod shall, when contemplating the initiation of any litigation, promptly so notify the Chief Administrative Officer of the Synod and shall not file the same without undertaking the following:

7.5.3.6    The chief executive officer of each agency of the Synod, either directly or through the agency's legal counsel, shall, prior to filing the same, cause the initial pleading (for example, the initial complaint/petition, motion for temporary restraining order or other initial pleading) to be sent to the Synod's legal counsel for review and  to the Chief Administrative Officer of the Synod for any action necessary under this policy. In addition, the chief executive officer of each agency of the Synod, either directly or through the agency's legal counsel, shall inform the Synod's legal counsel of any substantive developments in litigation and proceedings in which it is involved and otherwise provide updates with respect thereto as requested by the Synod's legal counsel from time to time.

7.5.3.7    Any agency of the Synod which violates the foregoing regulations with respect to the initiation of litigation may be ordered by the Board of Directors to withdraw from the litigation. The decision of whether litigation is within the confines stated above shall be made by the Executive Committee of the Synod Board of Directors which shall promptly report each such decision to the full Board of Directors, provided however that the agency of the Synod may appeal the decision of the Executive Committee to the entire Board of Directors, the decision of which shall be final and conclusive.

*Procedure*

7.5.3.8    Notification to the Synod Board of Directors should be communicated via the LCMS Chief Administrative Officer at BOD@lcms.org or 314-966-1350.

7.5.3.9    Contact with Synod's general counsel should be routed via the LCMS Chief Administrative Officer.

**7.5.4**    **Responding to Litigation**

*Purpose*

7.5.4.1    To identify a process by which litigation brought against Synod agencies is reported to the Synod Board of Directors.

The Lutheran Church—Missouri Synod                        Board of Directors Policy Manual

---

### Policy

7.5.4.2    The Lutheran Church—Missouri Synod Board of Directors recognizes that any response by an agency of the Synod to litigation brought against it may impact the Synod and other agencies of the Synod. Cooperation and, in some cases, coordination in such responses is therefore a necessity.

7.5.4.3    The executive officer of each agency of the Synod shall promptly advise the Chief Administrative Officer of the Synod of every litigation brought or claim asserted against the agency, its officers, staff, employees, volunteers, and missionaries, and/or its agencies, their officers, staff, missionaries, and volunteers.

7.5.4.4    The Chief Administrative Officer will promptly notify LCMS general counsel of the reported litigation or claim and ensure that the general counsel monitors the progression of the litigation to protect Synod's interests and coordinate any required Synod response.

7.5.4.5    The Chief Administrative Officer will ensure that LCMS general counsel reports to the Board quarterly each litigation that may have an impact upon the Synod or other agencies of the Synod.

### Procedure

7.5.4.6    Notification of litigation should be made to:

The Lutheran Church—Missouri Synod
Chief Administrative Officer
1333 S. Kirkwood Road
St. Louis, MO 63122

or via email to BOD@LCMS.org

7.5.4.7    Inquiries regarding the availability and use of Synod's legal counsel should be directed to the LCMS Chief Administrative Officer at 314-996-1350.

**7.5.5       Participation by the Synod and/or Its Agencies in Judicial Proceedings as Amicus Curiae or in Support of a Member Congregation**

7.5.5.1    Participation in judicial proceedings as *amicus curiae* or in support of a member congregation shall only be by the Synod and shall not be by any agency of the Synod (see Policy section 4.18.5).

**7.6          Monitoring**

See Policy section 4.21.

| Section Revision History | |
| --- | --- |
| 2022.11.18 | § 7 – Comprehensive Revision |
| 2022.11.18 | 7.2.9 Expansion of Operations, SCE and CPS – Adopted |

---

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 307 of 365
Exhibit 5 to Defendants' Motion to Dismiss
Page 107 of 122

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

## § 8     Auxiliaries and Recognized Service Organizations

### 8.1     Auxiliary Organizations

8.1.1.1     The Board has certain responsibilities with respect to the Synod's Auxiliary Organizations (at present, the International Lutheran Laymen's League and the Lutheran Women's Missionary League). The Board:

> (a)  receives applications for recognition as an Auxiliary Organization of the Synod for presentation to a convention of the Synod (Bylaw 6.1.2)
>
> (b)  makes itself available for coordination of plans and programs of Auxiliaries, as relate to the Board's area of responsibility, and coordinates with the Auxiliaries as needed (Bylaw 6.1.2.1 [d])
>
> (c)  receives and reviews each Auxiliary's annual program report (Bylaw 6.1.3).
>
> (d)  maintains criteria for statements to be included in Auxiliary documents as required by Bylaw 6.1.3 (e).

8.1.1.2     Pursuant to Bylaw 6.1.3 (e), each Auxiliary of the Synod shall indicate in all of its agreements of a financial nature, statements of ownership, financial offers, and other legal documents, agreements, and promotional materials, and all other communications of a financial nature that:

> (a)  It is responsible for its own debts and liabilities.
>
> (b)  Its being an Auxiliary is not:
>
>> (1)  an endorsement by the Synod of its organization and administration.
>>
>> (2)  a guarantee on the part of the Synod for the fiscal solvency of, or any financial responsibility for, the organization
>>
>> (3)  an endorsement by the Synod or guarantee on the part of the Synod of services expressly offered or implied.

### 8.2     Granting of Recognized Service Organization (RSO) Status by Synod Mission Offices

#### 8.2.1     Ends of RSO Program

8.2.1.1     Through the recognition of service organizations that (Bylaw 6.2.1):

> (a)  are and remain structurally independent of the Synod;
>
> (b)  foster the mission and ministry of the church;
>
> (c)  engage in program activity that extends the mission and ministry of the Synod;
>
> (d)  are in harmony with the programs of the mission boards and offices (i.e., the Board for / Office of National Mission and the Board for / Office of International Mission) and pastoral education programs of the Synod; and
>
> (e)  respect and do not act contrary to the doctrine and practice of the Synod, as established in the Scriptures and Lutheran Confessions (Constitution Article II)

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

and elaborated from time to time by the Synod in convention as it seeks to clarify its witness or settle doctrinal controversy (Bylaw 1.6.2),

8.2.1.2    the granting mission offices, under applicable policies, seek the following demonstrable outcomes:

(a)  The unity of the true faith (Eph 4:3–6) is tangibly and demonstrably promoted, beyond the unaided capacities of the congregations and agencies of the Synod (Const. Art. III 1), in word and deed, through such organizations coordinating with member congregations, districts, and other agencies of the Synod.

(b)  Congregations of the Synod and their members are strengthened in their witness and provided with expanded opportunities to express their Christian concern, love, and compassion in meeting human needs (Const. Art. III 2, 4) in their communities and throughout the world.

(c)  Those being served with Christian concern, love, and compassion in meeting human needs are served in an extension of the divine mercy, without compromising the church's scriptural standards, and in a manner flowing from and directed towards the Word and Sacrament ministry of Synod congregations and missions.

(d)  Such organizations will inform related Synod ministries of their activities and coordinate with them in a manner that is constructive, mutually beneficial, and that increases the reach and effectiveness of both in mission.

(e)  The Synod and its agencies and members are provided with concrete means for providing encouragement to faithful and bold witness, in word and deed, and for addressing concerns with such organizations' activities, as they relate to congregations and partner churches of the Synod and to the impact and/or reflection of the organization's work on the mission and ministry of the church.

(f)  Protection is provided for rostered workers called or otherwise employed by such organizations in the performance of their official duties and maintenance of their rights (Const. Art. III 9).

(g)  Access to benefits of recognition is managed responsibly and uniformly and in a manner that efficiently furthers the Synod's goals in establishing and maintaining the services offered.

(h)  Congregations and individuals of the Synod are provided reasonable assurance that in supporting the efforts of such organizations they are supporting activities that, while independently governed, are aligned with and benefit the goals congregations like theirs have set out for their mission work together (for example, in the constitutional objectives and mission priorities of the Synod).

(i)  The costs of administrative activities related to the program and of benefits extended are justified by a return in mission extension and multiplication for the congregations of the Synod and aligned with their mission objectives.

## 8.2.2    Bylaw-Mandated Requirements for Recognition of Service Organizations

Initial and renewal grants of recognized service organization (RSO) status are to be carried out by the granting mission office(s) under a standard form of agreement that accurately

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 309 of 365
Exhibit 5 to Defendants' Motion to Dismiss
Page 109 of 122

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

and fully reflects the requirements of Bylaws 6.2.1-6.2.2.2 (RSO Agreement). The standard form of RSO Agreement shall also accurately and fully reflect such policies and other criteria, developed by the Board of Directors, mission boards and granting mission offices of the Synod, as are in effect at the time status is granted, including, without limitation, those requirements set forth in Policy section 8.2. Organization status under such RSO Agreements is to be regularly monitored, throughout the term of such RSO Agreements, by the granting mission office(s) according to all such policies and criteria.

### 8.2.3        Board of Directors Approval of Standard Form of Agreement

8.2.3.1        The Board of Directors will approve a standard form of RSO Agreement to be entered into by the Synod and each recognized service organization (Bylaw 6.2.3 [a]). The form may be amended from time to time as the need arises and circumstances change. The Secretary shall maintain a file of all such standard forms of RSO Agreement and coordinate proposals for changes to the standard form of RSO Agreement, as proposed by the Board, mission boards, or granting office(s).

8.2.3.2        The Chief Administrative Officer may at his sole discretion individually waive or limit the following provision(s) of the standard form of agreement upon (1) request by the applicant organization for a provision to be waived or limited and (2) demonstration by the granting mission office that the granting of status without inclusion of, or with limitation of, said requirement in the agreement is reasonable given the particular circumstances of the registered service organization and the services provided thereby:

- Under Section 4 (f), Insurance, the following provision: "For so long as this Agreement remains in effect, the Organization shall cause the LCMS to be named as an additional insured on all policies of liability insurance maintained by the Organization."

Any waiver or limitation granted under this policy shall apply to no more than a single term of recognition and shall be memorialized with a memorandum signed by the Chief Administrative Officer and attached to the agreement.

### 8.2.4        Board of Directors Policies and Criteria for RSO Program Administration

As provided in Bylaw 6.2.3 (a), the Board of Directors is responsible for certain categories of common policies and criteria for granting RSO status to guide the granting mission offices' administration of the RSO program, with other categories of policies and criteria developed by the mission boards (in consultation with the Council of Presidents) and granting mission offices of the Synod, all to be consistent with the provisions of Bylaw 6.2.4. In addition to approving the standard form of RSO Agreement, the Board develops policies "relating to expectations for the corporate structure and governance of the organizations, statements regarding their legal and corporate independence from the Synod, and the necessary relation of their work to the mission and ministry of the Synod as generally expressed in its Constitution and Bylaws." Such policies are stated as follows:

8.2.4.1        Applications for status shall be made to the Office of the Secretary (OTS), which shall direct the request to the appropriate granting mission office(s) for processing.

8.2.4.2        OTS shall monitor the administration of the RSO program as it relates to concerns of the Board of Directors and the compliance with its related policies.

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

8.2.4.3    OTS shall monitor and provide suggestions on the additional policies and criteria provided by the mission boards and granting mission offices to assure that the unique needs of those agencies, offices, and the expectations of the Synod are met.

8.2.4.4    OTS shall list all recognized service organizations in The Lutheran Annual, prefaced by a statement that:

(a)  Recognized service organizations operate with freedom and self-determination under the governance and policies of their own boards in establishing and evaluating their organizational, financial and administrative objectives, activities and programs, cooperating with Synod in mission pursuits and common objectives but avoiding the commingling of governance authority with the governance, officers, and employees of Synod and its agencies.

(b)  Recognition by the Synod (i) is not an endorsement or guarantee of the fiscal solvency of the organization, nor of any services or programs offered, (ii) does not express or imply endorsement or guarantee of the fiscal solvency of the organization or any Synod responsibility for or guarantee of the debts or other financial obligations of the organization, and (iii) does not cause the Synod or its districts or congregations to incur, guarantee or be subject to or responsible for the liabilities or debts of the recognized service organization or its subsidiaries and/or affiliates. Such provisions are subject to approval by Synod's legal counsel.

8.2.4.5    Initial grants and periodic renewals of RSO status shall be carried out by the granting mission office(s) under an RSO Agreement that accurately and fully reflects the following requirements, and status under such RSO Agreement shall be monitored regularly by the granting mission office(s) according to the following criteria:

(a)  Recognition of a service organization by the Synod as an RSO acknowledges the organization as a separately governed ministry that is not a part of the constitutional, legal structure of the Synod. However, the granting of RSO status does not imply accreditation or certification of the organization or its programs. The Lutheran Church—Missouri Synod and its agencies disavow any participation in or responsibility for the governance, policies and programs of the organization and all other operations and activities of the organization and make no representations or guarantees regarding the fiscal solvency or financial responsibility of the organization or any services that it expressly or implicitly offers. A recognized service organization, therefore, is not allowed to make any contrary claims or representations for any purpose. It may, however, freely assert its adherence to the confession it publicly and as a matter of agreement shares with the Synod and its First Amendment rights to free exercise of its beliefs in accordance with such confession.

(b)  RSO status is granted to the organization identified in the RSO Agreement executed by the recognized service organization and the Synod office or agency. Subsidiaries and affiliates of the requesting organization are excluded from the RSO Agreement and are not entitled to RSO status unless specifically identified in the RSO Agreement as being party to the RSO Agreement or said subsidiary or affiliate enters into a separate RSO Agreement.

(c) Recognized service organizations shall provide appropriate representation on their governing boards by members of Synod congregations, especially in the case of cooperation-in-externals organizations, in consultation with the granting mission office(s). Appropriate levels of representation will be determined, within the constraints of Bylaw 6.2.2, by the policies of the granting mission office(s), subject to parameters established by the relevant mission board of the Synod. A cooperation-in-externals organization is an organization that is not a member of or in any way affiliated with the Synod such as a governmental agency or organization of another denomination.

(d) The granting mission office(s) shall assure, for the protection of both Synod and the recognized service organization, that the governance of the organization is not commingled with the governance of the Synod or its agencies. Board members of recognized service organizations that are simultaneously officers, board members, or employees of Synod or of any of its agencies shall disclose such participation in writing to the Board of Directors of the Synod through OTS, and certify that such participation is solely in that person's individual capacity and is not an ex officio, elected, appointed, or designated representative of the Synod or the agency served. Such participation must also be disclosed, under Bylaw 1.5.21.5.2, to the Synod or agency served.

(e) Organizations at the granting of status and throughout the duration of the period of RSO status shall:

(1) Provide evidence that the organization has independently obtained Internal Revenue Code Section 501(c)(3) tax exemption.

(2) Operate with freedom and self-determination under the governance and policies of their own boards in establishing and evaluating their organizational, financial and administrative objectives, activities and programs, cooperating with Synod in mission pursuits and common objectives but avoiding the commingling of governance authority with the governance, officers, and employees of Synod and its agencies.

(3) Provide evidence that the organization engages, as appropriate to its specific class and tier of status, in program activity that demonstrably extends the mission and ministry of the Synod, that is intentionally and consistently in harmony with the programs of the Synod, and that intentionally and consistently respects and does not act contrary to the doctrine and practice of the Synod.

(4) Provide evidence that the organization has adopted ethical and responsible fundraising policies and practices.

(5) Provide evidence that, in the event of dissolution of the corporation, any residual assets shall be distributed to another 501(c)(3) organization.

(6) Include in their charter, articles, by-laws, and all other governing documents, as applicable, the provision specified in the RSO Agreement to the effect that recognition by the Synod (i) is not an endorsement or guarantee of the fiscal solvency of the organization, nor of any services or programs offered, (ii) does not express or imply endorsement or guarantee

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

of the fiscal solvency of the organization or any Synod responsibility for or guarantee of the debts or other financial obligations of the organization, and (iii) does not cause the Synod or its districts or congregations to incur, guarantee or be subject to or responsible for the liabilities or debts of the recognized service organization or its subsidiaries and/or affiliates. Such provisions are subject to approval by Synod's legal counsel.

(7)  Take care in any correspondence, advertising, marketing, and other program materials that identify the organization as an RSO of the Synod never to suggest that RSO status (i) constitutes an endorsement or guarantee of the fiscal solvency of the organization or of any of its services or programs or (ii) expresses or implies endorsement or guarantee of the fiscal solvency of the organization or any responsibility for or guarantee of the debts or other financial obligations of the organization or its subsidiaries and/or affiliates on the part of the Synod.

(8)  Identify the organization as an RSO of the Synod generally, where appropriate, but especially when communicating with LCMS congregations and their members.

(9)  Make readily accessible Synod's explanatory material regarding the RSO program, principally by providing a prominent link to lcms.org/rso in association with any organizational website or significant publication identifying the organization as an RSO of the Synod.

