**MINUTES**

**COMMISSION ON CONSTITUTIONAL MATTERS**
**Internet Conference Meeting (Zoom.us)**
**March 30, 2023**

**168. Call to Order and Opening Prayer**

Commission Chairman Dr. George Gude called the meeting to order with all members present. Dr. Gude opened the meeting with prayer and introduced the agenda, as follows.

**169.**













**171. <u>University Board of Regents Unilateral Separation</u> (23-3006)**

The Board of Directors of the Synod has submitted a series of ten questions related to actions taken November 8, 2022, by the Board of Regents of Concordia University Texas (CTX), requesting an opinion from the Commission on Constitutional Matters. In conjunction with Bylaw 3.9.2.2 (b) the commission invited input from the President of the Synod, the Synod Board of Directors, the Concordia University System (CUS) Board of Directors, the Boards of Regents of all CUS Universities, Dr. Dean Wenthe, president of CUS, and Mr. Matthew Buesching (LCMS Counsel).

Before specifically addressing the questions submitted, the commission deems it necessary to provide as background a summary overview of the pertinent sections of the Constitution and Bylaws of the Synod

pertaining to the Synod Board of Directors, agencies of the Synod, and universities of the Synod, which apply to the questions submitted.

<u>Summary Overview of Pertinent Sections of the Constitution and Bylaws Regarding the Synod Board of Directors, Agencies of the Synod, and Universities</u>

<u>Synod Board of Directors</u>

Article XI E 2 identifies the Synod Board of Directors as "the legal representative and custodian of all the property of The Lutheran Church—Missouri Synod, directly or by delegation of such authority to an agency of the Synod." The Synod Board of Directors exercises "supervision over all property and business affairs" of the Synod "except in those areas where it has delegated such authority to an agency of the Synod or where the voting members of the Synod through the adoption of bylaws or other convention action have assigned specific areas to separate corporate or trust entities," and regarding these the Synod Board of Directors has "general oversight responsibility as set forth in the Bylaws."

Bylaw 1.2.1 (r) in relevant part defines the property of the Synod as "all assets, real or personal, tangible or intangible whether situated in the United States or elsewhere, titled or held in the name of corporate Synod, its nominee, or an agency of the Synod."

The Synod Board of Directors is the "legal representative" of the Synod and the "custodian of all property of the Synod." It is responsible for "the general management and supervision of the business affairs of the Synod except where management authority and duties have been delegated" to, here, an agency "by the Articles of Incorporation, Constitution, Bylaws of the Synod, or by resolution of a convention of the Synod." (Bylaw 1.4.4) When authorized by the Bylaws, an agency, to which this authority was delegated by this provision, is entrusted with the management and business affairs of the Synod "to the extent of its jurisdiction."

Bylaw 3.3.4.3 assigns to the Synod Board of Directors the responsibility to provide for "review and coordination of the policies and directives of the Synod authorized by the Constitution, Bylaws, and resolutions of the Synod, evaluating plans and policies and communicating to the appropriate boards and commissions suggestions for improvement…"

Bylaw 3.3.4.4 gives the Synod Board of Directors responsibility for the "general management of the business and legal affairs of the Synod." It is "authorized to take action on behalf of the Synod related to business and legal affairs which has not been expressly delegated by the Constitution, Bylaws, and resolutions of the Synod to other officers or agencies of the Synod," and to those it has "general oversight." Bylaw 3.3.4.7 designates the Synod Board of Directors as the custodian of all property of the Synod as defined in Bylaw 1.2.1 (r). However, it may delegate these powers to any agency of the Synod that has direct supervisory responsibility of that property.

Bylaw 3.3.4.10 authorizes the Synod Board of Directors to obtain from any agency of the Synod all records and other information relative to the property of the Synod and to matters over which the Board of Directors has general oversight.

<u>Agencies</u>

In the structure of the Synod an agency is defined in Bylaw 1.2.1 (a), which defines an agency as "any instrumentality other than a congregation or corporate Synod…caused or authorized to be formed" by the Synod in convention or by the Synod Board of Directors. A listing of agencies then follows, specifically including every board and university of the Synod.

