**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **THE LUTHERAN CHURCH – MISSOURI** | § | |
| **SYNOD, a Missouri nonprofit corporation** | § | |
| *Plaintiff*, | § | |
| | § | **Case No. 1:23-cv-1042-RP** |
| **v.** | § | |
| | § | |
| **DONALD CHRISTIAN, CHRISTOPHER** | § | |
| **BANNWOLF, CONCORDIA** | § | |
| **UNIVERSITY TEXAS, INC., & JOHN** | § | |
| **DOES 1-12** | § | |
| *Defendants* | § | |

## DEFENDANTS' MOTION TO DISMISS
## FOR LACK OF SUBJECT MATTER JURISDICTION
## AND FAILURE TO JOIN INDISPENSABLE PARTIES

Defendants Concordia University Texas, Inc. ("CTX"), Donald Christian ("Christian"), and Christopher Bannwolf ("Bannwolf") submit this Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to Join Indispensable Parties asking that the Court dismiss the Amended Complaint ("Amended Complaint") of the Lutheran Church – Missouri Synod nonprofit corporation ("LCMS") as follows:

## I.    INTRODUCTION

1.    This dispute arises out of CTX's November 2022 amendment to its Articles of Incorporation and Bylaws to provide for corporate self-governance separate from the Lutheran Church – Missouri Synod. All claims in this lawsuit are based on Texas state law. Plaintiff is a Missouri non-profit corporation formed by the Lutheran Church – Missouri Synod ("Synod").[1] LCMS asserts diversity of citizenship as the basis for federal subject matter jurisdiction.

---

[1] Both the Missouri nonprofit corporation that filed this suit and the unincorporated association of Lutheran congregations are named "Lutheran Church – Missouri Synod." This motion (and Plaintiff's Complaint) distinguishes

2.      Under Texas Law, Synod is an unincorporated association with citizenship in Texas and with capacity to sue and be sued. The Amended Complaint asserts that LCMS and Synod, through their corporate governance documents, and not Texas law, determine Synod's legal capacity. The Amended Complaint frames Synod as a non-entity that cannot be a party to a lawsuit. On this basis, LCMS claims that the citizenship of Synod cannot be considered by this Court for determining diversity jurisdiction. Despite claiming that Synod cannot be a party to a lawsuit, the Amended Complaint claims that: a) Synod possesses rights under state law; b) this Court can and should enforce the state law rights of Synod; and c) this Court should grant legal and equitable remedies to Synod without it being a party to this lawsuit.

3.      The Court should dismiss this lawsuit because: a) by its own admission, Synod is the real party in interest to this suit; b) LCMS is a nominal party and does not have standing to bring the claims in this lawsuit; c) Synod is an indispensable party that must be joined such that, in equity and good conscience, the action should not proceed among the existing parties; and d) Synod's citizenship in Texas prevents the Court from exercising diversity jurisdiction.

## II.   **EXHIBITS**

4.      The Amended Complaint includes an appendix with 526 pages of exhibits. This motion is supported by five of the exhibits from the LCMS Amended Complaint as well as the Synod Board of Directors Policy Manual (**Ex. 5**) and a filing by Synod in another proceeding (**Ex. 7**) as follows:

  a.  **Exhibit 1** – Concordia University Texas 1950 Charter – Amended Complaint Exhibit F ("1950 Charter").

  b.  **Exhibit 2** – Synod Bylaws – Amended Complaint Exhibit B ("Synod Bylaws").

  c.  **Exhibit 3** – Synod Constitution – Amended Complaint Exhibit A ("Synod Constitution").

---

between the entities as follows: a) the Missouri nonprofit corporation is referred to as "LCMS"; and b) the unincorporated association of Lutheran congregations is referred to as "Synod."

d. **Exhibit 4** –Amended and Restated Articles of Incorporation of the Lutheran Church Missouri – Synod – Amended Complaint Exhibit C ("LCMS Articles of Incorporation").

e. **Exhibit 5** – Synod Board of Directors Policy Manual.

f. **Exhibit 6 -** Synod Resolution 4-04, 2004 – Amended Complaint Exhibit D ("Resolution 4-04").

g. **Exhibit 7 –** Unopposed Motion for Leave to file an Amicus Brief, *Faith Bible Chapel International, a Colorado non-profit corporation v. Gregory Tucker*, (10th Cir., May 28, 2022)

### III. FACTS

5.      The Amended Complaint includes six separate causes of action all arising from the same set of facts. The fact section of this motion identifies all interested parties, provides a brief overview of the events at issue, and summarizes the alleged rights and harms for each cause of action in the Complaint.

#### A. Parties

6.      <u>CTX is a Lutheran university in Austin, Texas</u>. CTX is one of several universities originally founded by members of churches located in Texas associated with the predecessor to Synod. CTX was founded in the 1920s. **1ˢᵗ Am. Compl**. ¶ 22. The CTX nonprofit corporation CTX was formed in 1950. **1ˢᵗ Am. Compl**. ¶ 26; **Ex. 1** p.1. It adopted the name "Concordia University Texas" in 2007. **1ˢᵗ Am. Compl**. ¶¶ 23, 27. Donald Christian is CTX's President and Christopher Bannwolf is the Chairman of the CTX Board of Regents. **1ˢᵗ Am. Compl**. ¶ 39.

7.      <u>The Lutheran Church – Missouri Synod includes two separate entities: LCMS and Synod</u>. LCMS is a Missouri nonprofit corporation. **1ˢᵗ Am. Compl**. ¶¶ 15-16. Synod is a synodical union of Lutheran congregations. *See* **1ˢᵗ Am. Compl.** ¶ 9.

