The Lutheran Church—Missouri Synod

# Board of Directors

# Policy Manual



Edition of 5/19/2023

Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 2 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 2 of 122

The Lutheran Church—Missouri Synod                              Board of Directors Policy Manual

# Table of Contents

Table of Contents ........................................................................................................................... i

§ 0    Preface ............................................................................................................................... 1

   0.2    Definitions of "terms of art" used consistently herein ........................................... 2

      0.2.1    Directly Relevant Bylaw 1.2.1 Definitions ................................................. 2
      0.2.2    Other Definitions ........................................................................................ 3

§ 1    Board Responsibility and Accountability ........................................................................ 4

   1.1    Responsibility and Accountability to the Synod Convention ................................... 4

   1.2    Specific Responsibilities ........................................................................................... 4

   1.3    Legal Representation and Custodianship ................................................................. 5

   1.4    Provision and Allocation of Funds and Budgeting .................................................. 5

   1.5    Borrowing of Capital Funds ..................................................................................... 5

   1.6    Supervision of Property and Business Affairs Not Delegated ................................. 6

      1.6.2    Supervision of Property and Business Affairs of Corporate Synod ........... 6

   1.7    Oversight of Property and Business Affairs Delegated to Agencies ....................... 6

      1.7.2    Synodwide Corporate (Trust) Entities in General ..................................... 7
      1.7.3    Concordia Historical Institute (CHI) ......................................................... 7
      1.7.4    Concordia Publishing House (CPH) ........................................................... 8
      1.7.5    The Lutheran Church Extension Fund—Missouri Synod (LCEF) ............. 8
      1.7.6    The Lutheran Church—Missouri Synod Foundation (LFND) .................... 8
      1.7.7    Concordia University System (CUS) .......................................................... 8
      1.7.8    Synodwide Trust Entity: The Concordia Plans / Concordia Plan Services (CP/CPS) ........... 9
      1.7.9    Districts of the Synod ................................................................................. 9
      1.7.10   Colleges, Universities, and Seminaries ..................................................... 9
      1.7.11   Other Agencies of the Synod .................................................................. 10

   1.8    Review and Coordination of Policies and Directives ........................................... 10

   1.9    Personnel ............................................................................................................... 10

   1.10   Removal from Office of Officers and Board Members ......................................... 11

   1.11   Designation of Regions of the Synod .................................................................... 11

   1.12   Monitoring ............................................................................................................. 11

§ 2    Board Objectives ("Ends") .......................................................................................... 12

   2.1    Role of the Board in Pursuing the Objectives of the Synod ................................. 12

   2.2    Objectives of the Synod ......................................................................................... 12

   2.3    Constitution Article III: Objectives ....................................................................... 12

   2.4    Articles of Incorporation, Article II: Objectives .................................................. 13

   2.5    Bylaw section 1.1: Purpose of the Synod .............................................................. 13

   2.6    Triennial Mission and Ministry Emphasis and Mission Priorities ....................... 14

      2.6.1    Mission and Ministry Emphasis (2019 Res. 4-03A) ............................... 14

**2.6.2**    Mission Priorities (2019 Res. 4-03A) ................................................................ 14

**2.7**    Church Body Mission Statement (1998 Res. 1-01A) .................................... 15

**2.8**    Monitoring .................................................................................................. 15

**§ 3    Board Self-Governance / Governance Process ("Board Means") ........................... 16**

**3.1**    Scope and Regulation of Board Activities ....................................................... 16

**3.2**    Group Action ................................................................................................. 16

**3.3**    Director Responsibilities ................................................................................ 16

**3.4**    Regular Meetings ........................................................................................... 17

**3.5**    Special Meetings ............................................................................................ 17

**3.6**    Electronic Means of Meeting .......................................................................... 17

**3.7**    Quorum ......................................................................................................... 18

**3.8**    Actions Using Electronic Ballot ...................................................................... 18

**3.9**    Agenda and Docket ....................................................................................... 18

**3.9.2**    Requests for Action ...................................................................... 19
**3.9.3**    Requests for Appearance ............................................................. 19
**3.9.4**    Consent Agenda ........................................................................... 19

**3.10**    Confidentiality ............................................................................................ 20

**3.11**    Executive Session ........................................................................................ 20

**3.12**    Officers of the Board of Directors ............................................................... 21

**3.12.2**    Election of Officers ...................................................................... 21
**3.12.3**    Chairman ...................................................................................... 21
**3.12.4**    Vice-Chairman .............................................................................. 22
**3.12.5**    Secretary ...................................................................................... 22

**3.13**    Committees of the Board of Directors ........................................................ 23

**3.13.2**    Executive Committee ................................................................... 23
**3.13.3**    Finance and Audit Committee ..................................................... 24
**3.13.4**    Governance Committee ............................................................... 24
**3.13.5**    Personnel Committee ................................................................... 25

**3.14**    Correspondence .......................................................................................... 25

**3.15**    Records ........................................................................................................ 25

**3.16**    Reporting To and Representation At the Synod Convention ........................ 25

**3.17**    Monitoring .................................................................................................. 26

**3.17.1**    Policy and Action Review ............................................................. 26
**3.17.2**    Policy Review Calendar ................................................................ 26
**3.17.3**    Board Self-Review ........................................................................ 26

**§ 4    Board Governance Relationships (Boards, Commissions, and Officers) ................. 27**

**4.1**    Manner of Meeting of Synod Agencies .......................................................... 27

**4.1.2**    Electronic Meetings ..................................................................... 27
**4.1.3**    Actions Using Electronic Ballot .................................................... 27

**4.2**     Mission Boards of the Synod .................................................................................................... 27

**4.3**     Commissions of the Synod ..................................................................................................... 28

    **4.3.2**     Commission on Constitutional Matters .................................................................... 28
    **4.3.3**     Commission on Theology and Church Relations ...................................................... 28
    **4.3.4**     Commission on Handbook ........................................................................................ 28
    **4.3.5**     Commission on Doctrinal Review .............................................................................. 28

**4.4**     Council of Presidents ............................................................................................................. 28

**4.5**     Making Appointments and Filling Mid-term Vacancies ......................................................... 28

    **4.5.1**     Appointments to Board to Obtain Necessary Skill Sets ........................................... 28
    **4.5.2**     Regular Appointments to Boards, Commissions and Standing Committees ............ 29
    **4.5.3**     Mid-Term Vacancy Appointments to Convention-Elected Board and Commission Positions .......... 32
    **4.5.4**     Appointment of Chief Financial Officer .................................................................... 32
    **4.5.5**     Appointment of Chief Administrative Officer ........................................................... 33
    **4.5.6**     Appointment of Chief Mission Officer ...................................................................... 33

**4.6**     Elected Officers of the Synod ................................................................................................ 33

    **4.6.2**     President .................................................................................................................... 33
    **4.6.3**     Secretary .................................................................................................................... 33

**4.7**     Appointed Officers of the Synod ........................................................................................... 34

    **4.7.2**     Chief Administrative Officer ...................................................................................... 34
    **4.7.3**     Chief Financial Officer ............................................................................................... 34
    **4.7.4**     Chief Mission Officer ................................................................................................. 35

**4.8**     Designation of Interim Persons ............................................................................................. 35

**4.9**     Administrative Team .............................................................................................................. 35

**4.10**    Operations Team .................................................................................................................... 36

**4.11**    Additional Officers and Staff ................................................................................................. 36

**4.12**    Designating the Board's Representation on Synodwide Corporate and Trust Entities ............ 37

    **4.12.2**    Alternate Representation .......................................................................................... 37
    **4.12.3**    Designation by Chief Financial Officer ...................................................................... 37
    **4.12.4**    Reporting by Representatives and Board Monitoring ............................................... 37
    **4.12.5**    Service of the Chief Financial Officer on Other Boards ............................................ 38

**4.13**    Requests for Minutes of the Board of Directors, Mission Boards, or Commissions of the Synod 38

**4.14**    Delegation and Retention of Board Duties ............................................................................ 38

    **4.14.2**    Matters Requiring Board Action ............................................................................... 39

**4.15**    Operating and Capital Budgets .............................................................................................. 41

    **4.15.1**    Authority .................................................................................................................... 41
    **4.15.2**    Ends ........................................................................................................................... 41
    **4.15.3**    Board means .............................................................................................................. 42
    **4.15.4**    Executive means and limitations .............................................................................. 43
    **4.15.5**    Mission Advancement Support Rate ......................................................................... 43
    **4.15.6**    Operating Budget Strategy Templates ...................................................................... 44
    **4.15.7**    Monitoring and convention communication ............................................................ 44

**4.16**     Convention Budget and Location ........................................................................ 44

**4.17**     Audit ........................................................................................................ 45

   **4.17.1**     Board of Directors Audit Committee Charter .................................................. 45
   **4.17.2**     Synod's Internal Audit Department Charter ................................................... 50
   **4.17.3**     Regulations for Synod's Internal Audit Department ......................................... 53

**4.18**     Legal Policies for Corporate Synod and Subordinate Agencies ............................ 53

   **4.18.2**     Engagement of Legal Counsel ...................................................................... 54
   **4.18.3**     Initiating Litigation ................................................................................... 54
   **4.18.4**     Responding to Litigation ............................................................................ 55
   **4.18.5**     Participation by the Synod as Amicus Curiae or in Support of a Member Congregation ... 56
   **4.18.6**     Powers of Attorney for the Synod ................................................................ 57

**4.19**     Committee for Human Resources ..................................................................... 57

   **4.19.2**     Maintenance of Common Human Resources Policies and Procedures ................. 58
   **4.19.3**     Review of General Human Resources Policies of the Synod ............................... 58
   **4.19.4**     Relation of Committee to Participating Entities, Executives, and Staff ............... 58
   **4.19.5**     Role of Chief Administrative Officer ............................................................. 59

**4.20**     Working Together ....................................................................................... 59

**4.21**     Monitoring ................................................................................................. 59

   **4.21.1**     Management Reports ................................................................................. 59
   **4.21.2**     Direct Monitoring ...................................................................................... 59
   **4.21.3**     Chief Administrative Officer and Chief Financial Officer Performance Reviews ..... 60
   **4.21.4**     Notice of Violation of Board Policy ............................................................... 61

**§ 5**     **Management Policies for Corporate Synod and Agencies of Corporate Synod** ........................ 62

**5.1**     Budget Policies (Corporate Synod) ................................................................... 62

**5.2**     Accounting Policies (Corporate Synod) ............................................................. 62

**5.3**     Financial Transactions (Corporate Synod) ......................................................... 63

   **5.3.2**     Signature Authority (Corporate Synod) ........................................................ 63
   **5.3.3**     Authorization Categories ........................................................................... 63
   **5.3.4**     Authorization Limits (Corporate Synod) ....................................................... 64
   **5.3.5**     Property Transactions and Reporting of Real Property ..................................... 65
   **5.3.6**     Foreign Bank Accounts and Currency Transactions ........................................ 65
   **5.3.7**     Authorization to Deal in Securities .............................................................. 65
   **5.3.8**     Expense Accounts ..................................................................................... 66
   **5.3.9**     Reimbursement; Compensation of Board, Commission, and Committee Members ... 66

**5.4**     Sharing of Financial Information ..................................................................... 66

**5.5**     Insurance (Corporate Synod and Synod's Insurance Program) ............................ 66

**5.6**     Fund Raising (Corporate Synod and Subordinate Agencies) ............................... 67

   **5.6.2**     Corporate Synod Fundraising Policy Manual .................................................. 68

**5.7**     Legal and Governmental Matters ..................................................................... 68

**5.8**     Human Resources Policies (Corporate Synod) ................................................... 69

   **5.8.1**     LCMS Department of Human Resources ........................................................ 69

**5.9**     Balances on Deposit with the Synod or with Synod's Designee ........................... 70

Exhibit 5 to Defendants' Motion to Dismiss    Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 6 of 122
Page 6 of 122

The Lutheran Church—Missouri Synod                                      Board of Directors Policy Manual

**5.10**    Record and Archive Management Policy ................................................................. 70

**5.11**    Monitoring ............................................................................................................ 70

**§ 6**    **Management Policies for Synod and All Agencies** .................................................... 71

**6.1**    Board Authority to Set and Monitor Management Policies ................................... 71

**6.2**    Financial Misconduct ............................................................................................ 71

**6.3**    Property Policies ................................................................................................... 72

**6.3.1**    Property Transactions ................................................................................. 72
**6.3.2**    Property of Synod Held by Its Districts ....................................................... 73
**6.3.3**    Property of Synod held by Colleges, Universities, and Seminaries as defined in Bylaw 1.2.1(r) ........ 73
**6.3.4**    Property of Synod Held by Synodwide Corporate Entities ........................... 75
**6.3.5**    Titles and Deeds ......................................................................................... 75
**6.3.6**    Appraisals ................................................................................................... 75
**6.3.7**    Non-Synod Tenants ..................................................................................... 75
**6.3.8**    Guarantees of Indebtedness ....................................................................... 76
**6.3.9**    Use of LCEF Assets ..................................................................................... 76

**6.4**    General Human Resource Policies of the Synod ..................................................... 76

**6.4.2**    Compliance with Human Resources Requirements ...................................... 76
**6.4.3**    Salary Administration ................................................................................. 77
**6.4.4**    Board/Commission and Executive Relationship ........................................... 77
**6.4.5**    Calling, Appointing and Employing Staff ..................................................... 78
**6.4.6**    Housing and Moving Assistance by Synodwide Agencies ............................ 80
**6.4.7**    The Acceptance of Gifts, Entertainment, or Favors ..................................... 80
**6.4.8**    Accommodation Employment ..................................................................... 81

**6.5**    Ownership and Management of Lists ..................................................................... 81

**6.5.2**    Gathering of Lists ....................................................................................... 82
**6.5.3**    Management of Lists ................................................................................... 82

**6.6**    Contacts with the News Media .............................................................................. 83

**6.7**    Use of Synod Logo ................................................................................................ 83

**6.8**    The LCMS Website and Internet Presence .............................................................. 83

**6.9**    Special Emphasis Observances .............................................................................. 85

**6.10**    Contacts with Government Offices (Synod and All Agencies) .................................. 85

**6.10.1**    Contacts with Government Units (Other than the Internal Revenue Service) by the Synod and its Agencies   85
**6.10.2**    Contacts with the Internal Revenue Service by the Synod and Its Agencies ...................... 85

**6.11**    Contacts with the Internal Revenue Service, Congregations and Agencies of the Synod .......... 86

**6.12**    Approval of New Corporations as Agencies of the Synod ........................................ 86

**6.13**    Approval of Foreign Corporations for Mission Purposes ......................................... 88

**6.14**    International Center Facilities and Services ............................................................ 89

**6.15**    Monitoring ............................................................................................................ 90

**§ 7**    **Management Policies for Agencies Outside of Corporate Synod** ............................. 91

**7.1**    Accounting Policies (Agencies Outside of Corporate Synod) ................................... 91

| | | | |
|---|---|---|---|
| **7.1.1** | Compliance with Generally Accepted Accounting Principles | ........................ | 91 |
| **7.1.2** | Compliance with Internal Revenue Service requirements | ........................ | 91 |
| **7.2** | Financial Transaction Policies (Agencies Outside of Corporate Synod) | ........................ | **91** |
| **7.2.1** | Sharing of Financial Information | ........................ | 91 |
| **7.2.2** | Contributions for Foreign Work | ........................ | 91 |
| **7.2.3** | Foreign Bank Accounts and Currency Transactions | ........................ | 92 |
| **7.2.4** | Grants by Agencies | ........................ | 92 |
| **7.2.5** | Income Management – Fund Raising | ........................ | 92 |
| **7.2.6** | Authorization to Deal in Securities | ........................ | 92 |
| **7.2.7** | Expense Accounts | ........................ | 92 |
| **7.2.8** | Reimbursement; Compensation of Board, Commission, and Committee members | ........................ | 92 |
| **7.2.9** | Expansion of Operations, Synodwide Corporate Entities and Concordia Plan Services | ........................ | 92 |
| **7.3** | Audit Policies (Agencies Outside of Corporate Synod) | ........................ | **93** |
| **7.3.1** | Audits Required | ........................ | 93 |
| **7.3.2** | Selection of Auditors | ........................ | 93 |
| **7.3.3** | Sharing of Audited Financial Statements | ........................ | 93 |
| **7.3.4** | Audit Committee | ........................ | 93 |
| **7.3.5** | Reporting of Legacies and Bequests | ........................ | 93 |
| **7.4** | Insurance Policies (Agencies Outside of Corporate Synod) | ........................ | **93** |
| **7.4.1** | Insurance Coverage | ........................ | 93 |
| **7.4.2** | Administration of the Synod's Insurance Program | ........................ | 95 |
| **7.5** | Legal Policies (Agencies Outside of Corporate Synod) | ........................ | **95** |
| **7.5.2** | Engagement of Legal Counsel by Agencies of the Synod | ........................ | 96 |
| **7.5.3** | Initiating Litigation | ........................ | 97 |
| **7.5.4** | Responding to Litigation | ........................ | 98 |
| **7.5.5** | Participation by the Synod and/or Its Agencies in Judicial Proceedings as Amicus Curiae or in Support of a Member Congregation | ........................ | 99 |
| **7.6** | Monitoring | ........................ | **99** |
| **§ 8** | **Auxiliaries and Recognized Service Organizations** | ........................ | **100** |
| **8.1** | Auxiliary Organizations | ........................ | **100** |
| **8.2** | Granting of Recognized Service Organization (RSO) Status by Synod Mission Offices | ........................ | **100** |
| **8.2.1** | Ends of RSO Program | ........................ | 100 |
| **8.2.2** | Bylaw-Mandated Requirements for Recognition of Service Organizations | ........................ | 101 |
| **8.2.3** | Board of Directors Approval of Standard Form of Agreement | ........................ | 102 |
| **8.2.4** | Board of Directors Policies and Criteria for RSO Program Administration | ........................ | 102 |
| **8.2.5** | RSO Program Public Information | ........................ | 107 |
| **8.3** | Recognized Service Organization Standard Form of Agreement | ........................ | **108** |
| **8.4** | Monitoring | ........................ | **113** |
| **§ 9** | **Appendix** | ........................ | **114** |
| **9.1** | Board of Directors Triennial Calendar of Activities | ........................ | **114** |

Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 8 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 8 of 122

The Lutheran Church—Missouri Synod                    **Board of Directors Policy Manual**

| § 0 | Preface |
|-----|---------|

0.1.1.1    The Board of Directors, in accordance with Const. Art. XI E 2, Bylaw 3.3.4, and Art. of Inc. V, supervises and oversees property and business affairs and performs other duties as assigned to advance the objectives of The Lutheran Church—Missouri Synod as stated in Const. Art. III, Bylaw 1.1.1, and Art. of Inc. II, so that Christ's name may be glorified among all people throughout the world by our serving one another in Christ's name, reaching our communities with Christ's love, and claiming the world for Christ's kingdom.

0.1.1.2    The Board has adopted these policies to assist the Board in carrying out its obligations and objectives by delegation of authority and implementation of procedures for the Board's supervision and oversight of Corporate Synod and agencies of the Synod.

0.1.1.3    These policies can be changed only by the Board. All agencies of the Synod and all officers and employees of the Synod must comply with these policies.

0.1.1.4    At a minimum, the Board shall maintain the following categories of written policies applicable to:

- **§1: Board Responsibility and Accountability:** The relationship of the Board to the member congregations of the Synod and the Board's specific charge under the Constitution, Bylaws, and Articles of Incorporation.

- **§2: Objectives:** The Board's understanding of the Synod's objectives as pertain especially to the Board's role in coordinating and providing for the pursuit of them by Synod and its agencies for and on behalf of the member congregations of the Synod.

- **§3: Board Self-Governance:** The Board's self-organization in order to accomplish its specific charge.

- **§4: Board Governance Relationships:** Relation of the Board's authority to that of other governing bodies and officers in the Synod, including the delegation relationship between the Board and its Chief Administrative and Financial Officers. This section includes policies related to governance of Synod agencies, inside and outside Corporate Synod.

- **§5: Management Policies for Corporate Synod and Its Agencies:** Policies regulating management activities with regard to which the Board has supervision and coordinating those with regard to which it has oversight, within Corporate Synod and its Agencies. These policies do not apply to "outside agencies."

- **§6: Management Policies for Synod and All Agencies:** Policies regulating management activities with regard to which the Board has supervision and coordinating those with regard to which it has oversight, as applicable to Synod and all Synod agencies.

- **§7: Management Policies for Agencies Outside Corporate Synod:** Policies regulating management activities with regard to which the Board has supervision and coordinating those with regard to which it has oversight, as only to agencies outside Corporate Synod.

Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 9 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 9 of 122

- The above division is intended to simplify use of the manual by various groups:

    - Management of Corporate Synod and its agencies needs to refer only to **§§ 5–6**.

    - Management of agencies outside Corporate Synod needs to refer only to **§§ 6–7**.

    - Governance bodies need to refer to relevant portion of **§ 4** and to the above sections as appropriate.

- **§8: Auxiliaries and Recognized Service Organizations:** Policies to carry out the Board's role in Synod's relation to these independently governed organizations.

- **§9: Appendix:** Additional information that the Board deems helpful to carry out its responsibilities.

## 0.2    Definitions of "terms of art" used consistently herein

### 0.2.1    Directly Relevant Bylaw 1.2.1 Definitions

(a) *Agency*: An instrumentality other than a congregation or Corporate Synod, whether or not separately incorporated, which the Synod in convention or its Board of Directors has caused or authorized to be formed to further the Synod's Objectives (Constitution Art. III).

   (1) Agencies include each board, commission, council, seminary, university, college, district, Concordia Plan Services, and each synodwide corporate entity.

   (2) The term "agency of the Synod" does not describe or imply the existence of principal and agency arrangements as defined under civil law.

(b) *Corporate Synod*: The Lutheran Church—Missouri Synod, the Missouri nonprofit corporation, including its offices, boards, commissions, and departments.

   (1) "Corporate Synod" is not an agency of the Synod.

   (2) The Lutheran Church—Missouri Synod, in referencing the laws of the State of Missouri in these Bylaws and in the Synod's Articles of Incorporation, intends to acknowledge its responsibility to be subject to civil authority. In all such references, however, the Synod intends to retain all authority and autonomy allowed a church under the laws and Constitution of the United States and the State of Missouri.

(c) *May*: Permissive, expressing ability, liberty, or the possibility to act.

(d) *Officer*: Those positions identified in Constitution Art. X A or Art. XII 3 or Bylaw sections 3.3 and 3.4 unless qualified by a modifier.

(e) *Oversight*: For the purpose of these Bylaws, to monitor; to make inquiry and receive a response thereto; to make suggestions; to bring concerns to the attention of a higher authority.

(f) *Property of the Synod*: All assets, real or personal, tangible or intangible, whether situated in the United States or elsewhere, titled or held in the name of

Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 10 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 10 of 122

**Board of Directors Policy Manual**

Corporate Synod, its nominee, or an agency of the Synod. "Property of the Synod" does not include any assets held by member congregations, the Lutheran Church Extension Fund—Missouri Synod, or by an agency of the Synod in a fiduciary capacity (including, for purposes of example, the funds managed for the Concordia Plans by Concordia Plan Services and certain funds held by The Lutheran Church—Missouri Synod Foundation).

(g) *Shall*: A word of command that must always be given an imperative or compulsory meaning.

(h) *Supervision*: For the purpose of these Bylaws (other than those pertaining to ecclesiastical supervision) to have authority over, to direct actions, to control activities.

(i) *Synod*: Refers collectively to the association of self-governing Lutheran congregations and all its agencies on the national and district levels. The Synod, as defined herein, is not a civil law entity.

| 0.2.2 | **Other Definitions** |
|---|---|

(a) (reserved for future use)

| Section Revision History |
|---|
| 2022.11.18         § 0 – Comprehensive Revision |

The Lutheran Church—Missouri Synod                    **Board of Directors Policy Manual**

## § 1        Board Responsibility and Accountability

### 1.1        Responsibility and Accountability to the Synod Convention

1.1.1.1    The Board is responsible and accountable to the congregations of the Synod, which have formed and support the Synod in pursuit of their objectives, as determined and revised in Conventions (Const. Art. XI E 1; Bylaw 3.3.4), and which obligate themselves to support financially the work of the Synod (Bylaw 1.3.4.2).

1.1.1.2    The member congregations speak with one voice through the convention (Bylaw 3.1.1), reserving the right to give direction to all officers, including the Board of Directors, and agencies of the Synod (Bylaw 1.4.1; Art. of Inc. III–IV).

1.1.1.3    In keeping with the above and with the Board's oversight responsibility to "bring concerns to the attention of a higher authority" (Const. Art. XI E 2; Bylaw 1.2.1 [o]), the Board provides the member congregations of the Synod with reporting, analysis, and reasoned proposals on business, property, and legal matters. The Board's convention *Workbook* report, convention overtures it submits, its minutes, and its communications through other official channels are designed to facilitate the member congregations' monitoring of the Board's work and their governance of the Synod in convention.

1.1.1.4    The Board has only such rights as have been expressly conferred by the Synod, and in everything pertaining to its rights and the performance of its duties, it is responsible to the Synod (Const. Art. XI A 1; Art. of Inc. IV).

### 1.2        Specific Responsibilities

1.2.1.1    The responsibility of the Board of Directors is to the Lutheran Church—Missouri Synod formed by the Constitution ("Synod") and to the Missouri corporation under Missouri law ("Corporate Synod").

1.2.1.2    The Board serves as the legal representative and custodian of all property of the Synod (here meaning both Synod and Corporate Synod), as limited by the Constitution and Bylaws of the Synod. (Const. Art. XI 2; Bylaw 1.4.4)

1.2.1.3    The Board shall exercise supervision over all property and business affairs of the Synod (here meaning both Synod and Corporate Synod) except in those areas where it has delegated such authority to an agency of the Synod or where the voting members of the Synod through the adoption of Bylaws or by other convention action have assigned specific areas of responsibility to separate corporate or trust entities, and as to those, the Board of Directors has general oversight responsibility as set forth in the Bylaws. (Const. Art. XI E 2)

1.2.1.4    The Board shall have the powers and duties that have been accorded to it by the Articles of Incorporation, Constitution, Bylaws, and resolutions of the Synod, and the laws of the State of Missouri. (Bylaw 3.3.4.2) (Art. of Inc. V).

1.2.1.5    As the Board carries out its particular responsibilities as a part of the Synod for and on behalf of the Congregations (Bylaw 1.3.3), it recognizes the extent and limitations of the responsibilities assigned to the Board, both of supervision (as defined in Bylaw 1.2.1[t]; that is, control on behalf of the congregations) and of oversight (as defined in Bylaw

Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 12 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 12 of 122

The Lutheran Church—Missouri Synod                        **Board of Directors Policy Manual**

1.2.1[o], the higher authority being the congregations of the Synod, which govern the Synod when they meet in convention).

(a) ***Supervision***: For the purpose of these Bylaws (other than those pertaining to ecclesiastical supervision) to have authority over, to direct actions, to control activities.

(b) ***Oversight***: For the purpose of these Bylaws, to monitor; to make inquiry and receive a response thereto; to make suggestions; to bring concerns to the attention of a higher authority.

| 1.3 | Legal Representation and Custodianship |
|-----|----------------------------------------|

1.3.1.1    The Board is the legal representative of the Synod (Const. Art. XI E 2).

1.3.1.2    The Board is the custodian of all the property of the Synod (Const. Art. XI E 2), having, except as provided otherwise in the Bylaws of the Synod, the authority and responsibility vested in and imposed on a board of directors of a corporation (Bylaw 3.3.4.7).

1.3.1.3    The Board may delegate its representation and custodianship to an agency of the Synod (Const. Art. XI E 2).

| 1.4 | Provision and Allocation of Funds and Budgeting |
|-----|--------------------------------------------------|

1.4.1.1    The Board of Directors shall be responsible for providing operating and capital funds to carry out the work of the Synod. (Bylaw 3.3.4.5 [c]).

1.4.1.2    The Board of Directors "shall allocate funds to the boards, commissions, councils, officers, and departments of Corporate Synod and holds them responsible therefor" (Bylaw 3.3.4.5, [a–c]). In this respect, among others, it supervises the business and legal aspects of Corporate Synod's work.

1.4.1.3    Corporate Synod's budgeting process and the budget itself shall be designed to support the worldwide mission and ministry of the Synod (Bylaw 3.3.4.5).

1.4.1.4    The Board shall establish policies and guidelines relating to the preparation of the annual budget (Bylaw 3.3.4.5 [1]).

1.4.1.5    The Board shall adopt the annual budget. (Bylaw 3.3.4.5 [2]).

| 1.5 | Borrowing of Capital Funds |
|-----|-----------------------------|

1.5.1.1    The Board of Directors shall be empowered to authorize the Chief Financial Officer of the Synod to borrow capital funds after the Board has determined the amounts and the conditions under which these capital funds shall be borrowed, for capital-fund outlay, for site acquisition, or for construction projects that are authorized by conventions of the Synod. (Bylaw 3.3.4.8)

(a) It and the responsible officers of the Synod are empowered to do all things necessary to effect such capital-fund borrowings if and when required, including the pledging of real and other property belonging to the Synod in order to secure loans to obtain the necessary funds.

(b) The borrowed capital funds shall not be used for any operating expenditures and shall be subject to provision for amortization.

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

| 1.6 | Supervision of Property and Business Affairs Not Delegated |
|---|---|

1.6.1.1    The Board exercises supervision over all property and business affairs of the Synod except where it, or the convention by adoption of bylaws or other action, has assigned specific areas of responsibility to separate corporate or trust entities (Const. Art. XI E 2).

1.6.1.2    The management authority and duties of the Board as Board of Directors of Corporate Synod are limited to the extent such authority and duties are delegated by the Constitution and Bylaws of The Lutheran Church—Missouri Synod to other officers and agencies of the Synod, subject to the procedure provided in case of a conflict regarding authority and duties either among the officers and agencies or regarding the applicability of the laws of the State of Missouri (Art. of Inc. V; Bylaw 3.9.2.2).

| 1.6.2 | Supervision of Property and Business Affairs of Corporate Synod |
|---|---|

1.6.2.1    The Board of Directors shall hold the boards, commissions, councils, offices, and departments of Corporate Synod responsible for funds entrusted to them and/or expended by them (Bylaw 3.3.4.5).

1.6.2.2    To the extent of its responsibilities relative to the general management and supervision of the business and legal affairs of the Synod (Bylaw 3.3.4.5 [a]):

(a)    It shall receive such reports as it requests on the operations and policies of the mission boards, commissions, offices, and councils.

(b)    It shall have the right to request review of any action or policy of a mission board, commission, office, or council which primarily relates to business, property, and/or legal matters and, after consultation with the agency involved and when deemed necessary, require modification or revocation thereof, except opinions of the Commission on Constitutional Matters.

| 1.7 | Oversight of Property and Business Affairs Delegated to Agencies |
|---|---|

1.7.1.1    Where the Board or convention, by adoption of bylaws or other action, has assigned specific areas of responsibility for property and business affairs of the Synod to separate corporate or trust entities, the Board retains general oversight responsibility (Const. Art. IV; XI E 2; Art. of Inc. VIII).

1.7.1.2    To carry out its obligations under Article XI E of the Constitution and Bylaws of the Synod, the Board of Directors may obtain from any agency of the Synod all records and other information (a) relating to property of the Synod, and (b) pertaining to matters for which the Board of Directors has oversight responsibility under the Constitution and other provisions of these Bylaws, including financial records, records of operations, and information regarding legal affairs of such agency of the Synod. Notwithstanding the foregoing, an agency of the Synod shall not be required to deliver: (i) records or information that an agency of the Synod is legally prohibited from disclosing under applicable federal or state law; and (ii) personally identifiable information pertaining to employees, donors, students, beneficiaries, investors, borrowers, and participating employers and plan members of Concordia Plan Services. If any of the records or information requested by the Board of Directors are subject to a confidentiality agreement, the Board of Directors shall maintain such confidentiality. The goal of this bylaw is to permit delivery of records and information to the Board of Directors to the

Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 14 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 14 of 122

The Lutheran Church—Missouri Synod                    **Board of Directors Policy Manual**

greatest extent possible, subject to clauses (i) and (ii) above. All agencies of the Synod shall cooperate fully with the Board of Directors when responding to requests to provide records and information. (Bylaw 3.3.4.10)

1.7.1.3    The Board may delegate to any agency of the Synod powers and duties with respect to property of the Synod for which such agency of the Synod has direct supervisory responsibility. Such delegation shall be in writing and shall be subject to change at any time by the Synod's Board of Directors provided that reasonable deliberations, as determined by the Board of Directors, take place with such agency prior to the change. (Bylaw 3.3.4.7 [b–c]) Such delegation is recorded in Policy section 6.3.

### 1.7.2    Synodwide Corporate (Trust) Entities in General

The Board acknowledges its responsibility and authority to:

(a) exercise general oversight over property and business affairs of synodwide corporate and trust entities (Const. Art. XI E 2; Bylaw 3.3.4.6)

(1) It shall assure itself that their accounting, budgeting, and financial policies comply with generally accepted accounting standards.

(2) It shall assure itself that audits are performed by internal auditors or independent certified public accountants

(3) It shall be furnished with copies of these and any interim financial reports it requests.

(4) It shall have a right to non-voting representation as indicated in Bylaw 3.3.4.6 (d).

(b) inquire of, expect a response from, and make suggestions to a synodwide corporate or trust entity's board relative to its operations and activities (Bylaws 3.6.1.6 [g]; 1.2.1 [p])

(c) in its discretion, bring to the Synod in convention unresolved disagreements with and among synodwide corporate entities or involving the scope of authority or operations of an entity or entities (Bylaws 3.6.1.6 [g]; 1.2.1 [p])

(d) oversee the establishment and monitoring, by synodwide corporate and trust entity boards, of long- and short- range plans and operating and capital budgets to carry out such plans as in accord with the objectives of the Synod and its convention resolutions (Bylaw 3.6.1.6 [f])

(e) approve of any proposed changes to synodwide corporate entity governing instruments (Bylaws 3.6.1.7, 3.6.1.8 [c])

(f) approve formation (Bylaw 3.6.1.1) or dissolution (Bylaw 3.6.1.9) of a synodwide corporate entity

### 1.7.3    Concordia Historical Institute (CHI)

The Board has general responsibility and authority with respect to CHI as an agency and synodwide corporate entity.

Case 1:23-cv-01042-DAE     Document 13-5     Filed 04/03/24     Page 15 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 15 of 122

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

### 1.7.4          Concordia Publishing House (CPH)

In addition to its general responsibility and authority with respect to CPH as an agency and synodwide corporate entity, the Board shall designate a representative as a nonvoting member of the CPH Board of Directors (Bylaws 3.3.4.6 [d]; 3.6.3.1).

### 1.7.5          The Lutheran Church Extension Fund—Missouri Synod (LCEF)

In addition to its general responsibility and authority with respect to LCEF as an agency and synodwide corporate entity, the Board:

(a) appoints first-class voting members to the LCEF membership, one per each ten members of the second-class (participating districts). (Bylaw 3.6.4.2.1)

(b) designates a representative as a nonvoting member of the LCEF Board of Directors. (Bylaws 3.3.4.6 [d]; 3.6.4.3)

(c) approves policies for use of LCEF funds for purposes other than those listed explicitly in Bylaw 3.6.4.4.1–2, which shall be consistent with the ministry and mission of the Synod.

