Case 1:23-cv-01042-DAE    Document 13-7    Filed 04/03/24    Page 1 of 30
Appellate Case: 20-1230    Document: 010110702778    Date Filed: 06/28/2022    Page: 1
Exhibit 7 to Defendants' Motion to Dismiss
Page 1 of 30

No. 20-1230

---

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT**

---

FAITH BIBLE CHAPEL INTERNATIONAL,

a Colorado non-profit corporation,

*Defendant-Appellant,*

v.

GREGORY TUCKER,

*Plaintiff-Appellee.*

---

On Appeal from the
United States District Court for the District of Colorado
No. 1:19-cv-01652-RBJ-STV
Honorable R. Brooke Jackson

---

**UNOPPOSED MOTION FOR LEAVE TO FILE AMICUS BRIEF
IN SUPPORT OF APPELLANT FAITH BIBLE CHAPEL'S
PETITION FOR REHEARING EN BANC
BY
ASSOCIATION OF CHRISTIAN SCHOOLS INTERNATIONAL,
COLORADO CATHOLIC CONFERENCE,
CHRISTIAN LEGAL SOCIETY,
LUTHERAN CHURCH–MISSOURI SYNOD,
THE CARDINAL NEWMAN SOCIETY,
BENEDICTINE COLLEGE, AND
MAUR HILL-MOUNT ACADEMY**

Pursuant to Federal Rule of Appellate Procedure 29(a)(3) and

(b)(3), the Amicus Parties (identified below) respectfully move this

Case 1:23-cv-01042-DAE    Document 13-7    Filed 04/03/24    Page 2 of 30
Appellate Case: 20-1230    Document: 010110702778    Date Filed: 06/28/2022    Page: 2
Exhibit 7 to Defendants' Motion to Dismiss
Page 2 of 30

Court for leave to file the accompanying *amicus curiae* brief in support of Defendant-Appellant Faith Bible Chapel and its Petition for Rehearing En Banc.  Both parties to the case have consented to the filing of the Amicus Parties' proposed brief.

## IDENTITY AND INTERESTS OF AMICUS CURIAE

1.    The moving amicus parties are the Association of Christian Schools International, Colorado Catholic Conference, Christian Legal Society, Lutheran Church–Missouri Synod, The Cardinal Newman Society, Benedictine College, and Maur Hill-Mount Academy (collectively, the "Amicus Parties").

2.    The Amicus Parties seek to represent the interests of religious educational institutions, and religious organizations generally, that may face claims similar to those brought against Defendant-Appellant Faith Bible Chapel International d/b/a Faith Christian Academy, to ensure that such institutions are protected from intrusive litigation that violates the constitutional protection ensured by the First Amendment's Religion Clauses.  Through their own experiences, the amicus parties understand the importance of the proper application of the religious exemptions and the requirement that courts avoid

Case 1:23-cv-01042-DAE    Document 13-7    Filed 04/03/24    Page 3 of 30
Appellate Case: 20-1230    Document: 010110702778    Date Filed: 06/28/2022    Page: 3
Exhibit 7 to Defendants' Motion to Dismiss
Page 3 of 30

improper entanglement in a religious organization's employment decisions.

3.    Amicus Association of Christian Schools International is a Christian educational organization that exists to strengthen Christian schools and equip Christian educators to provide an academically rigorous, and explicitly Christian, education.  ACSI has more than 23,000 member schools in 100 countries, which serve over five million students worldwide.

4.    Amicus Colorado Catholic Conference is composed of the Archdiocese of Denver and the dioceses of Pueblo and Colorado Springs. Together they oversee 54 Catholic elementary and secondary educational institutions with a total enrollment of approximately 14,400 students.  They also oversee hundreds of other Catholic employers. The three dioceses employ over 4,500 seminary, parish, and other pastoral and ministerial workers.

5.    Amicus Christian Legal Society ("CLS") is an association of Christian attorneys, law students, and law professors, founded in 1961. CLS operates the Center for Law & Religious Freedom ("the Center"), the nation's oldest organization committed exclusively to the protection

of religious freedom. For four decades, CLS has sought to protect all

citizens' free exercise and free speech rights in the federal and state

courts and legislatures. CLS was instrumental in passage of landmark

federal legislation to protect persons of all faiths, including: (1) the

Religious Freedom Restoration Act of 1993, 107 Stat. 1488, 42 U.S.C.

