**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| THE LUTHERAN CHURCH—MISSOURI SYNOD, a Missouri nonprofit corporation, Plaintiff, | § § § § | |
| v. | § § | Case No. 1:23-cv-1042-RP |
| DONALD CHRISTIAN, CHRISTOPHER BANNWOLF, CONCORDIA UNIVERSITY TEXAS, INC., & JOHN DOES 1–12 Defendants. | § § § § § § | |

## RESPONSE TO MOTIONS TO DISMISS AND TO REMAND

The Lutheran Church—Missouri Synod, a Missouri nonprofit corporation (while not part of the corporate name, for purposes of clarification, this corporate entity shall be referred to herein as "LCMS Inc."), submits the following Response to Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to Join Indispensable Parties (Doc. 13) ("Motion to Dismiss") and the Motion to Remand filed by Concordia University Texas, Inc., ("CTX") in the case consolidated with this one.[1]

## Introduction

The main issue CTX has posited for the Court to decide in both the Motion to Dismiss and the Motion to Remand is whether the Court has diversity jurisdiction. There is no question that the parties to this case are diverse, as LCMS Inc. is a Missouri nonprofit corporation, and the Defendants are Texas citizens.  But CTX contends that the ecclesiastical denomination of LCMS, Inc. called the "Synod," is a separate non-diverse entity that is a necessary party to this litigation.

---

[1] On April 17, 2024, the Court consolidated this case with No. 1:24-cv-176-RP; *Concordia University Texas v. The Lutheran Church—Missouri Synod, et al* ("*CTX v. LCMS*") for the determination of the Defendants' Motion to Dismiss this case, and the Plaintiff's Motion to Remand in *CTX v. LCMS (the "Removed Case")*. *See* Order Granting Unopposed Motion to Consolidate (Doc. 18)

Indeed, CTX has attempted to sue the Synod in the case it filed in Travis County District Court several months after this suit was filed, which LCMS Inc. subsequently removed to this court (No. 1:34-cv-176-RP, the "Removed Case"), which removal is the basis of the pending Motion to Remand.  As demonstrated below, there is diversity jurisdiction between the parties.  LCMS, Inc. is the proper plaintiff in this lawsuit.   Synod is not a legal entity and not a necessary party to this case, or even a proper one.  The Motion to Dismiss and the Motion to Remand therefore should be denied.

### Procedural Background

On September 1, 2023, LCMS Inc. originally filed this suit against CTX, Donald Christian (the president of CTX), Christopher Bannwolf (the chair of the CTX Board of Regents) and John Does 1-12 (unidentified members of the CTX Board of Regents whose votes caused the actions complained of in the lawsuit) (collectively, "Defendants"), asserting various causes of action, including a request for declaratory relief. *See* Original Complaint (Doc. 1). LCMS, Inc. agreed to, and the Court granted, an extension of time until January 22, 2024, for the Defendants to answer the Complaint.  *See* Agreed Motion to Extend Responsive Pleading Deadline (Doc. 7); November 2, 2024, Text Order granting Motion.

On January 19, 2024, without notice to LCMS, Inc. CTX filed an Original Petition in the 353rd Judicial District Court of Travis County, Texas against LCMS, Inc. and a fictional entity that CTX named "The Lutheran Church—Missouri Synod, an unincorporated association of Lutheran congregations." *See* Appendix A (Doc. 2) in the Removed Case.   In that Petition, CTX sought only declaratory relief—essentially the opposite of the relief LCMS Inc. sought in its Original Complaint. *Compare* First Amended Complaint (Doc. 11) with Original Petition in Removed Case (Appendix A to Notice of Removal). On January 22, 2024, the Defendants filed a Motion to

Dismiss for Lack of Subject Matter Jurisdiction and Failure to Join Indispensable Parties on (Doc. 9). Later the same day, Defendants notified LCMS, Inc. of the Original Petition Defendants had filed in Travis County District Court.

LCMS, Inc. removed the Travis County District Court case to this Court on February 21, 2024. *See* Notice of Removal (Doc. 1) in Case No. 1:24-cv-176-RP (Removed Case). Much of the Defendants' Motion to Dismiss is based on an alleged lack of diversity jurisdiction, on the grounds that the Synod was a necessary party to the suit. *See* Motion to Dismiss (Doc. 9). In an attempt to correct the Defendants' misunderstanding regarding the roles of LCMS, Inc. and its connected ecclesiastical body, the Synod, LCMS, Inc. filed a First Amended Complaint on February 29, 2024 (Doc. 11). Undaunted, Defendants filed their second Motion to Dismiss (Doc. 13) on essentially the same grounds as their first Motion to Dismiss (Doc. 9), which was rendered moot by the filing of the First Amended Complaint. Simultaneously, Defendants sought to remand (Doc. 5) the case that LCMS, Inc. removed to this Court in the Removed Case.

## Summary of Argument

The Court has diversity jurisdiction because there is diversity between LCMS, Inc. on the one hand and all defendants CTX, Christian, Bannwolf and John Does 1-12 on the other; Synod is neither a necessary nor even a proper party to this suit or the Removed Case because Synod is not a civil law entity, does not engage in secular activities and does not have the capacity to sue or be sued. Accordingly, both the Motion to Dismiss and the Motion to Remand must be denied.

## Argument

### Objections to Defendants' Misuse of Documents

Defendants' Motion to Dismiss is replete with mischaracterizations, misstatements, and exaggerations of Synod and/or LCMS Inc. documents. LCMS Inc. objects to these misuses of

3

documentary evidence, and urges the Court to read the documents themselves, and not the Defendants' inaccurate representations. These attempts to mislead the Court include:

- CTX states in Paragraph 10, "In its governing documents, Synod retains the rights and authorities of churches and organizations, including the right to own and convey property of every description." However, CTX fails to cite to any evidence supporting this claim, for which Plaintiff objects to the statement as unsupported by the evidence.[2]

- CTX misstates Article. IV of the Synod Constitution in Paragraph 10.  CTX states, "Under its Constitution, Synod has the power "to purchase, hold, administer, and sell property of every description in the interest of the Synod", and "To accept, hold administer, and if deemed…work."  However, the article in question is being quoted incorrectly.  A correct quote of this Article IV would have stated, "**The Synod in convention is empowered to and has formed corporate entities which shall have legal powers**: 1. to purchase, hold, …Synod" and "To accept….work."  See Ex. 2, Constitution of The Lutheran Church-Missouri Synod, emphasis added.  LCMS Inc. therefore objects to the above statement as being a misstatement of the evidence and the Court should disregard the statement.

