# DECLARATION OF REV. DR. JOHN W. SIAS

STATE OF MISSOURI          §

COUNTY OF ST. LOUIS     §

1. My name is Rev. Dr. John W. Sias.  I am over the age of eighteen (18) years and fully competent in all respects to make this Declaration.  I have personal knowledge of the facts stated herein and they are true and correct.

2. I graduated from the University of Illinois – Urbana-Champaign with a Bachelor of Science degree in computer engineering in 1997.  I subsequently earned both a master's degree in 1999 and a doctorate in 2005 in electrical engineering. After completing my Ph.D, I earned a Master of Divinity in 2009 from Concordia Theological Seminary in Fort Wayne, Indiana, and was declared qualified for the pastoral ministry by the faculty of the same. Thereafter, I served as a pastor of Mount Calvary Lutheran Church in Colstrip, Montana, and eventually also Concordia Lutheran Church, Forsyth, Montana, and Trinity Lutheran Church, Hysham, Montana, until August 2016.  I am an ordained, called church worker and corporate officer of The Lutheran Church—Missouri Synod, a Missouri nonprofit corporation ("LCMS, Inc.") and have been so since taking office as its elected Secretary on September 1, 2016.

3. I have reviewed Concordia University Texas's ("CTX") Original Petition ("Petition") in Cause No. D-1-GN-24-000358; *Concordia University Texas v. The Lutheran Church—Missouri Synod, an unincorporated association of Lutheran congregations, and The Lutheran Church—Missouri Synod, a Missouri Corporation*; in the 353rd Judicial District Court, Travis County, Texas (the State Court Lawsuit").

3. I have also reviewed Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to Join Indispensable Parties (Doc. 13) in this case, and CTX's Motion to Remand filed in Case No. 1:24-cv-00176-RP (Doc. 5) seeking to remand the State Court Lawsuit.

4. In the Petition, the Motion to Dismiss and the Motion to Remand, CTX asserts claims against LCMS, Inc., and a previously unknown and in fact CTX-created fictitious entity called "The Lutheran Church – Missouri Synod, an unincorporated association of Lutheran congregations," which appears to be CTX's attempt at recasting and transforming the ecclesiastical denomination named The Lutheran Church—Missouri Synod (the "Synod") into a separate civil law entity, alongside the actual civil law entity the Synod has definitively established for itself in LCMS, Inc., the eponymous Missouri nonprofit corporation.  However, the Synod does not exist as a separate civil entity from LCMS, Inc., and in fact, according to the express ecclesiastical law of the Synod, the Synod is not a civil law entity.

5. There is a single civil law entity called The Lutheran Church—Missouri Synod (previously defined herein as "LCMS, Inc."), which was incorporated in the State of Missouri more than 125 years ago as a civil law reflection of its ecclesiastical denomination known as

Synod. Contrary to CTX's allegations, the Synod is not and has not been, at any relevant time, an unincorporated association of Lutheran congregations under civil law.

6. The Synod is the church body or religious denomination in which self-governed Lutheran congregations, principally in the United States, voluntarily profess and seek to maintain and live out a common faith in accordance with the church body's Constitution and Bylaws of the Synod, which define their shared religious beliefs and ecclesiastical polity. Delegates of the Synod's member congregations have since 1847 met regularly in convention, along with representatives of individual members (ministers) and subordinate governing bodies formed by the Synod in accordance with the Constitution and Bylaws, to exercise the mind of the church on matters of its doctrine and religious practice and to exercise governance of the church body.

7. The Synod, while acting in convention, has specifically declared that Synod refers to member congregations and its agencies and that Synod "is not a civil law entity." (Bylaw 1.2.1 (v).) The Synod, instead of operating as a civil law entity, has created LCMS, Inc., the Missouri nonprofit corporation, to carry out its secular functions, including the ability to sue and be sued. The corporation LCMS, Inc., originally formed in 1894 as the "German Evangelical Synod of Missouri, Ohio, and other States," has had its governing documents amended by its member congregations from time to time, including to establish its present name, which is identical to that of the Synod. The Missouri nonprofit corporation LCMS, Inc., holds as its Constitution and Bylaws the selfsame Constitution and Bylaws of the Synod, the church body or ecclesial denomination. The members of the nonprofit corporation are the selfsame member congregations and individual ministers of the Synod. The officers and board of directors of the Synod are those of the nonprofit corporation, exercising functions, with regard to the one, ecclesial, and with regard to the other, legal. The Synod convention is the "ultimate authority of the corporation" just as it is the "legislative authority" of the ecclesial denomination. Any attempt to declare the member congregations of the Synod to constitute a purported unincorporated association would run roughshod over their long-standing, definitive, and exclusive exercise of their right to incorporate and represent themselves before the state, as to their common activities, as LCMS, Inc.

