IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MULTNOMAH

HOTCHALK, INC.,

Plaintiff,

v.

LUTHERAN CHURCH-MISSOURI
SYNOD; LUTHERAN CHURCH
EXTENSION FUND; CONCORDIA
UNIVERSITY SYSTEM; CONCORDIA
UNIVERSITY, ST. PAUL;
CONCORDIA UNIVERSITY (aka
CONCORDIA UNIVERSITY-
PORTLAND); CONCORDIA
FOUNDATION; CHARLES E. GERKEN;
KATHLEEN HONE; TERRY WILSON;
JERRY BALTZELL; DAVID O. BERGER;
MICHAEL BORG; DR. CHARLES E.
BRONDOS; GERALD KOLL;
REV. PAUL LINNEMANN;
JEFF OLTMANN; REV. KURT ONKEN;
REV. TIMOTHY PAULS;
BEV PELOQUIN; DR. ROD WEGENER;
REV. SAM WISEMAN; BRIAN T.
YAMABE; REV. THOMAS JOHN ZELT;
THOMAS RIES; CHRIS DUNNAVILLE:
GEORGE THURSTON; and
RICHARD DOUGHTY,

Defendants.

No.: 20CV15620

DEFENDANT THE LUTHERAN
CHURCH-MISSOURI SYNOD'S
MOTION FOR PROTECTIVE ORDER

ORAL ARGUMENT REQUESTED

(Hon. Eric L. Dahlin)

# TABLE OF CONTENTS

**Page**

I. UTCR 5.010 COMPLIANCE ........................................................... 1

II. REQUEST FOR ORAL ARGUMENT ............................................ 1

III. INTRODUCTION ......................................................................... 1

IV. MOTION ...................................................................................... 2

V. FACTUAL BACKGROUND ........................................................ 2

    A. Plaintiff's amended complaint alleges claims that implicate LCMS's actions made pursuant to the church's religious doctrine. ..................................... 2

    B. LCMS has challenged Plaintiff's allegations that touch on religious freedom. ........................................................................... 3

    C. Plaintiff's discovery requests seek information within the sphere of matters protected from disclosure in civil litigation. .............................................. 4

VI. POINTS AND AUTHORITIES ..................................................... 6

    A. ORCP 36 C authorizes a protective order for "good cause shown." ...................... 6

    B. Where a party makes a prima facie case that discovery requests infringe on First Amendment rights, the party seeking discovery must demonstrate its interest in obtaining the information justifies the infringement on First Amendment rights. ................................................................. 7

    C. Requiring production of the LCMS's private religious communications would violate the First Amendment. ...................................... 8

        1. Requiring production of the LCMS's private religious communications would intrude on internal church affairs in violation of the Religion Clauses. .............................. 8

        2. Requiring production of LCMS's private religious communications would entangle church and state in violation of the Establishment Clause. ............................................................ 13

        3. Requiring production of LCMS's private religious communications would violate LCMS's rights of assembly and association. ........................ 15

    D. Plaintiff cannot show its interests in discovery outweigh LCMS's First Amendment rights. ............................................................ 18

    E. Oregon's Rules of Civil Procedure authorizing discovery in civil litigation are not laws of general applicability because they are subject to exemptions. ............................................................ 20

VII. CONCLUSION ............................................................................ 22

**Bullivant|Houser|Bailey PC**

One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351
Facsimile: 503.295.0915

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*AFL-CIO. v. FEC,*
    333 F3d 168 (DC Cir 2003) ................................................................15, 16

*Baldwin v. C.I.R.,*
    648 F2d 483 (8th Cir 1981) ......................................................................13

*Brock v. Local 375 Plumbers Int'l Union of Am.,*
    860 F2d 346 (9th Cir 1988) ........................................................................7

*Bryce v. Episcopal Church in the Diocese of Colo.,*
    289 F3d 648 (10th Cir 2002) ..............................................................11, 14

*Cannata v. Catholic Diocese of Austin,*
    700 F3d 169 (5th Cir 2012) ....................................................................8, 9

*Church of Lukumi Babalu Aye, Inc. v. Hialeah,*
    508 US 520 (1993) ....................................................................................21

*Citizens Against Rent Control/Coal. for Fair Housing v. City of Berkeley,*
    454 US 290 (1981) ....................................................................................15

*Colo. Christian Univ. v. Weaver,*
    534 F3d 1245 (10th Cir 2008) ..................................................................12

*Combs v. Cent. Tex. Annual Conf. of United Methodist Church,*
    173 F3d 343 (5th Cir 1999) ................................................................11, 12

*Ealy v. Littlejohn,*
    569 F2d 219 (5th Cir 1978) ......................................................................18

*EEOC v. Catholic Univ. of Am.,*
    83 F3d 455 (DC Cir 1996) ........................................................................14

*Employment Division, Department of Human Resources of Oregon v. Smith,*
    494 U.S. 872, 110 S Ct 1595, 108 L Ed 2d 876 (1990) ......................20, 21

*Ferguson v. C.I.R.,*
    921 F2d 588 (5th Cir 1991), *cert den*, 510 US 918 (1993) ......................19

*Fulton v. City of Philadelphia, Pennsylvania,*
    141 S Ct 1868 (2021) ..........................................................................20, 21

**Bullivant|Houser|Bailey PC**

One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351
Facsimile: 503.295.0915

**Page(s)**

*Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC,*
   565 US 171 (2012) ................................................................................................ 9, 11, 14

*In re Motor Fuel Temperature Sales Practices Litig.,*
   641 F3d 470 (10th Cir 2011) ............................................................................... 15, 16, 19

*Lemon v. Kurtzman,*
   403 US 602 (1971) ........................................................................................................ 14

*Martin v. DHL Exp. (U.S.A.), Inc.,*
   235 Or App 503, 234 P3d 997 (2010) ............................................................................. 7

*McClure v. Salvation Army,*
   460 F2d 553 (5th Cir 1972) ........................................................................................ 9, 11

*Mitchell v. Helms,*
   530 US 793 (2000) ........................................................................................................ 14

*NAACP v. State of Ala. ex rel. Patterson,*
   357 US 449 (1958) .................................................................................................... 15, 16

*New York v. Cathedral Acad.,*
   434 US 125 (1977) ........................................................................................................ 14

*N.L.R.B. v. Catholic Bishop of Chicago,*
   440 US 490 (1979) ........................................................................................................ 14

*Our Lady of Guadalupe School v. Morrissey-Berru,*
   140 S Ct 2049 (2020) ............................................................................................... 10, 11

*Penn v. N.Y. Methodist Hosp.,*
   884 F3d 416 (2d Cir 2018) ............................................................................................ 14

*Perry v. Schwarzenegger,*
   591 F3d 1147 (9th Cir 2010) ............................................................ 7, 8, 15, 16, 17, 18, 19

*Rayburn v. Gen. Conf. of Seventh-Day Adventists,*
   772 F2d 1164 (4th Cir 1985) ..................................................................................... 12, 14

*Schleicher v. Salvation Army,*
   518 F3d 472 (7th Cir 2008) ........................................................................................... 14

*Surinach v. Pesquera De Busquets,*
   604 F2d 73 (1st Cir 1979) ............................................................................................. 13

