**FILED**

November 01, 2024

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _Christian Rodriguez_
DEPUTY

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| THE LUTHERAN CHURCH – MISSOURI SYNOD, a Missouri nonprofit corporation | § § § | |
| *Plaintiff,* | § | |
| | § | Case No. 1:23-cv-1042-DAE |
| v. | § | [Consolidated with 1:24-cv-00176-DAE] |
| | § | |
| DONALD CHRISTIAN, CHRISTOPHER BANNWOLF, CONCORDIA UNIVERSITY TEXAS, INC., & JOHN DOES 1-12 | § § § § § | |
| *Defendants* | § | |

## DEFENDANT CONCORDIA UNIVERSITY TEXAS' RESPONSE TO PLAINTIFF'S MOTION TO COMPEL

Defendant Concordia University Texas, Inc. ("CTX") submits this Response to Plaintiff Lutheran Church – Missouri Synod, a Missouri nonprofit corporation's ("LCMS") Motion to Compel ("Motion") as follows:

### I.      INTRODUCTION

1.      This case is about actions taken in November of 2022 by CTX's Board of Regents to amend its governing documents ("document amendments") to reflect its sole governance of CTX and remove reference to any governing authority by LCMS and the Lutheran Church – Missouri Synod, an unincorporated association of Lutheran congregations ("Synod"). LCMS has propounded on CTX discovery requests that seek a litany of documents, communications, and information in possession of former and current members of CTX's Board of Regents, CTX's Officers, and members of CTX's leadership team. LCMS's requests seek materials from over the course of several years which run the gamut of relating to the actions at issue in this case to the make-up of CTX's student body. CTX has already produced thousands of pages of responsive documents and is in the process of reviewing thousands more documents. It has also resisted

responding to requests which seek irrelevant information, are overly-broad and burdensome, and/or seek privileged information. As CTX has engaged in good-faith efforts to respond, and continues to do so, and because LCMS is not entitled to discovery which has no bearing on the outcomes of the issues in this case, LCMS's motion to compel should be denied.

## II.    FACTS

2.    <u>LCMS's Discovery Requests</u>. On July 12, 2024, LCMS served CTX with Requests for Production (RFPs) and Interrogatories. **LCMS Requests for Production**, **(Ex. 1); LCMS Interrogatories, (Ex. 2)**. The first included 46 separate RFPs which sought:

(a) all documents including notes, agendas, minutes, and recordings from Board of Regents meetings from 2016 to date;

(b) all video and computer presentations presented to CTX's Board of Regents in November of 2022 and April of 2023;

(c) communications amongst members of CTX's Board of Regents, and between members of CTX's Board of Regents and CTX's President and Provost, and any other person, regarding the document amendments, and the affirmation and the effect of those amendments;

(d) communications between all CTX officers and the LCMS regarding the amendments;

(e) all documents reflecting ownership, mortgages on, appraisals of, and/or attempts to sell or market CTX property;

(f) communications amongst members of CTX's Board of Regents and between members of CTX's Board of Regents and CTX's President and Provost regarding the seating of members on CTX's Board of Regents;

(g) communications with CTX's donors and any accreditation or governance organization, regarding the document amendments, and with any individual advising CTX regarding the document amendments;

(i) all of CTX's quarterly and annual financial statements from 2016 to present;

(k) all communications between CTX and its faculty, staff, and church workers regarding CTX's status within the LCMS and the document amendments;

(l) all correspondence from recipients of an email sent by CTX's President on November 9, 2023;

(m) any documents showing the enrollment numbers and categories of students from January 2016 to present;

(n) correspondence between CTX and LCMS's Texas District or its officers, regarding the document amendments, this lawsuit or this dispute, and the seating of regents since 2016;

(o) any documents relating to CTX's refusal to seat Synod selected regents on its Board in 2023;

(p) any documents relating to resolutions adopted by Synod at its 2023 convention;

(q) documents showing how individual Board of Regents members voted on the document amendments, affirming the amendments, or their views on changing CTX's governing documents and policies;

(r) correspondence between CTX and any insurers;

(s) all documents demonstrating existing or future obligations that involve real estate or a portion of operating revenue or expenses; and

(t) drafts of the document amendments.

**Ex. 1**. Nearly all of the 46 requests are broad requests seeking "all," "any," or "the" documents and/or communications. *See Id*. And, "documents" is defined to include drafts that are non-identical copies. **Ex. 1** at 3 (adopting Western District Local Rule definitions); W. Dist. Tex. L. R. CV-26(b)(2).

