# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| **THE LUTHERAN CHURCH-MISSOURI SYNOD,** *Plaintiff* | § § § § | |
| **v.** | § § | No. 1:23-CV-01042-DAE |
| **DONALD CHRISTIAN, ET AL.,** *Defendants* | § § § § | |
| | | |
| **CONCORDIA UNIVERSITY TEXAS,** *Plaintiff* | § § § § | |
| **v.** | § § | No. 1:24-CV-00176-DAE |
| **THE LUTHERAN CHURCH-MISSOURI SYNOD, ET AL.,** *Defendants* | § § § § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:   THE HONORABLE DAVID A. EZRA
      UNITED STATES SENIOR DISTRICT JUDGE

Before the Court are Defendants Concordia University Texas ("CTX"), Donald Christian ("Christian"), and Christopher Bannwolf's ("Bannwolf") motion to dismiss for lack of subject-matter jurisdiction and failure to join indispensable parties, Dkt. 13 in case 1:23-cv-01042-DAE ("the 2023 case"), and Plaintiff CTX's motion to remand, Dkt. 5 in related case 1:24-cv-00176-DAE ("the 2024 case").[1] After the

---

[1] Docket entries 10, 13, and 17 in case 1:24-cv-00176-DAE are duplicates of docket entries 23, 26, and 30 in case 1:23-cv-01042-DAE, respectively.

District Judge granted the parties' agreed motion to consolidate these cases for the determination of the motions at issue here, Dkt. 18 (2023 case), the Judge referred the motions for a report and recommendation by the undersigned.[2] Having considered the parties' motions and all related briefing, the undersigned recommends that the District Judge grant both motions.

## I. BACKGROUND

The Lutheran Church – Missouri Synod ("the Synod") is a religious denomination governed by its constitution and bylaws. *See* Dkts. 11-1 (constitution), 11-2 (bylaws) (2023 case). The eponymous Lutheran Church – Missouri Synod ("LCMS") is a Missouri nonprofit corporation that, according to LCMS, is the Synod's "civil law reflection." Dkt. 10, at 6-7 (2023 case). Referred to as "Corporate Synod" in the Synod's bylaws, LCMS acknowledges therein its "responsibility to be subject to civil authority." Dkt. 11-2 (2023 case).

CTX is a Lutheran university in Austin, Texas, founded by affiliates of the Synod's predecessor organization. Dkt. 13, at 3 (2023 case).[3] LCMS states that since CTX's inception, the Synod and LCMS have supported CTX with financial resources. Dkt. 11, at 9 (2023 case). In particular, LCMS alleges that it has deeded property in trust to CTX and provided funding. *Id.* LCMS also states that it conditionally waived its reversionary interest in the CTX main campus property to allow CTX to purchase

---

[2] This case was reassigned to Senior District Judge David A. Ezra on August 9, 2024. Dkt. 31.

[3] The parties do not dispute that CTX is a resident of Texas. Dkt. 11, at 1 (2023 case) (admitting that CTX is a Texas non-profit corporation); Dkt. 13, at 3 (2023 case).

new campus property—an interest LCMS asserts it possesses, and that CTX has failed to recognize, in the new property. *Id.*

The Synod's bylaws refer to CTX as the Synod's "agency," which is defined as "[a]n instrumentality … which the Synod in convention or its Board of Directors has caused or authorized to be formed to further the Synod's objectives."[4] As such, LCMS contends that CTX is subject to the Synod's bylaws and constitution and that CTX's board of regents governs and operates the university as a fiduciary of the Synod. Dkts. 11, at 7, 12; 11-2, at 148 (2023 case).