(10) Agree in the RSO Agreement to comply with all applicable Bylaws and policies of the Synod.

(11) Agree in the RSO Agreement that the organization will include in all agreements or other documents creating indebtedness of the organization or financing obligations (such as promissory notes, bond issues, or other financing agreements) in a principal amount excess of ten percent of the assets of the organization (as evidenced by its most recent audited financial statement) the following disclaimer of financial responsibility of the Synod for the obligations of the organization:

> "It is agreed and acknowledged that the recognized service organization status conferred upon [RSO] by The Lutheran Church—Missouri Synod (i) is not an endorsement or guarantee of the fiscal solvency of [RSO], nor of services or programs offered by [RSO], (ii) does not express or imply endorsement or guarantee of the fiscal solvency of [RSO], or Synod responsibility for the debts or other financial obligations of [RSO], and (iii) does not cause the Synod or its districts or congregations to incur, guarantee or otherwise be subject to or responsible for the liabilities or debts of [RSO] or its subsidiaries and/or affiliates."

(12) Agree in the RSO Agreement to indemnify and defend Corporate Synod and all agencies of Synod against lawsuits and claims against them resulting from or arising out of the Synod's recognition of the organization, such provision to read as follows:

"[RSO] shall defend, indemnify and hold harmless the LCMS, the Synod and their respective districts, integral components, boards and agencies together with the officers, directors and employees of each such organization (collectively, the "Indemnified Parties", and each an "Indemnified Party") from any and all liabilities, losses, damages, judgments, claims, actions, proceedings, liens, expenses, penalties and costs, including court costs and reasonable attorneys' fees, any Indemnified Party may suffer or incur that are attributable, or otherwise in any way relating, to the existence, acts or omissions of [RSO] or the recognition of [RSO] as a recognized service organization hereunder, including, without limitation, claims asserting that (RSO) or any of its liabilities or obligations are owned, controlled, guaranteed or endorsed by, or otherwise the responsibility of, any Indemnified Party or that any Indemnified Party negligently granted or maintained the recognized service organization status of [RSO] or failed to properly monitor the actions and undertakings of [RSO]."

(f)    The RSO Agreement shall be for a term of five years, unless terminated earlier, with or without cause and upon thirty days' notice, by either the Synod or by the recognized service organization.

(g)    The mission office(s) to which application for RSO status or renewal is made (either directly or by direction thereto by OTS) are authorized to establish and assess application, renewal and/or annual maintenance fees upon recognized service organizations in order to offset the reasonable costs of the mission office(s) to administer the RSO program, taking into account administrative, personnel, travel, and other appropriate requirements to develop and improve the program to meet the Synod's needs.

8.2.4.6    The RSO Agreement shall inform recognized service organizations of the benefits and privileges that accompany recognition by the Synod, including:

(a)    Eligibility of ordained and commissioned ministers of the Synod called by recognized service organizations to remain on the active membership roster of the Synod, and eligibility of the organization to extend new calls to such ordained and commissioned ministers of the Synod, subject to the requirements of Bylaw 6.2.2.2;

(b)    Subject to the requirements of Bylaw 6.2.2.2, access to the dispute resolution process of the Synod for call-related disputes;

(c)    Eligibility to apply for loans from the Lutheran Church Extension Fund—Missouri Synod, subject to LCEF policies and lending criteria;

(d)    Eligibility for "employer" status under the various Concordia Plans of the Synod, subject to Concordia Plans policies;

(e)    Eligibility for gift planning and trust services of The Lutheran Church—Missouri Synod Foundation, subject to Foundation policies;

Exhibit 5 to Defendants' Motion to Dismiss
Page 114 of 122

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 314 of 365

(f) Eligibility to receive grant funds raised and/or administered by the Synod, subject to the approval of the granting mission office(s), subject to the policies of the pertinent mission board(s) and office(s) to which the recognized service organization relates, and subject to approval by the Synod's Chief Mission Officer, such approval taking into consideration demonstrated need and specific purpose for which the funds are to be used;

(g) Public identification with the Synod and its agencies, including the display of the Corporate Synod's logo in reference to Synod, subject to the policies and practices of the Synod's Communications unit under the supervision of the Synod's Chief Mission Officer;

(h) Eligibility to participate in the LCMS Group Purchasing Agreement program, subject to certain restrictions; and

(i) Eligibility to apply for grants from the LWML, subject to LWML policies.

8.2.4.7   Records of program administration reside in the granting mission office(s), with annual "strategic" reports to the Board of Directors characterizing participation in the program and its benefits and costs, challenges and opportunities.

**8.2.5      RSO Program Public Information**

The granting mission office(s) shall maintain comprehensive program information on a prominent, readily and publicly accessible website under the lcms.org domain (i.e., lcms.org/rso), providing an explanation of the program's objectives and granting criteria, including disclaimers of financial responsibility and endorsement on the part of the Synod for recognized service organizations, as well as instructions for application, program benefits, and a listing of current recognized service organizations.

| 8.3 | Recognized Service Organization Standard Form of Agreement |
|---|---|

(Edition of February 2022)

# Agreement

### THE LUTHERAN CHURCH—MISSOURI SYNOD

### RECOGNIZED SERVICE ORGANIZATION

**THIS AGREEMENT** (the "Agreement"), dated as of the last date set forth on the signature page hereto (the last page), by and between The Lutheran Church—Missouri Synod, a Missouri nonprofit corporation (the "LCMS"), as set forth on the signature page hereto and the organization executing this Agreement set forth on the signature page hereto (the "Organization"). The following recitals form the basis for this Agreement and are made a material part hereof:

### WITNESSETH:

**WHEREAS**, LCMS Bylaw section 6.2, LCMS Board of Directors Policy section 8.2, and related policies of the LCMS Boards and Offices of National and International Mission provide for the granting of recognized service organization ("RSO") status by the LCMS and provide certain criteria relative to such entities (the "LCMS Rules"), copies of which LCMS Rules, as presently stated by LCMS, are attached as exhibits; and

**WHEREAS,** the LCMS and the Organization desire that the Organization be designated as an RSO of the LCMS consistent with the LCMS Rules;

**NOW, THEREFORE, FOR GOOD AND VALUABLE CONSIDERATION, THE RECEIPT AND SUFFICIENCY OF WHICH IS HEREBY ACKNOWLEDGED BY EACH PARTY HERETO, BE IT AGREED AS FOLLOWS:**

**Section 1. Recognized Service Organization.** The LCMS hereby designates the Organization as an RSO of the LCMS on the terms set forth herein, within the class and tier indicated on the signature page. The Organization hereby accepts the designation as an RSO by the LCMS on the terms set forth herein. The Organization hereby agrees to comply with and abide by the LCMS Rules relative to RSOs as such now exist and as they may be hereafter amended by the LCMS, its boards and offices.

The Organization agrees to foster the mission and ministry of the church, engaging in program activity that (a) extends the mission and ministry of The Lutheran Church—Missouri Synod (the "Synod"), (b) is in harmony with the programs of the Synod, and (c) respects and does not act contrary to the doctrine and practice of the Synod, as established in the Scriptures and Lutheran Confessions (LCMS Constitution Article II) and elaborated from time to time by the Synod in convention as it seeks to clarify its witness or settle doctrinal controversy (LCMS Bylaw 1.6.2).

The Organization agrees that its board of directors (or similar governing body) and executive leadership will include members of, or representatives of congregations that are members of, the Synod at an appropriate level determined by the LCMS. The Organization's governing body shall be solely responsible for the governance of the Organization.

**Section 2. RSO and LCMS.** The LCMS is granting the Organization status as an RSO, as is set forth herein. The LCMS and its agencies disavow any participation in or responsibility for the governance, policies and programs of the Organization and all other operations and activities of the Organization. The Organization agrees to comply with any and all policies and criteria of the LCMS in order to maintain the Organization's RSO status. The LCMS reserves the right to change the LCMS Rules at any time in its sole discretion and to require the Organization to provide evidence of compliance with any of such policies and criteria in order to maintain the Organization's RSO status.

**Section 3. The Organization a Separate Entity; No Financial Liability to LCMS; No Endorsement by LCMS.** The Organization agrees that it is a separate, independent legal entity from the LCMS, that it is not controlled by the LCMS, and that the LCMS shall have no financial responsibility with respect to the Organization. The Organization further agrees as follows:

The Lutheran Church—Missouri Synod                 **Board of Directors Policy Manual**

a.   the Organization will not hold itself as an agent of, having authority to act on behalf of, or legally bind the LCMS in any way, or make any representations that it is a part of the LCMS or its agencies or that the Organization is an agency, division, subsidiary, or affiliate of the LCMS;

b.   the LCMS has no responsibility for the finances or financial obligations of the Organization and under no circumstances shall be deemed to have guaranteed the same;

c.   the LCMS does not endorse or make any representation or guarantee regarding the fiscal solvency or financial responsibility of the Organization nor regarding any services or programs that it expressly or implicitly offers, does not imply accreditation or certification of the organization or its programs, and does not express or imply responsibility by the LCMS for the debts or other financial obligations of the Organization;

d.   the Organization will include the following provision in its governing documents:

Recognition by the Synod (i) is not an endorsement or guarantee of the fiscal solvency of [name of the Organization], nor of any services or programs offered by [name of the Organization]; (ii) does not express or imply endorsement or guarantee of the fiscal solvency of [name of the Organization], or any Synod responsibility for or guarantee of the debts or other financial obligations of [name of the Organization]; and (iii) does not cause the Synod or its districts or congregations to incur, guarantee, or be subject to or responsible for the liabilities or debts of [name of the Organization] or its subsidiaries and/or affiliates.

e.   the Organization will include a disclaimer of financial responsibility for the obligations of the Organization in all agreements or other documents creating indebtedness of the Organization (such as promissory notes, bond issues or other financing agreements) in excess of 10 percent in value of the assets of the Organization as evidenced by its most recently prepared financial statement. Such disclaimer shall read as follows:

It is agreed and acknowledged that the recognized service organization status conferred upon [name of the Organization] by The Lutheran Church—Missouri Synod (i) is not an endorsement or guarantee by the Synod of the fiscal solvency of [name of the Organization], nor of any services or programs offered by [name of the Organization], (ii) does not express or imply endorsement or guarantee of the fiscal solvency of [name of the Organization], or any Synod responsibility for or guarantee of the debts or other financial obligations of [name of the Organization], and (iii) does not cause the Synod or its districts or congregations to incur, guarantee, or otherwise be subject to or responsible for the liabilities or debts of [name of the Organization] or its subsidiaries and/or affiliates. For the avoidance of doubt, and without limiting the foregoing, by recognizing [name of the Organization] as a recognized service organization, the Synod does not undertake any obligation to repay or guarantee [name of the Organization]'s debts or other financial obligations.

f.   the Organization shall defend, indemnify and hold harmless the LCMS, the Synod, and their respective districts, integral components, boards and agencies, together with the officers, directors and employees of each (collectively, the "Indemnified Parties", and each an "Indemnified Party"), from any and all liabilities, losses, damages, judgments, claims, actions, proceedings, liens, expenses, penalties, and costs, including court costs and reasonable attorneys' fees, any Indemnified Party may suffer or incur that are attributable, or otherwise in any way relating, to the existence, acts, or omissions of the Organization or the recognition of the Organization as an RSO hereunder, including, without limitation, claims asserting that the Organization or any of its liabilities or obligations are owned, controlled, guaranteed or endorsed by, or otherwise the responsibility of, any Indemnified Party or that any Indemnified Party negligently granted or maintained the RSO status of the Organization or failed to properly monitor the actions and undertakings of the Organization. The provisions of this Section 3(f) shall survive the expiration or earlier termination of this Agreement.

**Section 4. Organization Operations and Governance Documents.** It is agreed that the Organization is a separately governed ministry that is not part of the constitutional, legal structure of the Synod, and that the Organization shall operate under its own governance and policies with freedom and self-determination,

§ 8: Auxiliaries and Recognized Service Organizations

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 317 of 365
Exhibit 5 to Defendants' Motion to Dismiss
Page 117 of 122

**The Lutheran Church—Missouri Synod**                    **Board of Directors Policy Manual**

independent of the LCMS and its agencies. The Organization will establish and evaluate its own objectives, activities, programs, organization, policies, administration, and financial matters.

The Organization also represents, warrants and agrees as follows:

a.   **Employer.** The Organization is the employer of all Organization employees and the operator of all real or personal properties occupied or used by it;

b.   **501(c)(3) Organization.** The Organization is presently an organization qualifying under Section 501(c)(3) of the Internal Revenue Code and will maintain its exemption thereunder throughout the term of this Agreement. The Organization shall provide evidence of such status to the LCMS from time to time upon the LCMS' request therefor;

c.   **Financial Information.** The Organization will provide the LCMS with its policies regarding fundraising and with operational or financial information involving the Organization as reasonably requested by the LCMS at any time. The Organization's fundraising policies and practices shall at all times be ethical and responsible;

d.   **Background Checks.** The Organization will conduct screening and background checks, at the Organization's expense, on its employees and volunteers who work with minors, and the LCMS further encourages the Organization to adopt policies to protect children and to train all employees and volunteers to comply with such policies;

e.   **Compliance with Laws.** The Organization will comply with all applicable laws, rules and regulations, including, but not limited to complying with all rules and requirements relating to receiving government funding for social services;

f.   **Insurance.** The Organization will maintain liability and other insurance customary for an entity engaged in the operations of the type and scope of the Organization. For so long as this Agreement remains in effect, the Organization shall cause the LCMS to be named as an additional insured on all policies of liability insurance maintained by the Organization;

g.   **Trade Names, Trademarks and Copyrighted Material.** The Organization agrees that it will obtain the written consent of the LCMS communications department prior to any use or display by it of any trade name, trademark or copyrighted material owned by the LCMS. The decision as to whether or not to permit usage or display by the Organization, and the terms and documentation of any such usage or display, are entirely in the discretion of the LCMS. To the extent the Organization obtains the written consent and approval from the LCMS communications department, the Organization agrees it will abide by all terms and conditions set forth by the LCMS, including but not limited to: (i) the terms and conditions published on the LCMS website, as amended from time to time, regarding usage or display of the LCMS Logo Cross and other trademarks; and (ii) the terms, conditions and guidelines set forth in the Graphic Standards manual, as amended by the LCMS from time to time;

h.   **Compliance.** The Organization will provide evidence of compliance with this Agreement reasonably requested by the LCMS at any time;

i.   **Dissolution.** All applicable governance documents of the Organization will at all times provide that, in the event of a dissolution of the Organization, its remaining assets will be distributed to another nonprofit organization exempt under Section 501(c)(3) of the Internal Revenue Code; and

j.   **Governing Documents.** The Organization shall provide proposed changes in its governing documents on the following topics to the LCMS prior to adoption so that the LCMS may determine whether there is any impact on the RSO status of the Organization: membership, nonprofit status, purpose, dissolution, governing body election, governing body membership criteria, or any other topic that could relate to the criteria for RSO status hereunder.

k.   **Subsidiaries and Affiliates.** Unless specifically identified in this Agreement as being a party hereto or an intended third party beneficiary hereof, no subsidiary, or affiliate of the Organization is (i) a third party beneficiary of this Agreement, (ii) entitled to the rights or

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 318 of 365
Exhibit 5 to Defendants' Motion to Dismiss
Page 118 of 122
The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

benefits of this Agreement or the recognized service organization status granted hereunder or (iii) entitled to enforce the rights of the Organization under this Agreement.

l.  **Commingling of Governance**. The Organization agrees that the governance of the Organization is not to be commingled with the governance of the LCMS, the Synod or of any agency thereof. Members of the board of directors or other governing body of the Organization that are simultaneously officers, board members, or employees of the LCMS or any LCMS or Synod agency shall disclose such participation in writing to the Board of Directors of Synod through the Office of the Secretary and certify that such participation is solely in that person's individual capacity and is not an *ex officio*, elected, or designated representative of the LCMS, the Synod or the agency served. Such participation must also be disclosed to the LCMS or agency served (LCMS Bylaw 1.5.2).

m.  **Publications; Identification as RSO; Explanation of Status.** The Organization agrees to identify the organization as an RSO of the Synod generally, where appropriate, but especially when communicating with LCMS congregations and their members. The Organization agrees to take care in any correspondence, advertising, marketing, and other program materials that identify the Organization as an RSO of the Synod never to suggest that RSO status (i) constitutes an endorsement or guarantee of the fiscal solvency of the organization or of any of its services or programs or (ii) expresses or implies endorsement or guarantee of the fiscal solvency of the organization or any responsibility for or guarantee of the debts or other financial obligations of the Organization or its subsidiaries and/or affiliates by the LCMS. The Organization further agrees to make readily accessible Synod's explanatory material regarding the RSO program, principally by providing a prominent link to lcms.org/rso in association with any organizational website or significant publication identifying the Organization as an RSO of the Synod.

n.  **Character of RSO Programs and Governance and Classification by LCMS.** The Organization understands that LCMS grants RSO status under a particular section of the LCMS Rules based on its understanding of the Organization's work and agrees to inform the LCMS in advance of contemplated changes in its programming or governance, including changes in the proportion of members of LCMS congregations on its governing board or in its executive leadership, with the same potentially requiring reevaluation of the Organization's classification under the recognized service organization program.

o.  **Relation to Synod Members, Congregational and Individual.** The Organization agrees to respect the rights and obligations of Synod's members, individual and congregational, especially as relate to the call, service, and ecclesiastical supervision of church workers rostered by the LCMS, as elaborated in LCMS Bylaw 6.2.1 (b).

p.  **Relation to Synod's Districts and Office of International Mission.** The Organization agrees to respect the authority of Synod's districts, especially as relates to ecclesiastical oversight by relevant district president(s), as elaborated in LCMS Bylaw 6.2.1 (c), to inform and seek the counsel of relevant district president(s) prior to engaging in new activities in their districts, and to inform, seek the counsel of, and cooperate with the LCMS Office of International Mission in its international work, respecting any protocol agreements between the LCMS and its partner churches, as elaborated in LCMS Bylaw 6.2.1 (e).

q.  **Call of LCMS Rostered Ordained and Commissioned Ministers; Call-Related Disputes.** The Organization agrees that its board may extend an LCMS-recognized, regular call to ordained and commissioned workers of the Synod only as permitted and specified in LCMS Bylaw 6.2.2.2 and related policies, and that the Organization submits, as an exclusive remedy, to resolution of disputes arising under the divine call of such workers under the dispute resolution process of the LCMS.

r.  **Scope and Change of Program Terms.** The Organization understands that RSO program requirements other than those stated explicitly in this Agreement may apply, as stated in the LCMS Rules attached as exhibits or as they may hereafter be amended. The Organization understands further that the LCMS and its responsible boards and offices can alter the terms of

**The Lutheran Church—Missouri Synod**                    **Board of Directors Policy Manual**

the RSO program at any time. The Organization agrees, upon notice of such change, to accept RSO program terms as modified or, should the Organization determine such terms to be unacceptable, to notify the LCMS promptly of its termination of this Agreement as described in Section 5.