Bylaw 1.4.1 states that Synod's delegate convention is "the legislative assembly" of the Synod, which alone "ultimately legislates policy, program, and financial direction" for the work of the Synod. It "reserves to itself the right to give direction to all officers and agencies of the Synod." Unless explicitly indicated in the Bylaws, all officers and agencies are "accountable to the Synod for all their actions." Bylaw 1.4.3 states

that "Officers of the Synod and its agencies serve in accordance with duties assigned to them or otherwise authorized by the Constitution and appropriate bylaws."

Because agencies were caused or authorized by the Synod, are given direction by the Synod via its Constitution, Bylaws, and Resolutions, and are accountable to the Synod, every agency is bound by the Constitution, Bylaws, and Resolutions of the Synod (Bylaw 1.4.5). An agency does not have authority to amend or alter the Bylaws of the Synod or the applicability of the requirements of the same to itself. Only a delegate convention of the Synod has authority to amend the Bylaws (Article XIV). Therefore, any action taken by an agency which contradicts the Constitution, Bylaws, or resolutions of the Synod is null and void, as is specifically stated in CCM opinion 05-2439 (from Question 2) "… any action or resolution by any officer, board, commission, district, or other agency of the Synod that is in violation of the Synod's Constitution and Bylaws is null and void."

Bylaw 1.5.2 requires all members of boards or commissions of every agency to avoid conflicts of interest as described in the Bylaw. Bylaw 1.5.2 (b) states that all board members of an agency must carry out their responsibilities "in a manner reflecting the highest degree of integrity and honesty consistent with the Scriptures, Lutheran Confessions, Constitution, Bylaws, and resolutions of the Synod…" Board members of an agency shall not enter into activities that "may be detrimental to the interests of the Synod." Inappropriate activity, if it does not cease, is a cause for removal. Bylaw 1.5.2 (c) requires that prior to accepting a position, all elected and appointed board members of an agency must sign a statement that they have received, understand, and agree to abide by this provision. Bylaw 1.5.7 describes the causes of and process for removal from membership on a board or commission, with a breach of fiduciary duty regarding responsibilities to the Synod or agency included among the causes for removal.

### Universities as Agencies of the Synod

The Constitution, Bylaws and resolutions of the Synod are directly applicable and binding on all universities of the Synod, as agencies of the Synod (Bylaw 1.2.1 [a]), and to the boards of regents governing them. The confessional position of the Synod as stated in Article II, namely and without reservation, the Scriptures as the Word of God and the Lutheran Confessions as a true and unadulterated statement and exposition thereof, is applicable and binding on the entire Synod, which includes all its agencies, as well as the individual and congregational members of the Synod. Article III lists among objectives of the Synod the training of professional church workers (Const. Art. III 3) and the support of *synodical* colleges and universities (Const. Art. III 5) *subject to the Scripture and Lutheran Confessions*. The Synod's universities have been formed and incorporated into the Synod to serve these fundamental ecclesial purposes. (The formation of what would become Concordia University Texas was directed by resolution of the Synod Convention in 1923 [*Proceedings*, p. 30].) Constitutional and Bylaw provisions dealing with governance of the institutions—including the assignment of ecclesiastical supervision and oversight to responsible officers and the entrusting of institutional governance to the regents, jointly and severally, acting as fiduciaries of the Synod—are intended to preserve for the ministry and mission of the Synod the institutions that the member congregations, acting through the Synod, have created, sustained, and relied on (Bylaw 1.1.1 [b]).

A university which wishes to change its articles of incorporation (by amendment or restatement) or its bylaws is required to receive advance approval from the Commission on Constitutional Matters of the Synod (Bylaw 3.9.2.2.3 [a]). Failure to do so makes such a change null and void—as it has been adopted contrary to the Bylaws of the Synod, to which every agency is bound—and unable to be put into practice.

The Bylaws of the Synod prescribe membership of the board of regents, how members are elected or appointed, their term of office, and maximum number of consecutive terms an individual may serve (Bylaw 3.10.6.2). The only way by which any of these requirements prescribed in the Bylaws can be changed is by action of a delegate convention of the Synod amending the Bylaws of the Synod, since a delegate convention of the Synod is the sole legislative body of the Synod, and it alone has authority to change the Bylaws (Article XIV). Should an agency make any change to its Bylaws that violate the Bylaws of the Synod, such changes are null and void, as the Bylaws of the Synod control and supersede (Bylaws 1.4.3,

1.4.5, 1.5.2 [b], 1.5.3.6, etc.). Such a change could only be enacted if a future delegate convention of the Synod amended the Synod's Bylaws.