8.      <u>Synod is an association with members in Texas and a governance structure created by its governing documents.</u> Synod's purpose is for Lutheran congregations to "join with one another in

the Synod to support one another and work together in carrying out their commonly adopted objectives." **Ex. 2** p.1 § 1.1.1. Synod's membership is made up of "nearly 6000 [Lutheran] congregations and nearly 2 million baptized members." **1ˢᵗ Am. Compl**. ¶ 9. Synod's bylaws define it as "the association of self-governing Lutheran congregations and all its agencies on the national and district level." **Ex. 2** p.3 § 1.2.1(v).[2] Synod's members are both congregations and individual ordained ministers. **1ˢᵗ Am. Compl.** ¶ 8, fn. 1; *see also* **Ex. 3** p.2-3, Art. V; **Ex. 2** p.3, § 1.21(m). Synod divides its member congregations into districts, including a Texas District **Ex. 3** p.7, Art. XII; & **Ex. 2** p.5, § 1.3.6; *see also e.g.* **1ˢᵗ Am. Compl**. ¶¶ 36, 41, 55. Synod is led by a president, six vice presidents, a secretary, a board of directors, and other officers as required by Synod's Bylaws. **1ˢᵗ Am. Comp.** ¶ 14.

9.     <u>LCMS is a non-profit corporation created by Synod.</u> LCMS describes itself as a "civil law entity" that carries out Synod's "business, property, and civil law functions, including the right to sue and be sued." **1ˢᵗ Am. Compl**. ¶ 8, fn. 1. Synod Bylaws define LCMS, or "Corporate Synod" as "the Missouri nonprofit corporation, including its offices, boards, commissions, and departments." **Ex. 2** p.2, § 1.2.1(f).

10.     <u>In its governing documents, Synod retains the rights and authorities of churches and organizations, including the right to own and convey property of every description.</u> In defining LCMS as a corporate entity, Synod's bylaws proclaim that "Synod intends to retain all authority and autonomy allowed a church under the laws and Constitution of the United States, and the State of Missouri." **Ex. 2** p.2, § 1.21(f). Under its Constitution, Synod has the power "to purchase, hold, administer, and sell property of every description in the interest of the Synod", and can "accept,

---

[2] LCMS admitted that Synod was an association in its original complaint. **Compl**. ¶ 9. In the Amended Complaint, LCMS has deleted the reference to Synod as an association and instead asserts that Synod is not "a civil entity or unincorporated association." **1ˢᵗ Am. Compl**. ¶ 15. Changing the language of the Amended Complaint does not change the terms of Synod's own bylaws, which identifies it as an "association."

hold, administer, and if deemed advisable, dispose of legacies, donations, commercial papers, and legal documents of every description in the interest of its work." **Ex. 3** p.2, Art. IV.

   B. **The Amended Complaint**

11.    The alleged harms are based on actions taken by the CTX Board of Regents to modify the CTX governing documents.[3] On November 8, 2022, the CTX Board of Regents modified CTX's bylaws and articles of incorporation. **1ˢᵗ Am. Comp.** ¶ 30. According to the Amended Complaint, the amendments "affect the ability of the Synod to participate in the governance of CTX." **1ˢᵗ Am. Comp.** ¶ 35.

12.    The Amended Complaint alleges both Synod and LCMS are harmed by these changes, but Synod is not a party to this suit. The Amended Complaint repeatedly asserts that Defendants' actions have harmed both LCMS and Synod. *See e.g.* **1ˢᵗ Am. Comp.** ¶ 40 ("…they have as a result caused harm to LCMS and Synod,"); ¶ 62 ("…to the detriment of LCMS and Synod…"); ¶ 76 ("…took away LCMS and Synod rights and benefits…"). Synod though, is not a party to this suit, and LCMS asserts that it is prosecuting this Amended Complaint on behalf of itself and on behalf of Synod. **1ˢᵗ Am. Comp.** ¶ 50 ("LCMS petitions this Court … on behalf of itself and Synod…"); ¶ 78 ("…LCMS on its behalf, and on behalf of its related ecclesiastical denomination [Synod], has … sought declaratory relief.").

13.    Synod's Board of Directors is Synod's legal representative. Throughout the Amended Complaint, LCMS asserts that Synod's Bylaws and Constitution grant LCMS the authority to prosecute suits on behalf of Synod. *See e.g.* **1ˢᵗ Am. Comp.** ¶ 8, fn. 1 ("LCMS has the authority …

---

[3] Defendants do not concede that any alleged right in the Amended Complaint is in fact a "right", the loss of which can cause harm or be actionable by either Synod or LCMS. However, this motion is limited to an attack on the jurisdictional facts contained in the Complaint. *Scheur v. Rhodes*, 416 U.S. 232, 236 (1974) ("When a federal court reviews the sufficiency of a complaint….The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.") Defendants reserve the right to attack the merits of each claim in other appropriate motions or pleadings as necessary.

to make the claims and assertions in the First Amended Complaint for the benefit of the Synod.");
¶ 62, fn. 14 ("LCMS as the civil law entity established by the Synod is the proper party to pursue
civil remedies on behalf of Synod.") Under Synod's governing documents, Synod's Board of
Directors, not LCMS, is the legal representative of Synod. **Ex. 3** p.7, Art. XI, Sec. (E)(2); **Ex. 2**
p.6, § 1.4.4; p.95, § 3.3.4; **Ex. 5** p. 12, ¶ 13.1.1. Approval by Synod's Board of Directions is
required for initiation of any legal proceedings on behalf of Synod. **Ex. 5** p.47, § 4.14.2.2(h)(3).
Similarly, Synod's Board of Directors is "the custodian of all property of Synod." **Ex. 2** at p.6, §
1.4.4; p.95, § 3.3.4; p.98 § 3.3.4.7; **Ex. 5** p. 12, ¶ 13.1.2. The Board's representation and
custodianship may be delegated to an agency of the Synod. **Ex. 5** p. 12, ¶ 13.1.3. LCMS is not an
agency of the Synod. **1st Am. Compl.** ¶ 18.