### 1.7.6          The Lutheran Church—Missouri Synod Foundation (LFND)

In addition to its general responsibility and authority with respect to LFND as an agency and synodwide corporate entity, the Board:

(a) appoints first-class voting members to the LFND membership.

(b) designates a representative as a nonvoting member of the LFND Board of Trustees (Bylaws 3.3.4.6 [d]; 3.6.5.2.1)

(c) exercises prior approval of any other new foundation to be established by any agency of the Synod.

(d) receives regular reports from the LFND chief executive.

(e) with the LFND Board of Trustees, designates causes for deferred giving programs beyond causes listed in Bylaw 3.6.5.3.

(f) consults with the LFND Board of Trustees regarding the distribution of undesignated funds (Bylaw 3.6.5.3.1).

### 1.7.7          Concordia University System (CUS)

In addition to its general responsibility and authority with respect to CUS as an agency and synodwide corporate entity, the Board:

(a) appoints CUS member delegates as established by the CUS Articles of Incorporation and Bylaws (Bylaw 3.6.6.2).

(b) appoints up to two nonvoting advisory members to the CUS Board of Directors satisfying various criteria (Bylaw 3.6.6.3).

(c) consents by its two-thirds vote to actions of the CUS Board of Directors to consolidate, relocate, separate, or divest a college or university of the Synod (Bylaw 3.6.6.4 [i]).

Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 16 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 16 of 122

The Lutheran Church—Missouri Synod                                    Board of Directors Policy Manual

(d) participates in institutional planning and approves capital projects in relation to campus property-management arrangements and changes to institutional master plans of the colleges and universities, upon recommendations of boards of regents (Bylaw 3.6.6.4 [b]).

(e) approves criteria and standards for determining institutional viability of the colleges and universities of the Synod (Bylaw 3.6.6.4 [d]).

### 1.7.8    Synodwide Trust Entity: The Concordia Plans / Concordia Plan Services (CP/CPS)

In addition to its general responsibility and authority with respect to CP/CPS as an agency and synodwide trust entity (manager):

(a) appoints the voting members of the CP Board of Trustees / CPS Board of Directors (Bylaw 3.7.1.3).

(b) designates a representative as a nonvoting member of the CP Board of Trustees / CPS Board of Directors (Bylaws 3.3.4.6 [d]; 3.7.1.3).

(c) holds CPS accountable for managing the benefit plans/trusts of the Synod (Bylaw 3.7.1.1) and ancillary programs, including supplemental insurance and administration services programs, and the Support Program (Bylaw 3.7.1.2).

(d) establishes limits on the amendment of plans by the CP Board of Trustees and receives reports on changes made within those limits, such power to change the plans being "finally vested in the Synod's Board of Directors" (Bylaw 3.7.1.4).

(e) approves benefit plans that "compare favorably with other similar plans while meeting unique needs of the full-time church workers in the Synod" (Bylaw 3.7.1.4 [d]).

(f) receives copies of all CP/CPS audit reports for information, advice, and counsel (Bylaw 3.7.1.4 [e]).

### 1.7.9    Districts of the Synod

1.7.9.1    The Board delegates to district boards of directors the authority to buy, sell, and encumber real and personal property in the ordinary course of performing the functions which the district carries on for the Synod in accord with general policies (which shall be applicable to all districts) established from time to time by itself or the Synod in convention (Bylaw 3.3.4.7 [a]). Such delegation shall be recorded in Policy section 6.3.2.

1.7.9.2    The Board shall assure itself that audits of Synod districts are performed by internal auditors or independent certified public accountants and shall be furnished with copies of these and any interim financial reports it requests (Bylaw 3.3.4.6 [b–c]).

### 1.7.10    Colleges, Universities, and Seminaries

1.7.10.1    The Board may delegate to any agency of the Synod powers and duties with respect to property of the Synod for which such agency of the Synod has direct supervisory responsibility. Such delegation shall be in writing and shall be subject to change at any time by the Synod's Board of Directors provided that reasonable deliberations, as determined by the Board of Directors, take place with such agency prior to the change (Bylaw 3.3.4.7 [b–c]). Such delegation shall be recorded in Policy section 6.3.3.

Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 17 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 17 of 122

The Lutheran Church—Missouri Synod                    **Board of Directors Policy Manual**

| 1.7.10.2 | The Board shall approve capital projects in relation to campus property management agreements and institutional master plans; shall establish and monitor criteria for determining institutional viability, fiscal and otherwise (Bylaws 3.3.4.5 [e]); and shall establish guidelines and policies as authorized by 3.10.5.5 (h–i) and 3.10.6.4 (h–i). |
|---|---|
| 1.7.10.3 | The Board shall assure itself that audits of Synod colleges, universities, and seminaries are performed by internal auditors or independent certified public accountants and shall be furnished with copies of these and any interim financial reports it requests. (Bylaw 3.3.4.6 [b–c]) |
| 1.7.10.4 | With regard to the seminaries, the Board shall, together with national fundraising operations, establish policy guidelines for the distribution of grants of the Synod (restricted and unrestricted) and efforts for securing additional financial support from other sources (Bylaw 3.3.4.5 [d]). |
| 1.7.10.5 | The Board establishes polices governing the establishment of lines of credit or operational borrowing of Synod's seminaries (Bylaw 3.10.5.5 [e][1]) and, with Concordia University System, of its colleges and universities (Bylaw 3.10.6.4 [e][1]). |
| 1.7.10.6 | The Chairman of the Board serves as elector in the election of a seminary president (Bylaw 3.10.5.6.2 [h]). |

## 1.7.11    Other Agencies of the Synod

| 1.7.11.1 | The Board may delegate to any agency of the Synod powers and duties with respect to property of the Synod for which such agency of the Synod has direct supervisory responsibility. Such delegation shall be in writing and shall be subject to change at any time by the Synod's Board of Directors provided that reasonable deliberations, as determined by the Board of Directors, take place with such agency prior to the change. (Bylaw 3.3.4.7 [b–c]) |
|---|---|

## 1.8    Review and Coordination of Policies and Directives

| 1.8.1.1 | The Board of Directors shall provide for the review and coordination of the policies and directives of the Synod authorized by the Constitution, Bylaws, and resolutions of the Synod, evaluating plans and policies and communicating to the appropriate boards and commissions suggestions for improvement, and, in the case of mission boards and commissions, require changes for compliance with Board of Directors' policies within the sphere of its responsibility (Bylaw 3.3.4.3). |
|---|---|

## 1.9    Personnel

| 1.9.1.1 | The Board appoints and subsequently re-appoints, in consultation with and with the concurrence of the President, the Chief Financial Officer (Bylaw 3.4.1.1) and Chief Administrative Officer (Bylaw 3.4.2.1). |
|---|---|
| 1.9.1.2 | The Board consults with the President and concurs in his appointment and subsequent re-appointment of the Chief Mission Officer (Bylaw 3.4.3.2). |
| 1.9.1.3 | The Board may appoint, subject to the approval of the President, other officers to carry out the business and legal affairs of the Synod (Bylaw 3.3.4.9). |
| 1.9.1.4 | The Board may appoint staff as required (Bylaw 3.3.4.9). |

The Lutheran Church—Missouri Synod                    **Board of Directors Policy Manual**

| 1.10 | **Removal from Office of Officers and Board Members** |
|------|---|

The Board effects, as specified in Bylaws 1.5.7–1.5.8.1, the removal from office, for cause, of members of the Synod's boards and commissions (including boards of its agencies) and of Synod officers (other than the President).

| 1.11 | **Designation of Regions of the Synod** |
|------|---|

For all elections requiring regional representation, the Board of Directors of the Synod and the Council of Presidents acting jointly, 24 months prior to conventions of the Synod, shall designate five geographic regions as specified in Bylaw 3.12.1.

| 1.12 | **Monitoring** |
|------|---|

In review of this section, the Board shall consider how policies and their implementation maintain the priority, in the Board's work and reporting, of its responsibility and accountability to the member congregations of the Synod and to the objectives they have established in convention.

Section Revision History
2022.11.18        § 1 – Comprehensive Revision

Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 19 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 19 of 122

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

## § 2        Board Objectives ("Ends")

### 2.1        Role of the Board in Pursuing the Objectives of the Synod

The scope of the Board's supervision and oversight is limited. Others (President, mission boards, etc.) have significant constitutional and bylaw roles in directing the activities and agencies of the Synod toward its objectives. The statement of objectives or "ends" in this section is intended to comprehend the ends of the total Synod program of work, as effected by Synod in general, its agencies, and Corporate Synod in particular. The focus of this statement, however, is directed primarily toward guiding the Board and those under its supervision and/or oversight in regard to the specific property, legal, and business sphere that is the Board's responsibility. (Const. Art. XI E 2; Const. Art. IV; Bylaw 3.3.4)

### 2.2        Objectives of the Synod

The objectives of the member congregations, in pursuit of which they formed and maintain the Synod (including Corporate Synod and all Synod's Agencies) are:

- broadly defined in Const. Preamble (Reasons for the Forming of a Synodical Union) and Art. III (Objectives)

- refined in adoption of Bylaws and resolutions, especially in refining priorities (Bylaw 3.1.1, cf. Bylaw 1.3.6, 4.2.1 [b-d], 5.3.4) "in order to provide responsible service for and on behalf of its members." (Cf. Bylaws 1.1.1, 1.3.1, 1.3.3)

### 2.3        Constitution Article III: Objectives

The Synod, under Scripture and the Lutheran Confessions, shall—

1. Conserve and promote the unity of the true faith (Eph. 4:3–6; 1 Cor. 1:10), work through its official structure toward fellowship with other Christian church bodies, and provide a united defense against schism, sectarianism (Rom. 16:17), and heresy;

2. Strengthen congregations and their members in giving bold witness by word and deed to the love and work of God, the Father, Son, and Holy Spirit, and extend that Gospel witness into all the world;

3. Recruit and train pastors, teachers, and other professional church workers and provide opportunity for their continuing growth;

4. Provide opportunities through which its members may express their Christian concern, love, and compassion in meeting human needs;

5. Aid congregations to develop processes of thorough Christian education and nurture and to establish agencies of Christian education such as elementary and secondary schools and to support synodical colleges, universities, and seminaries;

6. Aid congregations by providing a variety of resources and opportunities for recognizing, promoting, expressing, conserving, and defending their confessional unity in the true faith;

7. Encourage congregations to strive for uniformity in church practice, but also to develop an appreciation of a variety of responsible practices and customs which are in harmony with our common profession of faith;

Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 20 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 20 of 122

The Lutheran Church—Missouri Synod                    **Board of Directors Policy Manual**

8.  Provide evangelical supervision, counsel, and care for pastors, teachers, and other professional church workers of the Synod in the performance of their official duties;

9.  Provide protection for congregations, pastors, teachers, and other church workers in the performance of their official duties and the maintenance of their rights;

10. Aid in providing for the welfare of pastors, teachers, and other church workers, and their families in the event of illness, disability, retirement, special need, or death.

| 2.4 | Articles of Incorporation, Article II: Objectives |
|---|---|

The objectives and purposes of this corporation are:

a.  To unite in a corporate body Evangelical Lutheran congregations that acknowledge and remain true to the *Book of Concord* of the year of our Lord 1580 as a true exhibition of sound Christian doctrine.

b.  To assist in the establishment of Evangelical Lutheran congregations and preaching stations.

c.  To assist, advise, and protect member congregations and ministers of religion–ordained and ministers of religion–commissioned of The Lutheran Church—Missouri Synod, to provide for their ecclesiastical supervision in matters of doctrine and practice and their administration of official duties, and to acknowledge and assert the protections granted by the First Amendment to the Constitution of the United States.

d.  To support the establishment and maintenance of theological seminaries, colleges, universities, and other institutions of learning to train ministers of religion–ordained, ministers of religion–commissioned, and laity for service in the Evangelical Lutheran Church.

e.  To spread the Gospel of Jesus Christ throughout the world by every means possible.

f.  To provide assistance and resources to the congregations, schools, Sunday schools, preaching stations, and agencies of the Synod for the dissemination of the Christian Gospel.

g.  To establish and conduct all such enterprises and endeavors and to exercise such further power as may be necessary or expedient to carry out the objectives stated in the Constitution of The Lutheran Church—Missouri Synod.

| 2.5 | Bylaw section 1.1: Purpose of the Synod |
|---|---|

1.1.1    Committed to a common confession and mission, congregations of The Lutheran Church—Missouri Synod join with one another in the Synod to support one another and to work together in carrying out their commonly adopted objectives. The Synod is organized to work in support of and on behalf of congregations to assist them in carrying out their ministries as they seek to serve our Lord Jesus Christ, the members of His body, and the world which stands in need of the Word and the impact of His redeeming love.

Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 21 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 21 of 122

The Lutheran Church—Missouri Synod                    **Board of Directors Policy Manual**

(a)  The Synod functions in support of its member congregations by providing assistance as congregations conduct their ministries locally, as well as their ministries at large.

(b)  The Synod on behalf of its member congregations administers those ministries that can be accomplished more effectively in association with other member congregations through the Synod. In this way member congregations utilize the Synod to assist them in carrying out their functions of worship, witness, teaching and nurture, service, and support.

| 2.6 | **Triennial Mission and Ministry Emphasis and Mission Priorities** |
|---|---|

| 2.6.1 | **Mission and Ministry Emphasis (2019 Res. 4-03A)** |
|---|---|

*Resolved*, That Synod in convention establish *Making Disciples for Life* as its mission and ministry emphasis for the 2019–2022 triennium and directs the Office of National Mission and Office of International Mission under ends policies established by the BNM and BIM to resource congregations, schools, circuits and districts to do the following:

- evangelize and disciple the lost;

- retain the faithful;

- strengthen congregations and schools;

- plant new congregations and schools wherever possible, especially in urban and multi-cultural communities; and

- engage in international mission in partnership with the Office of International Mission;

| 2.6.2 | **Mission Priorities (2019 Res. 4-03A)** |
|---|---|

Wʜᴇʀᴇᴀs, The seven mission priorities previously affirmed at the 2016 Synod convention will appropriately continue to guide the ministry of the Synod through the policymaking work of the Boards for National Mission (BNM) and International Mission (BIM) in the coming 2019–2022 triennium:

- plant, sustain, and revitalize Lutheran churches;

- support and expand theological education;

- perform human care in close proximity to Word and Sacrament ministries;

- collaborate with the Synod's members and partners to enhance mission effectiveness;

- promote and nurture the spiritual, emotional, financial, and physical well-being of pastors and professional church workers;

- enhance early childhood education, elementary and secondary education, and youth ministry; and

- strengthen and support the Lutheran family in living out God's design;

The Lutheran Church—Missouri Synod                    **Board of Directors Policy Manual**

| **2.7** | **Church Body Mission Statement (1998 Res. 1-01A)** |
| --- | --- |

In grateful response to God's grace and empowered by the Holy Spirit through Word and Sacraments, the mission of The Lutheran Church—Missouri Synod is to vigorously make known the love of Christ by Word and deed within our churches, communities, and the world.

| **2.8** | **Monitoring** |
| --- | --- |

2.8.1.1     In its second regular meeting following each convention of the Synod, the Board shall review the statement of objectives in its policies for alignment with the directives of the Synod in convention and shall make the necessary modifications. The Secretary shall assist the Governance Committee in preparing the Board for this revision.

| Section Revision History | |
| --- | --- |
| 2022.11.18 | § 2 – Comprehensive Revision |

Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 23 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 23 of 122

The Lutheran Church—Missouri Synod                                    **Board of Directors Policy Manual**

## § 3    Board Self-Governance / Governance Process ("Board Means")

### 3.1    Scope and Regulation of Board Activities

3.1.1.1    All activities of the Board, its officers, committees, and individual members shall be in accordance with (1) the Constitution, Bylaws, and convention resolutions of The Lutheran Church—Missouri Synod and (2) applicable Federal and State laws (Bylaw 3.3.4.2; Bylaw 1.2.1 [f][2]).

3.1.1.2    The Board adopts as its parliamentary authority, subject to the above and to such special rules of order as the Board may from time to time adopt, the current edition of *Robert's Rules of Order, Newly Revised*, as may hereafter be revised from time to time.

### 3.2    Group Action

The Board shall exercise its governing authority as a whole. No individual member of the Board may exercise such authority except as authorized in Board policy or otherwise instructed by the Board.

### 3.3    Director Responsibilities

3.3.1.1    Members of the Board have a responsibility to:

- Regularly attend Board meetings and, when unable to attend, notify the Board chairman.

- Prepare for and participate in meetings, retreats, and other events of the Board.

- Expect complete and accurate information be provided to the Board relevant to the business of the Board. Through the Chief Administrative Officer, request information to be provided to the Board that may help the Board as a whole in exercising its responsibility (Policy 4.21.2.2).

- Bring to the Board issues for discussion and action which may be of concern, interest or importance.

- Forthrightly offer alternative points of view during Board discussion, but then follow decisions made by the Board.

- Serve on committees of the Board.

- Exercise diligence to ensure that all actions of the Board comply with the Constitution, Bylaws, resolutions, and Articles of Incorporation of the Synod.

- Bring to the attention of the Board actions and conditions that run counter to Board Policy.

- Through the Chairman, bring to the Chief Administrative Officer's immediate attention any condition or action believed to be contrary to governing documents or Board Policy.

- Disclose potential conflicts of interest and carry out responsibilities "in a manner reflecting the highest degree of integrity and honesty consistent with

The Lutheran Church—Missouri Synod                    **Board of Directors Policy Manual**

the Scriptures, Lutheran Confessions, the Constitution, Bylaws, and resolutions of the Synod," relevant policies, "and civil laws," in accord with the more specifically defined requirements of Bylaw 1.5.2.

- Demonstrate Christian love, joy, peace, kindness, goodness, faithfulness, gentleness, and self-control toward and for other members of the Board at all times;

- Maintain confidentiality;

- Contribute to peace and goodwill in the Board of Directors, the Synod, and among its congregations and members;

- Be sensitive in Board and Board member activities to taking or giving offense, giving the appearance of impropriety, causing confusion in the Synod, or creating potential liability (Bylaw 1.5.1.3);

- Support the above principles in all aspects of Synod; and

- Exercise special care when discussing Board business and other Synod issues outside of the Board meetings in order to help avoid misunderstandings or confusion.

| 3.4 | **Regular Meetings** |
|---|---|

3.4.1.1    The Board of Directors shall typically have four regular meetings each year, and such additional meetings that the Board deems necessary. All meetings will be held at a place and time determined by the Board.

3.4.1.2    The Chairman may authorize a member of the Board to participate in a regular, "in-person" meeting using an electronic technology in accordance with Policy 3.6.1.1.

| 3.5 | **Special Meetings** |
|---|---|

3.5.1.1    As provided by Missouri nonprofit corporation law, the Chairman or twenty percent of the directors in office may call and give notice of a special meeting of the Board.

3.5.1.2    The Chairman shall ordinarily consult with the Chief Administrative Officer or President before calling a special meeting.

3.5.1.3    Special meetings must be preceded by at least two days' notice to each director of the date, time, place, and purpose of the meeting. A director may at any time waive the required notice in writing, such waiver to be filed with the minutes; a director's attendance and participation in the meeting waives required notice, unless the director upon arriving or prior to the vote on a matter not noticed as required, objects to lack of notice and does not vote for or assent to the objected-to action. (This paragraph does not apply to special meetings called under Bylaw 1.5.7.1 to remove a member of the Board, which have a distinct notice requirement.)

| 3.6 | **Electronic Means of Meeting** |
|---|---|

3.6.1.1    The Board may conduct its meetings electronically using audio, video, or internet-based conferencing technologies.

Case 1:23-cv-01042-DAE   Document 13-5   Filed 04/03/24   Page 25 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 25 of 122

The Lutheran Church—Missouri Synod                    **Board of Directors Policy Manual**

    (a) In such cases, the technology must allow for each Board member to fully participate (hear, speak, have or been given access to documents and other materials as appropriate), including the opportunity to vote.

    (b) Members must be given a reasonable opportunity to access the electronic meeting. If a Board member does not have access to the technology to be used, arrangements will be made for the member to participate in person by coming to the LCMS international Center or other mutually agreed upon location (prior arrangement necessary).

3.6.1.2   As with any regular or special meeting of the Board, minutes shall be kept that record a summary of the major points of discussion and any action(s) taken.

3.6.1.3   Any Board member listening or watching shall acknowledge his or her presence to the meeting. Their names along with the physically attending Board members shall be recorded in the minutes of the meeting.

## 3.7   Quorum

A majority of voting members of the Board in office immediately before a meeting begins shall constitute a quorum at any meeting.

## 3.8   Actions Using Electronic Ballot

3.8.1.1   In situations where Board members are not able to meet as described in Policy sections 3.4–3.6 above, the Board may take action by use of electronic ballot (i.e., e-mail, internet-based voting, etc.) in accordance with the Missouri Nonprofit Corporation Act, provided all voting members of the Board cast a vote and the result of the voting is unanimous.

3.8.1.2   Such shall be evidenced by one or more written consents describing the action taken, signed by each director, and included in the minutes filed with the corporate records reflecting the action taken.

3.8.1.3   An action so approved is effected when the last director signs the consent, unless the consent specifies a different effective date.

3.8.1.4   Such a signed consent has the effect of a meeting vote and may be described as such in any document.

## 3.9   Agenda and Docket

3.9.1.1   The Chairman is to establish the agenda for meetings of the Board in compliance with the policy calendar established by the Board and in consultation with the Chief Administrative Officer.

3.9.1.2   The Chief Administrative Officer is ordinarily to distribute the docket to members of the Board no less than two weeks prior to the meeting date.

3.9.1.3   The docket shall consist of four major sections and two regular supplements, as appropriate:

    (a) Management Reports from the officers and principal units of Corporate Synod, relating performance and issues identified to approved plans and strategies

    (b) Reports of standing and ad hoc Board committees, consultants, and auditors

Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 26 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 26 of 122

The Lutheran Church—Missouri Synod                    **Board of Directors Policy Manual**

   (c) Proposed Board Actions recommended by Board committees or Corporate Synod management or parties identified in Policy 3.9.2.1

   (d) Monitoring of agencies outside Corporate Synod via submitted reports and minutes (posted in the "Agency Report" docket supplement and/or "Resources" area of BoardEffect)

   (e) Information on nominees for any Board appointments to be made (posted in the "Appointment" docket supplement)

   (f) Informational Items (research, reports, presentation materials, etc.).

3.9.1.4  No one shall make public the agenda or docket materials for Board of Directors or Board committee meetings before the end of the respective meeting.

3.9.1.5  The Chairman shall conduct an executive session review at the end of the meeting focusing on the efficiency of the meeting; the adequacy of the information provided; any guidance to the Chief Administrative Officer, Chief Financial Officer, committees, or the Chairman regarding improvements or changes for future meetings; and any other matters identified by the Board. This executive session will typically be attended by only the voting members and the nonvoting member of the Board. The Chairman shall, as necessary, communicate guidance to the CAO or CFO.

| **3.9.2** | **Requests for Action** |
|---|---|

3.9.2.1  The Board shall act as required by the Constitution and Bylaws of the Synod and these Policies and shall consider requests from:

   • officers, agencies of the Synod, auxiliaries, and recognized service organizations of the Synod,

   • individual members of the Board,

   • members of the Synod, so long as the request is not more appropriately the responsibility of the Board's Chief Administrative Officer or other Synod officers, a Synod-wide Corporate Entity, or an Agency of the Synod.

3.9.2.2  Requests for action should ordinarily be submitted for consideration to the Chief Administrative Officer at least 30 days prior to the meeting.

| **3.9.3** | **Requests for Appearance** |
|---|---|

3.9.3.1  Individuals who desire to address the Board must make a request to the Chief Administrative Officer at least seven days prior to the meeting for approval by the Chairman.

| **3.9.4** | **Consent Agenda** |
|---|---|

3.9.4.1  The Board makes use of a consent agenda to expedite the conduct of routine business during Board meetings in order to allocate meeting time to education and discussion of substantive issues.

3.9.4.2  The consent agenda should consist of routine matters that require Board action. Typically, these items include the approval of minutes, acceptance of officer and other written reports (excluding the quarterly financial/budget report), and adoption of routine or non-controversial action items.

Case 1:23-cv-01042-DAE     Document 13-5     Filed 04/03/24     Page 27 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 27 of 122

The Lutheran Church—Missouri Synod                    **Board of Directors Policy Manual**

3.9.4.3          The Chairman shall be responsible to approve the proposed consent agenda for each meeting upon recommendation of the Chief Administrative Officer. The consent agenda shall be distributed with the meeting docket.

3.9.4.4          The consent agenda will be presented to the Board for adoption as soon as practicable after the opening devotion on the first day of the meeting.

3.9.4.5          Any item which appears on the consent agenda may be removed from the consent agenda upon request by a member of the Board. Items removed from the consent agenda will be considered at another time during the meeting as determined by the Chairman. The remaining items will be voted on by a single motion to approve the consent agenda.

3.9.4.6          The approved motion will be recorded in the minutes, including a listing of all items appearing on the consent agenda.

## 3.10          Confidentiality

The following materials are to be held confidential:

(a)  Executive Session discussions and minutes

(b)  The legal section and attorney–client privileged sections of the docket

(c)  personnel-related matters

(d)  Discussions of pending CCM rulings where BOD input is sought

(e)  Ongoing business transactions and negotiations where confidentiality is in the interest of the Synod

(f)  Other sections, materials, or information the Board, its Chairman, the Chief Administrative Officer, or the Secretary designates as confidential

(g)  All docket materials until the conclusion of the respective meeting

## 3.11          Executive Session

3.11.1.1         An executive session of the Board is a closed portion of a meeting in which the proceedings are conducted in private.

3.11.1.2         As a standard practice, everyone is excused from the meeting except for voting members of the Board, the non-voting member of the Board, and others designated by the Chairman. In certain circumstances, the Board may elect to meet in executive session with only the voting and non-voting members of the Board.

3.11.1.3         All persons, including Board members and officers, shall maintain confidential all executive session discussions to which they are privy.

3.11.1.4         Minutes of these sessions are maintained by the Secretary but are not publicly released. The minutes published of the regular or special meeting during which the executive session was held generally identify the topic discussed in executive session but not the details of the session. The following items shall be regarded as taking place in executive session:

(a)  all legal reports and discussion

(b)  all attorney-client privileged material

Case 1:23-cv-01042-DAE   Document 13-5   Filed 04/03/24   Page 28 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 28 of 122

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

    (c) all personnel-related reports and discussion

    (d) all requests for response from the Commission on Constitutional Matters

    (e) ongoing business transactions and negotiations where confidentiality is in the interest of the Synod

    (f) other matters identified by the Board, its Chairman, the Chief Administrative Officer, or the Secretary.

3.11.1.5    Executive session minutes shall be distributed to the Board for review and approval in executive session at the next meeting. Following approval, all copies shall be returned to the Secretary who has sole responsibility for maintaining the record of executive sessions.

3.11.1.6    Balancing the importance of transparency with the Board's need to address sensitive legal, property, and personnel issues, Board members and advisories shall immediately raise any concern about the appropriateness of open session for a business item, and the Chairman shall entertain a motion (which is debatable) to enter executive session.

## 3.12    Officers of the Board of Directors

3.12.1.1    Officers of the Board shall include:

- A Chairman and Vice-Chairman elected by the Board (Bylaw 3.3.4.4 [a]).

- A Secretary, the Secretary of the Synod serving by virtue of his office (Bylaw 3.3.3).

3.12.1.2    The officers of the Board shall not assume any part of or exercise the Board's governing authority except as the Board may explicitly delegate to them in its policies or by resolution.

### 3.12.2    Election of Officers

3.12.2.1    The Chairman and Vice-Chairman shall be elected in the first meeting after the Synod convention as the first order of business after the orientation activities (Bylaws 3.3.4.4 [a]; 1.5.3.1). The elections shall require a simple majority. The Chairman shall be elected first, followed by the Vice-Chairman. Each first ballot shall list all Board members except those requesting to be removed.

3.12.2.2    Immediately following the election of the Vice-Chairman, the at-large member of the Executive Committee shall be elected in the same manner.

3.12.2.3    Prior to election of officers, the meeting shall be chaired by the Chief Administrative Officer and issues of orientation shall be addressed. In addition to the orientation noted herein, a separate orientation of new Board members may take place prior to the first meeting of the triennium.

### 3.12.3    Chairman

The Chairman shall:

    (a) Establish the agenda for meetings of the Board consistent with Policy 3.9.

    (b) Set the time, place, and agenda for Executive Committee (Policy section 3.13.2) meetings.

    (c) Preside at all meetings of the Board and its Executive Committee.

Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 29 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 29 of 122

The Lutheran Church—Missouri Synod                    **Board of Directors Policy Manual**

(d) Consistent with Policy 3.5, call special meetings of the Board.

(e) At the first meeting of each triennium, solicit interest from members for service on the Board's three standing committees, make appointments to those committees, and appoint their chairpersons (Policy sections 3.13.3–3.13.5).

(f) Arrange with the President for an annual review of the responsibilities, performance, and priorities of the Chief Administrative Officer and the Chief Financial Officer in accordance with Board policies, consistent with Policy 4.21.3, involving all the other Board members in the process and informing the Board of the results.

(g) Discuss with individual Board members any violations of their responsibilities and possible corrective action (Policy 3.3). When a resolution cannot be obtained with an individual Board member, the Chairman will lead a full review by the Board of the violation of the policy and discussion of corrective actions to be taken.

(h) Notify members of the Board if a limitation of Board Policy is believed to have been violated and initiate appropriate action.

| 3.12.4 | **Vice-Chairman** |

The Vice-Chairman shall:

(a) preside at meetings of the Board in the absence of the Chairman

(b) carry out responsibilities as may be assigned by the Chairman or by the Board

(c) discuss with the Chairman any violation of the policy on the part of the Chairman and possible corrective action.

| 3.12.5 | **Secretary** |

The Secretary of the Synod, in accordance with the Bylaws of the Synod, is the Secretary of the Board (Bylaw 3.3.3). In serving the Board, he shall:

(a) Record the official minutes of the Board's meetings and direct their distribution to the members of the Board, the Synod vice-presidents, and the Chief Administrative Officer.

(b) Provide minutes of Board meetings, including pending minutes and excluding executive sessions, to any member of the Synod who requests them, primarily directing them to the Board's web page. He is to see that pending minutes, excluding executive sessions, are posted to the Synod website in a timely fashion by the Office of the Chief Administrative Officer.

(c) Provide the Synod archives with approved minutes.

(d) Preserve regular and special reports made to the Board and, at its direction, make summaries or copies of them available to its members.

(e) Record Executive Committee minutes and distribute them within two weeks to the Board members.

Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 30 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 30 of 122

The Lutheran Church—Missouri Synod                    **Board of Directors Policy Manual**

(f)  Issue a call for nominations for Board appointments, obtain and provide background information on all nominees and assist the Board in the screening process through the Personnel Committee.

(g)  Notify persons elected or appointed by the Board of such election or appointment and convey the thanks of the Board to those persons who were nominated but not selected.

(h)  Assist the Chief Administrative Officer in communicating Board actions.

| 3.13 | Committees of the Board of Directors |
|------|--------------------------------------|

3.13.1.1    An Executive Committee and three standing committees (Finance and Audit, Governance, and Personnel) shall be constituted from the membership of the Board.

3.13.1.2    At the first meeting of each triennium, the Chairman shall solicit interest from members for service on the Board's three committees and make appointments to those committees. He shall also appoint their chairpersons. (Policy sections 3.13.3–3.13.5)

3.13.1.3    The Board may "delegate a specific assignment for a limited time to a committee composed of its own members" (Bylaw 1.5.3.3)

3.13.1.4    The Board or the Chairman "may appoint standing committees of specialists to provide professional or technical assistance to the Board … and may delegate certain responsibilities to such committees while retaining supervision. Standing committees may be made up of or include non-Board … members." (Bylaw 1.5.3.4)

3.13.1.5    Responsibilities of the committees of the Board shall be limited to those specifically established by the Board. Committees of the Board shall not take independent action but shall report or make recommendations to the entire Board.

3.13.1.6    Committees may use the Chief Administrative Officer or other staff persons designated above to carry out their responsibilities.

3.13.1.7    Each committee member will be independent (i.e., free of any relationship that could influence his/her judgment as a committee member).

| 3.13.2 | Executive Committee |
|--------|---------------------|

3.13.2.1    The Chairman, Vice-Chairman, and one member-at-large, together with the President of the Synod or in his absence the First Vice-President (Const. Art. XI C 1) and the Secretary of the Synod, shall constitute the Executive Committee of the Board.

3.13.2.2    The Chief Administrative Officer, the Chief Mission Officer, and the Chief Financial Officer shall be advisory members of the Committee.

3.13.2.3    The member-at-large shall be elected by the Board as indicated in Policy 3.12.2.

3.13.2.4    The Executive Committee, in accordance with Bylaw 1.5.3, may act on behalf of the Board in times of emergency between Board meetings and in all matters delegated to it by a specific action or by the policy of the Board, including response to legal action.

3.13.2.5    Minutes of the Executive Committee shall be sent to the Board within two weeks of the Committee action.

Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 31 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 31 of 122

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

3.13.2.6    Executive Committee Meetings may be called by

- the Chairman of the Board,
- the President, in consultation with the Chairman, or
- a majority of the Executive Committee,

with the Chairman of the Board ordinarily setting the time, place, and agenda for the meetings.

3.13.2.7    The Executive Committee shall ordinarily be chaired by the Chairman of the Board.

3.13.2.8    Three voting members shall constitute a quorum of the Executive Committee.

**3.13.3        Finance and Audit Committee**

3.13.3.1    The Finance and Audit Committee shall consist of at least three voting members of the Board. The Committee shall:

(a) review and provide recommendations to the Board and/or management on financial matters

(b) review and provide recommendations to the Board on investment policies, upon recommendation of the Chief Financial Officer, and oversee management implementation of the Board's investment policies

(c) operate under the Audit Committee Charter (Policy section 4.17.1)

(d) perform other oversight functions of a financial nature as assigned by the Board.

3.13.3.2    The committee shall include members with basic expertise in financial management; the committee may consult with an independent financial expert on special topics.

3.13.3.3    The Chief Financial Officer and Chief Administrative Officers shall serve as advisory members of and staff for the committee. The Executive Director of Internal Audit shall also serve as staff to, and shall meet at least semi-annually with, the committee.

**3.13.4        Governance Committee**

3.13.4.1    The Governance Committee shall consist of at least three voting members of the Board. It shall meet at least semi-annually. The Committee shall:

(a) Review, make recommendations and publish the Board's Policy Manual.

(1) Specific recommendations for new or amended policies must be submitted to the Governance Committee for review before consideration by the Board.

(2) The Committee will report to each Board meeting as necessary and recommend Board action on policy changes, ensuring a regular review of policies through the Policy Review Calendar (Policy section 3.17.2).

(b) Provide input to Chairman and Chief Administrative Officer regarding the Board meeting calendar to ensure alignment with the budget and strategic planning calendar.

(c) Plan a triennial retreat for the Board of Directors, in coordination with the Chairman and the Chief Administrative Officer.

Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 32 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 32 of 122

**The Lutheran Church—Missouri Synod**                                **Board of Directors Policy Manual**

      (d) Review the composition of the Board at the beginning of each Triennium and, as necessary, make recommendations to the Board regarding any skill sets needed to effectively govern for the coming Triennium (Policy section 4.5.1).

      (e) Oversee the appointment process for new directors as identified in Bylaw 3.3.4.1 (6) and Policy section 4.5.1.

      (f) Oversee the directors' performance and Board evaluation processes.