§ 2000bb et seq., which protects the religious freedom of persons of all

faiths; and (2) the Religious Land Use and Institutionalized Persons Act

of 2000, 114 Stat. 803, 42 U.S.C. § 2000cc et seq., which protects

religious freedom for congregations and institutionalized persons of all

faiths. Through the Center, CLS has served as amicus or counsel to

amici in numerous cases, including both Supreme Court decisions

affirming and delineating the ministerial exception, *Hosanna-Tabor*

*Evangelical Lutheran Church & Sch.*, 565 U.S. 171 (2012), and *Our*

*Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049 (2020). CLS

has filed amicus briefs in key cases defending the autonomy of religious

organizations in making employment decisions. *See, e.g.*, Brief for Amici

Curiae Christian Legal Society, et al., *Our Lady of Guadalupe School v.*

*Morrissey-Berru*, 140 S. Ct. 2049 (2020) (No. 19- 267), 2020 WL 703882;

Brief for Amici Curiae Professor Eugene Volokh, Christian Legal

Case 1:23-cv-01042-DAE    Document 13-7    Filed 04/03/24    Page 5 of 30
Appellate Case: 20-1230    Document: 010110702778    Date Filed: 06/28/2022    Page: 5
**Exhibit 7 to Defendants' Motion to Dismiss**
**Page 5 of 30**

Society, et al., *Hosanna-Tabor Evangelical Lutheran Church & School*, 565 U.S. 171 (2012) (No. 10-553), 2011 WL 2470847; Brief for Amici Curiae Christian Legal Society, et al., *The Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter Day Saints*, 483 U.S. 327 (1987) (No. 86-179 & 86-401), 1987 WL 864773.

6.    Amicus Lutheran Church—Missouri Synod is an international Lutheran denomination headquartered in St. Louis, Missouri. It has more than 6,000 member congregations, 22,000 ordained and commissioned ministers, and nearly 2 million baptized members throughout the United States, including in Colorado. Additionally, the Synod has two seminaries, six universities, and the largest Protestant parochial school system in America.

7.    Amicus The Cardinal Newman Society promotes and defends faithful Catholic education by advocating and supporting fidelity to the Catholic Church's teaching across all levels of Catholic education, and by identifying and promoting clear standards of Catholic identity and best practices in Catholic education.

8.    Amicus Benedictine College is a four-year Catholic college whose mission as a Catholic, Benedictine, Liberal Arts college is the

Case 1:23-cv-01042-DAE    Document 13-7    Filed 04/03/24    Page 6 of 30
Appellate Case: 20-1230    Document: 010110702778    Date Filed: 06/28/2022    Page: 6
Exhibit 7 to Defendants' Motion to Dismiss
Page 6 of 30

education of men and women within a community of faith and scholarship. Benedictine College (and its founding institutions—St. Benedict's College and Mount St. Scholastica College) was founded in 1858 in Atchison, Kansas. The mission of the college has been embraced by the institution and has caused much of its recent success, which, in the past 15 years includes doubled enrollment and over 15 new buildings constructed. The College is recognized by US News and World Report as one of America's best colleges and by The Cardinal Newman Society as one of America's best Catholic colleges.

9.    Amicus Maur Hill-Mount Academy is a Catholic, international, college-prep boarding and day school that has educated and inspired young men and women in the Benedictine traditions since 1863.

10.    Representing religious organizations, and especially religious educational institutions, entitled to the protection of the constitutionally based "ministerial exception," the Amicus Parties argue that the ministerial exception deserves individualized and priority treatment in litigation and on appeal. As a form of immunity from suit, the ministerial exception cannot simply be joined with other issues at

Case 1:23-cv-01042-DAE    Document 13-7    Filed 04/03/24    Page 7 of 30
Appellate Case: 20-1230    Document: 010110702778    Date Filed: 06/28/2022    Page: 7
Exhibit 7 to Defendants' Motion to Dismiss
Page 7 of 30

trial because that would defeat the constitutional protection the exception affords and nullify its purpose. Courts must also defer to a religious institution's view of the religious and ministerial nature of the job position at issue. If the ministerial exception is satisfied, the suit is barred, and the court must enter judgment without delay to minimize the court's entanglement with the religious institution's autonomy.

## DESIRABILITY OF THE AMICUS PARTIES' BRIEF

11.    Courts of appeals are "usually delighted to hear additional arguments from able amici that will help the court toward right answers." *Mass. Food Ass'n v. Mass. Alcoholic Beverages Control Comm'n*, 197 F.3d 560, 567 (1st Cir. 1999). That is especially true when amici can provide "information on matters of law about which there [is] doubt, especially in matters of public interest." *United States v. Michigan*, 940 F.2d 143, 164 (6th Cir. 1991).

12.    An amicus should be granted permission to file where the amicus "has a unique perspective . . . that can assist the court of appeals beyond what the parties are able to do" or a "direct interest" that could be "materially affect[ed]" by the Court's disposition. *Nat'l Org. for Women, Inc. v. Scheidler*, 223 F.3d 615, 617 (7th Cir. 2000).

Case 1:23-cv-01042-DAE    Document 13-7    Filed 04/03/24    Page 8 of 30
Appellate Case: 20-1230    Document: 010110702778    Date Filed: 06/28/2022    Page: 8
Exhibit 7 to Defendants' Motion to Dismiss
Page 8 of 30

13.    Here, the Amicus Parties offer this Court a unique and valuable perspective on the ministerial exception, the real-world dangers posed by the panel's 2-1 ruling, and the necessity of en banc review.