- CTX makes improper statements and conclusions in Paragraph 13 of the Motion to Dismiss.  CTX states various conclusions regarding the interpretation of the Synod Constitution, Bylaws and Board of Directors Policy Manual, that LCMS Inc. objects to, to include:

  - Under Synod's governing documents, Synod's Board of Directors, not LCMS, is the legal representative of Synod. Ex. 3 p.7, Art. XI, Sec. (E)(2); Ex. 2 p.6, § 1.4.4; p.95, § 3.3.4; Ex. 5 p. 12, ¶ 13.1.1.

---

[2] Furthermore, in the subsequent sentence of paragraph 10, the cited Bylaw 1.2.1 (f), the Articles of Incorporation of LCMS, Inc. are referred to as "Synod's Articles of Incorporation," making clear that the civil law powers reserved to the Synod are executed by its civil law entity, LCMS Inc.

- Approval by Synod's Board of Directions is required for initiation of any legal proceedings on behalf of Synod. Ex. 5 p.47, § 4.14.2.2(h)(3).

- Similarly, Synod's Board of Directors is "the custodian of all property of Synod." Ex. 2 at p.6, § 1.4.4; p.95, § 3.3.4; p.98 § 3.3.4.7; Ex. 5 p. 12, ¶ 13.1.2.

- The Board's representation and custodianship may be delegated to an agency of the Synod. Ex. 5 p. 12, ¶ 13.1.3. LCMS is not an agency of the Synod. 1st Am. Compl. ¶ 18.

-

However, as detailed in Ex. 1, ¶9 (the Declaration of John Sias), CTX's understanding of these provisions is incorrect.  As Rev. Sias states:

> CTX argues that Synod's Board of Directors, not LCMS, is the legal representative of the Synod, selectively reciting and interpreting Synod's and LCMS's Const. Art. XI E 2, "The Board of Directors is the legal representative…of The Lutheran Church—Missouri Synod." CTX states that therefore "Synod's Board of Directors, not LCMS, is the legal representative of the Synod." This is a false dichotomy, as: (1) the Constitution and Board of Directors of the Synod are also the Constitution and Board of Directors of LCMS (Art. of Inc. VII), and the one Board of Directors "shall have the powers and duties that have been accorded to it by the Articles of Incorporation, Constitution, Bylaws, and resolutions of the Synod, and the laws of the State of Missouri" (Bylaw 3.3.4.2); (2) Synod is not a civil law entity but has formed LCMS to be its civil law entity (Art. of Inc.); and (3) Const. Art. XI E 2 continues that "For the purposes of this article, the Lutheran Church—Missouri Synod includes both the Synod formed by this Constitution and the Missouri corporation formed by the Synod." Thus, Const. Art. XI E 2 is read correctly to state that the one Board of Directors, which is of both the Synod and LCMS, is legal representative of the Synod precisely by directing the legal actions of LCMS, the Synod's civil law entity. There is thus no inconsistency between the statements that the LCMS has the authority to prosecute suits on behalf of the Synod and that the Board of Directors (of both Synod and LCMS) does so, doing so as it necessarily does by directing such actions of the Synod's civil law entity, LCMS.

In a dispute between a representative of Synod and LCMS Inc. and CTX on the interpretation of Synod and LCMS Inc.'s governing documents, the court is compelled to side with LCMS Inc. *See Serbian Orthodox Diocese v. Milivojevich*, 426 U.S. 696 (1976).

LCMS, Inc. objects to all such unsupported assertions and characterizations and requests

that the Court disregard and not consider them in rendering a decision on the Motion to Dismiss or the Motion to Remand.

**LCMS, Inc.and the Synod are not Separate Legal Entities**

The Court must understand that LCMS, Inc. and Synod are not two separate legal entities capable of suing and being sued.[3]  LCMS, Inc. is a legally formed Missouri nonprofit corporation, and the Synod is its ecclesiastical body and not a separate legal entity. Indeed, Synod specifically has defined itself not to be a civil law entity.

In the Motion to Dismiss, its Motion to Remand and its Original Petition in the Removed Case in Travis County District Court, CTX asserts that there should be two parties as plaintiff in this case—LCMS, Inc. and a Plaintiff-created, fictional entity called "The Lutheran Church – Missouri Synod, an unincorporated association of Lutheran congregations." *See* Appendix A, Original Petition, Pg. 1, Preamble and ¶1 (Doc. 2, Removed Case). This appears to be CTX's attempt at recasting and transforming the ecclesiastical body named The Lutheran Church—Missouri Synod (the "Synod") into a separate civil law entity, alongside the actual civil law entity the Synod has definitively established for itself in LCMS, Inc. the eponymous Missouri nonprofit corporation.  *See* Ex. A to Notice of Removal, Declaration of John Sias at ¶1 (Doc. 1, Removed Case); *see also* second Declaration of John Sias at ¶¶ 4-5 (attached as Ex. 1). However, the Synod does not exist as a separate civil entity from LCMS, Inc. and in fact, according to the express ecclesiastical law of the Synod (*i.e.* its Bylaw 1.2.1), the Synod has declared that it is not a civil law entity.  See Ex. 1 at ¶4.

There is a single civil law entity called The Lutheran Church—Missouri Synod (previously defined herein as "LCMS, Inc."), which was incorporated in the State of Missouri more than 125

---

[3] Defendants actually seem to understand this. *See* Motion to Dismiss at ¶41 (admitting "LCMS is not independent of Synod").

years ago as a civil law reflection of the ecclesiastical body known as Synod. *Id*. at ¶5. Contrary to CTX's allegations in the State Court Lawsuit/Removed Case, the Synod is not an unincorporated association of Lutheran congregations. *Id.*.   The Synod is the church body or religious denomination in which self-governed Lutheran congregations, principally in the United States, voluntarily profess and seek to maintain and live out a common faith in accordance with the Constitution and Bylaws of the Synod, which define their shared religious beliefs and ecclesiastical polity.  *Id*. at ¶6.  Delegates of the Synod's member congregations have since 1847 met regularly in convention, along with representatives of individual members (ministers) and subordinate governing bodies formed by the Synod in accordance with the Constitution and Bylaws, to exercise the mind of the church on matters of its doctrine and religious practice and to exercise governance of the church body.  *Id*.