8. Synod is not a civil law entity. It does not, therefore, have a registered agent anywhere, including Texas. The Synod does not directly own any property. All property of the Synod is owned by LCMS, Inc., or by other corporations to whom Synod or its Board of Directors (and that of LCMS, Inc.) has delegated specific authority to hold title to such property. The Synod does not consist of, in itself and apart from its corporation LCMS, Inc., a legal form of association, which it explicitly disclaims—"The Synod…is not a civil law entity" (*see* Bylaw 1.2.1 (v)). The Synod does not do business in Texas, directly owns no assets in Texas (or elsewhere), does not enter into contracts, does not have any bank accounts and has at no relevant time done business in a civil sense. The Synod incorporated LCMS, Inc., in 1894 in part to handle its civil law affairs and to exercise civil law functions as is contemplated under its Constitution or Bylaws. Any business dealings of the Synod are done through LCMS, Inc., or by other corporations to whom the Synod or its Board of Directors (and that of LCMS, Inc.) has assigned specific authority. With the exception of the State Court Lawsuit, the Synod has never, to my knowledge, information, and belief, sued or been sued in a civil court. Whereas, on the other hand, the LCMS, Inc., has been a party to litigation on behalf of the Synod. Where the Synod as an ecclesial body has interests at law, LCMS, Inc., is *the* entity that represents it before the law.

9. CTX argues that Synod's Board of Directors, not LCMS, Inc., is the legal representative of the Synod, selectively reciting and interpreting Synod's and LCMS's Const. Art. XI E 2, "The Board of Directors is the legal representative…of The Lutheran Church—Missouri Synod." CTX states that therefore "Synod's Board of Directors, not LCMS, Inc., is the legal representative of the Synod." This is a false dichotomy, as: (1) the Constitution and Board of Directors of the Synod are also the Constitution and Board of Directors of LCMS, Inc., (Art. of Inc. VII), and the one Board of Directors "shall have the powers and duties that have been accorded to it by the Articles of Incorporation, Constitution, Bylaws, and resolutions of the Synod, and the laws of the State of Missouri" (Bylaw 3.3.4.2); (2) Synod is not a civil law entity but has formed LCMS, Inc., to be its civil law entity (Art. of Inc.); and (3) Const. Art. XI E 2 continues that "For the purposes of this article, the Lutheran Church—Missouri Synod includes both the Synod formed by this Constitution and the Missouri corporation formed by the Synod." Thus, Const. Art. XI E 2 is read correctly to state that the one Board of Directors, which is of both the Synod and LCMS, Inc., is legal representative of the Synod precisely by directing the legal actions of LCMS, Inc., the Synod's civil law entity. There is thus no inconsistency between the statements that the LCMS, Inc., has the authority to prosecute suits on behalf of the Synod and that the Board of Directors (of both Synod and LCMS, Inc.) does so, doing so as it necessarily does by directing such actions of the Synod's civil law entity, LCMS, Inc.

10. The Synod speaks on matters of public importance to the church body in society pursuant to its First Amendment rights under the United States Constitution. At times, it joins with the other interested parties in filing amicus briefs on such important matters to assert the Synod's interests and rights as those recognized and to be protected by the First Amendment to the Constitution of the United States. To the extent that Synod must engage in the civil realm to assert those rights, it does so through LCMS, Inc., its eponymous civil law entity, one of the stated purposes of which is to "acknowledge and assert the protections granted by the First Amendment to the Constitution of the United States" (Art. of Inc. II c). Consistent with the LCMS, Inc.'s historical practice in participating as *amicus curiae* on behalf of Synod, and as is the case with the numerous other *amicus curiae* under which the Synod's rights have been asserted, with respect to the amicus brief cited by CTX in its Motion to Dismiss, LCMS, Inc., asserted those rights on behalf of Synod, utilizing legal counsel engaged by LCMS, Inc.

11. The member congregations of the Synod and of LCMS, Inc., have an ecclesial and civil legal existence apart from the ecclesial and legal existence of LCMS, Inc., and Synod. They have associated ecclesiastically as the Synod and formed LCMS, Inc., to be the Synod's civil law entity for the furtherance, before the law, of their common objectives, before the law in the civil realm.

12. The Synod does not take part in any civil law management decisions of, or own, by virtue of their membership, the property of, any of its member congregations, including those in Texas, since it has no authority under its Constitution or Bylaws to do so: "with respect to the individual congregation's right of self-government [Synod] is but an advisory body" and "membership of a congregation in the Synod gives the Synod no equity in the property of the congregation" (Const. Art. VII).

13. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 10, 2024.

_____
Rev. Dr. John W. Sias

4