**Bullivant|Houser|Bailey PC**

One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351
Facsimile: 503.295.0915

**Page(s)**

*Tagore v. United States*,
    735 F3d 324 (5th Cir 2013)............................................................................................13

*United States v. Trader's State Bank*,
    695 F2d 1132 (9th Cir 1983)..........................................................................................7

*Univ. of Great Falls v. NLRB*,
    278 F3d 1335 (DC Cir 2002) .........................................................................................13

*Whole Woman's Health v. Smith*,
    896 F3d 362 (5th Cir 2018), *cert den*, 139 S Ct 1170 (2019)..........................................1

**RULES**

ORCP 21 ..........................................................................................................................3

ORCP 36 B(1)...................................................................................................................8

ORCP 36 C .......................................................................................................................6

ORCP 36 C(1)...............................................................................................................7, 21

UTCR 5.010 .....................................................................................................................1

UTCR 5.050 .....................................................................................................................1

**CONSTITUTIONS**

Oregon Constitution Article I, section 2 .......................................................................1, 2

Oregon Constitution Article I, section 3 .......................................................................1, 2

United States Constitution First Amendment ........................................................... passim

**Bullivant|Houser|Bailey PC**

One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351
Facsimile: 503.295.0915

# I. UTCR 5.010 COMPLIANCE

Counsel for Defendant The Lutheran Church–Missouri Synod ("LCMS") has conferred in good faith with counsel for Plaintiff HotChalk, Inc. regarding the issues addressed in this motion. Counsel were unable to resolve their dispute.

## II. REQUEST FOR ORAL ARGUMENT

Pursuant to UTCR 5.050, LCMS requests oral argument. LCMS estimates that oral argument will require approximately 60 minutes. Official court reporting services are requested.

## III. INTRODUCTION

The First Amendment of the United States Constitution[1] guarantees broad protections to religious groups. Those guaranteed protections include the freedom to exercise religious beliefs; the freedom to associate with likeminded persons; the freedom to be free from government interference in church governance; and the freedom to be autonomous from the state. US Const, Amend I. Similar protections are guaranteed in Article I, sections 2[2] and 3[3] of the Oregon Constitution.

These constitutional protections apply to, and limit, all branches of government, including court-ordered discovery in civil litigation. *Whole Woman's Health v. Smith*, 896 F3d 362 (5th Cir 2018), *cert den*, 139 S Ct 1170 (2019) (surveying the manifold limits the

---

[1] "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

[2] Article I, section 2 of the Oregon Constitution provides that "All men shall be secure in the Natural right, to worship Almighty God according to the dictates of their own consciences."

[3] Article I, section 3 of the Oregon Constitution provides "No law shall in any case whatever control the free exercise, and enjoyment of religious [sic] opinions, or interfere with the rights of conscience."

**Bullivant|Houser|Bailey PC**

One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351
Facsimile: 503.295.0915

First Amendment imposes on discovery from religious institutions in civil litigation).

Relying on these constitutional guarantees, LCMS moves for a protective order prohibiting Plaintiff from using discovery to infringe on LCMS's rights, privileges, and protections under the First Amendment of the United States Constitution and under Article I, sections 2 and 3 of the Oregon Constitution.  In particular, LCMS seeks a protective order precluding Plaintiff from discovering (1) internal church communications related to religious doctrine; (2) internal church communications regarding church governance; and (3) internal church communications regarding employment decisions, including who, if anyone, should be approved as the president of Concordia University–Portland.

## IV.  MOTION

LCMS moves for a protective order limiting the scope of permissible discovery by prohibiting any inquiry into internal church communications regarding religious doctrine, internal church communications regarding church governance, and internal church communications regarding the approval of a president of Concordia University–Portland.

## V.  FACTUAL BACKGROUND

**A.**    **Plaintiff's amended complaint alleges claims that implicate LCMS's actions made pursuant to the church's religious doctrine.**

Although Plaintiff asserts several claims against LCMS, the foundation for all claims is the same: Plaintiff alleges LCMS controlled—and was, therefore, the alter ego of—religiously affiliated entities Defendants Concordia University–Portland ("CUP"), Concordia University System ("CUS"), Lutheran Church Extension Fund ("LCEF"), and Concordia Foundation.  (Amended Complaint ("Am. Com.") ¶ 166.)  Plaintiff alleges LCMS tied the continued funding of CUP to "unmeetable financial conditions and unmeetable conditions concerning adherence to the Synod's [i.e., LCMS's] church doctrine."  (Am. Com. ¶¶ 102, 107, 108, and 110.)  Plaintiff alleges LCMS is liable because it "prevented the appointment of a permanent president" of CUP.  (Am. Com. ¶ 132.)  Plaintiff alleges LCMS "interfered

**Bullivant|Houser|Bailey PC**

One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351
Facsimile: 503.295.0915

1   with the contract between HotChalk and Concordia by directing the Synod Fund [i.e., the

2   LCEF] not to advance further funds to Concordia until Concordia closed its 'Gender and

3   Sexuality Resource Center.'"  And Plaintiff alleges LCMS "forced Concordia to close by

4   starving Concordia of operating funds as a consequence of Concordia's failure to close its

5   Gender and Sexuality Resource Center."  (Am. Com. ¶ 174.)  LCMS denies all of these

6   allegations and the legal conclusions Plaintiff draws from these false allegations.

7        Plaintiff's complaint is directed at conduct that involves a church's polity and internal

8   governance of and by its members and its related entities.  In fact, Plaintiff's complaint

9   devotes an entire section to allegations related to the governance of the LCMS religion.  *See*

10   Plaintiff's amended complaint paragraphs 62 through 70 in the section titled THE SYNOD

11   AND CONCORDIA SYSTEM INTERFERE IN CONCORDIA'S GOVERNANCE.  These

12   allegations invade areas protected by the First Amendment and the Oregon Constitution.  For

13   example, Plaintiff alleges "both the Synod and Concordia System objected to, and took

14   actions against, Concordia for what the Synod and Concordia System considered to be

15   Concordia's 'gay advocacy' and 'non-compliance' with Synod doctrine and practices."

16   Plaintiff alleges "President Harrison's [the Synod's highest officer and ecclesiastical

17   supervisor] letter further stated that no advocacy for 'immoral behavior against Scripture and

18   [Synod] teaching' should be permitted."  The ultimate contention in this section of Plaintiff's

19   complaint is that the LCMS church "would not approve any permanent president for

20   Concordia until Concordia complied with the Synod's directives regarding LGBTQ issues."

21   Thus, Plaintiff's claims against LCMS are that LCMS acted on its religious principles,

22   beliefs, and doctrine.

23   **B.    LCMS has challenged Plaintiff's allegations that touch on religious**

24           **freedom.**

25        In its initial ORCP Rule 21 motion to dismiss, LCMS raised these constitutional

26   concerns.  (*See* LCMS's Motion to Dismiss: pg. 23, ln. 14 – pg. 26, ln. 14.)  LCMS also

**Bullivant|Houser|Bailey PC**

One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351
Facsimile: 503.295.0915

1  moved to strike certain allegations on the grounds that they alleged conduct protected by the

2  First Amendment and were, therefore, improper. (*See* LCMS Motion to Dismiss: pg. 37, ln. 7

3  - pg. 38, ln. 16.)  This court denied that motion, finding that LCMS's challenges to these

4  contentions were more properly addressed in a motion in limine as opposed to a motion to

5  strike.  (Order on the Lutheran Church Missouri Synod's ORCP 21 Motions (signed January

6  29, 2021).)