3. <u>CTX's Response.</u> On August 12th, CTX served LCMS with written responses and objections to the RFPs and Interrogatories. **Motion** at Exs. 1-2. The following month, on September 20th, CTX amended its written responses and objections to include the assertion of First Amendment privileges to some of the RFPs and interrogatories. **Motion** at Ex. 4-5. In its written responses, CTX indicated that responsive materials not subject to privilege would be produced as would a privilege log. **Motion** at Exs. 1-2, 4-5.

4. <u>CTX's Collection of Potentially Responsive Material</u>. The materials and information sought by LCMS require the collection and review of documents from both current and former members of CTX's Board of Regents, and CTX Officers and leadership team members. **Declaration of Daniel R. Richards, (Ex. 3)** at ¶ 2. Since receiving these requests, CTX has collected emails and attached documents from 17 current and former members of CTX's Board of Regents, and from 17 of CTX's Officers and members of its leadership team. *Id*. at ¶ 5. Members of CTX's Board of Regents are unpaid volunteers who conduct CTX business from their personal and business email address. *Id*. In order to collect potentially responsive documents from regents, CTX had to coordinate with individual regents to gain access to their email accounts. *Id*. From this initial collection, CTX began with nearly 2.5 million documents which were potentially responsive. *Id*. at ¶ 6. Contrary to LCMS's protestations that "neither LCMS nor the Court can evaluate the magnitude of the document production," **Motion** at 14, CTX informed LCMS's counsel of the volume of materials it was working to review and the process of review in

correspondence on September 20th. *Id.*; *see also* **Motion** at Ex. 6. Since August 16th, CTX has reduced the number of these documents requiring individual review to 91,029 through its active review efforts. **Ex. 3** at ¶ 7. CTX currently has 2 attorneys and 3 members of firm staff reviewing individual documents for responsiveness. **Ex. 3** at ¶ 8. At the time of filing, they have reviewed 26,069 documents. *Id.*

5.      At the same time, CTX began gathering potentially responsive materials from other internal sources such as databases and information sharing platforms. **Ex. 3** at ¶ 11. Collection of these documents began on July 19th and review of the documents began in late July. *Id.*

6.      <u>CTX Production</u>. In the meantime, CTX has produced several thousand pages of relevant and responsive materials. In four separate productions, one in June, one in August, one in September, and one in October, CTX produced over 8,000 pages of responsive materials to LCMS. **Ex. 3** at ¶ 10; *see also* **Ex. 3, Richards-B**. On October 24th, CTX also produced an initial privilege log of withheld documents. *Id.* at ¶ 11; *see also* **Ex. 3, Richards-C**. Attorneys and staff began preparing this log and identifying which documents to withhold and those to waive privileges for on September 22nd. *See* **Ex. 3, Richards-D**.

7.      <u>Time and money spent on response.</u> As of October 23rd, attorneys and firm staff for CTX have spent 312 hours collecting, reviewing, and producing documents responsive to LCMS's requests from CTX's internal platforms and databases, as well as from the emails of 34 individuals who are likely to be in possession of responsive materials. **Ex. 3** at ¶ 12; *see also* **Ex. 3, Richards-D**. This does not include CTX time addressing LCMS's third-party subpoenas, motions about which are pending before this court, and responding to discovery requests to Defendants Christian and Bannwolf. **Ex. 3** at ¶ 12. CTX has also spent over $25,000.00 in fees to Disco for support in

collecting, processing, and filtering responsive documents. **Ex. 3** at ¶ 13; *see also* **Ex.3, Richards-E**, **Richards-F**, and **Richards-G**

### III.    ARGUMENT

8.     LCMS asks the Court to find that CTX has waived all claimed privileges because it (a) supplemented its written objections to include first amendment privileges after the initial 30-day response period; and (b) has not yet produced a privilege log. **Motion** at 12-15. Waiver of privileges is a harsh punishment reserved for defiant and uncooperative litigants. CTX is neither and a finding of waiver is inappropriate given the circumstances of discovery in this case. LCMS has also sought to compel responses to RFPs and interrogatories to which it is not entitled because the requests are irrelevant to this case, are overly broad, and/or seek privileged information.

#### a.  Waiver of Privileges

9.     <u>Waiver is reserved for cases of unjustifiable delay, inexcusable conduct, and bad faith</u>. Although waiver may result from a failure to timely object, waiver is not automatic; it is a harsh sanction and courts retain the discretion to determine whether to apply the sanction. *United States v. Philip Morris, Inc.*, 347 F.3d 951, 954 (D.C. Cir. 2003); *see also Enron Corp. Sav. Plan v. Hewitt Assocs., L.L.C.*, 258 F.R.D. 149, 156 (S.D. Tex. 2009); *First Sav. Bank, F.S.B. v. First Bank Sys.*, 902 F. Supp. 1356, 1361 (D. Kan. 1995) (collecting cases). It is reserved for cases where a court finds continual failure to comply with Federal Rule 26's requirement to disclose claimed privileges to withheld documents "results from unjustified delay, inexcusable conduct, or bad faith." *EEOC v. BDO USA, L.L.P.*, 876 F.3d 690, 697 (5th Cir. 2017) (citing *Philip Morris, Inc.* 347 F.3d at 954); *see also First Sav. Bank, F.S.B.*, 902 F. Supp. at 1361. "Minor procedural violations, good faith attempts at compliance, and other such mitigating circumstances militate against finding waiver."