In its 2023 suit, LCMS alleges that after taking a series of steps to support CTX's eventual separation from the Synod—including changing the purpose of CTX as a corporation and applying for CTX's own 501(c)(3) status—the CTX board of regents amended various governing documents to "fundamentally change [CTX's] standing with the Synod." Dkt. 11, at 12 (2023 case). LCMS asserts that these purported amendments were made in violation of Synod bylaws, under which the amendments would have required the approval of the Synod's board of directors. *Id.*; Dkt. 11-2, at 112 (2023 case); *see, e.g.*, Dkt. 11-13, at 4 (2023 case) (adding language to the CTX bylaws stating that CTX is "aligned with, but not subject to the authority of or governance by the Lutheran Church – Missouri Synod"). According to LCMS, the amendments inhibit the Synod's ability to participate in CTX's governance and "make it clear that the CTX [board of regents] now only recognizes its own governance

---

[4] LCMS emphasizes that as an agency of the Synod, CTX is not "a civil law agent in a civil law principal-agent relationship, but rather an instrumentality formed or authorized by the Synod to be formed to accomplish the Synod's objectives[.]" Dkt. 11, at 4 n.4 (2023 case).

authority and no authority of the Synod" or its bylaws. Dkt. 11, at 16 (2023 case). Specifically, LCMS asserts that the amendments take away the Synod's ability to elect or appoint any CTX regent and "remove [the Synod's] mechanisms of ecclesiastical supervision" over CTX. *Id.* at 16-18.

LCMS further alleges that these actions were "orchestrated" by CTX president Christian and CTX board chairman Bannwolf, who are named as defendants in the 2023 suit. *Id.* at 18. Additionally, LCMS sues John Does 1-12, who LCMS states are "unknown individuals who serve or served at the relevant time as [CTX regents] and unlawfully" voted in favor of the amendments at issue. *Id.* at 2. Through the 2023 suit, LCMS seeks a declaratory judgment voiding the amendments at issue, along with other forms of declaratory relief. *Id.* at 23-24. It also brings claims of breach of contract against CTX (in the alternative, promissory estoppel) and breach of fiduciary duty against all defendants. *Id.* at 24-30. Finally, it claims that CTX and Donald Christian violated the Texas Business Organizations Code, and that Christian tortiously interfered with the contract between CTX and LCMS. *Id.* at 30-33.

In January 2024, approximately four months after LCMS filed its 2023 suit, CTX sued LCMS and the Synod in Travis County, Texas. In the 2024 suit, CTX seeks declaratory judgment that the CTX board of regents had authority to make the amendments to CTX's governing documents, that the Synod and LCMS do not have the authority to elect regents to CTX's board, that CTX did not breach any fiduciary duty owed to the Synod or LCMS, and that neither the Synod nor LCMS is entitled

to any reversionary interest in CTX's new campus property or to damages associated with the loss of that property interest. Dkt. 1-1 (2024 case).

LCMS removed CTX's 2024 suit to federal court. *See* Dkt. 1 (2024 case). CTX now moves to remand. Dkt. 5 (2024 case). Arguing that the Synod is both a non-diverse (Texas) defendant capable of being sued and a proper party to this case, CTX asserts that it would be improper for this Court to exercise jurisdiction over any claim. *Id.* at 10-11. CTX also moves to dismiss LCMS's 2023 suit against it for lack of subject-matter jurisdiction and failure to join indispensable parties. Dkt. 13 (2023 case). It states that the Synod is the real party in interest, the real party in controversy, and an indispensable party that must be joined, and that the Synod's joinder as a Texas entity defeats this Court's diversity jurisdiction. *Id.* at 10-20. LCMS responds that the Synod is not a "legal entity" capable of being sued. Dkt. 10, at 2 (2024 case). As such, LCMS argues, the Synod is not a proper party to either suit, and this Court may exercise jurisdiction over both suits as between citizens of Texas (CTX and other defendants) and a citizen of Missouri (LCMS). *Id.*