**Section 5. Effectiveness; Termination.** This Agreement shall be effective upon the execution and delivery of this Agreement by all parties hereto and shall remain in full force and effect for a period of five (5) years thereafter unless terminated earlier as set forth in this Section. Either party hereto may, with or without cause, terminate this Agreement and all rights hereunder upon 30 days' written notice to the other party hereto. Upon the effective date of the termination of this Agreement, the Organization shall cease representing itself as a RSO of LCMS, including the use of any written, electronic, or other communications or written material and shall, upon request of the LCMS, execute documents to evidence such termination and return any materials in possession of the Organization reflecting status as an RSO.

**Section 6. Laws.** This Agreement will be governed by and construed in accordance with the laws of the State of Missouri.

**Section 7. Notices.** Except as otherwise provided herein, it shall be sufficient service of any notice, request, demand, authorization, direction, consent, waiver or other paper required or permitted by this Agreement to be made, given or furnished to or filed with the following persons, if the same shall be delivered by personal delivery, prepaid overnight delivery service, or certified mail, return receipt request, postage prepaid, or transmitted by electronic mail, at the addresses or electronic mail address listed on the signature page hereto. All notices given as aforesaid shall be deemed given on the day on which the same are hand delivered or sent by electronic mail, on the second day following the date on which the same have been mailed or on the day following the day on which the same are sent by overnight delivery service. Any party may from time to time designate, by notice given hereunder to the others or such parties, such other mailing or electronic mail address to which subsequent notices, certificates or other communications shall be sent.

**Section 8. Miscellaneous.** This Agreement inures to the benefit of, and shall be binding upon, the parties hereto and their respective permitted successors and assigns. Notwithstanding the foregoing, neither party hereto may assign this Agreement without the prior written consent of the other party hereto, which may be granted or withheld in the non-assigning party's sole and absolute discretion. This Agreement contains the entire agreement and understanding of the parties in respect to the subject matter hereof, and the same may not be amended, modified or discharged nor may any of its terms be waived except by an instrument in writing signed by the party to be bound thereby. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. The transmission by facsimile or email of a signed counterpart of this Agreement, or the execution and transmission of this Agreement utilizing DocuSign, AdobeSign or a similar electronic signature program, to a party shall have the same binding effect as the hand delivery of an originally signed counterpart hereof. Time is of the essence in this Agreement. The preparation of this Agreement has been a joint effort of the parties and the resulting documents shall not, solely as a matter of judicial construction, be construed more severely against one of the parties than the other. All exhibits attached hereto are hereby incorporated herein by this reference.

[SIGNATURES ON FOLLOWING PAGE]

Case 1:23-cv-01042-RP    Document 9-1    Filed 01/23/24    Page 320 of 365
Exhibit 5 to Defendants' Motion to Dismiss
Page 120 of 122

The Lutheran Church—Missouri Synod                     Board of Directors Policy Manual

**SIGNATURE PAGE**
**RECOGNIZED SERVICE ORGANIZATION AGREEMENT**
**THE LUTHERAN CHURCH—MISSOURI SYNOD**
**Office of the Secretary**
**1333 S. Kirkwood Road**
**St. Louis, MO 63122-7295**
**Phone: 800-248-1930**
**Email: _____**

Organization:
Address:
‑
Phone:
Email:

Status granted to the Organization subject to LCMS Rules for a
**Tier [I,II]**   (only for Educational and Mercy Classes)
**[Witness, Educational, Mercy]**
Service Organization (LCMS Bylaw 6.2.2).

**IN WITNESS WHEREOF**, this Agreement is entered into by the LCMS and the Organization as of the
respective dates set forth below:

**LCMS:**                                             **Organization:**

The Lutheran Church—Missouri Synod:            [Insert name of RSO]
By:                                            By:
Name:                                          Name:
Title:                                         Title:
Date:                                          Date:

---

**8.4        Monitoring**

---

| Section Revision History | |
|---|---|
| 2022.11.18 | § 8 – Comprehensive Revision |

Exhibit 5 to Defendants' Motion to Dismiss
Page 121 of 122
Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 321 of 365

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

| § 9 | **Appendix** |
|---|---|
| **9.1** | **Board of Directors Triennial Calendar of Activities** |

| _Meeting_ | _Policy Review_ (3.17.2) | _Monitor/Review or Receive_ | _Board Actions*_ |
|---|---|---|---|
| **September**<br>1st Year - 2023<br>**August**<br>2nd Year - 2024<br>3rd Year - 2025 | **1st Year of Triennium**<br>• (none)<br><br>**2nd Year**<br>• §3 Board Self-Governance / Governance Process<br><br>**3rd Year**<br>• §6 Management Policies for Synod and All Agencies | **Annually**<br>• Report of Board-Designated Representatives (Policy 4.12) | **Annually**<br>• Conflict of Interest<br><br>**1st Year of Triennium**<br>• Election of Board Officers and Executive Committee<br>• Compliance Documents:<br>  o Conflict of Interest<br>  o LCMS Financial & Organizational Misconduct<br>  o LCMS Best Practices<br>• Board Meeting Schedule<br>• Adopt _BOD Triennial Calendar of Activities_<br>• Appointments:<br>  o LFND MaL<br>  o CUS CoM<br>• Designation of Interim Persons (Policy 4.8) |
| **November**<br>1st Year - 2023<br>2nd Year - 2024<br>3rd Year - 2025 | **1st Year of Triennium**<br>• Board-wide review of §2 Board Objectives (see Policy section 2.8)<br><br>**2nd Year**<br>• §4 Board Governance Relationships (Sections 4.1–4.13)<br>• Strategic Plan Templates (Policy 4.15.6)<br><br>**3rd Year**<br>• §7 Management Policies for Agencies Outside of Corporate Synod | **Annually**<br>• Audit Report Summary - All Agencies listed in Bylaw 3.3.4.6(b)<br>• LCMS Corporate Synod Corporations Listing<br>• Listing of LCMS Real Properties (Policy 5.3.5.8)<br>• POA Listing | **Annually**<br>• Receive Audited Statements<br>• Engage Auditors, Adopt Audit Charters & Audit Plan<br>• Agenda Item - Designation of Unrestricted Net Assets<br><br>**1st Year of Triennium**<br>• Determine the need to appoint Board members<br>• Designate Board Representatives (Policy 4.12)<br><br>**3rd Year**<br>• Board Report to Convention |

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 322 of 365
Exhibit 5 to Defendants' Motion to Dismiss
Page 122 of 122

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

| _Meeting_ | _Policy Review_ (3.17.2) | _Monitor/Review or Receive_ | _Board Actions*_ |
|---|---|---|---|
| **February**<br>1st Year - 2024<br>2nd Year - 2025<br>3rd Year - 2026 | **1st Year of Triennium**<br>• §0 Preface<br>• §1 Board Responsibility and Accountability<br>• §2 Board Objectives<br><br>**2nd Year**<br>• §4 Board Governance Relationships (Sections 4.14–4.20)<br><br>**3rd Year**<br>• §8 Auxiliaries and Recognized Service Organizations<br>• §9 Appendix | **Annually**<br>• Compensation Survey - Salary Report<br>• Employee Handbook reviewed by Personnel Committee<br>• Personnel Committee initiate Performance Evaluation of CAO/CFO<br>• HR-Personnel/Staffing Report and Projections<br><br>**3rd Year**<br>• Governance Committee begins Board Self-Review process<br>• Chairman and CAO present draft BOD Convention report to the Board | **Annually**<br>• Salary Classification and Ranges<br>• Salary, benefit, and bonus budget projections<br>• Compliance Documents:<br>  ○ Conflict of Interest<br>  ○ LCMS Financial & Organizational Misconduct<br>  ○ LCMS Best Practices<br><br>**1st Year of Triennium**<br>• Engage General Counsel<br>• Appoint BOD Members, if necessary<br>• CMO Appointment<br><br>**2nd Year**<br><br>**3rd Year**<br>• Board Overtures to Convention |
| **May**<br>1st Year - 2024<br>2nd Year - 2025<br>3rd Year - 2026 | **1st Year of Triennium**<br>• (none)<br><br>**2nd Year**<br>• §5 Management Policies for Synod and its Agencies<br><br>**3rd Year**<br>• (none) | **Annually**<br>• Budget Process & Information<br>• Annual Risk Management Report<br>• Personnel Committee report Performance Evaluation of CAO/CFO to Board<br>• Audit Committee to review Grants by Agencies<br>• Audit Committee to review Lines of Credit and Guarantees<br>• Audit Committee to review Signature Authority<br><br>**3rd Year**<br>• Governance Committee reviews and reports to BOD the results of the Board Self-Review | **Annually**<br>• Adopt Budgets (Operating & Capital)<br>• Insurance<br>• Policy Limits/Deductibles<br>• Officers Salary Recommendation<br>• Appointments:<br>  ○ LCEF Members-at-large<br>  ○ CPS Board of Directors<br><br>**1st Year of Triennium**<br>• Surplus Convention Funds Resolution<br><br>**2nd Year**<br>• Adopt Convention Budget |

| Section Revision History | |
|---|---|
| 2023.02.09 | § 9 – Comprehensive Revision |

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 323 of 365
**Exhibit 6 to Defendants' Motion to Dismiss**
**Page 1 of 13**

**BYLAWS OF**

**CONCORDIA UNIVERSITY TEXAS**

November 8, 2022

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 324 of 365
Exhibit 6 to Defendants' Motion to Dismiss
Page 2 of 13

# TABLE OF CONTENTS

**Page**

## ARTICLE ONE

### OFFICES

Section 1.1. <u>Location of Offices</u>.................................................................1

## ARTICLE TWO

### PURPOSES

Section 2.1. <u>Specific Purposes</u>................................................................1
Section 2.2. <u>Limitations on Activities</u>.......................................................1
Section 2.3. <u>Limitations on Distributions</u>..................................................2
Section 2.4. Alignment; Confession...........................................................2
Section 2.5. <u>Board Retains Discretion</u>.......................................................2

## ARTICLE THREE

### MEMBERSHIP

## ARTICLE FOUR

### BOARD OF REGENTS

Section 4.1. <u>Governance of the University</u>.................................................2
Section 4.2. <u>Duties of the Board of Regents</u>..............................................3
Section 4.3. <u>Number, Qualifications, Elections, and Term of Office</u>...........3
Section 4.4. <u>Removal; Filling of Vacancies</u>...............................................4
Section 4.5. <u>Place of Meetings</u>................................................................4
Section 4.6. <u>Regular Meetings</u>................................................................4
Section 4.7. <u>Special Meetings</u>.................................................................4
Section 4.8. <u>Quorum, and Manner of Acting</u>............................................4
Section 4.9. <u>Compensation of Members of the Board</u>................................4
Section 4.10. <u>Action Without a Meeting</u>...................................................5
Section 4.11. <u>Action Without a Meeting by Use of a Conference Telephone
        or Video Conferencing</u>.......................................................5

## ARTICLE FIVE

### NOTICES

Section 5.1. <u>Manner of Giving Notice</u>.....................................................5
Section 5.2. <u>Waiver of Notice</u>................................................................5

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 325 of 365
Exhibit 6 to Defendants' Motion to Dismiss
Page 3 of 13

## ARTICLE SIX

## MANAGEMENT OF THE UNIVERSITY

Section 6.1. Administration of the University ...................................................6
Section 6.2. Election of the President ...................................................6
Section 6.3 Qualifications of the President ...................................................6
Section 6.4. Duties of the President ...................................................6
Section 6.5. Compensation ...................................................6
Section 6.6. Term of Office; Filling of Vacancies; Removal ...................................................6

## ARTICLE SEVEN

## MISCELLANEOUS

Section 7.1. Loans to Officers and Board Members ...................................................6
Section 7.2. Signature of Negotiable Instruments ...................................................7
Section 7.3. Fiscal Year ...................................................7
Section 7.4. Seal ...................................................7
Section 7.5. Indemnification ...................................................7
Section 7.6. Books and Records ...................................................10

## ARTICLE EIGHT

## AMENDMENTS OF THE BYLAWS

# AMENDED AND RESTATED
# BYLAWS
# OF
# CONCORDIA UNIVERSITY TEXAS

**These amended and restated bylaws supersede all prior bylaws of the University.**

## ARTICLE ONE

## OFFICES

**Section 1.1. <u>Location of Offices</u>.** Concordia University Texas (the "University") may have, in addition to its registered office, offices and places of business at such places, both within and without the State of Texas, as the Board of Regents of the University, which serves as the board of directors (the "Board"), may from time to time determine or the business and affairs of the University may require.

## ARTICLE TWO

## PURPOSES

**Section 2.1. <u>Specific Purposes</u>.** The University shall have such purpose as set forth in the articles of incorporation for the University (the "Articles of Incorporation"), as amended, supplemented, or restated. Such purpose includes but is not limited to the support and maintenance of an institution of higher education aligned with, but not subject to the authority of or governance by, the Lutheran Church – Missouri Synod ("LCMS"). Subject to the restrictions and limitations set forth herein, the University shall have the power to do all lawful acts necessary or desirable to carry out its purposes, including, but not limited to, maintaining and holding real and/or personal property and applying the whole or any part of the income therefrom and the principal thereof exclusively for charitable and/or educational purposes, either directly or by contributions to organizations that qualify as exempt organizations under Section 501(c)(3) of the Internal Revenue Code and its regulations as they now exist or as they may be hereafter amended.

**Section 2.2. Limitations on Activities.** The University is a non-profit corporation and shall have all of the powers, duties, authorizations, and responsibilities as provided in the Texas Business Organizations Code (the "TBOC"). Notwithstanding any other provision of the Articles of Incorporation or these Bylaws, the University shall not conduct or execute any activities not permitted to be conducted or executed by an organization exempt from taxation under Section 501(c)(3) of the Internal Revenue Code and its regulations as they now exist or as they may be hereafter amended. Upon dissolution of the University or the winding up of its affairs, the assets of the University shall be transferred, conveyed, and distributed to The Lutheran Church-Missouri Synod, a nonprofit Missouri corporation provided, however, if The Lutheran Church-Missouri Synod is no longer then in existence or is no longer exempt under Section 501(c)(3) of the Internal Revenue Code of 1986 (as the same may hereafter be amended and supplemented), then, in such event, all such assets shall be transferred, conveyed and distributed to such other nonprofit organization(s) as may be specified in or provided for under the plan of distribution adopted by

November 8, 2022                    -1-

Exhibit 6 to Defendants' Motion to Dismiss
Page 5 of 13

the University, provided, however, that in any event, each such distributee organization shall be exempt under the provisions of Section 501(c)(3) of the Internal Revenue Code of 1986 (as the same may hereafter be amended and supplemented).