The members of the board of regents of a Synod university, who have signed a statement prior to taking office affirming they have received, understand, and agree to abide by the conflict of interest provisions of Bylaw 1.5.2, are required to operate the institution "as an agent of the Synod, in which ownership is primarily vested, and which exercises its ownership through the Board of Directors as the custodian the Synod's property" and then through "the Board of Directors of Concordia University System" and, finally, through "the respective board of regents." In operating the institution, the university board of regents is to "carefully exercise its fiduciary duty to the Synod." (Bylaws 3.10.6.4 [i] and 3.10.6.4 [i][1]) While the university board of regents does have ultimate responsibility and independence in operating the institution, it always remains subject to the pre-established Bylaws of the Synod (Bylaw 3.10.6.5).

The Bylaws of the Synod provide a specific procedure for the consolidation, relocation, separation, or divestment of a university (Bylaw 3.6.6.4 [i]), which does not allow a university to unilaterally separate itself from the Synod, or declare itself to be independent of the Synod. According to this prescribed procedure for a university to be divested it requires a two-thirds vote of approval by the Synod Board of Directors, along with the approval by two-thirds vote of one of the following three: the Council of Presidents, the board of regents of that university, or the Concordia University System Board of Directors.

Should such an action (separation or divestiture) be taken as prescribed in Bylaw 3.6.6.4 (i), the result would be that the university now separated or divested would no longer be an agency of the Synod, which in turn would have several repercussions. Some of these would include the loss of functions exclusively reserved to "colleges and universities *of the Synod,*" under its forms of ecclesiastical governance and ecclesiastical supervision:

- Graduates from the university or those satisfactorily completing an approved program would no longer be eligible to receive a call or be eligible for individual membership in the Synod as commissioned ministers. (Bylaws 2.7.1–3; 2.8; 2.9)
- Those individual members of the Synod, (commissioned or ordained) currently serving the university would no longer be eligible to be classified as active members of the Synod (Bylaw 2.11.1). If such individuals wished to continue as individual members of the Synod, they would need to apply for candidate status or if qualified for emeritus status. (Bylaws 2.11.2; 2.11.2.1; 2.11.2.2)
- The university would no longer be eligible for advisory representation at conventions of the Synod under Bylaw 3.1.4.2 (a).
- Finally, the university would no longer be entitled to participate in those services offered by the synodwide corporate entities, which are reserved to agencies of the Synod.

Questions Submitted

Question 1:    Does a board of regents of a university of the Synod have authority to unilaterally change its governance model from that described in Synod Bylaw 3.10.6 (modifying the means of appointment of its board of regents, for example)?

Opinion:    No. It is only a delegate convention of the Synod that, as the legislative body of the Synod, has authority to amend the Bylaws of the Synod (Article XIV) or the Constitution of the Synod (Article XV). Until such an action by a delegate convention of the Synod takes place, the members of a university board of regents have no authority or ability to change the governance model of Bylaw 3.10.6—which, as noted above, exists in the ultimate interest of furthering the Synod's ecclesial purposes—remains binding on any university of the Synod. Unless a university were to be separated or divested by the Synod under Bylaw 3.6.6.4 (i), any such changes by a board of regents to the governance model described in Bylaw subsection 3.10.6 would be null and void, and the Synod would continue to operate according to the Bylaws as adopted by the convention and published in the *Handbook* in all areas including elections and

membership on the board of regents. Individual regents act outside their authority and contrary to their individual fiduciary duties to the Synod when they affirm such an action (Bylaws 1.5.2 [b] and [b][1]; 3.10.6.4 [i] and [i][1–2]).

Question 2:   Does a board of regents of a university of the Synod have authority to amend its articles or bylaws without the prior approval described in Synod Bylaw 3.9.2.2.3 (a)?