14.     The Amended Complaint's assertion that LCMS holds Synod's right to sue and be sued is
false. LCMS asserts it was incorporated by the Synod to "carry out [Synod's] business, property,
and civil law functions, including the right to sue and be sued." **1st Am. Compl.**, ¶¶ 8, fn. 1, 15. It
further asserts that "any attempt to declare the member congregations of the Synod to constitute a
purported unincorporated association … would run roughshod over the Synod's long-standing,
definitive, and exclusive exercise of its rights … to incorporate and represent itself before the state,
as LCMS." **1st Am. Compl.** ¶ 15, fn. 7.  Yet, on at least one occasion in 2022, Synod, "the non-
civil entity denomination" appears to have presented itself to the state as an Amicus. **Ex. 7,** ¶¶ 1,
6. The unopposed motion to file an amicus brief defined the Synod as:

> Amicus Lutheran Church—Missouri Synod is an international Lutheran
> ***denomination*** headquartered in St. Louis, Missouri. It has more than 6,000 member
> congregations, 22,000 ordained and commissioned ministers, and nearly 2 million
> baptized members throughout the United States, including in Colorado.
> Additionally, the Synod has two seminaries, six universities, and the largest
> Protestant parochial school system in America.

**Ex. 7**, ¶ 6 (emphasis added). This definition lacks any reference to LCMS as the entity to carry out Synod's litigation.

### C.  Causes of Action and Alleged Harms

15.     The Amended Complaint includes six separate Texas State causes of action. These are breach of contract, promissory estoppel, breach of fiduciary duty, violations of the Texas Business Organization Code, and tortious interference with contract. **1st Am. Compl.** ¶¶ 53-81. It also includes a cause of action under the Texas Declaratory Judgment Act seeking declarations related to each of the causes of action. **1st Am. Compl.** ¶¶ 48-52. The alleged harms for all six causes of action are the same: alleged loss of corporate governance rights over CTX and alleged loss of the CTX property. *See* **1st Am. Compl.** ¶¶ 48-81.

16.     The Amended Complaint asserts the loss of the following governance rights of LCMS and Synod over CTX because of the changes to CTX's governing documents:

   a.  the express right of the Synod, through its national convention, to elect four members of the CTX BOR;[4]

   b.  the express right of the Texas District of the Synod, acting in convention, to elect four members of the CTX BOR;

   c.  the express right of the Praesidium of the Synod to appoint one member of the CTX BOR;

   d.  the express right to participate in the prior approval panel for the appointment of the President of CTX;

   e.  the express right to approve any changes to CTX governance documents;

   f.  the express right to effect ecclesiastical supervision over the doctrine taught and practiced in the institution, including prior approval of theological faculty and the removal, through ecclesiastical discipline, of rostered faculty and administration from office.

**1st Am. Compl**. ¶ 55 (internal citations omitted); *see also e.g.* **1st Am. Compl**. ¶¶ 67, 71, 76, & 81.

---

[4] "BOR" refers to the Board of Regents.

17.     <u>The Amended Complaint and attached documents demonstrate that each of these "rights"</u>
<u>of corporate governance belong to Synod, its members, or its governing officers, not LCMS.</u>

    a.   *Election of members to CTX's Board of Regents*. The right, if any, to elect members to
CTX's Board of Regents belongs to Synod, the Texas District of Synod members, and
the Praesidium of Synod. *See e.g.* **1ˢᵗ Am. Compl.** ¶ 55(a)-(c); *see also* **1ˢᵗ Am. Compl.**
¶¶ 36, 41. This is confirmed by the exhibits attached to the Amended Complaint. **Ex. 2**
p.145-46, §§ 3.10.6.2(1)-(5). Nowhere does the Amended Complaint assert, or the
documents attached to the Amended Complaint demonstrate, that LCMS had a right to
appoint any members to CTX's Board of Regents.

    b.   *Participation in the approval of CTX's President*. Synod, not LCMS, participated in the
selection of CTX's President. *See* **1ˢᵗ Am. Compl.** ¶¶ 38, 71; *see also* **Ex. 2** p.151-52,
§ 3.10.6.6.2(b)(6) (Concordia University presidents prior approval panel consists of
Synod's President, the district president, and the chair of the Board of the Concordia
University System.) LCMS was not involved in the prior approval committee, nor does
it appear to be involved anywhere else in the selection of a Concordia University
president. *See **Id***. p.151-53, § 3.10.6.6.2.

    c.   *Approval of changes to CTX's governing documents*. Synod and its Commission on
Constitutional Matters ("CCM"), not LCMS, assert the right to prior approval of
changes to CTX's governing documents. **1ˢᵗ Am. Compl.** ¶¶ 8, 29, 30, 43, 70, 76, 77;
*see also* **Ex. 2** p.121, § 3.9.2.2.3(a). The CCM is a Synod Commission that is
responsible only to the Synod and its governing parties. **1ˢᵗ Am. Compl.** ¶¶ 46; **Ex. 2**
p.1, § 1.2.1(c). Neither the Amended Complaint nor the attached documents
demonstrate that LCMS had any right to approve CTX's governing documents.