3.13.4.2    The Chief Administrative Officer and Secretary shall serve as advisory members of and staff for the committee.

## 3.13.5    Personnel Committee

3.13.5.1    The Personnel Committee shall consist of at least three voting members of the Board. The Committee shall:

      (a) Monitor the compensation system of Corporate Synod and the synodwide corporate and trust entities

      (b) Monitor the Human Resources Policies and recommend Board action on those human resources matters requiring Board approval (Policy section 4.14.2)

      (c) Serve as a screening and, when appropriate, a nominating committee of the Board for appointments to Synod boards and commissions (Policy section 4.5).

3.13.5.2    The Chief Administrative Officer shall be an advisory member of and staff for the Personnel Committee. The Executive Director of Human Resources shall be staff for the Personnel Committee and shall attend the committee's meetings at least annually.

## 3.14    Correspondence

3.14.1.1    The Chairman or his designee, ordinarily the Chief Administrative Officer, shall respond to correspondence addressed to the Board of Directors.

3.14.1.2    A copy of all Board correspondence shall be retained and a copy of relevant correspondence should be provided to the members of the Board.

## 3.15    Records

3.15.1.1    The Secretary and Chief Administrative Officer shall be responsible to maintain and dispose of Board records under applicable policy, transferring correspondence, records, minutes, reports, and other files to the archives when no longer of current operational value under procedures and guidelines established by the Department of Archives (Concordia Historical Institute) and supervised by it (Bylaw 3.6.2.2.1 [b–e]).

## 3.16    Reporting To and Representation At the Synod Convention

3.16.1.1    The Board reports triennially to the convention of the Synod in its *Workbook* report (Bylaw 3.1.6.1) and submits such overtures as it may deem prudent (Bylaw 3.1.6.2; Policy section 1.1).

3.16.1.2    The Board is represented by as many of its members as it deems necessary at each convention of the Synod (Bylaw 3.1.4.1 [b]).

Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 33 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 33 of 122

The Lutheran Church—Missouri Synod                    **Board of Directors Policy Manual**

| 3.17 | **Monitoring** |
|---|---|

| 3.17.1 | **Policy and Action Review** |
|---|---|

3.17.1.1    Any member of the Board or the Chief Administrative Officer may, to the extent of the Board's responsibilities relative to the general management and supervision of the business and legal affairs of the Synod, ask the Board of Directors to review any action or policy of a mission board, commission, or council which primarily relates to business, property, and/or legal matters and, after consultation with the agency involved and when deemed necessary, require modification or revocation thereof, except opinions of the Commission on Constitutional Matters (Bylaw 3.3.4.5[a][2]).

3.17.1.2    The Board of Directors shall provide for the review and coordination of the policies and directives of the Synod authorized by the Constitution, Bylaws, and resolutions of the Synod, evaluating plans and policies and communicating to the appropriate boards and commissions suggestions for improvement, and, in the case of mission boards and commissions, require changes for compliance with Board of Directors' policies within the sphere of its responsibility (Bylaw 3.3.4.3).

| 3.17.2 | **Policy Review Calendar** |
|---|---|

3.17.2.1    Board policies shall be reviewed, refined and updated as necessary. Every Board member has the responsibility to review its policies and make suggestions for improvements as necessary. In order to meet the Board's intent to regularly review its policies, the Governance Committee shall, assisted by the Chief Administrative Officer, review all policies at least once each triennium, recommending appropriate revisions for adoption by the Board.

3.17.2.2    The regular schedule for review of policies is included in the Appendix to this Policy Manual.

| 3.17.3 | **Board Self-Review** |
|---|---|

At least once each triennium, the Board shall formally evaluate its effectiveness and efficiency, including the following:

(a) The Board's ability and effectiveness in carrying out its constitutional responsibilities

(b) The Board's ability and effectiveness in developing, adhering to, refining, and monitoring Board Policy

(c) The Board's effectiveness in carrying out its leadership role

| Section Revision History | |
|---|---|
| 2022.11.18 | § 3 – Comprehensive Revision |

Case 1:23-cv-01042-DAE   Document 13-5   Filed 04/03/24   Page 34 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 34 of 122

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

## § 4        Board Governance Relationships (Boards, Commissions, and Officers)

The following policies establish relationships between the Board and other governing authorities in the Synod and establish policies related to aspects of their governance with regard to which the Board has authority to do so.

### 4.1        Manner of Meeting of Synod Agencies

4.1.1.1    Unless otherwise specified in the Bylaws, each agency of the Synod is free to select a manner of meeting, consistent with Policy 4.14.1, that best enhances its ability to accomplish its mission, taking into consideration fostering the open exchange of ideas, availability of technology to all members, stewardship of resources, perception of fairness, controversial nature of agenda items, and whether secret ballots might be used (Bylaw 1.5.3).

### 4.1.2      Electronic Meetings

4.1.2.1    An agency may conduct its board meetings electronically using audio, video, or internet-based conferencing technologies in accordance with applicable state law.

4.1.2.2    In such cases, the technology must allow for each board member to fully participate (hear, speak, have, or been given access to documents and other materials as appropriate), including the opportunity to vote.

4.1.2.3    Members must be given a reasonable opportunity to access the electronic meeting. If a board member does not have access to the technology to be used, arrangements must be made for the member to participate in person by coming to a mutually agreed upon location (prior arrangement may be required).

4.1.2.4    Minutes shall be kept in accordance with agency/corporate policy.

4.1.2.5    All persons listening or watching shall acknowledge their presence to the meeting and their presence shall be recorded in the minutes of the meeting.

### 4.1.3      Actions Using Electronic Ballot

4.1.3.1    In situations where agency board members are not able to meet and where permitted by agency governing documents, the agency board may take action by use of electronic ballot (i.e., e-mail, internet-based voting, etc.) in accordance with the Missouri Nonprofit Corporation Act and other applicable statutes, provided all voting members of the board cast a vote and the result of the voting is unanimous.

### 4.2        Mission Boards of the Synod

4.2.1.1    The Boards for National and International Mission (Bylaws 3.8.2–3.8.2.3 and 3.8.3–3.8.3.3, respectively, develop and determine policies for their respective ministry functions of the Synod (Bylaw 1.2.1 [n]), which policies establish boundaries, parameters, and principles that guide the respective mission offices in determining present and future activities and programs. As to the implementation of these by the mission offices, the mission boards have oversight and the President has supervision.

Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 35 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 35 of 122

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

| 4.2.1.2 | The Board shall provide for review and coordination of the policies and directives of the mission boards and may require changes for compliance with Board of Directors policies within the sphere of its responsibility. (Bylaw 3.3.4.3) |
|---|---|
| 4.2.1.3 | The Board shall receive copies of all legal opinions or written counsel received by mission boards of the Synod. (Bylaw 3.3.4.4) |

## 4.3          Commissions of the Synod

| 4.3.1.1 | The Board of Directors shall provide for review and coordination of the policies and directives of the commissions and may require changes for compliance with Board of Directors policies within the sphere of its responsibility. (Bylaw 3.3.4.3) |
|---|---|
| 4.3.1.2 | The Board shall receive copies of all legal opinions or written counsel received by commissions of the Synod. (Bylaw 3.3.4.4) |

### 4.3.2          Commission on Constitutional Matters

| 4.3.2.1 | The Board and the Commission on Constitutional Matters shall coordinate requests for review of agency governing documents involving any concerns related to the inclusion of the language of Bylaw 1.5.3.6 (a) or (b) through the Secretary, and shall communicate any permission the Board grants to remove or modify the provisions to the Commission. |
|---|---|
| 4.3.2.2 | When an opinion of the Commission pertains to business, legal, or property matters and the Board of Directors of the Synod concludes that such opinion of the commission is contrary to the laws of the State of Missouri, the Board and the commission, or their respective representatives, shall meet jointly to discuss the issue(s) and seek resolution thereof and shall proceed as directed in Bylaw 3.9.2.2 (c). |

### 4.3.3          Commission on Theology and Church Relations

(reserved for future use)

### 4.3.4          Commission on Handbook

(reserved for future use)

### 4.3.5          Commission on Doctrinal Review

(reserved for future use)

## 4.4          Council of Presidents

| 4.4.1.1 | The Board shall receive copies of all legal opinions or written counsel received by councils of the Synod. (Bylaw 3.3.4.4) |
|---|---|

## 4.5          Making Appointments and Filling Mid-term Vacancies

### 4.5.1          Appointments to Board to Obtain Necessary Skill Sets

| 4.5.1.1 | The Governance Committee shall oversee the appointment process for new directors as described in Bylaw 3.3.4.1 (6), identifying any skill sets potentially calling for identification and appointment of additional directors. |
|---|---|
| 4.5.1.2 | At the beginning of each Triennium, the Governance Committee shall review the composition of the Board at the beginning of each Triennium and, as necessary, make |

Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 36 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 36 of 122

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

recommendations to the Board regarding any skill sets needed to effectively govern for the coming Triennium (Policy section 4.5.1). The Governance Committee shall:

(a) Begin the process for the Board to decide whether to appoint additional Board members each triennium after the synodical Convention and before the September Board meeting. Consider the qualifications, experience, and expertise of all Board members collectively and determine whether additional qualifications, experience, and expertise would be helpful for the Board to conduct its business.

(b) Make a recommendation to the Board for the Board to consider at its September meeting as to whether the Board should appoint additional Board members, and if so, the number of additional Board members, and the qualifications, experience, and expertise that those additional Board members should possess.

(c) If the Board decides at the September meeting to appoint additional members, the process to be followed will be:

(1) The Board will identify the number of additional Board members and the qualifications, experience, and expertise that the Board believes should be possessed by any additional Board members appointed;

(2) Nominations will be solicited from Board members and from any other source that the Board determines can submit nominations, with a deadline not less than two (2) days before the Personnel Committee's next meeting before the Board's February meeting for nominations specifically stated;

(3) All nominations will be considered by the Personnel Committee;

(4) The Personnel Committee will recommend to the Board those candidates that the Personnel Committee believes are most qualified to satisfy the needs as determined by the Board, while all candidates nominated will be eligible for appointment by the Board.

(d) Any additional Board members so appointed shall commence service with the subsequent February Board meeting.

4.5.1.3    This process does not preclude the Board from appointing additional Board members at any other time during the triennium and does not preclude the Board from appointing other individuals to assist the Board in an advisory or consulting fashion without serving as a member of the Board.

### 4.5.2    Regular Appointments to Boards, Commissions and Standing Committees

4.5.2.1    The Bylaws of the Synod and the governing documents of certain LCMS Agencies designate the Board of Directors of the Synod as the entity responsible for making certain appointments. The Board of Directors is responsible to make appointments as shown below:

| Appointment | How Many/Type | Authorization | Notes |
|---|---|---|---|
| First Meeting Following National Conventions (September, First year of triennium) | | | |

Case 1:23-cv-01042-DAE     Document 13-5     Filed 04/03/24     Page 37 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 37 of 122

The Lutheran Church—Missouri Synod                    **Board of Directors Policy Manual**

| | | | |
|---|---|---|---|
| The Lutheran Church—Missouri Synod Foundation | 5 at-large members 1 alternate | Bylaw 3.6.5.2.13 | |
| Concordia University System - Council of Members | 3 lay members | Bylaw 3.6.6.2 | |
| Concordia University System - Board of Directors | 2 nonvoting advisory members (lay, ordained, or commissioned) | Bylaw 3.6.6.3 | Persons elected or appointed to the Concordia University System Board of Directors should have demonstrated familiarity and support of the institutions, and shall support the doctrinal positions of the Synod, and shall possess two or more of the following qualifications: theological acumen, an advanced degree, experience in higher education administration, administration of complex organizations, finance, law, investments, technology, human resources, facilities management, or fund development. The Chief Administrative Officer of the Synod (or a designee) and the Secretary of the Synod (or a designee) shall review and verify that nominees are qualified to serve as stated above. |
| **Annually at the May Meeting of the Board** | | | |
| Lutheran Church Extension Fund—Missouri Synod | N members-at-large | Bylaw 3.6.4.2.1 | Number to be elected based on formula identified in Bylaw |
| Concordia Plan Services | Each May meeting, four lay members are appointed, plus: • In the first and second May meetings following the Synod convention (and in 2021 and 2022), one ordained minister each • In the third May meeting following the Synod convention one commissioned minister | Bylaw 3.7.1.3 | * Of the laypersons: • at least five shall be experienced in the design of employee benefit plans, • at least five shall be experienced in the management of benefit plan investments • at least one of whom shall have significant financial/audit experience. |
| **As Necessary** | | | |
| Lutheran Center for Religious Liberty (LCRL) | BOD appoints up to two directors | LCRL Bylaw: Section 3 | • Directors selected shall be from a slate of nominees developed by the LCRL BOD or a nominating committee selected by the LCRL BOD • If the LCRL BOD consists of three or four directors, one director shall be appointed by the Board of Directors of LCMS, with the prior concurrence of the LCRL Board of Directors. • If the LCRL BOD consists of five directors, two directors shall be appointed by the Board of Directors of the LCMS, with the prior concurrence of the LCRL Board of Directors. • Such appointment shall take place in advance of the meeting of the LCRL BOD at which the term of the director(s) so appointed shall commence. • The LCMS BOD, the LCMS President and the LCRL BOD are entitled to submit nominations. |

4.5.2.2       Unless otherwise specified (as in the case of the Lutheran Center for Religious Liberty), at least three months prior to the LCMS Board of Directors meeting at which appointments are to be made the Secretary of the Synod shall issue a request for nominations. This request will be forwarded to the following:

  • Members of the Board of Directors, including any members-elect

§ 4: Board Governance Relationships (Boards, Commissions, and Officers)

Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 38 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 38 of 122

The Lutheran Church—Missouri Synod                    **Board of Directors Policy Manual**

- President of Synod
- District presidents, to be shared with district boards of directors
- The respective board and its executive officer
- The Executive Director of Human Resources, who shall maintain a file on available talent

4.5.2.3    Nominations shall be submitted on a standard form similar to that used for elected positions. All incumbents eligible for re-appointment shall be considered to have been nominated.

4.5.2.4    The Secretary of the Synod shall, immediately upon the close of the nomination period, provide notification to the Executive Director of Human Resources and Chairman of the Personnel Committee of the list of names in nomination, so that the numerical adequacy of nominations received can be assessed and corrective action taken (see below), if necessary.

4.5.2.5    The Secretary of the Synod, assisted as necessary by LCMS Human Resources, shall obtain biographical material and consent to serve if appointed from the nominees, as well as evaluations from suggested evaluators, and shall perform any required vetting of (as in the case of Concordia University System director appointments) or verify concurrence in (as in the case of Lutheran Center for Religious Liberty directors) nominations received.

4.5.2.6    Prior to the Board meeting, the Board's Personnel Committee shall review the nominations, biographical materials, and evaluations received.

4.5.2.7    The Personnel Committee may, if provided with insufficient suitable candidates to present to the Board, present its own nominations, gathering similar biographical and evaluative information on its nominees, following the usual pattern. It may draw on the "file of available talent" (see above).

4.5.2.8    The Personnel Committee shall submit to the Board a list of at least two candidates, if possible, from the list of nominees for each appointment to be made and may in addition make more specific recommendations. The Committee shall also provide the Board the entire list of nominees along with all background information. Any Board member may add names to the list of candidates from the list of nominees.

4.5.2.9    After the Board has affirmed the slate of candidates, the Board may, by majority vote:

(a)   using an electronic or other suitable ballot and from the slate as potentially amended, elect its appointee(s);

(b)   by resolution make one or more appointments without separate election; or

(c)   direct the process to be reinitiated at any prior stage.

4.5.2.10    Mid-term vacancies in these positions will be filled according to the process outlined above. The respective board or commission may submit suggestions (Bylaw 3.2.5.1).

4.5.2.11    The Secretary of the Synod shall maintain, in consultation with the Personnel Committee and LCMS Human Resources, position descriptions for the positions subject to Board appointment, which may include specific qualifications or qualities that the Board desires of nominees.

Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 39 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 39 of 122

The Lutheran Church—Missouri Synod                    **Board of Directors Policy Manual**

4.5.2.12          Former executives of a board or commission shall not be eligible for appointment to that board for a period of six (6) years after termination of employment.

**4.5.3          Mid-Term Vacancy Appointments to Convention-Elected Board and Commission Positions**

4.5.3.1          Mid-term Vacancies in board or commission board or commission positions elected by the Synod in convention, except for college and university board of regents positions (filled by the Concordia University System Board of Directors [Bylaw 3.10.6.3 (c)]), shall be filled by the Board of Directors of the Synod.

4.5.3.2          Midterm vacancies in such positions initially filled by election at the Synod convention shall without exception follow the process outlined in Bylaw 3.2.5, as follows:

4.5.3.3          The Secretary of the Synod, within 90 days of notification of the vacancy, gathers nominations from the respective board or commission, the President of the Synod, the district boards of directors, and the slate of candidates from the previous convention.

4.5.3.4          The Secretary of the Synod, assisted as necessary by LCMS Human Resources, obtains biographical material and consent to serve if appointed from the nominees, as well as evaluations from suggested evaluators, and performs any required vetting of nominations received (as in the case of Concordia University System directors).

4.5.3.5          The Secretary of the Synod submits the slate of nominees to the Standing Committee on Nominations ("Bylaw 3.2.5 Committee"), which produces a slate of at least three but no more than five candidates.

4.5.3.6          Prior to the Board meeting at which the appointment is to be made, the Personnel Committee is provided with the nomination, biographical, and evaluative information on all nominees, and with the slate selected by the Standing Committee on Nominations. The Personnel Committee may make specific recommendations, including the addition of previously submitted nominees to the slate of candidates.

4.5.3.7          The slate of candidates provided shall be provided to the Board in its entirety. The Board may (Bylaw 3.2.5 [d]) add previously submitted nominees to the slate of candidates.

4.5.3.8          Should the Board be presented with fewer than three consenting nominees, the Board may declare the process defective and direct the Secretary to repeat the call for nominations, adding names newly obtained to those already submitted.

4.5.3.9          Otherwise, the Board shall from the presented slate elect by majority vote, using an electronic or other suitable ballot, its appointee(s).

4.5.3.10         Former executives of a board or commission shall not be eligible for appointment to that board for a period of six (6) years after termination of employment.

**4.5.4          Appointment of Chief Financial Officer**

                 The Chief Financial Officer shall be a layperson appointed (or reappointed) to a three-year renewable term of office by the Board in consultation with and with the concurrence of the President of the Synod. (Bylaws 3.4.1.1–2)

Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 40 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 40 of 122

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

### 4.5.5      Appointment of Chief Administrative Officer

The Chief Administrative Officer shall be appointed (or reappointed) to a three-year renewable term of office by the Board in consultation with and with the concurrence of the President of the Synod. (Bylaws 3.4.2.1–2)

### 4.5.6      Appointment of Chief Mission Officer

The Chief Mission Officer is appointed (or reappointed) to a three-year renewable term of office by the President of the Synod in consultation with and with the concurrence of the Board. (Bylaws 3.4.3.1–2)

## 4.6      Elected Officers of the Synod

**4.6.1.1**      The full-time Synod officers serving on the Board as voting members are the President and Secretary and as a non-voting member, the First Vice-President. The Chief Administrative Officer, the Chief Financial Officer, and Chief Mission Officer shall be advisory to the Board.

**4.6.1.2**      Except as provided for in the Constitution and Bylaws, no elected Synod Officer shall assume any part of the management responsibilities of the Board or those responsibilities delegated to its Chief Administrative Officer who, under Bylaws 3.4.2 and 3.3.4.4 (c), will serve as its Chief Operating Officer.

**4.6.1.3**      The Board pursuant to Bylaw 3.3.4.4 (c), may assign to the elected Synod officers as members of the Administrative Team (Bylaw 3.5.1), specific tasks for which they will be responsible to the Board.

### 4.6.2      President

**4.6.2.1**      The President is empowered, subject to the approval of the Board, to engage sufficient staff to carry out the duties of his office (Bylaw 3.3.1 [b]).

**4.6.2.2**      The Board makes itself available for consultation with the President when ecumenical matters or his contemplation of an exercise of executive power for which there is no specific directive concern the Synod's property, business, or legal matters (Bylaws 3.3.1.1.2 [a]; 3.3.1.3 [o]).

**4.6.2.3**      The Board reviews actions of officers, executives, or agencies that in the President's view may be in violation of the Constitution, Bylaws, and Resolutions of the Synod and that are referred by him to the Board (Bylaw 3.3.1.2 [c][2]).

**4.6.2.4**      The Board shall determine when the President is unable to serve in that capacity because of prolonged illness or disability, with the First Vice-President serving as acting president until the Board determines that such illness or disability has been removed (Bylaw 3.3.1.4).

### 4.6.3      Secretary

**4.6.3.1**      The Board may assign work to the Secretary in addition to that pertaining to his office (Bylaw 3.3.3.2).

**4.6.3.2**      The Board shall approve of the Secretary's obtaining assistance necessary to facilitate the nomination and election of the President and Vice-Presidents of the Synod (Bylaws 3.12.2; 3.12.2.4).

Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 41 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 41 of 122

The Lutheran Church—Missouri Synod                    **Board of Directors Policy Manual**

4.6.3.3        The Board shall determine when the Secretary is unable to serve in that capacity because of prolonged illness or disability, with the Board designating an acting secretary until the Board determines that such illness or disability has been removed.

4.6.3.4        In the event of the death, resignation, or permanent incapacity of the Secretary, the Board of Directors of the Synod shall appoint a successor for the unexpired term (Bylaw 3.3.3.3).

## 4.7        Appointed Officers of the Synod

4.7.1.1        Board Policy places limitations on the Chief Administrative Officer (CAO)'s and the Chief Financial Officer (CFO)'s efforts to achieve the Board's desired outcomes (Policy § 2).

4.7.1.2        In carrying out the responsibilities of their respective positions the CAO and CFO shall act both:

(a)    in a Christian manner that is ethical, prudent, and consistent with these policies, the Constitution and Bylaws of The Lutheran Church—Missouri Synod, and within such limitations, the applicable federal and state laws.

(b)    in a sound and prudent fiscal manner that is in the best interest of and will not jeopardize the financial strength of Corporate Synod or The Lutheran Church—Missouri Synod.

4.7.1.3        The CAO and CFO may use appropriate discretion in handling matters delegated by the Board so long as they comply with the Constitution, Bylaws, and convention actions of the Synod, applicable laws, and Board Policy.

4.7.1.4        Except as provided for in the Constitution and Bylaws, no appointed Synod Officer shall assume any part of the management responsibilities of the Board or those responsibilities delegated to its CAO who, under Bylaws 3.4.2 and 3.3.4.4 (c), will serve as its Chief Operating Officer.

4.7.1.5        The Board pursuant to Bylaw 3.3.4.4 (c), may assign to the appointed Synod officers as members of the Administrative Team (Bylaw 3.5.1), specific tasks for which they will be responsible to the Board.

### 4.7.2        Chief Administrative Officer

4.7.2.1        The Chief Administrative Officer (CAO), who serves under the direction and supervision of the Board as a whole, shall comply with Board policies. (Bylaws 3.4.2–3.4.2.2)

4.7.2.2        The CAO is empowered to take appropriate action on behalf of the Board as delegated by the Board under these Policies, the position description established by the Board, and resolutions of the Board (Policy 4.14.2), and shall be accountable to the Board therefor.

4.7.2.3        The Board shall monitor the performance of the CAO (e.g., Policy 4.21.3).

### 4.7.3        Chief Financial Officer

4.7.3.1        The Chief Financial Officer (CFO), who serves under the direction and supervision of the Board as a whole, shall comply with Board policies. (Bylaws 3.4.1–3.4.1.2)

4.7.3.2        The CFO shall administer the financial affairs of the Synod, excluding the synodwide corporate entities, the districts, the Concordia Plans, and Concordia Plan Services (Bylaw 3.4.1).

Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 42 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 42 of 122

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

4.7.3.3    The CFO shall serve as Treasurer of Corporate Synod (Bylaw 3.4.1.3).

4.7.3.4    The CFO shall carry out duties as specified in Bylaw 3.4.1.3.

4.7.3.5    The CFO shall, unless the Board designates otherwise (Policy section 4.12), represent the Board on the governing boards of agencies specified in and as otherwise designated by the Bylaws of the Synod (Bylaw 3.4.1.3 [e]).

4.7.3.6    The CFO shall be authorized to open bank accounts in the name of the Synod. Such accounts shall be reported to the Finance and Audit Committee of the Board.

4.7.3.7    The CFO is empowered to take appropriate action on behalf of the Board as delegated by the Board under these Policies, the position description established by the Board, and resolutions of the Board (Policy 4.14.2), and shall be accountable to the Board therefor.

4.7.3.8    The CFO shall be accountable to the Board.

4.7.3.9    The Board shall monitor the performance of the CFO (e.g., Policy 4.21.3).

| **4.7.4** | **Chief Mission Officer** |

4.7.4.1    The Chief Mission Officer (CMO) shall, on behalf of the President, supervise fundraising activity of the national office according to policies established by the Board of Directors of the Synod. (Bylaw 3.4.3.6; Policy 5.6)

| **4.8** | **Designation of Interim Persons** |

4.8.1.1    The Board shall update, in its September meeting following each convention of the Synod and as required, its Designation of Interim Persons, which shall specify who shall temporarily perform the duties of each of following upon the resignation, temporary or permanent disability, disposition, or death of the officeholder:

- Secretary
- Chief Administrative Officer
- Chief Financial Officer
- Chief Mission Officer

4.8.1.2    Designations shall have in view the necessary skills required to reasonably assure that the primary functions will continue during a short-term vacancy.

4.8.1.3    Designation of Interim Persons constitutes a short-term contingency arrangement until the officer is able to return, or, if necessary, until a permanent appointment is made.

4.8.1.4    The Board may redesignate the Interim Person for an office at any time, including when the Interim Person has been activated.

4.8.1.5    If the office requires membership in a Synod congregation and/or Synod roster status, the individual identified to serve during the interim shall satisfy said requirement.

| **4.9** | **Administrative Team** |

4.9.1.1    The President has certain ecclesial and administrative responsibilities for the Synod. The Board of Directors has responsibility for the property, business, and legal affairs of the Synod.

Case 1:23-cv-01042-DAE     Document 13-5     Filed 04/03/24     Page 43 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 43 of 122

The Lutheran Church—Missouri Synod | Board of Directors Policy Manual

4.9.1.2   The Administrative Team, under the leadership of the President and including the First Vice-President, the Secretary, the Chief Financial Officer, the Chief Administrative Officer, and the Chief Mission Officer assists the President and the Board of Directors in carrying out their respective responsibilities for oversight, supervision, management, and coordination of the operations of the national office and according to the triennial emphases adopted by conventions of the Synod. (Bylaw 3.5.2)

4.9.1.3   Members of the Administrative Team shall assist the Board of Directors in carrying out its responsibilities by completing assignments made to them by the Board (Bylaw 3.3.4.4 [c]).

4.9.1.4   The Board's coordination and oversight of financial matters concerning the corporate and trust entities comprising the Synod will be through the Chief Financial Officer.

4.9.1.5   The Board's coordination of program and service matters will be through the Chief Administrative Officer. In carrying out these responsibilities, the Chief Administrative Officer shall:

(a)  Carry out the decisions of the Board of Directors as it may direct.

(b)  Assist the President, as he directs, in carrying out his responsibilities.

(c)  Meet regularly with the leadership of the mission offices, commissions, and synodwide corporate entities as the liaison with the Board of Directors.

(d)  Provide leadership to assure that the mission and ministry activities of the church are being carried out in a coordinated, cooperative, and efficient manner.

4.9.1.6   The Board expects the Administrative Team to meet regularly for its members to coordinate their respective management responsibilities.

4.9.1.7   The President shall report to the Board on the activities of the Administrative Team (Bylaw 3.3.1.2 [d]).

## 4.10   Operations Team

4.10.1.1   The Operations Team, consisting of the Chief Mission Officer, the Chief Administrative Officer, and the Chief Financial Officer and convened by the Chief Administrative Officer, assists the President and Board in carrying out their respective responsibilities for oversight, supervision, management, and coordination of the operations of the national office and according to the triennial emphases adopted by conventions of the Synod. (Bylaws 3.5.2–3.5.2.1)

4.10.1.2   The Chief Administrative Officer shall report to the Board on the activities of the Operations Team.

## 4.11   Additional Officers and Staff

4.11.1.1   To carry out the business and legal affairs of the Synod, the Board of Directors may appoint other officers subject to the approval of the President. (Bylaw 3.3.4.9)

4.11.1.2   The Board of Directors may also appoint staff as required. (Bylaw 3.3.4.9)

Exhibit 5 to Defendants' Motion to Dismiss
Page 44 of 122
Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 44 of 122

The Lutheran Church—Missouri Synod                    **Board of Directors Policy Manual**

| 4.12 | **Designating the Board's Representation on Synodwide Corporate and Trust Entities** |
|---|---|

4.12.1.1    The Chief Financial Officer serves as the Board's designee if the Board's representation is not otherwise identified, as a nonvoting member of the governing boards of the following. As to these, the Board may designate its representation at any time (Bylaws 3.3.4.6 and 3.4.1.3 [e]):

- The Lutheran Church—Missouri Synod Foundation (Bylaw 3.6.5.2.1)
- The Lutheran Church Extension Fund—Missouri Synod (Bylaw 3.6.4.3)
- Concordia Plans / Concordia Plan Services (and its investment committee) (Bylaw 3.7.1.3)
- Concordia Publishing House (Bylaw 3.6.3.1)

**4.12.2    Alternate Representation**

4.12.2.1    As opposed to an appointment, which refers to a formal process placing an individual into a definite (triennial) term, a designation does not connote a fixed term of service. The Board's designation of representation can, therefore, be adjusted at any time, by the Board itself or, in the case of urgent necessity, by its executive committee.

4.12.2.2    The Board may at any time resolve to change its representation, which change shall be acknowledged by the respective entity upon receipt of notice of the Board's action.

4.12.2.3    The Board's representative shall be a member of a member congregation of The Lutheran Church—Missouri Synod and shall exhibit an ability to comprehend and evaluate the activities of the board and entity to which assigned, for reporting to the Board, and to communicate on behalf of the Board with the aim of strategically coordinating the activities of Synod and its synodwide corporate entities.

**4.12.3    Designation by Chief Financial Officer**

4.12.3.1    The Board delegates to the Chief Financial Officer the authority to act on the Board's behalf, under the authority granted the board in Bylaw 3.3.4.6 [d], to designate representatives where prudent (CCM Op. 20-2925).

4.12.3.2    The Board shall be informed of such designation.

**4.12.4    Reporting by Representatives and Board Monitoring**

4.12.4.1    The Board's representatives shall report to the Board as needed or requested by the Board or its Chairman. They shall especially report to each September meeting the respective entity's major strengths and weaknesses, opportunities, and threats, along with an evaluation of the governance of the entity and its alignment with the broader mission, ministry, and long-term welfare of the Synod (corporate and congregational).

4.12.4.2    Following a national convention of the Synod, the Board's representative(s) are to report specially to the Board's September meeting regarding the representative's service to that point, issues encountered in that service, and suggestions for the Board as it reviews its designations. At the September meeting, the Board, having reviewed the reports and consulted with the Chief Financial Officer, may request its Personnel Committee to review the assignment of the Board's representation or develop lists of candidates for Board

Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 45 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 45 of 122

The Lutheran Church—Missouri Synod                      Board of Directors Policy Manual

representation in any or all of the above, in preparation for appointments to be made at the Board's November meeting.

### 4.12.5    Service of the Chief Financial Officer on Other Boards

4.12.5.1    The Chief Financial Officer (CFO) also serves on a number of other boards, beyond those specified in the Bylaws of the Synod. As to these, the CFO has the option of sending a designee (2019 Res. 9-09).

## 4.13    Requests for Minutes of the Board of Directors, Mission Boards, or Commissions of the Synod

4.13.1.1    The Office of the Secretary is responsible for furnishing, upon request, copies of the minutes of boards and commissions according to a policy established by the Board of Directors. (Bylaw 1.5.3.5)

4.13.1.2    The secretary of each board or commission of Corporate Synod, or other designated person, shall forward to the Secretary of the Synod within four weeks of the meeting an electronic version of the pending minutes of every regular or special meeting of the board or commission, excluding executive sessions. This version should be clearly marked as "pending" or "unapproved."

4.13.1.3    Within one week of approval of the pending minutes at the next meeting of the board or commission, a final approved version, excluding executive sessions, is to be submitted electronically to the Office of the Secretary by the designated person.

4.13.1.4    The Secretary's office will distribute minutes as requested in the most expedient manner.

4.13.1.5    Requests for minutes of meetings prior to July 2007 shall be referred to the individual commission or the Office of the Secretary of the Synod.

## 4.14    Delegation and Retention of Board Duties

4.14.1.1    The Board retains all its authority under the Synod's Constitution, Bylaws, and Articles of Incorporation (Const. Art. XI E 2; Bylaw 3.3.4; Art. of Inc. V) but delegates to its Chief Administrative Officer the exercise of its authority as stated in its Policies.

(a)    The Board shall not assign or delegate to the Chief Administrative Officer responsibilities or duties specifically reserved in the Constitution or Bylaws of the Synod or Policy section 4.14.2 to the Board or assigned to committees, consultants, other Synod boards or commissions, and Synod or Board officers.

(b)    The Chief Administrative Officer may delegate to Synod departments responsibility to carry out tasks in accordance with Board policies.

(c)    Any other party operating under the authority of the Board shall generally receive that authority from the Chief Administrative Officer or a person designated by him.

(d)    The Director of Internal Audit and Director of Human Resources, however, shall have direct access to the Board and its Audit Committee and Personnel Committee respectively.

Case 1:23-cv-01042-DAE     Document 13-5     Filed 04/03/24     Page 46 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 46 of 122

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

| 4.14.2 | Matters Requiring Board Action |
|---|---|

4.14.2.1     Where specific Board actions are required, the Chief Administrative Officer shall ordinarily bring recommendations to the Board for action.

4.14.2.2     The following matters require Board action:

(a) Budgets

(1) Approval of the Annual Mission and Ministry Operating Budget and the unit level Strategic Plans of the Synod, including its allocation to boards, offices, commissions, and departments within the context of a triennial common vision.

(2) Approval of the annual capital budget for the Synod.

(3) Approval of spending deviations from the budgets as stipulated in Policy 5.1.

(4) Approval of budgets for Synod conventions, convocations, gatherings, and celebrations.

(b) Accounting

(1) Designation of unrestricted net assets

(2) Release of board-designated assets outside of standing release conditions established by the Board (Policy 5.2)

(3) Responses to requests for inspection of financial records which the Chief Administrative Officer or Chief Financial Officer deem as not needing to be provided pursuant to Bylaw 1.5.4.

(c) Financial Transactions

(1) Approval of lines of credit for borrowing by Corporate Synod if:

(i)   greater than 15% of the operating budget;

(ii)  a balance remains on the line of credit more than 12 consecutive months;

(iii) established with an institution other than Lutheran Church Extension Fund; or

(iv)  obtained without the joint signature of the Chief Financial Officer and Chief Administrative Officer.

Establishment, renewal, and draws on lines of credit shall be reported to the Finance and Audit Committee.

(2) Approval of any other indebtedness by Corporate Synod.

(3) Approval of guarantees of indebtedness of Agencies of the Synod.

(4) Approval of authorizations to sign contracts and to deal in securities.

(d) Audit (each of the following, upon Finance and Audit Committee recommendation)

(1) Selection of outside audit firm.

Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 47 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 47 of 122

(2) Official receipt of audited financial statements upon recommendation of the Board's Audit Committee.

(3) Appointment of the Executive Director of Internal Audit.

(4) Changes in the Audit Committee Charter.

(5) Changes in the Internal Audit Charter.

(e) Human Resources (each of the following, upon Personnel Committee recommendation)

(1) Setting or changing the salary classifications and ranges for Corporate Synod.

(2) Setting or changing the salaries of elected and appointed Officers of the Synod.

(f) International Center Facilities

(1) Changes in the International Center Ownership Agreement, including the composition of the International Center Facilities Committee (Policy 6.14).

(2) Approval of additional land, new buildings, or space expansions on the International Center properties or off-site leased facilities.

(g) Administrative Policies

(1) In consultation with the President, changes in the position description of the Chief Administrative Officer or the Chief Financial Officer.

(2) Submission of Board overtures to the Synod convention.

(3) Selection of the location for LCMS Regular Conventions upon recommendation of the Convention Manager [Bylaw 3.1.9 (j)(2)] and the Chief Administrative Officer.

(4) Changes in the Designation of Interim Persons (Policy 4.8) if the Chief Administrative Officer, Chief Financial Officer, Chief Mission Officer, or Secretary is unable to carry out responsibilities.

(h) Legal and Governmental

(1) Selection of general counsel for the Synod for a three-year renewable period. Such selection to take place at the first Board meeting of the calendar year after each regular LCMS Convention with the engagement or renewal to begin at the beginning of the subsequent fiscal year (July).

(2) Selection of special counsel for legal matters of synod-wide significance.

(3) Approval to initiate any and all lawsuits, arbitrations, or administrative proceedings on behalf of the Synod or Corporate Synod. In cases of emergency, the Executive Committee of the Board may make such decisions. In an instance of emergency where time is of the essence, the executive committee shall make a decision which shall be subject to ratification by the BOD.

(4) Approval of responses to litigation which may have broad Synod impact.

Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 48 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 48 of 122

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

       (5)  Approval of individual legal claim settlements in excess of $100,000.

       (6)  Approval of new corporations (Bylaw 3.6.1.1 and Policy 6.12).

       (7)  Review and adoption of administrative-legal policies for Corporate Synod and agencies of the Synod

4.14.2.3      The above list is not exhaustive. Omission from the list above of an item indicated elsewhere in these Policies, in resolutions of the Board, or in the Constitution, Bylaws, or Resolutions of the Synod, to require action of the Board shall not be construed as negating said requirement.

## 4.15      Operating and Capital Budgets

### 4.15.1      Authority

4.15.1.1      The board serves the Synod (organization of congregations) as its legal representative and as custodian of all property, and "upon it is incumbent the general management and supervision of the business affairs of the Synod," etc. This includes, without limitation, determining general operating budgets, approving program budgets, allocating resources, monitoring performance, coordinating administration of convention resolutions, and maintaining policies. (Bylaw 1.4.4)

4.15.1.2      The Board of Directors "shall allocate funds to the boards, commissions, councils, officers, and departments of Corporate Synod and holds them responsible therefor" (Bylaw 3.3.4.5 [a–c]). In this respect it supervises the business and legal aspects of Corporate Synod's work, and in this respect it shall approve:

      (a)  the annual Mission and Ministry Operating Budget for Corporate Synod, which shall:

       (1)  indicate planned revenue and expenditure as allocated to the boards, offices, commissions, and departments of the Synod

       (2)  specify maximum approved headcount for each board, commission, council, office, and department of Corporate Synod

       (3)  reflect a common triennial vision within the Constitutional and bylaw objectives of the Synod

       (4)  relate to three years prior performance and three years projected revenue and expenditure in relation to unit-level strategic plans.

      (b)  the annual capital budget for Corporate Synod, which shall:

       (1)  relate to a rolling, thirty-year analysis, fifteen years past and fifteen years projected, of facility needs, utilization, and liabilities

      (c)  budgets for Synod conventions, convocations, gatherings, and celebrations

      (d)  deviations from adopted budgets as stipulated in Policy 5.1.

### 4.15.2      Ends

4.15.2.1      The operating and capital budgets shall prudently apply the means available to the specific tasks assigned the Synod by the Constitution, Bylaws, and resolutions of the Synod, including triennial emphases (priorities). (cf. Bylaw 3.3.4.5 [b, c])

Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 49 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 49 of 122

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

4.15.2.2    The budgets and budget monitoring mechanisms shall support accountability to the congregations of the Synod for all revenues received.

**4.15.3        Board means**

4.15.3.1    The Board shall establish policies and guidelines for budget preparation (Bylaw 3.3.4.5 [b][1]).

4.15.3.2    The budget and budget monitoring shall:

(a)  distinguish management and general (M&G) expense from ecclesial service and program expense, demonstrating the appropriateness of the level of M&G spending and its relation to ecclesial services and programs.

(b)  distinguish principal restricted and unrestricted sources of revenue and related trends.

(c)  distinguish principal areas of expenditure:

(1)  relating them to convention directives initiating the activity

(2)  relating them to restricted and unrestricted sources of revenue applied

(d)  indicate proposed maximum headcounts for each board, commission, council, office, and department of Corporate Synod.

(e)  indicate the appropriation of unrestricted revenues to particular convention-directed activities or to management and general expense that is in excess of budget by more than $50,000 on a unit level (monitoring) in a given fiscal year

(f)  indicate the accumulated appropriation of excess unrestricted revenues in excess of budget to particular activities or to M&G expense.

(g)  include provisions for:

(1)  Honoraria or other appropriate means to recognize the service of the elected Synod vice-presidents 2–6, such amount to be recommended by the Board of Directors Personnel Committee.

(2)  An allowance for the President of the Synod for entertainment and vehicle expenses, such amounts to be recommended by the Board of Directors Personnel Committee.

4.15.3.3    The following functions or activities established by the Synod national convention will be fully funded through the Synod budget process using unrestricted income or assessments. These activities will not have the need to raise funds or accept restricted funds except as approved by the Board of Directors or by the action of the Synod national convention:

(a)  Commission on Constitutional Matters

(b)  Commission on Theology and Church Relations;

(c)  ecclesiastical supervision activities;

(d)  doctrinal review;

(e)  meetings and events of the Synod Praesidium, Council of Presidents, or Board of Directors;

Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 50 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 50 of 122

**The Lutheran Church—Missouri Synod**                    **Board of Directors Policy Manual**

          (f)   conflict resolution activities;

          (g)   Synod national convention;

          (h)   employment costs (salary/benefits/etc.) of elected officers and support staff.

4.15.3.4      The Board shall adopt the annual budget (Bylaws 3.3.4.5[b][2]).

4.15.3.5      Synodwide corporate entities shall consult with the Synod's Board of Directors prior to making any grants to or for the mission offices or commissions of Corporate Synod.

4.15.3.6      The Synod's Board of Directors shall approve the usage of any undesignated surplus funds released to the Synod by synodwide corporate entities.  The proposed usage will normally be made in the budgeting process.

### 4.15.4      Executive means and limitations

4.15.4.1      The Chief Financial Officer, in consultation with the Synod's officers, the President of the Foundation, the International Center Facilities Committee, the Committee for Human Resources and the executive directors of the mission offices, commissions, and departments, is responsible for presenting to the Synod's Board of Directors for approval at its May meeting the annual operating and capital budgets for Corporate Synod and for necessary adjustments in the course of the year. (See Policy section 5.1)

4.15.4.2      At the February Board meeting following each convention of the Synod, the Administrative Team shall evaluate and propose revisions to a three-year strategic plan developed in response to the constitutional and bylaw objectives of the Synod and the mission emphasis and priorities adopted by the convention.

4.15.4.3      Annual budget proposals and budget performance reporting shall be related consistently to the three-year strategic plan.

4.15.4.4      Management shall not provide the "Program Budget" outside the Board and necessary staff or provide summary budget information for publication in the official periodicals of the Synod without first providing it to the Board.

### 4.15.5      Mission Advancement Support Rate

4.15.5.1      The Chief Financial Officer shall:

          (a)   In connection with the annual program budget, set an effective and equitable support rate (percentage) applicable to all charitable gifts (except as otherwise specified in [b] below), grants, and bequests, including district pledge receipts.

             (1)   Such rate shall be at or below the limit of 'prudent' as defined by donor advocacy groups such as the Better Business Bureau's Wise Giving Alliance, Charity Navigator, and GuideStar, but which is sufficient to fund the Mission Advancement unit as they provide fund-raising and donor care services.

             (2)   In determining the annual support rate, the Chief Financial Officer shall take into account planned Mission Advancement expenditures and historical performance and prudent projections of sources of revenue subject to the support rate.

          (b)   Set, as needed, an effective and equitable "specific natural disaster response" support rate (percentage) applicable to gifts resulting from appeals issued in

Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 51 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 51 of 122

The Lutheran Church—Missouri Synod                          **Board of Directors Policy Manual**

response to a specific natural disaster (such as are not accounted for in the anticipated revenue and spending plan). Such rate is not to exceed the general support rate as defined in [a] above.

| 4.15.6 | **Operating Budget Strategy Templates** |
|---|---|

4.15.6.1    Executive Directors and Program Managers of Corporate Synod, to include the Office of the President (OTP), the Offices of the Chief Mission Officer (CMO), Chief Financial Officer (CFO), and Chief Administrative Officer (CAO), shall submit a detailed strategic plan from which their budget will be built.

4.15.6.2    The plan shall outline the strategy and tactics that will be implemented and supported by the budget request for the upcoming fiscal year.

4.15.6.3    Such plans shall be delivered to the CAO, as staff for the Board of Directors, prior to the same Board of Director meeting at which the Chief Financial Officer submits the annual budget for approval.

4.15.6.4    The Governance Committee of the Board of Directors shall establish and review, on at least a triennial basis, the content to be included in the strategic plans.

| 4.15.7 | **Monitoring and convention communication** |
|---|---|

4.15.7.1    The Board shall regularly give account of its supervision and oversight to the congregations of the Synod through publication of its minutes, through reports in Synod periodicals and on its webpage, so that congregations can be informed as to the stewardship exercised on their behalf by Synod's governing boards, of the effectiveness of management, and of the broad financial situation of the Synod and its agencies.

4.15.7.2    The Board shall report with the adoption of each budget (after May meetings) on the budget's attempt to further the work assigned to the Synod by the convention, the level of management and general expense, the revenue expectations built into the budget, including designated and undesignated sources, and the strategic budget outlook. The report should guide congregations and districts in their planning to support work together through the Synod.

4.15.7.3    The Board shall report at the conclusion of each fiscal year (after November meetings) on the performance of the Board and operations and administrative teams in managing to budget and to revenue. (Bylaw 1.4.4[c])

4.15.7.4    The Board and management shall supervise management's compliance with Bylaw 1.5.4, regarding full financial disclosure, with 2010 Res. 4-03's requirement of an annual November statement, in layman's terms, of the financial position of the Synod.

4.15.7.5    The Board shall annually review the Chief Financial Officer's November report on the financial position of the Synod and provide timely recommendations for the next year's report (2010 Res. 4-03).

| 4.16 | **Convention Budget and Location** |
|---|---|

4.16.1.1    The Board approves the convention budget presented by the convention manager (Chief Administrative Officer) and approves the district levy per confirmed member (Bylaw 3.1.9 [d][1]).

Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 52 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 52 of 122

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

| 4.16.1.2 | The Board, in consultation with the convention manager, establishes the sites of Synod conventions, giving preference to St. Louis when logistically and economically feasible (Bylaw 3.1.9 [j][2]). |

## 4.17        Audit

### 4.17.1        Board of Directors Audit Committee Charter

*Purpose*

4.17.1.1    The primary function of the Audit Committee is to assist the Board of Directors in fulfilling its supervision and oversight responsibilities for the financial reporting process, the system of internal control that management and the Board of Directors have established, and all audit processes of The Lutheran Church—Missouri Synod and related corporate entities.

*Authority*

4.17.1.2    The Audit Committee has the authority to conduct or authorize investigations into any matters within its scope of responsibility. It is empowered to:

(a) Make recommendations to the full Board regarding the appointment and compensation of any public accounting firm engaged by Corporate Synod.

(b) Supervise the work of and pre-approve all auditing and non-audit services provided by public accounting firms engaged by Corporate Synod.

(c) Retain independent counsel, accountants, or others to advise the committee or assist in the conduct of an investigation.

(d) Seek any information it requires from employees or external parties.

(e) Meet with Synod officers, management, the external auditors, the internal auditors, or outside counsel, as necessary.

*Composition*

4.17.1.3    The Audit Committee function has been assigned to the Finance and Audit Committee of the Board. Members, in regard to their function as the Audit Committee, shall be independent (i.e., free of any relationship that could influence his/her judgment as a committee member).

4.17.1.4    The committee may consult with an independent financial expert on special topics.

*Meetings*

4.17.1.5    The Audit Committee will meet at least semi-annually, with authority to convene additional meetings, as circumstances require. All committee members are expected to attend each meeting, in person, or via telephone or video conference.

4.17.1.6    The committee will invite members of management, internal auditors, external auditors, or others to attend meetings and provide pertinent information, as necessary.

4.17.1.7    It will conduct executive sessions with external auditors, the Executive Director of Internal Audit, and management, as necessary.

Case 1:23-cv-01042-DAE     Document 13-5     Filed 04/03/24     Page 53 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 53 of 122

**The Lutheran Church—Missouri Synod**                    **Board of Directors Policy Manual**

4.17.1.8     Meeting agendas will be prepared and provided in advance to members, along with appropriate briefing materials.

4.17.1.9     Minutes will be prepared and presented to the Board of Directors.

### *Responsibilities – Corporate Synod*

4.17.1.10    The Audit Committee will carry out the following responsibilities on behalf of the Board in performance of its supervisory responsibilities:

(a) External Audit

(1)  Make recommendations to the Board regarding the engagement of external auditors for the Synod.

(2)  Review the external auditors' proposed audit scope and approach, including coordination of audit effort with Internal Audit, and pre-approve any non-audit services provided by the external auditors, including tax services, before the services are rendered.

(3)  Review and confirm the independence of the external auditors by obtaining statements from the auditors on relationships between the auditors and the company, including non-audit services, and discussing the relationships with the auditors.

(4)  On a regular basis, meet separately with the external auditors to discuss any matters that the committee or auditors believe should be discussed privately.

(5)  Review with management and the external auditors, upon completion of their financial statement audit, the audit results. In the event the opinion to be rendered on the financial statements is other than unmodified, this review must be completed prior to the public release of the financial statements. This review should include:

(i)   The Synod's annual financial statements and related notes to ensure they are complete and consistent with information known to committee members.

(ii)  The external auditors' audit of the financial statements and their report thereon.

(iii) Significant accounting and reporting issues, including complex or unusual transactions and highly judgmental areas, and recent professional and regulatory pronouncements, and understand their impact on the financial statements.

(iv)  The auditor's qualitative judgments about the appropriateness, not just the acceptability, of accounting principles and financial disclosures and how aggressive (or conservative) the accounting principles and underlying estimates are.

(v)   The scope of the external auditors' review of internal control over financial reporting; the adequacy and effectiveness of those internal

Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 54 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 54 of 122

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

controls, including computerized information system controls and security.

(vi) Significant adjustments proposed by the external auditors.

(vii) Unadjusted audit differences identified by the auditors that were determined by management to be immaterial, both individually and in the aggregate, to the financial statements taken as a whole.

(viii)        Any significant changes required in the auditors' audit plan.

(ix) Any serious difficulties or disputes with management encountered during the course of the audit.

(x) Any significant findings and recommendations made by the external auditor, together with management's responses to them.

(xi) Anything else about the audit procedures or findings that generally accepted auditing standards require the auditors to discuss with the committee.

(xii) Ensure the opportunity for the external auditors to meet with the entire Board of Directors, as needed, is not restricted in any way.

(6) Review the performance of the external auditors. Solicit comments from management regarding the responsiveness of the external auditors to the Synod's needs and annually recommend to the Board of Directors the retention or replacement of Corporate Synod's external auditors, providing a written summary of the basis for the recommendation.

(b) Internal Audit

(1) Review and recommend to the Board of Directors the appointment, replacement, or dismissal of the Executive Director of Internal Audit.

(2) Annually review the Synod's Internal Audit Department Charter (Section 5.3.3) and propose changes to the Board of Directors as necessary.

(3) Review and approve the annual audit plan and all major changes to the plan. Ensure the internal and external auditors coordinate their audit efforts to assure the completeness of coverage, reduction of redundant efforts, and the effective use of audit resources.

(4) Review with the Executive Director of Internal Audit the following:

(i) The activities, staffing requirements, organizational structure, and the related budget request of the Internal Audit Department.

(ii) Significant findings on internal audits performed during the year and management's responses to them.

(iii) Any difficulties encountered while conducting the internal audits. Ensure there are no unjustified restrictions or limitations on the scope of their work or access to required information.

(iv) A progress report on the Department's annual audit plan, with appropriate explanations for deviations from the approved plan.

Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 55 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 55 of 122

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

(5) Annually review the performance of the Executive Director of Internal Audit in accordance with Synod policy

(6) On a regular basis, meet separately with the Executive Director of Internal Audit to discuss any matters that the committee or internal audit believes should be discussed privately.

(c) Reporting Responsibilities:

(1) Regularly report committee activities and significant issues discussed at each meeting to the full Board of Directors and make appropriate recommendations.

(2) Provide an open avenue of communication between internal audit, the external auditors, and the Board of Directors.

### Responsibilities – Synodwide Corporate and Trust Entities

4.17.1.11    The Audit Committee will carry out the following responsibilities on behalf of the Board in performance of its oversight responsibilities:

(d) Confirm that synodwide corporate and trust boards are exercising their fiduciary responsibilities to donors, investors, beneficiaries, and constituents through their respective audit committees or the board as a whole, functioning as the audit committee.

(e) Confirm that synodwide corporate and trust boards or their audit committees are meeting with external auditors at least annually.

(f) Review with management of synodwide corporate and trust entities and/or the Executive Director of Internal Audit any instances when the external auditors render an opinion on the financial statements that is other than unmodified.

(g) Review with the management of the respective entities and/or the Executive Director of Internal Audit all instances of significant deficiencies or material weaknesses in internal controls identified and communicated to the respective boards by the external auditors. Evaluate the adequacy of management's response and any corrective actions taken or planned.

(h) Inquire of management as to any instances of repeat findings contained in the external auditors' letter to management and the board. Ascertain why corrective action has not been taken by management.

### Responsibilities – Districts

4.17.1.12    The Audit Committee will carry out the following responsibilities on behalf of the Board in performance of its oversight responsibilities:

(a) Confirm that Synod districts are exercising their fiduciary responsibilities to donors, investors, and constituents through their respective audit committees or the board as a whole, functioning as the audit committee.

(b) Review with the Executive Director of Internal Audit any instances where the district auditors (internal or external) render an opinion on the financial statements that is other than unmodified.

Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 56 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 56 of 122

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

(c) Review with the Executive Director of Internal Audit any instances where the district auditors (internal or external) reported significant deficiencies or material weaknesses in internal controls.

### Responsibilities – Seminaries and Universities

4.17.1.13    The Audit Committee will carry out the following responsibilities on behalf of the Board in performance of its oversight responsibilities:

(a) Confirm that the LCMS Office of Pastoral Education (OPE) and the Concordia University System (CUS) audit committee is reviewing the annual audit reports, communications received from external auditors, and the related responses of the seminaries and universities.

(b) Review with the management of the OPE and CUS any instances when the external auditors render an opinion on financial statements of the educational institutions that is other than unmodified.

(c) Review with the management of OPE and CUS all instances of significant deficiencies or material weaknesses in internal controls identified and communicated to the schools by their external auditors. Evaluate the adequacy of management's response and any corrective actions taken or planned.

### Responsibilities – Other

4.17.1.14    The Audit Committee will carry out the following responsibilities on behalf of the Board in performance of its supervisory and oversight responsibilities:

(a) Review and assess the adequacy of the committee's charter annually, requesting Board approval for proposed changes. Consider changes that are necessary as a result of new laws or regulations.

(b) Confirm annually that all responsibilities outlined in this charter have been carried out.

(c) Institute and oversee special investigations in accordance with the "LCMS Policy on Suspected Financial and Organizational Misconduct".

(d) Inquire of management, the Executive Director of Internal Audit, and the external auditors about significant risks and exposures facing Corporate Synod; assess the steps management has taken or proposes to take to minimize such risks to the organization. Periodically review compliance with such steps.

(e) Review policies and procedures covering officer and key employee expense accounts and perquisites, including excess benefit transactions and their use of corporate assets. Consider the results of any review of these areas by the internal or external auditors.

(f) Perform other activities as assigned by the Synod's Bylaws or the Board of Directors.

Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 57 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 57 of 122

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

### 4.17.2          Synod's Internal Audit Department Charter

#### *Internal Audit Department Role*

4.17.2.1        The Synod's Internal Audit Department was established to assure the Board of Directors that the required annual financial statement audits are being performed for all agencies of the Synod. Through the Internal Audit Department, the Board shall receive copies or summaries of all audit reports.

4.17.2.2        In addition, the department provides Corporate Synod and its agencies with independent, objective assurance and consulting services, designed to add value and improve key business systems, processes, and internal controls.

#### *Audit Planning*

4.17.2.3        The Executive Director of Internal Audit is responsible for properly managing the department so that (1) audit work fulfills the purposes and responsibilities established herein, and (2) resources are efficiently and effectively employed. Annually, the Executive Director shall prepare and submit to the Audit Committee for its approval the audit plan/objectives for the upcoming fiscal year, including the agencies it will audit. This audit plan is to be developed using a risk-based approach. The objectives, once approved by the committee, will be used as a basis for the development of the Internal Audit Department's annual budget, determining staffing requirements, and scheduling of specific audit engagements. At each meeting of the committee, the Executive Director will provide a status report on the progress achieved in meeting those objectives. Any deviations to the approved plan/objectives will be reported to the committee in the status reports.

#### *Organization*

4.17.2.4        To promote independence and enable auditors to maintain objectivity to render unbiased judgments, the Internal Audit Department shall be accountable to the Board of Directors through the Audit Committee. The Executive Director shall have the opportunity to meet with the committee at each of its regularly scheduled meetings or at specially scheduled meetings to discuss the results of audits or matters determined to be of interest to the committee. The Executive Director shall have the opportunity at each of the committee's meetings to meet with the committee as a whole without the presence of management personnel, should the need arise. Administratively, to afford the Internal Audit Department appropriate support to accomplish its day-to-day activities, the Executive Director reports to the Chief Financial Officer of the Synod.

#### *Scope of Audit Activities*

4.17.2.5        The scope of internal audit activities includes both assurance and consulting services. As a result, audit coverage will encompass financial statement audits and independent reviews and evaluations of management operations and activities to appraise:

> (a)  Measures are taken to safeguard assets, including tests of existence and ownership and evaluation of internal controls as appropriate;

> (b)  The reliability, consistency, and integrity of financial and operating information;

> (c)  Compliance with policies, plans, standards, laws, regulations, and contracts;

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

(d) Economy and efficiency in the use of resources;

(e) Effectiveness in the accomplishment of the mission, objectives, and goals established for the Synod's operations and projects.

4.17.2.6       Audit activities will be coordinated to the extent possible with the external auditors to avoid duplication of effort, enhance audit efficiency, and maximize audit coverage.

4.17.2.7       In addition, the department will assist, as appropriate in the investigation of suspected fraudulent activities in accordance with the LCMS Policy on Suspected Financial and Organizational Misconduct.

### Authority

4.17.2.8       To accomplish its activities, Internal Audit staff members are authorized to have full, free, and unrestricted access to any and all financial and administrative records, data files, computer programs, property, and personnel determined relevant to the performance of assigned engagements. All employees are requested to assist Internal Audit in fulfilling its roles and responsibilities. Internal Audit will have free and unrestricted access to the Chairman of the Board of Directors and the Audit Committee of the Board.

4.17.2.9       Internal Audit staff members will exercise discretion in the review of records to ensure the confidentiality of all matters that come to their attention. Documents and information given to Internal Audit during a review/audit will be handled in the same prudent and confidential manner as by those employees normally accountable for them.

### Reporting

4.17.2.10      A written report will be prepared and issued by Internal Audit at the conclusion of each audit engagement and will be distributed as appropriate. The audit results will also be communicated to the respective board/audit committee of the auditee. Management of the respective auditee is responsible for either planning or taking corrective action on recommendations made or deficient conditions reported by the auditor. Management's response should include a timetable for anticipated completion of action to be taken and an explanation for any recommendations not addressed. Internal Audit shall be responsible for appropriate follow-up on audit findings and recommendations. All significant findings will remain in an open issues file until cleared by the Executive Director of Internal Audit.

### Independence

4.17.2.11      The internal audit activity shall remain free from interference by any element in the organization, including matters of audit selection, scope, procedures, frequency, timing, or report content to permit maintenance of an independent and objective mental attitude necessary in rendering reports. Any unwarranted restrictions on internal audit scope, communications, access, and resources shall be reported by the Executive Director to the Audit Committee.

4.17.2.12      In performing their functions, the Internal Audit staff members shall have no direct operational responsibility or authority over any of the activities reviewed. Accordingly, internal auditors will not develop or install systems or procedures, prepare records, make management decisions, or engage in any other activity that could be reasonably construed to compromise their independence. However, in connection with the complementary objectives of this audit function, Internal Audit will recommend

accounting and information system policies and procedures for approval and implementation by appropriate management. Therefore, internal audit review and appraisal do not in any way substitute for other activities or relieve other persons in the Synod and its agencies of the responsibilities assigned to them.

### Professional Standards

4.17.2.13    The rules of professional conduct and code of ethics of the Internal Audit Department shall be consistent with the professional standards promulgated by the American Institute of Certified Public Accountants and the Institute of Internal Auditors. Specifically, members of the Internal Audit Department will:

(a) Conduct all audit work leading to the expression of an opinion on financial statements in accordance with auditing standards generally accepted in the United States.

(b) Conduct all other types of audits not leading to the expression of an opinion on financial statements in accordance with professional standards.

(c) Exercise honesty, diligence, and responsibility in the performance of their work.

(d) Exhibit corporate loyalty in all matters pertaining to the business of the Synod and its agencies and not knowingly be a party to illegal activity or engage in acts that are discreditable to the profession or to the Synod and its agencies.

(e) Refrain from participating in any activity or relationship or accepting anything that may impair or be presumed to impair their unbiased professional judgment. This participation includes those activities and relationships that may be in conflict with the interest of the Synod and its agencies.

(f) Be prudent in the use and protection of information acquired in the course of carrying out the duties of the department and not use information obtained for any personal gain or in any manner that would be contrary to the law or detrimental to the welfare of the Synod or any of its components. Any requests of the department for financial or operational information other than that provided to units of the Synod during the normal course of operations of the department will be referred to the appropriate officials of the Synod and its agencies for determination and resolution.

(g) Use reasonable care to obtain sufficient factual evidence to support conclusions drawn and, in reporting, disclose all material facts known which, if not disclosed, could distort the reporting activities under review or conceal an act which is unlawful or contrary to existing policies.

(h) Engage only in those services for which they have the necessary knowledge, skills, and experience, and continually improve their proficiency and the effectiveness and quality of the department's services.

### Periodic Assessment

4.17.2.14    The Executive Director of Internal Audit should periodically assess whether the purpose, authority, and responsibility of the Internal Audit Department, as defined in this charter, continue to be adequate to enable the internal auditing activity to accomplish its objectives. The result of this periodic assessment should be communicated to the Audit

Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 60 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 60 of 122

The Lutheran Church—Missouri Synod                    **Board of Directors Policy Manual**

| 4.17.3 | **Regulations for Synod's Internal Audit Department** |

4.17.3.1    The Executive Director of Internal Audit is accountable to the Board through its Audit Committee and to other corporate and trust boards for services rendered to them.

4.17.3.2    Administratively, however, the Executive Director of Internal Audit reports to the Chief Financial Officer. In carrying out these responsibilities, the Chief Financial Officer shall:

(a)    Not engage outside auditors, appoint the Executive Director of Internal Audit, change the Internal Audit Charter, or approve the Internal Audit's Annual Plan without prior approval of the Board.

(b)    Not keep from the Board's Audit Committee the audit reports, management letters, and management's response to management letters of other corporate and trust entities of the Synod including summaries of audits of districts and educational institutions.

(c)    Not restrict direct access to the Board or its Audit Committee by the outside auditors or the Executive Director of Internal Audit.

4.17.3.3    The Executive Director of Internal Audit establishes audit policies and procedures which comply with generally accepted accounting and auditing principles and procedures as determined by the Financial Accounting Standards Board, the American Institute of Certified Public Accountants, and the Institute of Internal Auditors.

4.17.3.4    It shall be the duty of the Executive Director of Internal Audit to make reports directly to the Audit Committee when deemed appropriate.

| 4.18 | **Legal Policies for Corporate Synod and Subordinate Agencies** |

For corresponding policies applicable to separately incorporated agencies of the Synod, see Policy section 7.5.

### *Scope*

4.18.1.1    The Board of Directors, administrators, employees of Corporate Synod, other Synod members, and interested parties

### *Definitions*

4.18.1.2    **Agency**: An instrumentality other than a congregation or Corporate Synod, whether or not separately incorporated, which the Synod in convention or its Board of Directors has caused or authorized to be formed to further the Synod's objectives.

(a)    Agencies include each board, commission, council, seminary, university, college, district, Concordia Plan Services, and each synodwide corporate entity.

(b)    The term "agency of the Synod" does not describe or imply the existence of principal and agency arrangements as defined under civil law. (Bylaw 1.2.1[a])

4.18.1.3    **Corporate Synod**: See Bylaw 1.2.1 (d).

Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 61 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 61 of 122

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

4.18.1.4        **Synod**: See Bylaw 1.1.1 (v).

4.18.1.5        **Litigation**: Every proceeding before in a court, of record or involving any administrative agency, regulatory agency, or quasi-judicial agency, or other secular or governmental body, whether such court or agency be local, state, federal, or foreign, and including any arbitration proceeding.

4.18.1.6        **Claim**: A demand for relief and every circumstance where litigation is anticipated or reasonably likely to ensue, and includes investigations by law enforcement agencies, administrative agencies or any other investigation where litigation could result.

4.18.1.7        **Litigation brought against the Synod:** Shall include litigation in which Corporate Synod is named as a party or interested person, or in which a board, commission, committee, officer, volunteer, missionary, or employee of Corporate Synod is named as a party or interested person and is alleged to have been acting in their capacity as such or on behalf or for the benefit of Corporate Synod.

| **4.18.2** | **Engagement of Legal Counsel** |
|---|---|

*Purpose*

4.18.2.1        To identify the parties responsible for appointing legal counsel for The Lutheran Church—Missouri Synod

*Policy*

4.18.2.2        The Board has the power and duty under the LCMS Bylaws to engage legal counsel for the guidance of the Board and advice to the officers and agencies of the Synod.

4.18.2.3        The Board selects general counsel for the Synod for a three-year renewable period. Such selection generally takes place at the first Board meeting of the calendar year after each regular LCMS Convention with the engagement or renewal to begin at the beginning of the subsequent fiscal year (July). The Board may change this selection process if in the best interest of Synod.

4.18.2.4        Except for the Boards' reservation of the right to select special counsel for legal matters of synod-wide significance (BOD Policy 4.14.2), the Board otherwise delegates to the Chief Administrative Officer the authority to engage special counsel (BOD Policy 4.18).

4.18.2.5        If it is deemed appropriate in the judgment of the Executive Committee of the Board that a second opinion be obtained or that independent counsel represents the Synod in any case, the Executive Committee is authorized to engage such special counsel for that case.

4.18.2.6        All officers and executives shall work through the Chief Administrative Officer concerning the use of the Synod's general counsel or other legal counsel.

*Procedure*

4.18.2.7        The selection or renewal of general counsel shall follow a procedure developed by the Board of Directors.

| **4.18.3** | **Initiating Litigation** |
|---|---|

*Purpose*

4.18.3.1        The initiation of litigation, lawsuit, arbitration, or administrative proceeding must be approved by the LCMS Board of Directors.

§ 4: Board Governance Relationships (Boards, Commissions, and Officers)

Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 62 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 62 of 122

The Lutheran Church—Missouri Synod                           **Board of Directors Policy Manual**

### Policy

4.18.3.2    The Lutheran Church—Missouri Synod Board of Directors recognizes that any participation in litigation by the Synod, including by an agency of the Synod, may have an adverse effect on the Synod as a church organization, and that litigation must, therefore, be entered into only when it has been determined that such is likely to serve the best interests of the Synod and, when applicable, all of the Synod's avenues for conflict resolution have been exhausted.

4.18.3.3    No litigation proceeding shall be commenced by the Synod or any of its officers, executives, or staff without the prior approval of the Board of Directors, or in cases of emergency in which time does not permit obtaining a decision from the full Board, by the Executive Committee of the Board.

### Procedure

4.18.3.4    Notification of litigation should be made to:

The Lutheran Church—Missouri Synod
Chief Administrative Officer
1333 S. Kirkwood Road
St. Louis, MO 63122

or

via email to BOD@LCMS.org

4.18.3.5    Inquiries regarding the availability and use of Synod's legal counsel should be directed to the LCMS Chief Administrative Officer at 314-996-1350.

**4.18.4        Responding to Litigation**

### Purpose

4.18.4.1    To identify parties having authority and responsibility for responding to and monitoring litigation brought against the Synod and Corporate Synod.

### Policy

4.18.4.2    The LCMS Board of Directors recognizes that any response to litigation brought against the Synod or Corporate Synod may impact the Synod, its agencies, and members. Cooperation in such responses is therefore a necessity.

4.18.4.3    The Chief Administrative Officer shall report to the Board any litigation brought against the Synod.

4.18.4.4    The Chief Administrative Officer, in consultation with the Synod's general counsel and when necessary the Executive Committee of the Board, shall select legal counsel to represent the Synod in each case of litigation brought against the Synod or an agency of Corporate Synod. General counsel shall supervise all responses to litigation brought against the Synod, including without limitation all filings, discovery, and negotiating settlements. However, in the event the case is covered by insurance and the insurance carrier has the right and duty to select counsel, such right and duty shall be honored. In such cases, the Synod's general counsel will monitor all litigation and settlements provided by the insurance carrier's counsel.

Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 63 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 63 of 122

The Lutheran Church—Missouri Synod                    **Board of Directors Policy Manual**

4.18.4.5    General counsel shall provide in the Board's docket a written report of all pending cases including decisions by the Chief Administrative Officer or the Executive Committee of the Board on responses to litigation brought against the Synod. General counsel shall also provide to the Board on a confidential basis the terms of any settlements.

*Procedure*

4.18.4.6    Notification of litigation should be made to:

The Lutheran Church—Missouri Synod
Chief Administrative Officer
1333 S. Kirkwood Road
St. Louis, MO 63122

or

via email to BOD@LCMS.org

4.18.4.7    Inquiries regarding the availability and use of Synod's legal counsel should be directed to the LCMS Chief Administrative Officer at 314-996-1350.

### 4.18.5    Participation by the Synod as Amicus Curiae or in Support of a Member Congregation

4.18.5.1    It is suggested from time to time to the officers and various agencies of the Synod that the Synod, or an agency of the Synod, participate as an *amicus curiae* (or friend of the court) in judicial proceedings in which legal questions are presented involving issues in which the Synod has an interest. Other situations present the opportunity for the Synod to become involved through or on behalf of a member congregation(s) in addressing such issues before the courts.