14.    First, the Amicus Parties offer "a different analytical approach to the legal issues before the court." *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 976 F.3d 761, 763 (7th Cir. 2020) (Scudder, J., in chambers).  The Amicus Parties focus less on the particular errors of the panel's 2-1 decision and instead offer a broader look at the ministerial exception—which itself shows the grave problems with the *Tucker* decision.

15.    Second, the Amicus Parties offer valuable insight into "the broader . . . context in which a question comes to the court." *Id*.  The Amicus Parties include a voluntary association of religious schools, a religious college, a religious body that oversees religious schools, a church denomination, and other religious organizations with strong interests in religious education.

16.    Third, the Amicus Parties, many of which are affiliated with the Catholic faith, can offer an additional perspective to that presented

Case 1:23-cv-01042-DAE   Document 13-7   Filed 04/03/24   Page 9 of 30
Appellate Case: 20-1230   Document: 010110702778   Date Filed: 06/28/2022   Page: 9
Exhibit 7 to Defendants' Motion to Dismiss
Page 9 of 30

by the Protestant Defendant-Appellant church and school. Such perspective could be important to the Court in ensuring that its resolution of this case is appropriately sensitive to faith traditions other than the Protestant parties to the appeal. *See, e.g.*, *Hosanna-Tabor Evangelical Lutheran Church and Sch. v. EEOC*, 565 U.S. 171, 198 (2012) (Alito, J., joined by Kagan, J., concurring) (emphasizing the need for courts to issue rulings concerning "the important issue of religious autonomy" in a manner that accounts for diverse faiths).

17.    Fourth, especially given the word-count limitations on the petition for rehearing en banc, the Amicus Parties' brief will add "unique perspective" and "will assist the judges by presenting ideas, arguments, theories, insights, facts, or data that are not to be found in the parties' briefs." *Voices for Choices v. Ill. Bell Tel. Co.*, 339 F.3d 542, 545 (7th Cir. 2003).

18.    Thus, the Amicus Parties have unique insights on the important constitutional issues before this Court, and they should be granted leave to file their brief.

Case 1:23-cv-01042-DAE    Document 13-7    Filed 04/03/24    Page 10 of 30
Appellate Case: 20-1230    Document: 010110702778    Date Filed: 06/28/2022    Page: 10
**Exhibit 7 to Defendants' Motion to Dismiss**
**Page 10 of 30**

# CONCLUSION

The Amicus Parties' expertise in religious education and religious organizations generally, strong interest in this case, and concise explanation of the constitutional problems created by the majority's ruling justify allowing them to file an amicus curiae brief. Thus, the Amicus Parties respectfully request that this Court grant their motion under Federal Rule of Appellate Procedure 29 and accept for filing the attached proposed brief.

June 28, 2022                              Respectfully submitted,

                                          */s/ Christian Poland*
                                          Christian Poland

                                          Bryan Cave Leighton Paisner LLP
                                          161 N. Clark St., Suite 4300
                                          Chicago, IL 60601-3315
                                          (312) 602-5085
                                          christian.poland@bclplaw.com

                                          *Counsel for Amici*

Case 1:23-cv-01042-DAE    Document 13-7    Filed 04/03/24    Page 11 of 30
Appellate Case: 20-1230    Document: 010110702778    Date Filed: 06/28/2022    Page: 11
**Exhibit 7 to Defendants' Motion to Dismiss**
**Page 11 of 30**

# CERTIFICATE OF SERVICE

I hereby certify that on June 28, 2022, the foregoing amicus motion was filed electronically with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit through the Court's CM/ECF system. I certify that all participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

*/s/ Christian Poland*
Christian Poland

Case 1:23-cv-01042-DAE    Document 13-7    Filed 04/03/24    Page 12 of 30
Appellate Case: 20-1230    Document: 010110702779    Date Filed: 06/28/2022    Page: 1
Exhibit 7 to Defendants' Motion to Dismiss
Page 12 of 30

No. 20-1230

---

## IN THE
## UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

---

FAITH BIBLE CHAPEL INTERNATIONAL,

a Colorado non-profit corporation,

*Defendant-Appellant,*

v.

GREGORY TUCKER,

*Plaintiff-Appellee.*

---

On Appeal from the
United States District Court for the District of Colorado
No. 1:19-cv-01652-RBJ-STV
Honorable R. Brooke Jackson

---

**AMICUS BRIEF IN SUPPORT OF
DEFENDANT-APPELLANT FAITH BIBLE CHAPEL'S
PETITION FOR REHEARING EN BANC, BY
ASSOCIATION OF CHRISTIAN SCHOOLS INT'L,
COLORADO CATHOLIC CONFERENCE,
CHRISTIAN LEGAL SOCIETY,
THE LUTHERAN CHURCH–MISSOURI SYNOD,
THE CARDINAL NEWMAN SOCIETY,
BENEDICTINE COLLEGE, AND
MAUR HILL-MOUNT ACADEMY**

Christian M. Poland
BRYAN CAVE LEIGHTON PAISNER LLP
161 N. Clark St., Suite 4300
Chicago, IL 60601-3315
312-602-5085
christian.poland@bclplaw.com

*Counsel for Amici*

Case 1:23-cv-01042-DAE    Document 13-7    Filed 04/03/24    Page 13 of 30
Appellate Case: 20-1230    Document: 010110702779    Date Filed: 06/28/2022    Page: 2
**Exhibit 7 to Defendants' Motion to Dismiss**
**Page 13 of 30**

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, each amicus party represents that it does not have any parent entity and does not issue stock.