The Synod, while acting in convention, has specifically declared that Synod refers to member congregations and its agencies and that Synod "is not a civil law entity." (Bylaw 1.2.1 (v).) *Id*. at ¶¶ 7. The Synod, instead of operating as a civil law entity, has created LCMS, Inc. the Missouri nonprofit corporation, to carry out its secular functions, including the ability to sue and be sued.  *Id*. at ¶¶ 7. The nonprofit corporation LCMS, originally formed in 1894 as the "German Evangelical Synod of Missouri, Ohio, and other States," has had its governing documents amended by its member congregations from time to time, including to establish its present name, which is identical to that of the Synod. *Id*.

Importantly, the Missouri nonprofit corporation LCMS, Inc. holds as its Constitution and Bylaws the selfsame Constitution and Bylaws of the Synod, the church body or ecclesial denomination.. *Id*. The members of the nonprofit corporation are the selfsame member congregations and individual ministers of the Synod. *Id.*.  The officers and board of directors of

the Synod are those of the nonprofit corporation, LCMS, exercising functions, with regard to the one, ecclesial, and with regard to the other, legal. *Id.* The Synod convention is the "ultimate authority of the corporation" just as it is the "legislative authority" of the ecclesial denomination. *Id.* CTX's attempt to declare the member congregations of the Synod to constitute a purported unincorporated association is contrary to their long-standing, definitive, and exclusive exercise of their right to incorporate and represent themselves, as to their common activities, as LCMS. *Id.*

Synod is not a civil law entity. *Id.* at ¶8. It does not, therefore, have a registered agent anywhere, including Texas. *Id.* The Synod does not directly own any property. *Id.* All property of the Synod is owned by LCMS, Inc. or by other corporations to whom Synod or its Board of Directors (and that of LCMS Inc.) has delegated specific authority to hold title to such property. *Id.* The Synod does not consist of, in itself and apart from its corporation LCMS, Inc. a legal form of association, which it explicitly disclaims—"The Synod…is not a civil law entity" (*see* Bylaw 1.2.1 (v)). *Id.* The Synod does not do business in Texas, directly owns no assets in Texas (or elsewhere), does not enter into contracts, does not have any bank accounts and has at no relevant time done business in a civil sense. *Id.* The Synod incorporated LCMS, Inc. in 1894 in part to handle its civil law affairs and to exercise civil law functions as is contemplated under its Constitution or Bylaws. *Id.* Any business dealings of the Synod are done through LCMS, Inc. or by other corporations to whom the Synod or its Board of Directors (and that of LCMS Inc.) has assigned specific authority. *Id.* With the exception of the State Court Lawsuit, the Synod has never been sued in a civil court. *Id.* Whereas, on the other hand, the LCMS, Inc. has been a party to litigation on behalf of the Synod. *Id.*

The Synod does not hold a legal form of association, which it explicitly disclaims—"The Synod…is not a civil law entity" (*see* Bylaw 1.2.1 (v)); *Id.* at ¶8. In short, where Synod as an

ecclesiastical body—but not a civil law entity—has interests at law, LCMS, Inc. is the legal entity formed by Synod that represents Synod before the law, as directed by the LCMS, Inc. Board of Directors, which is also the Board of Directors of the Synod.  *Id.*  In short, LCMS, Inc. and the Synod are two sides of the same coin.  The Synod side exercises ecclesiastical responsibility while the LCMS, Inc. side exercises civil responsibility. For legal and diversity jurisdiction purposes, LCMS, Inc. is the real party in interest, and is the legal entity representing the civil law interests of the Synod.

**Analysis by Other District Courts In this Circuit of Similar Arguments to Those in this Case is Instructive**

Although LCMS, Inc. found no case law directly on point (due at least in part to the fact that the Synod has never been a party to a lawsuit other than the State Court Lawsuit), the Church of Jesus Christ of Latter-Day Saints has advanced similar arguments to those advanced by LCMS, Inc. and courts' treatment of those arguments is instructive.

In *Turner v. Church of Jesus Christ of Latter-Day Saints*, 1996 U.S. Dist. LEXIS 23175, No. 3:95-cv-1354-P (N.D. Tex. Feb. 22, 1996), the plaintiffs, who were Texas citizens, sued The Church of Jesus Christ of Latter-Day Saints ("LDS"), and two corporate entities affiliated with LDS. The corporate entities, who were not Texas citizens, removed the case to federal court based on diversity jurisdiction, arguing that LDS was not a proper party because it lacked the capacity to sue or be sued as a purely ecclesiastical entity. 1996 U.S. Dist. LEXIS 23175 at *8-9.   The corporate entities relied in part on *Trinity Presbyterian Church v. Tankersley*, which found:

> The courts in this state have long recognized the concept that, whenever there is an incorporated church, there exist two entities. Stated otherwise, there is a spiritual church and a secular legal corporation, each separate although closely connected. Each entity has a separate purpose. Questions involving the spiritual church are ecclesiastical in nature, and civil courts cannot decide any questions concerning this entity. In contrast, the secular corporate entity is formed by the state and performs civil functions, e.g., holding title to church property, and is in no sense ecclesiastical

in its function; therefore, civil courts can decide questions concerning the corporation.

*Id*. at *10 (quoting *Trinity Presbyterian Church v. Tankersley*, 374 So. 2d 861, 866 (Ala. 1979), *cert. denied*, 445 U.S. 904 100 S. Ct. 1079, 63 L. Ed. 2d 319 (1980).

The court in *Turner* was receptive to the argument, reasoning that "the question of whether either entity is amenable to suit appears to be one of whether either entity engaged in secular activities." 1996 U.S. Dist. LEXIS 23175 at *11.  Although the corporate entities maintained that LDS did not engage in secular activities, the court found that LDS did indeed engage in secular activities, as it has been a plaintiff or a defendant in several cases without contesting such involvement. *Id.* Accordingly, the court held that the corporate entities and LDS did not meet their burden to show that LDS had been fraudulently joined. *Id*.[4]

However, the court in *Herbert v. Thornton*, 2014 U.S. Dist. LEXIS 28965, No. 12-0607 (E.D. La. March 6, 2014), reached a different conclusion. In that case, the procedural posture of the case was similar to that in *Turner*, with the court addressing whether LDS could be joined as a party. With his motion for leave to file a third amended complaint, the plaintiff in *Herbert* sought to join LDS as a non-diverse party.  Citing to *Turner* and *Tankersley*, the court noted that neither the original complaint, nor the first amended complaint, nor even the second amended complaint alleged that LDS was engaged in secular activities.  *Id*. at *18 n. 4. Further, even in the proposed third amended complaint, the plaintiff did not allege any actions attributable to LDS that would suggest it was engaged in non-secular activities.  *Id*. Moreover, the LDS-affiliated corporate entities opposing joinder admitted that LDS was a non-diverse, spiritual organization without assets, money or even a representative who could attend trial. Accordingly, the court found that

---

[4] This reasoning was followed by a district court in Virginia under similar factual circumstances.  *Smith v. Church of Jesus Christ of Latter-Day Saints*, 431 F.Supp.3d 733 (E.D. Va. 2020).