7  **C.    Plaintiff's discovery requests seek information within the sphere of**
         **matters protected from disclosure in civil litigation.**

8          Plaintiff served LCMS with requests for production of documents.  (Declaration of

9  Thomas L. Hutchinson in Support of Motion for Protective Order ("Hutchinson Dec."),

10  Ex. 1.)  Plaintiff's requests seek information that LCMS seeks to limit, restrict, and/or

11  prohibit by virtue of this motion, including the following:

12
13          **REQUEST FOR PRODUCTION NO. 2:**  All LCMS board
            meeting minutes, meeting agendas, and resolutions from
14          January 1, 2016 through the present, including, but not limited
            to, any written reports, board packets, financial reports, or other
15          documents distributed to members of the LCMS directors in
            connection with such meetings.
16
17          **REQUEST FOR PRODUCTION NO. 4:**  All documents and
            communications, including, but not limited to, electronic
18          communications and text messages, concerning the LCEF,
            including, but not limited, to any loans or advances LCEF has
19          made to Concordia.

20          **REQUEST FOR PRODUCTION NO. 5:**  All documents and
            communications, including, but not limited to, electronic
21          communications and text messages, with Defendant Tom Ries
            concerning Concordia or HotChalk.
22
23          **REQUEST FOR PRODUCTION NO. 7:**  All documents and
            communications, including, but not limited to, electronic
24          communications and text messages, regarding HotChalk,
            Concordia's finances, Concordia's governance, the temporary or
25          permanent appointment of any officer for Concordia, the LCEF,
            Concordia's curriculum, any student organization at Concordia,
26          or Concordia's planned closure for the period January 1, 2016 to

**Bullivant|Houser|Bailey PC**

One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351
Facsimile: 503.295.0915

the present.

**REQUEST FOR PRODUCTION NO. 8:**  All documents reflecting communications, including, but not limited to, electronic communications and text messages, between you and Defendant LCEF from January 1, 2014 to the present.

**REQUEST FOR PRODUCTION NO. 10:**  All documents reflecting communications, including, but not limited to, electronic communications and text messages, between you and Defendant CUS from January 1, 2016 to the present.

**REQUEST FOR PRODUCTION NO. 14:**  All electronic communications, including texts, chats, or communications via any social media, between or among Defendants Concordia, LCMS, LCEF, CUS, Doughty, Ries, and/or Concordia – St. Paul from January 1, 2016 to the present.

**REQUEST FOR PRODUCTION NO. 16:**  All documents and communications, including, but not limited to, electronic communications and text messages, concerning Concordia's employment of Defendant Tom Ries.

**REQUEST FOR PRODUCTION NO. 27:**  All documents and communications concerning the Concordia Board of Regents, including, but not limited to, the entire board file for any member of the Concordia Board of Regents nominated to the board by you.

**REQUEST FOR PRODUCTION NO. 28:**  All documents and communications concerning any meeting of the Concordia Board of Regents from January 1, 2016 through the present.

LCMS provided a supplemental response to Plaintiff's First Request for Production of Documents that contained the following objections:

L.      LCMS objects to the Requests to the extent that they are vague, ambiguous, overly broad, unduly burdensome, and/or call for the disclosure of information that is either unreasonably cumulative or duplicative.

M.      LCMS objects to the Requests to the extent they call for or purport to call for the production of any document protected from discovery because of an attorney-client privilege, attorney work-product immunity, or any other applicable privilege or

Bullivant|Houser|Bailey PC

One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351
Facsimile: 503.295.0915

immunity.  If any document that is subject to any privilege or immunity from discovery is inadvertently produced, such inadvertent production is not to be construed as a waiver of such privilege or immunity, and such document and all copies thereof are to be returned to counsel for Defendant.

O.      LCMS objects to any request for production that seeks disclosure of its confidential, proprietary, trade secret and/or sensitive financial data for the purpose of using such information to annoy, harass, or improperly compete with LCMS.

Q.      Each of the foregoing objections is incorporated by reference into the following specific objections and responses.

(Hutchinson Dec., Ex. 2.)

## VI.  POINTS AND AUTHORITIES

### A.      ORCP 36 C authorizes a protective order for "good cause shown."

Motions for protective orders are governed by ORCP 36 C, which provides as follows:

### C.  Court order limiting extent of disclosure.

C(1) Relief available; grounds for limitation. On motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending may make any order that justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: that the discovery not be had; that the discovery may be had only on specified terms and conditions, including a designation of the time or place; that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery; that certain matters not be inquired into, or that the scope of the discovery be limited to certain matters; that discovery be conducted with no one present except persons designated by the court; that a deposition after being sealed be opened only by order of the court; that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way; that the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court; or that to prevent hardship the party

**Bullivant|Houser|Bailey PC**

One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351
Facsimile: 503.295.0915

Case 1:23-cv-01042-DAE    Document 39-8    Filed 09/16/24    Page 12 of 30
Exhibit 8 to CTX Motion for Protective Order
Page 12 of 30

1
2    requesting discovery pay to the other party reasonable expenses
      incurred in attending the deposition or otherwise responding to
      the request for discovery.

3    ORCP 36 C(1) allows the court to "deny discovery altogether." *Martin v. DHL Exp.*
4    *(U.S.A.), Inc.*, 235 Or App 503, 509-10, 234 P3d 997 (2010) (affirming the trial court's
5    protective order preventing the plaintiff from taking a deposition).

6    This court should issue a protective order that limits, restricts, or prohibits Plaintiff
7    (or any other party) from conducting discovery into LCMS's internal communications
8    regarding church doctrine, church governance, and the approval of church employees and
9    ministers, such as the president of Concordia University–Portland, because this information
10   is privileged, protected, and immune from discovery under the limits placed on this court by
11   the First Amendment of the United States Constitution and Article I of the Oregon
12   Constitution.

13   **B.    Where a party makes a prima facie case that discovery requests**
14        **infringe on First Amendment rights, the party seeking discovery must**
           **demonstrate its interest in obtaining the information justifies the**
15        **infringement on First Amendment rights.**

16   This motion for a protective order asserts LCMS's First Amendment privilege against
17   discovery that would infringe on LCMS's religious protections under the United States and
18   Oregon constitutions. *Perry v. Schwarzenegger*, 591 F3d 1147, 1160 (9th Cir 2010) ("A
19   party who objects to a discovery request as an infringement of the party's First Amendment
20   rights is in essence asserting a First Amendment *privilege*.")  (Emphasis in original.)  A
21   claim of First Amendment privilege is subject to a two-part framework. *Id.*

22   The party asserting the privilege must make a prima facie showing of arguable First
23   Amendment infringement. *Id.* (citing *Brock v. Local 375 Plumbers Int'l Union of Am.*, 860
24   F2d 346, 349-50 (9th Cir 1988)); *United States v. Trader's State Bank*, 695 F2d 1132, 1133
25   (9th Cir 1983) (an assertion of First Amendment protection from discovery requires making
26   a prima facie showing of "arguable first amendment infringement").