*Ritacca v. Abbott Labs.*, 203 F.R.D. 332, 335 (N.D. Ill. 2001) (citing First Sav. Bank, F.S.B., 902 F. Supp. At 1361).

10.   <u>There is no evidence that CTX has unjustifiably delayed production, engaged in inexcusable conduct, or bad faith in supplementing its initial objections</u>. LCMS asks that all of CTX's 1ˢᵗ Amendment Privileges be waived because they were not asserted within 30-days of receiving LCMS's discovery requests. **Motion** at 12-13. CTX promptly asserted the privilege though in supplemental objections the following month. **Motion** at Ex. 4-5. This good faith attempt at compliance, and the minor nature of the procedural violation militates against a finding of waiver. *Ritacca*, 203 F.R.D. at 335.

11.   <u>The discovery requests in this case and the lack of prejudice to LCMS also militates against a finding of waiver.</u> LCMS alternatively asks that all of CTX's claimed 1ˢᵗ Amendment, attorney-client, and work-product privileges be waived because CTX did not produce a privilege log within two-months of serving its original objections. **Motion** at 13. LCMS admits that the Federal Rules do not prescribe a timeframe for producing privilege log. *Id*. Instead, courts rely on a series of factors to determine timeliness of production including: (1) the length of delay; (2) reason for the delay; (3) evidence of dilatory or bad faith actions on the objecting party; (4) whether the compelling party has been prejudiced; (5) whether the document requests was properly framed and not excessively burdensome; and (6) whether waiver would impose an excessively harsh remedy. *See Enron Corp. Sav. Plan*, 258 F.R.D. at 157 (citing *Hall v. Sullivan*, 231 F.R.D. 468, 474 (D. Md. 2005));

12.   The application of these factors to this case militates against the wholesale waiver of all of CTX's claimed privileges. The length and reason for the delay in the production of a privilege log is based on the excessive nature of LCMS's requests. It propounded 46 separate requests for

production that sought documents on a multitude of topics ranging from the changes to CTX's governing documents to the make-up of its student body, which could be in possession of current and former CTX Regents, as well as CTX officers and staff. **Ex. 3** at ¶ 2. LCMS asserts that "the particular circumstances of this case should make responding to ***some*** aspects of discovery easy." **Motion** at 14 (emphasis added). However, CTX has an obligation to respond to <u>all</u> of LCMS's requests; not just those that LCMS thinks are easy.[1] CTX must review the more than 2.5 million documents gathered for both responsiveness and the existence of privileged information. *See* **Ex. 3** at ¶ 6. This type of document collection and review requires a significant amount of time first in the coordination and collection of documents, and then in the review.[2] Since receiving the requests in July, CTX's attorneys and their staff have spent hundreds of hours collecting and reviewing documents and would have spent more if not for responding to LCMS's motion. **Ex. 3** at ¶¶ 9, 12; *see also* **Ex. 3, Richards-D**. The reason and time of delay in the production of a privilege log is due to the time it takes to respond to LCMS's burdensome requests. For this reason, the Court should not find CTX has waived its privileges.

13.     Moreover, there is no evidence that CTX has engaged in any dilatory or bad faith behavior. In addition to the number of hours CTX's attorneys and their staff have spent on collection and reviewing responsive documents, CTX has also produced over 8,000 pages of responsive material and an initial privilege log that it will supplement as its document review progresses. **Ex. 3** at ¶¶

---

[1] Although LCMS states that it has limited its Motion "to the most important discovery issues," **Motion** at 3, it has not withdrawn any of its requests and CTX is still obligated under the Federal Rules to provide responsive materials to those requests. Perhaps had LCMS narrowed its initial requests to only those that were "important" or withdrawn those requests that it believes were not important enough to seek court intervention, less time and effort would be required to gather and review responsive material and produce a privilege log.

[2] LCMS asserts that "CTX's failure to provide a privilege log within two months after serving discovery responses is tantamount to a waiver," **Motion** at 13, yet LCMS has sought an extension for CTX's requests for production that would allow it two months to provide just *written* responses. **Sept. 17th Email re: 1088-0001 (LCMS, (Ex. 4).** Of course, CTX readily agreed to LCMS's requests.