## II.    MOTION TO DISMISS

### A.    Legal Standards

 To establish Article III standing, a plaintiff must demonstrate that she has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). "Standing is an issue upon which the party invoking federal jurisdiction, the plaintiff, bears the burden of

persuasion." *Friends of the Earth, Inc. v. Crown Cent. Petroleum Corp.*, 95 F.3d 358, 361-62 (5th Cir. 1996); *see also Tex. Cable & Telecomms. Ass'n v. Hudson*, 265 F. App'x 210, 216 (5th Cir. 2008) ("The burden of establishing the elements of standing is on the party seeking jurisdiction in the federal courts.") (citing *Lujan*, 504 U.S. at 561). In addition to these constitutional limitations, courts impose "prudential limitations on justiciability includ[ing] that a plaintiff generally may not rest [its] claim to relief on the legal rights of third parties even if [it] has alleged injury sufficient to satisfy article III." *Ensley v. Cody Resources, Inc.*, 171 F.3d 315, 319 (5th Cir. 1999). "The real party in interest is the person holding the substantive right sought to be enforced …. Conversely, a party not possessing a right under substantive law is not the real party in interest with respect to that right and may not assert it." *Farrell Const. Co. v. Jefferson Par., La.*, 896 F.2d 136, 140 (5th Cir. 1990) (citing *United States v. 936.71 Acres of Land*, 418 F.2d 551, 556 (5th Cir. 1969); *Lubbock Feed Lots, Inc. v. Iowa Beef Processors*, 630 F.2d 250, 256-57 (5th Cir. 1980)); Fed. R. Civ. P. 17(a) ("An action must be prosecuted in the name of the real party in interest."). "A federal court sitting in diversity must look to state law to determine which party holds the substantive right." *Farrell*, 896 F.2d at 140.

## B.    Discussion

In their motion to dismiss the 2023 case, Defendants CTX, Christian, and Bannwolf (collectively, "Defendants"), argue that the Synod is a citizen of Texas as well as a real party in interest, real party in controversy, and an indispensable party. Dkt. 13, at 14-21 (2023 case). Fundamentally, Defendants argue that this case cannot

proceed without the Synod, and this Court should either dismiss the action or join the Synod—a move that would defeat this Court's diversity jurisdiction. *Id.* LCMS responds that the Synod is not a Texas citizen and—paradoxically, given its repeated assertions that the Synod created LCMS—that the Synod is not actually an entity separate from LCMS. *See* Dkt. 10, at 19 (2024 case). Therefore, according to LCMS, the Synod is not a proper party to this suit, and this Court should *not* dismiss the case or join Synod. *Id.* at 3.

The undersigned begins with Defendants' argument that this action should be dismissed for failure to prosecute in the name of the real party in interest. Fed. R. Civ. P. 17(a). While LCMS asserts claims for relief on behalf of itself and the Synod, the Synod holds the substantive rights at issue here. *See, e.g.*, Dkt. 11, at 23 (2023 case) (demonstrating that LCMS brings claims "on behalf of itself and the Synod"). In its complaint, LCMS asks this Court to award declaratory relief restoring all its "rights, title, and interest related to CTX." Dkt. 11, at 34 (2023 case). Yet, in its response to the motion to dismiss, LCMS states that the Synod is not a legal entity "separate" from LCMS, and in fact LCMS was created to carry out the Synod's secular functions. Dkt. 10, at 6 (2024 case). To the extent LCMS asserts rights with respect to any Defendant, those rights are the Synod's. *Id.* at 8-9 ("In short, where Synod as an ecclesiastical body … has interests at law, LCMS, Inc. is the legal entity formed by Synod that represents Synod before the law."); *cf. S. Cent. Jurisdictional Conference of United Methodist Church v. S. Methodist Univ.*, 674 S.W.3d 334, 383-84 (Tex. App—Dallas 2023, pet. granted) (permitting a church conference to bring

certain claims on its own behalf, as opposed to permitting a *separate entity* to bring claims on behalf of a religious denomination).

LCMS cannot show that it possesses rights with respect to Defendants that are independent of the Synod. *See Friends of the Earth*, 95 F.3d at 361-62 (imposing the burden to show standing on the party invoking federal jurisdiction). For example, even if LCMS held title to the real property at issue in this case, it would belong to the Synod: the Synod's bylaws acknowledge that LCMS (as "Corporate Synod") may hold title to certain property, but that property is considered property of the Synod. *See* Dkt. 11-2, at 3 (defining "property of the Synod" as "[a]ll assets, real or personal, tangible or intangible, whether situated in the United States or elsewhere, titled or held in the name of corporate Synod, its nominee, or an agency of the Synod"); *Id.* at 148 (showing that ownership of university property is vested in the Synod).