Section 2.3. <u>**Limitations on Distributions**</u>. No substantial part of the activities of the University shall be the carrying on of propaganda, or otherwise attempting to influence legislation, and the University shall not participate in, or intervene in (including the publication or distribution of statements), any political campaign on behalf of any candidate for public office. No part of the earnings of the University shall inure to the benefit of any member of the Board or officer of the University or any private individual (except that reasonable compensation may be paid for services rendered to or for the University affecting one or more of its purposes), and no member of the Board or officer of the University, or any private individual, shall be entitled to share in the distribution of any of the Corporate assets on dissolution of the University or otherwise.

Section 2.4. **Alignment; Confession.** The University is and shall, without being subject to the authority of or governance by the Lutheran Church – Missouri Synod, operate as an educational institution that is aligned with the Lutheran Church – Missouri Synod and subscribes to the Confession of the LCMS as currently outlined in Article II of the LCMS Constitution, namely that it accepts without reservation:

1. The Scriptures of the Old and the New Testament as the written Word of God and the only rule and norm of faith and of practice;
2. All the Symbolical Books of the Evangelical Lutheran Church as a true and unadulterated statement and exposition of the Word of God, to wit: the three Ecumenical Creeds (the Apostles' Creed, the Nicene Creed, the Athanasian Creed), the Unaltered Augsburg Confession, the Apology of the Augsburg Confession, the Smalcald Articles, the Large Catechism of Luther, the Small Catechism of Luther, and the Formula of Concord.

The University's subscription to the Confession in Article II will be reviewed and affirmed annually by the Board and is unalterable.

<u>Section 2.5 **Board Retains Discretion**. All determinations regarding the university's alignment with the Lutheran Church – Missouri Synod, including but not limited to, the university's subscription and adherence to the Confession of the LCMS as currently outlined in Article II of the LCMS Constitution, and qualifications for board members and the presidency, will be subject to and determined by the sole and exclusive discretion of the Board of Regents.</u>

## <u>ARTICLE THREE</u>

### **MEMBERSHIP**

The University shall have no members.

## <u>ARTICLE FOUR</u>

### **BOARD OF REGENTS**

November 8, 2022                                          -2-

Exhibit 6 to Defendants' Motion to Dismiss
Page 6 of 13

**Section 4.1. <u>Governance of the University</u>.** The University shall be governed by a Board of Regents ("the Board"), which shall have all of the rights, powers, privileges, and limitations of liability of directors of a nonprofit corporation organized under the TBOC.

**Section 4.2. <u>Duties of the Board of Regents</u>.** The Board shall establish policies and directives governing the business and programs of the University and shall delegate to the President, subject to the provisions of these Bylaws, the authority and responsibility to see that the policies and directives are appropriately followed. The Board of Regents shall develop policies which delineate their responsibilities and duties as well as those of the President of the University. The Board shall elect a Chairman, Vice Chairman, and Secretary responsible for leading and conducting the efforts of the Board and for the recording of the actions of the Board.

**Section 4.3. <u>Number, Qualifications, Elections, and Term of Office.</u>** The Board shall have up to twenty (20) but at least ten (10) members. The number of Board members may be increased or decreased by the affirmative vote of a majority of the then-serving Board of Regents; however, at no time shall the Board have fewer than three (3) members as required by the TBOC. A Board member need not be a resident of the State of Texas. All appointments to the Board shall be for three (3) year terms. No person shall serve more than three (3) consecutive terms. After serving a total of three (3) terms, a Board member may be eligible for reconsideration as a Board member after two (2) years have passed since the conclusion of such Board member's service. All Board members shall be approved by a majority vote of the Board.

**The Board shall be composed of the following:**

- All members of the Board of Regents shall be members of a Lutheran Church – Missouri Synod congregation.
- At least thirty (30) percent of the Board shall be ordained or commissioned members of the Lutheran Church – Missouri Synod, including at least two ordained and two commissioned.
- One Board seat will be reserved for a representative from the Lutheran Church-Missouri Synod (if ordained or commissioned will be considered part of the thirty percent).
- One Board seat will be reserved for a representative from the Texas District of the Lutheran Church-Missouri Synod (if ordained or commissioned will be considered part of the thirty percent).

**Qualifications of all Board members:**

- Be a Christian role model for others, attracting others to Christ through Christ-like conduct and conversation and exemplifying a lifestyle that the Christian community expects of its leaders;
- Be in harmony with and willing to affirm and support Article II of the LCMS Constitution
- Be a church member in good standing, participating in the mission of the local church;

November 8, 2022                                             -3-

Exhibit 6 to Defendants' Motion to Dismiss
Page 7 of 13

- Have background and experience that adds to a balanced make-up of the Board in terms of occupation, geographical location, academic training, gender, ethnicity, and age.

- In addition, all Board members will:
  a. Undergo an in-depth interview with members of the Board Nomination Committee and the Board Chair prior to initial appointment;
  b. Undergo Board orientation and training prior to their first meeting;
  c. Undergo an interview prior to any and each re-appointment.

**Section 4.4. <u>Removal; Filling of Vacancies</u>.** A Board member may be removed for cause at any duly constituted meeting of the Board, by the affirmative vote of a majority of then-serving Board members. Each Board member shall have the right to resign at any time upon written notice thereof to the Board Chair, Secretary of the Board, or the President. Unless otherwise specified in the notice, the resignation shall take effect upon receipt thereof, and the acceptance of such resignation shall not be necessary to make it effective. Vacancies on the Board may be filled by a majority vote of the Board at a Board meeting at which a quorum is present. A Board member elected to fill a vacancy shall be elected for the unexpired term of his or her predecessor in office.

**Section 4.5. <u>Place of Meetings</u>.** Meetings of the Board, annual, regular, or special, may be held either within or without the State of Texas.

**Section 4.6. <u>Regular Meetings</u>.** Regular meetings of the Board, of which no notice shall be necessary, shall be held at such times and places as may be fixed from time to time by resolution adopted by the Board and communicated to all Board members. Except as otherwise provided by statute, the Articles of Incorporation, or these Bylaws, any and all business may be transacted at any regular meeting. All regular meetings may include an executive session.

**Section 4.7. <u>Special Meetings</u>.** Special meetings of the Board may be called by the Chairman on twenty-four (24) hour's notice to each Board member, either personally or by mail or by facsimile or electronic mail. Special meetings shall be called by the Chairman or Secretary in like manner and on like notice, on the written request of three (3) Board members. The business to be transacted at, and the purpose of, any special meeting of the Board shall be limited to that which is specified in the notice or the waiver of notice of such meeting.

**Section 4.8. <u>Quorum and Manner of Acting</u>.** At all meetings of the Board, the presence of a majority of the number of Board members fixed by these Bylaws shall be necessary and sufficient to constitute a quorum for the transaction of business except as otherwise provided by statute, by the Articles of Incorporation, or by these Bylaws. The act of a majority of the number of Board members present at a meeting at which a quorum is present shall be the act of the Board unless the act of a greater number is required by statute, by the Articles of Incorporation, or by these Bylaws, in which case the act of such greater number shall be requisite to constitute the act of the Board. If a quorum shall not be present at any regular meeting of the Board, the Board members present thereat may adjourn the meeting from time to time, without notice other than announcement at the meeting, until a quorum shall be present. Upon the resumption of such an

November 8, 2022                                    -4-

Exhibit 6 to Defendants' Motion to Dismiss
Page 8 of 13

adjourned meeting, any business may be transacted which might have been transacted at the meeting as if originally convened. This provision does not apply to special meetings.

**Section 4.9. <u>Compensation of Members of the Board</u>.** Members of the Board as such will not receive any compensation for their services. However, any Board member may be reimbursed for his or her actual expenses incurred in the performance of his or her duties. No member of the Board shall be eligible to appointment to any paid employment at the University. Nothing herein contained shall be construed to preclude any Board member from serving the University in any other capacity and receiving compensation, therefore.

**Section 4.10. <u>Action Without a Meeting</u>**. Any action required or permitted to be taken at a meeting of the Board may be taken without a meeting if a consent in writing setting forth the action so taken is signed by all the members of the Board. Such consent shall have the same force and effect as a unanimous vote at a meeting and may be stated as such in any document.

**Section 4.11. <u>Action Without a Meeting by Use of a Conference Telephone or Video Conferencing</u>.** Subject to the provisions required or permitted by the controlling law for notice of meetings, members of the Board, or members of any committee designated by the Board, may participate in and hold a meeting of the Board, or such committee, by means of a conference telephone, video, or similar communications equipment by means of which all persons participating in the meeting can communicate with each other, and participation in a meeting pursuant to this Section shall constitute presence in person at such meeting, except where a person participates in the meeting for the express purpose of objecting to the transaction of any business on the ground that the meeting is not lawfully called or convened.

<div align="center">

**ARTICLE FIVE**

**NOTICES**

</div>

**Section 5.1. <u>Manner of Giving Notice</u>.** Whenever, under the provisions of the TBOC, the Articles of Incorporation, or these Bylaws, notice is required to be given to any committee member or member of the Board, and no provision is made as to how such notice shall be given, it shall not be construed to mean personal notice, but any such notice may be given in writing by mail, postage prepaid, addressed to such committee member or member of the Board at his or her address as it appears on the records of the University by fax at the number given by the member or by email to the address given by the member. Any notice required or permitted to be given by mail shall be deemed to be delivered at the time when the same shall be thus deposited in the United States mail, as previously mentioned.

**Section 5.2. <u>Waiver of Notice</u>.** Whenever any notice is required to be given to any committee member or member of the Board under the provisions of the TBOC, the Articles of Incorporation, or these Bylaws, a waiver thereof in writing signed by the person or persons entitled to such notice, whether before or after the time stated therein, shall be deemed equivalent to the giving of such notice. Attendance by a member of the Board at a committee meeting or a meeting of the Board shall constitute a waiver of notice of such meeting, except where a member of the Board attends a meeting for the express purpose of objecting to the transaction of any business on the ground that the meeting is not lawfully called or convened.

November 8, 2022                                       -5-

Exhibit 6 to Defendants' Motion to Dismiss
Page 9 of 13

## ARTICLE SIX

### MANAGEMENT OF THE UNIVERSITY

**Section 6.1. Administration of the University.** The daily administration of the University shall be the responsibility of the President. The President shall be, ex officio, a member of the Board without the right to vote and be its sole administrative officer. The President shall report to the Board of Regents of the University.

**Section  6.2. Election of the President.** The procedure for the election of the President shall be conducted as required by the policies promulgated by the Board. The terms of the employment contract shall be set by the Board of Regents. Renewal of the contract shall be conducted as required by the policies promulgated by the Board.

**Section 6.3 Qualifications of the President**. The President shall possess the following qualifications, among others as determined by the Board:
- Be a member in good-standing of a congregation of the Lutheran Church-Missouri Synod.
- Understand and articulate the theology, history, and practice of the Lutheran Church-Missouri Synod, especially in its relation to higher education.
- Commit to and affirm their support of Article II of the LCMS Constitution.
- Undergo ongoing training and development in their role as the head of the University.
- Have previous administrative experience in a complex organization.
- Experience demonstrating leadership experience in multiple settings.
- Be able to fulfill published expectations of the position description.

**Section 6.4. Duties of the President**. The President shall be the executive officer of the University and serve as the head of the University. In this capacity the President has the authority to hire, promote, dismiss, and establish compensation levels for all staff and employees of the University. The President has the authority to appoint officers of the University for its effective administration and to preserve the financial and academic integrity of the institution. In exercising this authority the President shall function within the policies established by the Board of Regents.

**Section  6.5. Compensation.** The compensation of the President shall be fixed from time to time by the Board, consistent with these Bylaws and the Board's policies.

**Section 6.6. Term of Office: Filling of Vacancies: Removal.** Any officer or agent elected or appointed by the Board may be removed at any time by the affirmative vote of a majority of the Board, but such removal shall be without prejudice to the contract rights, if any, of the person so removed. Each officer of the University shall hold office until a successor is chosen and qualified in their stead or until their earlier death, resignation, retirement, disqualification, or removal from office.

### ARTICLE SEVEN

**Exhibit 6 to Defendants' Motion to Dismiss**
**Page 10 of 13**

## MISCELLANEOUS

**Section 7.1. <u>Loans to Officers and Board Members</u>.** No loans shall be made by the University to any officers or member of the Board, and any member of the Board voting for or assenting to the making of any such loan, and any officer participating in the making thereof, shall be jointly and severely liable to the University for the amount of such loan until repayment thereof.

**Section   7.2. <u>Signature of Negotiable Instruments</u>.** All bills, notes, checks or other instruments for the payment of money shall be signed or countersigned by such officer, officers, agent, or agents, and in such manner, as are permitted by these Bylaws and as from time to time may be prescribed by resolution (whether general or special) of the Board, and the Policy Manual, as applicable.

**Section   7.3. <u>Fiscal Year</u>.** The fiscal year of the University shall be fixed by resolution of the Board.

**Section 7.4. <u>Seal</u>.** The seal of the University, if any, shall be in such form as  shall be adopted and approved, from time to time, by the Board. The seal may be used by causing it, or a facsimile thereof, to be impressed, affixed, imprinted or in any manner reproduced.

**Section 7.5. <u>Indemnification</u>.**

**A.     <u>Definitions</u>.** In this Section:

(l)     "*Indemnitee*" means (i) any present or former member of the Board ("Board Member"), advisory Board Member or officer of the University; (ii) any person who, while serving in any of the capacities referred to in clause (i) hereof, served at the University's request as a Board Member, officer, partner, venturer, proprietor, trustee, employee, agent, or similar functionary of another foreign or domestic corporation, partnership, joint venture, trust, employee benefit plan or other enterprise; and (iii) any person nominated or designated by (or pursuant to authority granted by) the Board, or any committee thereof to serve in any of the capacities referred to in clauses (i) or (ii) hereof.

(2)     "*Official Capacity*" means (i) when used with respect to a Board Member, the office of Board Member of the University, and (ii) when used with respect to a person other than a Board Member, the elective or appointive office of the University held by such person, or the employment or agency relationship undertaken by such person on behalf of the University, but in each case does not include service for any other foreign or domestic corporation or any partnership, joint venture, sole proprietorship, trust, employee benefit plan, or other enterprise, except as allowed for in Section 7.5.A(1)(ii) above.

(3)     "*Proceeding*" means any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative, arbitrative, or investigative, any appeal in such an action, suit or proceeding, and any inquiry or investigation that could lead to such an action, suit or proceeding.

November 8, 2022                                        -7-

Exhibit 6 to Defendants' Motion to Dismiss
Page 11 of 13

    **B.**   <u>**Indemnification**</u>. The University shall indemnify every Indemnitee against all judgments, penalties (including excise and similar taxes), fines, amounts paid in settlement, and reasonable expense actually incurred by the Indemnitee in connection with any Proceeding in which he or she was, is or is threatened to be named a defendant or respondent, or in which he or she was or is a witness without being named a defendant or respondent, by reason, in whole or in part, of his or her serving or having served, or having been nominated or designated to serve, in any of the capacities referred to in Section 7.5.A. above, if it is determined in accordance with Section 7.5.D. that the Indemnitee (i) conducted himself or herself in good faith, (ii) reasonably believed, in the case of conduct in his or her Official Capacity, that his or her conduct was in the University's best interests and, in all other cases, that his or her conduct was at least not opposed to the University's best interests, and (iii) in the case of any criminal Proceeding, had no reasonable cause to believe that his or her conduct was unlawful; *provided, however,* that in the event that an Indemnitee is found liable to the University, or is found liable on the basis that personal benefit was improperly received by the Indemnitee, the indemnification (i) is limited to reasonable expenses actually incurred by the Indemnitee in connection with the Proceeding and (ii) shall not be made in respect of any Proceeding in which the Indemnitee shall have been found liable for willful or intentional misconduct in the performance of his or her duty to the University. Except as provided in the immediately preceding proviso to the first sentence of this Section 7.5.B., no indemnification shall be made under this Section 7.5.B. in respect of any Proceeding in which such Indemnitee shall have been (i) found liable on the basis that personal benefit was improperly received by him or her, whether or not the benefit resulted from an action taken in the Indemnitee's Official Capacity, or (ii) found liable to the University. The termination of any Proceeding by judgment, order, settlement, or conviction, or on a plea of nolo contendere, or its equivalent, is not of itself determinative that the Indemnitee did not meet the requirements set forth in clauses (i), (ii) or (iii) in the first sentence of this Section 7.5.B. An Indemnitee shall be deemed to have been found liable in respect of any claim, issue, or matter only after the Indemnitee shall have been so adjudged by a court of competent authority after exhaustion of all appeals therefrom. Reasonable expenses shall include, without limitation, all court costs and all fees and disbursements of attorneys for the Indemnitee.