Opinion:   No. As an agency of the Synod, the board of regents of a university of the Synod may only amend its bylaws or articles of incorporation with prior approval of the Commission on Constitutional Matters of the Synod. Any such change made without that approval would be null and void (Bylaw 3.9.2.2.3 [a]). If such a proposed change to the articles or bylaws of the university were contrary to the Constitution and Bylaws of the Synod as then current, the commission would be required to reject such change. Outside the convention itself, the commission has the sole authority to interpret the Constitution, Bylaws, and resolutions of the Synod and has no authority to alter or waive their requirements (Bylaw 3.9.2).

Question 3:   Does a board of regents of a university of the Synod have an obligation to comply with the Constitution and Bylaws of the Synod, including without limitation Article II and Article III of the Constitution, when operating and managing and taking action on behalf of the university, including an action purporting to separate the university from the Synod?

Opinion:   Yes. The Constitution in all its articles, the Bylaws, and the resolutions of the Synod are binding on all agencies of the Synod, which includes every university. A board of regents of a university of the Synod operates the university as a fiduciary and an agent of the Synod, which includes being faithful to the confessional position (Article II) and the Objectives of the Synod (Article III) and faithfully maintaining and adhering to the model of governance set forth by the Synod (Bylaw 3.10.6.4 [i][1–2]). Ownership of the university remains primarily invested in the Synod, and is exercised first through the Synod's Board of Directors, which is the custodian of all property of the Synod, then through the CUS Board, and finally through the board of regents, operating with the authority set forth for it in the Bylaws of the Synod. In operating the institution as an agent of the Synod, a board of regents of a university and its members are bound to carefully exercise its fiduciary duty to the Synod. (Bylaws 3.10.6.4 [i] and 3.10.6.4 [i][1]) If a university board of regents were convinced that it was in the best interest of both the Synod and that institution for the institution to be divested or separated from the Synod, then it would be obligated to follow the process detailed in Bylaw 3.6.6.4 (i) and to submit to its conclusion.

Question 4:   Do individual members of a Synod university board of regents have a duty to comply with the Constitution and Bylaws of the Synod, including without limitation Article II and Article III of the Constitution, when operating and managing and taking action on behalf of the university, including an action purporting to separate the university from the Synod?

Opinion:   Yes. Constitutional and Bylaw provisions dealing with governance of the institutions— including the assignment of ecclesiastical supervision and oversight to responsible officers and the entrusting of institutional governance to the regents, jointly and severally, acting as fiduciaries of the Synod—are intended to preserve for the ministry and mission of the Synod the institutions that the member congregations, acting through the Synod, have created, sustained, and relied on (Bylaw 1.1.1 [b]). Any noncompliance with these provisions on the part of a board of regents or individual regent is therefore *not in the interest of the Synod*. Bylaw 1.5.2 (b) and (b)(1) require that every board member of every agency of the Synod shall, when operating and managing and taking action on behalf of such agency (in this case, the university), carry out responsibilities in a manner "reflecting the highest degree of integrity and honesty consistent with the Scriptures, the Lutheran Confessions, the Constitution, Bylaws, and resolutions of the Synod," and shall act consistently *in the interest of the Synod*. "Any inappropriate activity shall cease or the position will be vacated." (Bylaw 1.5.2 [b][1]) As a board of the Synod (Bylaw 3.2.2 [6]), a board of regents, which has been given authority to manage the university on behalf of the Synod, has a direct, "fiduciary" responsibility *to the Synod*, which is to be exercised carefully (Bylaw 3.10.6.4 [i][1]). Bylaw 1.5.1.3 requires each member of a board be sensitive in all activities to avoid "taking or giving offense,

giving the appearance of impropriety, causing confusion in the Synod, or creating potential liability." Regarding separating or divesting the university from the Synod, see the answer above.

Question 5:     Is a university of the Synod and its board of regents an eligible party subject to the Dispute Resolution Process set forth in Synod Bylaw 1.10?

Opinion:     Yes. Agencies of the Synod are included in those to whom the Dispute Resolution Process applies. (Bylaw 1.10.3)

Question 6:     Assuming a university of the Synod and its board of regents are eligible parties to the Dispute Resolution process set forth in Synod Bylaw 1.10, does the Dispute Resolution process apply to a dispute between the Synod (or its President or Board of Directors) and a board of regents regarding that board of regents unilaterally amending or modifying its governance documents, and regarding whether the action of the board of regents is within the authority granted to it under the Constitution and Bylaws of the Synod?