d. *Supervision of the doctrine taught and practiced at CTX*. Synod, its governing directors, and its agents participated in the doctrine taught and practiced at CTX by approving faculty members. **1ˢᵗ Am. Compl. ¶¶** 38; *see also* **Ex. 2** p.153, § 3.10.6.7.3 (Synod's President, chairman of Synod's Council of Presidents, and a member of Concordia University System board approve appointments of faculty.) LCMS was not involved in approving appointments of theological faculty. *See Id.*

18.   The harm to LCMS and Synod from the loss of CTX's property is based on an alleged failure of CTX to execute a reversionary interest to LCMS. *See e.g.* **1ˢᵗ Am. Compl. ¶¶** 25, 60. According to the Amended Complaint, LCMS is entitled to a reversionary interest in CTX property pursuant to Synod Resolution 4-04. **1ˢᵗ Am. Compl. ¶¶** 25, 60. However, Synod Resolution 4-04 discusses alleged ownership and reversionary rights of Synod, not LCMS.

19.   According to Synod Resolution 4-04 reversionary interests should be executed in favor of Synod, not LCMS. Specifically, Resolution 4-04 states:

WHEREAS, *The Synod* owns the properties of all agencies of the Synod, including its institutions of higher education, regardless of how such properties are titled (Bylaw 3.51 i) ... That each institution of higher education of the Synod shall hold title to properties presently owned or at any time hereafter acquired by it subject to a reversionary interest or possibility of a reverter *in favor of the Synod*…

**Ex. 6** (*emphasis added*). Additionally, Synod property includes "[a]ll assets, real or personal, tangible or intangible, whether situated in the United States or elsewhere, titled or held in the name of corporate Synod [LCMS], its nominee, or an agency of Synod." **Ex. 2** p.3, § 1.2.1(r).

20.   If any duties were breached as alleged in the Amended Complaint, such duties were owed to Synod, not LCMS. The Amended Complaint asserts that CTX and its Board of Regents are fiduciaries with duties owed to Synod. **1ˢᵗ Am. Compl. ¶¶** 29, 36, 45, 46, 65, 71, 81. Other than

conclusory and inferential statements, the Amended Complaint does not allege that CTX or members of its Board of Regents owe fiduciary duties to LCMS. *See e.g.* **1st Am. Compl.** ¶ 51, 69.

21.     <u>Despite the repeated assertions that both LCMS and Synod have experienced harm, the Amended Complaint and attached documents do not include any facts which support the assertion that LCMS was deprived of any alleged rights or property, or that it was owed any duty.</u> All of the rights and property interests alleged in the Amended Complaint belong to Synod. If any duties were owed, they were owed to Synod, not LCMS. Synod cannot claim that it is entitled to enforce these rights and duties in this Court without being a party to this lawsuit.

## IV.   <u>ARGUMENT</u>

22.     <u>The Court should dismiss LCMS's complaint for lack of subject matter jurisdiction.</u> Synod, not LCMS, is the real party in interest, the real party to the controversy, and is an indispensable party. Synod's Texas citizenship, defined by its members in the State, destroys the diversity jurisdiction in this case. Accordingly, the Amended Complaint should be dismissed.

### A.   <u>Authorities</u>

23.     <u>A Complaint may be dismissed on "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."</u> *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). It is the Plaintiff's burden to demonstrate federal jurisdiction. *Gibbs v. Buck*, 307 U.S. 66, 72 (1939) (The burden of showing by the admitted facts that the federal court has jurisdiction rests upon the complainants.); *see also McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936). Whether a complaint falls under federal jurisdiction "ordinarily depends on the facts as they exist when the complaint is filed." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 569 (1992) (internal quotations omitted).

### i. __Diversity Jurisdiction__

24.     A district court has original jurisdiction of civil actions between diverse citizens. Diversity jurisdiction is only vested in federal district courts when the controversy is "between citizens of different states." 28 USC § 1332(a)(1). The diversity of citizenship must be complete; one plaintiff cannot share citizenship with any defendant. *Whalen v. Carter*, 954 F.2d 1087, 1094 (5th Cir. 1992).

25.     An unincorporated church is a citizen of every state in which its members live. It is well settled that "an unincorporated association is deemed a citizen of every state in which its members reside." *Hummel v. Townsend, 883* F.2d 367, 369 (5th Cir. 1989) (citing *United Steelworkers of America v. R.H. Bouligny, Inc*., 382 U.S. 145 (1965). This same principle applies to unincorporated churches. *See Id*. (finding that "[s]ince at least some [Reorganized Church of Jesus Christ of Latter Day Saints] World Church members are citizens of Texas, the RLDS World Church is deemed a citizen of Texas.") If its structure is complex, "the citizenship of unincorporated associations must be traced through however many layers of partners or members there may be." *Hart v. Terminex Int'l*, 336 F.3d 541, 543 (7th Cir. 2003).

26.     Synod is a citizen of Texas. Synod's members are congregations and individual ministers of the Evangelical Lutheran Church. **Ex. 3** p.2-3, Art. V; **Ex. 2** p.3, § 1.2.1(m). Synod is divided into districts that are made up of member congregations. **Ex. 3** p.7-9, Art. XII; *see also* **Ex. 2** p.5, § 1.3.6. There is a Texas district of the Synod. *See* **Compl**. ¶¶ 36, 41, 55. Therefore, there are Synod member congregations and ministers in Texas and Synod has citizenship in Texas through those members. *Hummel, 883* F.2d p.369; *see also Hart*, 336 F.3d at 543.