4.18.5.2    A position of the Synod should in proper circumstances be developed or made known in judicial proceedings where legal principles are being formulated which will have a bearing upon the position of the Synod and/or its congregations in matters of public interest. The time available for a decision concerning whether or not to participate in judicial proceedings does not ordinarily permit an independent consideration by the entire Board of Directors of each situation.

4.18.5.3    The following policy applies to all agencies of the Synod:

(a)    Participation in judicial proceedings as *amicus curiae* or in support of a member congregation shall only be by the Synod and shall not be by any agency of the Synod.

(b)    The President, in consultation with available St. Louis based officers, i.e. First Vice-President, Secretary, Chief Financial Officer, Chief Administrative Officer, and Chief Mission Officer, is authorized to direct the participation of the Synod as amicus curiae, or in such other capacity as they might determine, in judicial proceedings when, in their judgment, such participation is justified on the basis of the following considerations:

(1)    The position of the Synod on the ultimate policy issues involved is sufficiently established to be formally and officially presented;

(2) The legal issues are such as to permit an exposition of the position of the Synod on the ultimate policy issues as well as the legal issues; and

(3) The importance and general applicability of the public issues involved warrant the expenditure of funds for the legal and other costs to be incurred.

(c) The Synod shall be represented in such actions by general counsel for the Synod, or by special counsel selected in accordance with Policy "Engagement of Legal Counsel for the Synod".

(d) The Chief Administrative Officer and/or General Counsel shall report to the Board each decision to participate in legal proceedings as amicus curiae, or in support of any member congregation.

### 4.18.6        Powers of Attorney for the Synod

4.18.6.1        The Synod shall not grant general powers of attorney.

4.18.6.2        Issuance of limited powers of attorney (POA) for the Synod, including its boards and commissions, is the responsibility of the Board of Directors.

4.18.6.3        The Board authorizes the President, First Vice-President, Secretary, Chief Financial Officer, and Chief Administrative Officer by majority vote to grant limited powers of attorney.

4.18.6.4        A limited power of attorney shall be restricted by its terms to the specific task to be accomplished by the specified persons to whom it is granted for the period of time required to accomplish the task, but not to exceed four years.

4.18.6.5        If a limited power of attorney is required for an action in a foreign country, the Chief Administrative Officer in consultation with the Chief Mission Officer shall request its issuance. The Chief Administrative Officer shall notify the Chief Mission Officer when the power of attorney is granted.

4.18.6.6        A limited power of attorney shall be granted to no less than two persons, acting jointly and not separately, unless the Chief Administrative Officer, after consultation with the Synod's legal counsel, authorizes it to be issued to one person due to special circumstances, such as limitations or requirements in the laws of a foreign country in which the power of attorney is to be used.

4.18.6.7        The designated attorneys-in-fact represent The Lutheran Church—Missouri Synod, Inc. and are directly responsible to the Board of Directors in the fulfillment of their responsibilities.

4.18.6.8        The written document evidencing the granting of a power of attorney shall be reviewed and approved by the Synod's general counsel.

4.18.6.9        The Chief Administrative Officer shall report to the Board the granting of any limited power of attorney.

### 4.19        Committee for Human Resources

4.19.1.1        The Committee for Human Resources has been established as an ad hoc committee of the Synod Board of Directors.

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

4.19.1.2      The Committee for Human Resources shall consist of the Chief Executives of the
              Concordia Plan Services, The Lutheran Church Extension Fund—Missouri Synod, The
              Lutheran Church—Missouri Synod Foundation, the Synod's Chief Mission Officer, the
              Chief Financial Officer, and the Chief Administrative Officer as voting members. The Synod
              Chief Administrative Officer chairs the Committee. Staff services shall be provided by the
              Executive Director of Human Resources.

4.19.1.3      The Committee for Human Resources shall meet at least semi-annually.

4.19.1.4      Human resources policies and procedures approved or recommended by the Committee
              shall conform to federal and state law and regulations and the provisions of the
              Constitution and Bylaws of the Synod.

### 4.19.2       Maintenance of Common Human Resources Policies and Procedures

4.19.2.1      The Committee for Human Resources shall discuss and adopt on behalf of the governing
              boards of Corporate Synod, The Lutheran Church Extension Fund-Missouri Synod,
              Concordia Plan Services, and The Lutheran Church—Missouri Synod Foundation common
              Human Resources policies and procedures for these agencies that are not reserved by the
              LCMS Board of Directors for its approval, as stated elsewhere in Board Policy.

4.19.2.2      All common policies and procedures adopted by the Committee for Human Resources
              shall be shared with the respective governing boards. Such policies shall clearly indicate
              their scope of application; namely, to Corporate Synod and its agencies and to the
              synodwide corporate/trust entities which comprise the Committee for Human Resources
              as set forth in Policy 4.19.1.2.

### 4.19.3       Review of General Human Resources Policies of the Synod

4.19.3.1      The Committee for Human Resources shall also regularly review and may from time to
              time recommend "General Human Resource Policies of the Synod" (Policy section 6.4) to
              the Synod Board of Directors to approve as required in Bylaw 1.5.5 which states:

              "Every agency shall operate under the general human resources policies of the Synod as
              provided by the Board of Directors of the Synod, in accordance with Bylaw 3.3.4.3.
              Specific policies under these general policies may be adopted by each agency's governing
              board in order to accommodate the unique character of its operations."

4.19.3.2      An "agency," as defined in Bylaw 1.2.1 (a), includes entities beyond agencies of Corporate
              Synod and the synodwide corporate entities served by LCMS Human Resources. The
              policies adopted by the Synod Board of Directors shall clearly define the scope of
              application, stating plainly whether the policies are to be generally applicable to all
              agencies as defined in Bylaw 1.2.1 (a) or applicable only to Corporate Synod and its
              agencies and/or other synod wide corporate entities.

4.19.3.3      Where proposed policies would apply beyond the entities represented on the Committee
              for Human Resources as set forth in Policy 4.19.1.2, the Committee shall request and
              review comments on the proposed policies, and any amendment thereto, from the other
              entities to which proposed policies would apply.

### 4.19.4       Relation of Committee to Participating Entities, Executives, and Staff

4.19.4.1      The respective governing boards shall be responsible for approving changes in the salary
              classifications of their employees and for changes in the salaries of their respective

Case 1:23-cv-01042-DAE     Document 13-5     Filed 04/03/24     Page 66 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 66 of 122

**The Lutheran Church—Missouri Synod**                    **Board of Directors Policy Manual**

officers. Each governing board reserves for itself, after consultation with the other governing boards, the responsibility for approving the salary ranges and changes in employee benefits. The Synod's Board of Directors approves the salaries of the Synod officers.

4.19.4.2     The Chief Administrative Officer of the Synod or the Executive Officer of a member agency shall be responsible for its respective Human Resources Department.

**4.19.5         Role of Chief Administrative Officer**

4.19.5.1     The Chief Administrative Officer is the Board's representative on the Committee. In carrying out these responsibilities, the Chief Administrative Officer shall:

> (a)  Not establish or change human resource policies and procedures in those areas reserved to the Board (Policy 4.14.2) without prior Board approval.
>
> (b)  Not allow Committee for Human Resources or management policies that conflict with applicable law and the provisions of the Constitution, Bylaws, or resolutions of the Synod.

## 4.20          Working Together

4.20.1.1     The Synod and its agencies are most effective as their board members, officers, and staffs work together as prescribed in Col. 3:12–14 (ESV) which reads as follows: "Put on then, as God's chosen ones, holy and beloved, compassionate hearts, kindness, humility, meekness, and patience, bearing with one another and, if one has a complaint against another, forgiving each other; as the Lord has forgiven you, so you also must forgive. And above all these put on love, which binds everything together in perfect harmony."

4.20.1.2     The Board encourages Christ's people serving as board members, officers and staffs who differ with their brothers and sisters to pursue the course of harmony, peace, and unity in keeping with the mind of Christ, not publicizing these differences, but using the scriptural and fraternal principles of loving Christian counsel or admonition.

## 4.21          Monitoring

The Board shall employ the following avenues of monitoring:

**4.21.1         Management Reports**

4.21.1.1     Receive and review management reports, periodic reports that provide information and counsel to the Board on programs, trends, and developments that may affect its work and which report on Chief Administrative Officer compliance with Board policies.

**4.21.2         Direct Monitoring**

4.21.2.1     The Board of Directors shall review for compliance with Board and management policies and possible change or suggestion:

> (a)  annually, the outcomes of the Synod in relationship to the triennial common vision and quarterly the financial condition of the Synod.
>
> (b)  changes in spending levels throughout the year as authorized by the Chief Financial Officer.

Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 67 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 67 of 122

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

> (c) annually, or upon change, the current accounting policies as approved by the Chief Financial Officer.

> (d) quarterly reports on material financial transactions specifically delegated by resolution to the Chief Administrative Officer and Chief Financial Officer.

> (e) through the Audit Committee, the audit reports of the Agencies of the Synod.

> (f) quarterly reports on property transactions delegated to the Chief Administrative Officer and Chief Financial Officer.

> (g) annually the report on insurance levels established by the Chief Administrative Officer, in coordination with the Chief Financial Officer of the Synod.

> (h) annually, or upon change, the current Employee Handbook .

> (i) annually, or upon change, the current management policies, and procedures as approved by the Chief Administrative Officer.

> (j) legal matters as provided in the Board policies.

> (k) minutes of synodwide corporate entities, mission boards, and commissions.

4.21.2.2    Through the Chief Administrative Officer, individual members of the Board may request additional information that would be reported to the Board and that may help the Board as a whole in exercising its monitoring responsibility.

**4.21.3    Chief Administrative Officer and Chief Financial Officer Performance Reviews**

4.21.3.1    The Board shall review the performance of the Chief Administrative Officer and Chief Financial Officer employing the following process:

> (a) The Board shall conduct an annual performance review of the Chief Administrative Officer (CAO) and the Chief Financial Officer (CFO).

> (b) The annual review shall normally be done in conjunction with the performance review process in place for all International Center staff.

> (c) The Board Chairman, with assistance from the Personnel Committee of the Board, shall solicit input from all voting members of the Board regarding the performance of the CAO and the CFO and recommended goals for the upcoming year.

> (d) The Board Chairman shall solicit input from the CAO and CFO regarding challenging yet reasonable goals and objectives for the upcoming year.

> (e) The Board Chairman shall prepare a composite of the feedback received using the International Center's performance review form.

> (f) The Board Chairman shall present the composite review to the Board for consensus and agreement on the overall performance review and rating, along with the goals and objectives identified for the upcoming year/ triennium.

> (g) The Board shall determine if recognition in the form of a bonus is to be awarded.

> (h) The Board Chairman and the Chairman of the Personnel Committee shall normally sign the performance reviews and, on behalf of the Board, conduct the

Exhibit 5 to Defendants' Motion to Dismiss
Page 68 of 122
Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 68 of 122

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

review, share the established goals and objectives, and, when approved by the Board, authorize a bonus for the CAO and/or the CFO.

(i) The signed performance review shall then be forwarded to the Department of Human Resources and kept as an official document in the personnel file.

(j) The performance review conducted each third year shall be a comprehensive review whereby the Board Chairman and the Chairman of the Personnel Committee, using the services of the executive director of human resources, shall solicit input from the members of the Board as well as other Synod leaders including a number of district presidents, LCMS unit executives, and chief executive officers of the synodwide corporate entities.

### 4.21.4    Notice of Violation of Board Policy

#### Notice by Chief Administrative Officer

4.21.4.1    The Chief Administrative Officer shall give immediate notice to the Board once a Board Policy has been recognized to have been violated.

(a) If the violation is immediately correctable, the Chief Administrative Officer shall take immediate action within policies and report the results to the Board.

(b) If the violation is not immediately correctable, the Chief Administrative Officer shall share with the Board his plan for corrective action.

4.21.4.2    Depending on the nature of any violation, the Chairman may request the Chief Administrative Officer to bring the matter to the Board for evaluation of the policy and appropriate action.

#### Notice by a Board Member

4.21.4.3    Board members shall bring to the Chairman's attention any condition or action believed to violate Board Policy.

4.21.4.4    Depending on the nature of any violation, the Chairman may request the Chief Administrative Officer to take action or develop a plan for corrective action or may bring the matter to the Board for evaluation of the policy and appropriate action.

#### Notice and Authorization of Exception

4.21.4.5    Only the Board may authorize an exception to its Policy. Prior to undertaking any exception, the Chief Administrative Officer shall seek authorization from the Executive Committee through the Chairman of the Board.

#### Unacceptable Violations

4.21.4.6    After a major infraction, a number of recurrences of violation, or inappropriate conduct, the Chairman shall arrange with the President a special review of the performance of the Chief Administrative Officer or the Chief Financial Officer and with the approval of the Executive Committee take necessary and appropriate action.

| Section Revision History | |
|---|---|
| 2022.08.26 | 4.19 Human Resources – Revised |
| 2022.11.18 | § 4 – Comprehensive Revision |

Case 1:23-cv-01042-DAE     Document 13-5     Filed 04/03/24     Page 69 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 69 of 122

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

| § 5 | Management Policies for Corporate Synod and Agencies of Corporate Synod |
|---|---|

The following policies, *in addition to those included in Policy section § 6*, apply to Corporate Synod and its included and subordinate agencies ("Corporate Synod and Its Agencies"). These policies do not apply to agencies of the Synod not included in or subordinate to Corporate Synod.

| 5.1 | Budget Policies (Corporate Synod) |
|---|---|

The Chief Financial Officer, in consultation with the Synod's officers and the executive directors of the mission offices, commissions, and departments, is responsible for presenting to the Board the annual operating and capital budgets for Corporate Synod and for necessary adjustments in the course of the year. In implementing the operating and capital budgets, the Chief Financial Officer shall:

(a) Not carry out actions that will maintain a negative balance in unrestricted net assets.

(b) Not establish or change management policies for budgets and revenue without first reporting them to the Board.

(c) Not permit board-approved maximum headcounts to be exceeded.

(d) Not accept unbudgeted gifts that are restricted to programs not already established without reporting them to the Board.

(e) Not allow negative deviations from the budget by any unit in excess of an aggregate of 5 percent without proposing a corrective plan to the Board.

(f) Not allow Corporate Synod debt or debt that has been guaranteed to go unpaid (both principal and interest).

(g) Not allow debt or debt that has been guaranteed to be incurred without evidence that the debt can be serviced (Business Plan).

(h) Not allow new debt or debt that has been guaranteed that will not be fully amortized over a term longer than the shorter of the economic life of the asset or 25 years.

| 5.2 | Accounting Policies (Corporate Synod) |
|---|---|

The Chief Financial Officer is responsible for establishing accounting policies and procedures for the Synod which comply with "Generally Accepted Accounting Principles" for not-for-profit organizations as determined by the Financial Accounting Standards Board and the American Institute of Certified Public Accountants. In carrying out these responsibilities, the Chief Financial Officer shall:

(a) implement accounting policies and procedures which provide for:

(1) the "controllership" responsibilities of the Chief Financial Officer.

(2) accounting systems with internal controls designated to prevent and detect fraud.

Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 70 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 70 of 122

The Lutheran Church—Missouri Synod                    **Board of Directors Policy Manual**

> (3) approval of all expense vouchers prior to payment by someone other than the traveler from a list of authorized signatures as determined by the Chief Administrative Officer.
>
> (4) levels of approval of purchase orders and disbursements.
>
> (5) compliance with provisions of the Internal Revenue Code and related regulations.

(b) not designate unrestricted net assets without prior Board approval.

(c) not allow release of board-designated funds outside release conditions established by the Board.

(d) not provide the Audited Financial Statements of the Synod beyond the Board and necessary staff or provide summaries thereof for publication in the official periodicals of the Synod without first providing them to the Board.

(e) not allow management policies for accounting that conflict with "Generally Accepted Accounting Principles" for not-for-profit organizations and which do not provide proper internal controls and reports.

## 5.3            Financial Transactions (Corporate Synod)

5.3.1.1     The Chief Financial Officer and the Chief Administrative Officer are responsible for establishing and maintaining policies and procedures for handling financial transactions.

5.3.1.2     In carrying out these responsibilities, they shall maintain policies that address:

(a) using LCMS Foundation or LCEF where appropriate

(b) use, investment, and loaning of restricted funds

(c) depositing surplus funds with Synod

### 5.3.2         Signature Authority (Corporate Synod)

5.3.2.1     The Chief Administrative Officer shall be authorized to sign any legal or business document on behalf of the Synod in every instance where the President or a Vice-President of the Synod, acting alone, is authorized to sign such documents on behalf of the Synod.

5.3.2.2     The Chief Administrative Officer shall serve as the Assistant Secretary of the Synod for signature purposes.

5.3.2.3     In every case where any two officers of the Synod are authorized, acting together, to sign and attest to legal or business documents on behalf of the Synod, the Chief Administrative Officer shall be authorized to sign or attest to such documents on behalf of the Synod as one of the two officers.

5.3.2.4     In the event that the Chief Administrative Officer serves as the acting Chief Financial Officer or vice versa, then the duties and responsibilities as set forth below of the vacant position shall be assumed by the Corporate Secretary.

### 5.3.3         Authorization Categories

5.3.3.1     Contracts, purchasing, and financial documents requiring a corporate officer's signature or approval should normally be signed by the Chief Administrative Officer or the Chief

Case 1:23-cv-01042-DAE     Document 13-5     Filed 04/03/24     Page 71 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 71 of 122

**The Lutheran Church—Missouri Synod**                           **Board of Directors Policy Manual**

Financial Officer. If both officers are unavailable, another corporate officer may sign the document(s) and provide notice and a copy of the document(s) to the Chief Administrative Officer of such signature.

5.3.3.2    Expense reimbursement, travel expense, and purchasing card authorizations for corporate officers shall be forwarded to the officer's supervisor or the Chief Administrative Officer for review and authorization, or in the case of expenses and authorizations for the Chief Administrative Officer, to the Chief Financial Officer.

5.3.3.3    Notes issued by Corporate Synod, securities transferred by Corporate Synod and probate documents shall be signed by or at the direction of the Synod Chief Financial Officer. In the case of a vacancy in the position of Chief Financial Officer, the Chief Administrative Officer or the Board designee shall serve as the Chief Financial Officer and sign notes issued by Corporate Synod, securities transferred by Corporate Synod, securities transferred by Corporate Synod and probate documents. In accordance with Bylaw 3.4.1.3 (h), borrowing in the name of the Synod requires Board of Directors approval and instruments relating to such borrowing require two signatures—that of the Chief Financial Officer and either the President or Chief Administrative Officer.

5.3.3.4    Contracts involving the day-to-day activities of those agencies and departments operating as part of Corporate Synod shall be executed by the principal staff person charged with the responsibility of administering the program and activities of the respective agency or department or by such other person as approved by the Chief Administrative Officer subject to limitations outlined in Policy 5.3.2.

5.3.3.5    Other contracts and legal documents for Corporate Synod shall be signed by the Chief Administrative Officer or the Chief Financial Officer. If neither is available, the President, First Vice-President, or the Secretary may sign. If attestation is necessary, the Secretary or an Assistant Secretary should be consulted.

### 5.3.4    Authorization Limits (Corporate Synod)

5.3.4.1    The Chief Administrative Officer, in coordination with the Chief Financial Officer, is responsible for establishing administrative policies and procedures for all expenses, purchasing, contracts, and property transactions for Corporate Synod consonant with the following authorization limits. (Transactions involving real property [any property that is attached directly to land, as well as the land itself] must be authorized by the Board of Directors and contracts can only be signed by a board-designated signatory.)

5.3.4.2    The Chief Administrative Officer and Chief Financial Officer shall be the designated signatories as described below unless otherwise specified by resolution of the Board.

| Required Signature | Authorization Limit | Monitored by |
|---|---|---|
| LCMS Board of Directors | > $1,000,000 | – |
| Two BOD Designated Signatories (ordinarily the CAO and CFO) | $500,000 – $999,999 | Board of Directors |
| One BOD Designated Signatory (ordinarily the CAO or CFO) | Up to $500,000 | Board of Directors |
| Officer (Supervisor of Unit) | Up to $150,000 | CAO & CFO |
| Unit Executives | Up to $25,000 | CAO & CFO |

Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 72 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 72 of 122

The Lutheran Church—Missouri Synod    **Board of Directors Policy Manual**

| Unit Staff | Up to $10,000 only with direct authorization of the Unit Executive and Executive Director of Accounting | Executive Director of Accounting Executive Director of Operations |
|---|---|---|

5.3.4.3    Authority for establishing signature authority limits below the limits set by the Board (unit staff level, shall be granted and documented by the Chief Administrative Officer.

5.3.4.4    The Chief Financial Officer shall maintain procedures for approving purchase orders and for expense accounts for Corporate Synod.

**5.3.5    Property Transactions and Reporting of Real Property**

5.3.5.1    The Chief Administrative Officer and Chief Financial Officer shall undertake property transactions and report on the real property of Corporate Synod and agencies of Corporate Synod in accordance with the following policies:

5.3.5.2    Property transactions of Corporate Synod or of its agencies shall be approved by the Board in the budgeting process or in accordance with Policy 5.3.2.

5.3.5.3    Loans to Corporate Synod for use by the agencies of Corporate Synod shall be approved in accordance with Policy 5.3.2.

5.3.5.4    The agency of Corporate Synod requesting the loan shall be ultimately responsible for its repayment through its annual budgets.

5.3.5.5    Property transactions of Corporate Synod or of its agencies shall also be in accordance with Policy section 6.3.

5.3.5.6    The Synod's Chief Financial Officer serves as the Board's representative on property matters involving other synodwide corporate and trust entities.

5.3.5.7    The Chief Administrative Officer, in coordination with the Chief Financial Officer, is responsible for establishing administrative policies and procedures for handling property transactions.  Such policies and procedures shall provide for proper evaluation of property transactions prior to their approval.

5.3.5.8    An updated listing of all real property held by or on behalf of Corporate Synod or agencies of Corporate Synod shall be presented for review by the Board annually at the Board's November meeting.

**5.3.6    Foreign Bank Accounts and Currency Transactions**

5.3.6.1    Each agency of Corporate Synod shall obtain the approval of the Synod Chief Financial Officer for opening any foreign bank accounts.

5.3.6.2    Each agency of Corporate Synod shall make any transfers, purchases, or sales of foreign currency through the Synod Chief Financial Officer, who must approve such transactions.

**5.3.7    Authorization to Deal in Securities**

5.3.7.1    Securities received in bequests, legacies, and gifts by an agency of the Synod, unless otherwise instructed by the donor, shall be sold at the earliest feasible time and at the highest price possible.

5.3.7.2    Securities transactions for Corporate Synod shall be executed by the Chief Financial Officer or his designee.

Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 73 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 73 of 122

The Lutheran Church—Missouri Synod                    **Board of Directors Policy Manual**

5.3.7.3        The Chief Financial Officer is authorized to open accounts with The Lutheran Church—Missouri Synod Foundation (LCMS Foundation) for purchasing and selling securities.

(a)  The LCMS Foundation is authorized to act upon any orders and instructions with respect to such accounts received from the Synod Chief Financial Officer or his designee.

(b)  The Chief Financial Officer shall use the LCMS Foundation for all securities transactions as stated in Bylaw 3.6.5 (legacies, bequests, devises, endowments, annuity gifts, and other trust funds) and other long-term investments.

5.3.7.4        The Chief Financial Officer may open other accounts for the purpose of trading in securities with the specific authorization of the Board and subject to regular reporting on the holdings therein to the Finance and Audit Committee of the Board.

**5.3.8        Expense Accounts**

All requests for reimbursement (travel expense reports, check requests, etc.) shall be approved by someone other than the payee. Reimbursement requests must be signed, prior to being paid, by the person responsible for the budgeted expense or his/her superior.

**5.3.9        Reimbursement; Compensation of Board, Commission, and Committee Members**

Corporate Synod and its agencies shall not compensate board, commission, and committee members but will reimburse them for reasonable travel, lodging, meals, and other incidental expenses with such service. Exceptions for pulpit or classroom or similar substitute workers must be approved by the governing board to which the board, commission, or committee is accountable.

## 5.4        Sharing of Financial Information

5.4.1.1        Each office of Corporate Synod shall promptly respond, within its area of responsibility, to requests for financial information in accordance with Bylaw 1.5.4 ("Full Financial Disclosure") and all other applicable bylaws.

5.4.1.2        In accordance with Bylaw 1.5.4 (b) and 1989 Res. 4-07A, there shall be published annually in an official periodical of the Synod:

(a)  the salaries of elected officers of the Synod, as identified in Constitution Art. X A; and

(b)  a notice indicating the availability, upon written request by a member of the Synod, the salary grid scale of all Synod and district officials, staff, and faculty members.

## 5.5        Insurance (Corporate Synod and Synod's Insurance Program)

5.5.1.1        The Chief Administrative Officer, in coordination with the Chief Financial Officer of the Synod, is responsible for establishing administrative policies and procedures for handling insurance matters.

5.5.1.2        In carrying out these responsibilities, the Chief Administrative Officer and Chief Financial Officer shall:

Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 74 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 74 of 122

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

(a) Report to the Board all proposed changes to the type of insurance policies or minimum policy limits and maximum deductibles.

(b) Maintain administrative policies and procedures for Corporate Synod regarding insurance matters. The policies shall include:

    (1) Reporting Litigation and Claims to Insurance Carriers. Definitions:

        (i) *Litigation*: Every proceeding in a court, administrative agency, regulatory agency, quasi-judicial agency, or other secular or governmental body, whether such court or agency be local, state, federal, or foreign, and including any arbitration proceeding.

        (ii) *Claim*: A demand for relief and every circumstance where litigation is anticipated or reasonably likely to ensue, and includes investigations by law enforcement agencies, administrative agencies or any other investigation where litigation could result.

    (2) Reporting circumstances that may lead to Litigation or Claims to insurance carriers and others.

(c) Indemnification, including

    (1) Insured Claims — Indemnification of Deductible Amount

    (2) Uninsured Claims — Indemnification of District Presidents

    (3) Provisions and Conditions Applicable to Indemnification Provisions and Conditions Applicable to Indemnification

(d) Maintain administrative policies and procedures for agencies of the Synod regarding insurance matters.

    (1) Reporting Litigation and Claims to Insurance Carriers

    (2) Reporting circumstances that may lead to Litigation or Claims to insurance carriers and others.

    (3) Indemnification

    (4) Insured Claims — Indemnification of Deductible Amount

    (5) Uninsured Claims — Indemnification of District Presidents

    (6) Provisions and Conditions Applicable to Indemnification Provisions and Conditions Applicable to Indemnification

## 5.6     Fund Raising (Corporate Synod and Subordinate Agencies)

5.6.1.1     The Board believes that it is in the best interest of Corporate Synod and the agencies of Corporate Synod to work together to develop and administer fund-raising plans.

5.6.1.2     The Chief Mission Officer will supervise the fund-raising activity of the national office (Bylaw 3.4.3.6) according to the policies set forth herein, specifying processes and procedures as necessary for proper coordination and facilitation of desired fund-raising outcomes for all Corporate Synod mission and ministry functions.

Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 75 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 75 of 122

**The Lutheran Church—Missouri Synod**                    **Board of Directors Policy Manual**

5.6.1.3    Each department and unit of Corporate Synod shall submit to the LCMS Chief Mission Officer, for his review and approval, all plans that include fund-raising activities or otherwise involve revenue from charitable contributions (gifts, grants, bequests).

5.6.1.4    There shall be no fundraising by departments, units, or employees of Corporate Synod unless first authorized by the Chief Mission Officer.

5.6.1.5    Donor and non-donor constituent records are the intellectual property of Corporate Synod and must not be sold, exchanged, used, or transferred to other agencies, entities, corporations, or individuals unless authorized by the Board of Directors.

5.6.1.6    Regular performance reports for Corporate Synod fundraising shall be provided by the Chief Mission Officer to the Synod Board of Directors.

5.6.1.7    Agencies seeking to use Corporate Synod fund-raising support services (and accompanying fund-raising communications services) must first obtain written agreement from the Chief Mission Officer.

**5.6.2    Corporate Synod Fundraising Policy Manual**

The Board has delegated to its Chief Administrative Officer the responsibility for assuring that appropriate fundraising practices are in place. In carrying out these responsibilities, the Chief Administrative Officer shall ensure that the Mission Advancement unit has a current and periodically reviewed fundraising policy manual that guides the fund-raising activities of Corporate Synod, its employees, contractors, and volunteers. Such policy manual shall be reviewed annually by the Chief Administrative Officer. Such manual shall include statements regarding:

(a)  Gift acceptance

(b)  Fundraising authority

(c)  Confidentiality of donor information

(d)  Honoring donor intent for restricted gifts

(e)  Compliance with generally accepted ethical fund-raising principles and practices

(f)  Internal performance reporting of gift activity

(g)  Conflict resolution

## 5.7    Legal and Governmental Matters

The Board has reserved for itself the approval of all legal policies but has delegated to its Chief Administrative Officer the responsibility for maintaining liaison with Synod's general counsel and for making certain legal decisions. In carrying out these responsibilities, the Chief Administrative Officer shall:

(a)  report to the Board any engagement of special counsel.

(b)  report to the Board the commencement of any litigation against the Synod.

(c)  report any litigation to the insurance carrier(s).

(d)  have the authority to approve individual legal claim settlements up to $100,000. Such settlement shall be done in consultation with the Chief Financial Officer.

Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 76 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 76 of 122

The Lutheran Church—Missouri Synod                    **Board of Directors Policy Manual**

(e) not respond to litigation in those areas reserved to the Executive Committee.

(f) report to the Board decisions to participate in legal proceedings as Amicus Curiae or in support of any member congregation.

(g) report to the Board the granting of any powers of attorney.

(h) implement administrative procedures for Corporate Synod regarding legal matters consonant with Board Policy concerning:

   (1) Engagement of general and special legal counsel for the Synod

   (2) Initiation of litigation by the Synod

   (3) Responding to litigation brought against the Synod, including

   (4) Reporting litigation to insurance carriers

   (5) Reporting non-legal claims to insurance carriers

   (6) Reporting claims that may lead to litigation

   (7) Participation as amicus curiae

   (8) Approval of limited powers of attorney for the Synod

   (9) Approval of foreign corporations for mission purposes

(i) implement administrative procedures for agencies of the Synod regarding legal matters consonant with Board Policy concerning:

   (1) Reporting of engagement of counsel for agencies of the Synod

   (2) Initiating litigation by agencies of the Synod

   (3) Responding to litigation brought against an agency of the Synod

   (4) Reporting claims that may lead to litigation

(j) implement administrative procedures for Corporate Synod and agencies of the Synod consonant with Board Policy concerning:

   (1) Contacts with Government Units

   (2) Contacts with the Internal Revenue Service by Agencies of the Synod

   (3) Approval of New Corporations as Agencies of the Synod

| 5.8 | **Human Resources Policies (Corporate Synod)** |

| 5.8.1 | **LCMS Department of Human Resources** |

5.8.1.1    The Chief Administrative Officer shall be responsible for the LCMS Department of Human Resources

5.8.1.2    The Executive Director of Human Resources shall be appointed by the Chief Administrative Officer, with input from the Human Resources Committee, and be directly responsible to the Chief Administrative Officer.

5.8.1.3    The Executive Director, on behalf of the Committee, may provide quarterly activity reports to the respective governing boards.

Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 77 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 77 of 122

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

### Corporate Synod Human Resources Policies

5.8.1.4    Under the supervision of the Chief Administrative Officer and subject to the General Human Resources Policies of the Synod (Policy section 6.4) and Common Human Resource Policies (Policy section 4.19.2) the Department shall maintain detailed Human Resources Policies for Corporate Synod and its included and subordinate Agencies.

### Hiring Authority for Corporate Synod

5.8.1.5    The LCMS Department of Human Resources is responsible for coordinating the hiring and termination of all employees of Corporate Synod in compliance with applicable Bylaws and Board Policy. All oral or written offers of employment, including called positions, shall be approved and normally conveyed by the LCMS Department of Human Resources.

## 5.9    Balances on Deposit with the Synod or with Synod's Designee

5.9.1.1    Assets of agencies of the Synod that are on deposit with Synod or its designee shall be administered as assets of its agencies by the Chief Financial Officer and/or Synod's designees.

5.9.1.2    Interest earned on donor-restricted gifts on temporary deposit with the Synod will not be restricted unless approved by the Board of Directors.

## 5.10    Record and Archive Management Policy

5.10.1.1    The Operations Team shall, in consultation with the Secretary, maintain the Record and Archive Management Policy for Corporate Synod, which shall establish guidelines, procedures and requirements for: (i) the retention and maintenance of Records; (ii) destruction of Records that do not need to be or no longer need to be retained; and (iii) ensuring that LCMS Employees understand their responsibilities concerning Record retention and destruction.

5.10.1.2    Such Policy shall be developed under procedures and guidelines established by the Department of Archives (Concordia Historical Institute) and supervised by it (Bylaw 3.6.2.2.1 [b–e]).

## 5.11    Monitoring

See Policy section 4.21.

| Section Revision History | |
|---|---|
| 2022.11.18 | § 5 – Comprehensive Revision |

Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 78 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 78 of 122

The Lutheran Church—Missouri Synod                    **Board of Directors Policy Manual**

| § 6 | Management Policies for Synod and All Agencies |
|---|---|

Unless otherwise specified, the following policies apply to:

(a)  Corporate Synod

(b)  Agencies of the Synod that are within or subordinate to Corporate Synod ("Agencies of Corporate Synod")

(c)  Agencies of the Synod that are outside of Corporate Synod ("Agencies outside Corporate Synod")

| 6.1 | Board Authority to Set and Monitor Management Policies |
|---|---|

6.1.1.1    The Board of Directors is the legal representative of the Synod. It is the custodian of all the property of the Synod, directly or by its delegation of such authority to an agency of the Synod. It exercises supervision over all the business affairs of the Synod except in those areas where the voting members of the Synod through the adoption of Bylaws or by other convention action have assigned specific areas of responsibility to separate corporate or trust entities, and as to those the Board of Directors has general oversight responsibility as set forth in the Bylaws. (Constitution Article XI, Bylaws 1.4.4–5, 3.3.4) In carrying out these responsibilities, and pursuant to Bylaw 3.3.4 the Board adopts common policies which apply to:

- Synod officers and staff

- Agencies of the Synod [Bylaw 1.2.1 (a)]

- Boards, offices, and commissions as defined in Bylaws 1.2.1

- Synodwide corporate entities as defined in Bylaw 1.2.1 (d)

- Concordia Plan Services

- Districts of the Synod

- Colleges, universities, and seminaries of the Synod

6.1.1.2    Bylaw 1.2.1 (a) provides that *agencies of the Synod* are those instrumentalities other than congregations and other than Corporate Synod itself, "whether or not separately incorporated, which the Synod in convention or its Board of Directors has caused or authorized to be formed to further the Synod's Objectives (Constitution Art. III)." Property held by agencies of the Synod, other than specifically allowed in Bylaw 1.2.1[r]), is property of the Synod. The Board has rights and responsibilities in regard to the legal and business matters of the agencies of the Synod, as well as the coordination of agency activities in furtherance of Synod's objectives. Agencies therefore have responsibilities under the Synod's Constitution and Bylaws and the Board's policies and directives, and to assist the Board in meaningfully fulfilling its responsibility of coordinating their activities.

| 6.2 | Financial Misconduct |
|---|---|

6.2.1.1    The Synod is committed to preventing, detecting and reporting fraud, and in cooperating with other organizations to reduce opportunities for fraud. The Synod and its agencies will manage the fraud risk by:

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

(a) Defining, setting and maintaining cost-effective control procedures to identify and deter fraud;

(b) Investigating all incidences of actual, attempted or suspected fraud, and all instances of major control breakdown;

(c) Encouraging staff to be vigilant and raising fraud-awareness at all levels;

(d) Ensuring key controls are complied with;

(e) Providing staff with effective confidential reporting mechanisms and encouraging their use;

(f) Taking action against individuals and organizations perpetrating fraud against the group and seeking restitution of any asset fraudulently obtained and the recovery of costs; and

(g) Cooperating with the appropriate authorities in the investigation and prosecution of those suspected of fraud.