Respectfully submitted,

*/s/ Christian Poland*
Christian Poland

Bryan Cave Leighton Paisner LLP
161 N. Clark St., Suite 4300
Chicago, IL 60601-3315
(312) 602-5085
christian.poland@bclplaw.com

*Counsel for Amici*

Dated: June 28, 2022

i

Case 1:23-cv-01042-DAE    Document 13-7    Filed 04/03/24    Page 14 of 30
Appellate Case: 20-1230    Document: 010110702779    Date Filed: 06/28/2022    Page: 3
Exhibit 7 to Defendants' Motion to Dismiss
Page 14 of 30

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ...........................................i

IDENTITY AND INTERESTS OF AMICI CURIAE ..............................v

INTRODUCTION AND SUMMARY OF ARGUMENT ........................vi

ARGUMENT ...........................................................................................1

I.    The Ministerial Exception Is a Threshold Issue That District
      Courts Must Adjudicate Separately from Merits Issues...............1

      A.    The Ministerial Exception Is Rooted in Constitutional
            Principles That Limit the Authority of the Courts ...............1

      B.    The Ministerial Exception Is Akin to Qualified Immunity....2

      C.    The Burden of Litigation Alone Can Eviscerate the Key
            Purposes of the Ministerial Exemption and Be
            Unconstitutional ........................................................................3

      D.    A Court Must Determine with Finality that the
            Ministerial Exception Does Not Apply Before It Permits
            Merits Discovery or a Merits Trial .........................................5

II.   Immediate Appellate Review Is Available Where, As Here, a
      District Court Decision Rejects a Ministerial Exception
      Defense ..........................................................................................7

CONCLUSION .......................................................................................9

CERTIFICATE OF COMPLIANCE.....................................................10

CERTIFICATE OF SERVICE................................................................11

605409490.5

Case 1:23-cv-01042-DAE    Document 13-7    Filed 04/03/24    Page 15 of 30
Appellate Case: 20-1230    Document: 010110702779    Date Filed: 06/28/2022    Page: 4
Exhibit 7 to Defendants' Motion to Dismiss
Page 15 of 30

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Demkovich v. St. Andrew the Apostle Parish*,
   3 F.4th 968 (7th Cir. 2021) (en banc) ................................................. 3

*Duquesne Univ. of the Holy Spirit v. NLRB*,
   947 F.3d 824 (D.C. Cir. 2020) .............................................................. 4

*EEOC v. Catholic Univ. of Am.*,
   83 F.3d 455 (D.C. Cir. 1996) ................................................................ 5

*Fratello v. Archdiocese of New York*,
   863 F.3d 190 (2d Cir. 2017) .................................................................. 7

*Harlow v. Fitzgerald*,
   457 U.S. 800 (1982) .............................................................................. 2

*Hosanna-Tabor Evangelical Lutheran Church and Sch. v.
   EEOC*,
   565 U.S. 171 (2012) ............................................................... 1, 3, 6, 7

*Lee v. Sixth Mount Zion Baptist Church*,
   903 F.3d 113 (3d Cir. 2018) ................................................................ 1

*Los Lobos Renewable Power, LLC v. AmeriCulture, Inc.*,
   885 F.3d 659 (10th Cir. 2018) ............................................................. 8

*McCarthy v. Fuller*,
   714 F.3d 971 (7th Cir. 2013) ..................................................... 2, 3, 8, 9

*Mitchell v. Forsyth*,
   472 U.S. 511 (1985) .............................................................................. 8

*NLRB v. Catholic Bishop*,
   440 U.S. 490 (1979) .............................................................................. 6

*Our Lady of Guadalupe Sch. v. Morrissey-Berru*,
   140 S. Ct. 2049 (2020) ...................................................................... 1, 3

Case 1:23-cv-01042-DAE    Document 13-7    Filed 04/03/24    Page 16 of 30
Appellate Case: 20-1230    Document: 010110702779    Date Filed: 06/28/2022    Page: 5
Exhibit 7 to Defendants' Motion to Dismiss
Page 16 of 30

*Pearson v. Callahan,*
   555 U.S. 223 (2009)..................................................................2

*Rayburn v. Gen. Conference of Seventh-Day Adventists,*
   772 F.2d 1164 (4th Cir. 1985)..............................................5

*Serbian E. Orthodox Diocese for U.S. & Canada v.*
   *Milivojevich,*
   426 U.S. 696 (1976)...............................................................6