10

adding LDS as a party was clearly an attempt at fraudulent joinder, and denied the motion for leave. *Id*. at *20.

The facts of this case are far more similar to those in *Herbert* than in *Turner*. Whereas LDS engaged in secular activities and had both sued and been sued, Synod engages purely and solely in non-secular activities, fulfilling its role as a spiritual church, whose activities cannot be addressed by any courts. Synod does not directly own property, does not own a bank account, does not sue and, to the knowledge of its secretary, has never been sued. Synod is not a proper party to this lawsuit or any other. Nor does CTX allege that Synod engages in any secular activities. CTX merely asserts that Synod, without factual support, that Synod is an unincorporated association of congregations. CTX's motion is devoid of any description of any secular activity in which Synod may be engaged, relying on a tenuous argument that Synod has the capacity to sue and be sued.

**Synod Members' Citizenship is not Relevant to Diversity of Citizenship**

LCMS Inc. research did not reveal any judicial decisions relating to the specific relationship between LCMS Inc. and its ecclesial denomination, the Synod. By analogy, however, because Synod is not a separate *legal* entity, the purported citizenship of its members, which CTX argues defeat diversity, should be disregarded for purposes of determining diversity of citizenship.

Indeed, some courts have held that where a party to a suit is not a separate legal entity from an actual legal entity, that party is not a proper party to the suit. The question in *F.E.L. Publications, Ltd. v. Catholic Bishop of Chicago*, 754 F.2d 216 (7th Cir. 1985) was whether the plaintiff could recover against the Catholic Bishop for tortious interference in the plaintiff's business relationship with one of the parishes in the Chicago Archdiocese. The court held that recovery was legally impossible because "the parishes within the Archdiocese are not legal entities

separate and independent from the Catholic Bishop but are subsumed under the Catholic Bishop." *Id*. *F.E.L. Publications* makes clear that an unincorporated religious organization constitutes a single legal entity, and that unincorporated divisions of that organization lack any independently recognized legal status. *See also Diocese of Fort Wayne-South Bend, Inc., v. Sebelius*, 988 F. Supp. 2d 958, 965 (N.D. Ind. Dec. 27, 2013) (district court acknowledged that the Diocese of Fort Wayne-South Bend, Inc., was the civil law entity for the Diocese of Fort Wayne-South Bend, "which is the local embodiment of the Universal Roman Catholic Church."

In the case of Synod and LCMS, Inc. the governance point made by *F.E.L. Publications* is even stronger.  Unlike the Roman Catholic Church, the Synod's polity is not hierarchical.  The Synod member congregations maintain their own ecclesiastical and civil legal existences as incorporated or unincorporated religious associations, apart from the ecclesiastical and legal existence of LCMS, Inc. and Synod.  *See* Ex.1 at ¶10.   They have associated ecclesiastically as the Synod and formed LCMS, Inc. to be the Synod's civil law entity for the furtherance, before the law, of their common objectives. *Id*.  If unincorporated Roman Catholic parishes can be so associated with their Catholic Bishop, then surely the Synod can be so associated with LCMS Inc. This point is driven home even more succinctly in the LCMS, Inc. Synod Constitution wherein it states in reference to the Rights and Duties of their officers, "The Lutheran Church—Missouri Synod includes both the Synod formed by this Constitution and the Missouri Corporation formed by the Synod." *See* Constitution, Art. X1.E.2.S.

Moreover, federal courts routinely disregard nominal or formal parties' citizenship in determining whether the courts have diversity jurisdiction, focusing instead on the citizenship of the real parties to the controversy.  *Navarro Savings Ass'n v. Lee*, 446 U.S, 458, 461 (1980).  In *Navarro Savings*, the Supreme Court addressed whether the trustees or the trust's beneficial

shareholders are the real parties to a controversy when the trustees are named as the parties to the lawsuit. The Supreme Court held that in such a situation, "a trustee is a real party to the controversy for purposes of diversity jurisdiction when he possesses certain customary powers to hold, manage, and dispose of assets for the benefit of others." *Id*. at 464. And in that case, the trustees were the real parties to the controversy because their "control over the assets held in their names [wa]s real and substantial." *Id*. at 465.

The Fifth Circuit has followed *Navarro Savings* repeatedly, finding the citizenship of the representative party is what controls in determining diversity jurisdiction. In *Justice v. Wells Fargo Bank Nat'l Ass'n*, 674 F. App'x 330 (5th Cir. 2016) (*per curiam*), the Fifth Circuit held that for diversity jurisdiction purposes in a case involving a mortgage securitization trust, the citizenship of the trustee is controlling, and when a trustee files a lawsuit in her name, her jurisdictional citizenship is her State of citizenship. *Id*. at 332. The only preliminary question a court must answer is whether the party is an "active trustee whose control over the assets held in [its] name is real and substantial." *Id*. The Court reached the same conclusion in *Bynane v. Bank of N.Y. Mellon*, 866 F.3d 351 (5th Cir. 2017), holding that the trustee named as a defendant was the real party in controversy and its citizenship is what matters in determining diversity jurisdiction if its control over the trust's assets is real and substantial. 866 F.3d at 356. *See also Hometown 2006-1 1925 Valley View L.L.C. v. Prime Income Asset Mgmt., L.L.C.*, 847 F.3d 402 (5th Cir. 2017) (affirming diversity jurisdiction and refusing to look beyond citizenship of trustee); *Corfield v. Dall. Glen Hills LP*, 355 F.3d 853, 866 (5th Cir. 2003) (citizenship of one Lloyd's underwriter sufficient to establish diversity jurisdiction).[5]

---

[5] In *Americold Realty Trust v. Conagra Foods, Inc.,* the Supreme Court held that citizenship of all members of a Maryland Real Estate Investment Trust must be considered in determining diversity jurisdiction. 136 S.Ct. 1012 (2016). However, the Fifth Circuit has distinguished *Americold* because a Maryland Real Estate Trust, while

CTX argues that Synod is a proper party, and in fact a necessary party, because it has an interest in this litigation.  Motion to Dismiss at ¶¶ 34-47. But having an interest in the outcome of a lawsuit does not make Synod an appropriate party, or one whose purported citizenship should be considered for jurisdictional purposes. As the Fifth Circuit has held, the "real party in controversy" test does not require a federal court to consider the citizenship of non-parties who have an interest in the litigation or might be affected by the judgment. *Corfield*, 355 F.3d at 865 n.10. Rather, the test requires consideration of the citizenship of non-parties when a party already before the court is found to be a non-stake holder/agent suing only on behalf of another. *Id*. That is not the case here.