**Bullivant|Houser|Bailey PC**
One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351
Facsimile: 503.295.0915

1    If the party opposing discovery makes the prima facie showing, the burden shifts to

2 the party seeking discovery to demonstrate an interest in obtaining the information that is

3 sufficient to justify the infringement. *Perry*, 591 F3d at 1161. At this stage, the court weighs

4 the interest in disclosure against the harm caused by requiring disclosure. *Id.* The court

5 considers (1) the importance of the litigation; (2) the centrality of the information sought to

6 the issues in the case; (3) the existence of less intrusive means of obtaining the information;

7 and (4) the substantiality of the First Amendment interests at stake. *Id.*

8    "Importantly, the party seeking discovery must show that the information sought is

9 highly relevant to the claims or defenses in the litigation—a more demanding standard of

10 relevance than that under [ORCP 36 B(1)]. The request must also be carefully tailored to

11 avoid unnecessary interference with protected activities, and the information must be

12 otherwise unavailable." *Id.*

13  **C.    Requiring production of the LCMS's private religious communications
        would violate the First Amendment.**

14

15    Requiring LCMS to produce private religious communications would violate LCMS's

16 constitutional protections by (1) intruding into internal church affairs and infringing on

17 LCMS's right to freely exercise its religious beliefs (including church governance and

18 selection of ministers and other employees); (2) impermissibly entangling church and state;

19 and (3) infringing on LCMS's freedoms of assembly and association.

20  **1.    Requiring production of the LCMS's private religious
        communications would intrude on internal church affairs in
        violation of the Religion Clauses.**

21

22    The First Amendment's Religion Clauses protect "the right of religious organizations

23 to control their internal affairs." *Cannata v. Catholic Diocese of Austin*, 700 F3d 169, 172

24 (5th Cir 2012). LCMS's right to conduct private internal communications regarding church

25 doctrine, governance, and the approval of ministers is threatened by the broad scope of

26 Plaintiff's requests.

**Bullivant|Houser|Bailey PC**

One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351
Facsimile: 503.295.0915

1    The right to church autonomy stems from both the Establishment and Free Exercise

2    Clauses, which together "radiate a spirit of freedom for religious organizations, an

3    independence from secular manipulation or control" that places "matters of church

4    government and administration beyond the purview of civil authorities." *McClure v.*

5    *Salvation Army*, 460 F2d 553, 559-60 (5th Cir 1972) (citation omitted).  Church autonomy

6    protects not just the selection of religious leaders, but also the ability to be "free from state

7    interference" in "matters of church government as well as those of faith and doctrine."

8    *Cannata*, 700 F3d at 172 (internal quotation omitted); *Hosanna-Tabor Evangelical Lutheran*

9    *Church & Sch. v. EEOC*, 565 US 171 (2012) (protections of membership, property, and other

10   internal church governance).

11    The focus of Plaintiff's claims is that LCMS acted improperly by refusing to approve

12   a president of CUP.  Paragraph 44 of the amended complaint alleges:

13    During most of this time, Concordia was being led by an interim president named
     Johnnie Driessner.  Concordia was searching for a permanent president, but the Synod
14   and Concordia System, which together had the power to approve or deny Concordia's
     hiring decisions about a new president, declined every potential permanent Concordia
15   presidential candidate.

16

17    But, as the Supreme Court ruled in *Hosanna-Tabor*, religions cannot be challenged

     for decisions about who, if anyone, is appointed as a minister.
18

19    In *Hosanna-Tabor* the Supreme Court held that a teacher who, although not an

20   ordained minister, had been trained in Lutheran doctrine and beliefs, held the title of

21   commissioned minister, and taught religion classes to elementary school students, was a

22   minister for purposes of the Free Exercise clause. The protected realm of church decision-

23   making, recognized in *Hosanna-Tabor*, is also at play here because any claims involving the

24   approval of a president for CUP involve the installation of a "minister."

25    LCMS's Bylaws make clear that CUP's president—while not identified as an

26   ordained or commissioned minister according to LCMS Bylaw definition—certainly is a

**Bullivant|Houser|Bailey PC**

One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351
Facsimile: 503.295.0915

minister for the purposes of this matter.  LCMS's Bylaws provide:

> The president of the institution [CUP] shall be the executive officer of the board of regents. He shall *serve as the spiritual, academic, and administrative head of the institution.*
>
> (h) He shall be *responsible for the provision of spiritual care and nurture* for every student.
>
> (i) He shall *carefully watch over the spiritual welfare*, personal life, conduct, educational progress, and physical condition of the students and in general exercise such Christian discipline, instruction, and supervision as may be expected at a Christian educational institution.

(Declaration of Rev. Dr. John W. Sias, ¶ 13) (emphasis added).

The First Amendment places decisions about who should be a minister exclusively in the hands of the leaders of the religious body.  No discovery should be allowed into LCMS's internal communications about approving CUP's spiritual leader and minister.

Furthermore, the Supreme Court of the United States has made clear the "ministerial exception" recognized in *Hosanna-Tabor* should be applied broadly to employment decisions regarding any employee involved with teaching and advancing the religion's faith and mission.  In *Our Lady of Guadalupe School v. Morrissey-Berru*, 140 S Ct 2049 (2020), the plaintiffs were elementary school teachers at private Catholic schools.  Both plaintiffs brought employment-discrimination claims.

The Supreme Court held that the ministerial exception barred their claims because permitting the claims would allow an impermissible intrusion into a religious organization's internal employment decisions regarding employees charged with teaching and advancing the religion's doctrines and faith.  *Id.* at 2069.  The court explained the teachers did not carry the title "minister" or perform the duties commonly associated with being a minister.  *Id.* at 2066.  But they nonetheless qualified for the ministerial exception recognized in *Hosanna-Tabor* because their duties included "[e]ducating and forming students in the Catholic faith"

**Bullivant|Houser|Bailey PC**

One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351
Facsimile: 503.295.0915

Exhibit 8 to CTX Motion for Protective Order
Page 16 of 30

1 and "guid[ing] their students, by word and deed, toward the goal of living their lives in

2 accordance with the faith." *Id.*  As the court explained

> 3 The religious education and formation of students is the very
> reason for the existence of most private religious schools, and
> 4 therefore the selection and supervision of teachers upon whom
> the schools rely to do this work lie at the core of their mission.
> 5 Judicial review of the way in which religious schools discharge
> those responsibilities would undermine the independence of
> 6 religious institutions in a way that the First Amendment does
> 7 not tolerate.

8 *Id.* at 2055.

9     One crucial purpose of the doctrine of religious autonomy is to safeguard internal

10 church deliberations and decision-making.  Indeed, "[t]he church autonomy doctrine is

11 rooted in protection of the First Amendment rights of the church to discuss church doctrine

12 and policy." *Bryce v. Episcopal Church in the Diocese of Colo.*, 289 F3d 648, 658 (10th Cir

13 2002).  Consequently, courts forbid any "government interference with an internal church

14 decision that affects the faith and mission of the church itself." *Hosanna-Tabor*, 565 US at

15 190.