10-11; *see also* **Ex. 3**, **Richards-B** & **Richards-C**. This is in stark contrast to the cases cited by LCMS where courts found objecting parties had waived their privileges. *See e.g. X Corp. v. Media Matters for Am.*, Civil Action No. 4:23-cv-01175-O, 2024 U.S. Dist. LEXIS 184000, at *8-10 (N.D. Tex. 2024) (the objecting party disregarded court orders to produce a privilege log, refused to search for responsive documents, and failed to include claimed privileges in its second supplemented written objections); *Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir. 1981) (objecting party waited 15 months to assert privileges and then asserted them to interrogatories seeking innocuous information such as his address without any justification.); *but see Enron Corp. Sav. Plan*, 258 F.R.D. at 158 (finding waiver excessively harsh "based [] solely on untimeliness (about three months).").

16.     Finally, LCMS has not been prejudiced by any delay. The dispositive motion deadline for this case is currently 7 months away, May 1, 2025. **Agreed Scheduling Order**, Doc. 21 at ¶¶ 8, Moreover, trial is not set until September 8, 2025 nearly a year from now. *Id*. at ¶ 10. There is ample time for LCMS to review CTX's responsive documents and privilege log as they are supplemented. Also, LCMS has had in its possession since the beginning of this litigation all of the amended governing documents that are at issue in this trial, *see* **Complaint**, and has received several thousand pages of responsive materials. **Ex. 3, Richards-B**. Waiver of CTX's claimed privileges is an excessively harsh sanction given CTX's good faith efforts to comply with LCMS's discovery requests and the Rules of Civil Procedure. CTX therefore asks the Court to deny LCMS's requests that it find CTX has waived all of its privileges.

### b.  Motion to Compel

17.     <u>Standard</u>. LCMS has also raised arguments regarding CTX's written objections to some requests for production and interrogatories. The Federal Rules limit discovery to nonprivileged,

relevant matters, which are proportional to the needs of the case, based on a number of factors including importance of the discovery in resolving the issue, amount in controversy, costs, burdens, and likely benefit. Fed. R. Civ. P. 26(b)(1).

**Requests for Production**

18.     "Information Since November of 2022." In RFP Nos. 1-4, 9, 11, 13-16, 18, 19, 26, 28, 32, and 39, LCMS requests documents and communications after CTX's Board voted to amend its governing documents in November of 2022 including all documents regarding Board of Regents meetings, all communications of Regents and CTX officers regarding the amendments, communications with donors regarding the amendments, CTX's financial statements, and documents or communications regarding Synod actions in 2023. **Ex. 1**. The actions at issue in this case took place in November of 2022 and the issue to be decided is whether CTX had the legal right to amend its governing documents. *See e.g.* **Complaint** at ¶ 29-30. CTX has agreed to produce responsive, non-privileged materials for most of these requests through 2022, *see* **Motion**, Exs. 2, 5, and has already begun to do so. **Ex. 3, Richards-B.** However, some communications, such as those with donors and regarding responses to a mass e-mail sent by Defendant Christian are entirely irrelevant to the issues of this case, and LCMS does not offer any basis for their relevancy in its motion. *See* **Motion** at 8-9. Instead, LCMS asserts it is generally entitled to documents responsive to all of these requests through present day because it "complains of actions taken following," November 2022, and because LCMS's damages "continue to accrue." **Motion** at 8-9. The complained of "later action" cited by LCMS is CTX's refusal to seat Synod selected Regents. **Motion** at 8-9.  However, LCMS propounded 4 separate requests for production on that issue and CTX did not object to those requests based on relevance. **Motion** at Exs. 2, 5 ¶¶ 22-25.

19.      LCMS cannot justify the breadth of its additional 17 requests for all documents and all

communications until present day based on this single issue that it has propounded separate

discovery on. Moreover, there is no argument that CTX did not seat the Synod selected regents,

and that fact does not resolve the issue at stake in this case which is whether CTX had the legal

authority to amend its governing documents. LCMS is therefore not entitled to an additional two-

years' worth of materials on 17 separate topics, including wholly irrelevant communications with

donors and responses to a mass email from Defendant Christian. Fed. R. Civ. P. 26(b)(1).

Additionally, in Texas, damages for breach of contract cases involving loss of real estate are

measured by the value of the property at the time of the breach. *Goldman v. Olmstead*, 414 S.W.3d

346, 360-36 (Tex. App.—Dallas 2013, pet. denied); *Juen v. Rodriguez*, 615 S.W.3d 362, 366 (Tex.