Further, to the extent the Synod's governing documents constitute a contract between CTX and the Synod, LCMS does not show why it is a party to that contract. *See* Dkt. 11, at 24 (2023 case). In addition to its claims for declaratory relief, LCMS brings a breach-of-contract claim against CTX. While the analogy to corporations is an odd fit here given that the Synod is an unincorporated association,[5] under Texas law, "a corporation's governing documents … are a contract both between the members or shareholders themselves and between the corporation on one side and the individuals or shareholders on the other." *S. Methodist Univ.*, 674 S.W.3d at 363. LCMS does not show that it is CTX's corporate parent or that LCMS is merely a

---

[5] *See infra* Part III(B).

"member" or "shareholder" of the Synod. The same reasoning applies to LCMS's tortious-interference-with-contract claim against Christian, which relies on the existence of a contract between LCMS and CTX. *See* Dkt. 11, at 33 (2024 case) (setting out tortious interference with contract claim). Relatedly, LCMS fails to demonstrate why any Defendant owes fiduciary duties to LCMS as opposed to the Synod. *See* Dkt. 11, at 28-29 (2023 case). And as for LCMS's Texas Business Organizations Code claims, it similarly fails to show why duties any Defendant owes under that Code flow to LCMS as opposed to the Synod. *See id.* at 30-32.

The undersigned notes that if permitted to sue in only LCMS's name, the Synod would be positioned to invoke the subject-matter jurisdiction of the federal courts in every state except Missouri, regardless of the citizenship of the Synod's members. Finally, this Court's dismissal of the 2023 case would not foreclose LCMS and the Synod from seeking relief in state courts. For the foregoing reasons, the undersigned recommends that the District Judge grant Defendants' motion to dismiss, Dkt. 13 (2023 case).[6]

---

[6] Rule 17(a)(3) provides that this Court "may not dismiss" this action for failure to comply with its requirements "until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(a)(3). The Fifth Circuit has recognized that the purpose of this provision is to "'prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made.'" *Wieburg v. GTE Sw. Inc.*, 272 F.3d 302, 308 (5th Cir. 2001) (quoting Fed. R. Civ. P. 17(a) advisory committee's note to 1966 amendment). The district court retains discretion to dismiss the action where there was no such understandable mistake. *See id.*

### III.    MOTION TO REMAND

#### A.    Legal Standards

Federal courts are courts of limited jurisdiction possessing "only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Energy Mgmt. Servs., LLC v. City of Alexandria*, 739 F.3d 255, 258-59 (5th Cir. 2014) (quoting *Kokkonen*, 511 U.S. at 377).

A defendant may remove any civil action from state court to a district court of the United States that has original jurisdiction. 28 U.S.C. § 1441(a). District courts have original jurisdiction over all civil actions that are between citizens of different states and involve an amount in controversy more than $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a).[7] Diversity jurisdiction "requires complete diversity— if any plaintiff is a citizen of the same State as any defendant, then diversity jurisdiction does not exist." *Flagg v. Stryker Corp.*, 819 F.3d 132, 136 (5th Cir. 2016) (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806)). "A civil action otherwise removable solely on the basis of [diversity jurisdiction] may not be removed if any of

---

[7] In removals based on diversity jurisdiction under 28 U.S.C. § 1332(a), "the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy." 28 U.S.C. § 1446(c)(2). CTX does not dispute that the amount-in-controversy requirement is met. *See* Dkt. 1, at 3-4 (2024 case).

the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2).[8]

However, "the improper joinder doctrine constitutes a narrow exception to the rule of complete diversity." *Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 249 (5th Cir. 2011). To establish improper joinder, the removing party has the "heavy" burden, *id.*, to demonstrate either: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004). Only the doctrine's second prong is before the Court here.