    **C.**   <u>**Successful Defense**</u>. Without limitation of Section 7.5.B. and in addition to the indemnification provided for in Section 7.5.B., the University shall indemnify every Indemnitee against reasonable expenses incurred by such person in connection with any Proceeding in which he or she is a witness or a named defendant or respondent because he or she served in any of the capacities referred to in Section 7.5.B., if such person has been wholly successful, on the merits or otherwise, in defense of the Proceeding.

    **D.**   <u>**Determinations**</u>. Any indemnification under Section 7.5.B. (unless ordered by a court of competent authority) shall be made by the University only upon a determination that indemnification of the Indemnitee is proper in the circumstances because he or she has met the applicable standard of conduct. Such determination shall be made (i) by the Board by a majority vote of a quorum consisting of Board Members who, at the time of such vote, are not named defendants or respondents in the Proceeding; (ii) if such a quorum cannot be obtained, then by a majority vote of all Board Members (in which designation Board Members who are named defendants or respondents in the Proceeding may participate), such committee to consist solely of two (2) or more Board Members who, at the time of the committee vote, are not named defendants

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 334 of 365
Exhibit 6 to Defendants' Motion to Dismiss
Page 12 of 13

or respondents in the Proceeding; or (iii) by special legal counsel selected by the Board or a committee thereof by vote as set forth in clauses (i) or (ii) of this Section 7.5.D. or, if the requisite quorum of all of the Board Members cannot be obtained therefor, and such committee cannot be established, by a majority vote of all of the Board Members (in which Board Members who are named defendants or respondents in the Proceeding may participate). Determination as to reasonableness of expenses shall be made in the same manner as the determination that indemnification is permissible, except that if the determination that indemnification is permissible is made by special legal counsel, determination as to reasonableness of expenses must be made in the manner specified in clause (iii) of the preceding sentence for the selection of special legal counsel. In the event a determination is made under this Section 7.5.D. that the Indemnitee has met the applicable standard of conduct as to some matters but not as to others, amounts to be indemnified may be reasonably prorated.

**E.** **Advancement of Expenses**. Reasonable expenses (including court costs and attorneys' fees) incurred by an Indemnitee who was or is a witness or who is or is threatened to be made a named defendant or respondent in a Proceeding shall be paid by the University at reasonable intervals in advance of the final disposition of such Proceeding, and without making any of the determinations specified in Section 7.5.D., after receipt by the University of (i) a written affirmation by such Indemnitee of his or her good faith belief that he or she has met the standard of conduct necessary for indemnification by the University under this Section and (ii) a written undertaking by or on behalf of such Indemnitee to repay the amount paid or reimbursed by the University if it shall ultimately be determined that he or she is not entitled to be indemnified by the University as authorized in this Section. Such written undertaking shall be an unlimited obligation of the Indemnitee but need not be secured and it may be accepted without reference to financial ability to make repayment. Notwithstanding any other provision of this Section, the University may pay or reimburse expenses incurred by an Indemnitee in connection with his or her appearance as a witness or other participation in a Proceeding at a time when he or she is not named a defendant or respondent in the Proceeding.

**F.** **Employee Benefit Plans**. For purposes of this Section, the University shall be deemed to have requested an Indemnitee to serve an employee benefit plan whenever the performance by him or her of his or her duties to the University also imposes duties on or otherwise involves services by him or her to the plan or participants or beneficiaries of the plan. Excise taxes assessed on an Indemnitee with respect to an employee benefit plan pursuant to applicable law shall be deemed fines. Action taken or omitted by an Indemnitee with respect to an employee benefit plan in the performance of his or her duties for a purpose reasonably believed by him or her to be in the interest of the participants and beneficiaries of the plan shall be deemed to be for a purpose which is not opposed to the best interests of the University.

**G.** **Other Indemnification and Insurance.** The indemnification provided by this Section shall (i) not be deemed exclusive of, or to preclude, any other rights to which those seeking indemnification may at any time be entitled under the University's Articles of Incorporation, any law, agreement or vote of disinterested Board Members, or otherwise, or under any policy or policies of insurance purchased and maintained by the University on behalf of any Indemnitee, both as to action in his or her Official Capacity and as to action in any other capacity, (ii) continue as to a person who has ceased to be in the capacity by reason of which he or she was an Indemnitee

November 8, 2022                                    -9-

Exhibit 6 to Defendants' Motion to Dismiss
Page 13 of 13

with respect to matters arising during the period he or she was in such capacity, and (iii) inure to the benefit of the heirs, executors, and administrators of such a person.

**H.     Construction.** The indemnification provided by this Section shall be subject to all valid and applicable laws, including, without limitation, Section 8 of the TBOC, and, in the event this Section or any of the provisions hereof or the indemnification contemplated hereby are found to be inconsistent with or contrary to any such valid laws, the latter shall be deemed to control, and this Section shall be regarded as modified accordingly, and, as so modified, to continue in full force and effect.

**I.     Continuing Offer, Reliance, Etc.** The provisions of this Section (i) are for the benefit of, and may be enforced by, each Indemnitee of the University the same as if set forth in their entirety in a written instrument duly executed and delivered by the University and such Indemnitee, and (ii) constitute a continuing offer to all present and future Indemnitees. The University, by its adoption of these Bylaws, (i) acknowledges and agrees that each Indemnitee of the University has relied upon and will continue to rely upon the provisions of this Section in becoming, and serving in any of the capacities referred to in Section 7.5.A.(1) hereof, (ii) waives reliance upon, and all notices of acceptance of, such provisions by such Indemnitees, and (iii) acknowledges and agrees that no present or future Indemnitee shall be prejudiced in his or her right to enforce the provisions of this Section in accordance with their terms by any act or failure to act on the part of the University.

**J.     Effect of Amendment.** No amendment, modification or repeal of this Section or any provision hereof shall in any manner terminate, reduce or impair the right of any past, present or future Indemnitees to be indemnified by the University, nor the obligation of the University to indemnify any such Indemnitees, under and in accordance with the provisions of this Section as in effect immediately prior to such amendment, modification or repeal with respect to claims arising from or relating to matters occurring, in whole or in part, prior to such amendment, modification or repeal, regardless of when such claims may arise or be asserted.

**Section 7.6. Books and Records.** The University shall keep correct and complete books and records of account and shall also keep minutes of the proceedings of the Board and committees having any of the authority of the Board.

## ARTICLE EIGHT

## AMENDMENTS OF THE BYLAWS

The power to alter, amend or repeal these Bylaws or adopt new bylaws shall be vested in the Board provided that any such changes shall be approved by a simple majority of the Board.

\* \* \*

November 8, 2022                                                -10-

Exhibit 7 to Defendants' Motion to Dismiss
Page 1 of 12

**BYLAWS**

**OF**

**CONCORDIA UNIVERSITY TEXAS**

596941

Exhibit 7 to Defendants' Motion to Dismiss
Page 2 of 12

## TABLE OF CONTENTS

**Page**

### ARTICLE ONE

### OFFICES

**Section 1.1.** **Location of Offices** ............................................................................ 1

### ARTICLE TWO

### PURPOSES

**Section 2.1.** **Specific Purposes** .............................................................................. 1
**Section 2.2.** **Limitations on Activities** .................................................................... 1
**Section 2.3.** **Limitations on Distributions** .............................................................. 2
**Section 2.4.** **Affairs of the University** ..................................................................... 2

### ARTICLE THREE

### MEMBERSHIP

### ARTICLE FOUR

### BOARD OF REGENTS

**Section 4.1.** **Governance of the University** ............................................................. 2
**Section 4.2.** **Duties of the Board of Regents** .......................................................... 2
**Section 4.3.** **Number, Qualifications, Election and Term of Office** ...................... 2
**Section 4.4.** **Removal; Filling of Vacancies** ........................................................... 3
**Section 4.5.** **Place of Meetings** ............................................................................... 3
**Section 4.6.** **Regular Meetings** ............................................................................... 3
**Section 4.7.** **Special Meetings** ................................................................................ 3
**Section 4.8.** **Quorum and Manner of Acting** .......................................................... 3
**Section 4.9.** **Compensation of Members of the Board** ........................................... 3
**Section 4.10.** **Action Without a Meeting** ................................................................ 3
**Section 4.11.** **Action Without a Meeting by Use of a Conference Telephone** .................... 4

### ARTICLE FIVE

### NOTICES

**Section 5.1.** **Manner of Giving Notice** ................................................................... 4
**Section 5.2.** **Waiver of Notice** ................................................................................ 4

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 338 of 365
Exhibit 7 to Defendants' Motion to Dismiss
Page 3 of 12

# ARTICLE SIX

## MANAGEMENT OF THE UNIVERSITY

**Section 6.1.** Administration of the University..........................................................4
**Section 6.2.** Election of the President..................................................................4
**Section 6.3.** Duties of the President...................................................................5
**Section 6.4.** Compensation.............................................................................5
**Section 6.5.** Term of Office: Filling of Vacancies: Removal...............................................5

# ARTICLE SEVEN

## MISCELLANEOUS

**Section 7.1.** Loans to Officers and Board Members.........................................................5
**Section 7.2.** Signature of Negotiable Instruments .......................................................5
**Section 7.3.** Fiscal Year ..............................................................................5
**Section 7.4.** Seal ......................................................................................5
**Section 7.5.** Indemnification...........................................................................5
**Section 7.6.** Books and Records.........................................................................9

# ARTICLE EIGHT

## AMENDMENTS OF THE BYLAWS

Exhibit 7 to Defendants' Motion to Dismiss
Page 4 of 12

**BYLAWS**
**OF**
**CONCORDIA UNIVERSITY TEXAS**

## ARTICLE ONE

### OFFICES

**Section 1.1.   Location of Offices.** Concordia University Texas (the "University") may have, in addition to its registered office, offices and places of business at such places, both within and without the State of Texas, as the Board of Regents of the University, which serves as the board of directors, (the "Board") may from time to time determine or the business and affairs of the University may require.

## ARTICLE TWO

### PURPOSES

**Section 2.1.   Specific Purposes.** The University shall have such purpose as set forth in the articles of incorporation for the University (the "Articles of Incorporation"), as amended, supplemented or restated. Such purpose includes but is not limited to the support and maintenance of an educational institution. Subject to the restrictions and limitations set forth herein, the University shall have the power to do all lawful acts necessary or desirable to carry out its purposes, including, but not limited to, maintaining and holding real and/or personal property and applying the whole or any part of the income therefrom and the principal thereof exclusively for charitable and/or educational purposes, either directly or by contributions to organizations that qualify as exempt organizations under Section 501(c)(3) of the Internal Revenue Code and its regulations as they now exist or as they may be hereafter amended.

**Section 2.2.   Limitations on Activities.** Notwithstanding any other provision of the Articles of Incorporation or these Bylaws, the University shall not conduct or carry on any activities not permitted to be conducted or carried on by an organization exempt from taxation under Section 501(c)(3) of the Internal Revenue Code and its regulations as they now exist or as they may be hereafter amended. Upon dissolution of the University or the winding up of its affairs, the assets of the University shall be transferred, conveyed, and distributed to The Lutheran Church-Missouri Synod, a nonprofit Missouri corporation provided, however, if The Lutheran Church-Missouri Synod is no longer then in existence or is not exempt under Section 501(c)(3) of the Internal Revenue Code of 1986 (as the same may hereafter be amended and supplemented), then, in such event, all such assets shall be transferred, conveyed and distributed to such other nonprofit organization(s) as may be specified in or provided for under the plan of distribution adopted by the University, provided, however, that in any event, each such distributee organization shall be exempt under the provisions of Section 501(c)(3) of the Internal Revenue Code of 1986 (as the same may hereafter be amended and supplemented).

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 340 of 365
Exhibit 7 to Defendants' Motion to Dismiss
Page 5 of 12

**Section 2.3.   Limitations on Distributions.** No substantial part of the activities of the University shall be the carrying on of propaganda, or otherwise attempting to influence legislation, and the University shall not participate in or intervene in (including the publication or distribution of statements) any political campaign on behalf of any candidate for public office. No part of the earnings of the University shall inure to the benefit of any member of the Board or officer of the University or any private individual (except that reasonable compensation may be paid for services rendered to or for the University affecting one or more of its purposes), and no member of the Board or officer of the University or any private individual shall be entitled to share in the distribution of any of the Corporate assets on dissolution of the University or otherwise.

**Section 2.4.   Affairs of the University.** The University is and shall operate as an educational institution of The Lutheran Church -Missouri Synod, a Missouri not-for-profit corporation, subject to the provisions of the constitution and bylaws of the Lutheran Church-Missouri Synod as contained in the Handbook of the Lutheran Church-Missouri Synod, as may from time to time be amended, modified or supplemented (the "LCMS Handbook").

## ARTICLE THREE

### MEMBERSHIP

The University shall have no members.

## ARTICLE FOUR

### BOARD OF REGENTS

**Section 4.1.   Governance of the University.** The business and affairs of the University shall be governed by its Board, who may exercise all such powers of the University and do all such lawful acts and things as are set forth in the Board Policy Manual as adopted by the Board and as may from time to time be amended (the "Policy Manual").

**Section 4.2.   Duties of the Board of Regents.** In exercising its relationship to The Lutheran Church-Missouri Synod (the "Synod") and to the Board for University Education *of the Synod*, the Board of Regents shall assume the responsibilities as defined in the *LCMS* Handbook. The Board of Regents shall develop policies which delineate their responsibilities and duties as well as those of the President of the University. The Board shall elect a Chairman, Vice Chairman, and Secretary responsible for leading and conducting the efforts of the Board and for the recording of the actions of the Board.

**Section 4.3.   Number, Qualifications, Election and Term of Office.** The number, qualifications, election and term of office of the Board members shall be as set forth and governed by the provisions of the LCMS Handbook.

Section 4.4.   **Removal; Filling of Vacancies.** The removal of any member of the Board and the filling of vacancies shall be as set forth and governed by the provisions of the LCMS Handbook and the Policy Manual.

Section 4.5.   **Place of Meetings.** Meetings of the Board, annual, regular or special, may be held either within or without the State of Texas.

Section 4.6.   **Regular Meetings.** Regular meetings of the Board, of which no notice shall be necessary, shall be held at such times and places as may be fixed from time to time by resolution adopted by the Board and communicated to all Board members. Except as otherwise provided by statute, the Articles of Incorporation or these Bylaws, any and all business may be transacted at any regular meeting.

Section 4.7.   **Special Meetings.** Special meetings of the Board may be called by the Chairman on twenty-four (24) hours notice to each Board member, either personally or by mail or by facsimile or electronic mail. Special meetings shall be called by the Chairman or Secretary in like manner and on like notice on the written request of three (3) Board members. The business to be transacted at, and the purpose of, any special meeting of the Board shall be limited to that which is specified in the notice or the waiver of notice of such meeting.

Section 4.8.   **Quorum and Manner of Acting.** At all meetings of the Board, the presence of a majority of the number of Board members fixed by these Bylaws shall be necessary and sufficient to constitute a quorum for the transaction of business except as otherwise provided by statute, by the Articles of Incorporation or by these Bylaws. The act of a majority of the number of Board members present at a meeting at which a quorum is present shall be the act of the Board unless the act of a greater number is required by statute, by the Articles of Incorporation or by these Bylaws, in which case the act of such greater number shall be requisite to constitute the act of the Board. If a quorum shall not be present at any regular meeting of the Board, the Board members present thereat may adjourn the meeting from time to time, without notice other than announcement at the meeting, until a quorum shall be present. Upon the resumption of such an adjourned meeting, any business may be transacted which might have been transacted at the meeting as if originally convened. This provision does not apply to special meetings.

Section 4.9.   **Compensation of Members of the Board.** Members of the Board as such will not receive any compensation for their services. However, any Board member may be reimbursed for his or her actual expenses incurred in the performance of his or her duties. No member of the Board shall be eligible to appointment to any paid employment at the University. Nothing herein contained shall be construed to preclude any Board member from serving the University in any other capacity and receiving compensation therefore.

Section 4.10.   **Action Without a Meeting.** Any action required or permitted to be taken at a meeting of the Board may be taken without a meeting if a consent in writing setting forth the action so taken is signed by all the members of the Board. Such consent shall have the same force and effect as a unanimous vote at a meeting and may be stated as such in

596941                                    - 3 -

any document.

**Section 4.11.   Action Without a Meeting by Use of a Conference Telephone.**
Subject to the provisions required or permitted by the controlling law for notice of meetings, members of the Board or members of any committee designated by the Board may participate in and hold a meeting of the Board or such committee by means of a conference telephone or similar communications equipment by means of which all persons participating in the meeting can communicate with each other, and participation in a meeting pursuant to this Section shall constitute presence in person at such meeting, except where a person participates in the meeting for the express purpose of objecting to the transaction of any business on the ground that the meeting is not lawfully called or convened.