Opinion:     Essentially, no. The fundamental material question of whether a Synod university has the authority to unilaterally change its governance from that prescribed in the Constitution, Bylaws,and resolutions of the Synod, since such a question pertains fundamentally not to the presenting fact situation but to the interpretation and meaning of the Constitution, Bylaws, and resolutions of the Synod, is outside of the authority of the Dispute Resolution Process to arbitrate or adjudicate, as stated in the Bylaws. Authority to interpret the Constitution, Bylaws, and Resolutions of the Synod is specifically given by the Bylaws only to the Synod's Commission on Constitutional Matters (Bylaw 3.9.2.2). Any Dispute Resolution Process is subject in all its aspects to "Holy Scripture, the Lutheran Confessions, and the Constitution and Bylaws of the Synod" (Bylaw 1.10.18). As to the Constitution and Bylaws of the Synod, opinions of this commission are finally dispositive of any questions as to their interpretation that arise during a Dispute Resolution Process (Bylaw 1.10.18 [h], [h][1]). While the question of whether a board of regents has the authority described is thus finally resolved by this commission's interpretation of the Constitution and Bylaws in the negative, this is not to foreclose the applicability of the Dispute Resolution Process to disagreements or disputes,  related to or arising out of this action, as may apply to the board of regents as a whole or to individual regents as "members of congregations of the Synod elected or appointed to positions with…an agency of the Synod" (Bylaw 1.10.2 [5]).

Question 7:     Assuming that the noted parties and issue would be subject to the Dispute Resolution Process, would the outcome of the process, presuming that it is consistent with the Constitution, Bylaws, and resolution of the Synod, be binding on the parties involved.

Opinion:     The Constitution and Bylaws of the Synod are of themselves generally, and as to the central material question noted above in particular, already binding on both the parties and on the outcome of any Dispute Resolution Process, as explained above. As to other aspects of related disagreements or disputes, the outcome of any Dispute Resolution Process, provided it is consistent with "Holy Scripture, the Lutheran Confessions, and the Constitution and Bylaws of the Synod" (Bylaw 1.10.18), would be binding on the parties.

Question 8:     Can a university of the Synod and its Board of Regents avoid the Dispute Resolution Process set forth in Synod Bylaw 1.10 by taking unilateral action purporting to separate the university from the Synod (cf. Synod Bylaw 1.10.2)?

Opinion:     No. "No person, congregation, *or agency* to whom or to which the provisions of this dispute resolution process are applicable because of their membership in the Synod may render this procedure inapplicable by terminating that membership during the course of the dispute resolution process" (Bylaw 1.10.2).

Question 9:     What is the nature and scope of a board of regents' *fiduciary* duties to the Synod as stated in Synod Bylaw 3.10.6.4 (i)(1)? Are these fiduciary duties solely secular duties or do these

fiduciary duties also encompass operating and managing the institution as a fiduciary and an agent of the Synod in a manner consistent with Constitution and Bylaws of the Synod, including without limitation Article II and Article III of the Constitution?

Opinion:    The term *fiduciary* is a commonly used legal term of art. *Black's Law Dictionary* (11th Ed.) offers two definitions, both of which inform the use of the term to describe the duties regents owe *to the ecclesial Synod*. A *fiduciary* is: "1. Someone who is required to act for the benefit of another person on all matters within the scope of their relationship; one who owes to another the duties of good faith, loyalty, due care, and disclosure. 2. Someone who must exercise a high standard of care in managing another's money or property." The commission finds that these common definitions are included within but may not exhaust the sense of "fiduciary duty" that may be inferred from the immediate context of Bylaw 3.10.6.4 (i)(1). More specifically, the context in Bylaws 3.10.6, 3.10.6.1, and 3.10.6.4 provides, without exhausting the full scope of said "fiduciary duties to the Synod," some particular aspects of the responsibilities regents owe the Synod in governing the respective institution in a manner that is faithful to the confession of the Synod (Const. Art. II) and fulfills its objectives (Const. Art. III; Bylaw 3.10.6.1). The fiduciary duties expected of regents are thus not purely secular but involve the comprehensive stewardship of the institution in the ecclesial interest of the Synod, which has put them in place to govern. Governing the institution as a "fiduciary" or "agent of the [ecclesiastical] Synod, in which ownership is primarily vested" (Bylaw 3.10.6.4 [i][1]) and, indeed, as a "governing board of the Synod" (Bylaw 3.2.2), they owe duties of "good faith, loyalty, due care, and disclosure" and a "high standard of care" to maintain the institution in faithfulness to the Synod's confession (Const. Art. II); in fruitfulness with regard to the accomplishment of the Synod's objectives (Const. Art. III and relevant Bylaws, resolutions, and policies, as such pertain to the operation of a Synod university); and consistent in every respect with the governance model Synod has set forth to assure the institution operates in its ecclesial interests (see above, "Universities as Agencies of the Synod" and Opinion to Question 4).