27.     Complete diversity between the parties is not possible if Synod is a Plaintiff or if Synod's citizenship otherwise controls. Defendants CTX, Christian, and Bannwolf are citizens of Texas. **1st Am. Compl**. ¶¶ 2-4. Synod shares citizenship with these three defendants. If Synod is joined

as Plaintiff, or if Synod's citizenship otherwise controls for diversity, there is not complete diversity between the parties and the Court lacks subject matter jurisdiction. *Whalen*, 954 F.2d at 1094 (5th Cir. 1992).

ii. **Synod has capacity to sue and be sued under Texas Law**

28.     The Amended Complaint seemingly asserts that Synod has no capacity to sue or be sued. Although the Amended Complaint does not make such an explicit assertion, this conclusion can be drawn from the assertion that LCMS holds Synod's right to sue and be sued. **1st Am. Compl.**, ¶¶ 8, fn. 1, 15.

29.     A party's capacity to sue and be sued depends on the type of party. For individuals not acting in representative capacity, capacity is determined by the law of the state in which the individual is domiciled. Fed. R. Civ. P. 17(b)(1). For corporations, it is determined by the law under which it was organized. Fed. R. Civ. P. 17(b)(2). For all other parties, it is determined by the law of the state where the court is located. Fed. R. Civ. P. 17(b)(3).

30.     In Texas, unincorporated associations have the capacity to sue and be sued. The Texas Business Organization Code states that a "[a] nonprofit association, in its name, may institute, defend, intervene, or participate in a judicial, administrative, or other governmental proceeding or in an arbitration, mediation, or any other form of alternative dispute resolution." Tex. Bus. Org. Code § 252.007. A "nonprofit association" is defined as "an unincorporated organization, other than one created by a trust, consisting of three or more members joined by mutual consent for a common, nonprofit purpose." Tex. Bus. Org. Code § 252.001.

31.     Churches are subject to the Texas Business Organizations Code. While the First Amendment protects a freedom of belief, freedom of churches to act "remains subject to regulation for the protection of society." *Tilton v. Marshall*, 925 S.W.2d 672, 677 (Tex. 1996) (citing *Cantwell v. Connecticut*, 310 U.S. 296, 303-04, 84 L. Ed. 1213, 60 S. Ct. 900 (1940)). As explained by Texas

courts, this is because "churches and their congregations exist and function within the civil community, they are amenable to rules governing property rights, torts, and criminal conduct." *New Bethel Baptist Church v. Taylor*, No. 14-22-00028-CV, 2023 Tex. App. LEXIS 6697, at *8 (Tex. App.—Houston [14th Dist.] Aug. 29, 2023, no pet. h.) (internal quotations omitted.) (citing *Williams v. Gleason*, 26 S.W.3d 54, 59 (Tex. App.—Houston [14th Dist.] 2000, pet. denied); see also *Pleasant Glade Assembly of God v. Schubert*, 264 S.W.3d 1, 12 (Tex. 2008)). Quoting the U.S. Supreme Court in *Masterson v. Diocese of Northwest Texas*, the Texas Supreme Court held:

> 'Religious organizations come before us in the same attitude as other voluntary associations for benevolent or charitable purposes, and their rights of property, or of contract, are equally under the protection of the law, and the actions of their members subject to its restraints.'

*Masterson v. Diocese of Nw. Tex.*, 422 S.W.3d 594, 602 (Tex. 2013) (quoting *Watson v. Jones*, 80 U.S. 679, 714 (1871)). In applying these principles, the Texas Supreme Court has recognized churches as unincorporated associations with capacity under Texas Law. *See e.g. Episcopal Diocese of Ft. Worth v. Episcopal Church*, 602 S.W.3d 417, 430 (Tex. 2020) (describing a religious organization made up of member congregations as an unincorporated association).

32.     <u>Synod is an unincorporated association that has the capacity to sue and be sued in its own name</u>. Synod is unincorporated and is an "association of self-governing Lutheran congregations." **Compl**. ¶ 10; **Ex. 2** p.3, § 1.2.1(v). It has both congregational members and individual members that are ministers of religion. **Ex. 3**, p.2-3, Art. V; **Ex. 2** p.3, § 1.2.1(m). Its members have joined together for a nonprofit purpose, mainly to support one another to "carry out their commonly adopted objectives." **Ex. 2** p1, § 1.1.1; *see also* **Ex. 3** p.1-2, Art. III; *see also* **Ex. 5** p.19-21, §§2.2-2.5. Under Texas law, Synod is a "nonprofit association" and has the capacity to sue and be sued in its own name, regardless of its identity as a church. Tex. Bus. Org. Code §§ 252.001, 252.00; *see e.g. Episcopal Diocese of Ft. Worth*, 602 S.W.3d at 430.

33. <u>Synod has also presented itself before a court.</u> Synod, the "Lutheran denomination", not LCMS the non-profit, presented itself to the 10th Circuit Court of Appeals in seeking to file an amicus brief. **Ex. 7**, ¶¶ 1, 6. Synod and LCMS do not dictate when and where Synod will have capacity. That is a question for state law. Fed. R. Civ. P. 17(b)(3).

   **iii.**   **<u>Synod is the Real Party in Interest.</u>**

34. <u>Federal actions "must be prosecuted in the name of the real party in interest."</u> Fed. R. Civ. P. 17(a)(1). Under Rule 17, the following is the exclusive list of those who can sue in their own name without joining the real party in interest, i.e. the party for whose benefit the action is brought: (A) an executor; (B) an administrator; (C) a guardian; (D) a bailee; (E) a trustee of an express trust; (F) a party with who or in whose name a contract has been made for another's benefit; and (G) a party authorized by statute. *Id*. LCMS does not meet any of these requirements and therefore cannot bring suit without joining Synod as the real party in interest.