6.2.1.2    Each corporate agency of the Synod will develop a policy and procedure, including an annual employee acknowledgment, addressing financial misconduct. This policy must address the provisions identified in this Policy section 6.2.

## 6.3    Property Policies

### 6.3.1    Property Transactions

6.3.1.1    The Board "is the custodian of all of the property of the Synod, directly or by its delegation of such authority to an agency of the Synod. It shall exercise supervision over all the property and business affairs of the Synod except in those areas where it has delegated such authority to an agency of the Synod or where the voting members of the Synod through the adoption of bylaws or by other convention action have assigned specific areas of responsibility to separate corporate or trust entities, and as to those the Board of Directors shall have general oversight responsibility as set forth in the Bylaws" (Const. Art. XI E 2; see also Bylaws 1.4.4 and 3.3.4.7). Bylaw 1.1.1 (r) states: "Property of the Synod" includes all assets, real or personal, tangible or intangible, whether situated in the United States or elsewhere, titled or held in the name of the Synod, its nominee, or an agency of the Synod. Provided, however, "property of the Synod" does not include any assets held by an agency of the Synod in a fiduciary capacity (including, for purposes of example, the funds administered by Concordia Plan Services, the Lutheran Church Extension Fund—Missouri Synod and certain funds held by The Lutheran Church—Missouri Synod Foundation). Bylaw 3.3.4.7 provides that the Board:

(a) Shall "delegate to District boards of directors the authority to buy, sell, and encumber real and personal property in the ordinary course of performing the functions which the District carries on for the Synod in accord with general policies (which shall be applicable to all Districts) established from time to time by itself or the Synod in convention"; and

(b) "May…delegate to any agency of the Synod powers and duties with respect to the property of the Synod for which such agency of the Synod has direct supervisory responsibility": and

The Lutheran Church—Missouri Synod                    **Board of Directors Policy Manual**

| | |
|---|---|
| 6.3.1.2 | "Such delegation shall be in writing and shall be subject to change at any time by the Synod's Board of Directors provided that reasonable deliberations, as determined by the Board of Directors, take place with such agency prior to the change." |

### 6.3.2        Property of Synod Held by Its Districts

| | |
|---|---|
| 6.3.2.1 | Each District, being incorporated, shall hold title to property in its corporate name, except that securities may be registered in the name of a nominee. |
| 6.3.2.2 | The Board of Directors of each District shall be responsible for the supervision, management, and protection of District properties including insuring them in accordance with Policy 7.4. |
| 6.3.2.3 | A District may hold title to properties used by congregations or other entities. The District board of directors shall authorize any conveyance of such properties to the entities. |

### 6.3.3        Property of Synod held by Colleges, Universities, and Seminaries as defined in Bylaw 1.2.1(r)

| | |
|---|---|
| 6.3.3.1 | The Synod has delegated certain responsibilities, powers, and duties with respect to college and university properties to the Concordia University System (CUS) (Bylaw 3.6.6.5). Additionally, the Synod in Bylaws 3.10.5.5(i) and 3.10.6.4(i) has delegated other responsibilities for property to the respective boards of regents of the colleges, universities, and seminaries. |
| 6.3.3.2 | Property of the Synod held by its colleges, universities or seminaries shall be titled in the name of the respective institution, except that securities may be registered in the name of a nominee. |
| 6.3.3.3 | Each institution of higher education of the Synod shall hold title to properties presently owned or at any time hereafter acquired by it subject to a reversionary interest or possibility of reverter in favor of the Synod in such form and stating such conditions as shall be established by the Board of Directors of the Synod. (2004 Res. 4-04) |
| 6.3.3.4 | The board of regents and officers of each institution of higher education of the Synod shall, and are hereby directed to, take all actions and execute all deeds, resolutions, statements, and legal documents necessary to carry out the terms of 2004 Res. 4-04 where and to the extent permitted by law. |
| 6.3.3.5 | Each college, university, or seminary holds the property it owns as the legal and record titleholder of the property, in trust for the Synod. All property of the Synod titled in the name of the college, university, or seminary shall contain a reversionary clause or possibility of reverter conveying the property to the Synod upon closing, consolidation, or dissolution of the college, university, or seminary. |
| 6.3.3.6 | A college, university, or seminary may not encumber any property of the Synod titled in the name of the college, university, or seminary, whether by lien, easement, mortgage, restrictive covenant, or otherwise, without the prior, written consent of the Board of Directors of the Synod. When the Board of Directors of the Synod has authorized such encumbrance, the Chief Administrative Officer is hereby authorized, with the assistance of legal counsel, to execute such documents as are necessary to subordinate the Synod's reversionary interest or possibility of reverter to the interest of the party obtaining the encumbrance. |

Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 81 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 81 of 122

The Lutheran Church—Missouri Synod                     Board of Directors Policy Manual

6.3.3.7      The board of regents of each college, university, and seminary shall be responsible for the supervision, management, and protection of the institution's properties, including insuring them to the degree that is adequate and commercially reasonable and at least equivalent to Synod's insurance program (Policy 7.4).

### Colleges and Universities of the Concordia University System

6.3.3.8      The Board, under a formal agreement with the Concordia University System (CUS) and through the approval of the bylaws of CUS, has delegated other property responsibilities to CUS.

6.3.3.9      The Board has retained certain oversight responsibilities of college and university properties as detailed in the formal agreement. The Board in the formal agreement has reserved for itself the following:

(a)   Approval, upon recommendation of the CUS, of changes to the master plan and facilities plan of the institution and the sale or disposal of any campus or part thereof beyond that specified in the Board's Policy Manual. After approval by the Board, the CUS is authorized to give final approval to the purchase, sale or demolition of land or facilities and shall report the same to the Board of Directors.

(b)   Annual summary capital budgets of the institutions, including the method of funding, prior to final action by the CUS. After such approval by the Board, the CUS is authorized to give final approval for the construction and remodeling of facilities.

(c)   Approval of any line of credit extended to CUS.

(d)   Approval of operational borrowing needs of the institutions if the amount exceeds 10 percent of the aggregate revenues or 15 percent of the revenues of any one institution.

### Synod Seminaries

6.3.3.10     Regarding the Seminaries, the Synod Board of Directors reserves for itself the following:

(a)   Approval, upon recommendation of the seminary board of regents, of changes to the master plan and facilities plan of the institution and the sale or disposal of any campus or part thereof beyond that specified in the Board's Policy Manual.

(b)   Approval of annual summary capital budgets of the institutions, including the method of funding, before final action by the seminary's board of regents. After such approval by the Synod Board of Directors, the seminary is authorized to begin construction and remodeling of facilities.

(c)   Approval of new lines of credit to the Seminaries, with the Chief Financial Officer authorized to renew lines of credit annually, reporting such to the Board and subject to the following reservation:

(d)   Approval of operational borrowing needs of the seminary, if the total operational borrowing of the seminary would exceed 15 percent of the revenues of the seminary.

Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 82 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 82 of 122

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

| 6.3.4 | Property of Synod Held by Synodwide Corporate Entities |
|---|---|

6.3.4.1    Property of the Synod held by synodwide corporate entities shall be titled in the name of the respective entity.

6.3.4.2    The governing board of each entity shall be responsible for the supervision, management, and protection of the entity's properties including insuring them under the Synod's insurance program (Policy 7.4).

6.3.4.3    The Board under a formal agreement with each entity has delegated other property responsibilities to the board of that entity while retaining certain oversight responsibilities.

6.3.4.4    The Board in the formal agreement has reserved for itself the final approval of the purchase, sale, or financing of real property. (NOTE: formal agreements need to be developed with CPH, CHI, and the Foundation.)

6.3.4.5    Synodwide corporate entities shall consult with the Synod's Board of Directors prior to making any grants to or for the mission offices or commissions of Corporate Synod.

| 6.3.5 | Titles and Deeds |
|---|---|

6.3.5.1    Contracts for the purchase of property shall be conditioned upon the agency being able to obtain a title insurance policy from a satisfactory title insurance company. If the agency is a component of Corporate Synod, then Corporate Synod must be able to obtain a title insurance policy from a satisfactory title insurance company.

6.3.5.2    Before closing the purchase, a title report or binder for title insurance shall have been obtained.

6.3.5.3    The title report shall show that fee simple title to the property will be vested in the agency or, in the case of a Corporate Synod agency, with Corporate Synod upon delivery and recording of the deed and that such title will be free and clear of liens, encumbrances and restrictions except for taxes, easements and other restrictions acceptable to the officers of the agency or the Synod Chief Financial Officer, as appropriate.

6.3.5.4    Property shall be conveyed to the agency or, in the case of a Corporate Synod agency, to Corporate Synod by warranty deed if possible. Otherwise, deeds appropriate to the circumstance may be used.

| 6.3.6 | Appraisals |
|---|---|

6.3.6.1    Agencies shall obtain appraisals from recognized appraisers, MAI, or equivalent, on the purchase and sale of all real estate.

6.3.6.2    A copy of the appraisal shall be provided to the Chief Financial Officer on all transactions requiring Synod Board of Directors' approval.

| 6.3.7 | Non-Synod Tenants |
|---|---|

6.3.7.1    Agencies of the Synod may lease, rent or otherwise grant a right of use of real property to non-synod tenants as long as the activities of such tenants can be clearly distinguished from those of the agency.

6.3.7.2    The use of property by a non-Synod tenant shall be evidenced by a written agreement which shall include the intended use, evidence of liability insurance, and provision to

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

indemnify and hold harmless the agency and the Synod at the non-Synod tenant's expense (including all related costs and attorney fees) from any damages, actions, claims or proceedings arising out of or resulting from the permitted use.

### 6.3.8        Guarantees of Indebtedness

6.3.8.1        Agencies of the Synod shall not guarantee the indebtedness of others without prior approval of the Synod's Board of Directors.

6.3.8.2        Contingent liabilities resulting from delinquencies in the repayment of guaranteed indebtedness shall be reported on a timely basis to the agency's governing board and the Synod's Chief Financial Officer.

6.3.8.3        Corporate Synod shall not guarantee any debt other than debt for Corporate Synod. Agencies that get into financial hardship due to excessive debt shall first be directed to LCEF for debt and business plan restructuring. If LCEF determines that a restructuring plan is not feasible, the Synod Board of Directors will ordinarily require the agency to liquidate the assets used to secure the debt.

6.3.8.4        This policy shall not apply to guarantees of the indebtedness of others made by The Lutheran Church Extension Fund (LCEF) in the normal course of LCEF business.

### 6.3.9        Use of LCEF Assets

6.3.9.1        Pursuant to Bylaw 3.6.4.4.1 and Article Fourth of The Lutheran Church Extension Fund—Missouri Synod Articles of Incorporation, The Lutheran Church Extension Fund—Missouri Synod may use The Lutheran Church Extension Fund—Missouri Synod assets for purposes in addition to those specifically listed in the Synod Bylaws and The Lutheran Church Extension Fund—Missouri Synod Articles provided that such use is consistent with the ministry and mission of the Synod and the Board of Directors of The Lutheran Church Extension Fund—Missouri Synod and The Lutheran Church—Missouri Synod Board of Directors have approved such use.

## 6.4        General Human Resource Policies of the Synod

6.4.1.1        The Board sets forth the following general human resource policies as provided for under Bylaws 1.5.5 and 3.3.4.3.

### 6.4.2        Compliance with Human Resources Requirements

6.4.2.1        Agencies of the Synod shall maintain a human resources policy manual including at least:

(a) Statements of compliance with all applicable local, state, and federal requirements

(b) Policies and procedures regarding employment, transfer, and termination, rights and responsibilities of employees, consideration of grievances, disclosure of conflicts of interest (Bylaw 1.5.2), working conditions, salary administration, and benefits provided, to be summarized as appropriate in an employee handbook.

(c) Provisions for current position descriptions for each employee.

6.4.2.2        Agencies' human resources manuals shall not violate federal or state laws, the Constitution or Bylaws of the Synod, policies of the Synod Board of Directors, or policies of the Committee for Human Resources applicable to other agencies of the Synod.

Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 84 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 84 of 122

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

| 6.4.3 | **Salary Administration** |
|---|---|

6.4.3.1    Each incorporated agency of the Synod shall maintain salary administration policies which attract competent employees, retain qualified and seasoned employees, assure equitable and uniform treatment of all comparable positions, provide suitable incentive for performance and personal development and at the same time practice the highest degree of stewardship with the financial and the human resources available for the work.

6.4.3.2    Salary categories shall be established which reflect levels of experience, relevant education, responsibilities, and complexity.

6.4.3.3    Salary ranges shall be established which shall afford the opportunity for the recognition of the quality of work and level of performance and which take into account the wage and salary practices in local public and private employment, the congregations, districts, and related agencies of the Synod, and similar operations of other church bodies.

| 6.4.4 | **Board/Commission and Executive Relationship** |
|---|---|

6.4.4.1    The board or commission of each agency of the Synod retains all its authority under the Synod's Constitution and Bylaws. For those agencies which have an executive director/officer, the board or commission of that agency may delegate to its executive the exercise of aspects of its authority. Each board or commission of an agency of the Synod having an executive will establish written policies which enumerate the specific authority delegated to the executive and the limitations placed on that authority.

6.4.4.2    For those agencies which have an executive director or executive officer.

     (a)  Each agency shall maintain a policy manual.

     (b)  A position description and policies defining the responsibilities of its executive officer and the relationship of the executive officer to the board or commission of the agency must be contained in the policy manual. Such policies shall also provide for the monitoring of management.

     (c)  The board or commission shall not assign or delegate to its executive officer responsibilities reserved in the Synod's Constitution or Bylaws to the Board or assigned to committees, other Synod agencies, or officers.

6.4.4.3    The board or commission shall exercise its governing authority as a whole. No individual member may exercise such authority except as instructed by the board or commission.

6.4.4.4    The board or commission shall normally access employees of the agency only through its chief executive or executive director.

6.4.4.5    While the chief executive (as defined in Bylaw 1.2.1(b) or executive director is primarily accountable to the agency by virtue of the position, the chief executive or executive director makes regular reports to the President of the Synod who under Constitution Article XI B has supervision regarding the doctrine and the administration of "all such as are employed by the Synod" and under Bylaw 3.3.1.1 shall "oversee the activities of all officers, executives, and agencies of the Synod to see to it that they are in accordance with the Constitution, Bylaws, and resolutions of the Synod."

6.4.4.6    The Synod's Board of Directors, in fulfilling its oversight responsibilities, may request reports from and/or appearances before the board of any agency through the chairman and/or the chief executive of the agency of the Synod.

Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 85 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 85 of 122

6.4.4.7       The Synod's Board of Directors' policies regarding its responsibilities, relationships with its executive officer (Chief Administrative Officer) and executive limitations appearing in Sections 2, 3 and 4 of Board Policy may be used as a guide by the boards and commissions of other agencies in setting their policies.

**6.4.5        Calling, Appointing and Employing Staff**

***Appointing the Chief Executive of a Synodwide Corporate / Trust Entity or an Executive Director of a Corporate Synod Agency***

6.4.5.1       The chief executive or unit executive for each board, commission, or synodwide corporate entity shall be a member of a member congregation of the Synod and shall be appointed in accordance with appropriate Bylaw:

- Chief Executive Officer, Synodwide Corporate / Trust Entity: Bylaws 3.6.1.5, 3.7.1.5; 3.3.1.3 (f)
- Executive Director, Mission Office of the Synod:  Bylaw 3.3.1.3 (e)
- Executive Director, Commission on Theology and Church Relations: Bylaw 3.9.5.3.1
- Generally, Bylaws 1.5.5–1.5.5.1; 3.3.1.3 (c–g); 3.11.1

In meeting the bylaw requirements, the procedure below shall be followed:

6.4.5.2       The board, commission, or entity shall review and, if necessary, update the position description for the chief executive or unit executive; it shall then be forwarded to the President for his review and input prior to being sent to the respective agency's Executive Director of Human Resources for legal review and salary administration.

6.4.5.3       A list of candidates for the position shall be gathered by the respective agency's Department of Human Resources as determined by the board, commission, or synodwide corporate entity.

6.4.5.4       The board, commission, or synodwide corporate entity shall review the complete list, in consultation with the President of the Synod, and notify its Executive Director of Human Resources of the candidates proposed to be interviewed.

6.4.5.5       The list of candidates shall then be forwarded to the President of the Synod for his concurrence. The President and board or commission shall engage in dialogue as necessary, acting expeditiously and responsibly, within their respective duties and in the interest of the Synod (Bylaw 1.5.2 [b]), to jointly construct a mutually agreeable slate of candidates (CCM Op. 21-2970) from which the appointment is to be made. In this process they shall be aided by the respective Department of Human Resources.

6.4.5.6       The President or the President's designated representative, normally a full-time elected officer, may participate in any candidate interviews, which shall include at least two designated members of the calling board or commission, and make appropriate recommendations to the calling body.

6.4.5.7       In the case of a Synodwide Corporate/Trust Entity or Commission, the board or commission appoints from the selected slate; in the case of a Mission Office of the Synod, the President appoints from the selected slate of candidates.

Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 86 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 86 of 122

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

6.4.5.8        The details of the appointment, including salary, benefits, and all other employment details must be reviewed and approved by the Executive Director for Human Resources of the applicable agency for compliance with the agency's personnel policies and practices prior to the extension of any offer of employment or any call to an appointee.

6.4.5.9        If the board, commission, or President is not led to appoint, the board or commission may, in consultation with the President, take measures to review the original list of candidates to identify additional candidates for interviews or request that additional candidates be gathered from the field through the Department of Human Resources of the calling agency. In either case, the appropriate provisions of this policy must be applied.

6.4.5.10       Members of the Synod appointed to a position requiring an ordained minister or a commissioned minister shall receive a solemn call. Other ordained or commissioned ministers appointed to positions in the Synod shall be affirmed by the respective board or commission through a solemn call.

6.4.5.11       The chairman of the board or commission and (in the case of boards or commissions of Corporate Synod, the Secretary of the Synod) shall sign appointment and any call documents on behalf of that board, commission, or synodwide corporate entity after following established Synod and corporate policies in the selection of the person to be called or appointed. All such documents, including attachments and salary, shall be approved by the Executive Director of Human Resources prior to being sent.

6.4.5.12       Confidential information provided about nominees shall not be made available to the nominees.

### Synodwide Corporate Entities Calling and Appointing Staff to Positions Requiring an Ordained or Commissioned Minister of Religion

6.4.5.13       In accordance with Bylaw 3.11.1, all positions requiring called ministers shall be filled in consultation with the President of the Synod subject to all appropriate provisions of the Constitution and Bylaws and other policies that apply. Unless otherwise specified by the board of the respective corporate entity, all employees serve at the pleasure of the appointing authorities.

### Calling and Appointing Senior Staff of Mission Offices and Commissions

6.4.5.14       Each person in senior staff positions of mission offices and commissions (executive directors and directors) shall be a member of a congregation of the Synod and shall be appointed in consultation with the President of the Synod according to corporate synod human resources policy. (See Bylaw section 3.11)

6.4.5.15       The following procedures shall be followed:

6.4.5.16       A position description shall be forwarded to the President for his consultation prior to being sent to the Executive Director of Human Resources for legal review and salary administration.

6.4.5.17       At a time determined by the leadership of the office or commission, a list of candidates for the position shall be gathered by the Department of Human Resources according to standard HR procedures.

Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 87 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 87 of 122

The Lutheran Church—Missouri Synod                          Board of Directors Policy Manual

6.4.5.18      The leadership of the office or commission shall review the complete list and notify the executive director of human resources of the candidates to be interviewed.

6.4.5.19      The list of candidates shall then be forwarded by human resources to the President of the Synod for consultation.

6.4.5.20      The President or the President's designated representative, normally a full-time elected officer, may participate in the interview.

6.4.5.21      If the office or commission is led to extend an appointment or a call, it shall make its selection from the candidates interviewed and extend the appointment or call. The details of the appointment or call, including salary, benefits, and all other employment details must be reviewed and approved by the Executive Director of Human Resources for compliance with International Center personnel policies and practices prior to the extension of the appointment or call.

6.4.5.22      If the office or commission is not led to extend an appointment or call, it may ask the screening committee to review the original slate of candidates to identify additional candidates for interviews or request additional candidates be gathered from the field through the Department of Human Resources. In either case, the appropriate provisions of this policy shall be applied.

6.4.5.23      Members of the Synod appointed to a position requiring an ordained minister or a commissioned minister shall receive a solemn call. Other ordained or commissioned ministers appointed to positions in the Synod shall be affirmed by the respective board or commission through a solemn call.

6.4.5.24      The principal staff person of a commission shall sign call and appointment documents on behalf of that commission after following established Synod policies in the selection of the person to be called or appointed. All such documents, including attachments and salary, shall be approved by the executive director of Human Resources prior to being sent.

6.4.5.25      Confidential information provided about nominees shall not be made available to the nominees.

**6.4.6          Housing and Moving Assistance by Synodwide Agencies**

Each synodwide board or commission may provide new employees or transferred employees in the exempt classifications relocation assistance under the policies of the Human Resources Committee.

**6.4.7          The Acceptance of Gifts, Entertainment, or Favors**

6.4.7.1       The acceptance of gifts, entertainment, or favors from any individual or outside concern which does or is seeking to do business with the Synod or the agencies of the Synod.

*Acceptance of Gifts*

6.4.7.2       Each agency of the Synod and Corporate Synod shall maintain a policy regarding the acceptance of gifts, entertainment, or favors from any individual or outside concern which does or is seeking to do business with the Synod or the agency which at a minimum complies with the following:

Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 88 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 88 of 122

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

6.4.7.3     Employees who are offered gifts, entertainment, or favors because of their positions should not feel any entitlement to accept and keep such business courtesies. Although the individual may not use his/her position to obtain business courtesies, and must never ask for them, he/she may accept unsolicited business courtesies that promote successful working relationships and goodwill with the firms that Synod or the Synod agency maintain or may establish a business relationship with.

6.4.7.4     Employees who award contracts or who can influence the allocation of business, who create specifications that result in the placement of business or who participate in the negotiation of contracts must be particularly careful to avoid actions that create the appearance of favoritism or that may adversely affect the Synod's and/or the Synod agency's reputation for impartiality and fair dealing. The prudent course is to refuse a courtesy from a supplier when involved in choosing or reconfirming a supplier or under circumstances that would create an impression that offering courtesies are the way to obtain the business.

### Meals, Refreshments, and Entertainment

6.4.7.5     Employees may accept occasional meals, refreshments, entertainment, and similar business courtesies that are shared with the person who has offered to pay for the meal or entertainment provided that:

(a) They are not inappropriately lavish, unethical, or excessive.

(b) The courtesies are not frequent (more than three per year) and do not reflect a pattern of frequent acceptance of courtesies from the same person or entity.

(c) The courtesy does not create the appearance of an attempt to influence business decisions, such as accepting courtesies or entertainment from a supplier whose contract is expiring in the near future.

(d) The employee accepting the business courtesy would not feel uncomfortable discussing the courtesy with his or her manager or co-worker or having the courtesies known by the public.

### 6.4.8     Accommodation Employment

6.4.8.1     An agency of the Synod shall not extend or maintain "status calls" or otherwise engage in arrangements of "accommodation employment."

6.4.8.2     A "status call" or "accommodation employment" is defined as a call and/or arrangement by which an individual is engaged (other than through written arrangements declaring the person to be an independent contractor) under conditions by which the individual is not directly or regularly accountable to the governing board or commission or executive officer of the agency or a full-time person who is so directly responsible.

6.4.8.3     This policy shall not include those who are directly accountable to the federal, state, or local municipal government to the extent that ecclesiastical endorsement is necessary as to a person holding such position with the government.

## 6.5     Ownership and Management of Lists

6.5.1.1     The two-fold goal of keeping lists is to enhance overall Synod communication and meet regulatory requirements while protecting individual privacy as requested.

Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 89 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 89 of 122

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

| 6.5.2 | Gathering of Lists |
|---|---|

| 6.5.2.1 | Lists are the property of the Synod. This includes all lists created by the Synod or any one of its agencies (Const. Art. IV and XI E 2). All lists are to be used for the benefit of the Synod and its agencies. |
|---|---|
| 6.5.2.2 | The Synod Board of Directors is custodian (Bylaw 3.3.4.7) of all lists and delegates the management of lists according to these policies while maintaining ultimate authority over and responsibility for lists. |
| 6.5.2.3 | Lists created independently by synodwide corporate entities, while still the property of the Synod, will be supervised and managed by those entities. |

| 6.5.3 | Management of Lists |
|---|---|

| 6.5.3.1 | Lists of the membership of the Synod, convention delegates, elected and appointed leaders, and other volunteers of Synod agencies are the responsibility of the Secretary of the Synod. |
|---|---|
| 6.5.3.2 | The Rosters and Statistics Unit of Corporate Synod shall gather and maintain the mailing list of all Synod members, both voting and individual, on behalf of the Secretary. |
| 6.5.3.3 | As the list of members of the Synod is a public record, the Secretary of the Synod may allow the use of this list for outside entities as long as the Synod is fully reimbursed for its costs and effort and such use is in the Synod's interest. |
| 6.5.3.4 | Lists of subscribers for periodicals and electronic news networks are the responsibility of the LCMS Communications Department. |
| 6.5.3.5 | The Office of Rosters and Statistics Unit shall also gather a list of other professional workers in the Synod and lay leaders in the congregations including the chairman of the congregation, the chairman of the Elders, and the chairpersons of the ministry areas. This list shall be gathered with the understanding that it is for the use of the Synod and will not be limited to the mailing of Reporter. |
| 6.5.3.6 | The *Lutheran Witness* list may require additional privacy considerations and will be governed by the LCMS Communications Department policies regarding management of the *Lutheran Witness* list. |
| 6.5.3.7 | Lists of donors to Corporate Synod or its agencies (the "national office") are the responsibility of Mission Advancement (Policy 5.6). |
| 6.5.3.8 | Such lists are the intellectual property of Corporate Synod and shall be handled in accordance with Policy 5.6.1.5. |
| 6.5.3.9 | Agencies shall not fail to report the use of LCMS donor lists by non-Synod entities to the LCMS Board of Directors. |
| 6.5.3.10 | Other lists – Synod employees, vendors, youth, etc., will be governed by the board of the agency maintaining or responsible for the list, with the understanding that lists should be shared whenever possible within the Synod to facilitate communication. As custodian of the lists, the LCMS Board of Directors, through the Chief Administrative Officer, will settle disputes regarding lists between agencies. |

Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 90 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 90 of 122

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

| 6.6 | Contacts with the News Media |
|---|---|

6.6.1.1     Bylaw 3.4.3.7 provides for the President through the Chief Mission Officer to "supervise the content of communications, public relations, and news and information provided by the Synod". Agencies are encouraged to contact the LCMS Communications Department on topics or events where media coverage is desired.

6.6.1.2     The Executive Director the LCMS Communications Department, or his designated representative, shall normally be the initial and primary contact with the public news media.

6.6.1.3     The executive officer of each agency, or designated representative, shall be the chief spokesperson regarding the work of the agency or one of its departments. In communicating synodwide policies and positions, the Synod President, or his designated representative, shall be the chief spokesperson. The executive officers and Synod President will normally work with the staff of the LCMS Communications Department when addressing the public news media.

6.6.1.4     Each agency shall advise the LCMS Communications Department staff of situations, both positive and negative, that could bring questions from the media. Communication Services will assist, as requested, in addressing the situation.

| 6.7 | Use of Synod Logo |
|---|---|

6.7.1.1     The Synod's tri-partite cross logo is a legal, trademarked symbol of The Lutheran Church—Missouri Synod. It may be used only by authorized organizations in a manner consistent with the terms and conditions in the Synod's Graphic Standards Manual published by the LCMS Communications Department and available at lcms.org/logos.

6.7.1.2     Changes to the terms and conditions documents governing the use of the Synod's registered mark(s) shall be approved by the CAO in consultation with legal counsel.

6.7.1.3     All decisions as to other use of the logo and the interpretation of this policy shall be made by the Chief Administrative Officer in consultation with the Executive Director of the LCMS Communications Department and Synod's legal counsel, as necessary.

6.7.1.4     The Chief Administrative Officer in consultation with the Executive Director of the LCMS Communications Department and Synod's legal counsel, as necessary, shall actively object to any unauthorized use of the logo and, where appropriate, take action to prevent any continued unauthorized use.

| 6.8 | The LCMS Website and Internet Presence |
|---|---|

6.8.1.1     The Lutheran Church—Missouri Synod website shall serve as an instrument for carrying out the Synod's objectives as stated in Article III of its Constitution. The following websites may be linked to the LCMS website in accordance with LCMS Internet policies.

6.8.1.2     Each mission office and commission shall maintain a web section (sub-domain) that is an integral component of the lcms.org website. The Internet presence of all mission offices and commissions shall be part (sub-domains) of lcms.org. (In rare instances, specific, unique target audience and business circumstances may require an exception.)

Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 91 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 91 of 122

**The Lutheran Church—Missouri Synod**                    **Board of Directors Policy Manual**

6.8.1.3        All other agencies of the Synod shall have a website that shall be linked to the Synod's website.

6.8.1.4        Each agency's web page should indicate that the agency is an agency of the Synod, display a copyright symbol, and show the date the agency created the current version.

6.8.1.5        Each member congregation of the Synod is encouraged to have a home page and link it to the Synod's website.

6.8.1.6        Auxiliaries and Recognized Service Organizations of the Synod and other organizations linked to the agencies of the Synod through programs or financial support may, by mutual consent, be linked to the Synod's website.

6.8.1.7        Church bodies that are part of the International Lutheran Conference or who are in altar and pulpit fellowship with The Lutheran Church—Missouri Synod may, by mutual consent, be linked to the Synod's website

6.8.1.8        Individuals and non-affiliated commercial organizations shall not be linked to the Synod's website.

6.8.1.9        Synod may remove the links to and from its website for any organization which takes positions contrary to the doctrine and practice of The Lutheran Church—Missouri Synod. Links to external websites are to be jointly monitored by the LCMS Communications Department and the department, mission office, or commission of Synod on which the link appears. Special requests for removal shall come through an officer or district of the Synod and shall be directed to the LCMS Communications Department.

6.8.1.10       Each agency of the Synod shall conform to the following requirements regarding the display and dissemination of information it publishes on the Internet.

6.8.1.11       Each document shall be displayed in its entirety or state which part(s) of the publication is/are being displayed.

6.8.1.12       Each display shall include copyright and/or trademark symbol if applicable and describe any restrictions on the use of the displayed information. Any agency using copyrighted material not created in the agency shall obtain approval for its display in accordance with the Copyright Act of 1976. Questions should be directed to the Executive Director of Communications or to the Synod's Chief Administrative Officer.

6.8.1.13       The display of official information published by the Synod shall provide a proper bibliographic citation which includes the issuing agency, the agency's location, the official date of the publication of the document, and where authorized paper copies if they exist, may be obtained.

6.8.1.14       Forums, blogs, chat rooms, and other Internet discussions, whether mediated or non-mediated, shall include a disclaimer in the introductory material stating that opinions expressed are personal opinions and do not necessarily represent the official opinion of the Synod.

6.8.1.15       The LCMS Communications Department shall be responsible for maintaining the Synod's web presence. The LCMS Information Technology Department shall provide technical services and support to the LCMS Communications Department according to Corporate Synod technology policies. The Chief Administrative Officer shall be responsible for interpreting and administering this policy.

Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 92 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 92 of 122

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

| 6.9 | Special Emphasis Observances |
|-----|------------------------------|

6.9.1.1      Special emphasis days, weeks, months, or Sundays to be observed by more than one district of the Synod shall be authorized by the Administrative Team of the Synod upon recommendation of the interested board, commission, or agency of the Synod. These observance requests include departments within Corporate Synod and agencies of the Synod. Recognized Service Organizations and auxiliaries who seek to have their observances recognized by the Synod must notify the LCMS Communications Department according to the dates and process outlined below.

6.9.1.2      Requests for special observances shall be submitted to LCMS's executive director of Communications no later than January 15 of each year. Such requests should include those observances desired during the upcoming July 1 through June 30 time period. The Communications Department will consolidate the requests into a calendar for recommendation to The Administrative Team. Such recommendations shall be directed to the Chief Administrative Officer for presentation to the Administrative Team. In accordance with the requests of prior conventions, special emphasis observations should be held to a minimum and, where possible, be in harmony with the liturgical church year. Requests for special observance should include the number of years for which the observance is desired, up to three years. There is no limit to the number of times an observance can be recognized as long as a new request is presented for consideration.

6.9.1.3      Worship materials for special observances shall be approved by LCMS Worship Department and the Commission on Doctrinal Review (Bylaw 1.9.1.1) prior to printing.

6.9.1.4      A listing of special observances for the year shall be maintained and publicized by the Synod's Communication Department.

| 6.10 | Contacts with Government Offices (Synod and All Agencies) |
|------|-----------------------------------------------------------|

| 6.10.1 | Contacts with Government Units (Other than the Internal Revenue Service) by the Synod and its Agencies |
|--------|------------------------------------------------------------------------------------------------------|

6.10.1.1      The Commission on Theology and Church Relations' report on "A Lutheran View of Church and State" provides guidance in relating to the Government. The following policy for contacts with Governmental units applies to all agencies of Synod:

       (a) Officers and agencies of Synod, except the President of Synod or his designee, shall not communicate official positions of the Synod to governmental units (except the IRS as outlined below).

       (b) All official statements shall be reported to the LCMS Board of Directors.

       (c) Individuals, members of Synod, membership organizations that Synod belongs to or supports shall not use or associate, in any way the name of The Lutheran Church—Missouri Synod with any policy statement or position.

       (d) Members of Synod and membership organizations to which the Synod belongs shall not act contrary to the doctrine and position statements of the Synod.

| 6.10.2 | Contacts with the Internal Revenue Service by the Synod and Its Agencies |
|--------|--------------------------------------------------------------------------|

6.10.2.1      The Board believes it is in the best interest of The Lutheran Church—Missouri Synod and all agencies of the Synod that there be uniformity and careful planning in connection with

Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 93 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 93 of 122

any contact with the Internal Revenue Service, both at the district and national levels of the Internal Revenue Service. The following policy applies to all agencies of the Synod:

(a) There shall be no contact with any office of the Internal Revenue Service on behalf of the Synod or any agency of the Synod, on any matter whatsoever, without authorization from Synod's general legal counsel, except for Synod's Accounting Department, which will control contacts with the Internal Revenue Service for tax and other matters as agreed upon with the Synod's general legal counsel.

(b) Each approval granted by Synod's general counsel and all important developments shall be reported in the general counsel's quarterly report to the Board. The Executive Director of Accounting will report all important contacts and other developments under the supervision of the Accounting Department in the Accounting Department's Quarterly Report to the Board.