*Skrzypczak v. Roman Catholic Diocese,*
   611 F.3d 1238 (10th Cir. 2010)........................................2, 6

*Sterlinski v. Catholic Bishop of Chicago,*
   934 F.3d 568 (7th Cir. 2019)................................................7

*Sterlinski v. Catholic Bishop of Chicago*, No. 16 C 00596,
   2017 WL 1550186 (N.D. Ill. May 1, 2017)...........................7

## Other Authorities

First Amendment ........................................................... passim

Fed. R. Civ. P. 8(c)(1).............................................................2

iv

Case 1:23-cv-01042-DAE    Document 13-7    Filed 04/03/24    Page 17 of 30
Appellate Case: 20-1230    Document: 010110702779    Date Filed: 06/28/2022    Page: 6
Exhibit 7 to Defendants' Motion to Dismiss
Page 17 of 30

## IDENTITY AND INTERESTS OF AMICI CURIAE [1]

The amicus parties are the Association of Christian Schools International, the Colorado Catholic Conference, the Christian Legal Society, The Lutheran Church–Missouri Synod, The Cardinal Newman Society, Benedictine College, and Maur Hill-Mount Academy. (Detailed descriptions of each party are included in their motion for leave to file this brief.) They seek to represent the interests of religious educational institutions, and religious organizations generally, that may face claims similar to those brought against Appellant Faith Bible Chapel, to ensure that such institutions are protected from intrusive litigation that violates the constitutional protection ensured by the First Amendment's Religion Clauses. Through their own experiences, the amicus parties understand the importance of the proper application of the religious exemptions and the requirement that courts avoid improper entanglement in a religious organization's employment decisions.

---

[1] Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(D), amici state that permission to file this brief was sought by amici's motion for leave to file it, and all parties consent to its filing. Amici respond in the negative to the disclosures requested in FRAP 29(a)(4)(E).

605409490.5

Case 1:23-cv-01042-DAE    Document 13-7    Filed 04/03/24    Page 18 of 30
Appellate Case: 20-1230    Document: 010110702779    Date Filed: 06/28/2022    Page: 7
Exhibit 7 to Defendants' Motion to Dismiss
Page 18 of 30

## INTRODUCTION AND SUMMARY OF ARGUMENT

The constitutionally derived "ministerial exception," recognized by the Supreme Court in *Our Lady of Guadalupe* and *Hosanna-Tabor* limits judicial authority and is a form of immunity enjoyed by religious entities regarding employment disputes involving key religious employees.  When the ministerial exception is invoked, courts must narrow discovery to what is necessary to adjudicate the exception through a dispositive motion before permitting merits discovery (and certainly before trial).  If a district court strays outside these constitutional boundaries, interlocutory appeal is available because the ministerial exception's immunity is irreparably eviscerated and effectively unreviewable upon final judgment.

This Court's 2-1 panel decision, 2022 WL 2035804 (10th Cir. June 7, 2002) ("*Tucker*") commits several errors.  It treats the ministerial exception as any other affirmative defense.  It rejects the immunity-like nature of the exception, which justifies interlocutory review.  It says the applicability of the exception is a fact question for the jury, instead of a key constitutional issue for court resolution.  It ignores the unconstitutional burdens and intrusion of litigating religious issues, which numerous other circuits have readily recognized.  It refuses to acknowledge that the ministerial exception is a "structural" limitation on court powers.  It declines to exercise collateral-order-doctrine jurisdiction, even though the *Cohen* factors are satisfied, and other circuits have done so in similar cases.  And it leaves constitutional

**Exhibit 7 to Defendants' Motion to Dismiss**
**Page 19 of 30**

religious defenses to be reviewed only after final judgment, when irreparable harm to religious bodies will have necessarily occurred.

   If the *Tucker* decision remains in place, religious entities in the Tenth Circuit will be deprived of the First Amendment rights enjoyed in nearly every other circuit.  Thousands of religious schools and organizations will face severe and unprecedented risks to their ministry and their religious autonomy.  The amicus parties therefore ask that Faith Bible Chapel's Petition for Rehearing En Banc (the "Petition") be granted.

## ARGUMENT

**I.    The Ministerial Exception Is a Threshold Issue That District Courts Must Adjudicate Separately from Merits Issues**

### A.    The Ministerial Exception Is Rooted in Constitutional Principles That Limit the Authority of the Courts

The ministerial exception, unanimously recognized by the Supreme Court in *Hosanna-Tabor Evangelical Lutheran Church and Sch. v. EEOC*, 565 U.S. 171 (2012), and applied again in *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049 (2020), is grounded in both the Free Exercise and Establishment Clauses of the U.S. Constitution's First Amendment.  *See* 565 U.S. at 188.  The Free Exercise Clause ensures that each religious group maintains control over "the selection of those who will personify its beliefs" and "protects a religious group's right to shape its own faith and mission through its appointments." *Id*.  The Establishment Clause "prohibits government involvement in such ecclesiastical decisions." *Id*.  These protections impose structural limitations on the courts and the adjudicatory process.