LCMS, Inc. has real and substantial control over the assets held in its name, as it does own property, does maintain bank accounts, does sue if necessary and has been sued.  Ex. 1 at ¶8. Indeed, that is LCMS Inc.'s purpose—to engage in secular activities on behalf of the Synod, whereas the Synod does not.

**Analogous Cases Dictate that the Court Consider LCMS Inc.'s Citizenship for Diversity Purposes**

Disregarding Synod's members for purposes of determining diversity of citizenship is consistent with how courts approach diversity in the context of unincorporated divisions of corporations, where the citizenship of those divisions is not separately considered.

Courts have often and long held that unincorporated divisions of corporations are citizens of the state of which the corporation that owns the division is a citizen. *See, e.g., Breitman v. May Co. Cal.*, 37 F. 3d 562, 564 (9th Cir. 1994) (a division of a corporation does not possess formal

---

nominally a trust, is in reality an unincorporated business entity recognized by statute.  For traditional trusts, *Americold* affirmed *Navarro Savings'* holding that when a trustee files a lawsuit or is sued in her own name, her citizenship is all that matters for diversity purposes. *Americold*, 136 S.Ct. at 1016; *Hometown 2006-1*, 847 F.3d at 306-07; *see also Bynane*, 866 F.3d at 357; *Justice*, 674 F.App'x at 332.

separateness and thus is not an independent entity for jurisdictional purposes); *Wis. Knife Works v. Nat'l Metal Crafters*, 781 F.2d 1280, 1282 (7th Cir. 1986); *Coghlan v. Blue Cross Blue Shield of Tex.*, 2013 U.S. Dist. LEXIS 5111, No. H-12-2703 (S.D. Tex., Jan. 14, 2013); *see also EEOC v. St. Francis Xavier Parochial School*, 77 F. Supp. 2d 71, 78 (1999) (unincorporated church and parochial school were divisions of the unincorporated Parish, all of which lacked the legal capacity to be sued), citing *United States v. ITT Blackburn Co., a Div. of ITT*, 824 F.2d 628, 631 (8th Cir. 1987) (accepting as valid concession that an "unincorporated division cannot be sued or indicted, as it is not a legal entity"); *Griffith v. Keystone Steel and Wire, a Div. of Keystone Consol. Indus., Inc.,* 887 F. Supp. 1133, 1138 (C.D. Ill. 1995) (holding that unincorporated division of parent corporation cannot be sued). As the court noted in *St. Francis*, the rationale for this precedent is, above all, pragmatic, as an unincorporated division does not possess separate assets; all of its assets are owned by the corporation. *St. Francis*, 77 F.Supp. 2d at 76.

Synod, as an ecclesiastical body, is not a division of LCMS Inc.[6]  But  LCMS, Inc. is the legal entity representing the civil law interests of the Synod the Synod not being a civil law entity, and as such any citizenship Defendants purport to assign to Synod for jurisdictional purposes is not appropriately considered.

**Synod's Exercise of its First Amendment Rights Through an Amicus Brief Does not Establish it is a Separate Legal Entity**

Defendants assert various theories for why Synod should be considered a separate entity from LCMS, Inc. and a litigant necessary to these cases. One is that Synod presented itself to the state as an amicus in an unrelated case in the Tenth Circuit in 2022 pursuant to an amicus brief (the "Amicus Brief").  *See* Motion to Dismiss at ¶¶ 14, Ex. 7. However, this assertion reflects

---

[6] Likewise, the member congregations of the Synod are not divisions of the Synod or LCMS, Inc.

Defendant's misunderstanding and mischaracterization of the polity of the Synod.  Defendants refer in particular to Paragraph 6 of the Amicus Brief in question, which states:

> Amicus Lutheran Church- Missouri Synod is and international Lutheran denomination headquartered in St. Louis, Missouri.  It has more than 6,000 member congregations, 22,000 ordained and commissioned ministers, and nearly 2 million baptized members throughout the United States, including Colorado. Additionally, the Synod has two seminaries, six universities, and the largest Protestant parochial school system in America.

Motion to Dismiss at Exhibit 7.

In an amicus curiae brief involving an ecclesiastical body, it is important to identify the ecclesiastical interests and rights sought to be protected.  The Amicus Brief correctly identifies the Synod's interests and rights as those to be protected—protections afforded Synod by the First Amendment to the Constitution of the United States.  However, to the extent that Synod must be a civil law entity to assert such rights and protections, it does so through LCMS, Inc. its eponymous civil law entity.  This specific relationship and function is specifically articulated in LCMS, Inc.'s Amended and Restated Articles of Incorporation: "The objectives and purposes of this corporation are…[t]o acknowledge and assert the protections granted by the First Amendment to the Constitution of the United States."  See Ex. 3,  Article II, ¶c, Amended and Restated Articles of Incorporation of The Lutheran Church—Missouri Synod.  Consistent with LCMS, Inc.'s historical practice in participating as an *amicus curiae* on behalf of Synod, and as is the case with the numerous other *amicus curiae* pursuant to which the Synod's rights have been asserted, LCMS, Inc. asserts those rights on behalf of Synod, utilizing legal counsel retained by LCMS Inc.  *See* Declaration of John Sias, Ex. 1 at ¶ 9. LCMS, Inc. is the civil law means by which the rights of Synod are asserted and the interests of Synod protected.  Defendants attempt to make a technical argument utilizing the Amicus Brief in the hopes of establishing diversity jurisdiction, disregarding the reality that the Amicus Brief identifies the Synod's rights and interests are those to be protected,

but that this is achieved through the actions of LCMS Inc.