16     Courts have recognized that this principle guards against two types of concerns, either

17 of which "alone is enough to bar the involvement of the civil courts." *Combs v. Cent. Tex.*

18 *Annual Conf. of United Methodist Church*, 173 F3d 343, 350 (5th Cir 1999).  The first

19 concern arises where the investigation itself "would necessarily intrude into church

20 governance in a manner that would be inherently coercive," even if the alleged subject of

21 inquiry "were purely nondoctrinal."  *Id.*  Allowing use of this court's judicial power to

22 compel "investigation and review of such matters of church administration and

23 government . . . could only produce by its coercive effect the very opposite of the separation

24 of church and State contemplated by the First Amendment." *McClure*, 460 F2d at 560.

25     The chilling effect of allowing discovery of internal church communications is

26

**Bullivant|Houser|Bailey PC**

One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351
Facsimile: 503.295.0915

obvious: facing such probing in civil litigation discovery would inevitably make internal church decisions "with an eye to avoiding litigation or bureaucratic entanglement rather than upon the basis of their own personal and doctrinal assessments." *Rayburn v. Gen. Conf. of Seventh-Day Adventists*, 772 F2d 1164, 1171 (4th Cir 1985).  That would reflect an unconstitutional "chilling of the decision making process" for churches. *Colo. Christian Univ. v. Weaver*, 534 F3d 1245, 1264 (10th Cir 2008).

Plaintiff's discovery requests threaten precisely that effect.  Requiring LCMS to produce the requested information "would have a chilling effect on the ability of the leadership of the LCMS to freely, frankly, and conveniently discuss matters that involve sensitive areas of religious doctrine, church governance, and the appointment of ministers." (Sias Dec., ¶ 15.)  "Maintaining the privacy and confidentiality of these internal ecclesial discussions regarding church doctrine, church governance, and the selection of ministers is crucial to the openness, frankness, and effectiveness of the decision making of the leadership of LCMS as they fulfill their ecclesiastical duties to the member congregations of the Synod." (Sias Dec., ¶ 19.)  Requiring LCMS to disclose these confidential communications regarding internal church doctrine and governance would "undermine the LCMS's ability to timely and freely communicate about important ecclesiastical church affairs." (Sias Dec., ¶ 20.)

The second concern is that "secular authorities would be involved in evaluating or interpreting religious doctrine." *Combs*, 173 F3d at 350.  Courts should not be determining whether any particular information being sought from a church is sufficiently religious or sensitive to merit protection.  That exercise is itself a forbidden evaluation of religious doctrine.  For example, a discussion about gay rights can, to one person, have no religious implications while, to another, would involve important questions of religious belief and doctrine.  Therefore, it must be asked by what criteria or authority a judge can determine what LCMS's leaders believe would "embarrass the church?" *Weaver*, 534 F3d at 1265

**Bullivant|Houser|Bailey PC**

One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351
Facsimile: 503.295.0915

Exhibit 8 to CTX Motion for Protective Order
Page 18 of 30

(government "has neither competence nor legitimacy" in such matters); *Tagore v. United States*, 735 F3d 324, 328 (5th Cir 2013) (examining religious beliefs requires "a light touch" and "judicial shyness").

Consequently, courts have repeatedly refused to allow governmental inquiries into internal church affairs. For example, the First Circuit rejected the government's "compelled disclosure" of a church school's records, finding that the church's "ability to make decisions" regarding its "mission of religious education" would suffer "chilling" and be "substantially infring[ed]." *Surinach v.Pesquera De Busquets*, 604 F2d 73, 78 (1st Cir 1979). In so holding, the First Circuit rejected the reasoning that compelled disclosure was allowed "because the information solicited did not probe into doctrinal matters." *Id*. at 76. *See also Baldwin v. C.I.R.*, 648 F2d 483, 487 (8th Cir 1981) ("disclosure of certain information will infringe upon a church's First Amendment freedoms").

Similarly, the D.C. Circuit rejected an NLRB inquiry procedure that allowed it to require religious schools to answer questions about their curricular and policy choices and "respond to doubts that it was legitimately 'Catholic.'" *Univ. of Great Falls v. NLRB*, 278 F3d 1335, 1343 (DC Cir 2002).

In sum, requiring LCMS to produce its internal religious communications would irreparably invade the LCMS's right to autonomy from governmental infringement on its right to free exercise.

### 2. Requiring production of LCMS's private religious communications would entangle church and state in violation of the Establishment Clause.

Forcing LCMS to produce its private religious communications to a litigation opponent would violate the Establishment Clause's rule against entanglement between church and state in two ways: first, by exercising civil authority over the church's internal religious communications and, second, by subjecting internal religious communications to

**Bullivant|Houser|Bailey PC**

One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351
Facsimile: 503.295.0915

1  evaluation by the court.

2      The Supreme Court has long recognized that "state inspection" of religious

3  organizations "is fraught with the sort of entanglement that the Constitution forbids." *Lemon*

4  *v. Kurtzman*, 403 US 602, 619-20 (1971).  "It is well established . . . that courts should

5  refrain from trolling through a person's or institution's religious beliefs." *Mitchell v. Helms*,

6  530 US 793, 828 (2000) (plurality).  Requiring production of LCMS's private religious

7  communications would result in "trolling through" them for the church's internal

8  deliberations on doctrinal and governance issues.  *Id.*

9      Indeed, part of the reason for avoiding entanglement is to prevent churches'

10  "personnel and records" from "becom[ing] subject to subpoena . . . the full panoply of legal

11  process designed to probe the mind of the church." *Rayburn*, 772 F2d at 1171.  Such

12  entanglement can happen even in the absence of direct conflict between church and state.

13  "[E]ven if government policy and church doctrine endorse the same broad goal, the church

14  has a legitimate claim to autonomy in the elaboration and pursuit of that goal." *Id.* (citation

15  omitted).  The "very process of inquiry" into LCMS's deliberations on issues of doctrine,

16  governance, and the appointment of ministers "impinge[s] on rights guaranteed by the

17  Religion Clauses[.]" *N.L.R.B. v. Catholic Bishop of Chicago*, 440 US 490, 502 (1979);

18  *accord Bryce*, 289 F3d at 658.

19      Requiring production also threatens "government involvement in . . . ecclesiastical

20  decisions." *Hosanna-Tabor*, 565 US at 189; *accord Penn v. N.Y. Methodist Hosp.*, 884 F3d

21  416, 426 (2d Cir 2018) (forbidding "excessive entanglement with 'ecclesiastical decisions'").

22      Requiring production of LCMS's private religious communications would require the

23  court to impermissibly "evaluate . . . competing opinions on religious subjects," *EEOC v.*

24  *Catholic Univ. of Am.*, 83 F3d 455, 465 (DC Cir 1996), and "weigh in on issues of Catholic

25  [here, LCMS] doctrine and practice," *Schleicher v. Salvation Army*, 518 F3d 472, 475 (7th

26  Cir 2008); *see also New York v. Cathedral Acad.*, 434 US 125, 133 (1977) ("The prospect of

Page 14–DEFENDANT THE LUTHERAN CHURCH-MISSOURI SYNOD'S MOTION
    FOR PROTECTIVE ORDER

**Bullivant|Houser|Bailey PC**
One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351
Facsimile: 503.295.0915

1    church and state litigating in court about what does or does not have religious meaning

2    touches the very core of the constitutional guarantee against religious establishment").