App.—El Paso 2020, no pet.). Here, LCMS has pleaded damages for breach of contract based on

the loss of CTX's property. **Complaint** at ¶¶ 40, 56. Therefore, discovery regarding CTX's assets

and financial status following the alleged breach are irrelevant to the resolution of this case and

LCMS is not entitled to discovery on that matter. Fed. R. Civ. P. 26(b)(1).

20.      "Unsupported Claims of Privilege." LCMS seeks to compel a privilege log for documents

responsive to RFPs 6, 8, 9, and 11. These requests seek documents presented to the Board of

Regents at its meetings in November of 2022 and April of 2023. **Ex. 1**. On October 23rd, CTX

produced some documents responsive to this request, and has produced an initial privilege log. **Ex.

3** at ¶ 11; *see also* **Ex. 3, Richards-B** & **Richards-C**. CTX continues to review the 2.5 million

documents collected which may contain materials responsive to LCMS's requests and will

continue to supplement its privilege log as review progresses.

21.      "Documents Promised But Not Produced." LCMS complains that CTX has not yet

produced documents responsive to RFP numbers 13-16, 18, and 19 claiming "it should not take

Response to LCMS's Motion to Compel                                                                11

that long to find documents relating to a specific meeting that took place last year," and arguing that CTX should have been gathering these documents for the last year and a half, even though discovery was not served until July of 2024. **Motion** at 9-10. These requests seek all communications between Board of Regents members, all communications between Board of Regents members and CTX's President and Provost, and all communications between Board of Regents members and anyone else, regarding the governing document amendments. **Ex. 1**. These are only 6 of LCMS's 46 requests for production, a fraction of the potentially responsive documents CTX must collect and review. At this time, CTX has collected emails of 19 individuals that may have communications responsive to these requests (17 Regents and CTX's President and Provost). **Ex. 3** at ¶ 5. CTX is in the process of reviewing those communications with the 2.5 million documents that were collected as potentially responsive to LCMS's remaining requests and will produce responsive, non-privileged materials.

22.     "Miscellaneous Requests." RFP 21 seeks all documents reflecting an attempt to market or sell CTX's real property or any real property for which CTX has an ownership interest. LCMS asserts this request seeks relevant information because LCMS seeks damages for the value of the university which includes CTX's real estate holdings and the value of marketed real estate is relevant to establishing damages. **Motion** at 10. However, in response to a separate RFP, CTX has agreed to produce all documents reflecting CTX ownership of real property and has already produced some responsive documents. **Motion**, Exs. 2, 5 at ¶ 20; *see also* **Ex. 3**, **Richards-B**. In addition, in Texas, damages for breach of contract cases involving loss of real estate are measured by the value of the property at the time of the breach, *Goldman*, 414 S.W.3d at 360-36, and CTX has already produced financial statements presented to the Board of Regents through 2022. **Ex. 3,**

**Richards-B.** Therefore, the requested documents are not necessary to resolve the issues in this case and LCMS's Motion to Compel should be denied. Fed. R. Civ. P. 36(b)(1).

23.     RFPs 22-25 seek communications amongst Board Members, and between Board Members and CTX's President and Provost regarding the seating of Regents following the document amendments. **Ex. 1**.  LCMS asks the Court to overrule CTX's objections to these requests based on attorney-client and work-product privileges because "it does not seek communications with attorneys or documentation of any attorney's thought process." **Motion** at 10. However, in the corporate context, communications between a corporation's governing members that occur within the context of the legality of corporate action may be protected by attorney-client privilege. *See Rush v. Columbus Mun. Sch. Dist., No. 99-60910*, 2000 U.S. App. LEXIS 39647, at *8 (5th Cir. 2000). It would be non-sensical that attorney-client privileged communications between a corporation's attorney and a corporate officer would lose their privilege when communicated by one officer to another officer. Moreover, work-product privilege extends beyond the thought processes of attorneys – it includes all documents and tangible things created by a party (here a corporation and its officers) or its representative, including consultants, in anticipation of litigation or for trial. Fed. R. Civ. P. 26(b)(3)(A). CTX has stated that it will produce a privilege log of documents responsive to these requests, and it is in the process of reviewing the collected responsive communications. It is premature that LCMS ask the Court to wholesale overrule all privilege-based objections for these materials before CTX itself has even had time to fully review and understand the material involved, and before the Court can evaluate the claimed privileges. LCMS's motion to compel should therefore be denied.