Under the second prong of the improper-joinder doctrine, a defendant must establish "that there is no possibility of recovery by the plaintiff against an in-state defendant," which stated differently means "that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Id*. A court evaluates the reasonable basis of recovery under state law by "conduct[ing] a Rule 12(b)(6)-type analysis" or "pierc[ing] the pleadings and conduct[ing] a summary inquiry" where plaintiff has "misstated or omitted discrete facts that would determine the propriety of joinder." *Id.*; *see also Int'l Energy Ventures*

---

[8] In its notice of removal, LCMS argues that this Court has jurisdiction over the 2024 case because it implicates federal questions. Dkt. 1, at 2 (2024 case). However, because CTX's state-court complaint does not present a federal claim, this case may not be removed based on federal-question jurisdiction. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("The presence or absence of federal-question jurisdiction is governed by the well-pleaded complaint rule, which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." (internal citations omitted)).

*Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 207 (5th Cir. 2016) (stating that a court may use either analysis, but it must use one and only one). If there is a reasonable basis for recovery under state law for any of CTX's claims against the non-diverse defendant, this Court must remand. *See Smallwood*, 385 F.3d at 573.

In conducting a 12(b)(6)-type analysis, federal pleading standards apply. *Int'l Energy Ventures*, 818 F.3d at 207. Accordingly, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "detailed factual allegations" are not necessary, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The statements in the complaint must be sufficiently detailed to "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Id.*

The party seeking removal "bears the burden of establishing that federal jurisdiction exists and that removal was proper." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). Any doubts as to the propriety of removal are construed in favor of remand. *Smith v. Bank of Am. Corp.*, 605 F. App'x 311, 314 (5th Cir. 2015). A district court is required to remand the case to state court if, at any time before final judgment, it determines that it lacks subject-matter jurisdiction. 28 U.S.C. § 1447(c).

**B.    Discussion**

In support of its motion to remand, CTX argues that the Synod has capacity to sue and be sued, and that because the Synod is a non-diverse party to the removed 2024 suit, this Court may not exercise diversity jurisdiction over that suit. Dkt. 5, at 2 (2024 case). LCMS responds that because the Synod is not capable of being sued, it is improperly joined in this suit. Dkt. 10, at 21 (2024 case).

First, LCMS cannot show that the Synod is not a citizen of Texas for the purposes of diversity jurisdiction. Neither party offers any evidence other than that contained in the Synod's governing documents regarding its citizenship.[9] The Synod's bylaws define the Synod as "the association of self-governing Lutheran congregations and all its agencies on the national and district levels." Dkt. 11-2, at 3 (2023 case). There is no evidence that the Synod is incorporated. Therefore, the undersigned finds that the Synod is an unincorporated association. As such, it is a citizen of every state in which its members reside. *Americold Realty Tr. v. Conagra Foods, Inc.*, 577 U.S. 378, 381 (2016) (adhering to its "oft-repeated" rule that diversity jurisdiction in a suit involving an unincorporated entity depends on the citizenship of the entity's members). Because, by its own admission, the Synod has members (i.e., member congregations and individuals) in Texas, the Synod is a Texas citizen. *See, e.g.*, Dkt. 11, at 16 (2023 case) (referring to the "Texas District" of the Synod); *see also* Dkt. 11-1, at 7 (2023 case) (describing the Synod's division into districts). And because the

---

[9] The undersigned notes that if LCMS's implication that the Synod is not an unincorporated association because it is not a "civil law entity" were accepted, the Synod would not be subject to suit anywhere.

Synod is a Texas citizen, this Court should exercise jurisdiction over the 2024 case only if there is "no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood*, 385 F.3d at 573.

As described above, the undersigned next evaluates whether there is any possibility of recovery by CTX against the Synod as an in-state defendant. *See id.* A 12(b)(6)-type analysis is appropriate to determine whether the Synod was improperly joined. *See id.* Among other claims, CTX brings an action for declaratory judgment that "[n]either Synod nor LCMS have or are entitled to any property interest, including a reversionary interest, in and to CTX's campus property." Dkt. 1-1, at 7 (2024 case).