## ARTICLE FIVE

### NOTICES

**Section 5.1.   Manner of Giving Notice.** Whenever, under the provisions of the Texas Non-Profit Corporation Act, the Articles of Incorporation or these Bylaws, notice is required to be given to any committee member or member of the Board, and no provision is made as to how such notice shall be given, it shall not be construed to mean personal notice, but any such notice may be given in writing by mail, postage prepaid, addressed to such committee member or member of the Board at his or her address as it appears on the records of the University by fax at the number given by the member or by email to the address given by the member. Any notice required or permitted to be given by mail shall be deemed to be delivered at the time when the same shall be thus deposited in the United States mail, as aforesaid.

**Section 5.2. Waiver of Notice.** Whenever any notice is required to be given to any committee member or member of the Board under the provisions of the Texas Non-Profit Corporation Act, the Articles of Incorporation, or these Bylaws, a waiver thereof in writing signed by the person or persons entitled to such notice, whether before or after the time stated therein, shall be deemed equivalent to the giving of such notice. Attendance by a member of the Board at a committee meeting or a meeting of the Board shall constitute a waiver of notice of such meeting, except where a member of the Board attends a meeting for the express purpose of objecting to the transaction of any business on the ground that the meeting is not lawfully called or convened.

## ARTICLE SIX

### MANAGEMENT OF THE UNIVERSITY

**Section 6.1.   Administration of the University.** The daily administration of the University shall be the responsibility of the President. *He shall be, ex officio, a member of the Board without the right to vote, and be its sole administrative officer.* He shall report to the Board of Regents of the University.

**Section 6.2.   Election of the President.** The procedure for the election of the

596941                                              - 4 -

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 343 of 365
Exhibit 7 to Defendants' Motion to Dismiss
Page 8 of 12

President shall be conducted as required by the *LCMS* Handbook. The terms of the *employment* contract shall be set by the Board of Regents. Renewal of the contract shall be conducted as required by the *LCMS* Handbook.

Section 6.3. **Duties of the President.** The President shall be the executive officer of the University and serve as the spiritual, academic and administrative head of the University. In this capacity he has the authority to hire, promote, dismiss and establish compensation levels for all staff and employees of the University. He has the authority to appoint officers of the University for its effective administration and to preserve the financial and academic integrity of the institution. In exercising this authority he shall function within the policies established by the Board of Regents and the Board for Higher Education of The Lutheran Church-Missouri Synod.

Section 6.4. **Compensation.** The compensation of the President shall be fixed from time to time by the Board, consistent with these Bylaws.

Section 6.5. **Term of Office: Filling of Vacancies: Removal.** Each officer of the University shall hold office until his successor is chosen and qualified in his stead or until his earlier death, resignation, retirement, disqualification or removal from office; provided however that the term of office shall be governed by and as set forth in the LCMS Handbook.

## ARTICLE SEVEN

## MISCELLANEOUS

Section 7.1. **Loans to Officers and Board Members.** No loans shall be made by the University to any officers or member of the Board, and any member of the Board voting for or assenting to the making of any such loan, and any officer participating in the making thereof, shall be jointly and severely liable to the University for the amount of such loan until repayment thereof.

Section 7.2. **Signature of Negotiable Instruments.** All bills, notes, checks or other instruments for the payment of money shall be signed or countersigned by such officer, officers, agent or agents, and in such manner, as are permitted by these Bylaws and as from time to time may be prescribed by resolution (whether general or special) of the Board and the Policy Manual, as applicable.

Section 7.3. **Fiscal Year.** The fiscal year of the University shall be fixed by resolution of the Board.

Section 7.4. **Seal.** The seal of the University, if any, shall be in such form as shall be adopted and approved from time to time by the Board. The seal may be used by causing it, or a facsimile thereof, to be impressed, affixed, imprinted or in any manner reproduced.

Section 7.5. **Indemnification.**

596941                                         - 5 -

A.    **Definitions**. In this Section:

(1) "*Indemnitee*" means (i) any present or former member of the Board ("Board Member"), advisory Board Member or officer of the University; (ii) any person who, while serving in any of the capacities referred to in clause (i) hereof, served at the University's request as a Board Member, officer, partner, venturer, proprietor, trustee, employee, agent or similar functionary of another foreign or domestic corporation, partnership, joint venture, trust, employee benefit plan or other enterprise; and (iii) any person nominated or designated by (or pursuant to authority granted by) the Board or any committee thereof to serve in any of the capacities referred to in clauses (i) or (ii) hereof.

(2) "*Official Capacity*" means (i) when used with respect to a Board Member, the office of Board Member of the University, and (ii) when used with respect to a person other than a Board Member, the elective or appointive office of the University held by such person or the employment or agency relationship undertaken by such person on behalf of the University, but in each case does not include service for any other foreign or domestic corporation or any partnership, joint venture, sole proprietorship, trust, employee benefit plan or other enterprise, except as allowed for in Section 7.5.A(1)(ii) above.

(3) "*Proceeding*" means any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative, arbitrative or investigative, any appeal in such an action, suit or proceeding, and any inquiry or investigation that could lead to such an action, suit or proceeding.

B.    **Indemnification**. The University shall indemnify every Indemnitee against all judgments, penalties (including excise and similar taxes), fines, amounts paid in settlement, and reasonable expense actually incurred by the Indemnitee in connection with any Proceeding in which he or she was, is or is threatened to be named a defendant or respondent, or in which he or she was or is a witness without being named a defendant or respondent, by reason, in whole or in part, of his or her serving or having served, or having been nominated or designated to serve, in any of the capacities referred to in Section 7.5.A. above, if it is determined in accordance with Section 7.5.D. that the Indemnitee (i) conducted himself or herself in good faith, (ii) reasonably believed, in the case of conduct in his or her Official Capacity, that his or her conduct was in the University's best interests and, in all other cases, that his or her conduct was at least not opposed to the University's best interests, and (iii) in the case of any criminal Proceeding, had no reasonable cause to believe that his or her conduct was unlawful; *provided, however,* that in the event that an Indemnitee is found liable to the University or is found liable on the basis that personal benefit was improperly received by the Indemnitee, the indemnification (i) is limited to reasonable expenses actually incurred by the Indemnitee in connection with the Proceeding and (ii) shall not be made in respect of any Proceeding in which the Indemnitee shall have been found liable for willful or intentional misconduct in the performance of his or her duty to the University. Except as provided in the immediately preceding proviso to the first sentence of this Section 7.5.B., no indemnification shall be made under this Section 7.5.B. in respect of any Proceeding in which such Indemnitee shall have been (i) found liable on the basis that personal benefit was improperly received by him or her, **whether or not the benefit resulted from an action taken**

Exhibit 7 to Defendants' Motion to Dismiss
Page 10 of 12

in the Indemnitee's Official Capacity, or (ii) found liable to the University. The termination of any Proceeding by judgment, order, settlement or conviction, or on a plea of nolo contendere or its equivalent, is not of itself determinative that the Indemnitee did not meet the requirements set forth in clauses (i), (ii) or (iii) in the first sentence of this Section 7.5.B. An Indemnitee shall be deemed to have been found liable in respect of any claim, issue or matter only after the Indemnitee shall have been so adjudged by a court of competent jurisdiction after exhaustion of all appeals therefrom. Reasonable expenses shall include, without limitation, all court costs and all fees and disbursements of attorneys for the Indemnitee.

       **C.**    <u>**Successful Defense**</u>. Without limitation of Section 7.5.B. and in addition to the indemnification provided for in Section 7.5.B., the University shall indemnify every Indemnitee against reasonable expenses incurred by such person in connection with any Proceeding in which he or she is a witness or a named defendant or respondent because he or she served in any of the capacities referred to in Section 7.5.B., if such person has been wholly successful, on the merits or otherwise, in defense of the Proceeding.

       **D.**    <u>**Determinations**</u>. Any indemnification under Section 7.5.B. (unless ordered by a court of competent jurisdiction) shall be made by the University only upon a determination that indemnification of the Indemnitee is proper in the circumstances because he or she has met the applicable standard of conduct. Such determination shall be made (i) by the Board by a majority vote of a quorum consisting of Board Members who, at the time of such vote, are not named defendants or respondents in the Proceeding; (ii) if such a quorum cannot be obtained, then by a majority vote of all Board Members (in which designation Board Members who are named defendants or respondents in the Proceeding may participate), such committee to consist solely of two (2) or more Board Members who, at the time of the committee vote, are not named defendants or respondents in the Proceeding; or (iii) by special legal counsel selected by the Board or a committee thereof by vote as set forth in clauses (i) or (ii) of this Section 7.5.D. or, if the requisite quorum of all of the Board Members cannot be obtained therefor and such committee cannot be established, by a majority vote of all of the Board Members (in which Board Members who are named defendants or respondents in the Proceeding may participate). Determination as to reasonableness of expenses shall be made in the same manner as the determination that indemnification is permissible, except that if the determination that indemnification is permissible is made by special legal counsel, determination as to reasonableness of expenses must be made in the manner specified in clause (iii) of the preceding sentence for the selection of special legal counsel. In the event a determination is made under this Section 7.5.D. that the Indemnitee has met the applicable standard of conduct as to some matters but not as to others, amounts to be indemnified may be reasonably prorated.

       **E.**    <u>**Advancement of Expenses.**</u> Reasonable expenses (including court costs and attorneys' fees) incurred by an Indemnitee who was or is a witness or who is or is threatened to be made a named defendant or respondent in a Proceeding shall be paid by the University at reasonable intervals in advance of the final disposition of such Proceeding, and without making any of the determinations specified in Section 7.5.D., after receipt by the

University of (i) a written affirmation by such Indemnitee of his or her good faith belief that he or she has met the standard of conduct necessary for indemnification by the University under this Section and (ii) a written undertaking by or on behalf of such Indemnitee to repay the amount paid or reimbursed by the University if it shall ultimately be determined that he or she is not entitled to be indemnified by the University as authorized in this Section. Such written undertaking shall be an unlimited obligation of the Indemnitee but need not be secured and it may be accepted without reference to financial ability to make repayment. Notwithstanding any other provision of this Section, the University may pay or reimburse expenses incurred by an Indemnitee in connection with his or her appearance as a witness or other participation in a Proceeding at a time when he or she is not named a defendant or respondent in the Proceeding.

F.   **Employee Benefit Plans**. For purposes of this Section, the University shall be deemed to have requested an Indemnitee to serve an employee benefit plan whenever the performance by him or her of his or her duties to the University also imposes duties on or otherwise involves services by him or her to the plan or participants or beneficiaries of the plan. Excise taxes assessed on an Indemnitee with respect to an employee benefit plan pursuant to applicable law shall be deemed fines. Action taken or omitted by an Indemnitee with respect to an employee benefit plan in the performance of his or her duties for a purpose reasonably believed by him or her to be in the interest of the participants and beneficiaries of the plan shall be deemed to be for a purpose which is not opposed to the best interests of the University.

G.   **Other Indemnification and Insurance.** The indemnification provided by this Section shall (i) not be deemed exclusive of, or to preclude, any other rights to which those seeking indemnification may at any time be entitled under the University's Articles of Incorporation, any law, agreement or vote of disinterested Board Members, or otherwise, or under any policy or policies of insurance purchased and maintained by the University on behalf of any Indemnitee, both as to action in his or her Official Capacity and as to action in any other capacity, (ii) continue as to a person who has ceased to be in the capacity by reason of which he or she was an Indemnitee with respect to matters arising during the period he or she was in such capacity, and (iii) inure to the benefit of the heirs, executors, and administrators of such a person.

H.   **Construction.** The indemnification provided by this Section shall be subject to all valid and applicable laws, including, without limitation, Article 2.22A. of the Texas Non-Profit Corporation Act, and, in the event this Section or any of the provisions hereof or the indemnification contemplated hereby are found to be inconsistent with or contrary to any such valid laws, the latter shall be deemed to control and this Section shall be regarded as modified accordingly, and, as so modified, to continue in full force and effect.

I.   **Continuing Offer, Reliance, etc.** The provisions of this Section (i) are for the benefit of, and may be enforced by, each Indemnitee of the University the same as if set forth in their entirety in a written instrument duly executed and delivered by the University and such Indemnitee, and (ii) constitute a continuing offer to all present and future Indemnitees. The University, by its adoption of these Bylaws, (i) acknowledges and

596941                                    - 8 -

**Exhibit 7 to Defendants' Motion to Dismiss**
**Page 12 of 12**

agrees that each Indemnitee of the University has relied upon and will continue to rely upon the provisions of this Section in becoming, and serving in any of the capacities referred to in Section 7.5.A.(1) hereof, (ii) waives reliance upon, and all notices of acceptance of, such provisions by such Indemnitees, and (iii) acknowledges and agrees that no present or future Indemnitee shall be prejudiced in his or her right to enforce the provisions of this Section in accordance with their terms by any act or failure to act on the part of the University.

**J.**    **Effect of Amendment.** No amendment, modification or repeal of this Section or any provision hereof shall in any manner terminate, reduce or impair the right of any past, present or future Indemnitees to be indemnified by the University, nor the obligation of the University to indemnify any such Indemnitees, under and in accordance with the provisions of this Section as in effect immediately prior to such amendment, modification or repeal with respect to claims arising from or relating to matters occurring, in whole or in part, prior to such amendment, modification or repeal, regardless of when such claims may arise or be asserted.

**Section 7.6.** **Books and Records.** The University shall keep correct and complete books and records of account and shall also keep minutes of the proceedings of the Board and committees having any of the authority of the Board.

## ARTICLE EIGHT

## AMENDMENTS OF THE BYLAWS

The power to alter, amend or repeal these Bylaws or adopt new bylaws shall be vested in the Board provided that any such changes shall be approved by a simple majority of the Board.

* * *

596941

11/8/2022 12:38:09 PM PST (GMT-8) FROM: 5124761513-TO: 15124635709          Page: 2 of 5

Exhibit 8 to Defendants' Motion to Dismiss          Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 348 of 365
Page 1 of 4

| | | |
|---|---|---|
| **Form 424**<br>**(Revised 05/11)**<br><br>Submit in duplicate to:<br>Secretary of State<br>P.O. Box 13697<br>Austin, TX 78711-3697<br>512 463-5555<br>FAX: 512/463-5709<br>Filing Fee: See instructions | <br><br>**Certificate of Amendment** | This space reserved for office use.<br><br>F I L E D<br>In the Office of the<br>Secretary of State of Texas<br><br>NOV 0 8 2022<br><br>Corporations Section |

## Entity Information

The name of the filing entity is:

Concordia University Texas
_____

State the name of the entity as currently shown in the records of the secretary of state. If the amendment changes the name of the entity, state the old name and not the new name.

**The filing entity is a:** (Select the appropriate entity type below.)

☐ For-profit Corporation                    ☐ Professional Corporation

☒ Nonprofit Corporation                     ☐ Professional Limited Liability Company

☐ Cooperative Association                   ☐ Professional Association

☐ Limited Liability Company                 ☐ Limited Partnership

The file number issued to the filing entity by the secretary of state is:   10277001
_____

The date of formation of the entity is:   April 28, 1950
_____

## Amendments

### 1. Amended Name
**(If the purpose of the certificate of amendment is to change the name of the entity, use the following statement)**

The amendment changes the certificate of formation to change the article or provision that names the filing entity. The article or provision is amended to read as follows:

The name of the filing entity is: (state the new name of the entity below)

_____

The name of the entity must contain an organizational designation or accepted abbreviation of such term, as applicable.

### 2. Amended Registered Agent/Registered Office

The amendment changes the certificate of formation to change the article or provision stating the name of the registered agent and the registered office address of the filing entity. The article or provision is amended to read as follows:

5

<div align="center">

**Registered Agent**
(Complete either A or B, but not both. Also complete C.)

</div>

☐ **A.** The registered agent is an organization (cannot be entity named above) by the name of:

_____

**OR**

☐ **B.** The registered agent is an individual resident of the state whose name is:

_____

*First Name*                    *M.I.*          *Last Name*                    *Suffix*

The person executing this instrument affirms that the person designated as the new registered agent has consented to serve as registered agent.

**C.** The business address of the registered agent and the registered office address is:

                                                                    **TX**
_____
*Street Address (No P.O. Box)*                  *City*                  *State*   *Zip Code*

<div align="center">

### 3. Other Added, Altered, or Deleted Provisions

</div>

Other changes or additions to the certificate of formation may be made in the space provided below. If the space provided is insufficient, incorporate the additional text by providing an attachment to this form. Please read the instructions to this form for further information on format.

Text Area (The attached addendum, if any, is incorporated herein by reference.)