Question 10:    If a board of regents of a university of the Synod fails to carry out or breaches its fiduciary duties to the Synod as required in Synod Bylaw 3.10.6.4(i)(1), who or what body, within the Synod, has the authority and responsibility to take action to address and correct the breach of fiduciary duty, including proceeding under the Dispute Resolution Process or, if appropriate, taking action in secular court?

Opinion:    Bylaw 3.3.1.1.1 assigns ecclesiastical supervision of all officers of the Synod and its agencies to the President of the Synod. Bylaw 3.3.1.1.1 (c) gives the President the responsibility and authority to exercise ecclesiastical supervision over the doctrine taught and practiced at the universities of the Synod.

Bylaw 3.3.1.2 assigns to the President of the Synod oversight of all the agencies of the Synod to ensure that these agencies are acting in accordance with the Constitution, Bylaws, and resolutions of the Synod. Specifically in regard to the educational institutions of the Synod, the President is charged to officially visit or cause to be visited all these institutions to exercise oversight over their administration relative to adhering to the Constitution, Bylaws, and Resolutions of the Synod (Bylaw 3.3.1.2 [a]).

If the President of the Synod determines there is a violation of the Constitution, Bylaws, and resolutions of the Synod, he may call up for review any such action and request that this action be altered or reversed. If the matter is not resolved, the President of the Synod shall refer the matter, as he deems appropriate to the issues and party/parties to the matter involved, to the Synod Board of Directors, the Commission on Constitutional Matters, or to a convention of the Synod. He is also required to report to the Synod those who are not acting in accordance with the Constitution, Bylaws, and Resolutions of the Synod. (Bylaw 3.3.1.2 [c])

The unauthorized separation of a university of the Synod (which is included in property of the Synod) from the Synod inherently involves a legal and property matter properly to be referred by the President (Bylaw 3.3.1.2 [c][2]) to the Board of Directors as the legal representative and custodian of the property of the

Synod (Article XI E 2), which then carries out its constitutional authority in the interest of the Synod. Any conflict or uncertainty in determining the authorities of the officers and agencies of the Synod in this respect is to be resolved as set forth in Articles of Incorporation, Article V. Referral by the President of the legal and property matters involved to the Board of Directors does not exclude the President's authority otherwise to exercise, or see to the exercise of, ecclesiastical supervision (Bylaw 1.2.1 [j]) or detract from "the President's constitutional duty to report to the Synod those who do not act in accordance with the Constitution and do not heed his admonition, as prescribed in Constitution Art. XI B 2" (Bylaw 3.3.1.2 [c][3]).

The commission has treated the approach that most naturally, in its opinion, followed from the question, but notes that its answer is not to exclude other processes possible under the Bylaws, including the process under Bylaw 1.5.7.1 or other Dispute Resolution Processes (Bylaw section 1.10) among eligible parties involved in the matter.

## 172. <u>Closing Prayer and Future Meetings</u>

The commission noted its upcoming meeting, planned tentatively for April 28–29, 2023, in which the principal business will be review of convention overtures, with any intervening urgent business to be handled by an internet conference. The commission will next meet thereafter in connection with Floor Committee Weekend, meeting on Thursday, June 8, and Friday, June 9 (in joint session with the Commission on Handbook in the morning), and then joining the floor committees through Monday, June 12, with some members being released Sunday. The commission will also meet Thursday, July 27, in Milwaukee and then join the convention through Noon on August 3.

John W. Sias, *Secretary*