35. <u>The real party in interest in a diversity suit is the party that possesses the substantive right under state law</u>. "Whether a person is a real party in interest depends upon his substantive rights, which, in diversity cases … are determined by state law." *United States v. 936.71 Acres of Land*, 418 F.2d 551, 556 (5th Cir. 1969) (citing *American Fidelity & Cas. Co. v. All Amer. Bus Lines*, 179 F.2d 7 (10th Cir. 1950)); *see also Farrell Constr. Co. v. Jefferson Parish*, 896 F.2d 136, 140 (5th Cir. 1990) ("A federal court sitting in diversity must look to state law to determine which party holds the substantive right.") As discussed above, the substantive rights asserted in the Amended Complaint, if any, belong to Synod, which is the real party in interest.

36. <u>The Texas Constitution only guarantees the right to open courts for persons "for an injury **_done to him_**</u>." Tex. Const. Art. 1 § 13 (emphasis added). In Texas, a plaintiff has the right to remedies through the due course of law (standing) "when it is personally aggrieved, regardless of whether it is acting with legal authority…" *Coastal Liquids Transp., L.P. v. Harris Cty. Appraisal*

*Dist.*, 46 S.W.3d 880, 884 (Tex. 2001) (differentiating between "standing" and "capacity" under Texas law); *see also Data Foundry, Inc. v. City of Austin*, 620 S.W.3d 692, 696 (Tex. 2021). The plaintiff itself "'must be personally injured – he must plead facts demonstrating that he, himself, (rather than a third party or the public at large) suffered the injury.'" *Linegar v. DLA Piper, LLP (US)*, 495 S.W.3d 276, 279 (Tex. 2016) (quoting *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 154-55 (Tex. 2012)).

37.    <u>Synod, not LCMS, is the real party in interest.</u> Plaintiff's own pleadings and the attached documents make clear that if there was an actionable loss of governance rights, or to a reversionary interest in CTX's property, or a breach of fiduciary duties, those rights were Synods. **1st Am. Compl.** 8, 29, 30, 36, 38, 41, 43, 46, 55(a)-(c), 70-71, 76-77 (alleged rights of corporate governance); **Ex. 2** p.121, § 3.9.2.2.3(a), p.145-46, §§ 3.10.6.2(1)-(5), p.151-52, § 3.10.6.6.2(b)(6), p.153, § 3.10.6.7.3 (alleged rights of corporate governance); **Ex. 6** (alleged right to reversionary interest); **Ex. 2** p.3, § 1.2.1(r) (defining Synod property to include all assets held in the name of LCMS or any other Synod agency) (alleged right to property); **1st Am. Compl.** ¶¶ 29, 36, 45, 46, 65, 71, 81 (alleged fiduciary duties). It is Synod, not LCMS, that suffers from the alleged harms, and under Texas law it is Synod that holds the right to seek recovery from the courts. Tex. Const. Art. 1 § 13; *Linegar*, 495 S.W.3d at 279; *see also Heckman v. Williamson*, 369 S.W.3d at 154-55. Synod, therefore, is the real party in interest. *936.71 Acres of Land*, 418 F.2d 551, 556 (5th Cir. 1969).

38.    <u>The Court should dismiss the Amended Complaint for lack of diversity jurisdiction.</u> The Amended Complaint plainly asserts that LCMS is seeking recovery on behalf of Synod. **1st Am. Comp.** ¶¶ 50, 78. LCMS is not an executor, an administrator, a guardian, a bailee, a trustee of an express trust, a party with who or in whose name a contract has been made for another's benefit,

or a party authorized by statute to bring a suit on behalf of Synod. Therefore, LCMS is not authorized under the Federal Rules of Civil Procedure to prosecute this claim without joining Synod. *See* Fed. R. Civ. P. 17(a). As Synod shares citizenship with the Defendants, the Court should dismiss the Amended Complaint for lack of jurisdiction. *Whalen*, 954 F.2d at 1094.

### iv.   <u>Synod is the Real Party in Controversy</u>

39.   <u>Federal courts must disregard nominal parties and base diversity jurisdiction on the citizenship of the real party to the controversy</u>. In addition to the requirements of Fed. R. Civ. P. 17, federal doctrine requires citizenship to be determined based on the real party in controversy. The U.S. Supreme Court has "established that the "citizens" upon whose diversity a plaintiff grounds jurisdiction must be real and substantial parties to the controversy." *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460-461 (1980) (citing *McNutt v. Bland*, 2 How. 9, 15 (1844); *Marshall v. Baltimore & Ohio R. Co*., 16 How. 314, 328-329 (1854); *Coal Co. v. Blatchford*, 11 Wall. 172, 177 (1871)). Thus, a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy. *Id*. (citations omitted). Courts must consider "the citizenship of non-parties when a party already before the court is found to be a non-stake holder/agent suing only on behalf of another." *Bynane v. Bank of N.Y. Mellon*, 866 F.3d 351, 359 (5th Cir. 2017) (citing *Corfield v. Dall. Glen Hills LP*, 355 F.3d 853, 865 n.10 (5th Cir. 2003)).

40.   <u>Under *Hummel v. Townsend* Synod is the real party in controversy for determination of diversity jurisdiction</u>. In *Hummel*, the Presiding Bishop of the Reorganized Church of Jesus Christ of Latter-Day Saints (RLDS World Church) brought suit in his capacity as trustee for the church. *Hummel*, 883 F.2d at 368. According to the complaint, Hummel acted "for and on behalf of" the church and was "formally appointed by the RLDS [] church to act as a trustee for purposes of holding all church property…and including maintaining legal action on behalf of" the church. *Id*. Hummel testified that he, along with two other bishops, were "responsible for all of the business

16

or temporal affairs of the church wherever the church is located in the world." *Id*. at 369-70. The Fifth Circuit concluded that, although a trustee's citizenship generally controls for the purposes of a diversity suit on behalf of a trust, in the case of *Hummel*, the church's citizenship, not the Bishop's, controlled for diversity purposes. *Id*. at 371-72. This is because the Bishop was not "an outside or third-party trustee for others, but [was] rather a trustee *only* by virtue of his position (Presiding Bishop) *within* and *as part* of the RLDS World Church itself," and he had no status or interest independent of his position as the Presiding Bishop. *Id*. at 372 (emphasis in original). Because the citizenship of the church was not diverse, the 5th Circuit affirmed dismissal for lack of jurisdiction.