## 6.11    Contacts with the Internal Revenue Service, Congregations and Agencies of the Synod

Services of the Synod's Executive Director of Accounting and staff of the Accounting Department shall be available to congregations and agencies of the Synod when they are contacting or being contacted by the Internal Revenue Service.

## 6.12    Approval of New Corporations as Agencies of the Synod

6.12.1.1    To provide safeguards for the whole Synod while at the same time considering the rights of the districts, seminaries, colleges, and other corporations constituting a part of the Synod (Agencies of the Synod), the Synod in Convention has adopted resolutions which provide directives regarding the creation of new corporations (primarily 1981 Res. 5-07, 2016 Res. 9-02A).

6.12.1.2    Districts, seminaries, colleges and universities and all other corporations constituting a part of the Synod and seeking to establish or utilize another or added corporations for the purpose of carrying on their prescribed activities and responsibilities shall first obtain authorization from the Synod in convention or from the Synod's Board of Directors.

6.12.1.3    Requests for authorization, other than an authorization for the incorporation of a church extension fund of a district, shall be considered when the district, seminary, college, university, or other corporation constituting a part of the Synod follows the procedures outlined, namely:

(a) The petitioning agency shall submit to the Synod's Board of Directors a copy of the proposed Articles of Incorporation and Bylaws of the proposed new corporation together with the date when such new corporation will begin to function. The petitioning agency shall describe the way in which this new corporation will aid in carrying out the petitioning agency's responsibilities. All assumptions pertaining to legal matters shall be accompanied by legal opinion.

(b) The district, seminary, college, university, or other corporation of the Synod or the Board of Directors of any such agency shall be the sole member(s) of the new corporation.

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

(c) Notwithstanding anything in the Bylaws to the contrary, the Articles of Incorporation or other governing documents of each agency shall provide:

(1) That all provisions of its Articles of Incorporation and Bylaws are subject to the provisions of the Constitution, the Bylaws, and the resolutions of the Synod in convention; and

(2) That in the event of dissolution other than by direction from the Synod in convention, the assets of such agency, subject to its liabilities, shall be transferred, consistent with applicable state and federal laws, as follows:

(i) In the case of synodwide corporate entity, district, university, college, or seminary, to The Lutheran Church—Missouri Synod as may be more specifically described elsewhere in the Bylaws;

(ii) In the case of a corporation formed by an agency (as defined in these [Synod] Bylaws), to the agency that formed the dissolving corporation, or if such forming agency is not then in existence, to The Lutheran Church—Missouri Synod itself.

An agency may submit any concerns related to the inclusion of the above language in its governing documents to the Board of Directors of Synod, and the Board of Directors may determine to permit the removal or modification of these provisions for an affected agency.

(d) The Articles of Incorporation and Bylaws of the new corporation shall provide that the Board, officers, and all employees and agents of the corporation, as well as the activities of the corporation, are subject to the Bylaws and resolutions adopted by the Synod in convention, and that all of their provisions as to the supervision or coordination of personal or activities will be applicable to the new corporation to the same extent as if they were directly those of the new corporation.

(e) The Bylaws of the new corporation shall provide that its assets are "property of the Synod" as that term is defined in, and to the extent and for the purposes established in, the Bylaws of The Lutheran Church—Missouri, as the same may be changed from time to time.

(f) The Bylaws of the corporation shall provide that minutes of its Board of Directors or other governing board, and regular independently audited financial statements, shall be promptly furnished to the Board of Directors of the appropriate district, seminary, college, university, or other corporation of the Synod. The Bylaws of the district, seminary, college, university, or other corporation of the Synod shall require its Board of Directors to review and to appropriately respond to the content of those minutes and financial statements.

6.12.1.4     Request for authorization of the incorporation of a church extension fund (CEF) of a district shall be considered when the district complies the following:

(a) The district shall submit to the Synod's Board of Directors a copy of the proposed Articles of Incorporation and Bylaws of the CEF corporation, together with the date when such new corporation shall begin to function.

Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 95 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 95 of 122

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

(b)  The district shall maintain membership control over the proposed CEF corporation by one of the following means.

(1)  The district shall be named as the sole member of the CEF corporation;

(2)  The District Board of Directors and/or elected officers of the district shall be the sole members of the CEF corporation; or

(3)  The member congregations of the district shall be the sole members of the CEF corporation.

(c)  Notwithstanding anything in the Bylaws to the contrary, the Articles of Incorporation or other governments of each CEF shall provide:

(1)  That all provisions of its Articles of Incorporation and Bylaws are subject to the provisions of the Constitution, the Bylaws, and the resolutions of the Synod in convention; and

(2)  That in the event of dissolution other than by direction from the Synod in convention, the assets of the CEF, subject to its liabilities, shall be transferred, consistent with applicable state and federal laws, to the district that formed the dissolving CEF, or if such forming district is not then in existence, to The Lutheran Church—Missouri Synod itself.

(d)  An agency may submit any concerns related to the inclusion of the above language in its governing documents to the Board of Directors of the Synod, and the Board of Directors may determine to permit the removal or modification of these provisions for an affected agency.

(e)  The Articles of Incorporation of the proposed CEF corporation shall provide that the corporation shall be operated in accordance with the Constitution and Bylaws of The Lutheran Church—Missouri Synod.

(f)  The Bylaws of the proposed CEF corporation shall provide that the corporation is finally accountable to the district, that periodic financial reports, including independently audited financial statements, shall be promptly delivered to the Board of Directors of the district.

6.12.1.5  Failure to comply with the above procedures and to receive permission from the Synod in convention or from the Board of Directors to establish or utilize new corporations shall be treated as not a part of the Synod for legal and tax purposes.

| 6.13 | Approval of Foreign Corporations for Mission Purposes |
|------|-------------------------------------------------------|

6.13.1.1  The Synod has found it necessary, for the purpose of gaining entrance to and operating in certain foreign countries, to establish legal entities, usually corporations, under the laws of the countries in which it seeks to conduct mission activities. The establishment of such corporations is not only necessary but also often appropriate to the mission operations of the Synod in foreign countries. If the Synod were to operate without the benefit of a corporation in a foreign country, it could be exposed to a legal liability resulting from its activities. In addition, it is often necessary for the ownership of property in a foreign country that a legal entity in that country be established.

Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 96 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 96 of 122

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

6.13.1.2    The Board, on the recommendation of the Chief Administrative Officer, in coordination with the Chief Mission Officer shall authorize and approve the creation of legal entities in foreign countries, as it deems necessary or appropriate, for the purpose of establishing, facilitating, and/or operating foreign missions.

6.13.1.3    Prior to the establishment of each foreign corporation, the Chief Administrative Officer shall provide the Board with appropriate assurances of the following:

(a)    That each such corporation, when established, shall be a properly authorized, valid and operating legal entity within the country in which it is established and that its establishment and operation by the Synod will not violate the laws of that country, as evidenced by an opinion of local or special counsel engaged for the purpose of forming the foreign corporation, such opinion to be in form and content approved by Synod's general counsel.

(b)    That the corporate charter, or other governing instrument, of each legal entity authorized by the Board shall be reviewed and approved by Synod's general counsel, to verify that the Synod retains majority control over the appointment or election of the members and/or directors who are responsible for the management of the corporation and that its stated purposes are in fulfillment of the Synod's foreign mission policies and purposes.

(c)    Governing documents of the agency to be formed have been reviewed and approved by the Commission on Constitutional Matters.

6.13.1.4    The budget, financial operations, and programs and activities of each such foreign corporation shall be periodically reviewed by LCMS Accounting and Internal Audit, as appropriate, with the assistance of the Office of International Mission.

## 6.14    International Center Facilities and Services

6.14.1.1    The Board, as well as other owners of the International Center, has delegated to the Facilities Management Committee the responsibility for the operation of the LCMS International Center properties, the buildings, and any off-site leased facilities. The Facilities Management Committee establishes policies and procedures for operating the building and providing office services.

6.14.1.2    The Chief Financial Officer is the Board's representative on the Facilities Management Committee which also includes the executive officers (or their designees) of The Lutheran Church—Missouri Synod Foundation and Concordia Plan Services as voting members and the Synod's Chief Administrative Officer as an advisory member and chairman.

6.14.1.3    In carrying out his responsibilities with regard to the Facilities Management Committee, the Chief Financial Officer shall:

(a)    Ensure changes to the International Center Protocol Agreement or authorization of new buildings or space additions on the International Center properties or off-site leases receive prior Board approval.

(b)    Ensure that the Facilities Management Committee or management policies do not conflict with the applicable law and provide for the equitable sharing of costs of operating the International Center properties between the entities located therein.

Exhibit 5 to Defendants' Motion to Dismiss
Page 97 of 122

The Lutheran Church—Missouri Synod                              **Board of Directors Policy Manual**

---

| 6.15 | **Monitoring** |
|------|----------------|

See Policy section 4.21.

| Section Revision History |
|---|
| 2022.08.26        6.4 General Human Resources Policies of the Synod – Revised |
| 2022.11.18        § 6 – Comprehensive Revision |
| 2023.05.19        6.3.3 Property of Synod held by Colleges, Universities and Seminaries – Revised |

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

---

# § 7    Management Policies for Agencies Outside of Corporate Synod

The following policies, *in addition to those included in Policy section § 6*, apply to Agencies of the Synod that are outside of Corporate Synod ("Agencies outside Corporate Synod")

## 7.1    Accounting Policies (Agencies Outside of Corporate Synod)

### 7.1.1    Compliance with Generally Accepted Accounting Principles

Agencies of Synod shall not violate principles or practices of "Generally Accepted Accounting Principles" for not-for-profit organizations as determined by the Financial Accounting Standards Board and the American Institute of Certified Public Accountants.

### 7.1.2    Compliance with Internal Revenue Service requirements

Agencies of the Synod shall not violate IRS requirements.

## 7.2    Financial Transaction Policies (Agencies Outside of Corporate Synod)

### 7.2.1    Sharing of Financial Information

7.2.1.1    Each agency of the Synod shall, within 15 calendar days following their preparation, provide the Synod Chief Financial Officer and Executive Director of Accounting its quarterly interim financial statements, and shall also, within 30 days of receiving its annual audited financial statements, provide the Synod Chief Financial Officer and Executive Director of Accounting its annual audited financial statements. These filings may be in electronic form in a format acceptable to Chief Financial Officer of the Synod.

7.2.1.2    Each agency of the Synod shall promptly respond to requests for financial information in accordance with Bylaw 1.5.4 ("Full Financial Disclosure") and all other applicable bylaws.

### 7.2.2    Contributions for Foreign Work

7.2.2.1    Under Section 170 of the Internal Revenue Code, individuals cannot take a tax deduction for contributions made directly to or earmarked for individuals or foreign corporations not under the control of the Synod. To be deductible, the contribution must be made to a U.S. tax-exempt corporation, namely, the Synod or one of its agencies. Contributions to the Synod, with the request that the Synod use those funds in connection with its own operations and activities in a particular foreign country, are deductible for tax purposes.

7.2.2.2    No agency of the Synod shall accept gifts for transmittal to an individual or a foreign corporation not a part of the Synod. When such gifts are offered, contact should be made with the staff of the Synod's Department for Mission Advancement to try to structure a legitimate way to honor the intent of the potential donor.

7.2.2.3    Each agency of the Synod shall channel all contributions for foreign workers through the Synod's Office of International Mission (Bylaw 3.8.3), which, under that same Bylaw, "serves as the only sending agency through which workers and funds are sent to the mission areas of the Synod"

Case 1:23-cv-01042-DAE     Document 13-5     Filed 04/03/24     Page 99 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 99 of 122

The Lutheran Church—Missouri Synod                    **Board of Directors Policy Manual**

| | |
|---|---|
| **7.2.3** | **Foreign Bank Accounts and Currency Transactions** |

Agencies not of Corporate Synod shall consult with the Synod Chief Financial Officer prior to making foreign currency transactions.

| | |
|---|---|
| **7.2.4** | **Grants by Agencies** |

7.2.4.1    Synodwide corporate entities shall consult with the Synod's Board of Directors prior to making any grants to or for the mission offices or commissions of Corporate Synod.

7.2.4.2    The Synod's Board of Directors shall approve the usage of any undesignated surplus funds released to the Synod by synodwide corporate entities. The proposed usage will normally be made in the budgeting process.

| | |
|---|---|
| **7.2.5** | **Income Management – Fund Raising** |

Agencies seeking to use Corporate Synod fund-raising support services (and accompanying fund-raising communications services) must first obtain written agreement from the Chief Mission Officer.

| | |
|---|---|
| **7.2.6** | **Authorization to Deal in Securities** |

7.2.6.1    Securities received in bequests, legacies, and gifts by an agency of the Synod, unless otherwise instructed by the donor, shall be sold at the earliest feasible time and at the highest price possible.

7.2.6.2    The governing board of each corporate agency of the Synod shall designate a person(s) to execute securities transactions.

| | |
|---|---|
| **7.2.7** | **Expense Accounts** |

All requests for reimbursement (travel expense reports, check requests, etc.) shall be approved by someone other than the payee. Reimbursement requests must be signed, prior to being paid, by the person responsible for the budgeted expense or his/her superior.

| | |
|---|---|
| **7.2.8** | **Reimbursement; Compensation of Board, Commission, and Committee members** |

7.2.8.1    Agencies of the Synod shall not compensate board, commission, and committee members but will reimburse them for reasonable travel, lodging, meals, and other incidental expenses with such service. Exceptions for pulpit or classroom or similar substitute workers must be approved by the governing board to which the board, commission, or committee is accountable.

| | |
|---|---|
| **7.2.9** | **Expansion of Operations, Synodwide Corporate Entities and Concordia Plan Services** |

7.2.9.1    Any synodwide corporate entity or Concordia Plan Services (CPS) that contemplates expanding its operations to encompass purposes or to offer services, resources, or products that may not, in the final determination of the Synod Board of Directors (Synod BOD), be consistent with the powers and duties specifically set forth for the entity in the Bylaws of the Synod (Bylaw 3.6.1.6), when such expansion of operations involves annual gross expenses of $100,000 or more (regardless of offsetting income potential), shall immediately notify the Synod BOD of the contemplated plan and present any final plan

Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 100 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 100 of 122

The Lutheran Church—Missouri Synod                    **Board of Directors Policy Manual**

to the Synod BOD for review and approval, consistent with Bylaws 3.3.4.3, 6 and 3.6.1.6 [g] and, in the case of LCEF, Bylaw 3.6.4.4.1, before implementing said plan.

7.2.9.2    No synodwide corporate entity or CPS shall acquire, create, or enter into any corporate entity, partnership, or joint venture without the express written approval of the Synod BOD.

## 7.3    Audit Policies (Agencies Outside of Corporate Synod)

### 7.3.1    Audits Required

7.3.1.1    Each agency of the Synod shall have an annual financial statement audit (Bylaw 3.3.4.6[b])

### 7.3.2    Selection of Auditors

7.3.2.1    The governing board for each agency shall engage its auditors. The auditor may be a firm of Certified Public Accountants, a Certified Public Accountant, or, if not prohibited by applicable state or federal law, the Synod's Internal Audit Department.

7.3.2.2    For maximum audit efficiencies and economies, the synodwide corporate and trust entities are encouraged to appoint the same audit firm utilized by the Synod.

### 7.3.3    Sharing of Audited Financial Statements

7.3.3.1    Synodwide Corporate Entities, the Synod's colleges, universities, seminaries, and Concordia Plans and Concordia Plan Services shall, upon receipt, provide their audited financial statements to the Board of Directors through the Synod's Chief Financial Officer in accordance with Bylaw 3.3.4.6[c]).

7.3.3.2    Other agencies of the Synod shall upon request of the Board or the Chief Financial Officer provide the same.

### 7.3.4    Audit Committee

7.3.4.1    The governing board of each corporate agency shall appoint an audit committee. The board itself may serve as the committee. Each audit committee shall meet at least annually with the agency's auditors.

### 7.3.5    Reporting of Legacies and Bequests

7.3.5.1    Legacies and bequests made to agencies of the Synod shall be reported annually to the Chief Financial Officer as part of the audit process (Bylaw 3.4.1.3 [f]).

## 7.4    Insurance Policies (Agencies Outside of Corporate Synod)

### 7.4.1    Insurance Coverage

7.4.1.1    Each corporate agency of the Synod shall maintain property and liability insurance coverage under the Synod's insurance program or through other carriers with types and amounts of coverages which are consistent with those in the Synod's program.

7.4.1.2    Note: Since separate insurance programs are primarily maintained by the Synod's district offices, their programs are on a smaller scale and the districts are not able to sustain (or afford) deductible/retention amounts consistent with the Synod's.

7.4.1.3    Insurance coverage shall be in the following areas:

Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 101 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 101 of 122

**The Lutheran Church—Missouri Synod**                     **Board of Directors Policy Manual**

(a)  Mandatory lines of coverage that may be separately procured by the entity or through the Synod's master insurance program:

    (1)  General Liability

    (2)  Workers Compensation

    (3)  Automobile Liability (owned and/or hired, non-owned)

    (4)  Umbrella

    (5)  Sexual Misconduct

    (6)  Pastoral Counseling

    (7)  Directors and Officers Liability

    (8)  Employment Practices Liability

    (9)  Crime

    (10) Special Crime

    (11) Fiduciary Liability

    (12) Cybersecurity

    (13) Data Breach

    (14) First Party Property Coverage, including:

        (i)    Comprehensive all-risk first party coverage on all real and personal property

        (ii)   Boiler and Machinery

        (iii)  Inland Marine

        (iv)   Fine Arts

        (v)    Electronic Data Processing

        (vi)   Stained glass coverage

        (vii)  Primary Flood and Earthquake

        (viii) Business Interruption/Extra Expense

(b)  Additional lines of coverage that require formal coverage and exposure analysis to determine if coverage is advisable:

    (1)  Educators Legal Liability (mandatory for school exposures)

    (2)  Bankers Professional Liability (mandatory for CEF and Foundation exposures)

    (3)  Foreign (property and liability) package

    (4)  Non-owned Aircraft Liability

    (5)  Difference in Conditions (a.k.a. excess flood & earthquake)

    (6)  Environmental Storage Tank Liability

Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 102 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 102 of 122

**The Lutheran Church—Missouri Synod**          **Board of Directors Policy Manual**

    (7)    Special Crime (a.k.a. kidnap and ransom)

    (8)    Fidelity Blanket Bond – for Church Extension Fund (CEF) exposures

    (9)    Mortgagee and Foreclosure Liability – for CEF exposures

    (10)  Fiduciary Liability – if the agency does not participate in the Concordia Plans

    (11)  Limited Professional Liability

    (12)  Other areas as determined by Chief Financial Officer of the Synod

7.4.1.4    Minimum policy limits and maximum deductibles in all lines of insurance coverage purchased by the Synod for its insurance program shall be approved by the Synod's Board of Directors upon recommendation of the Chief Financial Officer of the Synod.

7.4.1.5    The Chief Financial Officer serves as the Board's representative on insurance matters involving other corporate and trust entities.

7.4.1.6    The Chief Financial Officer of the Synod shall maintain an insurance reserve to cover the differences between the claims of agencies in the Synod insurance program and the deductibles in the respective policies.

7.4.1.7    Due to the need for appropriate coverages and the economies of scale that result from combined purchases of insurance coverage, it is preferable that all agencies of the Synod participate in the Synod's insurance program. If however, an agency's governing board, after consultation with the office of the Chief Financial Officer of the Synod, elects to purchase separate insurance, it shall provide complete copies of all its insurance policies including all endorsements to the Chief Financial Officer of the Synod.

**7.4.2**    **Administration of the Synod's Insurance Program**

7.4.2.1    The Synod's insurance program shall be administered by the Chief Financial Officer of the Synod.

7.4.2.2    Agencies of the Synod covered under the Synod's insurance policies will be billed for their proportional and allocated premium amounts based upon their individual exposures.

7.4.2.3    Each agency will be provided with annual copies of the Final and Bound Insurance Summary containing a Risk Management Procedures Manual for administering the Synod's insurance program, including the reporting of claims, ordering certificates of insurance and reporting changes to property and automobile exposures.

7.4.2.4    Each agency will be provided various financial reports such as the Insurance Deductible Pool Status Report and the Loss/Claim Summary on a periodic basis throughout the policy year in order for each agency to monitor and/or prepare for budget effects.

**7.5**    **Legal Policies (Agencies Outside of Corporate Synod)**

For corresponding policies applicable to Corporate Synod and its included agencies, see Policy section 4.18.

***Scope***

7.5.1.1    Agencies of the Synod outside of Corporate Synod, including Synod-wide corporate and trust entities

Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 103 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 103 of 122

The Lutheran Church—Missouri Synod                    **Board of Directors Policy Manual**

---

*Definitions*

7.5.1.2    **Agency**: An instrumentality other than a congregation or Corporate Synod, whether or not separately incorporated, which the Synod in convention or its Board of Directors has caused or authorized to be formed to further the Synod's objectives.

(a)    Agencies include each board, commission, council, seminary, university, college, district, Concordia Plan Services, and each synodwide corporate entity.

(b)    The term "agency of the Synod" does not describe or imply the existence of principal and agency arrangements as defined under civil law. (Bylaw 1.2.1[a])

**NOTE**: While included in the Bylaw definition of "Agency" (see definitions, above), this policy does not apply to the following agencies of the Synod which are structurally part of Corporate Synod and thereby subject to the policies for Corporate Synod: the Commission on Theology and Church Relations, the Board for National Mission, the Board for International Mission, the Commission on Constitutional Matters, the Commission on Handbook, the Commission on Doctrinal Review, the Board for Church Extension, and others as may be created from time to time.

7.5.1.3    **Corporate Synod**: See Bylaw 1.2.1 (d).

7.5.1.4    **Synod**: See Bylaw 1.1.1 (v).

7.5.1.5    **Property of the Synod**: See Bylaw 1.2.1 (r).

7.5.1.6    **Litigation**: Every proceeding before in a court, of record or involving any administrative agency, regulatory agency, or quasi-judicial agency, or other secular or governmental body, whether such court or agency be local, state, federal, or foreign, and including any arbitration proceeding.

7.5.1.7    **Claim**: A demand for relief and every circumstance where litigation is anticipated or reasonably likely to ensue, and includes investigations by law enforcement agencies, administrative agencies or any other investigation where litigation could result.

7.5.1.8    **Litigation brought against an agency of the Synod:** Shall include litigation in which an agency of the Synod is named as a party or interested person, or in which a board, commission, committee, officer, volunteer, missionary, or employee of an agency of the Synod is named as a party or interested person and is alleged to have been acting in their capacity as such or on behalf or for the benefit of an agency of the Synod.

**7.5.2**    **Engagement of Legal Counsel by Agencies of the Synod**

*Purpose*

7.5.2.1    To identify the parties responsible for appointing legal counsel for agencies of The Lutheran Church—Missouri Synod and subsequent notification to the Synod Board of Directors.

7.5.2.2    To outline the availability and use of LCMS legal counsel to assist agencies of the Synod

*Policy*

7.5.2.3    The Lutheran Church—Missouri Synod Board of Directors has the powers and duties under the Synod Bylaws to engage legal counsel for the guidance of the Synod Board and to provide advice and counsel to the officers and agencies of the Synod.

---

Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 104 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 104 of 122

**The Lutheran Church—Missouri Synod**                    **Board of Directors Policy Manual**

7.5.2.4      The governing board of each agency of the synod and each synodwide corporate or trust entity shall select legal counsel for its organization.

7.5.2.5      The Synod's general counsel may provide legal counsel for these entities, except to the extent the provision of legal services creates a conflict of interest, in which case the Synod's general counsel must advise the Board of Directors of the Synod and the interested agency or synodwide corporate or trust entity of the conflict to determine whether a waiver of the conflict is possible and appropriate.

7.5.2.6      Upon approval of the Chief Administrative Officer or the Board of Directors, the Synod's general counsel may be made available to assist other agencies of the Synod in their selection of legal counsel; to the extent, such agencies have the authority to select legal counsel.

7.5.2.7      All agencies of the Synod shall promptly inform the LCMS Chief Administrative Officer of the names of all legal counsel engaged by those agencies.

7.5.2.8      In certain circumstances and upon approval of the LCMS Chief Administrative Officer, the Synod's general counsel may be made available to legal counsel of agencies of the Synod in order best to coordinate the legal affairs handled by the Synod and those handled by the agencies of the Synod and to ensure that the highest quality of legal services are provided efficiently.

7.5.2.9      All officers, executives, and agencies of the Synod shall work through the LCMS Chief Administrative Officer concerning the use of the Synod's general counsel or other legal counsel.

### Procedure

7.5.2.10     The selection or renewal of general counsel for agencies shall follow the process developed by each governing board for their respective agency.

7.5.2.11     Notification of litigation should be made to:

             The Lutheran Church—Missouri Synod
             Chief Administrative Officer
             1333 S. Kirkwood Road
             St. Louis, MO 63122

             or via email to BOD@LCMS.org

7.5.2.12     Inquiries regarding the availability and use of Synod's legal counsel should be directed to the LCMS Chief Administrative Officer at 314-996-1350.

### 7.5.3     Initiating Litigation

### Purpose

7.5.3.1      To identify parties having authority and responsibility for initiating litigation on behalf of agencies of the Synod.

### Policy

7.5.3.2      The Synod Board of Directors recognizes that any participation in litigation by an agency of the Synod may have an adverse effect on the Synod as a church organization and that litigation must, therefore, be entered into only when it has been responsibly determined

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

that such is likely to serve the best interests of the Synod and, when applicable, all of the Synod's avenues for conflict resolution have been exhausted.

7.5.3.3    Separate synodwide corporate and trust entities and the districts may, pursuant to their corporate duties and responsibilities, initiate litigation on behalf of themselves, but they may not initiate any lawsuit, arbitration, or administrative proceeding in the name of The Lutheran Church—Missouri Synod or which may have a legal or adverse impact upon the Synod or any other agency of the Synod without the prior approval of the Board of Directors of the Synod or, in cases of emergency, the Executive Committee of the Board of Directors.

7.5.3.4    Within the confines of the previous paragraph, an agency of the Synod shall initiate such litigation only with prior approval by the Synod Board of Directors or its Executive Committee if the nature of any issue involved in such litigation may involve financial or other interests or property of the Synod not exclusively limited to the agency.

7.5.3.5    The executive officer of each agency of the Synod shall, when contemplating the initiation of any litigation, promptly so notify the Chief Administrative Officer of the Synod and shall not file the same without undertaking the following:

7.5.3.6    The chief executive officer of each agency of the Synod, either directly or through the agency's legal counsel, shall, prior to filing the same, cause the initial pleading (for example, the initial complaint/petition, motion for temporary restraining order or other initial pleading) to be sent to the Synod's legal counsel for review and to the Chief Administrative Officer of the Synod for any action necessary under this policy. In addition, the chief executive officer of each agency of the Synod, either directly or through the agency's legal counsel, shall inform the Synod's legal counsel of any substantive developments in litigation and proceedings in which it is involved and otherwise provide updates with respect thereto as requested by the Synod's legal counsel from time to time.

7.5.3.7    Any agency of the Synod which violates the foregoing regulations with respect to the initiation of litigation may be ordered by the Board of Directors to withdraw from the litigation. The decision of whether litigation is within the confines stated above shall be made by the Executive Committee of the Synod Board of Directors which shall promptly report each such decision to the full Board of Directors, provided however that the agency of the Synod may appeal the decision of the Executive Committee to the entire Board of Directors, the decision of which shall be final and conclusive.

*Procedure*

7.5.3.8    Notification to the Synod Board of Directors should be communicated via the LCMS Chief Administrative Officer at BOD@lcms.org or 314-966-1350.

7.5.3.9    Contact with Synod's general counsel should be routed via the LCMS Chief Administrative Officer.

**7.5.4**    **Responding to Litigation**

*Purpose*

7.5.4.1    To identify a process by which litigation brought against Synod agencies is reported to the Synod Board of Directors.

Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 106 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 106 of 122

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

| *Policy* | |
|---|---|

7.5.4.2    The Lutheran Church—Missouri Synod Board of Directors recognizes that any response by an agency of the Synod to litigation brought against it may impact the Synod and other agencies of the Synod. Cooperation and, in some cases, coordination in such responses is therefore a necessity.

7.5.4.3    The executive officer of each agency of the Synod shall promptly advise the Chief Administrative Officer of the Synod of every litigation brought or claim asserted against the agency, its officers, staff, employees, volunteers, and missionaries, and/or its agencies, their officers, staff, missionaries, and volunteers.

7.5.4.4    The Chief Administrative Officer will promptly notify LCMS general counsel of the reported litigation or claim and ensure that the general counsel monitors the progression of the litigation to protect Synod's interests and coordinate any required Synod response.

7.5.4.5    The Chief Administrative Officer will ensure that LCMS general counsel reports to the Board quarterly each litigation that may have an impact upon the Synod or other agencies of the Synod.

| *Procedure* | |
|---|---|

7.5.4.6    Notification of litigation should be made to:

The Lutheran Church—Missouri Synod
Chief Administrative Officer
1333 S. Kirkwood Road
St. Louis, MO 63122

or via email to BOD@LCMS.org

7.5.4.7    Inquiries regarding the availability and use of Synod's legal counsel should be directed to the LCMS Chief Administrative Officer at 314-996-1350.

| **7.5.5** | **Participation by the Synod and/or Its Agencies in Judicial Proceedings as Amicus Curiae or in Support of a Member Congregation** |
|---|---|

7.5.5.1    Participation in judicial proceedings as *amicus curiae* or in support of a member congregation shall only be by the Synod and shall not be by any agency of the Synod (see Policy section 4.18.5).

| **7.6** | **Monitoring** |
|---|---|

See Policy section 4.21.

| Section Revision History | |
|---|---|
| 2022.11.18 | § 7 – Comprehensive Revision |
| 2022.11.18 | 7.2.9 Expansion of Operations, SCE and CPS – Adopted |

Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 107 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 107 of 122

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

## § 8    Auxiliaries and Recognized Service Organizations

### 8.1    Auxiliary Organizations

8.1.1.1    The Board has certain responsibilities with respect to the Synod's Auxiliary Organizations (at present, the International Lutheran Laymen's League and the Lutheran Women's Missionary League). The Board:

(a) receives applications for recognition as an Auxiliary Organization of the Synod for presentation to a convention of the Synod (Bylaw 6.1.2)

(b) makes itself available for coordination of plans and programs of Auxiliaries, as relate to the Board's area of responsibility, and coordinates with the Auxiliaries as needed (Bylaw 6.1.2.1 [d])

(c) receives and reviews each Auxiliary's annual program report (Bylaw 6.1.3).

(d) maintains criteria for statements to be included in Auxiliary documents as required by Bylaw 6.1.3 (e).

8.1.1.2    Pursuant to Bylaw 6.1.3 (e), each Auxiliary of the Synod shall indicate in all of its agreements of a financial nature, statements of ownership, financial offers, and other legal documents, agreements, and promotional materials, and all other communications of a financial nature that:

(a) It is responsible for its own debts and liabilities.

(b) Its being an Auxiliary is not:

(1) an endorsement by the Synod of its organization and administration.

(2) a guarantee on the part of the Synod for the fiscal solvency of, or any financial responsibility for, the organization

(3) an endorsement by the Synod or guarantee on the part of the Synod of services expressly offered or implied.

### 8.2    Granting of Recognized Service Organization (RSO) Status by Synod Mission Offices

#### 8.2.1    Ends of RSO Program

8.2.1.1    Through the recognition of service organizations that (Bylaw 6.2.1):

(a) are and remain structurally independent of the Synod;

(b) foster the mission and ministry of the church;

(c) engage in program activity that extends the mission and ministry of the Synod;

(d) are in harmony with the programs of the mission boards and offices (i.e., the Board for / Office of National Mission and the Board for / Office of International Mission) and pastoral education programs of the Synod; and

(e) respect and do not act contrary to the doctrine and practice of the Synod, as established in the Scriptures and Lutheran Confessions (Constitution Article II)

Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 108 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 108 of 122

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

and elaborated from time to time by the Synod in convention as it seeks to clarify its witness or settle doctrinal controversy (Bylaw 1.6.2),

8.2.1.2    the granting mission offices, under applicable policies, seek the following demonstrable outcomes:

(a)  The unity of the true faith (Eph 4:3–6) is tangibly and demonstrably promoted, beyond the unaided capacities of the congregations and agencies of the Synod (Const. Art. III 1), in word and deed, through such organizations coordinating with member congregations, districts, and other agencies of the Synod.

(b)  Congregations of the Synod and their members are strengthened in their witness and provided with expanded opportunities to express their Christian concern, love, and compassion in meeting human needs (Const. Art. III 2, 4) in their communities and throughout the world.

(c)  Those being served with Christian concern, love, and compassion in meeting human needs are served in an extension of the divine mercy, without compromising the church's scriptural standards, and in a manner flowing from and directed towards the Word and Sacrament ministry of Synod congregations and missions.

(d)  Such organizations will inform related Synod ministries of their activities and coordinate with them in a manner that is constructive, mutually beneficial, and that increases the reach and effectiveness of both in mission.

(e)  The Synod and its agencies and members are provided with concrete means for providing encouragement to faithful and bold witness, in word and deed, and for addressing concerns with such organizations' activities, as they relate to congregations and partner churches of the Synod and to the impact and/or reflection of the organization's work on the mission and ministry of the church.

(f)  Protection is provided for rostered workers called or otherwise employed by such organizations in the performance of their official duties and maintenance of their rights (Const. Art. III 9).

(g)  Access to benefits of recognition is managed responsibly and uniformly and in a manner that efficiently furthers the Synod's goals in establishing and maintaining the services offered.

(h)  Congregations and individuals of the Synod are provided reasonable assurance that in supporting the efforts of such organizations they are supporting activities that, while independently governed, are aligned with and benefit the goals congregations like theirs have set out for their mission work together (for example, in the constitutional objectives and mission priorities of the Synod).

(i)  The costs of administrative activities related to the program and of benefits extended are justified by a return in mission extension and multiplication for the congregations of the Synod and aligned with their mission objectives.

### 8.2.2    Bylaw-Mandated Requirements for Recognition of Service Organizations

Initial and renewal grants of recognized service organization (RSO) status are to be carried out by the granting mission office(s) under a standard form of agreement that accurately

Exhibit 5 to Defendants' Motion to Dismiss
Page 109 of 122
Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 109 of 122

The Lutheran Church—Missouri Synod                    **Board of Directors Policy Manual**

and fully reflects the requirements of Bylaws 6.2.1-6.2.2.2 (RSO Agreement). The standard form of RSO Agreement shall also accurately and fully reflect such policies and other criteria, developed by the Board of Directors, mission boards and granting mission offices of the Synod, as are in effect at the time status is granted, including, without limitation, those requirements set forth in Policy section 8.2. Organization status under such RSO Agreements is to be regularly monitored, throughout the term of such RSO Agreements, by the granting mission office(s) according to all such policies and criteria.

| 8.2.3 | **Board of Directors Approval of Standard Form of Agreement** |
|---|---|

8.2.3.1    The Board of Directors will approve a standard form of RSO Agreement to be entered into by the Synod and each recognized service organization (Bylaw 6.2.3 [a]). The form may be amended from time to time as the need arises and circumstances change. The Secretary shall maintain a file of all such standard forms of RSO Agreement and coordinate proposals for changes to the standard form of RSO Agreement, as proposed by the Board, mission boards, or granting office(s).