Courts consistently hold that the ministerial exception limits the judiciary's power to consider matters touching on religious expression, including the selection, discipline, and termination of leaders or message-bearers employed by a religious organization.  *See* Petition at 8-14 (citing numerous cases).  This is because the Religion Clauses set "structural" limits on what courts may properly adjudicate.  *Lee v. Sixth*

Case 1:23-cv-01042-DAE    Document 13-7    Filed 04/03/24    Page 21 of 30
Appellate Case: 20-1230    Document: 010110702779    Date Filed: 06/28/2022    Page: 10
Exhibit 7 to Defendants' Motion to Dismiss
Page 21 of 30

*Mount Zion Baptist Church*, 903 F.3d 113 (3d Cir. 2018). Thus, the nature of the ministerial exception defense shows that it must be courts' priority focus at each step of any necessary litigation.

## B.  The Ministerial Exception Is Akin to Qualified Immunity

The ministerial exception is no ordinary affirmative defense. Typically, affirmative defenses have no constitutional basis. *See* Fed. R. Civ. P. 8(c)(1). By contrast, the ministerial exception's First Amendment foundation has led several courts, including this Court, to analogize the exception to a qualified immunity. *See, e.g.*, *Skrzypczak v. Roman Catholic Diocese*, 611 F.3d 1238, 1242 (10th Cir. 2010); Petition at 9-12 (citing cases). Qualified immunity ensures that the fear and burden of litigation cannot be used to upset the balance of important rights. *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009). For example, it shields public officials from the social costs of litigation including legal expenses, diversion from public duties, and "the danger that fear of being sued will dampen the ardor of all but the most resolute [public officials]." *Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982) (cleaned up). When qualified immunity applies, courts process the protected party's defenses with enhanced priority. *See id.* at 818. For similar reasons, courts treat the ministerial exception and other religious-autonomy doctrines as a form of immunity. In *McCarthy v. Fuller*, 714 F.3d 971 (7th Cir. 2013), the district court had ruled that a jury would decide whether the defendant was a member of a religious order, which, if answered in the affirmative, would be "rejecting the

Case 1:23-cv-01042-DAE    Document 13-7    Filed 04/03/24    Page 22 of 30
Appellate Case: 20-1230    Document: 010110702779    Date Filed: 06/28/2022    Page: 11
Exhibit 7 to Defendants' Motion to Dismiss
Page 22 of 30

contrary ruling of the religious body … authorized … to decide such matters." *Id*. at 976.  The Seventh Circuit granted interlocutory review and reversed:  "The conditions for collateral order review are satisfied …, the district judge's ruling … being closely akin to a denial of official immunity.  A secular court may not take sides on issues of religious doctrine." *Id*. at 975 (citing *Hosanna–Tabor*).

### C.    The Burden of Litigation Alone Can Eviscerate the Key Purposes of the Ministerial Exemption and Be Unconstitutional

The burden of litigating the issues raised by the ministerial exception can itself be an unconstitutional imposition of governmental authority over a religious entity.  In a concurring opinion in *Hosanna-Tabor*, which was later adopted by the majority in *Our Lady*, *see* 140 S. Ct. at 2064, Justices Alito and Kagan explained that subjecting to judicial review a religious body's determination of the requirements for its leaders amounts to an unconstitutional inquiry:

> Hosanna–Tabor believes that the religious function that respondent performed made it essential that she abide by the doctrine of internal dispute resolution … and the civil courts are in no position to second-guess that assessment[;] … a church must be free to appoint or dismiss in order to exercise the religious liberty that the First Amendment guarantees.

565 U.S. at 206; *see also Demkovich v. St. Andrew the Apostle Parish*, 3 F.4th 968 (7th Cir. 2021) (en banc) (expressing grave concern over "the prejudicial effects of incremental litigation" on a religious entity, which is in part why courts must "stay out of employment disputes involving

Case 1:23-cv-01042-DAE    Document 13-7    Filed 04/03/24    Page 23 of 30
Appellate Case: 20-1230    Document: 010110702779    Date Filed: 06/28/2022    Page: 12
**Exhibit 7 to Defendants' Motion to Dismiss**
**Page 23 of 30**

those holding certain important positions with churches and other religious institutions" [quoting *Our Lady*, 140 S. Ct. at 2060]); *Duquesne Univ. of the Holy Spirit v. NLRB*, 947 F.3d 824, 835 (D.C. Cir. 2020) (rejecting the NLRB's assertion of jurisdiction over a Catholic university because even the process of determining the university's religious nature and faculty members' roles in the university's religious mission would "impinge on rights guaranteed by the Religion Clauses.")