In the alternative, even if the court were to determine that the Synod acted directly as *amicus* pursuant to the Amicus Brief rather than through LCMS, Inc. the fact that Synod was a non-party to an unrelated case has no bearing on whether it is a proper party to this one.

> An amicus curiae is not a party and cannot assume the functions of a party, an attorney for a party or even a partisan.  He has no control over the litigation and no right to institute any proceedings therein; he must accept the case before the court with the issues made by the parties… "An amicus curiae is not a party to the action, but is merely a friend of the court whose sole function is to advise, or make suggestions to the court."

*United States v. Barnett*, 330 F.2d 369. (quoting *Clark v. Sandusky*, 205 F.2d 915, 917 (7th Cir. 1953)).

"An amicus brief should normally be allowed when a party is not represented competently or is not represented at all, when the amicus has an interest in some other case that may be affected by the decision in the present case (though not enough affected to entitle the amicus to intervene and become a party in the present case), or when the amicus has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide." *Halo Wireless, Inc., v. Alenco Communications Inc., (In re Halo Wireless, Inc.,)*, 684 F.3d 581, 596 (5th Cir. 2012) (quoting *Ryan v. CFTC*, 125 F.3d 1062, 1063 (7th Cir. 1997).  "Whether to permit a nonparty to submit a brief, as amicus curiae, is, with immaterial exceptions, a matter of judicial grace." *In re Halo Wireless, id.* (quoting *Nat'l Org. for Women, Inc., v. Scheidler*, 223 F.3d 615, 616 (7th Cir. 2000)).  Further, amici in federal courts are often a coalition of persons operating under a pseudonym, that is not a civil law entity. See, e.g., Exhibit C (Brief of Concerned Current and Former Judges, Public Defenders, Criminal Defense Attorneys and Judicial Staff Attorneys in Cause No. WR 50,961-10; *Rodney Reed v. State of Texas*; In the Texas Court of Criminal Appeals. In filing the amicus brief the coalitions do not create an entity subject to the jurisdiction of the

17

courts.

Further, even if the court determines that the ecclesiastical entity called "Synod" made an appearance as an amicus in the Amicus Brief in question, that appearance should not be used to morph the Synod into a civil law entity against how it views itself.   To do so would violate the Synod's fundamental constitutional rights under the First Amendment of the United States Constitution to speak to its beliefs in the public square.  *See In re Diocese of Lubbock*, 624 S.W.3d 506 (Tex. 2021).  Moreover, even if Synod chose to advance the interest of its religious beliefs in an amicus brief, that does not foreclose the ecclesiastical protection it should be granted by this court. *Id*. at 518-519 (citing *Patton v. Jones*, 212 S.W.3d 541, 555 (Tex. App.—Austin 2006, pet. denied).

The ecclesiastical abstention (or "autonomy") doctrine allows a religious institution to engage freely in ecclesiastical discussions with more than just its members.  *Id*.; *see also Bryce v. Episcopal Church in the Diocese* of Colo., 289 F.3d 648, 658 (10th Cir. 2002).  It extends to publications that relate to a religious group's right to shape its own faith and mission. Diocese of Lubbock, 624 S.W.3d at 519 (citing *Hosanna-Tabor Evangelical Lutheran Church & School v. EEOC*, 565 U.S. 171, 132 S. Ct. 694, 181 L. Ed. 2d 650 (2012)).  If any ecclesiastical entity such as Synod, in exercising its First Amendment right to advance its own faith and mission, were deemed to have joined an amicus brief, that should not revoke ecclesiastical protection and allow its ecclesiastical form to be morphed into a civil law entity for diversity jurisdiction or civil law liability purposes against its wishes. *Id.*

Thus, were Synod deemed to have joined in a motion for leave to file an amicus brief in the unrelated case in the Tenth Circuit, it would have done so not as a litigant or as a party, but instead as a friend of the court, to advise or make suggestions to the court fully within its rights

under the United States Constitution. Moreover, it is evident from the Amicus Brief that Synod's ecclesiastical interests were represented to ensure that religious organizations' First Amendment rights were protected. That is entirely consistent with LCMS Inc.'s position here—that LCMS, Inc. asserts legal interests to protect Synod's ecclesiastical interests. Even if the Synod were deemed to have asserted ecclesiastical interests pursuant to its First Amendment rights in other matters where it is not a party, it has no bearing on whether it should be a party to this case.

**Synod is not an Unincorporated Association Subject to Suit or Joinder in Suit**

Defendants further argue that Synod is an unincorporated association that has members in Texas, and therefore is a Texas citizen for diversity analysis purposes. This argument is wrong for two main reasons. First, it mischaracterizes Synod as an entirely separate entity from its corporate civil law entity, LCMS Inc. Second, it completely ignores the fact that Synod has created LCMS, Inc. for the specific purpose of suing and being sued. The cases relied upon by the Defendants are easily distinguishable on these bases.

In *Hummel v. Townsend*, 883 F.2d 367 (5th Cir. 1989) (Motion at ¶¶ 25, 40), the individual who brought the suit alleged he had authority to do so in his capacity as a bishop for a church with members in Texas. 883 F.2d at 369. However, he specifically denied that a corporation had been organized to hold church property. *Id*. at 370. Moreover, although the plaintiff alleged he was a trustee responsible for holding church properties, the court found that there was no separate trust instrument granting him powers as trustee, and he was a "trustee" only as a function of his status as an official in the church. In this respect, the court held, the plaintiff was "no different than any manager or officer whom any unincorporated organization might itself select according to its own procedures." *Id*. at 372. Contrasting the situation with that in *Navarro Savings*, the court found that the citizenship of the plaintiff was not controlling for diversity jurisdiction purposes. *Id*.

This situation is much closer to the situation in *Navarro Savings* than in *Hummel*. Here, LCMS, Inc. as a corporate entity was created in part, to hold church property and to be the legal actor of the Synod before the state. LCMS, Inc. has not unilaterally declared itself the representative of the Synod, as the plaintiff in *Hummel* did with respect to his church.  Instead, LCMS, Inc. is the legal entity that represents the interests of the Synod, much like the trustees in *Navarro Savings*, where the Supreme Court found only those trustees' citizenship was relevant to the diversity jurisdiction inquiry.