3    LCMS's constitutional protections against church-state entanglement preclude such

4    invasions.

5    **3.    Requiring production of LCMS's private religious communications**
       **would violate LCMS's rights of assembly and association.**
6

7    "It is beyond debate that" the First Amendment protects not just the right of

8    individuals to advocate their points of view in public but also the "freedom to engage in

9    association" with others "for the advancement of beliefs and ideas." *NAACP v. State of Ala.*

10   *ex rel. Patterson*, 357 US 449, 460 (1958).  This right—textually grounded in the First

11   Amendment's Assembly Clause but often referred to as the "freedom of association"—

12   protects the right of "persons sharing common views [to] band[] together to achieve a

13   common end." *Citizens Against Rent Control/Coal. for Fair Housing v. City of Berkeley*,

14   454 US 290, 294-95 (1981).  The freedom of association thus prohibits "direct"

15   governmental action "restrict[ing] the right of [persons] to associate freely." *Patterson*, 357

16   US at 461.  It also protects against "governmental action which, although not directly

17   suppressing association, nevertheless" has "the effect of curtailing the freedom to associate."

18   *Id*. at 460-61.

19   This right can be triggered by enforcement of discovery requests requiring a protected

20   group "to disclose certain associational information when disclosure may impede future

21   collective expression." *In re Motor Fuel Temperature Sales Practices Litig.*, 641 F3d 470,

22   479 (10th Cir 2011); *see also Perry,* 591 F3d at 1160 ("Disclosures of political affiliations

23   and activities that have a deterrent effect on the exercise of First Amendment rights

24   are . . . subject to . . . exacting scrutiny") (internal quotation marks omitted); *AFL-CIO. v.*

25   *FEC*, 333 F3d 168, 177-78 (DC Cir 2003) ("[W]here … the [government] compels public

26   disclosure of an association's confidential internal materials, it intrudes on the privacy of

**Bullivant|Houser|Bailey PC**

One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351
Facsimile: 503.295.0915

1  association and belief guaranteed by the First Amendment[.]") (internal quotation marks

2  omitted). Indeed, *Patterson*, "[t]he seminal" freedom-of-association case," *Motor Fuel*, 641

3  F3d at 479-480, involved just this scenario.

4      In *Patterson*, Alabama sought discovery of the NAACP's membership lists.  The

5  Supreme Court held that enforcing this discovery request would violate the right to freedom

6  of association.  357 US at 451, 460-66.  The court said allowing discovery would "affect

7  adversely the ability of [the NAACP] and its members to pursue their collective effort to

8  foster beliefs which they admittedly have the right to advocate," because the NAACP had

9  shown that "revelation of the identity of its rank-and-file members" could "induc[e] members

10 to withdraw . . . and dissuade others from joining."  *Id*. at 462-63.  Given this chilling effect,

11 the compelled disclosure had to satisfy "the closest scrutiny."  *Id*. at 460-61.

12     Discouraging group membership is not the only way a compelled disclosure can

13 unconstitutionally chill association rights.  *Perry*, 591 F3d at 1163 ("identifying two ways in

14 which compelled disclosure . . . can deter protected activities," and clarifying that this is not

15 "an exhaustive list").  Instead, the freedom of association protects against compelled

16 disclosures that would in any way "make it more difficult for members of [the] association to

17 foster their beliefs."  *Motor Fuel*, 641 F3d at 489-90.  This includes disclosures that would

18 "stifle full and frank discussions within and among" the association and its members.  *Id*. at

19 490;  *Perry*, 591 F3d at 1163 (requisite chilling effect exists when disclosure would "mut[e]

20 the internal exchange of ideas");  *AFL-CIO*, 333 F3d at 177 (same, when disclosure would

21 "frustrate . . . groups' decisions as to how to organize themselves [and] conduct their

22 affairs . . . as well as their selection of a message and the best means to promote that

23 message" (internal quotation marks omitted)).

24     *Perry* illustrates the point.  There, same-sex couples challenged California's

25 traditional-marriage law, then sought to have the proponents of the ballot initiative that

26 resulted in the law produce their "internal campaign communications relating to campaign

**Bullivant|Houser|Bailey PC**
One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351
Facsimile: 503.295.0915

1  strategy and advertising." 591 F3d at 1152. The Ninth Circuit held that compelling these

2  disclosures would violate the "First Amendment privilege" recognized in *Patterson*. *Id*. at

3  1159-65. "Implicit in the right to associate with others to advance one's shared political

4  beliefs' "is the right to exchange ideas and formulate strategy and messages, and to do so in

5  private." *Id*. at 1162. The proponents had thus made a "prima facie showing" that

6  compelled disclosures would chill this component of their association rights, because they

7  had presented declarations stating that they would be "less willing to engage in" internal

8  communications about "political and moral" issues if they knew that those private

9  deliberations would ultimately be subject to disclosure. *Id*. at 1163. The "evidentiary

10 burden" therefore "shift[ed] to the plaintiffs to demonstrate a sufficient need for the

11 discovery to counterbalance the [First Amendment] infringement." *Id*. at 1164.

12       Here, too, the associational right threatened is LCMS's ability to "exchange ideas and

13 formulate [its] message[] in private." *Id*. at 1162. And here, too, LCMS has "made a prima

14 facie showing of arguable First Amendment infringement by demonstrating consequences

15 that objectively suggest an impact on, or chilling of, associational rights." *Id*. at 1163

16 (internal quotation marks omitted).

17       The declaration of John Sias submitted in support of this motion explains the burden

18 placed on LCMS's associational rights by Plaintiff's invasive discovery requests, which seek

19 confidential, internal church communications regarding matters of church doctrine,

20 governance, and personnel. As Sias explains, "If the discovery of these internal private

21 confidential communications regarding church doctrine, church governance, and selection of

22 a minister are required to be disclosed, that disclosure would impact the ability of the LCMS

23 and other corporate entities of the Synod to fully and freely engage in its ministry, on behalf

24 of the ecclesiastical Synod and its constituent member congregations, going forward." (Sias

25 Dec., ¶ 21.)

26

Page 17–DEFENDANT THE LUTHERAN CHURCH-MISSOURI SYNOD'S MOTION
     FOR PROTECTIVE ORDER

Case 1:23-cv-01042-DAE    Document 39-8    Filed 09/16/24    Page 23 of 30
Exhibit 8 to CTX Motion for Protective Order
Page 23 of 30

**D.     Plaintiff cannot show its interests in discovery outweigh LCMS's First Amendment rights.**

Because LCMS has made its prima facie case that granting Plaintiff the discovery it seeks would infringe on LCMS's constitutionally protected religious freedoms, the burden shifts to Plaintiff to demonstrate that its interest in obtaining the discovery outweighs the infringement of LCMS's religious freedoms. *Perry*, 591 F3d at 1161. This is a balancing test designed to ensure that, "[w]hen First Amendment interests are at stake, [parties seeking disclosure] use a scalpel, not an ax." *Ealy v. Littlejohn*, 569 F2d 219, 228 (5th Cir 1978) (internal quotation marks omitted).