24.     RFPs 26 and 32 seek all communications with CTX's donors regarding the document amendments and responses to a mass email sent by Defendant Christian regarding the document

amendments. **Ex. 1**. CTX objected to these requests on the basis that they seek irrelevant material and are not likely to lead to the discovery of admissible evidence, as well as asserting a 1st Amendment Privilege to donor identities and attorney-client/work-product privileges to some responsive email chains. **Motion** Ex. 2,5 at ¶¶ 26, 32. In addition, CTX stated that it is concerned LCMS will use the information to interfere with the operation CTX and its relationship with its students, staff, regents, alumni, and others. *Id*. LCMS has only challenged the latter basis.[3] **Motion** at 10. Who has received or responded, and how they responded, to CTX communications has no bearing on whether CTX acted within its authority to amend its governing documents. Moreover, LCMS has not provided any argument as to how procurement of documents responsive to these requests is necessary to the resolution of the issues in this case or how the requests are remotely proportional. LCMS's motion to compel should therefore be denied.

25.     RFP 27 seeks all communications advising CTX regarding the document amendments. **Ex. 1.** CTX objected to the request on the basis of attorney-client and work product privileges. LCMS asks that these objections be overruled because it is not seeking communications with an attorney. **Motion** at 11. However, inter-officer communications regarding the legality of corporate actions can be protected by attorney-client privilege, *Rush,* 2000 U.S. App. LEXIS 39647, at *8, and work-product privileges can extend beyond the work of attorneys to include parties and their representatives, such as consultants, insurers, or agents. Fed. R. Civ. P. 16(b)(3)(A). CTX is reviewing communications responsive to this request and will provide a privilege log of any withheld documents. LCMS is thus premature in asking the Court to wholesale overrule all of the

---

[3] LCMS has not challenged that donor information is protected by the 1st Amendment. *See* **Motion** at 10; *see also Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 615-149 (2021) (disclosure of donor identification is an intrusion into 1st Amendment rights of association). If the Court finds that the requested donor communications are proportional to the needs of this case and relevant to the resolution of the issues, CTX reserves its right to withhold identifying information about the donors as allowed by the 1st Amendment.

CTX's privileges in documents responsive to this RFP. LCMS's motion to compel should therefore be denied.

26.    RFP 28 seeks all of CTX's financial statements from 2016 to present. **Ex. 1**. In Texas, damages for breach of contract cases involving loss of real estate are measured by the value of the property at the time of the breach, *Goldman*, 414 S.W.3d at 360-36. CTX has already produced the financial documents presented to the Board from Regents from 2016 through 2022. **Ex. 3, Richards-B.** The financial documents after 2022 which LCMS seeks to compel are not necessary to resolve the issues in this case, including LCMS's alleged damages, and LCMS's Motion to Compel should be denied. Fed. R. Civ. P. 36(b)(1).

27.    RFP 35 seeks all communications between CTX and Concordia Plan Services, an LCMS controlled entity. **Ex. 1**; *see also* **Complaint,** Ex. B § 1.2.1 (defining Concordia Plan Services as an agent of Synod and LCMS). CTX objected to this request asserting that responsive materials were as easily accessed by LCMS as by CTX, given that Concordia Plan Services is LCMS's agent. **Motion**, Exs. 2, 5 at ¶ 35. CTX *also* stated that it would produce any responsive materials and referred LCMS to responsive materials already produced. *Id*. LCMS's motion to compel is therefore unnecessary and should be denied.

28.    RFP 39 seeks all documents related to resolutions adopted by the 2023 Synod in Convention, and in particular all documents with the Defendants' reactions to those resolutions. **Ex. 1**. According to LCMS, these resolutions "demanded that CTX 'submit to the governance of the Synod'" and LCMS admits that CTX did not accept that demand. **Complaint** at ¶ 47. CTX objected to this request as to relevancy. The Defendants' reactions, communications, or other documents regarding resolutions adopted after the actions at issue in the case has no bearing on the determination of whether CTX was within its authority to amend its governing documents in

November of 2022. LCMS has not even tried to come up with an explanation of how this material is relevant and said only "that is an issue to be resolved in litigation." **Motion** at 11. LCMS's motion to compel should therefore be denied.

29.     RFP 46 seeks:

> "All documents or contracts reflecting existing or future obligations under contracts or security against indebtedness that either involve real estate or a portion of operating revenue/expense budgets. This shall include but not be limited to any agreements that promise revenues from a dorm, revenues from a cafeteria or revenues from students."

LCMS admits that it purposefully framed this request to be overly-broad, stating that these agreements "may impact the future income or value of the university." Yet, again, in Texas, damages for breach of contract cases involving loss of real estate are measured by the value of the property at the time of the breach, *Goldman*, 414 S.W.3d at 360-36. The requested documents are therefore irrelevant, and the request is overly-broad and burdensome. Moreover, CTX has agreed to produce some materials responsive to this request, and has produced the financial information presented to the Board of Regents through 2022. *See* **Richards-B**. This covers the financial status of CTX through when actions at issue in this litigation occurred which should provide LCMS with sufficient information to evaluate the value of CTX at the time of the document amendments. LCMS's motion to compel should therefore be denied.