The undersigned finds that CTX has plausibly stated a claim for declaratory judgment against the Synod regarding its alleged reversionary interest in CTX's new campus property. Under Texas law, "[i]f resolution of a dispute does not require a determination of which party owned title at a particular time, the dispute may properly be raised in a declaratory judgment action, if the requirements of the Texas Declaratory Judgments Act are satisfied." *Meekins v. Wisnoski*, 404 S.W.3d 690, 695 (Tex. App.—Houston [14th Dist.] 2013, no pet.).[10] A declaratory judgment is available

---

[10] This dispute is properly brought as a declaratory-judgment action, not a trespass-to-try-title action. Under the Texas Property Code, a trespass-to-try-title action "is the method of determining title to lands, tenements, or other real property." Tex. Prop. Code § 22.001(a). However, because this dispute involves a nonpossessory interest in real property, a declaratory judgment action is appropriate. *See Lance v. Robinson*, 543 S.W.3d 723, 735-36 (Tex. 2018) ("The trespass-to-try-title statute … only applies when the claimant is seeking to establish or obtain the claimant's ownership or possessory right in the land at issue."); *El Dorado Land Co. v. City of McKinney*, 395 S.W.3d 798, 803 (Tex. 2013) ("Simply put, both the possibility of reverter and the right of reentry are future interests in real property."); *see also*

under Texas law when (1) there is a justiciable controversy that is (2) real and substantial and (3) capable of resolution by the declaration sought. *Sw. Elec. Power Co. v. Lynch*, 595 S.W.3d 678, 683-86 (Tex. 2020). There is a real and substantial justiciable controversy here, since the parties genuinely dispute LCMS and/or the Synod's reversionary interest in CTX's new campus property, which may be affected by the recent purported bylaw amendments. *See id.*; Dkt. 11, at 21 (2023 case) (alleging that "CTX is attempting to walk away with a historic property of the Synod without any say from its former religious denomination"). A declaration clarifying LCMS and the Synod's interest, if any, in CTX's new campus property would resolve the conflict. *See id.*

The Synod has capacity to sue and be sued under Texas law. Whether an entity has capacity to be sued depends on whether or not it is a corporation. *See* Fed. R. Civ. P. 17(b). While a corporation's capacity to be sued is based on the law under which it was organized, the capacity of *all other non-individual parties* is determined by the law of the state where the court is located, subject to exceptions not at issue here. *Id.* The parties to this case do not argue that the Synod is a corporation subject to Rule 17(b)(2). However, the parties dispute whether the Synod is an entity separate from LCMS. *See* Dkts. 5, at 13 (2024 case) (arguing that the Synod's governing documents explicitly differentiate between the Synod and LCMS); 10, at 6 (2024 case) (stating that LCMS "is a legally formed Missouri nonprofit corporation, and the Synod is its

---

*I-10 Colony*, 393 S.W.3d at 475 ("[I]n other words, if the determination only *prospectively* implicates title, then the dispute does not have to be brought as a trespass-to-try-title action.").

ecclesiastical body and not a separate legal entity"). Regardless of its organizational relationship to LCMS, the Synod is a non-corporation, non-individual "party" to the 2024 suit, and as such, whether it may be sued depends on Texas law.[11]

LCMS does not show that under Texas law, the Synod may not be sued. The Texas Business Organizations Code permits suits against "nonprofit association[s]," defined as "unincorporated organization[s], other than one[s] created by a trust, consisting of three or more members joined by mutual consent for a common, nonprofit purpose." Tex. Bus. Orgs. Code § 252.007 (permitting suit); § 252.001 (defining "nonprofit association"). The undersigned finds that the Synod qualifies as a "nonprofit association" under these criteria. There is no evidence that the Synod is incorporated or that it was created by trust. As illustrated by its constitution, the Synod was formed for a "common, nonprofit purpose." *See* Dkt. 11-1, at 1-2 (2023 case) (describing the Synod's objectives). Therefore, as an unincorporated, nonprofit association, the Synod may be sued. *Id.* § 252.007 ("A nonprofit association, in its name, may institute, defend, intervene, or participate in a judicial … proceeding[.]").