---

☒ Add each of the following provisions to the certificate of formation. The identification or reference of the added provision and the full text are as follows:

Article II Purpose:
Concordia University Texas is organized exclusively for charitable, religious, educational, and scientific purposes, including, for such purposes, the making of distributions to organizations that qualify as exempt organization described under Section 501(c)(3) of the Internal Revenue Code, or corresponding section of any future federal tax code. Within the scope of the foregoing purposes, and not by way of limitation thereof, the corporation is dedicated to the support and maintenance of an educational institution of higher learning that is aligned with, but not subject to the authority of in governance by, the Lutheran Church – Missouri Synod. To enable the corporation to carry out such purposes, it shall have the power to do any and all lawful acts and to engage in any and all lawful activities, directly or indirectly, alone or in conjunction with others, which may be necessary, proper, or suitable for the attainment of any and all lawful purposes for which the University is organized under the TBOC.

Article V Board:
The management of the affairs of the corporation is vested in its Board of Regents in accordance with the Bylaws. The number of Regents may be increased or decreased in accordance with the Bylaws; however, the number of Regents shall not be decreased to fewer than three (3). All determinations regarding the university's alignment with the Lutheran Church – Missouri Synod, including but not limited to, the university's subscription and adherence to the Confession of the LCMS as currently outlined in Article II of the LCMS Constitution, and qualifications for board members and the presidency, will be subject to and determined by the sole and exclusive discretion of the Board of Regents.

---

☐ **Alter each of the following provisions of the certificate of formation. The identification or reference of the altered provision and the full text of the provision as amended are as follows:**

☒ **Delete each of the provisions identified below from the certificate of formation.**

**Article II Purpose:**
Concordia University Texas is organized exclusively for charitable, religious, educational, and scientific purposes, including, for such purposes, the making of distributions to organizations that qualify as exempt organization described under Section 501(c)(3) of the Internal Revenue Code, or corresponding section of any future federal tax code.

**Article V Management:**
The business of this corporation shall be conducted and its affairs shall be controlled by a board of trustees to be elected in accordance with the Rules and Regulations of the Lutheran Church--Missouri Synod. The names and addresses of the trustees for the first year are as follows:
        Albert Schulz of Eola, Concho County, Texas
        R. Leschber of Walburg, Williamson County, Texas
        F. Stelzer of Thorndale, Milam County, Texas
        Oliver Harms of Houston, Harris County, Texas
        Paul Nerger of Giddings, Lee County, Texas

## Statement of Approval

The amendments to the certificate of formation have been approved in the manner required by the Texas Business Organizations Code and by the governing documents of the entity.

## Effectiveness of Filing (Select either A, B, or C.)

A. ☒ This document becomes effective when the document is filed by the secretary of state.

B. ☐ This document becomes effective at a later date, which is not more than ninety (90) days from the date of signing. The delayed effective date is: _____

C. ☐ This document takes effect upon the occurrence of a future event or fact, other than the passage of time. The 90th day after the date of signing is: _____
The following event or fact will cause the document to take effect in the manner described below:

## Execution

The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument and certifies under penalty of perjury that the undersigned is authorized under the provisions of law governing the entity to execute the filing instrument.

11/8/2022 12:38:09 PM PST (GMT-8) FROM: 6124761513 TO: 15124635709          Page: 5 of 5
**Exhibit 8 to Defendants' Motion to Dismiss**
**Page 4 of 4**

Case 1:23-cv-01042-RP    Document 9-1    Filed 01/23/24    Page 351 of 365







Exhibit 9 to Defendants' Motion to Dismiss
Page 1 of 1
Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 352 of 365

## To Direct Establishment of Reversionary Interests on College, University, and Seminary Properties

### RESOLUTION 4-04

**Overture 4-35 (*CW*, p. 217)**

WHEREAS, The Synod owns the properties of all agencies of the Synod, including its institutions of higher education, regardless of how such properties are titled (Bylaw 3.51 i); and

WHEREAS, The Board of Directors of the Synod, acting pursuant to its authority over property matters, has reviewed the titles to the properties of the institutions of higher education and has determined that such properties are in some cases held in the name of the institution of higher education, in some cases in the name of the institution of higher education subject to a reversionary interest in the Synod, and in some cases held in the name of the Synod, and thereupon resolved in 1998 that all properties of the institutions of higher education shall be titled in the name of each institution subject to a reversionary interest in the Synod; and

WHEREAS, Several of the Synod's educational institutions have not executed deeds and other legal documentation necessary to the establishment of reversionary interests to their properties in favor of the Synod; therefore be it

*Resolved*, That each institution of higher education of the Synod shall hold title to properties presently owned or at any time hereafter acquired by it subject to a reversionary interest or possibility of a reverter in favor of the Synod in such form and stating such conditions as shall be established by the Board of Directors of the Synod except as provided by such Board; and be it further

*Resolved*, That the Board of Regents and officers of each institution of higher education of the Synod shall, and are hereby directed to, take all actions and execute all deeds, resolutions, statements, and legal documents necessary to carry out the terms of this resolution where permitted by law.

**Action**: Adopted (10)

(When the committee introduced the resolution it added the words *where permitted by law* at the end of the final resolve. After discussion, the resolution was adopted as presented [Yes: 748; No: 352].)

## To Establish Houston as Site of 2007 Convention

### RESOLUTION 4-06

**Overture L4-44 (*TB*, p. 33)**

WHEREAS, The Board of Directors of the Texas District has submitted an invitation to hold the 2007 convention of the Synod in Houston, Texas. Documentation has been provided by the Synod's Director of Travel and Meeting Planning to support this invitation; and

WHEREAS, Major cost-saving considerations include (1) complimentary convention center rental and (2) complimentary transportation from the one hotel located 10 blocks from the convention center (Hyatt). The other hotel (Hilton) is attached to the convention center; and

WHEREAS, Other factors supporting acceptance of the invitation include the following:

• Availability of volunteer staff from the St. Louis area has diminished after four straight conventions and the 1997 Great Commission Convocation.

• Houston hotel room rates (compared to the seven St. Louis hotels being used for the 2004 convention) are less expensive by a minimum of $25 per room per night, resulting in a savings of approximately $192,500.

• Houston is served by two major airports, hubs for Southwest and Continental Airlines, while St. Louis has experienced a significant decline in flights availability.

• While Houston is eager to attract the LCMS convention, St. Louis has been reluctant to offer a proposal after four years of requests.

• Texas is a Right to Work state, which will allow the Synod to use its own personnel to unload and set up—a major cost-saving factor; and

WHEREAS, In response to the invitation received from the Board of Directors of the Texas District and upon consideration of site information received from the Synod's Director of Travel and Meeting Planning, the LCMS Board of Directors recommended the following action to the 2004 convention; therefore be it

*Resolved*, That the 2007 convention of The Lutheran Church—Missouri Synod be held in Houston, Texas.

**Action**: Adopted (10)

(The resolution was introduced by the President of the Texas District, a member of the committee. After additional financial information was provided by the Vice-President–Finance—Treasurer of the Synod and debate was ended, the resolution was adopted [Yes: 996; No: 137].)

## To Establish Blue Ribbon Task Force for Funding the Mission

### RESOLUTION 4-07

**Overtures 4-01-08 (*CW*, pp. 207–209)**

WHEREAS, A major purpose for having a synodical union is to fulfill our Lord's desire for utilizing the diversity of our many gifts for the common good and the development of His kingdom (1 Cor. 12); and

WHEREAS, Many financial gifts are being received and given by our congregational members in diverse ways for the implementation, support, and maintenance of our various agreed-upon ministries and programs; and

WHEREAS, The basic funding pattern for the mission and ministry of the Synod has continually evolved over our 157-year history; and

WHEREAS, Our Synod's funding pattern during the past 30 years has gradually changed from a mostly unified-budget model to a mostly designated-giving model; and

WHEREAS, These changes in funding trends and sources are forcing the Synod at the national and District levels to rethink its funding systems; and

WHEREAS, An effective funding system needs to (1) evaluate and identify necessary costs associated with Synod's common-good activities, (2) value input from congregations and Districts for prioritizing areas of mission and ministry,

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 353 of 365
Exhibit 10  to Defendants' Motion to Dismiss
Page 1 of 13

**MINUTES**

**COMMISSION ON CONSTITUTIONAL MATTERS**
Internet Conference Meeting (Zoom.us)
March 30, 2023

**168. <u>Call to Order and Opening Prayer</u>**

Commission Chairman Dr. George Gude called the meeting to order with all members present. Dr. Gude opened the meeting with prayer and introduced the agenda, as follows.

**169.**



Exhibit 10  to Defendants' Motion to Dismiss
Page 2 of 13



Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 355 of 365
Exhibit 10  to Defendants' Motion to Dismiss
Page 3 of 13





Exhibit 10  to Defendants' Motion to Dismiss
Page 5 of 13



**171. <u>University Board of Regents Unilateral Separation</u> (23-3006)**

The Board of Directors of the Synod has submitted a series of ten questions related to actions taken November 8, 2022, by the Board of Regents of Concordia University Texas (CTX), requesting an opinion from the Commission on Constitutional Matters. In conjunction with Bylaw 3.9.2.2 (b) the commission invited input from the President of the Synod, the Synod Board of Directors, the Concordia University System (CUS) Board of Directors, the Boards of Regents of all CUS Universities, Dr. Dean Wenthe, president of CUS, and Mr. Matthew Buesching (LCMS Counsel).

Before specifically addressing the questions submitted, the commission deems it necessary to provide as background a summary overview of the pertinent sections of the Constitution and Bylaws of the Synod

pertaining to the Synod Board of Directors, agencies of the Synod, and universities of the Synod, which apply to the questions submitted.

<u>Summary Overview of Pertinent Sections of the Constitution and Bylaws Regarding the Synod Board of Directors, Agencies of the Synod, and Universities</u>

<div align="center">Synod Board of Directors</div>

Article XI E 2 identifies the Synod Board of Directors as "the legal representative and custodian of all the property of The Lutheran Church—Missouri Synod, directly or by delegation of such authority to an agency of the Synod." The Synod Board of Directors exercises "supervision over all property and business affairs" of the Synod "except in those areas where it has delegated such authority to an agency of the Synod or where the voting members of the Synod through the adoption of bylaws or other convention action have assigned specific areas to separate corporate or trust entities," and regarding these the Synod Board of Directors has "general oversight responsibility as set forth in the Bylaws."

Bylaw 1.2.1 (r) in relevant part defines the property of the Synod as "all assets, real or personal, tangible or intangible whether situated in the United States or elsewhere, titled or held in the name of corporate Synod, its nominee, or an agency of the Synod."

The Synod Board of Directors is the "legal representative" of the Synod and the "custodian of all property of the Synod." It is responsible for "the general management and supervision of the business affairs of the Synod except where management authority and duties have been delegated" to, here, an agency "by the Articles of Incorporation, Constitution, Bylaws of the Synod, or by resolution of a convention of the Synod." (Bylaw 1.4.4) When authorized by the Bylaws, an agency, to which this authority was delegated by this provision, is entrusted with the management and business affairs of the Synod "to the extent of its jurisdiction."

Bylaw 3.3.4.3 assigns to the Synod Board of Directors the responsibility to provide for "review and coordination of the policies and directives of the Synod authorized by the Constitution, Bylaws, and resolutions of the Synod, evaluating plans and policies and communicating to the appropriate boards and commissions suggestions for improvement…"

Bylaw 3.3.4.4 gives the Synod Board of Directors responsibility for the "general management of the business and legal affairs of the Synod." It is "authorized to take action on behalf of the Synod related to business and legal affairs which has not been expressly delegated by the Constitution, Bylaws, and resolutions of the Synod to other officers or agencies of the Synod," and to those it has "general oversight." Bylaw 3.3.4.7 designates the Synod Board of Directors as the custodian of all property of the Synod as defined in Bylaw 1.2.1 (r). However, it may delegate these powers to any agency of the Synod that has direct supervisory responsibility of that property.

Bylaw 3.3.4.10 authorizes the Synod Board of Directors to obtain from any agency of the Synod all records and other information relative to the property of the Synod and to matters over which the Board of Directors has general oversight.

<div align="center">Agencies</div>

In the structure of the Synod an agency is defined in Bylaw 1.2.1 (a), which defines an agency as "any instrumentality other than a congregation or corporate Synod…caused or authorized to be formed" by the Synod in convention or by the Synod Board of Directors. A listing of agencies then follows, specifically including every board and university of the Synod.

Bylaw 1.4.1 states that Synod's delegate convention is "the legislative assembly" of the Synod, which alone "ultimately legislates policy, program, and financial direction" for the work of the Synod. It "reserves to itself the right to give direction to all officers and agencies of the Synod." Unless explicitly indicated in the Bylaws, all officers and agencies are "accountable to the Synod for all their actions." Bylaw 1.4.3 states

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 360 of 365
Exhibit 10  to Defendants' Motion to Dismiss
Page 8 of 13

that "Officers of the Synod and its agencies serve in accordance with duties assigned to them or otherwise authorized by the Constitution and appropriate bylaws."

Because agencies were caused or authorized by the Synod, are given direction by the Synod via its Constitution, Bylaws, and Resolutions, and are accountable to the Synod, every agency is bound by the Constitution, Bylaws, and Resolutions of the Synod (Bylaw 1.4.5). An agency does not have authority to amend or alter the Bylaws of the Synod or the applicability of the requirements of the same to itself. Only a delegate convention of the Synod has authority to amend the Bylaws (Article XIV). Therefore, any action taken by an agency which contradicts the Constitution, Bylaws, or resolutions of the Synod is null and void, as is specifically stated in CCM opinion 05-2439 (from Question 2) "… any action or resolution by any officer, board, commission, district, or other agency of the Synod that is in violation of the Synod's Constitution and Bylaws is null and void."

Bylaw 1.5.2 requires all members of boards or commissions of every agency to avoid conflicts of interest as described in the Bylaw. Bylaw 1.5.2 (b) states that all board members of an agency must carry out their responsibilities "in a manner reflecting the highest degree of integrity and honesty consistent with the Scriptures, Lutheran Confessions, Constitution, Bylaws, and resolutions of the Synod…" Board members of an agency shall not enter into activities that "may be detrimental to the interests of the Synod." Inappropriate activity, if it does not cease, is a cause for removal. Bylaw 1.5.2 (c) requires that prior to accepting a position, all elected and appointed board members of an agency must sign a statement that they have received, understand, and agree to abide by this provision. Bylaw 1.5.7 describes the causes of and process for removal from membership on a board or commission, with a breach of fiduciary duty regarding responsibilities to the Synod or agency included among the causes for removal.

### Universities as Agencies of the Synod

The Constitution, Bylaws and resolutions of the Synod are directly applicable and binding on all universities of the Synod, as agencies of the Synod (Bylaw 1.2.1 [a]), and to the boards of regents governing them. The confessional position of the Synod as stated in Article II, namely and without reservation, the Scriptures as the Word of God and the Lutheran Confessions as a true and unadulterated statement and exposition thereof, is applicable and binding on the entire Synod, which includes all its agencies, as well as the individual and congregational members of the Synod. Article III lists among objectives of the Synod the training of professional church workers (Const. Art. III 3) and the support of *synodical* colleges and universities (Const. Art. III 5) *subject to the Scripture and Lutheran Confessions*. The Synod's universities have been formed and incorporated into the Synod to serve these fundamental ecclesial purposes. (The formation of what would become Concordia University Texas was directed by resolution of the Synod Convention in 1923 [*Proceedings*, p. 30].) Constitutional and Bylaw provisions dealing with governance of the institutions—including the assignment of ecclesiastical supervision and oversight to responsible officers and the entrusting of institutional governance to the regents, jointly and severally, acting as fiduciaries of the Synod—are intended to preserve for the ministry and mission of the Synod the institutions that the member congregations, acting through the Synod, have created, sustained, and relied on (Bylaw 1.1.1 [b]).

A university which wishes to change its articles of incorporation (by amendment or restatement) or its bylaws is required to receive advance approval from the Commission on Constitutional Matters of the Synod (Bylaw 3.9.2.2.3 [a]). Failure to do so makes such a change null and void—as it has been adopted contrary to the Bylaws of the Synod, to which every agency is bound—and unable to be put into practice.

The Bylaws of the Synod prescribe membership of the board of regents, how members are elected or appointed, their term of office, and maximum number of consecutive terms an individual may serve (Bylaw 3.10.6.2). The only way by which any of these requirements prescribed in the Bylaws can be changed is by action of a delegate convention of the Synod amending the Bylaws of the Synod, since a delegate convention of the Synod is the sole legislative body of the Synod, and it alone has authority to change the Bylaws (Article XIV). Should an agency make any change to its Bylaws that violate the Bylaws of the Synod, such changes are null and void, as the Bylaws of the Synod control and supersede (Bylaws 1.4.3,

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 361 of 365
Exhibit 10  to Defendants' Motion to Dismiss
Page 9 of 13

1.4.5, 1.5.2 [b], 1.5.3.6, etc.). Such a change could only be enacted if a future delegate convention of the Synod amended the Synod's Bylaws.

The members of the board of regents of a Synod university, who have signed a statement prior to taking office affirming they have received, understand, and agree to abide by the conflict of interest provisions of Bylaw 1.5.2, are required to operate the institution "as an agent of the Synod, in which ownership is primarily vested, and which exercises its ownership through the Board of Directors as the custodian the Synod's property" and then through "the Board of Directors of Concordia University System" and, finally, through "the respective board of regents." In operating the institution, the university board of regents is to "carefully exercise its fiduciary duty to the Synod." (Bylaws 3.10.6.4 [i] and 3.10.6.4 [i][1]) While the university board of regents does have ultimate responsibility and independence in operating the institution, it always remains subject to the pre-established Bylaws of the Synod (Bylaw 3.10.6.5).

The Bylaws of the Synod provide a specific procedure for the consolidation, relocation, separation, or divestment of a university (Bylaw 3.6.6.4 [i]), which does not allow a university to unilaterally separate itself from the Synod, or declare itself to be independent of the Synod. According to this prescribed procedure for a university to be divested it requires a two-thirds vote of approval by the Synod Board of Directors, along with the approval by two-thirds vote of one of the following three: the Council of Presidents, the board of regents of that university, or the Concordia University System Board of Directors.

Should such an action (separation or divestiture) be taken as prescribed in Bylaw 3.6.6.4 (i), the result would be that the university now separated or divested would no longer be an agency of the Synod, which in turn would have several repercussions. Some of these would include the loss of functions exclusively reserved to "colleges and universities *of the Synod,*" under its forms of ecclesiastical governance and ecclesiastical supervision:

- Graduates from the university or those satisfactorily completing an approved program would no longer be eligible to receive a call or be eligible for individual membership in the Synod as commissioned ministers. (Bylaws 2.7.1–3; 2.8; 2.9)
- Those individual members of the Synod, (commissioned or ordained) currently serving the university would no longer be eligible to be classified as active members of the Synod (Bylaw 2.11.1). If such individuals wished to continue as individual members of the Synod, they would need to apply for candidate status or if qualified for emeritus status. (Bylaws 2.11.2; 2.11.2.1; 2.11.2.2)
- The university would no longer be eligible for advisory representation at conventions of the Synod under Bylaw 3.1.4.2 (a).
- Finally, the university would no longer be entitled to participate in those services offered by the synodwide corporate entities, which are reserved to agencies of the Synod.

Questions Submitted

Question 1:   Does a board of regents of a university of the Synod have authority to unilaterally change its governance model from that described in Synod Bylaw 3.10.6 (modifying the means of appointment of its board of regents, for example)?

Opinion:   No. It is only a delegate convention of the Synod that, as the legislative body of the Synod, has authority to amend the Bylaws of the Synod (Article XIV) or the Constitution of the Synod (Article XV). Until such an action by a delegate convention of the Synod takes place, the members of a university board of regents have no authority or ability to change the governance model of Bylaw 3.10.6—which, as noted above, exists in the ultimate interest of furthering the Synod's ecclesial purposes—remains binding on any university of the Synod. Unless a university were to be separated or divested by the Synod under Bylaw 3.6.6.4 (i), any such changes by a board of regents to the governance model described in Bylaw subsection 3.10.6 would be null and void, and the Synod would continue to operate according to the Bylaws as adopted by the convention and published in the *Handbook* in all areas including elections and

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 362 of 365
Exhibit 10  to Defendants' Motion to Dismiss
Page 10 of 13

membership on the board of regents. Individual regents act outside their authority and contrary to their individual fiduciary duties to the Synod when they affirm such an action (Bylaws 1.5.2 [b] and [b][1]; 3.10.6.4 [i] and [i][1–2]).

Question 2:          Does a board of regents of a university of the Synod have authority to amend its articles or bylaws without the prior approval described in Synod Bylaw 3.9.2.2.3 (a)?

Opinion:             No. As an agency of the Synod, the board of regents of a university of the Synod may only amend its bylaws or articles of incorporation with prior approval of the Commission on Constitutional Matters of the Synod. Any such change made without that approval would be null and void (Bylaw 3.9.2.2.3 [a]). If such a proposed change to the articles or bylaws of the university were contrary to the Constitution and Bylaws of the Synod as then current, the commission would be required to reject such change. Outside the convention itself, the commission has the sole authority to interpret the Constitution, Bylaws, and resolutions of the Synod and has no authority to alter or waive their requirements (Bylaw 3.9.2).

Question 3:          Does a board of regents of a university of the Synod have an obligation to comply with the Constitution and Bylaws of the Synod, including without limitation Article II and Article III of the Constitution, when operating and managing and taking action on behalf of the university, including an action purporting to separate the university from the Synod?

Opinion:             Yes. The Constitution in all its articles, the Bylaws, and the resolutions of the Synod are binding on all agencies of the Synod, which includes every university. A board of regents of a university of the Synod operates the university as a fiduciary and an agent of the Synod, which includes being faithful to the confessional position (Article II) and the Objectives of the Synod (Article III) and faithfully maintaining and adhering to the model of governance set forth by the Synod (Bylaw 3.10.6.4 [i][1–2]). Ownership of the university remains primarily invested in the Synod, and is exercised first through the Synod's Board of Directors, which is the custodian of all property of the Synod, then through the CUS Board, and finally through the board of regents, operating with the authority set forth for it in the Bylaws of the Synod. In operating the institution as an agent of the Synod, a board of regents of a university and its members are bound to carefully exercise its fiduciary duty to the Synod. (Bylaws 3.10.6.4 [i] and 3.10.6.4 [i][1]) If a university board of regents were convinced that it was in the best interest of both the Synod and that institution for the institution to be divested or separated from the Synod, then it would be obligated to follow the process detailed in Bylaw 3.6.6.4 (i) and to submit to its conclusion.

Question 4:          Do individual members of a Synod university board of regents have a duty to comply with the Constitution and Bylaws of the Synod, including without limitation Article II and Article III of the Constitution, when operating and managing and taking action on behalf of the university, including an action purporting to separate the university from the Synod?

Opinion:             Yes. Constitutional and Bylaw provisions dealing with governance of the institutions—including the assignment of ecclesiastical supervision and oversight to responsible officers and the entrusting of institutional governance to the regents, jointly and severally, acting as fiduciaries of the Synod—are intended to preserve for the ministry and mission of the Synod the institutions that the member congregations, acting through the Synod, have created, sustained, and relied on (Bylaw 1.1.1 [b]). Any noncompliance with these provisions on the part of a board of regents or individual regent is therefore *not in the interest of the Synod*. Bylaw 1.5.2 (b) and (b)(1) require that every board member of every agency of the Synod shall, when operating and managing and taking action on behalf of such agency (in this case, the university), carry out responsibilities in a manner "reflecting the highest degree of integrity and honesty consistent with the Scriptures, the Lutheran Confessions, the Constitution, Bylaws, and resolutions of the Synod," and shall act consistently *in the interest of the Synod*. "Any inappropriate activity shall cease or the position will be vacated." (Bylaw 1.5.2 [b][1]) As a board of the Synod (Bylaw 3.2.2 [6]), a board of regents, which has been given authority to manage the university on behalf of the Synod, has a direct, "fiduciary" responsibility *to the Synod*, which is to be exercised carefully (Bylaw 3.10.6.4 [i][1]). Bylaw 1.5.1.3 requires each member of a board be sensitive in all activities to avoid "taking or giving offense,

Case 1:23-cv-01042-RP    Document 9-1    Filed 01/23/24    Page 363 of 365
Exhibit 10  to Defendants' Motion to Dismiss
Page 11 of 13

giving the appearance of impropriety, causing confusion in the Synod, or creating potential liability." Regarding separating or divesting the university from the Synod, see the answer above.

Question 5:    Is a university of the Synod and its board of regents an eligible party subject to the Dispute Resolution Process set forth in Synod Bylaw 1.10?

Opinion:    Yes. Agencies of the Synod are included in those to whom the Dispute Resolution Process applies. (Bylaw 1.10.3)

Question 6:    Assuming a university of the Synod and its board of regents are eligible parties to the Dispute Resolution process set forth in Synod Bylaw 1.10, does the Dispute Resolution process apply to a dispute between the Synod (or its President or Board of Directors) and a board of regents regarding that board of regents unilaterally amending or modifying its governance documents, and regarding whether the action of the board of regents is within the authority granted to it under the Constitution and Bylaws of the Synod?

Opinion:    Essentially, no. The fundamental material question of whether a Synod university has the authority to unilaterally change its governance from that prescribed in the Constitution, Bylaws,and resolutions of the Synod, since such a question pertains fundamentally not to the presenting fact situation but to the interpretation and meaning of the Constitution, Bylaws, and resolutions of the Synod, is outside of the authority of the Dispute Resolution Process to arbitrate or adjudicate, as stated in the Bylaws. Authority to interpret the Constitution, Bylaws, and Resolutions of the Synod is specifically given by the Bylaws only to the Synod's Commission on Constitutional Matters (Bylaw 3.9.2.2). Any Dispute Resolution Process is subject in all its aspects to "Holy Scripture, the Lutheran Confessions, and the Constitution and Bylaws of the Synod" (Bylaw 1.10.18). As to the Constitution and Bylaws of the Synod, opinions of this commission are finally dispositive of any questions as to their interpretation that arise during a Dispute Resolution Process (Bylaw 1.10.18 [h], [h][1]). While the question of whether a board of regents has the authority described is thus finally resolved by this commission's interpretation of the Constitution and Bylaws in the negative, this is not to foreclose the applicability of the Dispute Resolution Process to disagreements or disputes,  related to or arising out of this action, as may apply to the board of regents as a whole or to individual regents as "members of congregations of the Synod elected or appointed to positions with…an agency of the Synod" (Bylaw 1.10.2 [5]).

Question 7:    Assuming that the noted parties and issue would be subject to the Dispute Resolution Process, would the outcome of the process, presuming that it is consistent with the Constitution, Bylaws, and resolution of the Synod, be binding on the parties involved?

Opinion:    The Constitution and Bylaws of the Synod are of themselves generally, and as to the central material question noted above in particular, already binding on both the parties and on the outcome of any Dispute Resolution Process, as explained above. As to other aspects of related disagreements or disputes, the outcome of any Dispute Resolution Process, provided it is consistent with "Holy Scripture, the Lutheran Confessions, and the Constitution and Bylaws of the Synod" (Bylaw 1.10.18), would be binding on the parties.

Question 8:    Can a university of the Synod and its Board of Regents avoid the Dispute Resolution Process set forth in Synod Bylaw 1.10 by taking unilateral action purporting to separate the university from the Synod (cf. Synod Bylaw 1.10.2)?

Opinion:    No. "No person, congregation, *or agency* to whom or to which the provisions of this dispute resolution process are applicable because of their membership in the Synod may render this procedure inapplicable by terminating that membership during the course of the dispute resolution process" (Bylaw 1.10.2).

Question 9:    What is the nature and scope of a board of regents' *fiduciary* duties to the Synod as stated in Synod Bylaw 3.10.6.4 (i)(1)? Are these fiduciary duties solely secular duties or do these

fiduciary duties also encompass operating and managing the institution as a fiduciary and an agent of the Synod in a manner consistent with Constitution and Bylaws of the Synod, including without limitation Article II and Article III of the Constitution?

Opinion:    The term *fiduciary* is a commonly used legal term of art. *Black's Law Dictionary* (11th Ed.) offers two definitions, both of which inform the use of the term to describe the duties regents owe *to the ecclesial Synod*. A *fiduciary* is: "1. Someone who is required to act for the benefit of another person on all matters within the scope of their relationship; one who owes to another the duties of good faith, loyalty, due care, and disclosure. 2. Someone who must exercise a high standard of care in managing another's money or property." The commission finds that these common definitions are included within but may not exhaust the sense of "fiduciary duty" that may be inferred from the immediate context of Bylaw 3.10.6.4 (i)(1). More specifically, the context in Bylaws 3.10.6, 3.10.6.1, and 3.10.6.4 provides, without exhausting the full scope of said "fiduciary duties to the Synod," some particular aspects of the responsibilities regents owe the Synod in governing the respective institution in a manner that is faithful to the confession of the Synod (Const. Art. II) and fulfills its objectives (Const. Art. III; Bylaw 3.10.6.1). The fiduciary duties expected of regents are thus not purely secular but involve the comprehensive stewardship of the institution in the ecclesial interest of the Synod, which has put them in place to govern. Governing the institution as a "fiduciary" or "agent of the [ecclesiastical] Synod, in which ownership is primarily vested" (Bylaw 3.10.6.4 [i][1]) and, indeed, as a "governing board of the Synod" (Bylaw 3.2.2), they owe duties of "good faith, loyalty, due care, and disclosure" and a "high standard of care" to maintain the institution in faithfulness to the Synod's confession (Const. Art. II); in fruitfulness with regard to the accomplishment of the Synod's objectives (Const. Art. III and relevant Bylaws, resolutions, and policies, as such pertain to the operation of a Synod university); and consistent in every respect with the governance model Synod has set forth to assure the institution operates in its ecclesial interests (see above, "Universities as Agencies of the Synod" and Opinion to Question 4).

Question 10:    If a board of regents of a university of the Synod fails to carry out or breaches its fiduciary duties to the Synod as required in Synod Bylaw 3.10.6.4(i)(1), who or what body, within the Synod, has the authority and responsibility to take action to address and correct the breach of fiduciary duty, including proceeding under the Dispute Resolution Process or, if appropriate, taking action in secular court?

Opinion:    Bylaw 3.3.1.1.1 assigns ecclesiastical supervision of all officers of the Synod and its agencies to the President of the Synod. Bylaw 3.3.1.1.1 (c) gives the President the responsibility and authority to exercise ecclesiastical supervision over the doctrine taught and practiced at the universities of the Synod.

Bylaw 3.3.1.2 assigns to the President of the Synod oversight of all the agencies of the Synod to ensure that these agencies are acting in accordance with the Constitution, Bylaws, and resolutions of the Synod. Specifically in regard to the educational institutions of the Synod, the President is charged to officially visit or cause to be visited all these institutions to exercise oversight over their administration relative to adhering to the Constitution, Bylaws, and Resolutions of the Synod (Bylaw 3.3.1.2 [a]).

If the President of the Synod determines there is a violation of the Constitution, Bylaws, and resolutions of the Synod, he may call up for review any such action and request that this action be altered or reversed. If the matter is not resolved, the President of the Synod shall refer the matter, as he deems appropriate to the issues and party/parties to the matter involved, to the Synod Board of Directors, the Commission on Constitutional Matters, or to a convention of the Synod. He is also required to report to the Synod those who are not acting in accordance with the Constitution, Bylaws, and Resolutions of the Synod. (Bylaw 3.3.1.2 [c])

The unauthorized separation of a university of the Synod (which is included in property of the Synod) from the Synod inherently involves a legal and property matter properly to be referred by the President (Bylaw 3.3.1.2 [c][2]) to the Board of Directors as the legal representative and custodian of the property of the

Case 1:23-cv-01042-RP   Document 9-1   Filed 01/23/24   Page 365 of 365
**Exhibit 10  to Defendants' Motion to Dismiss**
**Page 13 of 13**

Synod (Article XI E 2), which then carries out its constitutional authority in the interest of the Synod. Any conflict or uncertainty in determining the authorities of the officers and agencies of the Synod in this respect is to be resolved as set forth in Articles of Incorporation, Article V. Referral by the President of the legal and property matters involved to the Board of Directors does not exclude the President's authority otherwise to exercise, or see to the exercise of, ecclesiastical supervision (Bylaw 1.2.1 [j]) or detract from "the President's constitutional duty to report to the Synod those who do not act in accordance with the Constitution and do not heed his admonition, as prescribed in Constitution Art. XI B 2" (Bylaw 3.3.1.2 [c][3]).

The commission has treated the approach that most naturally, in its opinion, followed from the question, but notes that its answer is not to exclude other processes possible under the Bylaws, including the process under Bylaw 1.5.7.1 or other Dispute Resolution Processes (Bylaw section 1.10) among eligible parties involved in the matter.

### 172. <u>Closing Prayer and Future Meetings</u>

The commission noted its upcoming meeting, planned tentatively for April 28–29, 2023, in which the principal business will be review of convention overtures, with any intervening urgent business to be handled by an internet conference. The commission will next meet thereafter in connection with Floor Committee Weekend, meeting on Thursday, June 8, and Friday, June 9 (in joint session with the Commission on Handbook in the morning), and then joining the floor committees through Monday, June 12, with some members being released Sunday. The commission will also meet Thursday, July 27, in Milwaukee and then join the convention through Noon on August 3.

John W. Sias, *Secretary*