41.     <u>LCMS is not independent of Synod.</u> Like the bishop in *Hummel*, LCMS claims to be a non-profit created by Synod to carry out Synod's "business, property and civil law functions." **1st Am. Compl**. ¶¶ 15-16. LCMS was formed by the Synod in convention, **1st Am. Compl**. ¶ 18, and the power of LCMS is "lodged with the accredited clergy and lay delegates of the congregations in actual membership" with Synod. **Ex. 4** p.1-2, Art III. The Synod convention is the "'ultimate authority'" of LCMS. **1st Am. Comp.** ¶ 15, fn. 6. Synod's Board of Directors is LCMS's Board of Directors. **1st Am. Comp.** ¶ 14, fn. 5.

42.     <u>Synod is the real party in controversy</u>. The Amended Complaint alleges the loss of rights of governance of CTX, the loss of a reversionary interest in CTX's property, and breaches of fiduciary duty because of the changes to CTX's governing documents. These rights, if any, were held by Synod and these duties, if any, were owed to Synod. **1st Am. Compl.** 8, 29, 30, 36, 38, 41, 43, 46, 55(a)-(c), 70-71, 76-77 (alleged rights of corporate governance); **Ex. 2** p.121, § 3.9.2.2.3(a), p.145-46, §§ 3.10.6.2(1)-(5), p.151-52, § 3.10.6.6.2(b)(6), p.153, § 3.10.6.7.3 (alleged rights of corporate governance); **Ex. 6** (alleged right to reversionary interest); **Ex. 2** p.3, § 1.2.1(r) (defining

Synod property to include all assets held in the name of LCMS or any other Synod agency) (right to property); **1st Am. Compl.** ¶¶ 29, 36, 45, 46, 65, 71, 81 (fiduciary duty). Accordingly, Synod is the real party in controversy whose citizenship controls for diversity jurisdiction.

43.     LCMS is at best a nominal party[5] and the Court should dismiss the Amended Complaint for lack of Jurisdiction. Like the bishop in *Hummel*, LCMS is not an outside or third-party trustee, partner, or agent. *See Hummel*, *Id*. at 372. It is only a representative of Synod by virtue of it being within and part of Synod. *Id*. Therefore, LCMS's interest, if any, in CTX, CTX's property, and/or CTX's governing documents is not independent of Synod's interest but exists solely due to LCMS' position as the Synod's corporate wing. Under *Hummel*, the citizenship of Synod, not LCMS, controls diversity jurisdiction. *Id*. As Synod shares diversity with the Defendants, the Court should dismiss the Amended Complaint for lack of diversity jurisdiction. *Whalen*, 954 F.2d at 1094.

**v.     Synod is an indispensable party and must be joined.**

44.     In addition to the requirements of Rule 17 and the doctrine of real party in controversy, the Federal Rules require the joinder of indispensable parties. A party whose joinder will not deprive the court of subject-matter jurisdiction must be joined if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

---

[5] Defendants do not concede that LCMS has capacity to bring this suit on behalf of Synod. The corporate governance documents attached to the Amended Complaint identify Synod's Board of Directors, not the corporate entity LCMS, as Synod's legal representative. **Ex. 3** p.7, Art. XI, Sec. (E)(2); **Ex. 2** p.6, § 1.4.4; p.95, § 3.3.4; **Ex. 5** p. 12, ¶ 13.1.1. Synod's governing documents allow the Board of Directors to delegate this representative authority to an agency of the Synod, **Ex. 5** p. 12, ¶ 13.1.3, but the Amended Complaint explicitly asserts that LCMS is not an agency of the Synod. **1st Am. Compl.** ¶ 18. LCMS's contention that it is the legal representative of Synod is not supported by the evidence included with the Amended Complaint.

Fed. R. Civ. P. 19(a)(1). If a party "has not been joined as required, the court must order that the person be made a party." Fed. R. Civ. P. 19(a)(2).

45.     <u>Courts should determine the relative interest the missing party has in the litigation based on state law and decide based on the context of the litigation whether the party is indispensable.</u> Generally, "where two or more parties are joint obligees, they are indispensable parties in an action for the enforcement of that obligation." *Harrell & Sumner Contracting Co. v. Peabody Peterson Co.*, 546 F.2d 1227, 1228-29 (5th Cir. 1977). One of the reasons for this "is the necessity or propriety for conformity with remedies for enforcing those interests to the nature of the interests themselves." *Bry-Man's, Inc. v. Stute*, 312 F.2d 585, 587 (5th Cir. 1963) (internal citations omitted). The question of indispensability is context specific and courts may "look to state law to determine the interest that the party has in the litigation." *Caytrans Project Servs. Ams., Ltd. v. BBC Chartering & Logistics GmbH & Co. KG*, 861 F. App'x 556, 559 (5th Cir. 2021).

46.     <u>If an indispensable party cannot be joined, "the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed."</u> Fed. R. Civ. P. 19(b). The court should consider:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.
> *Id*.

Adequacy of judgment "refers to the public stake in settling disputes by wholes, wherever possible." *Republic of Philippines v. Pimentel*, 553 U.S. 851, 870 (2008) (internal quotations omitted). It is a "social interest in the efficient administration of justice and the avoidance of multiple litigation" that supports joinder of absent claimants. *Id*. (internal quotations omitted).

19

47.    The context of this litigation requires the joinder of Synod. Under Texas law, Synod has a clear and substantial interest in this litigation. It is Synod's alleged loss of governance rights, Synod's alleged loss of property interests, and breaches of alleged fiduciary duties owed to Synod that are at issue. **1ˢᵗ Am. Compl.** 8, 29, 30, 36, 38, 41, 43, 46, 55(a)-(c), 70-71, 76-77 (alleged rights of corporate governance); **Ex. 2** p.121, § 3.9.2.2.3(a), p.145-46, §§ 3.10.6.2(1)-(5), p.151-52, § 3.10.6.6.2(b)(6), p.153, § 3.10.6.7.3 (alleged rights of corporate governance); **Ex. 6** (alleged right to reversionary interest); **Ex. 2** p.3, § 1.2.1(r) (defining Synod property to include all assets held in the name of LCMS or any other Synod agency) (alleged right to property); **1ˢᵗ Am. Compl.** ¶¶ 29, 36, 45, 46, 65, 71, 81 (alleged fiduciary duties).

48.    At a minimum, Synod and LCMS are akin to joint obligees, requiring Synod's joinder. LCMS has asserted: (a) that CTX's governing documents are a contract between LCMS and CTX that created explicit rights for Synod, *see* **1ˢᵗ Am. Compl.** ¶¶ 55-56**;** (b) that CTX made promises to both LCMS and Synod which both relied on to their detriment, **1ˢᵗ Am. Compl.** ¶ 62; and (c) that CTX owed fiduciary duties to both LCMS and Synod. **1ˢᵗ Am. Compl.** ¶¶ 64-72.  If taken as true, the very terms of its Amended Complaint establish Synod is a joint obligee to the alleged "contract" of CTX's governing documents, to CTX's alleged "promises", and to the Defendants' alleged fiduciary duties. Synod is therefore an indispensable party. *See Harrell & Sumner Contracting Co.*, 546 F.2d at 1228-29; *Bry-Man's, Inc.*, 312 F.2d at 587.

49.    The Court should dismiss the Amended Complaint for lack of diversity jurisdiction. Synod's joinder as a Plaintiff removes diversity of citizenship depriving this Court of jurisdiction. *See* 28 USC § 1332. Judgment without Synod as a party would prejudice CTX and be inadequate. Specifically, LCMS has asserted six separate causes of action based on rights, duties, and privileges that Defendants allegedly owe to LCMS, Synod, and/or both. **1ˢᵗ Am. Compl**. ¶¶ 48-81.

Judgment rendered in Synod's absence would not put to rest any cause of action that either LCMS and/or Synod could claim, therefore judgment would not be adequate. *See Pimentel*, 553 U.S. at 870. Additionally, every claim pleaded in the Amended Complaint is a Texas State Law claim which can be adjudicated in Texas State Courts.[6] Therefore LMCS and Synod have an adequate remedy.

## V.   <u>CONCLUSION</u>

For the forgoing reasons, Defendants respectfully request the Court dismiss this case for lack of subject matter jurisdiction, alternatively dismiss for failure to join an indispensable party, and grant Defendants all such further relief to which they are justly entitled at law and in equity.

---

[6] Defendant CTX filed suit in Travis County, Texas District Court against both LCMS and Synod to adjudicate the same issues as those presented by this Complaint. *Concordia University Texas v. The Lutheran Church – Missouri Synod, an unincorporated association of Lutheran Congregations, and The Lutheran Church – Missouri Synod, a Missouri Corporation*, Cause No. D-1-GN-21-000358 (353rd District Court, Travis County Texas). LCMS and Synod subsequently removed the suit to this Court. Notice of Removal, *Concordia University Texas v. The Lutheran Church – Missouri Synod, an unincorporated association of Lutheran Congregations, et. al.*, Case No. 1:24-cv-176-RP (W. Dist. Texas). CTX is filing a motion to remand.

Respectfully submitted,


*/s/ Daniel R. Richards*

**Daniel R. Richards**
State Bar No. 00791520
drichards@rrsfirm.com
**Clark Richards**
State Bar No. 90001613
crichards@rrsfirm.com
**Albert A. Carrion, Jr.**
State Bar No. 03883100
acarrion@rrsfirm.com
**RICHARDS RODRIGUEZ & SKEITH, LLP**
611 West 15th Street
Austin, Texas 78701
Telephone: (512) 476-0005
Facsimile: (512) 476-1513

**ATTORNEYS FOR DEFENDANTS CONCORDIA UNIVERSITY TEXAS, INC., DONALD CHRISTIAN AND CHRISTOPHER BANNWOLF**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the April 4, 2024, I electronically filed the above and foregoing document, which will send notification of such filing to:

Steven C. Levatino
Levatino & Pace PLLC
1101 S. Capital of Texas Hwy.
Bldg. K, Suite 125
Austin, Texas 78746
steven@lpfirm.com

Andrew F. MacRae
MacRae Law Firm PLLC
3267 Bee Cave Road
Suite 107, PMB 276
Austin, Texas 78746
andrew@macraelaw.com

Gregg R. Kronenberger
Kronenberger Law Firm, PLLC
1101 S. Capital of Texas Hwy.
Bldg. K, Suite 125
Austin, Texas 78746
gregg@gkronenberger.com

*/s/ Daniel R. Richards*
**DANIEL R. RICHARDS**