8.2.3.2    The Chief Administrative Officer may at his sole discretion individually waive or limit the following provision(s) of the standard form of agreement upon (1) request by the applicant organization for a provision to be waived or limited and (2) demonstration by the granting mission office that the granting of status without inclusion of, or with limitation of, said requirement in the agreement is reasonable given the particular circumstances of the registered service organization and the services provided thereby:

- Under Section 4 (f), Insurance, the following provision: "For so long as this Agreement remains in effect, the Organization shall cause the LCMS to be named as an additional insured on all policies of liability insurance maintained by the Organization."

Any waiver or limitation granted under this policy shall apply to no more than a single term of recognition and shall be memorialized with a memorandum signed by the Chief Administrative Officer and attached to the agreement.

| 8.2.4 | **Board of Directors Policies and Criteria for RSO Program Administration** |
|---|---|

As provided in Bylaw 6.2.3 (a), the Board of Directors is responsible for certain categories of common policies and criteria for granting RSO status to guide the granting mission offices' administration of the RSO program, with other categories of policies and criteria developed by the mission boards (in consultation with the Council of Presidents) and granting mission offices of the Synod, all to be consistent with the provisions of Bylaw 6.2.4. In addition to approving the standard form of RSO Agreement, the Board develops policies "relating to expectations for the corporate structure and governance of the organizations, statements regarding their legal and corporate independence from the Synod, and the necessary relation of their work to the mission and ministry of the Synod as generally expressed in its Constitution and Bylaws." Such policies are stated as follows:

8.2.4.1    Applications for status shall be made to the Office of the Secretary (OTS), which shall direct the request to the appropriate granting mission office(s) for processing.

8.2.4.2    OTS shall monitor the administration of the RSO program as it relates to concerns of the Board of Directors and the compliance with its related policies.

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

8.2.4.3      OTS shall monitor and provide suggestions on the additional policies and criteria provided by the mission boards and granting mission offices to assure that the unique needs of those agencies, offices, and the expectations of the Synod are met.

8.2.4.4      OTS shall list all recognized service organizations in The Lutheran Annual, prefaced by a statement that:

(a) Recognized service organizations operate with freedom and self-determination under the governance and policies of their own boards in establishing and evaluating their organizational, financial and administrative objectives, activities and programs, cooperating with Synod in mission pursuits and common objectives but avoiding the commingling of governance authority with the governance, officers, and employees of Synod and its agencies.

(b) Recognition by the Synod (i) is not an endorsement or guarantee of the fiscal solvency of the organization, nor of any services or programs offered, (ii) does not express or imply endorsement or guarantee of the fiscal solvency of the organization or any Synod responsibility for or guarantee of the debts or other financial obligations of the organization, and (iii) does not cause the Synod or its districts or congregations to incur, guarantee or be subject to or responsible for the liabilities or debts of the recognized service organization or its subsidiaries and/or affiliates. Such provisions are subject to approval by Synod's legal counsel.

8.2.4.5      Initial grants and periodic renewals of RSO status shall be carried out by the granting mission office(s) under an RSO Agreement that accurately and fully reflects the following requirements, and status under such RSO Agreement shall be monitored regularly by the granting mission office(s) according to the following criteria:

(a) Recognition of a service organization by the Synod as an RSO acknowledges the organization as a separately governed ministry that is not a part of the constitutional, legal structure of the Synod. However, the granting of RSO status does not imply accreditation or certification of the organization or its programs. The Lutheran Church—Missouri Synod and its agencies disavow any participation in or responsibility for the governance, policies and programs of the organization and all other operations and activities of the organization and make no representations or guarantees regarding the fiscal solvency or financial responsibility of the organization or any services that it expressly or implicitly offers. A recognized service organization, therefore, is not allowed to make any contrary claims or representations for any purpose. It may, however, freely assert its adherence to the confession it publicly and as a matter of agreement shares with the Synod and its First Amendment rights to free exercise of its beliefs in accordance with such confession.

(b) RSO status is granted to the organization identified in the RSO Agreement executed by the recognized service organization and the Synod office or agency. Subsidiaries and affiliates of the requesting organization are excluded from the RSO Agreement and are not entitled to RSO status unless specifically identified in the RSO Agreement as being party to the RSO Agreement or said subsidiary or affiliate enters into a separate RSO Agreement.

Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 111 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 111 of 122

The Lutheran Church—Missouri Synod                    **Board of Directors Policy Manual**

(c)  Recognized service organizations shall provide appropriate representation on their governing boards by members of Synod congregations, especially in the case of cooperation-in-externals organizations, in consultation with the granting mission office(s). Appropriate levels of representation will be determined, within the constraints of Bylaw 6.2.2, by the policies of the granting mission office(s), subject to parameters established by the relevant mission board of the Synod. A cooperation-in-externals organization is an organization that is not a member of or in any way affiliated with the Synod such as a governmental agency or organization of another denomination.

(d)  The granting mission office(s) shall assure, for the protection of both Synod and the recognized service organization, that the governance of the organization is not commingled with the governance of the Synod or its agencies. Board members of recognized service organizations that are simultaneously officers, board members, or employees of Synod or of any of its agencies shall disclose such participation in writing to the Board of Directors of the Synod through OTS, and certify that such participation is solely in that person's individual capacity and is not an ex officio, elected, appointed, or designated representative of the Synod or the agency served. Such participation must also be disclosed, under Bylaw 1.5.21.5.2, to the Synod or agency served.

(e)  Organizations at the granting of status and throughout the duration of the period of RSO status shall:

(1)  Provide evidence that the organization has independently obtained Internal Revenue Code Section 501(c)(3) tax exemption.

(2)  Operate with freedom and self-determination under the governance and policies of their own boards in establishing and evaluating their organizational, financial and administrative objectives, activities and programs, cooperating with Synod in mission pursuits and common objectives but avoiding the commingling of governance authority with the governance, officers, and employees of Synod and its agencies.

(3)  Provide evidence that the organization engages, as appropriate to its specific class and tier of status, in program activity that demonstrably extends the mission and ministry of the Synod, that is intentionally and consistently in harmony with the programs of the Synod, and that intentionally and consistently respects and does not act contrary to the doctrine and practice of the Synod.

(4)  Provide evidence that the organization has adopted ethical and responsible fundraising policies and practices.

(5)  Provide evidence that, in the event of dissolution of the corporation, any residual assets shall be distributed to another 501(c)(3) organization.

(6)  Include in their charter, articles, by-laws, and all other governing documents, as applicable, the provision specified in the RSO Agreement to the effect that recognition by the Synod (i) is not an endorsement or guarantee of the fiscal solvency of the organization, nor of any services or programs offered, (ii) does not express or imply endorsement or guarantee

Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 112 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 112 of 122

The Lutheran Church—Missouri Synod                 Board of Directors Policy Manual

of the fiscal solvency of the organization or any Synod responsibility for or guarantee of the debts or other financial obligations of the organization, and (iii) does not cause the Synod or its districts or congregations to incur, guarantee or be subject to or responsible for the liabilities or debts of the recognized service organization or its subsidiaries and/or affiliates. Such provisions are subject to approval by Synod's legal counsel.

(7) Take care in any correspondence, advertising, marketing, and other program materials that identify the organization as an RSO of the Synod never to suggest that RSO status (i) constitutes an endorsement or guarantee of the fiscal solvency of the organization or of any of its services or programs or (ii) expresses or implies endorsement or guarantee of the fiscal solvency of the organization or any responsibility for or guarantee of the debts or other financial obligations of the organization or its subsidiaries and/or affiliates on the part of the Synod.

(8) Identify the organization as an RSO of the Synod generally, where appropriate, but especially when communicating with LCMS congregations and their members.

(9) Make readily accessible Synod's explanatory material regarding the RSO program, principally by providing a prominent link to lcms.org/rso in association with any organizational website or significant publication identifying the organization as an RSO of the Synod.

(10) Agree in the RSO Agreement to comply with all applicable Bylaws and policies of the Synod.

(11) Agree in the RSO Agreement that the organization will include in all agreements or other documents creating indebtedness of the organization or financing obligations (such as promissory notes, bond issues, or other financing agreements) in a principal amount excess of ten percent of the assets of the organization (as evidenced by its most recent audited financial statement) the following disclaimer of financial responsibility of the Synod for the obligations of the organization:

> "It is agreed and acknowledged that the recognized service organization status conferred upon [RSO] by The Lutheran Church—Missouri Synod (i) is not an endorsement or guarantee of the fiscal solvency of [RSO], nor of services or programs offered by [RSO], (ii) does not express or imply endorsement or guarantee of the fiscal solvency of [RSO], or Synod responsibility for the debts or other financial obligations of [RSO], and (iii) does not cause the Synod or its districts or congregations to incur, guarantee or otherwise be subject to or responsible for the liabilities or debts of [RSO] or its subsidiaries and/or affiliates."

(12) Agree in the RSO Agreement to indemnify and defend Corporate Synod and all agencies of Synod against lawsuits and claims against them resulting from or arising out of the Synod's recognition of the organization, such provision to read as follows:

Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 113 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 113 of 122

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

"[RSO] shall defend, indemnify and hold harmless the LCMS, the Synod and their respective districts, integral components, boards and agencies together with the officers, directors and employees of each such organization (collectively, the "Indemnified Parties", and each an "Indemnified Party") from any and all liabilities, losses, damages, judgments, claims, actions, proceedings, liens, expenses, penalties and costs, including court costs and reasonable attorneys' fees, any Indemnified Party may suffer or incur that are attributable, or otherwise in any way relating, to the existence, acts or omissions of [RSO] or the recognition of [RSO] as a recognized service organization hereunder, including, without limitation, claims asserting that (RSO) or any of its liabilities or obligations are owned, controlled, guaranteed or endorsed by, or otherwise the responsibility of, any Indemnified Party or that any Indemnified Party negligently granted or maintained the recognized service organization status of [RSO] or failed to properly monitor the actions and undertakings of [RSO]."

(f)  The RSO Agreement shall be for a term of five years, unless terminated earlier, with or without cause and upon thirty days' notice, by either the Synod or by the recognized service organization.

(g)  The mission office(s) to which application for RSO status or renewal is made (either directly or by direction thereto by OTS) are authorized to establish and assess application, renewal and/or annual maintenance fees upon recognized service organizations in order to offset the reasonable costs of the mission office(s) to administer the RSO program, taking into account administrative, personnel, travel, and other appropriate requirements to develop and improve the program to meet the Synod's needs.

8.2.4.6    The RSO Agreement shall inform recognized service organizations of the benefits and privileges that accompany recognition by the Synod, including:

(a)  Eligibility of ordained and commissioned ministers of the Synod called by recognized service organizations to remain on the active membership roster of the Synod, and eligibility of the organization to extend new calls to such ordained and commissioned ministers of the Synod, subject to the requirements of Bylaw 6.2.2.2;

(b)  Subject to the requirements of Bylaw 6.2.2.2, access to the dispute resolution process of the Synod for call-related disputes;

(c)  Eligibility to apply for loans from the Lutheran Church Extension Fund—Missouri Synod, subject to LCEF policies and lending criteria;

(d)  Eligibility for "employer" status under the various Concordia Plans of the Synod, subject to Concordia Plans policies;

(e)  Eligibility for gift planning and trust services of The Lutheran Church—Missouri Synod Foundation, subject to Foundation policies;

Exhibit 5 to Defendants' Motion to Dismiss
Page 114 of 122
Case 1:23-cv-01042-DAE    Document 13-5    Filed 04/03/24    Page 114 of 122

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

    (f)  Eligibility to receive grant funds raised and/or administered by the Synod, subject to the approval of the granting mission office(s), subject to the policies of the pertinent mission board(s) and office(s) to which the recognized service organization relates, and subject to approval by the Synod's Chief Mission Officer, such approval taking into consideration demonstrated need and specific purpose for which the funds are to be used;

    (g)  Public identification with the Synod and its agencies, including the display of the Corporate Synod's logo in reference to Synod, subject to the policies and practices of the Synod's Communications unit under the supervision of the Synod's Chief Mission Officer;

    (h)  Eligibility to participate in the LCMS Group Purchasing Agreement program, subject to certain restrictions; and

    (i)  Eligibility to apply for grants from the LWML, subject to LWML policies.

8.2.4.7    Records of program administration reside in the granting mission office(s), with annual "strategic" reports to the Board of Directors characterizing participation in the program and its benefits and costs, challenges and opportunities.

**8.2.5    RSO Program Public Information**

The granting mission office(s) shall maintain comprehensive program information on a prominent, readily and publicly accessible website under the lcms.org domain (i.e., lcms.org/rso), providing an explanation of the program's objectives and granting criteria, including disclaimers of financial responsibility and endorsement on the part of the Synod for recognized service organizations, as well as instructions for application, program benefits, and a listing of current recognized service organizations.

Case 1:23-cv-01042-DAE   Document 13-5   Filed 04/03/24   Page 115 of 122
Exhibit 5 to Defendants' Motion to Dismiss
Page 115 of 122

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

| 8.3 | Recognized Service Organization Standard Form of Agreement |
|-----|-----|

(Edition of February 2022)

# Agreement

### THE LUTHERAN CHURCH—MISSOURI SYNOD

### RECOGNIZED SERVICE ORGANIZATION

**THIS AGREEMENT** (the "Agreement"), dated as of the last date set forth on the signature page hereto (the last page), by and between The Lutheran Church—Missouri Synod, a Missouri nonprofit corporation (the "LCMS"), as set forth on the signature page hereto and the organization executing this Agreement set forth on the signature page hereto (the "Organization"). The following recitals form the basis for this Agreement and are made a material part hereof:

### WITNESSETH:

**WHEREAS**, LCMS Bylaw section 6.2, LCMS Board of Directors Policy section 8.2, and related policies of the LCMS Boards and Offices of National and International Mission provide for the granting of recognized service organization ("RSO") status by the LCMS and provide certain criteria relative to such entities (the "LCMS Rules"), copies of which LCMS Rules, as presently stated by LCMS, are attached as exhibits; and

**WHEREAS,** the LCMS and the Organization desire that the Organization be designated as an RSO of the LCMS consistent with the LCMS Rules;

**NOW, THEREFORE, FOR GOOD AND VALUABLE CONSIDERATION, THE RECEIPT AND SUFFICIENCY OF WHICH IS HEREBY ACKNOWLEDGED BY EACH PARTY HERETO, BE IT AGREED AS FOLLOWS:**

**Section 1. Recognized Service Organization.** The LCMS hereby designates the Organization as an RSO of the LCMS on the terms set forth herein, within the class and tier indicated on the signature page. The Organization hereby accepts the designation as an RSO by the LCMS on the terms set forth herein. The Organization hereby agrees to comply with and abide by the LCMS Rules relative to RSOs as such now exist and as they may be hereafter amended by the LCMS, its boards and offices.

The Organization agrees to foster the mission and ministry of the church, engaging in program activity that (a) extends the mission and ministry of The Lutheran Church—Missouri Synod (the "Synod"), (b) is in harmony with the programs of the Synod, and (c) respects and does not act contrary to the doctrine and practice of the Synod, as established in the Scriptures and Lutheran Confessions (LCMS Constitution Article II) and elaborated from time to time by the Synod in convention as it seeks to clarify its witness or settle doctrinal controversy (LCMS Bylaw 1.6.2).

The Organization agrees that its board of directors (or similar governing body) and executive leadership will include members of, or representatives of congregations that are members of, the Synod at an appropriate level determined by the LCMS. The Organization's governing body shall be solely responsible for the governance of the Organization.

**Section 2. RSO and LCMS.** The LCMS is granting the Organization status as an RSO, as is set forth herein. The LCMS and its agencies disavow any participation in or responsibility for the governance, policies and programs of the Organization and all other operations and activities of the Organization. The Organization agrees to comply with any and all policies and criteria of the LCMS in order to maintain the Organization's RSO status. The LCMS reserves the right to change the LCMS Rules at any time in its sole discretion and to require the Organization to provide evidence of compliance with any of such policies and criteria in order to maintain the Organization's RSO status.

**Section 3. The Organization a Separate Entity; No Financial Liability to LCMS; No Endorsement by LCMS.** The Organization agrees that it is a separate, independent legal entity from the LCMS, that it is not controlled by the LCMS, and that the LCMS shall have no financial responsibility with respect to the Organization. The Organization further agrees as follows:

**The Lutheran Church—Missouri Synod**                    **Board of Directors Policy Manual**

a.    the Organization will not hold itself as an agent of, having authority to act on behalf of, or legally bind the LCMS in any way, or make any representations that it is a part of the LCMS or its agencies or that the Organization is an agency, division, subsidiary, or affiliate of the LCMS;

b.    the LCMS has no responsibility for the finances or financial obligations of the Organization and under no circumstances shall be deemed to have guaranteed the same;

c.    the LCMS does not endorse or make any representation or guarantee regarding the fiscal solvency or financial responsibility of the Organization nor regarding any services or programs that it expressly or implicitly offers, does not imply accreditation or certification of the organization or its programs, and does not express or imply responsibility by the LCMS for the debts or other financial obligations of the Organization;

d.    the Organization will include the following provision in its governing documents:

Recognition by the Synod (i) is not an endorsement or guarantee of the fiscal solvency of [name of the Organization], nor of any services or programs offered by [name of the Organization]; (ii) does not express or imply endorsement or guarantee of the fiscal solvency of [name of the Organization], or any Synod responsibility for or guarantee of the debts or other financial obligations of [name of the Organization]; and (iii) does not cause the Synod or its districts or congregations to incur, guarantee, or be subject to or responsible for the liabilities or debts of [name of the Organization] or its subsidiaries and/or affiliates.

e.    the Organization will include a disclaimer of financial responsibility for the obligations of the Organization in all agreements or other documents creating indebtedness of the Organization (such as promissory notes, bond issues or other financing agreements) in excess of 10 percent in value of the assets of the Organization as evidenced by its most recently prepared financial statement. Such disclaimer shall read as follows:

It is agreed and acknowledged that the recognized service organization status conferred upon [name of the Organization] by The Lutheran Church—Missouri Synod (i) is not an endorsement or guarantee by the Synod of the fiscal solvency of [name of the Organization], nor of any services or programs offered by [name of the Organization], (ii) does not express or imply endorsement or guarantee of the fiscal solvency of [name of the Organization], or any Synod responsibility for or guarantee of the debts or other financial obligations of [name of the Organization], and (iii) does not cause the Synod or its districts or congregations to incur, guarantee, or otherwise be subject to or responsible for the liabilities or debts of [name of the Organization] or its subsidiaries and/or affiliates. For the avoidance of doubt, and without limiting the foregoing, by recognizing [name of the Organization] as a recognized service organization, the Synod does not undertake any obligation to repay or guarantee [name of the Organization]'s debts or other financial obligations.

f.    the Organization shall defend, indemnify and hold harmless the LCMS, the Synod, and their respective districts, integral components, boards and agencies, together with the officers, directors and employees of each (collectively, the "Indemnified Parties", and each an "Indemnified Party"), from any and all liabilities, losses, damages, judgments, claims, actions, proceedings, liens, expenses, penalties, and costs, including court costs and reasonable attorneys' fees, any Indemnified Party may suffer or incur that are attributable, or otherwise in any way relating, to the existence, acts, or omissions of the Organization or the recognition of the Organization as an RSO hereunder, including, without limitation, claims asserting that the Organization or any of its liabilities or obligations are owned, controlled, guaranteed or endorsed by, or otherwise the responsibility of, any Indemnified Party or that any Indemnified Party negligently granted or maintained the RSO status of the Organization or failed to properly monitor the actions and undertakings of the Organization. The provisions of this Section 3(f) shall survive the expiration or earlier termination of this Agreement.

**Section 4. Organization Operations and Corporate Documents.** It is agreed that the Organization is a separately governed ministry that is not part of the constitutional, legal structure of the Synod, and that the Organization shall operate under its own governance and policies with freedom and self-determination,

§ 8: Auxiliaries and Recognized Service Organizations

**The Lutheran Church—Missouri Synod**                    **Board of Directors Policy Manual**

independent of the LCMS and its agencies. The Organization will establish and evaluate its own objectives, activities, programs, organization, policies, administration, and financial matters.

The Organization also represents, warrants and agrees as follows:

a.    **Employer.** The Organization is the employer of all Organization employees and the operator of all real or personal properties occupied or used by it;

b.    **501(c)(3) Organization.** The Organization is presently an organization qualifying under Section 501(c)(3) of the Internal Revenue Code and will maintain its exemption thereunder throughout the term of this Agreement. The Organization shall provide evidence of such status to the LCMS from time to time upon the LCMS' request therefor;

c.    **Financial Information.** The Organization will provide the LCMS with its policies regarding fundraising and with operational or financial information involving the Organization as reasonably requested by the LCMS at any time. The Organization's fundraising policies and practices shall at all times be ethical and responsible;

d.    **Background Checks.** The Organization will conduct screening and background checks, at the Organization's expense, on its employees and volunteers who work with minors, and the LCMS further encourages the Organization to adopt policies to protect children and to train all employees and volunteers to comply with such policies;

e.    **Compliance with Laws.** The Organization will comply with all applicable laws, rules and regulations, including, but not limited to complying with all rules and requirements relating to receiving government funding for social services;

f.    **Insurance.** The Organization will maintain liability and other insurance customary for an entity engaged in the operations of the type and scope of the Organization. For so long as this Agreement remains in effect, the Organization shall cause the LCMS to be named as an additional insured on all policies of liability insurance maintained by the Organization;

g.    **Trade Names, Trademarks and Copyrighted Material.** The Organization agrees that it will obtain the written consent of the LCMS communications department prior to any use or display by it of any trade name, trademark or copyrighted material owned by the LCMS. The decision as to whether or not to permit usage or display by the Organization, and the terms and documentation of any such usage or display, are entirely in the discretion of the LCMS. To the extent the Organization obtains the written consent and approval from the LCMS communications department, the Organization agrees it will abide by all terms and conditions set forth by the LCMS, including but not limited to: (i) the terms and conditions published on the LCMS website, as amended from time to time, regarding usage or display of the LCMS Logo Cross and other trademarks; and (ii) the terms, conditions and guidelines set forth in the Graphic Standards manual, as amended by the LCMS from time to time;

h.    **Compliance.** The Organization will provide evidence of compliance with this Agreement reasonably requested by the LCMS at any time;

i.    **Dissolution.** All applicable governance documents of the Organization will at all times provide that, in the event of a dissolution of the Organization, its remaining assets will be distributed to another nonprofit organization exempt under Section 501(c)(3) of the Internal Revenue Code; and

j.    **Governing Documents.** The Organization shall provide proposed changes in its governing documents on the following topics to the LCMS prior to adoption so that the LCMS may determine whether there is any impact on the RSO status of the Organization: membership, nonprofit status, purpose, dissolution, governing body election, governing body membership criteria, or any other topic that could relate to the criteria for RSO status hereunder.

k.    **Subsidiaries and Affiliates.** Unless specifically identified in this Agreement as being a party hereto or an intended third party beneficiary hereof, no subsidiary, or affiliate of the Organization is (i) a third party beneficiary of this Agreement, (ii) entitled to the rights or

Exhibit 5 to Defendants' Motion to Dismiss
Page 118 of 122

The Lutheran Church—Missouri Synod                    **Board of Directors Policy Manual**

benefits of this Agreement or the recognized service organization status granted hereunder or (iii) entitled to enforce the rights of the Organization under this Agreement.

l.    **Commingling of Governance**. The Organization agrees that the governance of the Organization is not to be commingled with the governance of the LCMS, the Synod or of any agency thereof. Members of the board of directors or other governing body of the Organization that are simultaneously officers, board members, or employees of the LCMS or any LCMS or Synod agency shall disclose such participation in writing to the Board of Directors of Synod through the Office of the Secretary and certify that such participation is solely in that person's individual capacity and is not an *ex officio*, elected, or designated representative of the LCMS, the Synod or the agency served. Such participation must also be disclosed to the LCMS or agency served (LCMS Bylaw 1.5.2).

m.    **Publications; Identification as RSO; Explanation of Status.** The Organization agrees to identify the organization as an RSO of the Synod generally, where appropriate, but especially when communicating with LCMS congregations and their members. The Organization agrees to take care in any correspondence, advertising, marketing, and other program materials that identify the Organization as an RSO of the Synod never to suggest that RSO status (i) constitutes an endorsement or guarantee of the fiscal solvency of the organization or of any of its services or programs or (ii) expresses or implies endorsement or guarantee of the fiscal solvency of the organization or any responsibility for or guarantee of the debts or other financial obligations of the Organization or its subsidiaries and/or affiliates by the LCMS. The Organization further agrees to make readily accessible Synod's explanatory material regarding the RSO program, principally by providing a prominent link to lcms.org/rso in association with any organizational website or significant publication identifying the Organization as an RSO of the Synod.

n.    **Character of RSO Programs and Governance and Classification by LCMS.** The Organization understands that LCMS grants RSO status under a particular section of the LCMS Rules based on its understanding of the Organization's work and agrees to inform the LCMS in advance of contemplated changes in its programming or governance, including changes in the proportion of members of LCMS congregations on its governing board or in its executive leadership, with the same potentially requiring reevaluation of the Organization's classification under the recognized service organization program.

o.    **Relation to Synod Members, Congregational and Individual.** The Organization agrees to respect the rights and obligations of Synod's members, individual and congregational, especially as relate to the call, service, and ecclesiastical supervision of church workers rostered by the LCMS, as elaborated in LCMS Bylaw 6.2.1 (b).

p.    **Relation to Synod's Districts and Office of International Mission.** The Organization agrees to respect the authority of Synod's districts, especially as relates to ecclesiastical oversight by relevant district president(s), as elaborated in LCMS Bylaw 6.2.1 (c), to inform and seek the counsel of relevant district president(s) prior to engaging in new activities in their districts, and to inform, seek the counsel of, and cooperate with the LCMS Office of International Mission in its international work, respecting any protocol agreements between the LCMS and its partner churches, as elaborated in LCMS Bylaw 6.2.1 (e).

q.    **Call of LCMS Rostered Ordained and Commissioned Ministers; Call-Related Disputes.** The Organization agrees that its board may extend an LCMS-recognized, regular call to ordained and commissioned workers of the Synod only as permitted and specified in LCMS Bylaw 6.2.2.2 and related policies, and that the Organization submits, as an exclusive remedy, to resolution of disputes arising under the divine call of such workers under the dispute resolution process of the LCMS.

r.    **Scope and Change of Program Terms.** The Organization understands that RSO program requirements other than those stated explicitly in this Agreement may apply, as stated in the LCMS Rules attached as exhibits or as they may hereafter be amended. The Organization understands further that the LCMS and its responsible boards and offices can alter the terms of

**The Lutheran Church—Missouri Synod**                    **Board of Directors Policy Manual**

the RSO program at any time. The Organization agrees, upon notice of such change, to accept RSO program terms as modified or, should the Organization determine such terms to be unacceptable, to notify the LCMS promptly of its termination of this Agreement as described in Section 5.

**Section 5. Effectiveness; Termination.** This Agreement shall be effective upon the execution and delivery of this Agreement by all parties hereto and shall remain in full force and effect for a period of five (5) years thereafter unless terminated earlier as set forth in this Section. Either party hereto may, with or without cause, terminate this Agreement and all rights hereunder upon 30 days' written notice to the other party hereto. Upon the effective date of the termination of this Agreement, the Organization shall cease representing itself as a RSO of LCMS, including the use of any written, electronic, or other communications or written material and shall, upon request of the LCMS, execute documents to evidence such termination and return any materials in possession of the Organization reflecting status as an RSO.

**Section 6. Laws.** This Agreement will be governed by and construed in accordance with the laws of the State of Missouri.

**Section 7. Notices.** Except as otherwise provided herein, it shall be sufficient service of any notice, request, demand, authorization, direction, consent, waiver or other paper required or permitted by this Agreement to be made, given or furnished to or filed with the following persons, if the same shall be delivered by personal delivery, prepaid overnight delivery service, or certified mail, return receipt request, postage prepaid, or transmitted by electronic mail, at the addresses or electronic mail address listed on the signature page hereto. All notices given as aforesaid shall be deemed given on the day on which the same are hand delivered or sent by electronic mail, on the second day following the date on which the same have been mailed or on the day following the day on which the same are sent by overnight delivery service. Any party may from time to time designate, by notice given hereunder to the others or such parties, such other mailing or electronic mail address to which subsequent notices, certificates or other communications shall be sent.

**Section 8. Miscellaneous.** This Agreement inures to the benefit of, and shall be binding upon, the parties hereto and their respective permitted successors and assigns. Notwithstanding the foregoing, neither party hereto may assign this Agreement without the prior written consent of the other party hereto, which may be granted or withheld in the non-assigning party's sole and absolute discretion. This Agreement contains the entire agreement and understanding of the parties in respect to the subject matter hereof, and the same may not be amended, modified or discharged nor may any of its terms be waived except by an instrument in writing signed by the party to be bound thereby. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. The transmission by facsimile or email of a signed counterpart of this Agreement, or the execution and transmission of this Agreement utilizing DocuSign, AdobeSign or a similar electronic signature program, to a party shall have the same binding effect as the hand delivery of an originally signed counterpart hereof. Time is of the essence in this Agreement. The preparation of this Agreement has been a joint effort of the parties and the resulting documents shall not, solely as a matter of judicial construction, be construed more severely against one of the parties than the other. All exhibits attached hereto are hereby incorporated herein by this reference.

[SIGNATURES ON FOLLOWING PAGE]

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

**SIGNATURE PAGE**
**RECOGNIZED SERVICE ORGANIZATION AGREEMENT**
**THE LUTHERAN CHURCH—MISSOURI SYNOD**
**Office of the Secretary**
**1333 S. Kirkwood Road**
**St. Louis, MO 63122-7295**
**Phone: 800-248-1930**
**Email: _____**

Organization:
Address:
        -
Phone:
Email:

Status granted to the Organization subject to LCMS Rules for a
Tier [I,II]   (only for Educational and Mercy Classes)
[Witness, Educational, Mercy]
Service Organization (LCMS Bylaw 6.2.2).

**IN WITNESS WHEREOF**, this Agreement is entered into by the LCMS and the Organization as of the respective dates set forth below:

**LCMS:**                              **Organization:**

The Lutheran Church—Missouri Synod:        [Insert name of RSO]
By:                                    By:
Name:                                  Name:
Title:                                 Title:
Date:                                  Date:

| 8.4 | **Monitoring** |
|---|---|

| Section Revision History |
|---|
| 2022.11.18       § 8 – Comprehensive Revision |

The Lutheran Church—Missouri Synod                    **Board of Directors Policy Manual**

| § 9 | **Appendix** |
|---|---|
| **9.1** | **Board of Directors Triennial Calendar of Activities** |

| *Meeting* | *Policy Review* (3.17.2) | *Monitor/Review or Receive* | *Board Actions\** |
|---|---|---|---|
| **September**<br>1st Year - 2023<br>**August**<br>2nd Year - 2024<br>3rd Year - 2025 | **1st Year of Triennium**<br>• (none)<br><br>**2nd Year**<br>• §3 Board Self-Governance / Governance Process<br><br>**3rd Year**<br>• §6 Management Policies for Synod and All Agencies | **Annually**<br>• Report of Board-Designated Representatives (Policy 4.12) | **Annually**<br>• Conflict of Interest<br><br>**1st Year of Triennium**<br>• Election of Board Officers and Executive Committee<br>• Compliance Documents:<br>  ○ Conflict of Interest<br>  ○ LCMS Financial & Organizational Misconduct<br>  ○ LCMS Best Practices<br>• Board Meeting Schedule<br>• Adopt *BOD Triennial Calendar of Activities*<br>• Appointments:<br>  ○ LFND MaL<br>  ○ CUS CoM<br>• Designation of Interim Persons (Policy 4.8) |
| **November**<br>1st Year - 2023<br>2nd Year - 2024<br>3rd Year - 2025 | **1st Year of Triennium**<br>• Board-wide review of §2 Board Objectives (see Policy section 2.8)<br><br>**2nd Year**<br>• §4 Board Governance Relationships (Sections 4.1–4.13)<br>• Strategic Plan Templates (Policy 4.15.6)<br><br>**3rd Year**<br>• §7 Management Policies for Agencies Outside of Corporate Synod | **Annually**<br>• Audit Report Summary - All Agencies listed in Bylaw 3.3.4.6(b)<br>• LCMS Corporate Synod Corporations Listing<br>• Listing of LCMS Real Properties (Policy 5.3.5.8)<br>• POA Listing | **Annually**<br>• Receive Audited Statements<br>• Engage Auditors, Adopt Audit Charters & Audit Plan<br>• Agenda Item - Designation of Unrestricted Net Assets<br><br>**1st Year of Triennium**<br>• Determine the need to appoint Board members<br>• Designate Board Representatives (Policy 4.12)<br><br>**3rd Year**<br>• Board Report to Convention |

Exhibit 5 to Defendants' Motion to Dismiss
Page 122 of 122

The Lutheran Church—Missouri Synod                    Board of Directors Policy Manual

| Meeting | Policy Review (3.17.2) | Monitor/Review or Receive | Board Actions* |
|---|---|---|---|
| **February**<br>1st Year - 2024<br>2nd Year - 2025<br>3rd Year - 2026 | **1st Year of Triennium**<br>• §0 Preface<br>• §1 Board Responsibility and Accountability<br>• §2 Board Objectives<br><br>**2nd Year**<br>• §4 Board Governance Relationships (Sections 4.14–4.20)<br><br>**3rd Year**<br>• §8 Auxiliaries and Recognized Service Organizations<br>• §9 Appendix | **Annually**<br>• Compensation Survey - Salary Report<br>• Employee Handbook reviewed by Personnel Committee<br>• Personnel Committee initiate Performance Evaluation of CAO/CFO<br>• HR-Personnel/Staffing Report and Projections<br><br>**3rd Year**<br>• Governance Committee begins Board Self-Review process<br>• Chairman and CAO present draft BOD Convention report to the Board | **Annually**<br>• Salary Classification and Ranges<br>• Salary, benefit, and bonus budget projections<br>• Compliance Documents:<br>  ○ Conflict of Interest<br>  ○ LCMS Financial & Organizational Misconduct<br>  ○ LCMS Best Practices<br><br>**1st Year of Triennium**<br>• Engage General Counsel<br>• Appoint BOD Members, if necessary<br>• CMO Appointment<br><br>**2nd Year**<br><br>**3rd Year**<br>• Board Overtures to Convention |
| **May**<br>1st Year - 2024<br>2nd Year - 2025<br>3rd Year - 2026 | **1st Year of Triennium**<br>• (none)<br><br>**2nd Year**<br>• §5 Management Policies for Synod and its Agencies<br><br>**3rd Year**<br>• (none) | **Annually**<br>• Budget Process & Information<br>• Annual Risk Management Report<br>• Personnel Committee report Performance Evaluation of CAO/CFO to Board<br>• Audit Committee to review Grants by Agencies<br>• Audit Committee to review Lines of Credit and Guarantees<br>• Audit Committee to review Signature Authority<br><br>**3rd Year**<br>• Governance Committee reviews and reports to BOD the results of the Board Self-Review | **Annually**<br>• Adopt Budgets (Operating & Capital)<br>• Insurance<br>• Policy Limits/Deductibles<br>• Officers Salary Recommendation<br>• Appointments:<br>  ○ LCEF Members-at-large<br>  ○ CPS Board of Directors<br><br>**1st Year of Triennium**<br>• Surplus Convention Funds Resolution<br><br>**2nd Year**<br>• Adopt Convention Budget |

| Section Revision History |
|---|
| 2023.02.09        § 9 – Comprehensive Revision |