Protecting religious groups' immunity from the burdens of unconstitutional litigation is essential. The amicus parties strongly disagree with *Tucker*'s statement that "[t]here is no … evidence that alternatives to an interlocutory collateral-order appeal now would be onerous to Faith Christian or, indeed, to most churches in America." 2022 WL 2035804 at *11 n.12. Speaking for thousands of schools and churches in the Tenth Circuit (and across the country), the amicus parties can state unequivocally that permitting appellate review of religious defenses only after trial is not merely onerous, but likely financially devastating to many schools and parishes. Without the protection of religious-autonomy immunity, and interlocutory appeal to correct erroneous district court rejection of such defenses, many religious entities would be faced with the unfair dilemma of either not exercising their religious beliefs or closing their doors. Religious schools often operate on limited budgets, in which tuition charges provide only a portion of the revenue needed to run the school, with the balance provided by donors. To tell a religious school that it is constitutionally entitled to fire a teacher-minister based on non-compliance with the school's religious standards, but that it will cost the school several-

Case 1:23-cv-01042-DAE    Document 13-7    Filed 04/03/24    Page 24 of 30
Appellate Case: 20-1230    Document: 010110702779    Date Filed: 06/28/2022    Page: 13
Exhibit 7 to Defendants' Motion to Dismiss
Page 24 of 30

hundred-thousand dollars in legal fees if the court finds any issues of
fact for trial, is to leave the school with an impossible choice: retain
religiously antagonistic personnel to avoid the cost of litigation, or
preserve religious identity but risk bankrupting the school with legal
fees. But it is not just legal fees that create an unconscionable
dilemma; the intrusion on their religious affairs will inevitably deter
religious groups from taking religious actions that are otherwise fully
protected by the Free Exercise clause. *See EEOC v. Catholic Univ. of
Am.*, 83 F.3d 455, 467 (D.C. Cir. 1996) (noting that being "deposed,
interrogated, and haled into court" would "inevitably affect" how a
religious school defines its teacher criteria); *Rayburn v. Gen. Conference
of Seventh-Day Adventists*, 772 F.2d 1164, 1171 (4th Cir. 1985) (if
religious organizations face the possibility of "the full panoply of legal
process" whenever they discharge a minister, they will inevitably "make
[those choices] with an eye to avoiding litigation or bureaucratic
entanglement rather than upon the basis of their own personal and
doctrinal assessments").

### D. A Court Must Determine with Finality that the Ministerial Exception Does Not Apply Before It Permits Merits Discovery or a Merits Trial

*Tucker* rejected the idea that the ministerial exception protects
against anything but liability, leaving religious autonomy claims to face
jury decisions just like run-of-the-mill employment discrimination
cases. This approach is counter to Supreme Court principles, has been
rejected by numerous federal circuits, flies in the face of standard

Case 1:23-cv-01042-DAE    Document 13-7    Filed 04/03/24    Page 25 of 30
Appellate Case: 20-1230    Document: 010110702779    Date Filed: 06/28/2022    Page: 14
Exhibit 7 to Defendants' Motion to Dismiss
Page 25 of 30

ministerial-exception practices, and would create immense harm to
religious groups.

The Supreme Court's decisions strongly suggest that once the
ministerial exception has been invoked, discovery and trial do not
proceed as usual.  In their *Hosanna-Tabor* concurrence, Justices Alito
and Kagan wrote, "the mere adjudication of" factual questions about
church teaching can "pose grave problems for religious autonomy."  565
U.S. at 205-06.  In rejecting the NLRB's assertion of jurisdiction over
certain Catholic secondary schools, the Court noted that the "very
process of inquiry" can violate the First Amendment.  *NLRB v. Catholic
Bishop*, 440 U.S. 490, 502 (1979).  Other rulings suggest the same.  *See
Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 718 (1976) (a
court's "detailed review of the evidence" regarding internal church
procedures is "impermissible" under the Religion Clauses).

The federal courts of appeal, including this Court, have reinforced
the principle that focused discovery is not only proper but necessary to
honor the protection provided by the religious autonomy doctrines.  *See,
e.g.*, *Skrzypczak v. Roman Catholic Diocese*, 611 F.3d 1238, 1245 (10th
Cir. 2010) ("The types of investigations a court would be required to
conduct in deciding Title VII claims brought by a minister could only
produce by their coercive effect the very opposite of that separation of
church and State contemplated by the First Amendment." [cleaned up]);
*Sterlinski v. Catholic Bishop*, 934 F.3d 568, 570 (7th Cir. 2019) ("Only
by subjecting religious doctrine to discovery and, if necessary, jury trial,
could the judiciary reject a church's characterization of its own theology

6

605409490.5

Case 1:23-cv-01042-DAE    Document 13-7    Filed 04/03/24    Page 26 of 30
Appellate Case: 20-1230    Document: 010110702779    Date Filed: 06/28/2022    Page: 15
**Exhibit 7 to Defendants' Motion to Dismiss**
**Page 26 of 30**

and internal organization.  Yet it is precisely to avoid such judicial entanglement in, and second-guessing of, religious matters that the Justices established the rule of *Hosanna-Tabor*.”); *Fratello v. Archdiocese of New York*, 863 F.3d 190, 198 (2d Cir. 2017) (after the district court could not determine whether the ministerial exception applied on the archdiocese's motion to dismiss, it “appropriately ordered discovery limited to” the applicability of the exception).

District courts typically honor these principles by bifurcating discovery and then entertaining motions for summary judgment on the ministerial exception and other constitutional doctrines.  *See, e.g. Sterlinski v. Catholic Bishop of Chicago*, No. 16C00596, 2017 WL 1550186, at *5 (N.D. Ill. May 1, 2017) (noting that it is standard practice to “limit discovery to the applicability of the ministerial exception”).  The ministerial exception exists to avoid judicial entanglement in the internal affairs of religious institutions, and bifurcating discovery serves that end.

In holding that that the ministerial exception only protects against liability, provides no form of immunity from standing trial, and is like every other affirmative defense, *Tucker* conflicts with all of the above authorities.

## II.    Immediate Appellate Review Is Available Where, As Here, a District Court Decision Rejects a Ministerial Exception Defense

When a district court declines to apply the ministerial exception, review under the collateral-order doctrine is available and warranted.

Case 1:23-cv-01042-DAE    Document 13-7    Filed 04/03/24    Page 27 of 30
Appellate Case: 20-1230    Document: 010110702779    Date Filed: 06/28/2022    Page: 16
**Exhibit 7 to Defendants' Motion to Dismiss**
**Page 27 of 30**

The collateral-order doctrine allows for appeal of judicial decisions that (1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) are effectively unreviewable on appeal from a final judgment. *Los Lobos Renewable Power, LLC v. AmeriCulture, Inc.*, 885 F.3d 659 (10th Cir. 2018). *Tucker* agreed that the second element was "clearly satisfied," 2022 WL 2035804 at *10, but the other two are as well. The district court's refusal to grant summary judgment on the ministerial exception conclusively determined that Faith Bible had no ministerial exception "immunity" and was subject to merits trial. *See Mitchell v. Forsyth*, 472 U.S. 511, 537 (1985) (stating that "the court's denial of summary judgment finally and conclusively determines the defendant's claim of right not to *stand trial* on the plaintiff's allegations"). And, of course, the question of whether Faith Bible has a right not to stand trial is unreviewable after it has already been tried.

Other federal circuits have held that collateral-order-doctrine jurisdiction is available to review rejected claims of religious autonomy. For example, the Seventh Circuit in *McCarthy* allowed such an appeal to review an Establishment Clause defense arising from a district court decision that certain religious disputes should go to trial. The court explained that even a jury verdict on the judgments of a religious order were impermissible:

> Then there would be a final judgment of a secular court resolving a religious issue. Such a judgment could cause confusion, consternation, and dismay in religious circles. The commingling of religious and secular justice would violate not only the injunction in Matthew 22:21 to "render unto

8

Caesar the things which are Caesar's, and unto God the things that are God's," but also the First Amendment, which forbids the government to make religious judgments. The harm of such a governmental intrusion into religious affairs would be irreparable, just as in the other types of case in which the collateral order doctrine allows interlocutory appeals.

714 F.3d at 976.

Thus, contrary to *Tucker*'s holding, Faith Bible's appeal warranted collateral-order review.

## CONCLUSION

*Tucker* is contrary to well-settled law.  It also places severe burdens on religious groups and permits unconstitutional interference with their religious autonomy.  The amicus parties therefore ask that Faith Bible Chapel's Petition for Rehearing En Banc be granted, and that *Tucker* be vacated pending review by the full Court.

June 28, 2022                    Respectfully submitted,

                                 */s/ Christian Poland*
                                 Christian Poland

                                 BRYAN CAVE LEIGHTON PAISNER LLP
                                 161 N. Clark St., Suite 4300
                                 Chicago, IL 60601-3315
                                 (312) 602-5085
                                 christian.poland@bclplaw.com

                                 *Counsel for Amici*

605409490.5

Case 1:23-cv-01042-DAE    Document 13-7    Filed 04/03/24    Page 29 of 30
Appellate Case: 20-1230    Document: 010110702779    Date Filed: 06/28/2022    Page: 18
Exhibit 7 to Defendants' Motion to Dismiss
Page 29 of 30

## CERTIFICATE OF COMPLIANCE

1.    This document complies with the type-volume limit of Fed. R. App. P. 29(b)(4) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 2,594 words, according to a count performed by Microsoft Word.

2.    This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Century Schoolbook.

Dated:  June 28, 2022

*/s/ Christian Poland*
Christian Poland

*Counsel for Amici Curiae*

605409490.5

Case 1:23-cv-01042-DAE    Document 13-7    Filed 04/03/24    Page 30 of 30
Appellate Case: 20-1230    Document: 010110702779    Date Filed: 06/28/2022    Page: 19
Exhibit 7 to Defendants' Motion to Dismiss
Page 30 of 30

## CERTIFICATE OF SERVICE

I hereby certify that on June 28, 2022, the foregoing amicus brief was filed electronically with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit through the Court's CM/ECF system. I certify that all participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

*/s/ Christian Poland*
Christian Poland

605409490.5