Defendants also argue that Synod should be treated as an unincorporated association for diversity jurisdiction purposes because "the Texas Supreme Court has recognized churches as unincorporated associations with capacity under Texas law." Motion at 31 (citing *Episcopal Diocese of Ft. Worth v. Episcopal Church*, 602 S.W.3d 417 (Tex. 2020). But the case the Defendants rely on is completely unrelated to citizenship.

In *Episcopal Church*, the main issue was which one of two unincorporated associations got to call itself the Episcopal Diocese of Fort Worth, and therefore controlled property held in trust by a separate corporate entity.  602 S.W.3d at 420. There was no argument regarding the power and status of that corporate entity, and no discussion of whether the warring unincorporated associations were citizens of a particular state. In short, that case has absolutely nothing to do with whether the Synod should be considered a party for purposes of ascertaining diversity jurisdiction.

Stacking their Synod-is-an-unincorporated-association argument on top of their Synod-is-a-Texas-citizen argument, Defendants come up with the extraordinary argument that Synod is an indispensable party without which this case cannot proceed. Motion to Dismiss at ¶¶44-49. This argument attempts to disguise the fact that Defendants have improperly joined Synod in an attempt to avoid diversity jurisdiction. Synod is not an indispensable party to this litigation. It is not even

a proper party.

It is important to note that the Defendants did not attempt to join Synod as a party plaintiff to the suit that LCMS, Inc. filed as the proper legal entity.  An attempt to join Synod would have been improper joinder because Synod lacks the capacity to sue or be sued. Instead, CTX filed a second lawsuit in state court, asserting claims that it easily could have asserted in this case, but also purporting to join Synod as a party. This is the very essence of fraudulent joinder—joining a party purely to defeat federal court diversity jurisdiction. *See Cobb v. Delta Exports, Inc.,* 186 F.3d 675, 678 (5th Cir. 1999) ("request to join a party against whom recovery is not really possible and whose joinder would destroy subject matter jurisdiction (i.e., a request fraudulently to join a party) would never be granted").

**A Texas State Court Lacks Personal Jurisdiction over the Synod**

Even if the Court were to determine the Synod is a civil law entity, which it is not, and that diversity does not exist, Defendants would be unable to add the Synod as a necessary party to a Texas court action since that court will lack personal jurisdiction over the Synod.  LCMS, Inc. has demonstrated that the Synod has minimal contacts in Texas and in no way is the claim being made against it in the Removed Case related to actions it has taken in Texas.  *See* Ex. 1 at ¶1-11.

An analysis of the personal jurisdiction law in Texas proves the point.  The Synod does not do business in Texas, owns no assets in Texas, does not do civil law business in Texas, does not directly own property in Texas, does not have any bank accounts in Texas, does not enter into contracts in Texas, and does not take part in civil law management of any LCMS congregation, including those located in Texas since it has no authority under its Constitution or Bylaws to do so. *Id.* at 12.  It does not participate in secular activities in Texas. *Id.*  Synod has created LCMS, Inc. and other corporations to whom Synod or its Board of Directors (and that of the LCMS, Inc.)

has assigned specific authority. *Id.* at ¶7.  The Synod's purpose is religious in nature and promoting the religious beliefs of the LCMS is part of its belief and religious mission.  *Id.* at ¶6-10.

To get around this problem, the Plaintiffs seek to redefine the nature of the Synod into an unincorporated association.  Whereas LCMS, Inc. the civil law entity the Synod specifically created to carry out its interests in the civil courts, is a Missouri nonprofit corporation authorized to do business in Texas, the Synod is a worldwide ecclesiastical expression of many Lutheran Church—Missouri Synod congregations coming together to express a common religious polity. Ex. 1 at ¶¶ 7-10.  Defendants seek to transform this religious expression of faith into a civil law entity against the express beliefs of the Synod.  For the Court to disregard the nature of how the Synod sees itself and how it organizes its governance in relationship to secular society would place the court on a slippery slope of dictating how the Synod is structured and as a result violate the free exercise and ecclesiastical abstention doctrines that is grounded in the freedom of religion clauses found in the First Amendment the United States Constitution.  See *Serbian Orthodox Diocese v. Milivojevich*, 426 U.S. 696 (1976).  The Court would in effect change the nature of how the Synod views itself and cause it to need to reorganize its entire religious polity to avoid other litigants raising the same arguments.

In Texas, the exercise of personal jurisdiction requires a multi-step process.  Further, the Plaintiff bears the initial burden of pleading sufficient allegations to invoke jurisdiction under the Texas long arm statute. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex.  2007) (citing *Am. Type Culture Collection v. Coleman,* 83 S.W.3d 801, 807 (Tex. 2002)).  Second, the burden then shifts to Defendant to negate all bases of jurisdiction in those allegations.  *BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 793 (Tex. 2002).

The inquiry does not stop there.  Texas courts may assert in personam jurisdiction over a nonresident only if 1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with federal and state constitutional due-process guarantees. *Schlobohm v. Schapiro*, 784 S.W.2d 355, 356 (Tex. 1990).

The long-arm statute's broad doing-business language allows the statute to "reach as far as the federal constitutional requirements of due process will allow." *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991).  Federal due-process requirements limit a state's power to assert personal jurisdiction over a nonresident defendant.  *Guardian Royal*, 815 S.W.2d at 226.   Due process concerns are governed by the standard articulated in *International Shoe* and expounded by its progeny: the court must ensure a defendant has "certain minimum contacts with [the forum state] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S. Ct. 339, 85 L. Ed. 278 (1940)).  Minimum contacts are sufficient for personal jurisdiction when the nonresident defendant "'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958) (quoting *Int'l Shoe Co.*, 326 U.S. at 319); *Michiana Easy Livin' Country, Inc., v. Holten*, 168 S.W.3d 777, 784, (Tex. 2005).

The Texas Supreme Court has explained that there are three parts to the "purposeful availment" inquiry.  *Michiana Easy Livin' Country, Inc., v. Holten*, 168 S.W.3d 777, 795-96, (Tex. 2005). First, only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person. *Id*. at 785. Second, the contacts relied upon must be purposeful

rather than random, fortuitous, or attenuated. *Id*.; *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 n.18, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980). Thus, "[s]ellers who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to the jurisdiction of the latter in suits based on their activities." *Michiana*, 168 S.W.3d at 785 (quoting *Burger King*, 471 U.S. at 473). Finally, the "defendant must seek some benefit, advantage or profit by 'availing' itself of the jurisdiction." *Michiana*, 168 S.W.3d at 785. In contrast, a defendant may purposefully avoid a particular forum by structuring its transactions in such a way as to neither profit from the forum's laws nor subject itself to jurisdiction there. *Burger King*, 471 U.S. at 472.

A nonresident defendant's forum-state contacts may give rise to two types of personal jurisdiction. *BMC Software*, 83 S.W.3d at 795-96. If the defendant has made continuous and systematic contacts with the forum, general jurisdiction is established whether or not the defendant's alleged liability arises from those contacts. *Id*. at 796; *CSR Ltd.*, 925 S.W.2d at 595. In contrast, when specific jurisdiction is alleged, courts focus the minimum-contacts analysis on the "relationship among the defendant, the forum[,] and the litigation." *Guardian Royal*, 815 S.W.2d at 228 (citing *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984); *Schlobohm*, 784 S.W.2d at 357). Specific jurisdiction is established if the defendant's alleged liability "aris[es] out of or [is] related to" an activity conducted within the forum. *Helicopteros*, 466 U.S. at 414 n.8; *see also CSR Ltd.*, 925 S.W.2d at 595. The United States Supreme Court has provided relatively little guidance on the "arise from or relate to" requirement, nor have we had occasion to examine the strength of the nexus required to establish specific jurisdiction. *Moki Mac River Expeditions*, 221 S.W.3d at 576.

24

In this case, other than CTX's argument that Synod is an unincorporated association and that Synod member congregations are located in Texas, CTX fails to establish how the Texas long arm statute reaches to the Synod, which is located in Missouri and has no contacts with Texas.[7] *See* Exhibit 1 at ¶ 7-10.  The Synod, however, has established with compelling evidence that it owns no assets, is not a civil law entity such as an unincorporated association, and has minimal contact with the State of Texas.  *Id*.  Further, while there are Synod member congregations in Texas, their membership in the Synod does not give Synod equity in their property (Const. Art. VII).  Thus, if CTX's unincorporated association argument fails it has also failed in establishing that the Synod is subject to personal jurisdiction in Texas state courts.

**Asserting Jurisdiction over the Synod Would Violate the First Amendment**

Neither this Court nor a state court has jurisdiction over the Synod.   The Synod is purely an ecclesiastical body.  *See* Ex. 1 at ¶¶ 5-11.   It has taken the specific action of incorporating a series of civil law entities to represent its interests in secular society. *Id*.  More specifically, it has incorporated LCMS, Inc. to advance its interests in civil law matters. *Id*.  LCMS, Inc. has a history of advancing the Synod's interests in civil courts. *Id*.  Further, the Synod has never sued or been sued as a civil law entity.  *Id*.  (Common sense dictates that an ecclesiastical entity that does not conduct business does not morph into a civil law entity simply because an alleged aggrieved defendant says so.)  Rather, the Court should look solely to the Synod in determining how it views itself and in determining if it is a civil law entity.   To look elsewhere would violate the Synod's First Amendment rights to conduct its religious exercise of faith as it sees fit without interference from civil courts second-guessing its governance structure.  *See Milivojevich,* 426 U.S. at 708-725.

---

[7] CTX merely cites to the ecclesiastical Constitution and Bylaws of the Synod to claim ecclesiastical understandings of property rights and membership in a church is also binding on the Synod in a civil law capacity against its own understanding of its governance.

The actions taken by CTX that precipitated this lawsuit have been reviewed and condemned by the Synod's Commission on Constitutional Matters—the body established by the Synod to interpret the Synod Constitution, Bylaws and resolutions and ensure that the governing instruments of the Synod and its agencies are in accord with the Synod Constitution and Bylaws. *See* First Amended Complaint at 2-3 (Doc. 11). If the Court exercises jurisdiction over the Synod, it would run afoul of the Supreme Court's mandate that courts steer clear of ecclesiastical matters:

> First Amendment values are plainly jeopardized when church property litigation is made to turn on the resolution by civil courts of controversies over religious doctrine and practice. If civil courts undertake to resolve such controversies in order to adjudicate the property dispute, the hazards are ever present of inhibiting the free development of religious doctrine and of implicating secular interests in matters of purely ecclesiastical concern…. [T]he [First] Amendment therefore commands civil courts to decide church property disputes without resolving underlying controversies over religious doctrine. *This principle applies with equal force to church disputes over church polity and church administration*.

*Milivojevich,* 426 U.S. at 709-710 (citations omitted) (emphasis added).

## Conclusion

WHEREFORE PREMISES CONSIDERED, LCMS, Inc. requests that the Court deny the Motion to Dismiss filed in this case, and deny the Motion to Remand filed in Removed Case. LCMS, Inc. further requests such other relief, both legal and equitable, to which it may be justly entitled.

Respectfully submitted,

By:     */s/ Steven Levatino*
      Steven C. Levatino
      State Bar No. 12245250
      **Levatino|Pace PLLC**
      1101 S. Capital of Texas Hwy.
      Bldg. K, Suite 125
      Austin, Texas 78746
      T: 512-637-1581
      F: 512-637-1583
      steven@lpfirm.com

By:     */s/ Andrew MacRae*
      Andrew F. MacRae
      State Bar No. 00784510
      MacRae Law Firm PLLC
      3267 Bee Cave Road
      Suite 107, PMB 276
      Austin, Texas 78746
      T: 512-565-7798
      andrew@macraelaw.co

By:     */s/ Gregg Kronenberger*
      Gregg R. Kronenberger
      State Bar No. 24039998
      Kronenberger Law Firm, PLLC
      1101 S. Capital of Texas Hwy.
      Bldg. K, Suite 125
      Austin, Texas 78746
      T: 512-777-4141
      F: 512-402-3313
      M: 512-923-3158
      gregg@gkronenberger.com

      ***Attorneys for Plaintiff***

## **CERTIFICATE OF SERVICE**

  I hereby certify that a true and correct copy of the foregoing Response has been filed through the CM/ECF system on May 10, 2024. I understand the CM/ECF system will send a Notice of Electronic Filing to the following counsel of record:

  Daniel R. Richards
  Clark Richards
  Albert A. Carrion, Jr.
  Richards Rodriguez & Skeith, LLP
  611 West 15th Street
  Austin, Texas 78701
  ***Attorneys for Defendants***

             */s/ Steven C. Levatino*
            STEVEN C. LEVATINO