Factors to be considered include (1) the importance of the litigation; (2) the centrality of the information sought to the issues in the case; (3) the existence of less intrusive means of obtaining the information; and (4) the substantiality of the First Amendment interests at stake. *Perry*, 591 F3d at 1161. In the end, "the party seeking discovery must show that the information sought is highly relevant to the claims or defenses in the litigation" and the request is "tailored to avoid unnecessary interference with protected activities, and the information must be otherwise unavailable." *Id.*

Plaintiff cannot demonstrate its need for the requested information outweighs the harm to LCMS's protected religious freedoms.

The first factor is the importance of the litigation. Although somewhat factually complicated, this case involves fairly routine civil claims for money damages. It does not, for example, involve the investigation of criminal violations or any questions of broad national and public importance. Although the case is important to the parties, it has no wider significance. Thus, this factor weighs against disclosure.

The second factor is the centrality of the information sought to the issues in the case. This factor is closely related to the requirement that the protected information sought be "highly relevant to the claims or defenses in the litigation[.]" *Id.* Plaintiff fails this most

**Bullivant|Houser|Bailey PC**

One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351
Facsimile: 503.295.0915

1  important factor.  At its core, this case is about allegedly fraudulent transfers.  Proving those

2  claims does not require probing LCMS's discussions of religious doctrine, governance, and

3  decisions regarding approval of ministers.  Those issues—although potentially provocative—

4  are irrelevant to what this case is about.  Therefore, Plaintiff cannot demonstrate the

5  information sought is highly relevant to any claim or defense.

6    The third factor is whether there are less intrusive means of obtaining the same

7  information.  This factor is of little importance here because, as just discussed, the

8  information sought to be protected by this motion is irrelevant to any claim or defense.  That

9  renders irrelevant whether the information can be obtained elsewhere.

10    The fourth factor is the substantiality of the First Amendment freedoms at stake.  This

11  motion is based on LCMS's First Amendment rights to freedom of religious exercise,

12  freedom of religious association, and freedom of religious autonomy.  Courts have frequently

13  identified these rights as among the most important in the constitution.  *See*, *e.g.*, *Ferguson v.*

14  *C.I.R.*, 921 F2d 588 (5th Cir 1991), *cert den*, 510 US 918 (1993) ("The right to free exercise

15  of religion . . . is one of our most protected constitutional rights.")  Thus, the substantiality of

16  the First Amendment freedoms at stake weighs conclusively in LCMS's favor.

17    The chilling effect here is neither that LCMS will stop managing its affairs to

18  encourage related organizations to act in accordance with the Synod's sincerely held

19  religious beliefs and religious doctrine, nor that LCMS will reconsider its beliefs regarding

20  same sex marriage; instead, it is that LCMS will be impeded from having frank, private

21  discussions about the theology and morals of its mission in the context of particular social

22  issues like same sex marriage.  That, again, is a chilling effect cognizable under the First

23  Amendment.  *Perry*, 591 F3d at 1163 (First Amendment protects against disclosure that

24  "would have the practical effects" of "inhibiting internal campaign communications that are

25  essential to effective association and expression");  *see also Motor Fuel*, 641 F3d at 489-90

26  (First Amendment protects against not just disclosures that would "deter membership" but

**Bullivant|Houser|Bailey PC**

One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351
Facsimile: 503.295.0915

also those that would "hinder [group members'] ability to communicate among themselves"). Plaintiff cannot demonstrate that its interest in obtaining information irrelevant to any claim or defense outweighs LCMS's substantial First Amendment rights.

### E.     Oregon's Rules of Civil Procedure authorizing discovery in civil litigation are not laws of general applicability because they are subject to exemptions.

Plaintiff cannot justify the burdens its discovery requests impose on LCMS's religious freedoms by arguing discovery under the ORCPs involves application of a neutral law of general applicability.  This is because, by allowing protective orders limiting or precluding discovery altogether, the ORCP's discovery rules are not neutral laws of general applicability.  The Supreme Court of the United States examined this issue recently in *Fulton v. City of Philadelphia, Pennsylvania*, 141 S Ct 1868 (2021).

*Fulton* involved a private foster-care agency's challenge to the City of Philadelphia's decision to stop making referrals to the agency because the agency declined—for religious reasons—to place foster children with same-sex couples as foster parents.  The question before the Supreme Court was whether Philadelphia's actions violated the First Amendment.

The court first considered whether the city's actions had burdened the foster-care agency's religious exercise rights under the First Amendment.  *Id.* at 1876.  The court swiftly resolved that question, stating "[a]s an initial matter, it is plain that the City's action have burdened [the agency's] religious exercise by putting it to the choice of curtailing its mission or approving relationships inconsistent with its beliefs." *Id.*

The court then moved to "whether the burden the City has placed on the religious exercise of [the agency] is constitutionally permissible." *Id.*  That question implicated the court's decision in *Employment Division, Department of Human Resources of Oregon v. Smith*, 494 U.S. 872, 110 S Ct 1595, 108 L Ed 2d 876 (1990) ("*Smith*").

*Smith* held that laws that incidentally burden religion are ordinarily not subject to

**Bullivant|Houser|Bailey PC**

One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351
Facsimile: 503.295.0915

strict scrutiny so long as they are neutral and generally applicable. *Id* at 878-82, 110 S Ct at 1595. *Smith* also explained a law is not "generally applicable" if it allows the government to consider the particular reasons for a person's conduct by providing individualized exemptions from the general law. *Id.* at 884, 110 S Ct at 1595.

In *Fulton*, the court held that the city's prohibition on rejecting foster parents based on sexual orientation was not a law of general applicability because the prohibition was subject to exemptions that were available in the "sole discretion" of the person delegated authority to grant such exemptions. *Fulton*, 141 S Ct at 1878.

Having decided the city's prohibition against discriminating against same-sex foster parents was not a neutral law of general applicability, the court next evaluated whether the policy could survive strict scrutiny. *Id.* at 1881. "A government policy can survive strict scrutiny only if it advances 'interests of the highest order' and is narrowly tailored to achieve those interests." *Id.* (quoting *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 US 520, 546 (1993)). "Put another way, so long as the government can achieve its interests in a manner that does not burden religion, it must do so." *Id.* After weighing the parties' competing interests and the burden the city's policy placed on the agency, the court held the policy violated the agency's First Amendment rights. *Id.* at 1882.

*Fulton* is relevant here because it forecloses any argument that the burdens Plaintiff's discovery requests place on LCMS's rights of religious freedom are justified because discovery in civil litigation is authorized by neutral laws of general applicability. The ORCPs authorizing discovery are subject to numerous exceptions, including the rule under which this motion is brought: ORCP 36 C(1) (authorizing protective orders limiting or precluding discovery). *Fulton* teaches that laws subject to exemptions are not laws of general applicability and, therefore, fall outside the *Smith* test.

**Bullivant|Houser|Bailey PC**

One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351
Facsimile: 503.295.0915



## VII.  CONCLUSION

This court should grant LCMS's motion for a protective order.

DATED: August 27, 2021.

BULLIVANT HOUSER BAILEY PC


By *s/ Thomas L. Hutchinson*
   Thomas L. Hutchinson, OSB #994896
   E-mail: tom.hutchinson@bullivant.com
   Laura Caldera, OSB #993786
   E-mail: laura.caldera@bullivant.com

Attorneys for Defendant The Lutheran
Church–Missouri Synod

4821-1792-2808.1

**Bullivant|Houser|Bailey PC**

One SW Columbia Street, Suite 800
Portland, Oregon 97204–4022
Telephone: 503.228.6351
Facsimile: 503.295.0915

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 27th day of August 2021, I caused to be served the

foregoing DEFENDANT THE LUTHERAN CHURCH-MISSOURI SYNOD'S MOTION

FOR PROTECTIVE ORDER on the following parties at the following addresses:

| | |
|---|---|
| James T. McDermott<br>Gabriel M. Weaver<br>McDermott Weaver Connelly Clifford LLP<br>1000 SW Broadway, Suite 960<br>Portland, OR 97205<br>jmcdermott@mwcc.law<br>gweaver@mwcc.law<br><br>*Attorneys for Plaintiff* | ☐ U.S. Mail<br>☐ Facsimile<br>☐ Hand Delivery<br>☐ Overnight Courier<br>☒ E-Mail<br>☐ Odyssey File & Serve™ |
| Thomas C. Sand<br>Ian Christy<br>John Clarke<br>Miller Nash Graham & Dunn LLP<br>111 SW Fifth Avenue, Suite 3400<br>Portland, OR 97204<br>tom.sand@millernash.com<br>ian.christy@millernash.com<br>john.clarke@millernash.com<br>amy.jones@millernash.com<br>janna.leasy@millernash.com<br><br>*Attorneys for Defendant Lutheran<br>Church Extension Fund* | ☐ U.S. Mail<br>☐ Facsimile<br>☐ Hand Delivery<br>☐ Overnight Courier<br>☒ E-Mail<br>☐ Odyssey File & Serve™ |
| Janet M. Schroer<br>Matthew J. Kalmanson<br>Hart Wagner LLP<br>1000 SW Broadway, 20th Floor<br>Portland, OR 97205<br>JMS@hartwagner.com<br>MJK@hartwagner.com<br>IOW@hartwagner.com<br>FRH@hartwagner.com<br><br>*Attorneys for Defendant Concordia<br>University System* | ☐ U.S. Mail<br>☐ Facsimile<br>☐ Hand Delivery<br>☐ Overnight Courier<br>☒ E-Mail<br>☐ Odyssey File & Serve™ |

| | | | |
|---|---|---|---|
| 1 | William L. Larkins, Jr. | ☐ | U.S. Mail |
| | Christopher J. Kayser | ☐ | Facsimile |
| 2 | Heather K. Cavanaugh | ☐ | Hand Delivery |
| | 121 SW Morrison Street, Suite 700 | ☐ | Overnight Courier |
| 3 | Portland, OR 97204 | ☒ | E-Mail |
| 4 | wlarkins@lvklaw.com | ☐ | Odyssey File & Serve™ |
| | cjkayser@lvklaw.com | | |
| 5 | hcavanaugh@lvklaw.com | | |
| | amilligan@lvklaw.com | | |
| 6 | ahollowell@lvklaw.com | | |
| 7 | *Attorneys for Defendant Concordia* | | |
| 8 | *University, St. Paul* | | |

| | | | |
|---|---|---|---|
| 9 | Jane E. Maschka | ☐ | U.S. Mail |
| | Josh Peterson | ☐ | Facsimile |
| 10 | Faegre Drinker Biddle & Reath LLP | ☐ | Hand Delivery |
| | 2200 Wells Fargo Center | ☐ | Overnight Courier |
| 11 | 90 South Seventh Street | ☒ | E-Mail |
| | Minneapolis, MN 55402 | ☐ | Odyssey File & Serve™ |
| 12 | Jane.maschka@faegredrinker.com | | |
| 13 | Josh.peterson@faegredrinker.com | | |
| 14 | *Attorneys for Defendant Concordia* | | |
| 15 | *University, St. Paul* | | |

| | | | |
|---|---|---|---|
| 16 | C. Robert Steringer | ☐ | U.S. Mail |
| | Randolph Geller | ☐ | Facsimile |
| 17 | Julian Marrs | ☐ | Hand Delivery |
| | Harrang Long Gary Rudnick PC | ☐ | Overnight Courier |
| 18 | 1050 SW Sixth Avenue, Suite 1600 | ☒ | E-Mail |
| | Portland, OR 97204-1116 | ☐ | Odyssey File & Serve™ |
| 19 | bob.steringer@harrang.com | | |
| 20 | randy.geller@harrang.com | | |
| | julian.marrs@harrang.com | | |
| 21 | tessa.landis@harrang.com | | |
| 22 | *Attorneys for Defendants Concordia* | | |
| | *University (aka Concordia University-* | | |
| 23 | *Portland), Charles E. Gerken, Kathleen* | | |
| | *Hone; Terry Wilson; Jerry Baltzell; David O.* | | |
| 24 | *Berger; Michael Borg; Dr. Charles E.* | | |
| | *Brondos; Gerald Koll; Rev. Paul Linnemann;* | | |
| 25 | *Jeff Oltmann; Rev. Kurt Onken; Rev. Timothy* | | |
| | *Pauls; Bev Peloquin; Dr. Rod Wegener; Rev.* | | |
| 26 | *Sam Wiseman; Rev. Thomas John Zelt, and* | | |
| | *Brian T. Yamabe* | | |

**Bullivant|Houser|Bailey PC**

One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351
Facsimile: 503.295.0915

Exhibit 8 to CTX Motion for Protective Order
Page 30 of 30

| | | | |
|---|---|---|---|
| 1 | S. Ward Greene<br>Farleigh Wada Witt<br>121 SW Morrison St., Ste. 600<br>Portland, OR 97204<br>wgreene@fwwlaw.com<br>acolwell@fwwlaw.com<br><br>*Attorneys for Defendant Richard Doughty and Rev. Thomas Ries* | ☐<br>☐<br>☐<br>☐<br>☒<br>☐ | U.S. Mail<br>Facsimile<br>Hand Delivery<br>Overnight Courier<br>E-Mail<br>Odyssey File & Serve™ |
| 7 | Allyson S. Krueger<br>Elizabeth C. Knight<br>Conner C. Bottomly<br>Dunn Carney Allen Higgins & Tongue LLP<br>851 SW Sixth Avenue, Suite 1500<br>Portland, OR 97204-1357<br>akrueger@dunncarney.com<br>eknight@dunncarney.com<br>cbottomly@dunncarney.com<br>rhenderson@dunncarney.com<br><br>*Attorneys for Defendants Concordia University Foundation, George Thurston, and Chris Dunnaville* | ☐<br>☐<br>☐<br>☐<br>☒<br>☐ | U.S. Mail<br>Facsimile<br>Hand Delivery<br>Overnight Courier<br>E-Mail<br>Odyssey File & Serve™ |

/s/ *Thomas L. Hutchinson*
Thomas L. Hutchinson, OSB No. 994896
Laura Caldera, OSB No. 993786

**Bullivant|Houser|Bailey PC**

One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351
Facsimile: 503.295.0915