**Interrogatories**

30.     "Interrogatories Seeking Identity of Parties." Interrogatories 1-7 and 12-14 ask CTX to state the way in which specific Regents voted in various CTX meetings. **Ex. 2.** As noted in its objection CTX is not in possession of this information because CTX does not record individual votes of Regents unless explicitly contained in Board of Regents meeting minutes. *See* **Motion** at Exs. 1, 4. Board of Regents meeting minutes from 2016-2020 were produced in August of 2024,

and meeting minutes from 2021-2022 in October of 2024. *See* **Richards-B**. In regard to the Board of Regents meetings in which the governing documents were amended, and where those amendments were affirmed, the Board of Regents specifically elected to conduct a blind vote. **Declaration of Donald Christian**, Motion for Protective Order, Ex. 2 at ¶¶ 6, 8 (**Ex. 5**).

31.     LCMS also seeks how Regents voted for CTX's change in 501c(3) status and changes to its Charter and Certificate of Formation to reflect that change. LCMS justifies this request by claiming it needs Regents' names in order to replace the John Doe defendants. Yet, LCMS's complaint against the John Doe Regents does not include any action related to CTX's non-profit status nor the charter amendments reflecting that change. *See* **Complaint, ¶¶** 64-72**.** Even if CTX was in possession of the names of these Regents, they would not be relevant to the resolution of this case. Therefore, LCMS's motion to compel should be denied.

32.     Finally, CTX also objected to these interrogatories based on First Amendment privileges of Freedom of Religion and Freedom of Association. **Motion**, Ex. 4. LCMS did not challenge the application of the First Amendment Privileges to these interrogatories. **Motion** at 3-5. It has therefore waived any objection to the privilege and LCMS's motion to compel should be denied. *Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 459 (5th Cir. 2022) (a party "abandons claims when it fails to address the claims or oppose a motion challenging those claims."); *see also Magee v. Life Ins. Co. of N. Am.*, 261 F. Supp. 2d 738, 748 n.10 (S.D. Tex. 2003) (failure to address an issue in a brief to the district court constitutes waiver.)

33.     More importantly, use of the Court's power to compel this information is an intrusion into CTX and its leaderships' freedom of religion and violates RFRA. *See e.g. Whole Woman's Health v. Smith*, 896 F.3d 362, 371-73 (5th Cir. 2018). Given that CTX's current and former governing leadership may face reprisals and have a decreased likelihood of relying on written and electronic

communications if their votes and opinions are forcibly disclosed, the governing leadership's ability to engage in timely and free communications regarding important governance matters, its decision making, and its effectiveness will be undermined by the compelled production of this information. **Ex. 5** at ¶¶ 10-11; **Declaration of Stephen Sohns**, Motion for Protective Order, Ex. 2 at ¶¶ 6-7 (**Ex. 6**). This is an incursion into CTX and its leaderships' freedom of religion and to associate and only an interest which survives "exacting scrutiny" can override it. *Whole Woman's Health* at 374; *see also AFL-CIO v. FEC*. 333 F.3d 168, 177-78 (2003); *Perry v. Schwarzenegger*, 591 F.3d 1126, 1142 (9th Cir. 2010).

34.    LCMS has not, and cannot, demonstrate an interest in obtaining the names of these Regents "which is sufficient to justify the deterrent effect … on the free exercise… of the constitutionally protected right." *Perry*, 591 F.3d at 1140 (quoting *NAACP v. Ala. ex rel. Patterson*, 357 U.S. 449, 463 (1958)). LCMS claims an interest in the manner in which Regents voted because it has asserted claims against 12 unnamed regents for breach of their fiduciary duties to LCMS. **Motion** at 4; *see also* **Complaint** at ¶¶ 64-71. Under Texas law though, the Regents owe a formal, statutory, fiduciary duty to CTX – the non-profit which they serve, Tex. Bus. Org. Code § 22.221(a), and Texas courts do not recognize potentially conflicting informal fiduciary duties to entities other than the corporation which can give rise to liability. *In re Est. of Poe*, 648 S.W.3d 277, 288 (Tex. 2022) ("By electing to form and own PMI as a corporation, the parties disclaimed the existence of duties regarding the management of the corporation's affairs beyond those that exist by statute or arise from the corporation's formation documents...") Additionally, under Texas law, individual Regents cannot be held liable to any person for an action taken as the director of CTX that was in good faith, ordinary care, and in a manner the director reasonably believes to be in the best interest of the corporation. Tex. Bus. Org. Code § 22.221(b). LCMS does not allege that any individual

Regent acted outside of their statutory mandate; only that their actions violated alleged, ecclesiastically-based, fiduciary duties to LCMS. **Complaint** at ¶¶ 64-71. For these reasons, LCMS cannot recover against any individual Regent and their claimed interest in seeking the names of the Regents cannot overcome the 1st Amendment privileges. Their motion to compel should therefore be denied. *See Perry*, 591 F.3d at 1145 (finding litigants are entitled a protective order when a party's claimed interest cannot survive exacting scrutiny.)

35.     <u>Interrogatories seeking identities of potential witnesses</u>. Interrogatories 10 and 11 ask CTX to identify all individuals who received or responded to a mass email by Defendant Christian sent on November 9, 2022 notifying the recipients of the change to CTX's governing documents. *See* **Motion** at Exs. 1, 4. CTX objected to these requests as to relevance. **Motion**, Ex. 4. LCMS claims that it is entitled these names because (a) this email is an example of Defendant Christian's alleged breach of fiduciary duties and interference with a contract; and (b) because each of these individuals is potentially a witness to those actions and "one purpose of discovery is to identify all potential witnesses." **Motion**, at 6. As to the first justification, LCMS is already in possession of the email which it claims is an example of Christian's alleged actions. *See* **Motion** at Ex. 7. What else need be discovered if LCMS is already in possession of the evidence? To the latter justification, who received and responded to Defendant Christian's email has no bearing on whether his actions as CTX's President constitute a breach of fiduciary duties or an interference with a contract. It is only Defendant Christian's actions which will resolve that issue. LCMS is merely fishing to determine who within its constituents may agree with CTX's actions.

36.     <u>Interrogatories Seeking CTX Position on Synod Documents</u>. Interrogatories 17-23 seek CTX's legal position on whether it was legally bound by Synod's governing documents and resolutions, and whether CTX was required to seek Synod approval before amending its

documents or to seat Synod appointed Regents after its documents were amended. **Motion**, Ex. 1, 4. CTX responded to each of these interrogatories with its legal position: (1) CTX is a nonprofit corporation formed under, and bound by, the laws of Texas, (2) it is governed by Texas law, not ecclesiastical documents, and (3) what CTX's governing documents required in regards to Synod approvals and whether CTX complied with CTX's own governing documents in taking the actions at issue in this suit. **Motion**, Ex. 4. CTX also stated its legal position that courts within the United States do not have jurisdiction to enforce ecclesiastical documents. **Motion**, Ex. 4. LCMS complains that each interrogatory "asks for a 'yes' or 'no' answer." **Motion** at 7. However, CTX provided separate and full answers to each interrogatory as required under the rules. Fed. R. Civ. P. 33. If LCMS was seeking a simple "admit" or "deny," it has the ability to do seek that in requests for admission. Fed. R. Civ. P. 36. LCMS's motion to compel should therefore be denied.

## IV.    PRAYER

For the foregoing reasons, CTX respectfully requests that the Court deny LCMS's Motion and grant CTX any further such relief as it may be entitled.

Respectfully submitted,

/s/ Daniel R. Richards
**Daniel R. Richards**
State Bar No. 00791520
drichards@rrsfirm.com
**Clark Richards**
State Bar No. 90001613
crichards@rrsfirm.com
**Albert A. Carrion, Jr.**
State Bar No. 03883100
acarrion@rrsfirm.com
**RICHARDS RODRIGUEZ & SKEITH, LLP**
611 West 15th Street
Austin, Texas 78701
Telephone: (512) 476-0005
Facsimile: (512) 476-1513
**ATTORNEYS FOR DEFENDANTS
CONCORDIA UNIVERSITY TEXAS, INC.,
DONALD CHRISTIAN AND CHRISTOPHER
BANNWOLF**

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of October 2024, I electronically filed the above and foregoing document, which will send notification of such filing to:

Steven C. Levatino
Levatino & Pace PLLC
1101 S. Capital of Texas Hwy.
Bldg. K, Suite 125
Austin, Texas 78746
steven@lpfirm.com

Andrew F. MacRae
MacRae Law Firm PLLC
3267 Bee Cave Road
Suite 107, PMB 276
Austin, Texas 78746
andrew@macraelaw.co

Gregg R. Kronenberger
Kronenberger Law Firm, PLLC
1101 S. Capital of Texas Hwy.
Bldg. K, Suite 125
Austin, Texas 78746
gregg@gkronenberger.com

/s/ Daniel R. Richards
**DANIEL R. RICHARDS**