The Synod's status as a religious denomination does not bar CTX's suit. Initially, Texas courts have permitted suits against churches classified as unincorporated associations. *See, e.g.*, *Episcopal Diocese of Fort Worth v. Episcopal Church*, 602 S.W.3d 417, 430 (Tex. 2020); *see also* Tex. Bus. Orgs. Code § 2.002

---

[11] LCMS repeatedly asserts that the Synod may not be sued because it is "not a civil law entity" according to its bylaws. *See, e.g.*, Dkt. 10, at 6 (2024 case). However, LCMS fails to cite any authority demonstrating that the Synod is not subject to Rule 17(b) for the purposes of determining which law applies here. Further, LCMS cites no authority—other than its own bylaws—for the proposition that as a so-called non- "civil law entity," the Synod may not be sued.

(stating that the purpose of a nonprofit entity may include "religious" purposes). While churches have a "fundamental right under the First Amendment to decide … matters of church governance as well as those of faith and doctrine," the First Amendment does not bar all claims against religious bodies. *In re Lubbock*, 624 S.W.3d 506, 513 (Tex. 2021). Courts may exercise jurisdiction over a controversy involving a church if they can "apply neutral principles of law that will not require inquiry into religious doctrine, interference with the free-exercise rights of believers, or meddling in church government." *Id.* (citing *Westbrook v. Penley*, 231 S.W.3d 389, 398-400 (Tex. 2007)). In determining whether this "ecclesiastical abstention" doctrine applies, courts look to the plaintiff's claims to determine whether the controversy requires engagement with ecclesiastical matters or is merely "a civil-law controversy in which the church happens to be involved." *Id.* at 514; *see also Shannon v. Mem'l Drive Presbyterian Church U.S.*, 476 S.W.3d 612, 622 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (holding that to determine whether the ecclesiastical abstention doctrine applies, "courts must look to the substance and effect of a plaintiff's complaint to determine its ecclesiastical implication").

CTX's action regarding the Synod's interest in CTX's new campus property is a pure civil-law controversy. *See In re Lubbock*, 624 S.W.3d at 513. First, the events leading to the campus property dispute—involving LCMS's voluntary waiver of its reversionary interest and CTX's alleged refusal to recognize that interest—occurred around 2006 or 2007, more than 10 years prior to CTX's purported bylaw amendments. Dkts. 1-1, at 4 (2024 case); 11, at 9 (2023 case). More importantly, the

property dispute does not involve any change to CTX's governing documents and does not require any inquiry into religious doctrine. *See In re Lubbock*, 624 S.W.3d at 513. Finally, the undersigned notes that the Texas courts have exercised jurisdiction over suits against churches involving pure property disputes. *See, e.g.*, *Masterson v. Diocese of Nw. Tex.*, 422 S.W.3d 594, 608 (Tex. 2013) (holding that the trial court had jurisdiction over a property dispute involving a church).

Therefore, because CTX has plausibly stated a state-law claim against the Synod and the Synod's Texas citizenship defeats this Court's diversity jurisdiction, the undersigned recommends that the District Judge grant the motion to remand, Dkt. 5 (2024 case).

## IV.    RECOMMENDATION

In accordance with the foregoing discussion, the undersigned **RECOMMENDS** that the District Judge **GRANT** Defendants' motion to dismiss, Dkt. 13 (2023 case) and **GRANT** CTX's motion to remand, Dkt. 5 (2024 case).

The referral of these motions to the United States Magistrate Judge should now be canceled. The undersigned notes that should the District Judge accept these recommendations, the pending referred motions in this matter would be denied as **MOOT**. Dkts. 39 (2023 case); 44 (2023 case); 23 (2024 case).

## V.    WARNINGS

The parties may file objections to this report and recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Judge need not consider frivolous,

conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after the party is served with a copy of the report shall bar that party from *de novo* review by the District Judge of the proposed findings and recommendations in the report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** November 20, 2024.

DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE